**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| APPLE INC., | |
| *Plaintiff*, | |
| v. | Civil Action No. |
| MASIMO CORPORATION and SOUND UNITED, LLC, | **JURY TRIAL DEMANDED** |
| *Defendants*. | |

**<u>PLAINTIFF APPLE INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR EXPEDITED DISCOVERY</u>**

### TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................3

      A.     Apple's Innovations And Investments In Apple Watch ..........................................4

      B.     Masimo's Copying And Litigation Campaign Against Apple ...............................6

      C.     Apple's Discovery Requests ...............................................................................11

ARGUMENT .....................................................................................................................13

CONCLUSION ..................................................................................................................18

## **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Acumed LLC v. Stryker Corp.*,
    551 F.3d 1323 (Fed. Cir. 2008).................................................................................... 14, 16

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
    664 F.3d 922 (Fed. Cir. 2012)............................................................................................ 17

*Cornucopia Prods., LLC v. Dyson, Inc.*,
    No. CV 12-00234-PHX-NVW, 2012 WL 3094955 (D. Ariz. July 27, 2012) ................. 15

*DMF, Inc. v. AMP Plus, Inc.*,
    2019 WL 1099982 (C.D. Cal. Mar. 7, 2019) .................................................................... 14

*eBay, Inc. v. MercExchange, LLC*,
    547 U.S. 388 (2006)........................................................................................................... 15

*Edwards Lifesciences AG v. CoreValve, Inc.*,
    2014 WL 1493187 (D. Del. Apr. 15, 2014)...................................................................... 17

*EZ Gard Indus., Inc. v. XO Athletic Co.*,
    No. 07-CV-4769, 2008 WL 1827490 (D. Minn. Apr. 23, 2008), *aff'd*, 302 F.
    App'x 920 (Fed. Cir. 2008) .............................................................................................. 15

*Keurig, Inc. v. Strum Foods, Inc.*,
    769 F. Supp. 2d 699 (D. Del. 2011).................................................................................. 15

*Kone Corp. v. ThyssenKrupp USA, Inc.*,
    C.A. No. 11–465–LPS–CJB, 2011 WL 4478477 (D. Del. Sept. 26, 2011)...................... 13

*Nevro Corp. v. Stimwave Techs., Inc.*,
    No. 19-cv-325, 2019 WL 3322368 (D. Del. July 24, 2019) ............................................ 14

*Reebok Int'l Ltd. v. J. Baker, Inc.*,
    32 F.3d 1552 (Fed. Cir. 1994).......................................................................................... 14

*Saes Getters, S.p.A. v. Ergenics, Inc.*,
    816 F. Supp. 979 (D.N.J. 1992), *aff'd*, 989 F.2d 1201 (Fed. Cir. 1993).......................... 15

*Sanofi–Synthelabo v. Apotex, Inc.*,
    470 F.3d 1368 (Fed. Cir. 2006)................................................................................... 14, 16

*Telebrands Direct Response Corp. v. Ovation Commc'ns, Inc.*,
    802 F. Supp. 1169 (D.N.J. 1992) ..................................................................................... 16

*Williams v. Ocwen Loan Servicing, LLC*,
    C.A. No. 14-1096-LPS-CJB, 2015 WL 184024 (D. Del. Jan. 13, 2015) .................. 12, 13

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
    782 F.2d 995 (Fed. Cir. 1986) ............................................................................. 17

## **<u>RULES</u>**

Fed. R. Civ. P. 26(a)(1)(B) .................................................................................. 12

Fed. R. Civ. P. 26(d)(1) ....................................................................................... 12

Fed. R. Civ. P. 26(f) ............................................................................................ 12

