# EXHIBIT 9

1

```
              IN THE UNITED STATES DISTRICT COURT

                  FOR THE DISTRICT OF DELAWARE


   APPLE, INC.,              )
                             )
              Plaintiff,     )
                             ) C.A. No. 22-1377(MN)
        v.                   )
                             )
   MASIMO CORPORATION, et al.,)
                             )
              Defendants.    )


                          Wednesday, December 21, 2022
                          2:00 p.m.
                          Teleconference

                          844 King Street
                          Wilmington, Delaware


   BEFORE:  THE HONORABLE MARYELLEN NOREIKA
           United States District Court Judge


   APPEARANCES:

              POTTER ANDERSON & CORROON, LLP
              BY:  DAVID ELLIS MOORE, ESQ.

              -and-

              DESMARAIS LLP
              BY:  JOHN M. DESMARAIS, ESQ.
              BY:  PETER C. MAGIC, ESQ.

                        Counsel for the Plaintiff
```

2

```
1   APPEARANCES CONTINUED:

2
        PHILLIPS McLAUGHLIN & HALL, P.A.
3       BY:  JOHN C. PHILLIPS, JR., ESQ.

4       -and-

5       KNOBBE MARTENS
        BY:  BRIAN HORNE, ESQ.
6       BY:  STEVE JENSEN, ESQ.

7             Counsel for the Defendants

8

9            _ _ _ _ _ _ _ _ _ _ _ _

10
13:52:11
13:59:56 11        THE COURT:  Good afternoon, counsel.  Who is
13:59:58 12   there, please?
13:59:59 13        MR. MOORE:  Good afternoon, Your Honor.  On
14:00:01 14   behalf of the plaintiff, Dave Moore from Potter Anderson.
14:00:04 15   And I am joined by my co-counsel from Desmarais LLP, John
14:00:09 16   Desmarais and Peter Magic.
14:00:10 17        THE COURT:  Good afternoon.
14:00:12 18        MR. PHILLIPS:  Good afternoon, Your Honor.  This
14:00:15 19   is Jack Phillips on behalf of the defendant.  With me on the
14:00:20 20   phone are Brian Horne and Steve Jensen of the Knobbe firm.
14:00:27 21        THE COURT:  All right.  Good afternoon to you as
14:00:29 22   well.
14:00:29 23        Anyone else on the line?
14:00:32 24        MR. MAGIC:  Yes, Your Honor.  Peter Magic from
14:00:36 25   the Desmarais firm.  I want to let you know we have three
```

3

```
14:00:39  1   client representatives from Apple on the line as well.  We
14:00:43  2   have Colette Mayer, Ryan Moran and Natalie Post.
14:00:47  3        THE COURT:  All right.  Good afternoon to all of
14:00:49  4   you.
14:00:50  5        Let me just start by saying we have reviewed the
14:00:52  6   papers.  There was some back and forth in the papers
14:00:55  7   regarding whether or not you all had met and conferred.  So
14:01:00  8   I want to start by confirming that you have met and
14:01:03  9   conferred.  Plaintiff noted that there was a possible
14:01:06 10   agreement in the works with regard to interrogatories or
14:01:08 11   something of that sort.  Where are we currently on this
14:01:12 12   request for discovery?
14:01:13 13        MR. MAGIC:  Yes, Your Honor, this is Peter
14:01:17 14   Magic.  That's correct, we had tried to work out an
14:01:20 15   agreement about having the defendants answer at least the
14:01:26 16   interrogatory part of what we requested, what Apple has
14:01:30 17   requested.  We appear to be reaching an agreement there, but
14:01:35 18   I am not sure that it actually went all the way.  I last
14:01:39 19   inquired a few days ago as to whether we would be getting
14:01:44 20   responses before the hearing and I guess I don't have any
14:01:47 21   commitment on that part.  So I'll let defendants' counsel
14:01:52 22   speak to that.
14:01:53 23        But I am not sure that we have a firm commitment
14:01:56 24   from them to respond on the interrogatories.  But we
14:02:00 25   certainly got close.  And perhaps defense counsel will tell
```

