# IN THE U.S. DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

APPLE INC.,

     *Plaintiff*,

v.

MASIMO CORPORATION and
SOUND UNITED, LLC,

     *Defendants*.

C.A. No. 1:22-cv-01377-MN

**REDACTED - PUBLIC VERSION**

## DEFENDANTS MASIMO CORPORATION AND SOUND UNITED, LLC'S
## OPPOSITION TO PLAINTIFF APPLE INC.'S
## MOTION FOR EXPEDITED DISCOVERY

*Of Counsel:*

Joseph R. Re
Stephen C. Jensen
Stephen W. Larson
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404 Telephone
(949) 760-9502 Fax
joe.re@knobbe.com

Brian Horne
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450 Telephone
(310) 551-3458 Fax
brian.horne@knobbe.com

John C. Phillips, Jr. (#110)
Megan C. Haney (#5016)
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200 Telephone
(302) 655-4210 Fax
jcp@pmhdelaw.com
mch@pmhdelaw.com

*Counsel for Defendants*
*Masimo Corporation and Sound United, LLC*

Dated: November 17, 2022

**TABLE OF CONTENTS**

**Page No.**

I.     INTRODUCTION ................................................................................ 1

II.    NATURE AND STAGE OF THE PROCEEDINGS ........................................ 2

III.   SUMMARY OF ARGUMENTS.............................................................. 3

IV.    STATEMENT OF FACTS ...................................................................... 4

       A.    Masimo revolutionizes non-invasive monitoring .................................. 4

       B.    Masimo has long sold consumer products ........................................... 5

       C.    Apple learns about Masimo's confidential technology and hires
             key Masimo personnel ................................................................... 7

       D.    Masimo sues Lamego and True Wearables ......................................... 8

       E.    Masimo sues Apple....................................................................... 9

             1.    Central District of California ................................................. 9

             2.    International Trade Commission........................................... 10

       F.    Masimo publicly launches the W1® .................................................. 11

V.     LEGAL STANDARDS ......................................................................... 11

VI.    ARGUMENT ..................................................................................... 12

       A.    The Court should deny the motion because Apple never met and
             conferred ................................................................................... 12

       B.    Apple's delay belies any purported emergency for discovery............................ 13

       C.    Apple's false claims of copying do not justify expedited discovery .................. 13

       D.    Apple's allegations against Masimo's counsel lack merit, have
             already been rejected, and do not justify discovery............................ 14

       E.    Apple demonstrates no need for expedited discovery on Masimo's
             distribution and sales channels for the W1® ...................................... 17

VII.   CONCLUSION.................................................................................. 19

# TABLE OF AUTHORITIES

**Page No(s).**

*Apple, Inc. v. Samsung Elecs. Co.*,
    No. 11-1846, 2011 WL 7036077 (N.D. Cal. Dec. 2, 2011), *aff'd in relevant
    part*, 678 F.3d 1314 (Fed. Cir. 2012) ....................................................................................19

*BAE Sys. Aircraft Controls, Inc. v. Eclipse Aviation Corp.*,
    224 F.R.D. 581 (D. Del. 2004) .............................................................................................12

*In the Matter of Certain Light-Based Physiological Measurement Devices and
    Components Thereof*,
    Inv. No. 337-TA-1276 ................................................................................................. *passim*

*CytoDyn Inc. v. Rosenbaum*,
    No. 21-1139, 2021 WL 4935888 (D. Del. Aug. 24, 2021) ....................................................11

*Eaton Corp. v. Rockwell Int'l Corp.*,
    No. 97-0421, 1997 WL 33708214 (D. Del. Nov. 4, 1997) ................................................3, 13

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
    No. 12-0193, 2017 WL 478565 (D. Del. Jan. 31, 2017) ............................................3, 12, 13

*Kone Corp. v. ThyssenKrupp USA, Inc.*,
    No. 11-0465, 2011 WL 4478477 (D. Del. Sept. 26, 2011) ............................................12, 18

*Mallinckrodt, Inc. v. Masimo Corp.*,
    147 Fed. App'x 158 (Fed. Cir. 2005) ......................................................................................5

*Masimo Corp. v. Philips Elec. N. Am. Corp.*,
    No. 09-0080, 2015 WL 2379485 (D. Del. May 18, 2015) .......................................................5

*Masimo Corp. v. True Wearables*, Inc.,
    2020 WL 5215314 (C.D. Cal. June 15, 2020) ..........................................................7, 8, 9, 15

*Park Lawn Corp. v. PlotBox, Inc.*,
    No. 20-1484, 2021 WL 3490020 (D. Del. Aug. 9, 2021) .....................................................12

*Power Integrations, Inc. v. BCD Semiconductor Corp.*,
    No. 07-0633, 2008 WL 5069784 (D. Del. Nov. 19, 2008) ...................................................18

*Williams v. Ocwen Loan Servicing, LLC*,
    No. 14-1096, 2015 WL 184024 (D. Del. Jan. 13, 2015) .................................................3, 12

**TABLE OF AUTHORITIES**
(*cont'd*)

**Page No(s).**

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ................................................................................................................ 11, 12

D. Del. L.R. 7.1.1 ............................................................................................................... 3, 12

# I.  INTRODUCTION

Masimo is the undisputed leader in non-invasive patient monitoring technology for physiological parameters such as pulse rate, arterial-oxygen saturation, and others.  Masimo's latest product, its W1® watch, measures those parameters and works seamlessly with Masimo's telehealth solutions.

