# EXHIBIT 21

## Page 1

```
IN THE UNITED STATES DISTRICT COURT
   IN AND FOR THE DISTRICT OF DELAWARE

APPLE INC.,                    )
-------------------Plaintiff,  )
                               ) Case No.
         vs.                   ) 22-1377-MN-JLH
                               ) 22-1378-MN-JLH
MASIMO CORP, et al.,           )
-------------------Defendant.  )


         TRANSCRIPT OF DISCOVERY CONFERENCE


         DISCOVERY CONFERENCE had before the
Honorable Jennifer L. Hall, U.S.M.J., in
Courtroom 2B on the 3rd of August, 2023.


                  APPEARANCES
         POTTER ANDERSON & CORROON LLP
              BY:  DAVID MOORE, ESQ.
                      -and-
         WILMER CUTLER PICKERING HALE AND DORR LLP
              BY:  JENNIFER MILICI, ESQ.
                   MARK FORD, ESQ.
                   LYDIA TURNAGE, ESQ.
                      -and-
         DESMARAIS LLP
              BY:  JEFF SEDDON, ESQ.
                   BEN LUEHRS, ESQ.
                              Counsel for Plaintiff
```

## Page 2

(Appearances continued.)

PHILLIPS MCLAUGHLIN & HALL P.A.
   BY:  MEGAN HANEY, ESQ.

       -and-

KNOBBE MARTENS
   BY:  STEPHEN LARSON, ESQ.

                       Counsel for Defendant

## Page 3

THE COURT: All right. So we're here for some discovery disputes. Why don't we have folks make their appearances for the record

MR. MOORE: Good morning, Your Honor. David Moore from Potter Anderson on behalf of Apple. I'm joined by co-counsel from Wilmer Hale Jennifer Milici, Mark Ford, and Lydia Turnage. Also joined by Jeff Seddon and Ben Luehrs from Desmarais, and also Natalie Pous and Jack Pararas from Apple.

THE COURT: Hi. Good morning, everybody.

They've got you out numbered today.

MS. HANEY: Yes, Your Honor. Good morning. Megan Haney from Phillips, McLaughlin, and Hall, and I'm joined today by Steve Larson from Knobbe.

THE COURT: Good morning.

Well, I've got a giant stack of discovery disputes in front of me. I can tell you we've looked them over closely. One thing I will say is this: You probably have a better recollection of everything that's happened in this courtroom than I do because I know, and I can tell the way this case has been going, you

## Page 4

guys have been spending a lot of time on it. I've got to tell you I've got hundreds of other cases. You may have to remind me of allegations and things that happened. We had a lot going on in the courthouse this month, as you all know.

So let's start with the dispute that I read first, which is Apple's first dispute, and it talks about Masimo allegedly withholding evidence related to antitrust.

MR. FORD: Good morning, Your Honor. Mark Ford. I've been here a few times. First time I get to talk, which is nice.

So, Your Honor, this is the first of two disputes that Apple brings. It relates to the Walker Process damages. And, frankly, this is about whether Apple gets any meaningful discovery at all into what may be the only claim of damages Masimo brings.

Imagine a plaintiff saying you cost me tens of millions of dollar because I had to hire a contractor, but I'm not going to give you the details and underlying invoices for what I paid for that would allow you to test that or substantiate whether what I'm paying

29

1 additional meet-and-confer on this issue?
2         MR. LARSON:  Potentially.  We're
3 having a meet-and-confer about the search
4 terms, of course, in general about the burden
5 and how many hits they are.  I think a document
6 sufficient to show would make us more
7 comfortable.  We could talk to the executives,
8 try figure out what the factors are and provide
9 some category of documents.  Our only concern
10 is to make sure we agree to produce all
11 documents, that we know what we're searching
12 for and looking for.
13         THE COURT:  Why don't you
14 meet-and-confer on that.  I'm not going to say
15 documents sufficient to show is enough at this
16 point, because I have no idea what exists, and
17 sounds like you don't either.
18         So they're not refusing to produce those.
19 Those are going to move forward in the ordinary
20 course, and you all are going to meet about
21 burden, and that's subjects to any future
22 rulings under Rule 26.
23         So I think that's the first set of
24 disputes, so let's move on.
25         So now we've got Masimo's disputes.  So

30

1 let me get those pulled up.  These are the
2 disputes, also, about the antitrust
3 counterclaims.  Let's take these one by one.
4         Go ahead, Counsel.
5         MR. LARSON:  Thank you, Your Honor.
6 So I'll begin with the first section of
7 our letter, and this is where we're requesting
8 the Court's assistance, just to begin with,
9 before we get into particular document
10 requests, and we want clarity that there's no
11 general embargo on predatory infringement
12 discovery or IOS discovery.  The reason this is
13 important is Apple says they're not going to
14 answer 'rogs, they're not going to supplement
15 their initial disclosures, they're not going to
16 provide pretrial disclosures.  They've asked us
17 to not provide expert discovery on this and
18 have expert reports on this.
19         And really, the argument has to do with
20 discovery-type arguments.  They're really about
21 the Court's report and recommendation, and we
22 don't view the Court's report and
23 recommendation as saying that it was going to
24 blatantly embargo discovery on those issues.
25 We read it as saying the Court will consider

31

1 individual requests as they came up.
2         So there's been a lot of --
3         THE COURT:  Let's talk about the
4 predatory infringement request for production.
5 It was very helpful that you attached as
6 Exhibit 1 a summary of what's going on here.
7         So which ones are the predatory
8 infringement?
9         MR. LARSON:  Predatory infringement
10 is the next section of the letter.  That's 83
11 to 84 and 86 to 90.
12         THE COURT:  83 talks about all
13 documents and communications referencing,
14 relating to, or discussing the practice of
15 efficient infringement for the practice of
16 infringing and appropriating intellectual
17 property even after being informed of such
18 conduct because it is more advantageous to do
19 so that to pay for lawful use or draw up the
20 intellectual property.
21         That request is going to be denied as not
22 proportional to the needs of the case.
23         What's the next one?
24         MR. LARSON:  That's 83, Your Honor.
25         THE COURT:  Yes.

