# EXHIBIT 29

## Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MASIMO CORPORATION, )
        Plaintiff, )
    v. ) C.A. No. 09-80-JJF-MPT
PHILIPS ELECTRONICS )
NORTH AMERICA )
CORPORATION and PHILIPS )
MEDIZINE SYSTEMS )
BOBLINGEN GMBH, )
        Defendants. )
- - - - - - - - - - - - - - - - - - -
PHILIPS ELECTRONICS )
NORTH AMERICA )
CORPORATION, )
    Counter-Claim Plaintiff,)
    v. )
MASIMO CORPORATION, )
    Counter-Claim Defendant.)

Friday, April 23, 2010
11:00 a.m.
Teleconference in Chambers

844 King Street
Wilmington, Delaware

BEFORE: THE HONORABLE MARY PAT THYNGE
United States District Court Magistrate Judge

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX  302) 658-8418

## Page 2

APPEARANCES:

MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
BY: JULIA HEANEY, ESQ.

    -and-

KNOBBE, MARTENS, OLSON & BEAR, LLP
BY: JOSEPH RE, ESQ.
BY: PERRY OLDHAM, ESQ.

    Counsel for the Plaintiff
    and Counter-Claim Defendant

POTTER, ANDERSON & CORROON, LLP
BY: DAVID E. MOORE, ESQ.

    -and-

HOWREY, LLP
BY: BRIAN ROSENTHAL, ESQ.
BY: ANN MARIE PHILLIPS, ESQ.

    Counsel for the Defendant
    and Counter-Claim Plaintiff

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX  302) 658-8418

## Page 3

1  THE COURT: Good morning. This is Judge
2  Thynge.
3  MR. MOORE: Good morning, Your Honor.
4  MR. HEANEY: Good morning, Your Honor.
5  MR. RE: Good morning, Your Honor.
6  MR. ROSENTHAL: Good morning, Your
7  Honor.
8  THE COURT: Good morning. Let's
9  begin with some introductions, please.
10  Who's on the line on behalf of
11  Masimo?
12  MR. RE: This is Joseph Re out
13  here in California. With me are my partners
14  Perry Oldham and I also have with me Steve
15  Jensen.
16  THE COURT: Oh, hi, Steve.
17  MR. JENSEN: How are you doing?
18  THE COURT: Fine.
19  MS. HEANEY: And this is Julie
20  Heaney from Morris Nichols.
21  THE COURT: Hi, Julie.
22  MR. MOORE: It's David Moore for
23  Potter, Anderson. With me on the line are Brian
24  Rosenthal, and Ann Marie Phillips.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

## Page 4

1  And Alan Grimaldi may be joining
2  if he's able to get off his airplane in time.
3  THE COURT: Okay. I'm sorry, Ann
4  Marie Phillips?
5  MR. MOORE: That's correct.
6  THE COURT: She wasn't selected to
7  work on the case because of her last name, was
8  she?
9  MR. MOORE: She has two L's.
10  THE COURT: Two L's. All right.
11  All right. I think there are two
12  issues. And counsel, just as a reminder, before
13  you talk to please introduce who you are.
14  Again, we have the court reporter here from
15  Hawkins.
16  So if you want to get a copy of
17  the transcript, you know who it is. But please
18  reintroduce or indicate who you are before you
19  speak.
20  There's two issues, to my
21  understanding, that we have. One is a
22  scheduling order and the other is the issue
23  concerning Mr. Jensen. My understanding is that
24  everything else has been previously decided.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

5

1    I didn't know if counsel, and I'm
2 going to probably regret this, wanted to add
3 anything further than what they've already
4 submitted previously. I have your letters, your
5 original letters and the subsequent letters
6 dated, I think, on April 21st, along with the
7 affidavits that were attached, including the
8 affidavit from Mr. Jensen as well as an
9 affidavit from Mr. Blocker.
10    MR. ROSENTHAL: Your Honor, this
11 is Brian Rosenthal --
12    THE COURT: Yes.
13    MR. ROSENTHAL: -- from Philips. I
14 only have one thing to add to what the papers
15 that have been submitted, and that is, you know,
16 we -- the information that Philips had and that
17 it's conveyed in Mr. Blocker's declaration
18 created an understanding in Philips' mind that
19 is somewhat different than what Mr. Jensen put
20 into his affidavit.
21    That said, we -- Mr. Jensen is an
22 officer of the Court and he knows that's what
23 his role is as of Masimo. And one of the things
24 that he says in his declaration that today he

