## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| APPLE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-1377-MN |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| MASIMO CORPORATION and | ) | |
| SOUND UNITED, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| MASIMO CORPORATION, | ) | |
| | ) | |
| Counter-Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

### APPLE'S ANSWERING BRIEF TO SOUND UNITED'S MOTION TO DISMISS

OF COUNSEL:

John M. Desmarais
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: 212-351-3400

Peter C. Magic
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: 415-573-1900

Dated:  January 10, 2023
10540610 / 12209.00051

David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Plaintiff/Counter-Defendant*
*Apple Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Pages</u>

NATURE AND STAGE OF THE PROCEEDINGS .......................................................................1

SUMMARY OF THE ARGUMENT .............................................................................................1

FACTUAL BACKGROUND .........................................................................................................2

LEGAL STANDARD .....................................................................................................................5

ARGUMENT ..................................................................................................................................5

I.      APPLE PLAUSIBLY ALLEGED SU'S DIRECT INFRINGEMENT. ...........................5

II.     APPLE PLAUSIBLY ALLEGED SU'S WILLFUL INFRINGEMENT. ..........................8

        A.      Apple Plausibly Alleged SU's Pre-Suit Knowledge Of, And/Or Willful
               Blindness Of, The Patents-In-Suit And Its Infringement Via SU's
               Collaboration With Masimo To Launch The Copycat W1 Product. ....................10

        B.      Apple Plausibly Alleged SU's Pre-Suit Knowledge Of, And/Or Willful
               Blindness Of, The Patents-In-Suit And Its Infringement Via Allegations of
               Masimo's Knowledge, Which Should Be Imputed To Its Subsidiary SU............12

        C.      The Complaint Plausibly Alleges Post-Suit Willful Infringement Before
               This Court. ...........................................................................................................15

III.    IF THE COURT INTENDS TO GRANT SU'S MOTION, APPLE SHOULD BE
        GIVEN LEAVE TO AMEND. .........................................................................................16

CONCLUSION..............................................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*10x Genomics, Inc. v. Celsee, Inc.*,
   C.A. No. 19-862-CFC-SRF, 2019 WL 5595666 (D. Del. Oct. 30, 2019) ..........................9-10

*Align Tech., Inc. v. 3Shape A/S*,
   339 F. Supp. 3d 435 (D. Del. 2018).......................................................................................11

*Apple Inc. v. Masimo Corp. et al.*,
   C.A. No. 22-1378-MN (D. Del. Oct. 20, 2022)..................................................................1, 7

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
   876 F.3d 1350 (Fed. Cir. 2017)..............................................................................................2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................................5

*Foman v. Davis*,
   371 U.S. 178 (1962)..............................................................................................................16

*Frac Shack Inc. v. Afd Petroleum Tex.*,
   No. 7:19-cv-00026-DC, 2019 WL 3818049 (W.D. Tex. June 13, 2019) ..............................15

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011)................................................................................................................9

*Groove Digital, Inc. v. Jam City, Inc.*,
   C.A. No. 18-1331-RGA, 2019 WL 351254 (D. Del. Jan. 29, 2019) ..................................8, 13

*Hockerson-Halberstadt, Inc. v. JSP Footwear, Inc.*,
   104 F. App'x 721 (Fed. Cir. 2004) .......................................................................................12

*Intuitive Surgical, Inc. v. Auris Health, Inc.*,
   549 F. Supp. 3d 362 (D. Del. 2021).......................................................................................15

*Jones v. Lapina*,
   450 F. App'x 105 (3d Cir. 2011) .......................................................................................5, 7

*Kyowa Hakka Bio, Co. v. Ajinomoto Co.*,
   C.A. No. 17-313-MSG, 2018 WL 834583 (D. Del. Feb. 12, 2018) .........................................6

*Lytone Enterprise, Inc. v. Agrofresh Sols., Inc.*,
    C.A. No. 20-678-GBW-SRF, 2021 WL 534868 (D. Del. Feb. 12, 2021) ..............................14

*Masimo Corp. v. Apple Inc.*,
    No. 20-cv-48-JVS-JDE (C.D. Cal. Jan. 9, 2020) .......................................................................4

*McDermott v. Clondalkin Grp., Inc.*,
    649 F. App'x 263 (3d Cir. 2016) ..............................................................................................9

*Ravgen, Inc. v. Ariosa Diagnostics, Inc.*,
    C.A. No. 20-1646-RGA-JLH, 2021 WL 3526178 (D. Del. Aug. 11, 2021) ..........................16

*REC Solar Pte. Ltd. v. Hanwha Sols. Corp. et al.*,
    C.A. No. 20-1622, D.I. 50 (D. Del. Nov. 30, 2020) ...............................................................15

*Rhodes Pharms. L.P. v. Indivior, Inc.*,
    C.A. No. 16-1308, 2018 WL 326405 (D. Del. Jan. 8, 2018)....................................................9

