## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

APPLE INC.,  )
)
   Plaintiff,  )
)  C.A. No. 22-1377-MN
  v.  )
)  **JURY TRIAL DEMANDED**
MASIMO CORPORATION and  )
SOUND UNITED, LLC,  )
)
   Defendants.  )  **PUBLIC VERSION**
)
MASIMO CORPORATION,  )
)
   Counter-Claimant,  )
)
  v.  )
)
APPLE INC.,  )
)
   Counter-Defendant.  )

### PLAINTIFF APPLE INC.'S OPENING BRIEF IN SUPPORT OF ITS
### MOTION FOR AN EXPEDITED TRIAL

OF COUNSEL:

John M. Desmarais
Jordan N. Malz
Cosmin Maier
Kerri-Ann Limbeek
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: 212-351-3400

Peter C. Magic
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: 415-573-1900

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Plaintiff/Counter-Defendant
Apple Inc.*

Dated: February 3, 2023
10580656 / 12209.00051
Public Version Dated: February 10, 2023

## <u>TABLE OF CONTENTS</u>

<u>Pages</u>

INTRODUCTION ...................................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ...................................................................1

SUMMARY OF THE ARGUMENT ........................................................................................1

FACTUAL BACKGROUND ...................................................................................................3

I.      APPLE REVOLUTIONIZED SMART WATCHES THROUGH ITS
        INNOVATIONS AND INVESTMENTS IN APPLE WATCH. .......................................3

II.     MASIMO'S W1 COPIES APPLE'S PATENTED DESIGNS............................................3

III.    MASIMO INTENDS TO SUBSTANTIALLY EXPAND SALES OF W1 IN THE
        LATTER HALF OF 2023.............................................................................................5

LEGAL STANDARD.............................................................................................................6

ARGUMENT .......................................................................................................................7

I.      AN EXPEDITED TRIAL IS NECESSARY TO MITIGATE IRREPARABLE
        HARM TO APPLE THAT WILL BE CAUSED BY MASIMO'S PLANNED
        ESCALATION OF INFRINGING SALES IN THE SECOND HALF OF 2023. ..............7

        A.      Masimo's Escalating Infringing Sales Will Irreparably Harm Apple In
                2023..........................................................................................................7

                1.      Masimo's Escalating Infringing Sales Will Irreparably Harm
                        Apple By Reducing Apple's Market Share. ..................................8

                2.      Masimo's Escalating Infringing Sales Will Irreparably Harm
                        Apple By Damaging Apple's Reputation. ..................................10

        B.      An Expedited Trial Would Mitigate Irreparable Harm To Apple Because
                Apple Is Likely To Prevail At Trial And Obtain Post-Trial Injunctive
                Relief.......................................................................................................12

                1.      Apple Is Likely To Succeed On The Merits At An Expedited Trial. ........12

                        a.      Masimo Likely Infringes The Watch Patents. ...............12

                        b.      Masimo Is Unlikely To Prove Invalidity By Clear And
                                Convincing Evidence. ...................................................14

i

2.      Apple Is Likely To Prove The Other Necessary Factors For A
        Permanent Injunction. ..............................................................................15

II.     EXPEDITING TRIAL WOULD NOT UNDULY PREJUDICE MASIMO. ..................17

III.    AN EXPEDITED TRIAL IS WARRANTED BASED ON THE NARROW
        SCOPE OF THE ISSUES FOR TRIAL. ............................................................17

        A.      Determining Liability In This Design Patent Case Will Require Only
                Limited Discovery And Pretrial Proceedings. ........................................18

        B.      Bifurcating Damages Would Further Streamline The Issues For Expedited
                Discovery And Trial On Liability.........................................................19

CONCLUSION.................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Pages</u>

<u>Cases</u>

*Advanced Micro Devices, Inc. v. S3 Graphics Co.*,
  C.A. No. 11-965-LPS, 2011 WL 5402667 (D. Del. Nov. 8, 2011) ................................... 7

*Apple v. Samsung*,
  809 F.3d 633 (Fed. Cir. 2015)............................................................................. 8, 10, 11

*Auto. Body Parts Ass'n v. Ford Glo. Techs., LLC*,
  930 F.3d 1314 (Fed. Cir. 2019).......................................................................................... 15

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
  967 F.3d 1353 (Fed. Cir. 2020)............................................................................................ 9

*BlephEx, LLC v. Myco Indus., Inc.*,
  24 F.4th 1391 (Fed. Cir. 2022) ................................................................................... 14, 15

*Brit. Telecomms. PLC v. Google Inc.*,
  C.A. No. 11-1249-LPS, 2013 WL 3814329 (D. Del. July 22, 2013) .............................. 20

*Campbell Soup Co. v. Gamon Plus, Inc.*,
  10 F.4th 1268 (Fed. Cir. 2021) ........................................................................................ 15

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
  664 F.3d 922 (Fed. Cir. 2012)......................................................................................... 16

*Cirba Inc. v. VMWARE, Inc.*,
  C.A. No. 19-742-LPS, 2020 WL 7489765 (D. Del. Dec. 21, 2020)................................... 6

*Clamp-Swing Pricing Co. v. Super Mkt. Merch. & Supply, Inc.*,
  No. 13-cv-04515-WHO, 2013 U.S. Dist. LEXIS 166638 (N.D. Cal. Nov. 21,
  2013) .........................................................................................................................11-12

*Crocs, Inc. v. ITC*,
  598 F.3d 1294 (Fed. Cir. 2010)................................................................................... 13, 19

*CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*,
  893 F. Supp. 508 (D. Md. 1995),
  *aff'd*, 92 F.3d 1203 (Fed. Cir. 1996) .............................................................................. 11

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
  717 F.3d 1336 (Fed. Cir. 2013)............................................................................... *passim*

*Dutch Branch of Streamserve Dev. AB v. Exstream Software, LLC*,
  C.A. No. 08-343-SLR, 2009 WL 2705932  (D. Del. Aug. 26, 2009)............................... 20

*E.I. DuPont de Nemours & Co. v. Unifrax I LLC*,
  C.A. No. 14-1250-RGA, 2017 WL 4004419 (D. Del. Sept. 12, 2017
  *aff'd*, 921 F.3d 1060 (Fed. Cir. 2019) ............................................................................... 9