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| 1 | Apple's First Set of Interrogatories to Defendants (Nos. 1 and 2) |
| 2 | Apple's First Set of Requests for Production to Defendants (Nos. 1 and 2) |
| 3 | Apple's First Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) to Defendants |
| A | Masimo Fiscal Year 2021 Form 10-K Annual Report, available at https://investor.masimo.com/financials/sec-filings/sec-filings-details/default.aspx?FilingId=15576856 |
| B | Masimo Fiscal Year 2020 Form 10-K Annual Report, available at https://investor.masimo.com/financials/sec-filings/sec-filings-details/default.aspx?FilingId=14736544 |
| C | Transcript of Masimo Q4 2021 Earnings Call, dated February 15, 2022, available at https://www.fool.com/earnings/call-transcripts/2022/02/15/masimo-masi-q4-2021-earnings-call-transcript/ |
| D | Transcript of Masimo Q3 2021 Earnings Call, dated October 26, 2021, available at https://www.fool.com/earnings/call-transcripts/2021/10/27/masimo-masi-q3-2021-earnings-call-transcript/ |
| E | Transcript of Masimo Q2 2022 Earnings Call, dated August 9, 2022, available at https://www.fool.com/earnings/call-transcripts/2022/08/10/masimo-masi-q2-2022-earnings-call-transcript/ |
| F | Masimo's January 23, 2006 press release entitled *Masimo and Nellcor Announce Settlement of Patent Litigation*, available at https://www.masimo.com/company/news/news-media/2006#news-76f2c84e-7857-4cff-a364-8a7af3b2221e |
| G | Masimo's September 2, 2016 press release entitled *Masimo Announces Amendment to Nellcor Royalty Agreement*, available at https://www.masimo.com/company/news/news-media/2016/#news-0f61fb9f-0af5-4245-b4e2-a329ad0562a6 |
| H | Masimo's November 7, 2016 press release entitled *Philips and Masimo Sign Multi-Year Business Partnership Agreement in Patient Monitoring and Select Therapy Solutions*, available at https://www.masimo.com/company/news/news-media/2016/#news-3c555bf2-2e14-4eaa-abc0-5b723675c1e9 |
| I | Masimo's April 12, 2022 press release entitled *Masimo Closes Acquisition of Sound United*, available at https://www.masimo.com/company/news/news-media/#4rtyy700d-7c03-9876-bt7u-8y57ktr7ull8n |
| J | Complaint, D.I. 1 filed in *Masimo Corp. v. Apple Inc.*, D.I. 1, No. 20-cv-48-JVS-JDE (C.D. Cal.) |
| K | Declaration of Brian A. Rosenthal in Support of Apple's Motion to Stay the Patent Infringement Case Pending *Inter Partes* Review Proceedings, D.I. 197 filed in *Masimo Corp. v. Apple Inc.*, No. 20-cv-48-JVS-JDE (C.D. Cal.) |

| L | Joint Stipulation Regarding Plaintiffs' [Masimo's] Motion for a Protective Order, D.I. 61-1 filed in *Masimo Corp. v. Apple Inc.*, No. 20-cv-48-JVS-JDE (C.D. Cal.) |
| M | Protective Order, D.I. 67 entered in *Masimo Corp. v. Apple Inc.*, No. 20-cv-48-JVS-JDE (C.D. Cal.) |
| N | Complaint (Public Version) filed in *In the Matter of Certain Light-Based Physiological Measurement Devices and Components Thereof*, Inv. No. 337-TA-1276 (Int'l Trade Comm. Jun. 29, 2021) |
| O | Public hearing testimony given on June 9, 2022 in *In the Matter of Certain Light-Based Physiological Measurement Devices and Components Thereof*, Inv. No. 337-TA-1276 (Int'l Trade Comm. Jun. 9, 2022) |
| P | Kenneth Squire, *How Activist Politan Capital May Find An Opportunity to Trim Costs, Build Value at Masimo*, CNBC (Aug 20, 2022), https://www.cnbc.com/2022/08/20/how-activist-politan-capital-may-find-an-opportunity-to-trim-costs-build-value-at-masimo.html |
| Q | *Masimo Market Cap 2010-2022 | MASI*, MACROTRENDS, available at https://www.macrotrends.net/stocks/charts/MASI/masimo/market-cap |

All citations to lettered exhibits refer to the exhibits attached to the Declaration of Peter C. Magic In Support of Plaintiff Apple Inc.'s Motion for Expedited Discovery, submitted concurrently herewith.