4

```
14:02:03  1   me that they are committed to doing so now.  But I just
14:02:07  2   don't have that to report to Your Honor at the moment.
14:02:10  3        THE COURT:  All right.  Let me hear from the
14:02:13  4   defense counsel.  Where are we on that?
14:02:15  5        MR. HORNE:  Good afternoon, Your Honor.  Brian
14:02:17  6   Horne from Knobbe for Masimo.
14:02:20  7        The parties negotiated first the scope of the
14:02:23  8   interrogatories.  I think we have reached agreement on the
14:02:26  9   scope.  The problem was our proposal was that we would
14:02:30 10   respond to the interrogatories if it would resolve the
14:02:33 11   motion and Apple wouldn't commit to that and wanted to
14:02:36 12   proceed even if they got interrogatory responses, they
14:02:39 13   wanted to proceed to request documents and a deposition.  So
14:02:44 14   we will respond to the interrogatories at the appropriate
14:02:47 15   time if we can't resolve this motion.
14:02:49 16        THE COURT:  Okay.  A couple of other questions I
14:02:57 17   had.  For the plaintiff, you argue that there is an urgent
14:03:01 18   need to file your preliminary injunction motion.  This case
14:03:04 19   has been pending for over two months and I don't see a
14:03:07 20   motion yet.  Are you planning on filing one?
14:03:11 21        MR. MAGIC:  Your Honor, yes.  Based on
14:03:15 22   everything we know at the time of the expedited discovery
14:03:20 23   motion, there is enough there for us to move if we don't get
14:03:24 24   the discovery.  So we know that Masimo's CEO has made
14:03:30 25   certain representations about what his intent is with the
```

5

```
14:03:33  1   product that it released and its intent is to capture as
14:03:37  2   much market share as it can.  And it acquired a company for
14:03:40  3   a billion dollars to try to make good on that.  So while we
14:03:43  4   would certainly prefer to have the discovery first, the
14:03:51  5   idea, the hope was that we would have discovery first, but
14:03:55  6   we do have sufficient basis to go forward if we, you know,
14:04:00  7   can't get that --
14:04:02  8              THE COURT:  Let's say I don't give you the
14:04:03  9   discovery.  When are you planning to file?
14:04:07 10              MR. MAGIC:  I think that the best I could tell
14:04:10 11   you there is we could proceed in January to file.
14:04:15 12              THE COURT:  Okay.  Well, you're the one that's
14:04:18 13   going to have to convince me that you're being irreparably
14:04:23 14   harmed and every bit of delay seems like it's working
14:04:26 15   against you.  Does the information you're seeking really
14:04:30 16   strengthen the motion to such an extent that you need this
14:04:34 17   discovery?
14:04:35 18              MR. MAGIC:  Well, it certainly could, Your
14:04:37 19   Honor, that's why we are seeking it.  We won't know until we
14:04:41 20   get it is the basic answer to that question.
14:04:44 21              THE COURT:  All right.  Well, it seems to me
14:04:46 22   that the more prudent course would have been to file a
14:04:49 23   motion and then to try to get discovery.  Lots of courts say
14:04:53 24   when there is no motion for a preliminary injunction filed
14:04:57 25   and no hearing pending that expedited discovery isn't
```

6

```
14:05:04  1   warranted.  Why shouldn't I follow that?
14:05:06  2              MR. MAGIC:  Your Honor, I don't think that there
14:05:08  3   is any sort of binding authority in that regard as to
14:05:12  4   whether that's a course of action Your Honor would have to
14:05:15  5   take.
14:05:15  6              THE COURT:  I didn't ask if I had to take it,
14:05:18  7   I'm saying why doesn't it make sense?  You all think you
14:05:22  8   have such a great case that you can get a preliminary
14:05:26  9   injunction.  It just seems to me that you're asking for this
14:05:29 10   discovery, a lot of which seems like it's based on
14:05:32 11   speculation about someone doing something with your
14:05:38 12   confidential information, and I don't know, I mean, it just
14:05:42 13   seems to me that those cases are persuasive, so tell me why
14:05:48 14   I shouldn't be persuaded.
14:05:51 15              MR. MAGIC:  Sure.  Your Honor, let's break it
14:05:53 16   into the two areas that we're looking at.  Right?  So there
14:05:57 17   is two areas of discovery, one of them you just touched on,
14:06:00 18   the other one is the -- relates to Masimo's distribution
14:06:05 19   capability to actually distribute the product and market.
14:06:09 20   So --
14:06:10 21              THE COURT:  It's been two months now.  Have they
14:06:13 22   started distributing it in a way that you're fearful it's
14:06:17 23   going to bring down Apple's watch business?
14:06:21 24              MR. MAGIC:  No, not presently, Your Honor,
14:06:24 25   certainly not.  But the idea is that a preliminary
```