Masimo revealed its W1® watch to the public in January 2022.  For months thereafter, Apple argued to the ITC that the W1® is an aspirational product that does not even compete with Apple.  Now, without pausing to confer with Masimo, Apple asks this Court for expedited discovery based on Apple's feigned fear that the W1® is an immediate threat and will take 100% of all smartwatch sales.  Apple's failure to follow the rules of this Court, its delay, and its inconsistent positions are each reason to deny its motion.

Moreover, the Court should deny Apple's motion on the merits.  Apple seeks discovery to determine whether Masimo's counsel violated the protective order in other related cases between the parties by using Apple's confidential information to help design the W1®.  But Apple admits it has no basis to disparage Masimo's counsel, ignores previous declarations from counsel explaining that he does not participate in Masimo's product design, and ignores that it recently lost a similar argument on a motion to compel in one of the parties' related cases.

Apple's argument also fails logic.  Apple alleges that Masimo copied the look of the back of a watch that Apple began selling widely in 2018.  Yet Apple admits that it never produced any confidential information to Masimo until June 2020.  Thus, there was nothing confidential about the look of Apple's watch for Masimo's counsel to share.  Moreover, as Masimo shows herein, Masimo did not copy Apple, and the parties' watches exhibit many differences.  Thus, the Court should deny any request for discovery on how Masimo's counsel handled Apple's confidential

information or its lack of involvement in designing the W1®—whether on an expedited or normal schedule.

The Court should also deny Apple's request for expedited discovery on Masimo's distribution channels for the W1®.  Apple has not demonstrated an emergency or any credible threat of irreparable injury.  Apple does not argue that it has lost a single sale or suffered any harm. In fact, as stated above, Apple has repeatedly told the ITC that the W1® is not a threat and argued that the W1® does not compete with the Apple Watch.

Apple instead relies on a statement from Masimo's CEO, Joe Kiani, that "we think we have a product that should command 100% market share."  But Kiani did not suggest that Masimo expected to take 100% of smartwatch sales.  Instead, Kiani explained that Masimo offers superior physiological-monitoring technology.  Therefore, customers who purchase a watch for physiological-monitoring functions should buy from Masimo.

Apple also fails to substantiate its argument that the W1® is inferior or will somehow harm the smartwatch market.  In fact, unlike Masimo, the physiological monitoring function on the Apple Watch is notoriously poor.

Finally, any alleged design-patent infringement would not harm Apple.  Apple's asserted design patents claim the look of the back of its watch, which hardly drives purchasing decisions. More importantly, that design is old, and Apple's current watches do not use it.

For these reasons, the Court should deny Apple's motion.

## II.  NATURE AND STAGE OF THE PROCEEDINGS

Apple filed this lawsuit and a companion lawsuit, Case No. 22-1378, on October 20, 2022. Apple asserts design patents in this case and utility patents in the companion case.  Masimo's Answers are due December 12, 2022.  Apple filed this motion the day it filed its complaint.

### III.  SUMMARY OF ARGUMENTS

1.       Apple did not meet and confer before filing its motion.  The Court can and should deny Apple's motion on this basis alone.  D. Del. L.R. 7.1.1; *Williams v. Ocwen Loan Servicing, LLC*, No. 14-1096, 2015 WL 184024, at *3 & n.4 (D. Del. Jan. 13, 2015); *Intellectual Ventures I LLC v. AT&T Mobility LLC*, No. 12-0193, 2017 WL 478565, at *6 (D. Del. Jan. 31, 2017).

2.       Masimo publicly announced its W1® watch in January 2022.  Apple has no excuse for waiting nearly ten months to bring an emergency motion for expedited discovery.  *Eaton Corp. v. Rockwell Int'l Corp.*, No. 97-0421, 1997 WL 33708214, at *7 (D. Del. Nov. 4, 1997).

3.       Apple is not entitled to any discovery on whether Masimo's counsel is involved in designing Masimo's products.  Apple admits that it has no basis to allege that Masimo's counsel violated any protective order.  Further, Masimo's counsel has previously provided declarations explaining that he does not participate in the design of Masimo's products.  Apple also recently lost a motion to compel discovery making the same meritless arguments seeking virtually the same discovery it seeks here.  Moreover, the Apple Watch sold widely in September 2018 embodies the design Apple contends Masimo copied.  But Apple did not produce any confidential information to Masimo until June 2020.