32

1         MR. LARSON:  The next one is 84.
2         THE COURT:  84.  All communications
3 with third parties related to allegations that
4 Apple unlawfully acquired or used intellectual
5 property.  Merit two responsive documents
6 regarding -- this sounds like a trade secrets
7 dispute that you had with them; right?  Is this
8 something different?
9         MR. LARSON:  This is something
10 different.  I think what's important here, the
11 point I wanted to make on some of these
12 requests, and for a number of these requests,
13 is we saw Apple argue in its motion to dismiss,
14 and we're going to see Apple argue again on the
15 motion for summary judgment, say, "Masimo,
16 you've only shown harm to yourself.  You
17 haven't shown harm to competition."  So Apple
18 is saying, "We'll provide these documents as to
19 you, Masimo, but we're not going to provide
20 discovery as to this practice as regards other
21 parties," which is what we need to show or want
22 to show harm to competition.
23         So I think just for a little bit of
24 perspective here, we did take Your Honor's
25 ruling into account, and I think Apple has

Page 33

1  seasoned counsel that I think can confirm that
2  the discovery we're seeking here is really a
3  drop in the bucket to what you typically have
4  in big antitrust cases. It's very expensive
5  and burdensome discovery.
6          THE COURT: I understand.
7          MR. LARSON: It's really focused on
8  the facts of what actually occurred, is what
9  we're seeking with these requests. And I'm
10 hoping this will be our main, only discovery
11 dispute about antitrust discovery. These are
12 the requests that we brought to the Court that
13 we feel we need to be able to develop that part
14 of the case.
15         THE COURT: Okay. 84 is also denied.
16 What's the next one?
17         MR. LARSON: 86.
18         THE COURT: 86. Denied.
19         MR. LARSON: Can I ask for
20 clarification on that?
21         THE COURT: That's denied pursuant to
22 Rule 26. It's not proportional to the needs of
23 the case.
24         MR. LARSON: That answered my
25 question. So it's not a blanket embargo for

Page 34

1  predatory infringement discovery?
2          THE COURT: These particular requests
3  are denied.
4          MR. LARSON: Thank you, Your Honor.
5  Next one is 87.
6          THE COURT: Denied.
7          MR. LARSON: Next one is 88.
8          THE COURT: Denied.
9          MR. LARSON: 89. And can I offer a
10 little bit of argument on this one.
11         THE COURT: That's fine.
12         MR. LARSON: Again, you see here,
13 we're referring to specific parties, and these
14 are parties that I mentioned in our complaint
15 that we believe Apple engaged in the practice
16 of predatory infringement with regarding these
17 parties. And again, Apple is going to argue
18 we're only showing harm in competition to
19 ourselves and not these other parties. This is
20 the the type of discovery that we would seek to
21 be able that establish that. I don't see
22 arguments about burden or proportionality.
23 It's really just about relevance, and what
24 Apple argues about these parties is these
25 parties aren't in the relevant market. To the

Page 35

1  extent that's true, we believe it's because of
2  the conduct that Apple engaged in.
3          THE COURT: I understand the
4  argument, but that one is also denied. I
5  appreciate your argument.
6          MR. LARSON: Understood.
7  Next one is 90.
8          THE COURT: Denied.
9          MR. LARSON: And next one is -- I
10 believe that's --
11         THE COURT: Predatory infringement.
12         MR. LARSON: Predatory infringement.
13         THE COURT: Okay. Monopoly
14 leveraging.
15         So I'm confused about 62. I'll be honest
16 with you. It's about -- I thought the market
17 you wanted was the market for IOS app
18 distribution. Am I a moron? Isn't that a high
19 percent? Don't they have a monopoly on that
20 market? Is there something I'm not getting?
21 What am I missing out on?
22         MR. LARSON: What they're going to
23 argue is that's not about the market. They're
24 going to say that it should be a broader
25 market, and this really goes to the ecosystem

Page 36

1  request, so I'll go back on that. That's
2  request 112 and 114.
3          This set of requests have to do with
4  Apple's conduct in that market, and so
5  request -- the question of whether that is a
6  market, 112 and 114, we'll get to that in a
7  second unless you want to go ahead and address
8  that. These are less about what that market is
9  and more about the conduct in that market,
10 showing that Apple has monopoly power in the
11 market. And Apple hasn't conceded that. If
12 Apple were to say that's not an issue here,
13 that would be fine, but barring that, it's
14 something that we need to pursue.
15         THE COURT: Okay. All right. So
16 what is it -- give me the type of idea of the
17 type of thing you're looking for in -- you want
18 to talk about 112 first? We can talk about 112
19 first.
20         So 112 has to do with documents and
21 things referring to Apple Watch and Apple's
22 ecosystem with interconnected products, and
23 they don't what to produce that. No, they're
24 happy to produce that. They just don't want to
25 talk about stuff that doesn't have to do with