6

1 does not participate in competitive decision
2 making at Masimo and that's something that I
3 think that we have to take at face value.
4    I called Masimo's counsel
5 yesterday and suggested that, in light of the
6 affidavits, it may be an appropriate solution
7 for us to put in, and as Your Honor suggested
8 may be a possibility last time, to put into the
9 protective order something that preserves that
10 status quo. Something like the patent
11 prosecution bar, but that would -- for lack of a
12 better term, I'm calling it a business bar.
13    That is, if you see certain types
14 of information, you will not participate in
15 certain ways in competitive decision making at
16 the party for a period of this litigation plus
17 two years. And the reason that we made that
18 suggestion is that while Mr. Jensen, you know,
19 previously engaged clearly in a business advisor
20 role in a lot of the competitive decision making
21 for a period in 2008, when that period was is a
22 little unclear.
23    We have some information that, and
24 it's in the declaration, that it extended just

7

1 beyond September of 2008. But if that has
2 changed and he's no longer doing that, that's
3 fine.
4    But we want to protect against the
5 possibility that all this information that's
6 sensitive, pricing and strategy information is
7 disclosed to Jensen. And then down the road, he
8 resumes a role with Masimo, that makes it very
9 difficult for him to compartmentalize that which
10 he learned from the advice that he has given.
11    And so we suggested that as a way
12 to get comfort for Philips that what's stated in
13 his affidavit will remain true throughout this
14 litigation and for a certain period of time
15 after. Masimo's reaction was that that was not
16 something that was palatable to them.
17    So we didn't provide them
18 language, although we have drafted up language
19 and we'd be happy to suggest it.
20    THE COURT: Before I talk to you,
21 Joe, I want to just back up a little bit with
22 Brian.
23    How do you see -- the suggestion
24 that you made in this matter, Mr. Rosenthal, how

8

1 did you see it operating?
2    And what type of -- and also, my
3 understanding is that, correct me if I'm wrong,
4 Philips is not in agreement for him to see
5 highly sensitive or confidential documents on
6 the patent end and the technology end, or has
7 that changed, too?
8    MR. ROSENTHAL: No, that is still
9 our position. We think, given his heavy
10 involvement in the prosecution of the patents
11 that were in this case, the fact that he still
12 has some role, according to his affidavit, in
13 prosecution, we certainly understand his
14 willingness to abide by the prosecution bar.
15    But given that historical and
16 current role in prosecution, we are a little
17 concerned about -- we're not a little. We're
18 very concerned about disclosing really the
19 technical features of the products that compete
20 with Masimo's products when Masimo is engaged
21 actively in filing continuations and
22 continuations in part on these applications and
23 where the client is extremely sensitive.
24    And that is, in fact, the nature

9

of the concern that we've heard from third parties as well that they were going to have difficulty producing technical documents about their products, if Mr. Jensen, who is kind of viewed internally as the architect for the patent portfolio has access to those documents. So we still maintain that that is not something that Mr. Jensen should see, either.

The proposal that we have with respect to the business bar would be -- was a proposal that would allow him to see documents other than technical documents, business strategy, pricing, marketing, those sorts of documents, but would restrict him from providing competitive decision making advice to Masimo in the event that he does see it.

THE COURT: I'm just writing down some notes. Excuse me.

Did we just lose somebody? All right.

Mr. Re.

MR. RE: Good morning, Your Honor. It sounds like what I just heard that Philips is no longer pressing for the has been language

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697 FAX (302) 658-8418

10

in the exclusion of the definition of outside counsel. And it seems like now we're changing issues once again away from what the issue started out to be.

THE COURT: Mr. Re, would you please do me the favor of getting off that particular point and let's talk about what the issues are on the table?

Thank you.