*RK Sols., LLC v. Vitajoy USA Inc.*,
    No. 218CV06608CASEX, 2018 WL 6179492 (C.D. Cal. Nov. 26, 2018) .............................15

*Shire ViroPharma Inc. v. CSL Behring LLC*,
    C.A. No. 17-414, 2018 WL 326406 (D. Del. Jan. 8, 2018)......................................................6

*Simplivity Corp. v. Springpath, Inc.*,
    No. CV 4:15-13345-TSH, 2016 WL 5388951 (D. Mass. July 15, 2016)...............................13

*Softview LLC v. Apple Inc.*,
    C.A. No. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012) ........................................14

*Walker Digital, LLC v. Facebook, Inc.*,
    852 F. Supp. 2d 559 (D. Del. 2012)........................................................................................14

*WCM Indus., Inc. v. IPS Corp.*,
    721 F. App'x 959 (Fed. Cir. 2018) .........................................................................................13

**STATUTES & RULES**

35 U.S.C. § 271(a) ............................................................................................................................6

FED. R. CIV. P. 12(b)(6) ...............................................................................................................1, 5

FED. R. CIV. P. 12(e) ........................................................................................................................6

FED. R. CIV. P. 15(a)(2)..................................................................................................................16

FED. R. EVID. 201(e) .......................................................................................................................7

Plaintiff Apple Inc. ("Apple") respectfully submits this answering brief in opposition to Defendant Sound United, LLC's ("SU") Motion to Dismiss.

## NATURE AND STAGE OF THE PROCEEDINGS

On October 20, 2022, Apple sued Defendant Masimo Corporation ("Masimo") and SU (collectively, "Defendants") for direct infringement and willful infringement of four design patents related to smart watches and smart watch chargers, namely U.S. Patent Nos. D735,131; D883,279; D947,842; and D962,936 (together, "the Patents-in-Suit").  *See* D.I. 1 ("Complaint").  Apple also sued Masimo and SU for their direct and willful infringement of Apple's utility patents in a companion case currently pending before this Court.  *See* Complaint (D.I. 1), *Apple Inc. v. Masimo Corp. et al.*, C.A. No. 1:22:cv-01378-MN (D. Del. Oct. 20, 2022).  In Apple's Complaint in this case, Apple alleged that Masimo and SU infringe the Patents-in-Suit by, among other acts, selling, offering to sell, and importing a smart watch called "the Masimo W1" and its charger (together, "W1").[1]  On December 12, 2022, Masimo answered the Complaint and SU moved to dismiss Apple's claims of direct infringement and willful infringement against SU for failure to state a claim.  D.I. 29; D.I. 30 ("Motion"); Fed. R. Civ. P. 12(b)(6).

## SUMMARY OF THE ARGUMENT

Masimo's CEO represented to the public and Masimo's investors that Masimo acquired SU to distribute W1 and, several months later, Masimo and SU together launched W1, offering it for sale in the United States.  Those facts, as alleged in the Complaint, are sufficient to support a plausible allegation that SU directly infringes the Patents-in-Suit by operating in collaboration with Masimo (indeed, as a subsidiary) to sell, offer to sell, or import W1.  SU's Motion should therefore be denied as to Apple's claims of direct infringement.

---

[1] Apple's Complaint also defined "W1" to include both W1 and its charger.

SU's Motion should also be denied as to Apple's claim for enhanced damages based on willful infringement because the Complaint plausibly alleges SU's pre-suit knowledge of, and/or willful blindness of, the Patents-in-Suit and a risk of infringement via: (A) allegations that SU collaborated with Masimo to sell a product with a design copying Apple Watch's patented designs such that SU at least should have recognized a risk of infringement; and (B) allegations of Masimo's deliberate decision to make a product that blatantly rips off the patented designs of Apple Watch, coupled with knowledge of (or at least willful blindness of) the Patents-in-Suit, which should be imputed to SU because it is a subsidiary acquired specifically to sell, offer to sell, and/or import W1.[2]  Those allegations are sufficient to support a plausible inference that SU acted despite a risk of infringement that was either known or so obvious it should have been known. *See, e.g., Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) ("[P]roof that the defendant acted despite a risk of infringement that was either known or so obvious that it should have been known to the accused infringer, can support an award of enhanced damages.") (internal quotations and citations omitted).  Additionally, service of Apple's Complaint further establishes a plausible claim against SU before this Court for its post-suit willful infringement.

For at least those reasons, SU's Motion should be denied in all respects.