*Eaton Corp. v. Rockwell Int'l Corp.*,
  C.A. No. 97-421-JJF, 1997 WL 33708214 (D. Del. Nov. 4, 1997)................................... 7

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)......................................................................................................... 12

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
  543 F.3d 665 (Fed. Cir. 2008) (*en banc*) ....................................................... 13, 14, 18, 19

*Enzo Life Scis., Inc. v. Digene Corp.*,
  C.A. No. 02-212-JJF, 2003 WL 21402512 (D. Del. June 10, 2003) ................................ 20

*Gavrieli Brands LLC, v. Soto Massini (USA) Corp.*,
  C.A. No. 18-462-MN, D.I. 44 (D. Del. July 9, 2018)................................................. 18, 19

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010).................................................................................... 16, 17

*Idzojtic v. Pennsylvania Railroad. Co.*,
  456 F.2d 1228 (3d Cir. 1972).................................................................................... 19-20

*Kone Corp. v. ThyssenKrupp USA, Inc.*,
  C.A. No. 11-465-LPS-CJB, 2011 WL 4478477 (D. Del. Sept. 26, 2011)........................ 6

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
  988 F.2d 1117 (Fed. Cir. 1993).................................................................................. 13, 14

*Payless Shoe Source, Inc. v. Reebok Int'l, Ltd.*,
  998 F.2d 985 (Fed. Cir. 1993)......................................................................................... 13

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
  659 F.3d 1142, (Fed. Cir. 2011)............................................................................. 8, 16, 20

*Rosco, Inc. v. Mirror Lite Co.*,
  304 F.3d 1373 (Fed. Cir. 2002)........................................................................................ 15

*SecureBuy, LLC v. CardinalCommerce Corporation*,
  C.A. No. 13-1792-LPS, D.I.53 (D. Del. Feb. 7, 2014) ..................................................... 6

*Shibumi Shade, Inc. v. Beach Shade LLC*,
  No. 5:21-cv-256, 2022 WL 390839 (E.D.N.C. Feb. 8, 2022) ......................................... 16

*Takeda Pharm. Co. Ltd. v. Norwich Pharms., Inc.*,
  No. 20-cv-8966-SRC, 2022 WL 2759961 (D.N.J. July 14, 2022) ................................... 17

*Tinnus Enters., LLC v. Telebrands Corp.*,
      846 F.3d 1190 (Fed. Cir. 2017)............................................................................ 10-11

*Titan Tire Corp. v. Case New Holland, Inc.*,
      566 F.3d 1372 (Fed. Cir. 2009)................................................................................ 14

*Trebro Mfg. v. Firefly Equip.*,
      748 F.3d 1159 (Fed. Cir. 2014)............................................................................. 8, 16

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
      782 F.2d 995 (Fed. Cir. 1986)................................................................................... 16

**<u>Statutes</u>**

35 U.S.C. § 289.................................................................................................................. 13

**<u>Rules</u>**

D. Del. L.R. 16.1................................................................................................................... 6

Fed. R. Civ. P. 16................................................................................................................. 6

Fed. R. Civ. P. 16(a)(1)....................................................................................................... 6

Fed. R. Civ. P. 42(b).......................................................................................................... 19

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| A | "Apple Expands Apple Watch Marketing Efforts With New Multi-Page Spread in Vogue Magazine" (Feb. 25, 2015), available at https://www.macrumors.com/2015/02/25/apple-watch-vogue-magazine-march/. |
| B | "Medical Pioneer Masimo Announces the Full Market Consumer Release of the Masimo W1™, the First Watch to Offer Accurate, Continuous Health Data" (Aug. 31, 2022), available at https://investor.masimo.com/news/news-details/2022/Medical-Pioneer-Masimo-Announces-the-Full-Market-Consumer-Release-of-the-Masimo-W1-the-First-Watch-to-Offer-Accurate-Continuous-Health-Data/default.aspx. |
| C | Masimo W1 product webpage, available at https://www.masimopersonalhealth.com/products/masimo-w1 (last accessed Dec. 9, 2022). |
| D | "Masimo (MASI) Q2 2022 Earnings Call Transcript" (Aug. 10, 2022), available at https://www.fool.com/earnings/call-transcripts/2022/08/10/masimo-masi-q2-2022-earnings-call-transcript/. |
| E | "Masimo Closes Acquisition of Sound United" (Apr. 12, 2022), available at https://www.soundunited.com/news/Masimo%20Closes%20Acquisition%20of%20Sound%20United. |
| F | "Masimo completes acquisition of Sound United" (Apr. 12, 2022), available at https://www.massdevice.com/masimo-completes-acquisition-of-sound-united/. |
| G | "Masimo (MASI) Q1 2022 Earnings Call Transcript" (May 4, 2022), available at https://www.fool.com/earnings/call-transcripts/2022/05/04/masimo-masi-q1-2022-earnings-call-transcript/. |
| H | "Masimo (MASI) Q4 2021 Earnings Call Transcript" (Feb. 15, 2022), available at https://www.fool.com/earnings/call-transcripts/2022/02/15/masimo-masi-q4-2021-earnings-call-transcript/. |
| I | "Masimo Corporation Analyst/Investor Day" (Dec. 13, 2022), available at https://www.capitaliq.spglobal.com/apisv3/docviewer/documents?mid=197045029. |
| J | Defendants Masimo Corporation and Sound United, LLC's Responses and Objections to Apple's Interrogatory No. 1, served on January 11, 2023. |
| K | Declaration of Eric Jue in Support of Apple Inc.'s Motion for an Expedited Trial, dated January 18, 2023 ("Jue"). |
| L | Declaration of Peter Russell-Clarke in Support of Apple Inc.'s Motion for an Expedited Trial, dated January 12, 2023 ("Russell-Clarke"). |
| M | Declaration of Alan D. Ball in Support of Apple Inc.'s Motion for an Expedited Trial, dated January 29, 2023 ("Ball"). |
| N | Declaration of Dr. Itamar Simonson in Support of Apple Inc.'s Motion for an Expedited Trial, dated January 27, 2023 ("Simonson"). |

| Exhibit | Description |
|---------|-------------|
| O | Declaration of James Malackowski in Support of Apple Inc.'s Motion for an Expedited Trial, dated January 30, 2023 ("Malackowski"). |
| P | Official Transcript of Oral Argument Hearing held on February 7, 2014 before Judge Leonard P. Stark in *SecureBuy, LLC v. CardinalCommerce Corporation*, No. 13-cv-1792-LPS, D.I. 53 |
| Q | Proposed Order (Scheduling Order) filed by Gavreili Brands LLC on July 9, 2018 and adopted on July 11, 2018 in *Gavrieli Brands LLC, v. Soto Massini (USA) Corp.*, 1:18-cv-00462-MN, D.I. 44. |
| R | Exemplary Eight-Month Proposed Scheduling Order |

All citations to lettered exhibits refer to the exhibits attached to the Declaration of Kerri-Ann Limbeek In Support of Plaintiff Apple Inc.'s Motion For An Expedited Trial, submitted concurrently herewith.

## INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 1 and 16, Plaintiff Apple Inc. ("Apple") respectfully requests an expedited trial to adjudicate Apple's claims against Defendants Masimo Corporation and Sound United, LLC (together, "Masimo") for willful patent infringement of Apple's patented designs related to Apple Watch and its charger.  Apple brings the present motion in lieu of a motion for a preliminary injunction to conserve Court and party resources.

An expedited trial will mitigate the significant irreparable harms that Apple will suffer in *the second half of 2023* when, as Masimo admits, Masimo plans to significantly increase sales of its "W1" watch, which copies Apple's iconic patented designs, by distributing it to consumers through some of the *same retail channels* through which Apple Watch is currently sold. Expediting trial is feasible here because the scope of the issues for trial is narrow and only limited discovery and pre-trial proceedings are necessary.  For the reasons herein, Apple respectfully requests an expedited trial approximately eight months from a decision on this motion.

## NATURE AND STAGE OF THE PROCEEDINGS

On October 20, 2022, Apple sued Masimo for direct and willful infringement of four design patents related to smart watches and smart watch chargers, namely U.S. Patent Nos. D735,131; D883,279; D947,842; and D962,936 (together, "the Patents-in-Suit").  *See* D.I. 1 ("Complaint"). On December 12, 2022, Masimo answered the Complaint, and Sound United moved to dismiss Apple's claims of direct and willful infringement.  D.I. 29; D.I. 30; D.I. 31.

## SUMMARY OF THE ARGUMENT

1.     An expedited trial in this case is necessary to significantly mitigate irreparable harms to Apple caused by Masimo's willful infringement and would not unduly prejudice Masimo. Masimo admits that as soon as the *second half of 2023*, it plans to expand sales of its W1 watch, which copies the iconic patented designs of Apple Watch, as well as forthcoming smart watches

that Masimo has suggested will use the same infringing design, through some of the ***same retail channels through which Apple Watch is currently sold***.  In the absence of an expedited trial and subsequent post-trial relief enjoining Masimo's willful infringement, Apple will be forced to compete against its own patented designs in Masimo's copy-cat product in some of those same retail channels.  That infringing competition will result in irreparable harms to Apple including: (1) lost market share;[1] and (2) damage to Apple's reputation as an innovator of distinctive designs and a provider of high-quality products.  *See* Section I.A.  An expedited trial on liability will significantly mitigate those harms by expediting Apple's anticipated request for post-trial injunctive relief, which Apple is likely to obtain.  *See* Section I.B.

2.      Masimo, on the other hand, will suffer no undue prejudice from the expeditious adjudication of this case.  In fact, the prompt resolution of liability will benefit both parties by providing certainty as to Apple's claims of infringement.  *See* Section II.

3.      Expediting trial is feasible given the narrow scope of this case.  Apple's claims are limited to infringement of ***design*** patents (rather than utility patents) by a single product (W1 and its charger).  Consequently, only limited discovery and pretrial proceedings will be required, and the scope of liability issues at trial will be narrow.  *See* Section III.A.  Bifurcation of damages issues would further streamline the expedited trial to the time-sensitive issue of liability, which is necessary for Apple to obtain post-trial injunctive relief.  *See* Section III.B.

---

[1] Although Apple disputes Masimo's definition of an alleged relevant United States market for the sale of "health watches" in its antitrust counterclaims in *Apple Inc. v. Masimo Corp. et al.*, No. 1:22-cv-01378-MN, D.I. 15 (D. Del. Dec. 14, 2022), there is no dispute that W1 will compete with Apple Watch for customers.  As described herein, Apple will be irreparably harmed by Masimo's unfair gain of share in any relevant market in which W1 and Apple Watch compete because of Masimo's infringing W1 sales.

**FACTUAL BACKGROUND**

I.    **APPLE REVOLUTIONIZED SMART WATCHES THROUGH ITS INNOVATIONS AND INVESTMENTS IN APPLE WATCH.**

Apple was instrumental in developing consumer interest in smart watch products through its innovations in the design and marketing of Apple Watch.  Malackowski ¶¶ 32–33.  Through Apple's significant investment of time and money, Apple designed Apple Watch so that customers would want to buy, wear, and visually appreciate it as an ornamental watch—not just as a piece of new technology.  Jue ¶ 5; Russell-Clark ¶ 5.  Apple's innovations include the rear design of Apple Watch.  *Id.*  As an homage to traditional luxury watches, which often include a fully or partially transparent back so that the consumer can see the high-quality internal mechanisms, Apple's industrial design team designed a back for Apple Watch that provides an aesthetically pleasing hint of the high-quality mechanisms lying within.  Russell-Clark ¶ 7.  Apple patented those designs in D883,279, D947,842, and D962,936 (together, "the Watch Patents"),[2] among others, and continues to use its patented designs in its latest Apple Watch products.  Ball ¶¶ 66–71, 111–23.

Apple has also invested significant resources in marketing Apple Watch, including to foster in consumers' minds an association with Apple as a brand.  Jue ¶ 4; Russell-Clark ¶ 6.  That association is so strong that Apple's advertisements often feature only an image of Apple Watch.  *See, e.g.,* Ex. A; Jue ¶ 7.  Apple Watch's rear design is one factor in consumer decisions to purchase Apple Watch.  Jue ¶ 10; Malackowski ¶¶ 34–44; Simonson ¶¶ 33–34.