## INTRODUCTION

Apple seeks limited expedited discovery relevant to a potential motion for a preliminary injunction against Masimo's W1 watch.  On August 31, 2022, Masimo—a hospital products company that had never been in the smartwatch market—released a watch called the W1 that is seeking to directly compete with Apple Watch.  The Masimo W1 and its charger are an inferior-quality knock-off of Apple Watch and its charger, and infringe multiple Apple design patents.

| Apple Watch | Masimo W1 |
|:---:|:---:|



Masimo's design is so strikingly similar to Apple Watch that it could not be the product of mere coincidence.  Public evidence indicates that Masimo's litigation counsel from an ongoing campaign of lawsuits filed by Masimo against Apple starting in January 2020—counsel who had

access to Apple's confidential information through those cases—was also on the board of Masimo's R&D company, Cercacor, in the years leading up to Masimo's release of its W1. Moreover, Masimo acquired a company called Sound United earlier this year specifically to leverage its consumer distribution channels to sell its W1 in the U.S. market as quickly and extensively as possible.  On a company earnings call in August 2022, Masimo's CEO made clear Masimo's intentions:

> So we think we have a product that should command ***100% market share***, which is what you want to have, what you want for your team to feel. ***So the question is, do we have now the right distribution channel*** and the right sales force to hopefully make the most out of it.[1]

By this motion, Apple seeks to learn just how deep Masimo's copying goes, whether Apple confidential information has been misused by Masimo and/or its counsel, and whether Masimo has the distribution capability to make good on its threat of "100% market share."  To be clear, Apple does not know whether Masimo's litigation counsel on the board of Cercacor misused any Apple confidential information, whether inadvertently or otherwise; that is why Apple seeks discovery.

Apple seeks limited discovery into the above subjects as relevant to Masimo's stated intent of taking market share and the balance of equities, both of which are factors of a preliminary injunction.  In particular, any abuse of restrictions on Apple's confidential information and flagrant copying of Apple's design is relevant to whether the balance of equities favors an injunction. Moreover, Masimo's threat and intent to capture "100% market share"—if successfully acted upon—would cause irreparable harm.  And if Masimo has the ability to distribute significant numbers of lookalike products of inferior quality into the hands of consumers, that raises the

---

[1] Exhibit E (Masimo Q2 2022 Earnings Call Transcript (Aug. 9, 2022)) (emphasis added).

prospect of diminishing consumers' view of the smartwatch market, including watches using Apple's design, which can harm Apple by diminished consumer interest in the product category. Apple has attached its discovery requests to this motion. Each request is narrowly tailored to the above two topics. The Court should permit limited expedited discovery so that Apple has the relevant facts to move for a preliminary injunction.

## **BACKGROUND**

This is a case of blatant, unabashed copying. Masimo is a hospital products company that was never in the consumer wearables market during its 33-year history.[2] Rather, its business centered on selling patient monitoring equipment with disposable biometric sensors. But in recent years, Masimo witnessed the demise of its licensing revenue and the rise of consumer interest in Apple Watch, including its biometric sensing capabilities. Desperate to not be left out of this new emerging opportunity, Masimo copied the iconic designs of Apple Watch and its charger in an attempt to develop a knock-off product, the Masimo W1 watch. Rather than developing its own innovative designs—as the patent system encourages—Masimo took a shortcut by trespassing on Apple's intellectual property. Masimo paired that approach with lawsuits (which are ongoing) seeking to keep Apple Watch off the market while Masimo launched its product.

Apple Watch and its charger are protected by a broad range of intellectual property rights, including U.S. Patent Nos. D735,131, D883,279, D947,842, and D962,936 (the "Patents-in-Suit"). Masimo is willfully infringing these patents. Apple may seek a preliminary injunction to preserve the status quo pending final disposition of the merits.

---

[2] *See* Company Evolution: About Masimo, MASIMO CORP., https://www.masimo.com/company/masimo/evolution/ (last visited Oct. 18, 2022).

**A.**     **Apple's Innovations And Investments In Apple Watch**

Apple released Apple Watch in 2015.  Apple Watch—like iPod, iPhone, and iPad—was a bold, unproven design that was nothing like the products that came before it.  And it single-handedly changed the product landscape.  Before Apple released Apple Watch, smart watches were regarded as niche products.  Apple changed that.



Apple Watch (2015)

Apple applied its technical prowess and venerated approach to design to develop a product that was not only highly functional, but visually breathtaking.



4

The design of Apple Watch is instantly recognizable as an Apple design.  Apple has worked hard to foster an association in minds of consumers between its product designs and its identity as a company and a brand.  Apple's products feature unique and innovative designs that at the same time reflect parentage in a common, coherent design language.

Apple has patented designs relating to Apple Watch.