7

```
14:06:29  1   injunction is a tool for looking prospectively.  So if we
14:06:35  2   have the additional information, that could certainly be
14:06:39  3   relevant, the additional information about Masimo's
14:06:43  4   distribution capabilities for the product and its plans for
14:06:46  5   the future in that regard would certainly be relevant to the
14:06:49  6   prospective potential for irreparable harm.  That's why we
14:06:55  7   seek it.  Your Honor is correct, at the moment it doesn't
14:06:59  8   appear that the product has started to move in significant
14:07:02  9   numbers.
14:07:02 10              THE COURT:  Let me ask the defendants a couple
14:07:04 11   of questions.  Your briefing didn't focus much on the big
14:07:07 12   cost factors that I'm supposed to be focused on in looking
14:07:11 13   at this issue.  Why don't you tell me now under that statute
14:07:14 14   -- why under that standard I should deny the motion.
14:07:18 15              MR. HORNE:  Two things, Your Honor.  The good
14:07:20 16   cause argument on the Jensen discovery was based on some
14:07:25 17   speculation that Mr. Jensen has done something wrong while
14:07:30 18   they admit they have no evidence he's done anything wrong.
14:07:33 19   I think Mr. Magic used the word "could."  You mentioned
14:07:38 20   speculation.  We consider this a fishing expedition.  Mind
14:07:42 21   you they've had mountains of discovery --
14:07:45 22              THE COURT:  Go to the distribution channel one.
14:07:47 23   I understand what you're saying on the one about Mr. Jensen,
14:07:53 24   you could probably say that in most cases, right, could be
14:07:56 25   someone did something wrong, so I'm not persuaded on that
```

8

```
14:07:59  1   one.  Tell me about the distribution channel.
14:08:02  2              MR. HORNE:  In our conference with counsel that
14:08:04  3   we had after Apple filed its motion, we explained that
14:08:07  4   Masimo was selling the watch through its website and there
14:08:12  5   is no imminent plans for a blitzkrieg next week through the
14:08:17  6   distribution channels that we've acquired.
14:08:19  7              Their reasoning for the need were twofold.  One,
14:08:26  8   Mr. Kiani's statement in the earnings call that Masimo hopes
14:08:29  9   or believes their watch should command a hundred percent of
14:08:33 10   the market.  I don't think Apple can say with a straight
14:08:36 11   face they believe that Masimo is going to conquer a hundred
14:08:40 12   percent of the smartwatch market next quarter.  That's not
14:08:44 13   what he said, that's not what he meant.  I just don't think
14:08:47 14   Apple believes that.  I don't believe they can say that with
14:08:52 15   a straight face.
14:08:54 16              THE COURT:  What about the burden, what kind of
14:08:56 17   burden is this?  You kind of agreed that you give some
14:09:00 18   information in interrogatory, I understand that why you
14:09:03 19   would want to say look, that's all we're going to agree to
14:09:06 20   give you and if we have to go through the process of going
14:09:09 21   before the Court, we want to be able to impose everything,
14:09:12 22   but it doesn't seem in terms of burden that the
14:09:15 23   interrogatory responses would be too bad because you seem
14:09:18 24   willing to give those.  Is that not right?
14:09:21 25              MR. HORNE:  Yes, Your Honor, that's fine with
```

9

1  us. And especially on the distribution interrogatory, I
2  think we could get a response to that interrogatory in a few
3  weeks, especially given the holidays. And I think that
4  should resolve it completely.
5        THE COURT: All right. And then --
6        MR. MAGIC: Your Honor, may I be heard?
7        THE COURT: Yes, go ahead.
8        MR. MAGIC: Your Honor, I was only going to
9  briefly make sure that the facts are out there as to the
10 other discovery requests relating to Mr. Jensen. And I just
11 don't want it to get lost in the shuffle --
12       THE COURT: But my problem with that is it
13 didn't seem like your requests were narrowed to Mr. Jensen.
14 Based on the briefing it seemed like he was the only person
15 you were concerned with. But are your requests really
16 focused solely on him?
17       MR. MAGIC: Yes, we're willing to narrow --
18 we're willing to make that clearer than it was.
19       THE COURT: Okay. But you want me to grant a
20 motion to give you expedited discovery that you have asked
21 for, now you're going and saying wait, we'll take something
22 narrower. If you were coming in for expedited discovery,
23 shouldn't you have asked for what you actually wanted to
24 support with me?
25       MR. MAGIC: Correct. Yes. And I think our

10

1  briefing was pretty laser focused on Mr. Jensen and so
2  hopefully that was clear enough in terms of how we argued
3  the need. But yes, understood, Your Honor. I only wanted
4  to make sure that the facts didn't get lost in the shuffle
5  that this individual did have access to Apple confidential
6  information for a year-and-a-half while the W1 watch that
7  was eventually released and has an eerily similar design to
8  the Apple watch, while all that was under development,
9  Mr. Jensen was on the board of the R & D arm of Masimo, so
10 we're not --
11       THE COURT: But really that's all you have. All
12 you have is that someone who had access was on the board.
13 Is that what you're telling me? Apple watches are kind of
14 out there, aren't they, in the public?
15       MR. MAGIC: Correct. Yes, the watches are
16 certainly out there in the public.
17       THE COURT: So what is -- tell me something
18 other than the fact that he had access and he was on the
19 board. Do you have anything else that makes this something
20 other than a fishing expedition? There were lots of people
21 who had access to confidential information I'm guessing.
22 What reason do you have, give me some basis to say maybe
23 Mr. Jensen intentionally or unintentionally divulged
24 confidential information, what do you have?
25       MR. MAGIC: Sure. Sure. One, I would say it is