4.       Apple has not shown a need for expedited discovery on Masimo's distribution channels.  Apple makes no showing of actual or potential irreparable harm.  It has repeatedly disparaged Masimo's W1® and argued that the W1® does not compete with Apple.  It also mischaracterizes a statement Masimo's CEO made during an earnings call.  Masimo did not say that it expected to make 100% of all smartwatch sales with the W1®.  Instead, Masimo believes that customers who purchase a watch for physiological-monitoring functions should buy from

Masimo.  And Apple never argues that it believes Masimo will actually capture 100%, or any significant portion, of any market.

## IV.  STATEMENT OF FACTS

**A.      Masimo revolutionizes non-invasive monitoring**

Masimo is a medical-technology company that revolutionized non-invasive monitoring of physiological parameters such as pulse rate, oxygen saturation, and more.  Kiani Decl. ¶ 3.  Before Masimo, conventional pulse oximetry was unreliable, particularly when patients moved or had low peripheral blood flow.  *Id.* ¶ 4.  The industry had essentially given up on solving these problems. *Id.* For the most critical patients and babies who could not stay still, clinicians had to endure excessive false alarms, frozen measurements, and inaccurate measurements. *Id.*   Masimo's pioneering technology, Masimo Signal Extraction Technology ("Masimo SET"), solved these problems and dramatically improved clinicians' ability to monitor physiological signals.  *Id.*

Following its initial success with Masimo SET, Masimo re-invested its earnings heavily in non-invasively measuring other blood parameters, including total hemoglobin, carboxyhemoglobin, and methemoglobin.  *Id.* ¶ 5.  Masimo has continued to innovate, succeeding where others have consistently failed.  Masimo was the first, and remains the only, provider of these life-saving technologies.  *Id.*

Use of Masimo's technology has been proven to reduce blindness in premature infants, detect congenital heart disease in infants, save lives on the general care floor and post-surgery, and improve blood transfusion management, all while saving money. *Id.* ¶ 6. Today, Masimo sells a variety of monitors, including Masimo Root (left) and Radius-7 wearable monitor (middle and right).  Ex. 11; Ex. 12.

  

After Masimo introduced its technology, many others used that technology without permission. Kiani Decl. ¶ 9. This forced Masimo to file patent infringement lawsuits, in which Masimo prevailed. *See Mallinckrodt, Inc. v. Masimo Corp.*, 147 Fed. App'x 158, 176-77 (Fed. Cir. 2005) (confirming infringement and validity of Masimo patents, and reversing denial of permanent injunction); *Masimo Corp. v. Philips Elec. N. Am. Corp.*, No. 09-0080, 2015 WL 2379485, at *19 (D. Del. May 18, 2015) ("[A]n entire industry—other than Philips and one Chinese company—took licenses from Masimo for innovative technology that saved thousands of lives and billions of dollars in healthcare costs.").

Masimo's business has continued to grow and outpace any royalty income. Ex. 15 at 125; Ex. 16 at 130; Ex. 17 at 174. Masimo's product revenue grew from $599 million in 2015 to $1.239 billion in 2021. *Id.* With one exception, Masimo's annual royalty income never exceeded $30 million during the same period. *Id.*

## B.   Masimo has long sold consumer products

Masimo has also driven the adoption of patient monitoring beyond critical care areas. ████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Masimo launched iSpO₂, a consumer product, at the Las Vegas Consumer Electronics Show (CES) in January 2013. *Id*. iSpO₂ is a pulse oximeter that connects to smartphones. Ex. 14 at 102:8. iSpO₂ included Masimo's medical-grade technology, and its launch garnered extensive positive media coverage. *Id*. at 102:15-103:3, 103:23-104:10. Masimo soon launched MightySat, another consumer product. *Id*. at 111:25-112:2, 112:17-21. MightySat is a fully integrated finger-clip pulse oximeter with a display, which can wirelessly connect to smartphones. *Id*. at 112:4-7. Below are pictures of iSpO₂ (left) and MightySAT (right).



Since then, Masimo has continued to innovate and release new products to help people in a variety of settings. For example, Masimo released Radius PPG (below), which is a wrist-worn clinical grade Masimo SET® pulse oximeter. Ex. 20 at 1.



Radius PPG works with a variety of clinical grade monitors, as well as some consumer products: (1) hospital monitors that normally would use a wired Masimo pulse oximetery sensor (2) "Masimo Sleep," which is available directly to consumers to provide clinical grade data on the physiological status during sleep, and (3) "Masimo SafetyNet," which allows doctors and hospitals to remotely monitor patients, including while they are recovering at home. Kiani Decl. ¶ 15.

Masimo SafetyNet® is a secure, cloud-based patient management platform featuring clinical-grade measurements and remote patient surveillance. Kiani Decl. ¶ 16. Masimo

SafetyNet® was rapidly deployed for use during Covid-19 to allow hospitals to continuously monitor patients from their homes, when overcrowding at hospitals was plaguing healthcare. *Id.* ¶ 17. In February 2022, Masimo expanded the capabilities of SafetyNet® to include secure video conferencing. *Id.* ¶ 19. Masimo SafetyNet® now allows clinicians and hospitals to conduct multi-way audio- and video-based virtual appointments with at-home patients while being able to view vital signs and other physiological data. *Id.*

## C.    Apple learns about Masimo's confidential technology and hires key Masimo personnel

In 2013, after Masimo launched the iSpO$_2$,



Apple began hiring Masimo employees, including engineers and key management. Kiani Decl. ¶ 26.