MR. RE: Well, we discussed this yesterday, and we think there's no reason for them to think Mr. Jensen is going to violate the protective order.

What I hear now is that they think Mr. Jensen might violate the protective order. And we've already resolved -- I thought we already resolved the technical issue with the patent prosecution bar, which has been resolved completely.

THE COURT: Now, it has not been resolved.

MR. RE: Paragraph 26 prevents any usage of any designated material. So I think what I'm hearing now is that they think

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697 FAX (302) 658-8418

11

Mr. Jensen may possibly violate the protective order and they want to now add another restriction, which is not -- which has not been drafted and exchanged between the parties.

And we think, based on what the Court has -- the Court should not allow the has been language and that should be the end of it.

And so I can't address anything further than what's before the Court and what I've seen. But I thought we were resolved on all these technical issues with the patent prosecution bar, Paragraph 15, which has now been completed.

THE COURT: Well, my understanding is they claim, and I'm not going to get into a he said he said situation, but they claim that they did not agree to Mr. Jensen. So deal with the issue now.

It's not as though it's any great surprise. It was something that came up when we had our discussion a couple weeks ago.

So please address it now, Mr. Re.

MR. RE: Those aren't the facts as I understand them. Everything was agreed to --

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697 FAX (302) 658-8418

12

THE COURT: Mr. Re --

MR. RE: -- with regard to Mr. Jensen.

THE COURT: Mr. Re, it wasn't. This is the reason why we're here.

So please tell me why I should have a different view or why you think the view I should have concerning Mr. Jensen about his past involvement in the prosecution history and what his present involvement now is something that can be solved, or resolved or handled under Paragraph 15.

MR. RE: Well, as I understand Paragraph 15, Mr. Jensen is precluded from participating in any patent prosecution should he see technical documents relating to any such patent prosecution. So he's already barred under Paragraph 15.

Now, the proposal does not really relate to technical materials. It sounds like now they want another bar that is unrelated to technical materials, but relates to business or financial materials.

THE COURT: And the argument that

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697 FAX (302) 658-8418

13

they're saying in that situation, which was brought up by the Court the last time and discussed very briefly the last time, so it was an issue out there, Mr. Re. So please do not plead ignorance.

It should have been an issue that you thought -- you should have realized that Philips would potentially latch on since I opened my mouth and mentioned it. The argument being is that they feel that if you have a bar similar to the bar that you have under 15, but it goes to the financial aspect and have him no longer involved or not involved in -- how did he put it?

Making competitive decisions and providing advice regarding making competitive decisions, how that would affect and what the concerns were by Masimo when they flat out rejected that suggestion yesterday.

MR. RE: Well, yesterday I had understood that it was some sort of bar that would apply well after the lawsuit was over, number one.

THE COURT: Well, he said --

14

MR. RE: Number two, our other concern is Paragraph 26 already takes care of preventing anybody from participating in any competitive decision making if they see designated materials. The protective order already addresses that in Paragraph 26.

So it seems to be really -- what I'm hearing is another prophylactic measure really in case there's some inadvertent disclosure or use by somebody, not just Mr. Jensen. Why wouldn't it apply to everyone else? And so that's really what we're hearing now about that he might still violate it despite Paragraph 15 and 26.

THE COURT: Well, the whole purpose of why an argument like this is raised is the concern about inadvertent disclosure. And my understanding is Mr. Jensen has not entered his appearance in this case; is that correct?

MR. RE: That is correct.

THE COURT: And so he's not "technically subject to this Court's orders" to some extent or not technically subject to

15

avenues that this Court could choose to exercise against him if he did violate anything; correct?

MR. RE: Well, I -- I don't know if that's true, because I assumed he would be and he would always follow the protective order. And to make the Court feel better, I would have him make an entry of appearance if that would solve anything.

I don't like making him make an appearance because precisely these kinds of issues come up. And in the past lawyers have -- if he becomes a witness, they try to try the lawyer rather than try the case.

And so I prefer sometimes when somebody might be a witness for their names not to appear on the litigation documents. But other than that, he acts just as if he is counsel of record.