## FACTUAL BACKGROUND

Since its founding in 1989, Masimo has been a hospital equipment manufacturer that, until August 2022, had never offered a watch.  Compl. ¶¶ 3, 21, 24–25.  In or around 2018, however, Masimo noticed that the nature of health technology was changing—driven by innovative

---

[2] SU's Motion focuses on the Complaint's allegations of SU's knowledge of the Patents-in-Suit rather than SU's knowledge of infringement or a risk of infringement.  Mot. at 3.  However, as shown herein, the Complaint sufficiently pleaded SU's knowledge of both the Patents-in-Suit and of infringement or the risk of infringement.

companies like Apple—to evince a new focus on consumer health and well-being in the overall consumer wearables segment, and more specifically the broad smart watch segment. *Id.* ¶ 28. For example, Masimo noted to investors in 2018 that leading technology companies, including specifically Apple, had expanded into consumer health technology. *Id.* In 2020, Masimo again referenced Apple's success in its 10-K and remarked: "If we are unable to successfully compete against [Apple], our financial performance could decline." *Id.* Masimo referenced Apple again in its 2021 10-K, this time highlighting Apple Watch. *Id.* Masimo told investors: "To effectively compete, we may need to expand our product offerings and distribution channels. . . ." *Id.*

Seeing the continued success of Apple Watch, Masimo tried to pivot to focus on the consumer. *Id.* Specifically, Masimo set out to launch a smart watch. *Id.* ¶¶ 22, 37, 39. But Masimo had never designed a smart watch. *Id.* ¶ 29. Delivering a high-quality consumer product to market from scratch would have taken years of investment and innovation that Masimo did not have. *Id.* Thus, rather than take the necessary time to develop its own innovations to make W1 attractive to consumers, Masimo copied Apple Watch's patented designs and brought carefully timed lawsuits to try to kick Apple out of the smart watch segment. *Id.* ¶ 22.

In January 2020, more than 18 months before the commercial release of W1, Masimo brought a patent lawsuit against Apple targeting Apple Watch. *Id.* ¶ 30. Importantly, ***Masimo carefully studied Apple's IP for its litigation campaign***. *Id.* ¶ 40. Indeed, Masimo cited numerous Apple Watch patent publications in its complaints in federal court including, for example, Apple's U.S. Patent Application Publication 2019/0072912, titled "Wearable Electronic Device with Electrodes for Sensing Biological Parameters," and Apple's U.S. Patent Application Publication 2019/0090806, titled "Optical Sensor Subsystem Adjacent a Cover of an Electronic Device Housing," each of which relates to components of Apple Watch. *See id.*; Complaint (D.I. 1) at

¶¶ 45, 58, 71, 73, 86, 101, 114, 127, 141, *Masimo Corp. v. Apple Inc.*, No. 20-cv-48-JVS-JDE, (C.D. Cal. Jan. 9, 2020); *id.*, U.S. Patent Pub. No. 2019/0072912 (D.I. 1-11); *id.*, U.S. Patent Pub. No. 2019/0090806 (D.I. 1-12).

Later, in June 2021 and approximately one year prior to the eventual launch of W1, Masimo filed a complaint before the U.S. International Trade Commission (ITC), an administrative agency, seeking an order that bans Apple Watch from being imported into the United States.  Compl. ¶ 31.

Critically, Masimo's sudden pivot into watches required consumer distribution channels for W1 that Masimo lacked.  *Id.* ¶ 38.  With the ITC lawsuit against Apple ongoing, Masimo acquired SU for the express purpose of bringing W1 to market as quickly as possible.  *Id.* ¶ 37.  In February 2022, Masimo announced that it would acquire SU for $1.025 billion.  *Id.*  Masimo's stated reason for the acquisition, which closed in April 2022, was to "leverage SU's expertise across consumer channels to accelerate distribution of the ***combined company's*** expanding portfolio of consumer-facing healthcare products."  *Id.*[3]  Masimo's CEO stated on an earnings call in February 2022: "We like SU the most for several reasons. One, it's [(sic)] management team. Two, ***the distribution channel, that is essential to what we are doing as an important product for us which is the Masimo Watch***."  *Id.*  Masimo admits to making each of those statements.  *See* D.I. 31 ¶ 37.

When Masimo and SU ultimately launched W1 in the United States on August 31, 2022, it was clear that W1 had copied the patented designs of Apple Watch.  Compl. ¶¶ 22, 36, 39.  Indeed, the design of W1 and its charger so closely resembles those of Apple Watch that the only plausible inference is that W1 copied Apple Watch's patented designs.  *Id.* ¶¶ 3, 4, 8, 22, 34, 36, 37, 38, 40, 46, 53, 60, 67.

---

[3] All emphases are added unless otherwise noted.

Thus, the Complaint alleges that ***both*** Masimo ***and*** SU collaborated to sell a product (W1) with a design that copies Apple Watch's patented designs such that SU at least should have recognized a risk of infringement. The Complaint further pleads facts plausibly showing that Masimo's deliberate decision to make a product that blatantly rips off the patented design of Apple Watch, coupled with the knowledge of (or at least willful blindness of) the Patents-in-Suit, should be imputed to SU because it is a subsidiary acquired specifically to sell, offer to sell, and/or import W1. *Id.* ¶¶ 3, 4, 8, 22, 34, 36–38, 40.