II.   **MASIMO'S W1 COPIES APPLE'S PATENTED DESIGNS.**

Masimo is a medical device company that, prior to August 2022, had never offered a smart watch in its 33-year history.  *See* Malackowski ¶ 48.  Masimo's primary business is and always

---

[2] Apple also patented the unique design of the Apple Watch charger, which is sold with Apple Watch, in D735,131 ("the charger Patent").

has been selling devices to hospitals for monitoring various patient biometrics—none of which are at issue here. *Id.* at ¶ 46. Recently, however, Masimo witnessed strong consumer interest in Apple Watch, including its beautiful design. Desperate not to be left out, Masimo released W1 in the United States on August 31, 2022. D.I. 31, ¶ 39. But rather than developing its own designs, Masimo simply copied the iconic, patented designs embodied in Apple Watch:



Critically, the patented Apple designs Masimo copied include the designs of the back of W1, which contains windows to its physiological sensor. Masimo heavily features W1's back design in product advertisements. The back of the watch is the largest image on W1's webpage:



Ex. C. And numerous other images from Masimo emphasize W1's back design. *Id*. Masimo's promotion of consumer reviews likewise focuses on the watch's design. *See, e.g.,* Ex. B at 2.

Despite copying Apple Watch's back design, W1's details, materials, and finishes do not

have the same sophisticated and premium appearance as Apple Watch.  Ball ¶¶ 126–27.

III.  **MASIMO INTENDS TO SUBSTANTIALLY EXPAND SALES OF W1 IN THE LATTER HALF OF 2023.**

To meet its new need to distribute to consumers for W1, Masimo recently spent $1.025 billion to acquire subsidiary Sound United, a consumer electronics company with "immediate access to over 20,000 points of retail distribution," including retailers like Best Buy and Amazon, where Apple Watch is sold.  Ex. E; Ex. F at 1; Ex. G at 18; Ex. H at 11; Ex. I at 37; Malackowski ¶¶ 59, 67–69.  Masimo admits that it is planning to use those distribution channels *in the second half of 2023* for W1 as well as Freedom and B1—forthcoming smart watches that Masimo has suggested will use the same back design as W1.  Ex. J at 3; Ex. D at 15; Ex. I at 38; *id.* at 10 (indicating at a recent investor conference that Masimo intends to include the same sensor (*e.g.* the same back of the watch design) as W1 in the forthcoming "Freedom" and "B1" smart watches).

Specifically, Masimo recently stated in response to an interrogatory that ███████████ ██████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████ ████████████████████████  Ex. J at 3.  Masimo expects that, by using the ███████████ ████████████████████████████████  Masimo will increase its sales of home consumer devices, including W1 and Freedom among other products, from approximately 1,000-23,000 *in past years*, to "*4 million devices* worldwide" *by the end of 2023*.  Ex. J at 3; Ex. I at 8.  Masimo also revealed plans to expand sales of W1 by: ████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████ Ex. J at 3.

## LEGAL STANDARD

The Court may expedite trial and the corresponding discovery schedule in this case pursuant to its broad authority to manage its cases. Fed. R. Civ. P. 16; *see also* D. Del. L.R. 16.1. Rule 16(a) specifically authorizes the Court to convene a conference of the parties "for such purposes as . . . expediting disposition of the action." Fed. R. Civ. P. 16(a)(1). The District of Delaware has previously held that motions to expedite (*e.g.,* in the context of discovery) are governed by a reasonableness standard, under which it is appropriate for the Court to authorize expedited proceedings upon a showing of good cause. *Kone Corp. v. ThyssenKrupp USA, Inc.*, C.A. No. 11-465-LPS-CJB, 2011 WL 4478477, at *4–6, *8 (D. Del. Sept. 26, 2011) (finding good cause to expedite limited discovery). Good cause warrants an expedited schedule here.

Courts in this District routinely schedule an expedited trial in the context of injunctive relief where a movant has demonstrated potential harm, even if not irreparable or imminent. For example, in *SecureBuy, LLC v. CardinalCommerce Corporation*, the court denied a declaratory judgment in defendant's motion for preliminary injunction but set an expedited trial within ***six months*** where the potential irreparable harm could be remedied with an expedited trial. *See* Ex. P (C.A. No. 13-1792-LPS, D.I. 53 (Transcript Of Oral Hearing) at 55-63 (D. Del. Feb. 7, 2014)). That court noted that granting such relief was well within its discretion, and found it was appropriate in that case in view of, among other factors, competition between the parties, potential harm to the movant, and the narrow scope of the case. *Id.* at 62. Other courts in this District have similarly expedited trial on the merits as an alternative to a preliminary injunction. *See, e.g., Cirba Inc. v. VMWARE, Inc.*, C.A. No. 19-742-LPS, 2020 WL 7489765, at *1 (D. Del. Dec. 21, 2020) ("[T]he Court agreed to hold an expedited trial," to reduce the risk that "VMWARE's alleged infringement would cause Plaintiffs further harm before the case could be decided on the merits,"

and trial was held *five months* after the preliminary injunction motion denial and *nine months* after the Complaint.); *Eaton Corp. v. Rockwell Int'l Corp.*, C.A. No. 97-421-JJF, 1997 WL 33708214, at *8 (D. Del. Nov. 4, 1997) (scheduling a trial within *six months* of a denial of a preliminary injunction, which the court found would alleviate plaintiff's hardships, including "to potentially suffer some loss of market share"); *see also Advanced Micro Devices, Inc. v. S3 Graphics Co.*, C.A. No. 11-965-LPS, 2011 WL 5402667, at *2 (D. Del. Nov. 8, 2011) (noting the "public policy favoring expeditious resolution of disputes" particularly involving patents, and holding that although the requested injunction was not warranted based on irreparable harm, an expedited schedule to resolve the narrow issue for trial was appropriate to accomplish an "expeditious resolution"). Apple brings this motion in lieu of a motion for a preliminary injunction because recent events have revealed that the irreparable harm to Apple caused by Masimo's infringing sales can largely be mitigated by an expedited trial in approximately eight months.

## ARGUMENT

### I. AN EXPEDITED TRIAL IS NECESSARY TO MITIGATE IRREPARABLE HARM TO APPLE THAT WILL BE CAUSED BY MASIMO'S PLANNED ESCALATION OF INFRINGING SALES IN THE SECOND HALF OF 2023.