U.S. Patent No. D735,131
Figure 9

U.S. Patent No. D883,279
Figure 2

Apple continues to use its successful patented designs in its newest versions of Apple Watch, and its continued investments in its research and innovation have most recently culminated in three new Apple Watch products.  On September 7, 2022, Apple announced the newest generation Apple Watch, including Apple Watch Series 8, the latest Apple Watch SE, and the all-new Apple Watch Ultra.  The Apple Watch Ultra retains the familiar sensor and charger designs protected by certain of the Patents-in-Suit.

**Apple Watch Ultra (2022)**

 



### B.    Masimo's Copying And Litigation Campaign Against Apple

Masimo's primary business is and has been hospital devices for monitoring various biometrics of patients, and those devices are not at issue in this case.[3]  When Masimo decided to pivot into making watches, its strategy was to copy Apple Watch, preceded by lawsuits seeking to stop the sale of Apple Watch.

---

[3] For example, Masimo markets and sells the W1 on the a separate Masimo Personal Health website, http://www.masimopersonalhealth.com, rather than its main website http://www.masimo.com.

Masimo primarily focuses on clinical-grade pulse oximetry equipment.[4]  Its main business model is to develop and sell low-margin monitoring equipment to hospitals, along with contracts to supply high-margin sensors.[5]   For many years, Masimo's major competitor, Nellcor (Medtronic), paid patent license fees to Masimo after protracted litigation.[6]  Masimo also received substantial royalties from settlements with other companies.[7]  But by 2019, Masimo's original patents and license agreements expired, and the royalties dried up.[8]  At the same time, the health tech landscape had changed around Masimo—undoubtedly shaped by innovators like Apple—to focus on consumer health and well-being.  But Masimo, having focused on hospitals, had rested on its laurels and fallen behind.  Masimo had no experience developing or selling a consumer wearable like Apple Watch and was not competing against Apple, but it needed to quickly find a way into the consumer wearable industry.

Since early 2020, Masimo has tried, through litigation in federal court and before administrative tribunals, to remove every iteration of Apple Watch from the United States market.

---

[4] *See, e.g.*, Exhibit A (Masimo Corporation, Fiscal Year 2021 Form 10-K Annual Report) at 1.

[5] *See, e.g.*, Exhibit D (Masimo (MASI) Q3 2021 Earnings Call Transcript (Oct. 26, 2021)) ("The year-over-year improvement was primarily driven by a more favorable revenue mix as we delivered strong revenue performance from our higher margin sensors in combination with the anticipated decline in sales for our lower margin technology boards and instruments."); Exhibit P (*How Activist Politan Capital May Find An Opportunity to Trim Costs, Build Value at Masimo*, CNBC (Aug 20, 2022)) ("This is a razor/razor blade business model with the devices using single-use sensors pursuant to five-year contracts resulting in 80% recurring revenue for Masimo.").

[6] *See, e.g.*, Exhibit F (*Masimo and Nellcor Announce Settlement of Patent Litigation* (Jan. 23, 2006)) ($330 million payments and ongoing royalty); Exhibit G (*Masimo Announces Amendment to Nellcor Royalty Agreement* (Sept. 2, 2016)) ("Medtronic will continue to pay Masimo a royalty of 7.75% for its current pulse oximetry products sold in the United States through October 6, 2018 . . . .").

[7] *See, e.g.*, Exhibit H (*Philips and Masimo Sign Multi-Year Business Partnership Agreement in Patient Monitoring and Select Therapy Solutions* (Nov. 7, 2016)) ("Agreement ends all pending lawsuits between the two companies and . . . includes a cash payment of USD 300 million by Philips to Masimo.").

[8] Exhibit B (Masimo Corporation, Fiscal Year 2020 Form 10-K Annual Report) at 43, 66.

In January 2020, Masimo brought a patent lawsuit against Apple targeting Apple Watch.[9]  As of

July 16, 2020, Apple was producing in that lawsuit "highly confidential core technical documents"

about Apple Watch.[10]  In June 2021, Masimo filed a complaint before the U.S. International Trade

Commission (ITC), an administrative agency, seeking an order banning Apple Watch from being

imported into the United States.[11]

Now, Masimo has released a knock-off that copies the designs of the Apple Watch and its

charger, but with inferior materials.  The substantial similarity in design between the Apple Watch

and Masimo W1 cannot be a coincidence—the only reasonable conclusion is that it is the latest

escalation in Masimo's campaign against Apple.