11

1  unusual for somebody who has confidential information from a
2  litigation to serve on the board of a company that's coming
3  out with a product that looks like the company that sues for
4  the product. In terms of specifics, you know, we did attach
5  to Apple's reply brief several of the documents that Apple
6  produced in the other litigation that drill into
7  confidential information about specific materials that are
8  used in that part of the Apple watch, and specific vendors
9  that are employed to produce that material, or produce those
10 parts. So there is business information there that could be
11 relevant to making decisions about whether to make a product
12 that comes out and looks similar to the Apple watch. But,
13 in fact, it's pretty much a copy of that design, that aspect
14 of the Apple watch. So that's what we pointed to. I agree
15 Your Honor, that we don't have a smoking gun or anything
16 like that, but it seems more than a typical situation.
17       THE COURT: All right. I have before me
18 plaintiff's motion to expedite discovery for information
19 relevant to a potential motion for a preliminary injunction.
20 A motion that has not been filed. Apple seeks information
21 related to one, defendants' distribution channels for the
22 sale of the W1; and two, alleged possible misuse of Apple's
23 confidential information produced in prior litigation.
24       Apple argues that the information would be
25 relevant to irreparable harm and balance of the equity.

12

1  Courts in this district have applied a good cause standard
2  in accepting requests for expedited discovery. Under the
3  standard, I must weigh the need for discovery with the
4  breadth of the discovery request and the prejudice to the
5  responding parties. Courts consider one, the timing and
6  context of the discovery requests; two, the scope and
7  purpose of the request; and three, the nature of the burden
8  on the respondents.
9        Plaintiff argues that it showed good cause
10 because it has an urgent need to file a preliminary
11 injunction motion given that defendants' product was
12 introduced to the market this past August, and because the
13 requests are narrowly tailored to issues relevant to the
14 preliminary injunction and because the burden on defendants
15 will be minimal.
16       I disagree. I find that plaintiff has failed to
17 show good cause to expedite discovery at this juncture and
18 therefore deny plaintiff's motion.
19       First, plaintiff has not yet filed a motion for
20 preliminary injunction which waives expediting discovery.
21 Furthermore, it is not clear that the information requested
22 would strengthen plaintiff's potential motion to such an
23 extent that expedited discovery is warranted before
24 plaintiff has even filed the motion.
25       Some of the information requested regarding the

13

```
14:14:52   1   alleged misuse of confidential information appears to be
14:14:55   2   based on mere speculation.  In addition, there is a pending
14:14:58   3   motion to dismiss requesting that I dismiss found united as
14:15:02   4   a defense in this case.  I also have concerns that the
14:15:04   5   discovery requested is substantially broader than what may
14:15:08   6   be relevant.  A need for the requested discovery at this
14:15:11   7   stage thus does not justify imposing the burden of
14:15:14   8   expediting discovery on defendants.  So the motion is
14:15:17   9   denied.
14:15:17  10           That being said, I think that there has been a
14:15:21  11   reasonable attempt to get some of the information that the
14:15:25  12   plaintiff may need out there in the form of interrogatories,
14:15:30  13   and so I guess my question for defendant is can you abide by
14:15:40  14   what you had previously agreed to do?
14:15:45  15           MR. HORNE:  Yes, Your Honor, that agreement was
14:15:47  16   on a distribution channel to provide interrogatory response.
14:15:51  17   I said a few weeks.  I think three weeks would be fair given
14:15:55  18   the holidays.
14:15:56  19           THE COURT:  All right.  Then even though I have
14:15:59  20   denied the motion, I will order that the defendants produce
14:16:03  21   that information, but no other information at this point.
14:16:08  22           Anything else that we need to discuss while
14:16:11  23   we're on the phone?
14:16:14  24           MR. HORNE:  No, Your Honor.  I just want to be
14:16:16  25   clear.  Respond to the interrogatory, I thought that was
```

14

```
14:16:19   1   clear on the record, I wanted to make sure.
14:16:23   2           THE COURT:  Anything else?  All right.  Thank
14:16:28   3   you everyone.
14:16:28   4           MR. MAGIC:  Nothing from Apple, Your Honor.
14:16:30   5   Thank you.
14:16:31   6           THE COURT:  Enjoy the holidays.
           7           (Teleconference concluded at 2:16 p.m.)
           8
           9           I hereby certify the foregoing is a true and
               accurate transcript from my stenographic notes in the proceeding.
          10

          11                   /s/ Dale C. Hawkins
                              Official Court Reporter
          12                   U.S. District Court
          13
          14
          15
          16
          17
          18
          19
          20
          21
          22
          23
          24
          25
```