Apple first hired Masimo's Chief Medical Officer and Executive VP for Medical Affairs, Michael O'Reilly. *Id.* Unbeknownst to Masimo at the time, Apple also contacted Marcelo Lamego, the Chief Technical Officer of Masimo spin-off Cercacor, in early 2013. *Masimo Corp. v. True Wearables, Inc*., No. 18-2001, D.I. 321-1 at Page ID #:18252-53 (Lamego October 2013 Email to Apple's CEO Tim Cook). In October 2013, Lamego confidentially wrote to Apple's CEO, Tim Cook at 1:00 am. *Id.* Lamego told Cook that Apple needed him to solve the "deceptive part" because it is "easy to develop" medical products for most users, but "extremely more complex" to do so for all users. *Id.* Referencing his "10 years" at Masimo and Cercacor, Lamego

claimed he could solve the deceptive patient equation for Apple in exchange for a "senior technical executive position." *Id.* at 520-21. By 10:30 a.m. that same morning, Apple's Director of Recruiting responded: "I saw your note to Tim Cook" and immediately referred Lamego to Apple's executive recruiting team. *Id.* at 522. Apple later filed patent applications naming Lamego as inventor directed toward technologies he worked on at Masimo and Cercacor, and with which he had no prior experience or knowledge. Kiani Decl. ¶ 28.

**D.    Masimo sues Lamego and True Wearables**

In 2014, Lamego left Apple and started his own company named True Wearables. *Masimo v. True Wearables*, D.I. 600 at 6. In 2018, Masimo sued Lamego and True Wearables in the Central District of California for misappropriation of trade secrets among other things. *Id.*, D.I. 1. Lamego and True Wearables sought to exclude Steve Jensen, Masimo's long-time outside counsel, from accessing their confidential information. *Id.*, 2020 WL 5215314, at *4; *accord In the Matter of Certain Light-Based Physiological Measurement Devices and Components Thereof*, Inv. No. 337-TA-1276, EDIS Doc. No. 760308 at 11 (Nov. 18, 2021). The Court rejected that argument. *Id.* (overruling an objection to the disclosure of confidential information to Mr. Jensen, "credit[ing] Mr. Jensen's declaration regarding the scope of his current involvement with Plaintiffs [Masimo and Cercacor], including his attesting under oath and as an officer of the Court since 1990 that he does not have a competitive decision-making role with Plaintiffs").

In March 2022, the Court held a bench trial on Masimo's claims. The court ruled for Masimo, finding that Lamego misappropriated Masimo's trade secrets, breached his fiduciary duty, and violated his employee agreements. *See generally id.*, D.I. 600.

E.    **Masimo sues Apple**

1.    **Central District of California**

In January 2020, Masimo sued Apple in the Central District of California for trade secret misappropriation, patent infringement, and correction of inventorship/ownership of Apple patents naming Lamego as inventor.  *Masimo v. Apple*, D.I. 1.  Apple argued that case was related to *True Wearables* and persuaded the court to transfer the case to Judge Selna, the judge assigned to *True Wearables*.  *Id.*, D.I. 7.

The parties have repeatedly disputed Masimo's access to Apple's confidential information. As defendants attempted in *True Wearables*¸ Apple sought to exclude Jensen from accessing Apple's confidential information.  *Certain Light-Based Physiological Measurement Devices*, EDIS Doc. ID. 760308 at 11 (citing *Masimo v. Apple*, D.I. 67).  Jensen submitted a sworn declaration expressly explaining that he does ***not*** make business decisions for Masimo/Cercacor, does ***not*** make competitive decisions for Masimo/Cercacor, and does ***not*** provide technical design advice to Masimo/Cercacor.  *Masimo v. Apple*, D.I. 61-3 (Jensen Decl.) ¶¶ 5-7, 10.  Jensen is a seasoned litigator practicing since 1990, and he explained that he is accustomed to abiding by protective orders, how he complies with protective orders, and that he can and does abstain from any discussion that could even arguably be affected by information he received under a protective order.  *Id.* ¶¶ 2, 5, 9.  The court rejected Apple's request.  *Certain Light-Based Physiological Measurement Devices*, EDIS Doc. ID 760308 at 11 (citing *Masimo v. Apple*, D.I. 67)*.*

After failing to exclude Jensen, Apple later moved to compel Masimo to respond to discovery on Masimo's procedures to protect Apple's confidential information.  *Masimo v. Apple*,

D.I. 970 at 11-12.  Apple's arguments mirrored those it makes here.[1]  *Id.* at 12-13.  On October

14, 2022—just one week before Apple filed this case—the Special Master denied Apple's motion

as "discovery about discovery" and because Apple had no basis to suggest any wrongdoing by

Masimo's counsel, which included Jensen.  *Id.*

### 2.      International Trade Commission

In July 2021, Masimo also filed a patent infringement complaint against Apple at the U.S.