I mean, I -- Mr. Jensen and I work closely together. So if it would solve anything, I'll make him counsel of record if that insures the Court has full jurisdiction over him.

THE COURT: Ms. Heaney, you're

16

serving as local counsel on behalf of Masimo; correct?

MS. HEANEY: Yes, Your Honor.

THE COURT: And how do you view your obligations to this Court in relationship to Mr. Jensen?

You haven't had to certify for him or move his admission pro hac; correct?

MS. HEANEY: It just hadn't -- the issue just hadn't been raised whether, you know, we should do that yet.

THE COURT: Well, I understand that, but without him being -- having an entry of appearance, how do you and your firm view your obligation to the Court regarding Mr. Jensen under our local rules?

MS. HEANEY: Obligations arise when we do file a motion for admission pro hac.

THE COURT: Okay.

MR. RE: And if I understand how the protective order is written, it makes -- the firm is also counsel of record.

It states outside counsel, which means the law firms that are counsel of record

17

1  for the parties. So I never viewed this as an
2  issue because I viewed this was applying to my
3  entire firm.
4         THE COURT: Mr. Re, what paragraph
5  were you reading from, please?
6         MR. RE: Oh, this is the infinite
7  Paragraph 6A that we've been -- that started
8  this whole proceeding.
9         THE COURT: Okay. And are you
10 reading from the example that you provided to me
11 or from the other side's example?
12        MR. RE: They're the same.
13        THE COURT: They're the same.
14 Paragraph 6A?
15        MR. RE: Yes. It begins outside
16 counsel and in quotation marks --
17        THE COURT: Yes. My question is
18 probably a little bit more direct, and that is:
19 Despite what is put into a protective order
20 situation, what avenues does the Court have if
21 an attorney who is not counsel of record in the
22 case and for which local counsel has not
23 certified an obligation to this Court, what
24 avenues I have to fully enforce our rules or our

18

1  requirements of ethics?
2         It's just a question.
3         MR. RE: Your Honor, I never
4  thought it was an issue, but I'm more than happy
5  to have Mr. Jensen file an appearance today.
6         THE COURT: Concerning, and this
7  goes to you, Mr. Rosenthal, concerning Paragraph
8  26 of the proposed protective order, what I've
9  heard repeatedly and also what has been put in
10 Mr. Jensen's affidavit is that they consider
11 this to be an additional protection. And that
12 your request for an additional paragraph
13 regarding a bar related to the financial type
14 records similar to the type of bar that's under
15 the patent prosecution paragraph is unnecessary.
16        MR. ROSENTHAL: Your Honor, this
17 is Brian Rosenthal. I'm glad you asked because
18 when I heard Mr. Re say that that paragraph
19 precludes people that have received information
20 from engaging in competitive decision making, I
21 was very surprised and turned to that paragraph.
22 And there's nothing of the kind in there.
23        What that paragraph says, and I
24 can read it, is protected materials shall be

19

1  used only in preparation for and trial of the
2  above captioned action, and proceeds from there.
3         And then it says protective
4  order -- sorry, protected material cannot be
5  used for any other purpose, including but not
6  limited to any business, proprietary,
7  commercial, legal, other litigation, arbitration
8  or claims, et cetera. It does not -- what it
9  provides is whatever protective orders provide
10 which says that information that is disclosed
11 cannot be used for another purpose.
12        So that certainly precludes
13 someone from intentionally taking material and
14 using it for another purpose. It does not
15 provide the sort of protection that a patent
16 prosecution bar is intended to protect that a
17 business bar, along the lines that I suggested
18 earlier in this call would be intended to
19 protect, which is against the inadvertent
20 commingling of information learned in one
21 context from being used in another context
22 because of the virtue -- by virtue of the
23 position that someone has.
24        The compromise solution that I