## LEGAL STANDARD

A complaint must set forth sufficient factual matter, accepted as true and viewed in the light most favorable to the plaintiff, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56. When considering a Rule 12(b)(6) motion to dismiss, courts consider the complaint in its entirety, documents incorporated by reference, and matters of which a court may take judicial notice, which include the record in other litigations. *See Jones v. Lapina*, 450 F. App'x 105, 108 (3d Cir. 2011) ("A court may take judicial notice of the record from a previous court proceeding between the parties.").

## ARGUMENT

## I.   APPLE PLAUSIBLY ALLEGED SU'S DIRECT INFRINGEMENT.

The Complaint plausibly alleged that SU directly infringes the Patents-in-Suit by operating in collaboration with Masimo to sell, offer for sale, or import W1. At the outset, the Complaint provides that Apple is seeking "relief ***jointly***, ***severally***, ***or in the alternative*** against Masimo ***and*** its wholly owned subsidiary SU ***arising from the making, using, importing into the United States,***

*offering for sale, and/or selling of the same infringing product*, [] W1." Compl. ¶ 8.  Indeed, the Complaint alleges that **both** Masimo **and** SU "launched" W1 and recites how **Masimo** described Masimo and SU as a "**combined company**" and "**essential**" to selling W1.  *Id.* ¶¶ 22, 37.  In other words, the Complaint alleges specific acts of direct infringement by SU: sale, offer for sale, and/or importation of W1.  *Id.*  That express allegation, which must be taken as true and viewed in the light most favorable to Apple, is alone sufficient to deny SU's Motion as to direct infringement.  *See* 35 U.S.C. § 271(a).[4]

Contrary to SU's assertion, *see* Mot. at 6, Apple's use of the word "launch" is more than sufficient to plausibly allege SU's sales and/or offers to sell and to provide SU fair notice of Apple's claim for relief.[5]  *See, e.g.*, *Shire ViroPharma Inc. v. CSL Behring LLC*, C.A. No. 17-414-MSG, 2018 WL 326406, at *3-5 (D. Del. Jan. 8, 2018) (denying motion to dismiss complaint that alleged defendants "launch[ed]" infringing products).  Belying its assertion that "launch" is vague or conclusory, SU uses that exact term in its opening brief, admitting that "[e]arlier this year, Masimo **launched** its own wrist-worn device, Masimo's W1™ watch[.]"  Mot. at 1.  There can therefore be no credible dispute that the Complaint provides fair notice of Apple's claims against SU based on the allegation that SU (with Masimo) "launched" the infringing W1 product.

Further, the Complaint includes more than sufficient facts from which the Court can reasonably infer SU's collaboration with Masimo to sell, offer to sell, and/or import W1.  *See Kyowa Hakka Bio, Co. v. Ajinomoto Co.*, C.A. No. 17-313-MSG, 2018 WL 834583, at *10 (D. Del. Feb. 12, 2018) ("At the pleading stage, the question before the Court on defendants' motions to dismiss is whether the plaintiff has plead sufficient facts for the Court to *infer*" the conduct

---

[4] In fact, Apple made identical allegations against Masimo, which did not file a motion to dismiss and thus does not dispute that the Complaint plausibly alleges direct infringement.
[5] Notably, SU did not seek a more definite statement under Federal Rule of Civil Procedure 12(e).

alleged) (internal quotations omitted) (emphasis in original).  The Complaint alleges that Masimo acquired SU for over $1 billion dollars for the ***specific purpose*** of offering for sale and selling W1. *See* Compl. ¶ 37.  For example, the Complaint describes how ***Masimo***: (1) sought to "leverage [SU]'s expertise . . . to ***accelerate distribution*** . . . of consumer-facing healthcare products"; (2) characterized Masimo and SU as a "***combined company***[]" and "***essential***" to selling W1; (3) stated that the purpose of SU's acquisition was to "***bring [] W1 to the market*** as quickly as possible"; and (4) planned to use "***SU's expertise across consumer channels***" for W1's distribution.  *Id*.  Indeed, SU even admitted that Masimo announced that it would acquire SU "***in part to help distribute [] W1®***."  D.I. 21 at 15.[6]  Apple's Complaint further alleges that Masimo ***and*** SU accomplished their goal of "launch[ing]" W1 on August 31, 2022, just four months after Masimo's acquisition of SU closed in April 2022.  Compl. ¶ 22, 37, 39.  With that context, the fact that W1 was released just four months after Masimo acquired SU makes it more than plausible that SU was, and currently is, involved with the distribution and sale of W1.  *Id.* ¶ 39.