Good cause exists to expedite trial in this case to mitigate the irreparable harm that Apple is likely to sustain in the latter half of 2023 because of Masimo's plans to sell smart watches that copy Apple's iconic patented designs in some of the same retailers that also sell Apple Watch. Apple requests an expedited trial to mitigate those harms by adjudicating Masimo's liability before Masimo's planned expansion so that Apple can seek post-trial injunctive relief, which Apple is likely to successfully obtain.

#### A. Masimo's Escalating Infringing Sales Will Irreparably Harm Apple In 2023.

Masimo admits that *in the latter half of 2023*, it intends to sell W1 and other smart watches that Masimo has suggested will use W1's infringing design through Sound United's distribution

channels—including through retailers that sell Apple Watch, like Best Buy and Amazon.  Ex. J at 3; Malackowski ¶¶ 67–69, 78.  Masimo's competing sales in those retailers will irreparably harm Apple through: (1) unquantifiable lost market share[3] and (2) damage to Apple's reputation. *Douglas Dynamics, LLC v. Buyers Prods. Co*., 717 F.3d 1336, 1344 (Fed. Cir. 2013) ("Irreparable injury encompasses different types of losses that are often difficult to quantify, including lost sales and erosion in reputation[.]").  Those potential harms provide good cause for expediting trial.

1. **Masimo's Escalating Infringing Sales Will Irreparably Harm Apple By Reducing Apple's Market Share.**

It is well established that loss of current or future market share may constitute irreparable harm.  *See Robert Bosch LLC v. Pylon Mfg. Corp*., 659 F.3d 1142, 1152-55 (Fed. Cir. 2011); *Apple v. Samsung*, 809 F.3d 633, 645-46, 652 (Fed. Cir. 2015) ("*Apple IV*").  "Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions." *Douglas*, 717 F.3d at 1345; *Apple IV*, 809 F.3d at 646 (infringement "places a substantial hardship" on the plaintiff "by forcing [plaintiff] to compete against its own patented invention") (internal quotations omitted); *see also Bosch*, 659 F.3d at 1149, 1157 (injunction granted where patentee also practiced patented technology); *Trebro Mfg. v. Firefly Equip.*, 748 F.3d 1159, 1171 (Fed. Cir. 2014) (direct competition "strongly show[ed] a probability for irreparable harm").  In the latter half of 2023, Apple will be forced to do just that: Apple Watch and W1 will be in direct competition at the same retailers, forcing Apple to compete against its own patented inventions.  Malackowski ¶¶ 71–86.  As Mr. Malackowski, an economics expert, explains, forcing Apple Watch to compete with knockoff products like W1 "diminish[es] the value of Apple Watch to consumers because

---

[3] As noted above, Apple disputes Masimo's definition of an alleged relevant United States market, but Apple will be irreparably harmed by Masimo's unfair gains in any relevant market.

8

consumers (or, their friends) can purchase a similar-in-design product from another source." *Id.* ¶ 89. Thus, "the ready availability of W1 . . . creates a disincentive for consumers to buy the authentic Apple Watch," leading to irreparable losses by Apple. *Id.* ¶ 89.

The harms to Apple from losing market share to Masimo's infringing W1 and Masimo unfairly establishing itself as a new competitor to Apple with the infringing W1 are unquantifiable, and thus irreparable. For example, Masimo's improper foothold in smart watches by virtue of its infringement cannot be addressed by a re-design of W1 upon a finding of infringement because consumer interest in even the re-designed product will be based at least in part on Masimo's prior infringement. Malackowski ¶ 97. Indeed, the Federal Circuit has recognized that "mere damages will not compensate [a patentee] for [] [an accused infringer's] increasing share of the market, a market which [the patentee] competes in, and a market that [the patentee] has in part created with its investment in patented technology." *Douglas Dynamics*, 717 F.3d at 1345; *see also, e.g., Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1378 (Fed. Cir. 2020) (partially vacating injunctive relief based on balance of hardship factor but finding that irreparable harm was "undeniable"); *E.I. DuPont de Nemours & Co. v. Unifrax I LLC*, C.A. No. 14-1250-RGA, 2017 WL 4004419, at *5 (D. Del. Sept. 12, 2017) ("Monetary damages are inadequate . . . because Plaintiff would be forced to compete against a rival gaining market share with Plaintiff's technology."), *aff'd*, 921 F.3d 1060 (Fed. Cir. 2019).

The potential irreparable harm to Apple described above has a causal nexus to Masimo's infringement at least because the patented designs that Masimo copied from Apple factor into consumers' decisions to buy W1. For example, Masimo heavily features the back design of W1 on its webpage. Malackowski ¶¶ 50, 105. Additionally, survey evidence shows that Masimo's use of the Watch Patents has, at a minimum, "some connection" to the potential lost sales because

consumers have identified the back design as forming a part of their potential purchasing decisions for W1. *Apple IV*, 809 F.3d at 640 (To prove causal nexus for a patent injunction, the patentee must show "'some connection' between the harm alleged and the infringement acts."); Simonson ¶ 33 (36.6% of prospective purchasers familiar with smart watches indicated the design of the back of W1 would impact their purchasing decision); Malackowski ¶ 110.

### 2. Masimo's Escalating Infringing Sales Will Irreparably Harm Apple By Damaging Apple's Reputation.

The Federal Circuit has repeatedly recognized harms to reputation as irreparable. *Douglas*, 717 F.3d at 1344-45. Here, because of Masimo's intentional copying, Masimo's infringement will cause one of two consumer reactions, either of which will irreparably harm Apple's reputation.