| D'279 Patent (Figures 2 and 4) | Masimo W1 (Device) |
|---|---|

---

[9]  Exhibit J (Complaint, D.I. 1, *Masimo Corp. v. Apple Inc.*, No. 20-cv-48-JVS-JDE (C.D. Cal.)).
[10]  Exhibit K (D.I. 197, *Masimo Corp. v. Apple Inc.*, No. 20-cv-48-JVS-JDE (C.D. Cal.)) ¶ 8.
[11]  Exhibit N (Complaint (Public Version), *In the Matter of Certain Light-Based Physiological Measurement Devices and Components Thereof*, Inv. No. 337-TA-1276 (Int'l Trade Comm'n Jun. 29, 2021)) ¶ 7.

| D'131 Patent<br>(Figures 1 and 2) | Masimo W1<br>(Wireless Charger) |
|---|---|



In the district court case, one of Cercacor's[12] board members—who was also counsel for

Masimo in the litigation—was permitted access to Apple's confidential information and source

code for various models of Apple Watch, including details of its construction and functionality,

starting on June 30, 2020.[13]  Two years later, Masimo released the W1 to the general public.  And

in public testimony in the ITC, one of Masimo's lawyers from the firm representing Masimo in

---

[12]  Cercacor is a spin-off from Masimo that focuses on R&D.  Masimo and Cercacor retain a close relationship and have a significant technology cross-license agreement.  Masimo's CEO and Chairman Joe Kiani is also the CEO and Chairman of Cercacor.  *See* Exhibit A (Masimo Corporation, Fiscal Year 2021 Form 10-K Annual Report) at 25.
[13]  *See* Exhibit L (D.I. 61-1, *Masimo Corp. v. Apple Inc.*, No. 20-cv-48-JVS-JDE (C.D. Cal.)) at 36–49; *see also* Exhibit M (Protective Order, D.I. 67, *Masimo Corp. v. Apple Inc.*, No. 20-cv-48-JVS-JDE (C.D. Cal.)) ¶ 9.3; *id.* ¶ 5.1.

litigation admitted to having seen "nonpublic teardowns of the Apple Watch Series 6 during prosecution of [Masimo's] patents."[14]

Masimo is not a small company.  It is publicly traded and had a market capitalization of over $16 billion and revenues of over $1.2 billion in 2021.[15]  Masimo is well-resourced and is using those resources to launch a copycat product while using litigation to try to remove Apple Watch from the United States market.  Recently, Masimo spent $1.025 billion to acquire Sound United, a consumer electronics company with established consumer distribution channels.[16] Sound United, now a subsidiary of Masimo, operates as Masimo's consumer division.[17]  Masimo's and its CEO's statements confirmed that the purpose of this deal was to accelerate bringing the W1 to market.  For example, the CEO of Masimo stated on an earnings call in February 2022: "We like Sound United the most for several reasons. One, it's [sic] management team. Two, the distribution channel, that is essential to what we are doing as an important product for us which is the Masimo Watch."[18]  Masimo also touted Sound United's distribution relationship with Best Buy[19]—a retailer that also sells Apple Watch.

Masimo portrays itself as a competitor to Apple.  During Masimo's 2022 Q2 earnings call, a participant asked Masimo's CEO Joe Kiani to describe Masimo's "consumer strategy in the smartwatch," asking how Masimo plans to "differentiate [itself] in the market versus some of the

---

[14] Exhibit O (Public hearing testimony, Inv. No. 337-TA-1276 (Int'l Trade Comm.)), Hearing Tr. 1031:15-22 (public version).
[15] *See* Exhibit Q (Masimo Market Cap 2010-2022 | MASI, MACROTRENDS); Exhibit A (Masimo Corporation, Fiscal Year 2021 Form 10-K Annual Report) at F-6.
[16] Exhibit I (*Masimo Closes Acquisition of Sound United* (April 12, 2022)); Exhibit C (Masimo Q4 2021 Earnings Call Transcript (Feb. 15, 2022)).
[17] Exhibit I (*Masimo Closes Acquisition of Sound United* (April 12, 2022))
[18] Exhibit C (Masimo Q4 2021 Earnings Call Transcript (Feb. 15, 2022)).
[19] *Id*.

bigger companies out there like Apple or Samsung."[20]   Mr. Kiani's response, describing the W1 and another purportedly forthcoming watch product, the Freedom, included the following:

> **But we believe we have a compelling design**, we believe **with the addition of the Android features** and some unique features that, again, have never been made available before. We think we have a great product.
>
> **So we think we have a product that should command 100% market share**, which is what you want to have, what you want for your team to feel. **So the question is, do we have now the right distribution channel and the right sales force to hopefully make the most out of it.**[21]

One CNBC article, after discussing Masimo's litigation campaign, noted that "now Masimo has launched its own W1 watch to compete with Apple.  This feels more personal than fiduciary."[22]  Masimo's intent to harm to Apple is manifest.  Masimo is using Apple's patented design with a stated goal of achieving "100% market share."[23]

### C.     Apple's Discovery Requests

Apple seeks leave to serve the following discovery requests, and for response periods of 21 days for written discovery and 45 days to provide 30(b)(6) testimony.

**Requests for production of documents (Exhibit 1)**

- Documents sufficient to identify all of Masimo's (including Sound United's) actual and planned channels for distribution or sale of the W1 in the United States.

- All documents relating to any participation of, or presence of, any individual in the design or development of the W1, where the Protective Order in any Masimo litigation against Apple permitted such individual access to Apple confidential information.

---

[20] Exhibit E (Masimo Q2 2022 Earnings Call Transcript (Aug. 9, 2022)).
[21] *Id.*
[22] Exhibit P (*How Activist Politan Capital May Find An Opportunity to Trim Costs, Build Value at Masimo*, CNBC (Aug 20, 2022)).
[23]  Exhibit E (Masimo Q2 2022 Earnings Call Transcript (Aug. 9, 2022)).

**Interrogatories (Exhibit 2)**

- Identify all of Masimo's (including Sound United's) actual and planned channels for distribution or sale of the W1 in the United States.

- Explain all facts and circumstances (including names of individuals) regarding the participation of, or presence of, any individual in the design or development of the W1, where the Protective Order in any Masimo litigation against Apple permitted such individual access to Apple confidential information.

**30(b)(6) testimony topics (Exhibit 3)**

- All of Masimo's (including Sound United's) actual and planned channels for distribution or sale of the W1 in the United States.

- All facts and circumstances (including names of individuals) regarding participation of, or presence of, any individual in the design or development of the W1, where the Protective Order in any Masimo litigation against Apple permitted such individual access to Apple confidential information.

## LEGAL STANDARDS

"A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). "Although the Third Circuit has not adopted a standard for evaluating [motions for expedited discovery], the [District of Delaware] has previously held that a 'good cause' standard should apply—one requiring the party seeking discovery to demonstrate that its request is 'reasonable' in light of the relevant circumstances." *Williams v. Ocwen Loan Servicing, LLC*, C.A. No. 14-1096-LPS-CJB, 2015 WL 184024, at *2 (D. Del. Jan. 13, 2015) (citing *Kone Corp. v.*

*ThyssenKrupp USA, Inc.*, C.A. No. 11–465–LPS–CJB, 2011 WL 4478477, at *4–6 (D. Del. Sept. 26, 2011)).  Under this standard, a court weighs "the need for discovery at an early juncture in the litigation against the breadth of the discovery requests and the prejudice to the responding party." *Williams*, 2015 WL 184024, at *2 (citing *Kone*, 2011 WL 4478477, at *4).  To do so, courts consider "(1) the timing and context of the discovery requests, including whether a preliminary injunction hearing has been scheduled; (2) the scope and purpose of the requests; and (3) the nature of the burden to the respondent." *Id.*

## ARGUMENT

The facts favor expedited discovery.  The timing and context favor expedited discovery because Apple moved at the outset of the case, within two months of Masimo releasing its product, for discovery it urgently needs for potentially seeking a preliminary injunction on as complete of a record as possible.  The scope and purpose favor expedited discovery because the requests are narrowly tailored to two topics focused on information relevant to a preliminary injunction.  And the nature of the burden on Masimo is minimal because the topics are narrow and Masimo presumably knows the distribution channels of a company it recently acquired, and it knows whether its litigation counsel participated in design, development, or any other aspect of the W1.

*First*, Apple's request is time-sensitive.  "With regard to the timing and context of the discovery requests, this factor favors the moving party in situations where the urgent need for action is clear." *Williams*, 2015 WL 184024, at *2.  Apple's request is based on an urgent need for evidence relevant to the balance of equities and Masimo's intent to capture "100% market share"; both of which directly relate to a preliminary injunction.