International Trade Commission.  *Certain Light-Based Physiological Measurement Devices*, EDIS

Doc. ID 746186.  Apple once again objected to Jensen accessing its confidential information.  *Id.*,

EDIS Doc. ID 760308.   Apple argued that Jensen's membership on the board of Cercacor

presented a significant risk that he would use Apple's confidential information in competitively

sensitive discussions.  *Id.* at 2, 10.  Masimo responded that Jensen's role on Cercacor's Board "is

to provide overall corporate governance and monitor the activities of Cercacor" and he "do[es] not

expect any competitive business decisions to be made at board meetings," and "[i]f a business

decision or even a discussion did arise that could arguably be affected by information [he has]

received under a protective order, [he] would simply abstain from providing any input on that

matter."  *Id.* at 11.   Jensen also readily offered to resign from the board during the ITC

investigation.  *Id.* at 12, 16.  The ALJ found that "there is no reason to doubt Mr. Jensen's

commitment to adhere to the protective order" and allowed him to access Apple's information if

he resigned from the board.  *Id.* at 15-17.  Jensen promptly did so on December 8, 2021.  Horne

Decl. ¶ 31.

---

[1]      The parties' submitted their briefs on Apple's motion under seal.  Masimo sought Apple's
permission to submit those briefs with this opposition.  Apple denied Masimo's request.  Horne
Decl. ¶ 30.

The ALJ held an evidentiary hearing on the merits in June 2022. *See generally* Ex. 14. Masimo's domestic industry contentions relied on the W1®. *Certain Light-Based Physiological Measurement Devices*, EDIS Doc. ID 771338 at 3. Apple dismissed the W1® as "a hoped-for aspirational product" and argued the technology in the W1® is as "old as the hills." Ex. 14 at 42:25-43:1; 57:9-16. As recently as September 2022, Apple argued that the W1® posed "no competition at all" to Apple Watch. *Certain Light-Based Physiological Measurement Devices*, EDIS Doc. ID 780239 at 1.

**F.      Masimo publicly launches the W1**

The W1® is a versatile product that uses Masimo SET® technology to obtain oxygen saturation, pulse rate, and respiration rate. Ex. 8 at 7. In addition, it includes added capabilities for measuring steps, detecting falls, and capturing ECG signals. *Id.*

Masimo publicly unveiled its W1® watch in January 2022. D.I. 1 ¶ 35. At the same time, Masimo demonstrated the watch and gave interviews to the media. *Id.* & *id.* n.27. In February 2022, Masimo announced that it would acquire Sound United in part to help distribute the W1®. *Id.* ¶ 37. Masimo announced the limited market release of the W1® in May 2022, Ex. 9, and it announced the full release in August 2022.

## V.  LEGAL STANDARDS

Parties cannot serve discovery until they have conferred pursuant to Rule 26(f). Fed. R. Civ. P. 26(d)(1). To determine whether expedited discovery is warranted, courts use "a 'good cause'/reasonableness analysis, under which the moving party must demonstrate that its request is reasonable in light of the relevant circumstances." *CytoDyn Inc. v. Rosenbaum*, No. 21-1139, 2021 WL 4935888, at *1 (D. Del. Aug. 24, 2021) (citing *Kone Corp. v. ThyssenKrupp USA, Inc.*, No. 11-0465, 2011 WL 4478477, at *4 (D. Del. Sept. 26, 2011)). Good cause "depends on the actual circumstances of each case, as well as a consideration of certain factors such as a pending

preliminary injunction hearing, the need for discovery, and the breadth of the moving party's discovery requests." *BAE Sys. Aircraft Controls, Inc. v. Eclipse Aviation Corp*., 224 F.R.D. 581, 587 (D. Del. 2004); *Kone*, 2011 WL 4478477, at *4.

To prevent "a plaintiff with entirely frivolous claims and only a remote possibility of irreparable injury from using a motion to expedite discovery to engage in a fishing expedition . . . a motion to expedite should be granted only if the plaintiff has articulated a sufficiently colorable claim and shown a sufficient possibility of a threatened irreparable injury, as would justify imposing on the defendants and the public the extra (and sometimes substantial) costs of an expedited preliminary injunction proceeding." *Park Lawn Corp. v. PlotBox, Inc*., No. 20-1484, 2021 WL 3490020, at *2 (D. Del. Aug. 9, 2021); Fed. R. Civ. P. 26(b) ("Parties may obtain discovery . . . relevant to any party's claim or defense and proportional to the needs of the case, . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").