20

1  proposed to Masimo certainly wasn't intended to
2  change the game here at all. I was trying to
3  resolve the issue. It was intended to resolve
4  the issue of what happens going forward to
5  prevent Mr. Jensen from in a year from now
6  resuming his role as VP of OEM business and
7  being unable to separate all the incredibly
8  sensitive material that he would have seen in
9  this litigation from the advice that he's
10 providing to Masimo.
11        And that was the purpose of this
12 and it's not addressed at all in Paragraph 26.
13 I continue to maintain that's the safest and
14 most attractive solution from Philips'
15 perspective is to preclude Mr. Jensen from
16 seeing this sort of information at all.
17        They have a lot of lawyers at
18 Knobbe that can see this information. Mr.
19 Jensen can participate in the litigation, but
20 counsel can direct the litigation if he wants to
21 without seeing every one of these sensitive
22 documents.
23        But if that solution is one that's
24 difficult for the Court's palate or for Masimo's

21

1  palate, I offer this as an alternative to
2  provide protection to Philips going forward.
3           MR. RE:  Your Honor, this is
4  Mr. Re.
5           THE COURT:  Yes.
6           MR. RE:  We have no problem with
7  a bar that would preclude Mr. Jensen from
8  resuming his role as an interim VP.  And in
9  fact, Paragraph 6A as already written would
10 preclude that, because 6A already excludes
11 anybody who becomes a director, officer or
12 employee of a party.
13          So we would completely agree with
14 Mr. Rosenthal, and we would agree that once
15 Mr. Jensen sees any technical or financial
16 documents, he can no longer resume his role,
17 particularly the role that he had back in 2008.
18          MR. ROSENTHAL:  Your Honor,
19 that -- first of all, 6A precludes disclosure to
20 someone that has a current title.  It doesn't
21 disclose -- it doesn't preclude someone who has
22 been disclosed information from regaining a
23 title.
24          So that's one thing.  6A does not

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

22

1  take care of this.
2           But with respect to the
3  concession, we're not looking for something that
4  says Mr. Jensen won't resume a particular title
5  that he had.  We've got to have something a
6  little more robust than that that he won't
7  engage in competitive decision making that
8  implicates the possibility of using information
9  that he sees in this case inadvertently in his
10 advice to Masimo.  So it needs to be a little
11 broader than that.
12          And I asked Masimo's counsel
13 yesterday if we could send some language over,
14 and they said, "No.  We don't want to see any
15 language."
16          So, you know, but I've got it
17 drafted and it is something that basically says
18 if you see confidential, highly confidential
19 business information, you cannot participate in
20 competitive decision making.  And we have a
21 bunch of examples of what that means at the
22 party for a period of this litigation plus two
23 years.
24          MR. RE:  Your Honor, if I may, I

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

23

1  didn't mean to suggest what I think
2  Mr. Rosenthal said I suggested.  I don't want to
3  backtrack from what happened yesterday, but we
4  have no problem as long as -- with the
5  suggestion Mr. Rosenthal is coming up with as
6  long as Mr. Jensen or anyone else, for that
7  matter, can still see the technical and
8  financial documents.
9           I understood yesterday that it
10 would preclude Mr. Jensen from seeing technical
11 or financial documents and have a bar.  But if
12 Mr. Jensen can see the documents and can help me
13 on the case, then I have no problem with a
14 subsequent bar that Mr. Rosenthal is now
15 suggesting.
16          It would apply to everybody, not
17 just Mr. Jensen.  Anybody should not be able to
18 participate in this case seeing highly
19 confidential materials and then later resume a
20 role or have any role.
21          I agree, it shouldn't just be the
22 title Mr. Jensen had.  I didn't mean that,
23 either.
24          And I think we could have

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

24

1  agreement as long as there's no preclusion of
2  seeing the documents in the first place.
3           THE COURT:  Well, this is where
4  I've come down, counsel.  First of all, based
5  upon what I saw of Mr. Jensen's affidavit, and I
6  took into account Mr. Blocker's affidavit as
7  well, recognizing -- but I'm also going to
8  recognize that Mr. Jensen, in making these
9  representations, was relatively detailed about
10 what he had and had not been doing and what it
11 had involved.
12          And I kind of viewed, to a large
13 extent, what his involvement and his
14 relationship with Masimo was not too dissimilar
15 from what happens with outside counsel assisting
16 a client in negotiating licenses and the like
17 and agreements with companies in that regard.
18          I do recognize that he's been
19 involved in patent prosecution, although he has
20 strongly indicated in his affidavit that his
21 patent prosecution involvement has been greatly
22 diminished.  It will now stop as far as this
23 case is concerned if he's going to be allowed to
24 see any highly confidential documents.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