SU speciously claims that Apple's allegations are inconsistent because Apple also alleged that Masimo sells or offered to sell W1, and because an August 2022 press release explains that consumers may purchase W1 on Masimo's website.  Mot. at 6.  But as shown above, it is more than plausible that sales made from Masimo's website are distributed by and/or through SU— Masimo's billion-dollar distributor—as evidenced at least by Masimo's own statements regarding SU's acquisition and SU's role in selling and distributing W1, as well as the timing of the acquisition and the launch of W1 thereafter.  Compl. ¶¶ 37, 39, 40.  Those facts distinguish SU's

---

[6] Apple respectfully requests that the Court take judicial notice of all relevant records addressed herein from Masimo's litigations and the United States Patent and Trademark Office pursuant to Federal Rule of Evidence 201(e) at least because they are matters of public record.  *Lapina,* 450 F. App'x at 108.

cited case, *SIPCO, LLC v. Streetline, Inc.*, in which the Court dismissed a claim based on only one statement on an accused infringer's website that its "offerings" include a product that was "***clear[ly]***" the product of the accused infringer's subsidiary.  C.A. No. 16-830-RGA, 2018 WL 762335, at *1 (D. Del. Feb. 7, 2018).

SU is also wrong that the Complaint contains only a "formulaic recitation of the legal elements of direct patent infringement."  Mot. at 6.  Instead, the Complaint provides: (1) detailed background on Apple's products, innovations embodied in which are protected by the Patents-in-Suit, among other intellectual property (Compl. ¶¶ 12–20); (2) detailed background regarding Masimo's and SU's accused W1 product (Compl. ¶¶ 29–40); (3) what each of the Patents-in-Suit is generally directed to (Compl. ¶¶ 41–68); (4) exemplary infringed claims (*id.*); and (5) how Masimo's and SU's accused W1 product infringes an exemplar claim of each Patent-in-Suit and the nature of Masimo's and SU's infringement (*id*).  Those allegations are more than sufficient to provide SU fair notice of Apple's claims and to plausibly state Apple's claim for relief.  Thus, contrary to SU's summary of the Complaint, the allegations include far more than a "formulaic recitation of the legal elements[.]"  Mot. at 6; *see also Groove Digital, Inc. v. Jam City, Inc.*, C.A. No. 18-01331-RGA, 2019 WL 351254, at *4 (D. Del. Jan. 29, 2019) (finding complaint that "identifies the asserted claims, and explains the basis of the infringement allegation" sufficient at the pleading stage).

At bottom, each of Apple's allegations above, accepted as true and viewed in the light most favorable to Apple, sufficiently alleges that SU, at a minimum, sold, offered to sell, and/or imported W1.  Apple's allegations are more than sufficient to state a claim for direct infringement.

## II.   APPLE PLAUSIBLY ALLEGED SU'S WILLFUL INFRINGEMENT.

Apple's Complaint sufficiently states a claim for enhanced damages based on SU's willful infringement in selling a product that copied the design of the Apple Watch.  To plausibly allege

willful infringement in this District, Apple's Complaint must "allege facts that plausibly show that a risk of infringement was made known to the defendant or was sufficiently obvious that it should have been known to the defendant." *10x Genomics, Inc. v. Celsee, Inc.*, C.A. No. 19-862-CFC-SRF, 2019 WL 5595666, at *11 (D. Del. Oct. 30, 2019), *report and recommendation adopted*, C.A. No. 19-862-CFC-SRF, 2019 WL 6037558 (D. Del. Nov. 14, 2019) (quoting *Deere & Co. v. AGCO Corp.*, C.A. No. 18-827-CFC, 2019 WL 668492, at *5 (D. Del. Feb. 19, 2019)); *see also Global-Tech Appliances, Inc. v. SEB S.A.,* 563 U.S. 754, 769 (2011) ("[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts."). In the Third Circuit, "pleading upon information and belief is permissible where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control." *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) (internal quotations omitted). For at least that reason, in this District, "generalized allegations of willfulness are sufficient[.]" *Rhodes Pharms. L.P. v. Indivior, Inc.*, C.A. No. 16-1308, 2018 WL 326405, at *9 (D. Del. Jan. 8, 2018).

Apple met its pleading burden here. ***First***, Apple plausibly alleged SU's pre-suit knowledge of, and/or willful blindness of, the Patents-in-Suit through: (A) allegations that SU collaborated with Masimo to sell a product with a design so strikingly like Apple Watch's design that SU at a minimum should have recognized a risk of infringement; and (B) allegations of Masimo's deliberate decision to make a product that blatantly rips off Apple Watch's patented designs, coupled with knowledge of (or at least willful blindness of) the Patents-in-Suit, which should be imputed to Sound United because it is a subsidiary acquired specifically to sell, offer to sell, and/or import W1. ***Second***, service of Apple's Complaint further establishes a plausible claim

against SU before this Court for its post-suit willful infringement.  SU's Motion should therefore
be denied.[7]

A.   **Apple Plausibly Alleged SU's Pre-Suit Knowledge Of, And/Or Willful Blindness Of, The Patents-In-Suit And Its Infringement Via SU's Collaboration With Masimo To Launch The Copycat W1 Product.**