*First*, consumers may mistakenly conclude that Apple's iconic designs are common because they appear on a non-Apple product, resulting in irreparable harm to Apple's reputation as an innovator in design. Through years of investment, Apple has gained a hard-earned reputation for its innovative, design-driven approach. Jue ¶ 4; Malackowski ¶¶ 16–25. Apple's iconic designs, including in Apple Watch, form a key part of Apple's brand identity—a central focus within Apple, as well as for consumers. Jue ¶ 4; Russell-Clark ¶¶ 4–6; Malackowski ¶¶ 22–24, 115. But knock-offs like W1 irreparably harm Apple's reputation for innovation and damage the brand value that those designs provide. Malackowski ¶¶ 115–21. If consumers can purchase almost the same-looking design from another source, they may conclude, incorrectly, that Apple's designs are no longer innovative. Malackowski ¶ 116; *Douglas*, 717 F.3d at 1344–45 ("Douglas's reputation as an innovator will *certainly* be damaged if customers found the same 'innovations' appearing in competitors' snowplows, particularly products considered less prestigious and innovative."); *see also Tinnus Enters., LLC v. Telebrands Corp.,* 846 F.3d 1190, 1208 (Fed. Cir. 2017) (finding irreparable harm where infringement "establishes persisting harm to [plaintiff]'s

reputation and tarnishes its status as the innovator"); *Apple IV*, 809 F.3d at 654 (Reyna, J., concurring) ("The presence of the patented features in [accused] products . . . communicates . . . that Apple's corresponding features are commonplace, not innovative," so infringement "neutralizes the beneficial impact that Apple's corresponding features have in the mind of the consumer."); *see also id.* at 652–56.  That harm exists even if a consumer knowingly chooses a less innovative infringing product.  *Douglas*, 717 F.3d at 1344–45.

*Second*, Masimo's infringement risks irreparably harming Apple's reputation as a provider of high-quality products because consumers are likely to associate Apple with W1, which is an inferior product over which Apple has no control.  Apple Watch uses high-quality materials, and its finishes are highly sophisticated, rivaling what a consumer would expect from a piece of jewelry.  Ball ¶ 126.  But W1's details, materials, and finishes do not have the same sophisticated and premium appearance.  *Id.* ¶ 127.  Masimo's copying of Apple's patented designs will cause consumers to mistakenly believe that Apple is somehow involved with W1.  Malackowski ¶ 123; Simonson ¶ 45.  Indeed, recent surveys demonstrate that the public is likely to associate the design of the back of W1 with Apple.  *Id.* ¶¶ 45, 47 (finding that up to 50% of prospective smart watch purchasers associate the design of the back of W1 with Apple, relative to approximately 10% of respondents who associate a control with Apple).  That mistaken consumer belief will irreparably harm Apple by signaling that it is departing from its reputation for producing only high-quality products.  Malackowski ¶¶ 122–26; *CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 893 F. Supp. 508, 524 (D. Md. 1995), *aff'd*, 92 F.3d 1203 (Fed. Cir. 1996) (finding sales of accused product in the discount trade would diminish the patentee's cultivated high-quality image); *see also, e.g., Clamp-Swing Pricing Co. v. Super Mkt. Merch. & Supply, Inc.*, No. 13-cv-04515-WHO, 2013 U.S. Dist. LEXIS 166638, at *17 (N.D. Cal. Nov. 21, 2013) (finding irreparable harm from

"[i]nferior quality" product in trade dress case); *Douglas*, 717 F.3d at 1344–45.  That harm to Apple's reputation cannot be quantified and is thus irreparable.  Malackowski ¶¶ 125–26.

The irreparable harms to Apple's reputation have a causal nexus to Masimo's infringement because each is caused by Masimo's use of Apple's patented designs in W1.  For example, Dr. Simonson's surveys provide direct evidence that the public is likely to associate Apple with W1 *because* of the back design.  Simonson ¶¶ 45, 47; Malackowski ¶ 125.

> ### B.    An Expedited Trial Would Mitigate Irreparable Harm To Apple Because Apple Is Likely To Prevail At Trial And Obtain Post-Trial Injunctive Relief.

An expedited trial on liability is warranted because it would expedite Apple's anticipated request for post-trial injunctive relief, which, if obtained, would mitigate the irreparable harms likely to escalate in the latter half of 2023 as described above.  In order to obtain post-trial injunctive relief, Apple will need to prove infringement of at least one valid claim at trial as well as each of the following requirements for injunctive relief: (1) that it has suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).  Apple is likely to do so here.  Thus, good cause exists for expediting trial to mitigate the irreparable harms likely to escalate this year.

> #### 1.    Apple Is Likely To Succeed On The Merits At An Expedited Trial.

> ##### a.    Masimo Likely Infringes The Watch Patents.

Apple is likely to prove at trial that Masimo's W1 watch infringes at least the Watch Patents.[4]  An accused product infringes a claimed design if the two are "substantially similar."

---

[4] Masimo also likely infringes the asserted charger Patent, but the focus of this Motion is Masimo's likely infringement of the Watch Patents.

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125–26 (Fed. Cir. 1993).  The "sole test" for such infringement is whether, "in the eye of an ordinary observer, giving such attention as a purchaser usually gives," the "resemblance [between the claimed design and the accused product] is such as to deceive such an observer." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670, 678 (Fed. Cir. 2008) (*en banc*).  The accused product need not be identical to the patented design. *Payless Shoe Source, Inc. v. Reebok Int'l, Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993); *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303–04 (Fed. Cir. 2010).  Rather, the focus is on the claimed design's overall impression, and infringement occurs when the product embodies the claimed design or "any colorable imitation thereof." *Egyptian Goddess*, 543 F.3d at 678 (citations omitted); *see also* 35 U.S.C. § 289.  In making that determination, courts have considered three comparisons: (1) comparing the accused product to the patented designs; (2) where, as here, the patentee's product is substantially the same as the patented design, comparing the accused product to the patentee's product; and (3) comparing the accused and patented designs in light of the prior art.  *See Egyptian Goddess*, 543 F.3d at 677–78, 682; *L.A. Gear*, 988 F.2d at 1125–26.  Each comparison shows that Masimo likely infringes here.

Comparing W1 against both Apple's patented designs and Apple Watch embodying those designs demonstrates that an ordinary observer would likely mistake W1's design for the claimed designs and Apple Watches' embodiments of those designs (*see* Ball ¶¶ 135–43, 148–65, 170–88, 193–201):

| D'842 and D'279 Patents (Figure 4) | Apple Watch (Series 5) | Masimo W1 |
|---|---|---|
|  |  |  |

| D'936Patent (Figure 4) | Apple Watch (Series 8) | Masimo W1 |
|---|---|---|
|  |  |  |

A comparison between the Watch Patents, W1, and the prior art further demonstrates infringement. Ball ¶¶ 135–201. As shown by industrial design expert Mr. Ball, W1 appropriates ornamental features of the Watch Patents that depart notably from the prior art. Ball ¶¶ 144–47, 166–69, 189–92. Because "the accused design has copied [] particular feature[s] of the claimed design that depart[] conspicuously from the prior art, the accused design is naturally more likely to be regarded as deceptively similar, and thus infringing." *Egyptian Goddess*, 543 F.3d at 677.