Masimo just released its product on August 31, 2022, and it acquired Sound United for its "distribution channel, that is essential to . . . the Masimo Watch" so it could sell the W1 nationwide

aggressively with a goal of obtaining "100% market share."[24]   Discovery into whether Masimo can carry out its threat is relevant to a preliminary injunction. *See, e.g.*, *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1329 (Fed. Cir. 2008) (affirming district court's injunction order, including a finding of irreparable harm based on lost market share).  Additionally, if Masimo could distribute a lookalike product of inferior construction in the market in substantial numbers, that could diminish consumer opinion of the smartwatch market, and in particular a watch bearing designs patented by Apple, which is relevant to a preliminary injunction. *See, e.g.*, *Nevro Corp. v. Stimwave Techs., Inc.*, No. 19-cv-325, 2019 WL 3322368, *15 (D. Del. July 24, 2019) ("As Dr. Rosenberg explained, '[i]f another company were to offer high frequency parasthesia-free therapy that does not perform as well as Nevro's technology, and a skeptical physician were to try it, because, for example, it is significantly cheaper than other SCS systems, but the skeptic has a negative experience, the skeptic would find confirmation for their skepticism, and *Nevero could forever lose this physician as a potential customer*.") (alteration in original) (citing *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994)); *DMF, Inc. v. AMP Plus, Inc.*, 2019 WL 1099982, *13-14 (C.D. Cal. Mar. 7, 2019) (granting motion for preliminary injunction, and finding that the potential for a defendant with a lesser reputation in the relevant space to harm plaintiff's reputation as a seller of high quality products in the relevant space constituted irreparable harm to plaintiff's reputation).

Moreover, any misuse of Apple confidential information by a member of Cercacor's board in relation to the W1 would be relevant to the balance of equities. *See, e.g.*, *Sanofi–Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) (affirming preliminary injunction, including a finding by the district court that defendant's "harms were 'almost entirely preventable' and were

---

[24] Exhibit E (Masimo Q2 2022 Earnings Call Transcript (Aug. 9, 2022)).

the result of its own calculated risk"). Injunctions are subject to traditional rules of equity. *Keurig, Inc. v. Strum Foods, Inc.*, 769 F. Supp. 2d 699, 705 (D. Del. 2011) (citing *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). Any evidence of misuse of Apple confidential information is relevant to assess the relative equities between the parties. *See, e.g.*, *Saes Getters, S.p.A. v. Ergenics, Inc.*, 816 F. Supp. 979, 986–87 (D.N.J. 1992) ("In favor of granting a preliminary injunction is the fact that . . . defendant, once again, deliberately set out to copy plaintiff's invention and incorporate minor deviations to avoid infringement"), *aff'd*, 989 F.2d 1201 (Fed. Cir. 1993); *EZ Gard Indus., Inc. v. XO Athletic Co.*, No. 07-CV-4769, 2008 WL 1827490, at *5 (D. Minn. Apr. 23, 2008) ("First, the Court notes defendant's entry into this market falls hard on the heels of its hiring . . . EZ Gard's former sales manager, in violation of his non-compete agreement. . . . Second, the Court preliminarily finds a high probability that defendant knew it was marketing an infringing product."), *aff'd*, 302 F. App'x 920 (Fed. Cir. 2008); *Cornucopia Prods., LLC v. Dyson, Inc.*, No. CV 12-00234-PHX-NVW, 2012 WL 3094955, at *10 (D. Ariz. July 27, 2012) ("Cornucopia, by contrast, slavishly copied Dyson's fan, including the infringing design feature."). To be clear, Apple does not know whether Masimo's lawyer improperly participated in the design or development of the W1. That is precisely why Apple seeks discovery on this issue.

Forcing Apple to wait months for the usual timing of the start of discovery to seek evidence of the distribution channels and Masimo's copying would unfairly allow Masimo to sell and distribute its copycat product in the market long before Apple could move for a preliminary injunction on a more complete record.[25] Similarly, Apple needs discovery on whether Masimo's

---

[25] If forced to do so, Apple could move for a preliminary injunction without such evidence, but it would be doing so on a less complete record than it otherwise could.

W1 was born from any improper use of Apple's confidential information in order to have as complete a record as possible on the balance of equities before moving for a preliminary injunction. Thus, an urgent need exists for limited expedited discovery.