## VI.   ARGUMENT

### A.   The Court should deny the motion because Apple never met and conferred

Apple never conferred with Masimo on its motion, which did not include the required Local Rule 7.1.1 certification.  *See* D. Del. L.R. 7.1.1; Hon. Noreika's Preferences & Procedures for Civil Cases at 1.  Courts have denied motions for this reason alone. D. Del. L.R. 7.1.1 ("[F]ailure to so aver may result in dismissal of the motion."); *Williams v. Ocwen Loan Servicing, LLC*, No. 14-1096, 2015 WL 184024, at *3, n.4 (D. Del. Jan. 13, 2015) (denying plaintiff's motion for expedited discovery: "[T]he Court is also concerned about whether the meet and confer requirements of Local Rule 7.1.1 were met regarding the motion. . . .  Such concern provides another reason militating in favor of denial of the motion"); *Intellectual Ventures I LLC v. AT&T*

-12-

*Mobility LLC*, No. 12-0193, 2017 WL 478565, at *6 (D. Del. Jan. 31, 2017) (same).  The Court

should do the same here.

**B.      Apple's delay belies any purported emergency for discovery**

Apple argues that it "urgently" needs discovery and that its request is "time-sensitive."  D.I.

7 at 19.  To support that argument, Apple incorrectly represents that "Masimo just released its

product on August 31, 2022."  *Id.*  Although Masimo did announce the full market release of the

W1® on that date (Ex. 10 at 12) it released the W1® earlier: Masimo unveiled the watch to the

public in January 2022 (D.I. 1 ¶ 35; *id.* & *id.* n.27), announced the Sound United acquisition in

February 2022 (*id.* ¶ 37; *see generally* Exs. 6-7, *see also* Ex. 8), and announced the limited market

release of the W1® in May 2022 (Ex. 9). Thus, Apple waited to bring this lawsuit until over ten

months after the W1® was publicly released.

Apple benefitted by waiting to bring this motion.  Its arguments to this Court about feigned

irreparable harm contradict its arguments at the ITC.  In that forum, Apple argued that Masimo's

W1® watch is an aspirational product.  Ex. 14 at 42:25-43:1. And as late as September 2022,

Apple argued that the W1® posed "no competition at all" to Apple Watch.  *Certain Light-Based*

*Physiological Measurement Devices*, EDIS Doc. ID 780239 at 1. The Court should not reward

Apple's delay and should instead deny Apple's motion. *Eaton Corp. v. Rockwell Int'l Corp.*, No.

97-00421, 1997 WL 33708214, at *7 (D. Del. Nov. 4, 1997) (impermissible delay where plaintiff

waited ten months after first learning of the existence of the accused product to accuse it of

infringement and then an additional two months to seek a preliminary injunction).

**C.      Apple's false claims of copying do not justify expedited discovery**

Apple claims this is "a case of blatant, unabashed copying," D.I. 7 at 9, and that the W1®

is a "knock-off," *id.* at 7, 9, 14.  Contrary to Apple's assertions, Masimo copied nothing, and the

Apple Watch and the W1® differ greatly.  The watches differ in at least the following ways:

- Apple Watch has a round crown, "winder" type button, and a flush button whereas the W1® has a classic computer on the wrist appearance (Horne Decl. ¶ 2);

- Apple Watch and W1® have a different band design (*id*. ¶ 3);

- Bands for the Apple Watch and W1® have a different attachment mechanism (*id*. ¶ 4);

- Apple Watch has one round window in the middle for the light emitting diodes (LEDs) whereas the W1® has two semi-circular windows in the middle for the LEDs (*id*. ¶ 5);

- Apple Watch has eight small rectangular windows for the photodetectors whereas the W1® has six far larger trapezoid-shaped photodetectors (*id*. ¶ 6);

- Apple Watch includes text surrounding the circular sensor whereas the W1® does not (*id*. ¶ 7);

- Apple Watch includes three gray circles whereas the W1® does not (*id*. ¶ 8);

- Apple Watch is a continuous surface highly polished back crystal, whereas the Masimo W1® has no shiny or continuous crystal surface (*see id.* ¶¶ 2-8).

## D.   Apple's allegations against Masimo's counsel lack merit, have already been rejected, and do not justify discovery

Apple argues without any support that it needs discovery to determine whether Jensen, Masimo's outside counsel, violated the Protective Order in the California case or ITC investigation by using Apple's confidential technical documents to help Masimo design its W1® watch.  Such

arguments relating to "discovery about discovery" are "often looked at skeptically." *Masimo v Apple*, D.I. 970 at 12. The Court should deny such discovery—whether expedited or on a normal schedule.

Apple expressly admits it has ***no*** evidence to support its impugning the integrity of another member of the bar.  D.I. 7 at 21 ("Apple does not know whether [Jensen] improperly participated in the design or development of the W1"); *id.* at 8 ("Apple does not know whether [Jensen] misused any Apple confidential information, whether inadvertently or otherwise . . . .").