25

1  And Rule 15 would apply.  I mean,
2  Paragraph 15, 6A and 26 would apply to him.
3  But in addition to that, I do
4  think having clarified a bit better, because
5  there is some impression, clear impression by
6  people outside of Masimo about their contacts
7  with Mr. Jensen that maybe his involvement on
8  the business side and in competitive decision
9  making may be more intimate than what he thinks
10 it was or what he has represented it was, but
11 because that's the impression that he's left.
12 So having a restriction not too
13 dissimilar to what was for the patent limitation
14 is something that would also be drafted and
15 included in this agreement.  But he's going to
16 be allowed to have access and to be covered by
17 this agreement and have access to the technical
18 information.
19 And so I would strongly recommend
20 that, Mr. Rosenthal, you get over -- get your
21 proposed language over to Mr. Re.  Mr. Re seems
22 to be more than willing once we've aired out the
23 differences to agree to something along those
24 lines as you've proposed.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

26

1  MR. ROSENTHAL:  And just so that I
2  understand, this is Brian Rosenthal, the ruling
3  on technical documents, the ruling is that he
4  can see technical documents, subject to the
5  patent prosecution bar.
6  THE COURT:  Mm-hmm.
7  MR. ROSENTHAL:  And he can also
8  see business documents, but that would be
9  subject to a business bar of the sort that I'm
10 talking about.
11 THE COURT:  Yes.  Yes, and it
12 would be.
13 And recognizing that you still
14 have some protection under 6A, although the two
15 of you haven't quite agreed on what that was and
16 you still have some protection under Paragraph
17 26, but this would be an added protection as
18 you've proposed, Mr. Rosenthal, or similar to
19 what you've proposed.
20 I haven't seen it, so I can't say.
21 MR. ROSENTHAL:  Sure.  We'll
22 provide that language to opposing counsel and
23 hopefully we can work something else out.
24 THE COURT:  I'm hoping that you

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

27

1  can, too.  Let's talk about the schedule.
2  This is the case that has what now
3  25 patents involved in it?
4  MR. ROSENTHAL:  Yes, Your Honor.
5  THE COURT: I did make some changes
6  in the proposed time schedule, and what I'm
7  reading is that counsel is splitting up fact
8  discovery and expert discovery, and having
9  expert discovery occur after you get a Markman
10 ruling; is that correct?
11 That's the way I read Paragraph --
12 I'm sorry.  I can't get it -- 3D and E as well
13 as what happens with paragraphs dealing with
14 claim construction and the paragraphs dealing
15 with dispositive motions.
16 MR. ROSENTHAL:  Yes.  That was our
17 intent, Your Honor.
18 THE COURT:  The matter is now
19 scheduled for a bench trial, though; right?
20 It's scheduled for a jury trial or what the hope
21 is that it will be a jury trial?
22 MR. ROSENTHAL:  That's correct.
23 MR. RE:  That is correct, Your
24 Honor.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

28

1  THE COURT:  And none of you put in
2  a date for the trial; right?  Or none of you put
3  in the paragraph regarding a trial, did you?  I
4  didn't see that.
5  MR. RE:  That is correct, Your
6  Honor.
7  THE COURT:  Was there any reason
8  why you didn't put in a section for the trial?
9  MR. ROSENTHAL:  Your Honor, yeah.
10 We discussed that with the other side and the
11 primary reason was we weren't sure whether that
12 is something that was going to be set today.
13 But we certainly contemplated
14 putting in something with blanks.  But we -- I
15 think we were just a little -- we were just a
16 little unsure whether that was something that
17 was going to be set this early.
18 THE COURT:  All right.
19 MR. RE:  Your Honor, this is
20 Mr. Re.  I was guided in part by the order by
21 Judge Farnan transferring this case to you that
22 was pretty specific that the transfer to you was
23 up to and including the pretrial conference.
24 And that was my reasoning for not being so

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418