Apple's allegations of willful infringement against SU include allegations that ***both***
Masimo ***and*** SU: (1) knew about Apple Watch and (2) collaborated to sell and offer to sell an
infringing product—W1—that that blatantly copies the patented designs of Apple Watch.  Compl.
¶¶ 3, 4, 8, 22, 34, 36, 38, 40, 46, 53, 60, 67.  Courts in this District regularly find those types of
allegations sufficient to plausibly allege pre-suit knowledge of, or willful blindness of, the Patents-
in-Suit and a risk of infringement that was either known or should have been known.  For example,
in *10x Genomics*, the district court found allegations that, "on information and belief, [the
defendant] regularly monitors [the plaintiff's] patent portfolio" and "cop[ied] [the plaintiff's]
technology," and the plaintiff's description of "the allegedly infringing [product] as a competing
product copying [the plaintiff's] technology" sufficient to plausibly allege "pre- and post-suit
knowledge of the patents-in-suit."[8]  *See, e.g., 10x Genomics*, 2019 WL 5595666, at *8, *11–12
(internal quotations omitted).  Likewise, in *Align Technology*, the district court found allegations
of pre-suit knowledge of the patents-in-suit to be plausible based on, among other things, a
defendant's knowledge of plaintiff's practicing products, direct competition between the plaintiff

---

[7] Apple's allegations that SU directly infringed the Patents-in-Suit by "launch[ing]" (i.e., selling,
offering to sell, and/or importing) W1 in collaboration with Masimo—allegations that are
described above and incorporated herein by reference—are more than sufficient to overcome SU's
assertion that the Complaint fails to state a claim for enhanced damages based on willful
infringement because the Complaint fails to allege that SU committed any infringing acts separate
and apart from Masimo.  Mot. at 3, 7.
[8] The district court made that finding in the context of contributory infringement but incorporated
it in the context of the court's willful infringement analysis.

and the defendant, and the defendant's sale of "knockoff products." *Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 447–48 (D. Del. 2018).

This Court should reach the same holding as other courts in this District, including those above, and find that the allegations in the Complaint are sufficient to support Apple's claim of SU's willful infringement. *See, e.g.,* Compl. ¶¶ 3, 4, 8, 22, 34, 36, 40, 46, 53, 60, 67. Indeed, the Complaint's allegations that both Masimo and Sound United (1) knew about Apple Watch and (2) collaborated to sell and offer to sell the copycat W1 product track with *10x Genomics* and *Align Technology*. As in those cases, the allegations here are more than sufficient to plausibly allege SU's pre-suit knowledge of, or willful blindness of, the Patents-in-Suit and a risk of infringement that was either known or should have been known.

Further, Apple's allegations of Sound United's willful collaboration with Masimo to knowingly sell the W1 product, which mimics Apple's patented designs embodied in Apple Watch, are made even more plausible because of the facts alleged in the Complaint regarding the circumstances surrounding Masimo's and SU's infringement. For example, as SU ***admits***, the patented designs that Apple alleges were copied were publicly available on the rear of Apple Watch including in, for example, Apple Watch Series 4, as of "September 2018." D.I. 21 at 16. Additionally, Masimo acquired SU to create a "***combined company***[]" for the specific purpose of distributing the copycat W1 product. Compl. ¶ 37. That acquisition occurred during a litigation campaign against Apple through which ***Masimo carefully studied Apple's IP***. *Id.* ¶ 40. And in August 2022, just four months after the close of SU's acquisition in April 2022, Masimo and SU ***together*** "launch[ed]" W1. *Id.* ¶¶ 8, 22, 37, 39. Each of those facts, which must be taken as true and viewed in the light most favorable to Apple, further supports the plausibility of Apple's allegations of willful infringement against both Masimo and SU.

Finally, the cases that SU relies on in its Motion provide SU no support as the allegations at issue in those cases do not provide the level of detail and plausibility that Apple's allegations do in this case.  For example, in *Dynamic Data Technologies, LLC v. Amlogic Holdings, Limited*, "[t]he only allegations of [the accused infringer's] pre-suit knowledge of infringement [were] conclusory statements that merely recite the legal requirements."  C.A. No. 19-1239-CFC, 2020 WL 4365809, at *2 (D. Del. July 30, 2020).  Similarly, in *Boston Scientific Corporation v. Nevro Corporation*, the Court found that the plaintiff "[made] no attempt to connect specific components of the accused system to elements of the asserted claims."  415 F. Supp. 3d 482, 490 (D. Del. 2019).  Apple pleaded much more than that here.

Accordingly, for at least those reasons, SU's Motion as to willfulness should be denied.