### b. Masimo Is Unlikely To Prove Invalidity By Clear And Convincing Evidence.

"[I]nvalidity of a design patent must be established by clear and convincing evidence." *L.A. Gear*, 988 F.2d at 1123. "Absent an invalidity defense, 'the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success" on validity. *BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1399 (Fed. Cir. 2022) (quoting *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009)).

Masimo bears the burden to identify any prior art it contends will invalidate the Patents-

in-Suit. *BlephEx*, 24 F.4th at 1399.  Apple is not aware of any such prior art.  As Mr. Ball explains, the claimed ornamental features depart notably and conspicuously from the prior art cited during prosecution.  Ball ¶¶ 129, 141–47, 166–69, 189–92.  Further, Masimo is also unlikely to overcome the evidence of the patented designs' commercial success, industry praise, and copying—objective factors that negate obviousness.  Malackowski ¶¶ 145–52; *see Campbell Soup Co. v. Gamon Plus, Inc.*, 10 F.4th 1268, 1278 (Fed. Cir. 2021).

Masimo is likewise unlikely to succeed if it argues that the claimed designs are "primarily functional" or compelled by function.  Ball ¶¶ 205–11, 214–19, 222–27; *see Auto. Body Parts Ass'n v. Ford Glo. Techs., LLC*, 930 F.3d 1314, 1320 (Fed. Cir. 2019).  The availability of many designs for the rear of watches with similar functionality that, unlike W1, do not use the claimed designs belies any such argument.  *See, e.g.*, Ball ¶¶ 207–11; *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2002) ("[I]f other designs could produce the same or similar functional capabilities, the design of the article in question is likely ornamental, not functional.").  Indeed, Apple Watch's rear design as claimed in the patents was not dictated by functionality.  Russell-Clark ¶¶ 10–12; Ball ¶¶ 205–11, 214–19, 222–27.[5]

## 2.   Apple Is Likely To Prove The Other Necessary Factors For A Permanent Injunction.

Once successful at a trial on the merits, Apple is likely to demonstrate the requirements to obtain post-trial injunctive relief.  As described in Section I.A, Apple is likely to prove: (1) that it has suffered an irreparable injury and (2) that remedies available at law are inadequate to compensate for that injury.  Additionally, Apple is likely to show: (3) that considering the balance

---

[5] Masimo is also unlikely to prove that the Patents-in-Suit are unenforceable due to inequitable conduct.  Masimo's allegations of inequitable conduct—that Apple (1) withheld its own utility patents that allegedly show that the patented designs are functional; and (2) failed to name as inventors on the Patents-in-Suit, inventors who are listed on those Apple utility patents—are both premised on the incorrect assertion that the designs in the Patents-in-Suit are dictated by function.

of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

The balance of hardships tips sharply in Apple's favor. Masimo will suffer minimal hardship if sales of W1 are enjoined. W1 is indisputably not a core product of Masimo—its core business is hospital devices, which are not implicated in this case. Malackowski ¶¶ 46, 48, 142; *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862–63 (Fed. Cir. 2010). And Apple seeks an expedited trial precisely to resolve this dispute before W1 receives widespread adoption or entrenchment in the market. *See Trebro*, 748 F.3d at 1171 (balance of equities favored patentee, who was "losing business to a new entrant"); *Shibumi Shade, Inc. v. Beach Shade LLC*, No. 5:21-cv-256, 2022 WL 390839, at *17 (E.D.N.C. Feb. 8, 2022) (balance of equities favored injunction because "plaintiff acted quickly . . . to return to status quo ante once defendants changed the state of affairs by offering a likely infringing product not previously on the market"). Further, the Court should discount any harm to Masimo because Masimo itself elected to infringe. *See Bosch*, 659 F.3d at 1156 (citing *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n. 12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."); *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012) (defendant's "losses were the result of its own calculated risk in selling a product with knowledge of [plaintiff's] patent").

Apple is also likely to show that the public interest favors injunctive relief. First, an injunction of W1 would be narrowly tailored to an infringing, non-clinical consumer product that does not have widespread utilization or adoption and for which substitutes are available, including from Apple. *See i4i*, 598 F.3d at 863. Second, there is a strong public policy interest in the enforcement of patent rights. *See Celsis*, 664 F.3d at 931. Although competition serves the public

interest, "cheap copies of patented inventions," like W1, "have the effect of inhibiting innovation and incentive," which harms the public, favoring an injunction. *Douglas*, 717 F.3d at 1346.

## II.   EXPEDITING TRIAL WOULD NOT UNDULY PREJUDICE MASIMO.

Given the narrow scope of discovery and pre-trial proceedings necessary to resolve liability in this case, discussed in detail in Section III below, proceeding on an expedited schedule will not prejudice Masimo.   In fact, both Apple and Masimo will benefit from resolving this dispute expeditiously.  *Takeda Pharm. Co. Ltd. v. Norwich Pharms., Inc.*, No. 20-cv-8966-SRC, 2022 WL 2759961, at *3 (D.N.J. July 14, 2022) (finding that an expedited schedule did not unduly prejudice either party, and, in fact, "[t]he benefit that results from working toward earlier deadlines is a speedier resolution of the dispute, which benefits both parties").

Indeed, an expeditious trial in this case will benefit Masimo by providing certainty as to Apple's claims of infringement before Masimo expends further resources in significantly expanding its manufacturing and distribution infrastructure for W1, which it plans to do in the latter half of 2023.  Masimo has also suggested that it intends to include the same back design included in W1 in at least two more watches, Freedom and B1, which it intends to launch through Sound United's distribution channels in the second half of 2023.  Ex. J at 3; Ex. I at 10, 17, 38.  A prompt final adjudication of the pending infringement claims will also allow Masimo to make any necessary changes to those planned future products before they are released.