**Second**, Apple's requests are narrowly tailored to two issues relevant to a preliminary injunction. Masimo's intent to take "100% market share" based on its newly acquired company's distribution channels makes discovery into those distribution channels relevant to whether Apple faces irreparable harm. *See, e.g.*, *Acumed*, 551 F.3d at 1329 (affirming district court's injunction order, including a finding of irreparable harm based on lost market share); *Telebrands Direct Response Corp. v. Ovation Commc'ns, Inc.*, 802 F. Supp. 1169, 1178 (D.N.J. 1992) ("[U]nauthorized use of Ovation's patented design will have an irreparable effect on any market share which Ovation has established or may command in the future."). And as explained above, Masimo's ability to distribute a product of inferior build that uses Apple's patented designs is relevant to the potential to harm Apple's reputation and goodwill in the smartwatch market through post-sale consumer confusion and dissatisfaction. Apple's discovery requests are narrowly tailored to Masimo's distribution channels for the W1.

Likewise, if Cercacor's board member with knowledge of Apple confidential information participated in any way in designing or developing the W1, that calculated risk would be relevant to the balance of equities in determining whether a preliminary injunction is warranted.[26] *See, e.g.*, *Sanofi–Synthelabo*, 470 F.3d at 1383 (affirming preliminary injunction, including a finding by the district court that defendant's "harms were 'almost entirely preventable' and were the result

---

[26] The Protective Order in the Central District of California litigation states "[a]ll Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever . . . ." Exhibit M (Protective Order, D.I. 67, *Masimo Corp. v. Apple Inc.*, No. 20-cv-48-JVS-JDE (C.D. Cal.)) ¶ 5.1.

of its own calculated risk"); *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012) ("Further, the preliminary record suggests that [defendant's] losses were the result of its own calculated risk in selling a product with knowledge of [plaintiff's] patent."); *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."); *Edwards Lifesciences AG v. CoreValve, Inc.*, 2014 WL 1493187, at *7 (D. Del. Apr. 15, 2014) ("Additionally, any harm to Medtronic is the result of its willful infringement and deliberate flouting of the jury verdict against it, and thus cannot be counted in its favor.") (granting motion for preliminary injunction).

Apple should be permitted to discover the extent of any such unfair tactics for a complete record to support its potential motion for a preliminary injunction. Denying Apple's request would give Masimo an unfair advantage of not having to yet reveal whether its design resulted from improper actions, while forcing Apple to bring a weaker preliminary injunction motion than it otherwise could make. *See, e.g.*, *Celsis*, 664 F.3d at 931 ("The public interest favors the enforcement of [plaintiff's] patent rights here. We have long acknowledged the importance of the patent system in encouraging innovation.") (citations and internal quotation marks omitted) (affirming preliminary injunction). Apple's requests for documents and testimony are narrowly tailored to the participation of Masimo's litigation counsel in design or development of the W1.

**Third**, the nature of the burden on Masimo is minimal because Apple's topics are narrow. Apple's topics cover just two issues: (1) Masimo's (including Sound United's) actual and planned channels for distribution or sale of the W1 in the United States; and (2) participation of, or presence of, any individual in the design or development of the W1, where the Protective Order in any Masimo litigation against Apple permitted such individual access to Apple confidential

information.  The burden is also fair because it relates to information relevant to a preliminary injunction—and thus must come early in the case—and is not information Apple can obtain elsewhere.  Only Masimo knows its own distribution channels for the W1.  Only Masimo knows whether its litigation counsel participated in designing or developing the W1.

## CONCLUSION

Apple's discovery requests are urgent, narrow, and relevant to a preliminary injunction. The Court should permit expedited discovery into the topics attached to this motion, and set the response periods to 21 days for written discovery, and 45 days to provide 30(b)(6) testimony.

Dated: October 20, 2022

OF COUNSEL:

John M. Desmarais
**DESMARAIS LLP**
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400
jdesmarais@desmaraisllp.com

Peter C. Magic
**DESMARAIS LLP**
101 California Street
San Francisco, CA 94111
Tel: (415) 573-1900
pmagic@desmaraisllp.com

Respectfully submitted,

By:  */s/ David E. Moore*
David E. Moore (#3983)
Bindu A. Palapura (#5370)
**POTTER ANDERSON & CORROON LLP**
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Plaintiff Apple Inc.*