Moreover, Apple's assertion that it "does not know" whether Jensen was involved in developing the W1® is false.  In both the California case and ITC investigation, Apple objected to Jensen accessing Apple's confidential information. *See generally Certain Light-Based Physiological Measurement Devices*, EDIS Doc. ID. 760308 (summarizing the dispute's history). In response, Jensen submitted sworn declarations expressly explaining that he does ***not*** make business decisions for Masimo/Cercacor, does ***not*** make competitive decisions for Masimo/Cercacor, and does ***not*** provide technical design advice to Masimo/Cercacor.  *See, e.g., Masimo v. Apple*, D.I. 61-3 (Jensen Decl.) ¶¶ 6-7, 10; *see also Masimo v. True Wearables*, D.I. 82-2 (Jensen Decl.) ¶¶ 11-12, 20. Jensen also resigned from the Cercacor board to resolve the dispute at the ITC. Horne Decl. at 31. Both the California court and the ITC allowed Jensen to access Apple's confidential information under their respective protective orders. *Certain Light-Based Physiological Measurement Devices*, EDIS Doc. ID. 760308 at 11 (citing *Masimo v. Apple*, D.I. 67); *id.* At 16-17; Horne Decl. at 31; *see also Masimo v. True Wearables*, 2020 WL 5215314, at *4.

Apple also ignores that discovery on its argument has already been soundly rejected. It recently sought discovery on Masimo's procedures to protect Apple's confidential information in

the California district court case. *Masimo v. Apple*, D. I. 970 at 11-12.  The Special Master rejected the arguments Apple makes here, explaining that Apple's demand for invasive "discovery-on-discovery" about litigation counsel lacks merit when Apple has no evidence to suggest any wrongdoing.  *Id.* at 12-13.  That logic applies even more forcefully here where Apple is seeking "discovery-on-discovery" about a ***different*** case after losing the same issue in a different forum.

Apple's arguments also defy logic. Apple fails to identify any confidential information that Masimo allegedly had that could have been used to copy the look of the Apple Watch.[2]  Critically, Apple accuses Masimo of copying the look of the back of the Apple Watch Series 4, information that was publicly available in September 2018. Ex. 3.  Apple did not produce confidential information until June 2020.  D.I. 7 at 9.

Apple wrongly insinuates that Masimo only recently began selling consumer products, and that it copied Apple due to a supposed financial hardship when Masimo's royalty agreements expired.  D.I. 7 at 13.  Apple ignores that Masimo has been selling consumer products since 2012, and that ███████████████████████████████████████████████████████████████ ███████████████.  Ex. 24. Apple also ignores that, as Masimo's public financial reports and the table below show, Masimo's product revenue overwhelms its royalty revenue, and more than made up for the discontinuation of the royalties stemming from Masimo's patent-litigation victory. Indeed, its product revenue has increased each year and is currently at an all-time high.

---

[2]     Apple contends that it began producing source code on June 30, 2020.  D.I. 7 at 9. But Apple's source code is irrelevant to its allegations here that Masimo copied the back of Apple's watch, and Apple identifies no basis to suggest Masimo used that code. Apple knows that Jensen has never inspected its source code, because such inspections occur only at its counsel's office.

| Year | Product Revenue | Royalty Revenue |
|------|-----------------|-----------------|
| 2015 | $599 million | $30 million |
| 2016 | $663 million | $30 million |
| 2017 | $741 million | $56 million |
| 2018 | $829 million | $28 million |
| 2019 | $936 million | $1.4 million |
| 2020 | $1.143 billion | None |
| 2021 | $1.239 billion | --- |

Ex. 15 at 125; Ex. 16 at 130; Ex. 17 at 174. In 2021, Masimo stopped reporting royalty income separately.

**E.    Apple demonstrates no need for expedited discovery on Masimo's distribution and sales channels for the W1®**

Apple argues that, if Masimo's W1® is not enjoined, Apple may suffer irreparable harm. D.I. 7 at 14.  Apple, however, does not identify any harm or even a single lost sale.  In fact, Apple never even argues that Masimo will take any appreciable sales from Apple with the W1®.

Moreover, during the ITC investigation, Apple repeatedly disparaged the W1®.  It argued that the W1® is an "aspirational product" with technology as "old as the hills."  Ex. 14 at 42:25-43:1; 57:9-16. As recently as September 2022, Apple argued that the W1® is "no competition at all."  *Certain Light-Based Physiological Measurement Devices*, EDIS Doc. ID 780239 at 1.  Apple made those arguments to contend that Masimo lacked a domestic industry. *See, e.g.*, *id*. at 1-2. Now, after completing briefing at the ITC, Apple argues the exact opposite: that it would suffer irreparable harm if Masimo were to continue selling the W1®.

Apple provides no valid reason for its about-face.  Instead, Apple contends that Masimo's CEO, Joe Kiani, supposedly threatened to take "100% market share."  D.I. 7 at 8, 17, 19, 20, 22. Kiani, however,  said merely that "we think we have a product that should command 100% market share." D.I. 8, Ex. E at 486.  Kiani did not suggest that Masimo expects to make every sale of, for

example, smartwatches. Kiani Decl. ¶¶ 31-33. Instead, he was discussing customers who purchase a watch for physiological-monitoring functions. *Id.* ¶ 33. Kiani explained that Masimo **should** be able to convince such customers to buy Masimo's W1® because of Masimo's superior physiological-monitoring technology. *Id.* ¶¶ 32-33. Kiani never suggested that the W1® would imminently capture 100% of Apple's sales, much less 100% of all smartwatch sales. *Id.*