**B.    Apple Plausibly Alleged SU's Pre-Suit Knowledge Of, And/Or Willful Blindness Of, The Patents-In-Suit And Its Infringement Via Allegations of Masimo's Knowledge, Which Should Be Imputed To Its Subsidiary SU.**

Even if the allegations regarding SU's own pre-suit knowledge were not sufficient— though as explained above, they are sufficient—Apple's Complaint makes plausible allegations regarding SU's corporate parent Masimo's pre-suit knowledge of the Patents-in-Suit and its infringement that should be imputed to SU.  For example, Masimo's deliberate copying and pre-suit knowledge of the Patents-in-Suit and the risk of infringement should be imputed to SU because it is a subsidiary acquired specifically to facilitate Masimo's and SU's sale of the copied W1. While one corporate affiliate's knowledge of a patent is not necessarily imputed to another, such knowledge can be imputed in certain factual circumstances.  *See, e.g., Hockerson-Halberstadt, Inc. v. JSP Footwear, Inc.*, 104 F. App'x 721, 723, 725 (Fed. Cir. 2004) (holding that notice of infringement of patent for athletic shoe to President of FUBU could be imputed to licensee of FUBU trademark for shoes, due to control FUBU had over shoe designs, and desire to avoid a "perverse incentive" "to disguise the true identity of an infringing party" through "[s]everal layers

12

of corporate disguise").  Similarly here, Masimo's copying and pre-suit knowledge of the Patents-in-Suit should be imputed to its collaborator SU.

*First*, it is undisputed that Apple alleged sufficient facts regarding Masimo's willful infringement of the Patents-in-Suit (e.g., Masimo's **knowledge** of the Patents-in-Suit and the risk of infringement).[9]   Indeed, Apple plausibly alleged that Masimo monitored Apple's ongoing success, "copied Apple while filing lawsuits to try to prevent sales of Apple Watch," "carefully studied Apple's IP," "cited numerous Apple Watch patents in its complaints in federal court," and incorporated Apple's patented technology into W1.  Compl. ¶¶ 3, 22, 34, 36–37, 40, 46.  Those allegations firmly establish Masimo's pre-suit knowledge or willful blindness of the Patents-in-Suit and the risk of infringement.  *See* Section II.A, *infra*; *see also, e.g., Groove Digital*, 2019 WL 351254, at \*4 ("The complaint alleges that [the defendant] monitors patent litigation against its competitors and has therefore been aware of the [patent-in-suit] . . . .  That allegation is not implausible and, if true, would support a claim of willful infringement.") (internal quotations and citations omitted); *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 971 (Fed. Cir. 2018) (allowing circumstantial evidence to prove knowledge of patents, including testimony from an employee that he monitored the patent-holder's products, noted when some of the patent holder's patents were pending, and the infringer's "culture of copying"); *Simplivity Corp. v. Springpath, Inc.*, No. CV 4:15-13345-TSH, 2016 WL 5388951, at \*9 (D. Mass. July 15, 2016) (denying motion to dismiss in view of allegations that defendant and plaintiff were competitors, the ease of online patent research, the defendant's pre-suit investigations at a trade show where plaintiff's technology was displayed, and the defendant's later creation of a product which was "alleged to mimic" the patented technology).

---

[9] Masimo did not seek to dismiss Apple's willfulness claims.

***Second***, Masimo's copying and knowledge of the Patents-in-Suit and the risk of infringement should be imputed to SU because, in jointly planning and launching W1, it is more than plausible that Masimo shared its knowledge of the Patents-in-Suit with SU and the risk of infringement. *See Lytone Enterprise, Inc. v. Agrofresh Sols., Inc.*, C.A. No. 20-678-GBW-SRF, 2021 WL 534868, at \*4 (D. Del. Feb. 12, 2021) (finding pre-suit knowledge of subsidiary based in part on knowledge of and relationship with corporate parent); *Softview LLC v. Apple Inc.*, C.A. No. 10-389-LPS, 2012 WL 3061027, at \*5-6 (D. Del. July 26, 2012) (finding a parent/subsidiary relationship and three different alleged bases of pre-suit knowledge to be, individually, "inadequate allegations," but denying motion to dismiss because, "[t]aken in combination, the Court concludes that [the plaintiff] has alleged a plausible basis from which one might reasonably infer that [the defendant] had knowledge of the patents-in-suit prior to this litigation"); *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 568 (D. Del. 2012) (denying motion to dismiss in part "[b]ecause Zappos is a wholly owned subsidiary of Amazon, [and] the court can infer that Zappos also had pre-suit knowledge" based on Amazon's pre-suit knowledge).