## III.   AN EXPEDITED TRIAL IS WARRANTED BASED ON THE NARROW SCOPE OF THE ISSUES FOR TRIAL.

An expedited trial to adjudicate Masimo's willful infringement of Apple's design patents is appropriate given the narrow scope of the issues for discovery and trial.  In a recent case before this Court involving only design patents, trial was set within ten months of the scheduling order even without a motion for expedited trial demonstrating irreparable harm.  Ex. Q (*Gavrieli Brands*

*LLC, v. Soto Massini (USA) Corp.*, C.A. No. 18-462-MN, D.I. 44 (D. Del. July 9, 2018)).  Here, the circumstances warranting an expedited trial are even more compelling, justifying an eight-month timeline.  The liability issues to be adjudicated are narrow: Apple alleges infringement of design patents by a single product.  Additionally, bifurcation of damages in this case could further streamline the issues for expedited discovery and trial on the issue of liability.  An exemplary eight-month schedule for this case is attached as Ex. R.  An expedited trial on liability would allow Apple to move for a post-trial injunction to mitigate the irreparable harms described above.

> **A.    Determining Liability In This Design Patent Case Will Require Only Limited Discovery And Pretrial Proceedings.**

This single-product design patent case lends itself to an expedited schedule.  Apple accuses only one product, W1, of infringement of four design patents—three that relate to the watch's rear design and one that relates to the design of its charger.[6]  Therefore, the liability issues will require only limited discovery and pretrial proceedings, and the scope of trial will be narrow.

***First,*** only limited discovery will be required regarding liability.  Because the infringement and validity analysis will generally involve comparing readily apparent designs, rather than technical details as in a utility patent case, minimal technical discovery will be required.  The "sole test" for design patent infringement is the ordinary observer test, described above.  *Egyptian Goddess*, 543 F.3d at 670.  And the analysis of validity over prior art similarly requires only a comparison between the figures in the Patents-in-Suit and those in the prior art.  Further, that the Patents-in-Suit are not invalid for functionality can be demonstrated with public information

---

[6] Because W1 and its charger are sold together, the charger Patent will not significantly expand the issues for discovery or trial.

showing that other designs could produce similar functional capabilities.  *See Section* I.B.1.b.[7]

Thus, significantly less discovery will be required in this case than in a typical utility patent case.[8]

      **Second**, there is no need for the Court to issue any claim constructions in this design patent

case.  The Federal Circuit has held that although district courts have discretion, generally "the

preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent

claim."  *Egyptian Goddess, Inc.*, 543 F.3d at 679; *see Crocs*, 598 F.3d at 1303 ("In many [design

patent] cases, the considerable effort in fashioning a detailed verbal description does not contribute

enough to the infringement analysis to justify the endeavor.").  Indeed, this Court did not hold

*Markman* proceedings in another recent design patent case.  *See* Ex. Q (*Gavrieli Brands*, 1:18-cv-

00462-MN, D.I. 44).  Similarly, claim construction will not be necessary in this case.

      **Third**, the narrow scope of the liability issues in this case will also enable a short trial on

the merits, minimizing the judicial resources to be expended.  Recognizing this Court's busy

docket, Apple believes that the liability issues in this case will require only 8 hours of trial

testimony per side, meaning that a full trial on liability could be completed in three days.

      **B.**    **Bifurcating Damages Would Further Streamline The Issues For Expedited Discovery And Trial On Liability.**

      The Court can further narrow the issues for the expedited proceedings by bifurcating

discovery and a trial on damages.  Federal Rule of Civil Procedure 42(b) provides that "[f]or

convenience, to avoid prejudice, ***or to expedite and economize***, the court may order a separate trial

of one or more separate issues."  A district court "is given broad discretion in reaching its decision

whether to separate the issues of liability and damages" and may do so in any given case.  *Idzojtic*

---

[7] Any argument that inequitable conduct will require extensive discovery is wrong because those allegations incorrectly assert that the patented designs are dictated by function.  *See Section* I.B.1.b.
[8] For example, Apple believes that this case could be sufficiently resolved with 15 interrogatories, 30 requests for admission, and 35 hours for fact witness depositions per side.

*v. Pennsylvania Railroad. Co.*, 456 F.2d 1228, 1230 (3d Cir. 1972); *Robert Bosch*, 719 F.3d at 1319.   In exercising its discretion, a court "should consider whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case." *Enzo Life Scis., Inc. v. Digene Corp.*, C.A. No. 02-212-JJF, 2003 WL 21402512, at *4 (D. Del. June 10, 2003).   Bifurcating damages here would accomplish those objectives and facilitate an expedited trial.

*First*, bifurcation of damages would focus the expedited trial on the issue of liability required for Apple to move for a post-trial injunction to mitigate the irreparable harms described in Section I.A., above.   Thus, bifurcating damages would prevent prejudice to Apple by facilitating an expedited trial on liability, and it would not unduly prejudice Masimo.

*Second*, bifurcating damages discovery and trial would conserve judicial and party resources.   Courts in this District "carr[y] a substantial patent docket."   *Dutch Branch of Streamserve Dev. AB v. Exstream Software, LLC*, C.A. No. 08-343-SLR, 2009 WL 2705932, at *1 (D. Del. Aug. 26, 2009).   "Bifurcation [] presents the possibility of preservation of judicial (and party) resources, particularly if the jury finds certain claims to be not infringed or invalid, or finds that certain accused products do not infringe any valid claims."   *See Brit. Telecomms. PLC v. Google Inc.*, C.A. No. 11-1249-LPS, 2013 WL 3814329, at *2 (D. Del. July 22, 2013).

*Third*, a bifurcated trial would enhance juror comprehension by eliminating the damages issues from the liability trial.   *See Dutch Branch*, 2009 WL 2705932, at *1.

## <u>CONCLUSION</u>

Accordingly, Apple respectfully requests that the Court grant Apple's Motion For An Expedited Trial and set a trial date within eight months of its decision.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

John M. Desmarais
Jordan N. Malz
Cosmin Maier
Kerri-Ann Limbeek
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: 212-351-3400

Peter C. Magic
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: 415-573-1900

Dated:  February 3, 2023
10580656 / 12209.00051
 Public Version Dated: February 10, 2023

By:  */s/ David E. Moore*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Andrew L. Brown (#6766)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    abrown@potteranderson.com

*Attorneys for Plaintiff/Counter-Defendant*
*Apple Inc.*

21