Apple also provides no support for its argument that the W1® is "inferior" or will somehow "diminish consumer opinion of the smartwatch market." D.I. 7 at 20. The Court should disregard Apple's unsupported speculation. *Kone*, 2011 WL 4478477, at *4 (plaintiff "must offer some evidence beyond mere speculation, because otherwise irreparable harm would be found in every patent case where the patentee practices the invention"); *Power Integrations, Inc. v. BCD Semiconductor Corp.*, No. 07-0633, 2008 WL 5069784, at *3, *11-12 (D. Del. Nov. 19, 2008) (finding no irreparable harm where the record contained "no evidence suggesting that industry perceptions of [plaintiff's] pioneer status have in any way changed since" the defendant's alleged infringement began), *report and recommendation adopted*, No. 07-0633, 2008 WL 5101352 (D. Del. Dec. 3, 2008).

Moreover, Apple's argument that the W1® is inferior is ironic because the accuracy and reliability of the Apple Watch's physiological measurements are known to be poor. Ex. 18 at 1; Ex. 19 at 1. Apple even has a footnote on its website stating that its "Blood Oxygen app measurements are not intended for medical use." Ex. 5 at 1, 4.

Masimo, by contrast, developed and sells the recognized leading non-invasive monitoring technology, used on over 200 million patients a year. D.I. 1 ¶ 26. It is recognized in extensive peer reviewed articles for having superior technology. Ex. 13. Apple itself referred to Masimo as the "platinum of noninvasive monitoring." Ex. 14 at 104:14-16; *see also id.* at 50:13-17 ("Credit where

credit is due. We think Masimo has made some valuable contributions to the clinical setting, and we respect the work that they have done in connection with public health in that setting."). The undisputed technology leader used on 200 million patients a year in hospitals could not possibly harm Apple. The opposite, however, is understandable—Apple's sales of pulse oximetry technology with known flaws will undoubtedly cause serious damage to sales to consumers of the medical-grade technology offered by Masimo.

Finally, any alleged infringement of Apple's asserted design patents could hardly harm Apple.[3] The patents all cover the ***back*** of the Apple Watch. Indeed, Apple's own press release does not tout the back of the watch. Ex. 3. And Apple brushes over the fact that it no longer uses the design Masimo allegedly copied. Apple relies on the design of the Apple Watch Series 4-5, D.I. 7 at 7, with Apple Watch Series 4 released in 2018, Ex. 3, and Apple Watch Series 5 superseded by 2020, Ex. 4. Apple's current watches use a ***different*** back crystal design that includes eight circles arranged in a circle. *See* Horne Decl. ¶ 10. Apple never attempts to explain how it will be irreparably prejudiced by Masimo selling a watch that supposedly uses a design that Apple itself largely abandoned more than three years ago. *Apple, Inc. v. Samsung Elecs. Co*., No. 11-1846, 2011 WL 7036077, at *20 (N.D. Cal. Dec. 2, 2011) ("Apple must establish a nexus between Apple's harm . . . . and Samsung's allegedly infringing conduct." (collecting cases)), *aff'd in relevant part*, 678 F.3d 1314 (Fed. Cir. 2012); *id.* at *22 ("Apple has not provided sufficient evidence to establish more than a mere possibility of future harm.").

## VII.  CONCLUSION

For the foregoing reasons, the Court should deny Apple's motion.

---

[3]      Apple faces a steep uphill battle on liability. Aside from the differences shown above, Masimo will prove that Apple's designs are functional, found in the prior art, or both.

Respectfully submitted,

November 17, 2022

PHILLIPS MCLAUGHLIN & HALL, P.A.

*Of Counsel:*

By: */s/ John C. Phillips, Jr.*

Joseph R. Re
Stephen C. Jensen
Stephen W. Larson
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404 Telephone
(949) 760-9502 Facsimile
joe.re@knobbe.com

John C. Phillips, Jr. (#110)
Megan C. Haney (#5016)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200 Telephone
(302) 655-4210 Fax
jcp@pmhdelaw.com
mch@pmhdelaw.com

Brian Horne
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450 Telephone
(310) 551-3458 Facsimile
brian.horne@knobbe.com

*Counsel for Defendants*
*Masimo Corporation and Sound United, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Megan C. Haney, hereby certify that on November 17, 2022, a copy of Defendants Masimo Corporation and Sound United, LLC's Opposition to Plaintiff Apple Inc.'s Motion for Expedited Discovery was served on the following in the manner indicated below:

### <u>VIA E-MAIL</u>

David E. Moore
Bindu A. Palapura
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
dmoore@potteranderson.com
bpalapura@potteranderson.com

John M. Desmarais
Desmarais LLP
230 Park Avenue
New York, NY 10169
jdesmarais@desmaraisllp.com

Peter C. Magic
Desmarais LLP
101 California Street
San Francisco, CA 94111
pmagic@desmaraisllp.com

*/s/ Megan C. Haney*
Megan C. Haney (#5016)