Indeed, Masimo acquired SU during Masimo's litigation campaign, during which Masimo carefully studied Apple's IP, specifically ***to utilize SU's management team*** to launch W1. Compl. ¶¶ 37, 40. Masimo acquired SU to create a "***combined company***[.]" *Id*. ¶ 37. Masimo copied Apple Watch because Masimo ***never previously offered a watch in its 33-year history***, and Masimo and SU needed to trade off Apple's brand, which is highly familiar to and respected by consumers. *Id*. ¶ 3. Thus, contrary to SU's suggestion, Apple does not seek to impute Masimo's knowledge to SU based merely on their parent/subsidiary relationship. Mot. at 1-2. Rather, the Complaint alleges a much closer relationship specifically as to W1 between Masimo and SU demonstrating that SU is and was a partner with Masimo—indeed, a "combined company[]"—in

14

planning and launching the copycat W1 that incorporates Apple's patented designs.  *See* Compl. ¶¶ 8, 37, 46, 53, 60, 67.  Imputation of Masimo's knowledge to SU is warranted as a result.  *See RK Sols., LLC v. Vitajoy USA Inc.*, No. 218CV06608CASEX, 2018 WL 6179492, at *4 (C.D. Cal. Nov. 26, 2018) (finding that "[a]lthough [the subsidiary] disputes the plausibility of plaintiffs' allegations, at this juncture the Court must accept plaintiffs' allegations as true and finds that [the parent's] alleged knowledge of the [patent-in-suit] could be imputed to [the subsidiary]."); *Frac Shack Inc. v. Afd Petroleum Tex.*, No. 7:19-cv-00026-DC, 2019 WL 3818049, at *4 (W.D. Tex. June 13, 2019) (rejecting argument that a plaintiff had not plausibly shown pre-suit knowledge of asserted patent by all related entity defendants where the "[p]laintiff ha[d] sufficiently articulated facts from which a finder of fact could conclude that [one defendant's awareness of the patent] was imputed to all the other [d]efendants through the common ownership and governance of each company").  Thus, the allegations in the Complaint are more than sufficient to support a plausible inference that SU had pre-suit knowledge of Apple's patent rights.

### C.     The Complaint Plausibly Alleges Post-Suit Willful Infringement Before This Court.

SU's arguments that Apple has not adequately pleaded pre-suit knowledge cannot defeat Apple's enhanced damages claims based on SU's post-suit knowledge and conduct before this Court.  Indeed, before this Court, the knowledge of the Patents-in-Suit and infringement that SU obtained from Apple's Complaint—with its detailed factual allegations explaining how SU infringes with exemplary mappings of at least one asserted claim—satisfy the knowledge element of, and sufficiently support, Apple's claim for post-suit willful infringement.  *See, e.g., REC Solar Pte. Ltd. v. Hanwha Sols. Corp. et al.*, C.A. No. 20-1622-MN, D.I. 50 at 21 (D. Del. Nov. 30, 2020) ("I think that post-suit willfulness is probably allowed until the Federal Circuit says otherwise."); *Intuitive Surgical, Inc. v. Auris Health, Inc.*, 549 F. Supp. 3d 362, 378 (D. Del. 2021)

(denying summary judgment motion to dismiss post-suit willfulness based on assertion that the accused infringer "neither ceased its conduct nor redesigned its products to avoid infringement" following the filing of the lawsuit); *accord Ravgen, Inc. v. Ariosa Diagnostics, Inc.*, C.A. No. 20-1646-RGA-JLH, 2021 WL 3526178, at *4 (D. Del. Aug. 11, 2021) (holding that a plaintiff "may maintain a claim for enhanced damages based on post-suit willful infringement" even when the accused infringer "first obtained knowledge of its infringement from the original complaint"), *report and recommendation adopted*, C.A. No. 20-1646-RGA-JLH, D.I. 73 (Oct. 26, 2021).  SU's Motion should therefore be denied at a minimum based on SU's post-suit conduct.

## III.    IF THE COURT INTENDS TO GRANT SU'S MOTION, APPLE SHOULD BE GIVEN LEAVE TO AMEND.

In the event the Court credits any of SU's arguments, the proper course is amendment of the Complaint, not dismissal.[10]  Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, a party may amend its pleading with "the court's leave," which "[t]he court should freely grant [] when justice so requires."  The decision to grant or deny leave to amend lies within the discretion of the Court.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  In the absence of undue delay, bad faith, or dilatory motives on the part of the moving party, amendment should be freely granted, unless it would be futile or unfairly prejudicial to the non-moving party.  *See id*.  Based at least on the current allegations in the Complaint, an amendment by Apple to further support its direct and willful infringement claims, while not necessary, would not be futile.  Further, this case is currently in its early stages, so amendment poses no risk of prejudice to SU.  Apple also has not acted with undue delay, bad faith, or dilatory motives.  Thus, should the Court conclude that the Complaint is deficient with respect to any of Apple's claims, the Court should grant Apple leave to amend.

---

[10] Notably, SU did not seek dismissal with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, Apple respectfully requests that this Court deny SU's motion to dismiss Apple's claims for direct patent infringement and willful infringement.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

John M. Desmarais
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: 212-351-3400

Peter C. Magic
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: 415-573-1900

Dated:  January 10, 2023
10540610 / 12209.00051

By:  */s/ Bindu A. Palapura*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com

*Attorneys for Plaintiff/Counter-Defendant Apple Inc.*

17