# EXHIBIT K

*** Note Exhibit 2 of Exhibit K is a Flash Drive
and filed as a multi-media filing

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| APPLE INC., | |
| *Plaintiff,* | Civil Action No. 1:22-cv-01377-MN |
| v. | **JURY TRIAL DEMANDED** |
| MASIMO CORPORATION and SOUND UNITED, LLC, | |
| *Defendants.* | |

**DECLARATION OF ERIC JUE IN SUPPORT OF APPLE INC.'S MOTION
FOR AN EXPEDITED TRIAL**

I, Eric Jue, declare as follows:

1.      I am over 18 years of age and competent to make this declaration.  I am employed as a Director of Apple Watch Product Management at Apple Inc. ("Apple").  I have been employed by Apple since 2002.

2.      I provide this declaration in support of Apple's Motion For An Expedited Trial filed in the above-captioned case.  The statements in this declaration are based upon my personal knowledge.  If called to testify as a witness in this matter, I could and would testify competently and truthfully to each of the statements in this declaration under oath.

3.      Apple released Apple Watch in 2015 as one of the earliest full-featured smart watches.  Apple has continued to invest in Apple Watch, releasing a new generation or "Series" annually.

4.      Apple is an innovative, design-driven company that has worked extensively over decades to create a marketing identity that connects Apple as a brand with its unique products.  Apple markets its products—including Apple Watch—to convey that message.  For example,

1

Apple frequently advertises Apple Watch with the product design front-and-center, set against a plain background with minimal text, or with simple text describing a key feature or benefit that supports the imagery.  *See, e.g.*, Ex. 1.  Apple has invested heavily in promoting Apple Watch, including through multiple major, high-profile advertising campaigns and significant expenditures of time, money, and effort.  Such investments help establish Apple's reputation of innovation and design.

5.      Apple has always sought to promote Apple Watch in the most profound and compelling ways.  That is best done visually.  Accordingly, the Apple Watch design— particularly its hardware design—is critical.  Apple promotes Apple Watch not just as a piece of technology, but as a beautiful and thoughtfully designed watch.  Its back is thoughtfully designed and beautiful, paying homage to the tradition of luxury watches.  And Apple has focused marketing efforts on the design of the back of Apple Watch.

6.      The design of the back of Apple Watch has been a focus throughout the product's lifespan.  For example, at the Apple Watch Series 4 announcement, the video of which is enclosed on a CD as Exhibit 2, Apple placed significant emphasis on the beauty of the back of the watch.

7.      In a promotional video played at the outset of the announcement, Apple highlighted the back of Apple Watch, focusing on its design without any technical explanation, as shown below:



8.      After the video, Apple began the discussion on the Series 4 Apple Watch.  Within the first few sentences, Apple showed a select few images of Apple Watch, including the back of the watch, on a large screen, noting that "[e]very detail has been thoughtfully considered.  And it's ***just beautiful***":



9.      When Apple transitioned to discuss the back of Apple Watch specifically, the very first statement it made is that "the back of Series 4 is ***absolutely beautiful***," and demonstrated that beauty with another image of the back design:



10.      Apple Watch's back design was not only a key at launch.  In marketing Apple Watch generally, Apple internally utilizes a select few "themes," including the watch's "health component," *i.e.*, the watch as a wellness tool.  The most visual aspect of Apple Watch's health component is the back of the watch.  Accordingly, the aesthetic design of the back has been an important pillar in the marketing and success of Apple Watch.

11.      These are just a few examples of how the beautiful design of the back of Apple Watch is a key aspect of its marketing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 18, 2023 in Cupertino, CA.

Signature _____

Eric Jue

# EXHIBIT 1



# EXHIBIT 2

# Physical Exhibit

# EXHIBIT L

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

APPLE INC.,

              *Plaintiff,*

     v.

MASIMO CORPORATION and
SOUND UNITED, LLC,

              *Defendants.*

Civil Action No. 1:22-cv-01377-MN

**JURY TRIAL DEMANDED**

## DECLARATION OF PETER RUSSELL-CLARKE IN SUPPORT OF APPLE INC.'S MOTION FOR AN EXPEDITED TRIAL

I, Peter Russell-Clarke, declare as follows:

1.     I am over 18 years of age and competent to make this declaration. I am employed as an Industrial Design Director at Apple Inc. ("Apple"). I have been employed by Apple since 2006.

2.     I provide this declaration in support of Apple's Motion For An Expedited Trial filed in the above-captioned case. The statements in this declaration are based upon my personal knowledge. If called to testify as a witness in this matter, I could and would testify competently and truthfully to each of the statements in this declaration under oath.

3.     Apple released Apple Watch in 2015 as one of the earliest full-featured smart watches. Apple has continued to invest in Apple Watch, releasing a new generation or "Series" annually.

1

4.       Apple is a design-driven company, and Apple Watch is no exception.  Apple Watch's aesthetic design—including the design of its back crystal[1]—was and remains a key part of its development and identity.

5.       Apple invested significant amounts of time, money, and effort in Apple Watch's industrial design.  Apple designers worked extensively to create a watch that was not only a piece of technology, but also a product that consumers would want to buy, wear, and visually appreciate as a beautiful and thoughtfully designed watch.

6.       Apple Watch's industrial design was created by a team of industrial designers, including myself, who had worked together for several years, including on multiple other Apple products such as iPhones and Mac computers.  Through that work, the team had developed not only a shared enthusiasm for creating beautiful products, but also its own Apple design language.  The team utilized those shared experiences and—inspired by the art of traditional watchmaking—sat down around the "kitchen table" of the studio to start designing Apple Watch.  That lead to Apple's innovation in the industrial design of the back of Apple Watch—in particular, its back crystal.

7.       In traditional luxury watchmaking, watches will often include a fully or partially transparent back so that the consumer can see portions of the high-quality internal mechanisms, such as gears and the materials from which they are crafted.  That is, the back is part of the watch's overall visual appeal.  As an homage to such classic luxury watches, Apple's design team took special care to make the back of Apple Watch—which houses its sensors (electrodes, LEDs, and photodiodes) and other components—aesthetically delightful.  The team put great effort into creating a beautiful "identity" for Apple Watch's sensors.  The electrodes' layout was

---

[1] Throughout this declaration, I refer to everything visible through Apple Watch's rear transparent dome, and the dome itself, as the "back crystal."

2

carefully considered, and beautifully frames the central portion of the back design. The team

also put extensive effort to make the "identity" of the remaining sensors—although the sensors

themselves are somewhat camouflaged—just as striking as the rest of the watch. For example,

the team included small, carefully designed windows in the dome that allow light to pass through

to the sensing mechanisms in a visually appealing way. As a whole, the back design provides an

aesthetically pleasing hint as to the mechanisms lying within Apple Watch, to indicate its quality,

precision, and beauty.

     8.    After many iterations and models with tiny, incremental differences, the design

team finalized the back crystal design of Apple Watch, as shown in the Series 4 Apple Watch

example below:





9.       Although Apple implemented some changes as Apple Watch progressed through the various Series, the design process and care for aesthetics remained the same, as did the domed back crystal and inclusion of a thoughtful sensor design.

10.      The specific design of Apple's Watch's back crystal was not necessitated by function. If a product works perfectly, but is aesthetically unappealing, it is unlikely to be a successful product. So in accordance with Apple's design-forward values, Apple Watch was created with aesthetics at the forefront.

11.      For example, although the watch needed to be large enough to fit certain components and the function-driven engineering team prioritized contact between the watch's back surface and the wearer's wrist, the design team prioritized its domed back crystal proposal to create a watch with a thin body and a beautiful rear window into the rest of the aesthetically

4

pleasing back design. So the design team worked with the engineering team to make the design-driven domed back crystal feasible.

12.     Similarly, the design under the transparent dome was not dictated by exact requirements for the dimensions or spacing. Instead, the design and engineering teams worked together to meet the design team's aesthetic expectations and plans.

13.     There are countless ways to design the back of a smart watch. Apple created its own, beautiful way.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 12, 2023 in CUPERTINO, CALIFORNIA, USA.

Peter Russell-Clarke

# EXHIBIT M

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| APPLE INC., | |
| *Plaintiff*, | |
| v. | Civil Action No. 1:22-cv-01377-MN |
| MASIMO CORPORATION and SOUND UNITED, LLC, | **JURY TRIAL DEMANDED** |
| *Defendants*. | |

**DECLARATION OF ALAN D. BALL IN SUPPORT OF PLAINTIFF APPLE INC.'S
<u>MOTION FOR AN EXPEDITED TRIAL</u>**

i

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................. 1

SUMMARY OF OPINIONS ................................................................................. 3

BACKGROUND AND QUALIFICATIONS ........................................................ 3

MATERIALS CONSIDERED ............................................................................... 5

UNDERSTANDING OF THE LAW .................................................................... 6

    Design Patents Generally ........................................................................... 6

    Claim Construction ..................................................................................... 6

    Design Patent Infringement ...................................................................... 7

        Generally – The Ordinary Observer Test ........................................... 7

        Comparison of Patented and Accused Designs to Prior Art .................. 8

        Accused Product Compared to Patentee's Commercial Embodiments of
            Patented Design ........................................................................... 9

    Validity ........................................................................................................ 9

        Presumption of Validity ...................................................................... 9

        Prior Art ................................................................................................ 9

        Anticipation ....................................................................................... 10

        Obviousness ....................................................................................... 10

        Functionality ...................................................................................... 11

THE ORDINARY OBSERVER ........................................................................... 11

DESIGNER OF ORDINARY SKILL IN THE ART ............................................. 13

i

MULTIVIEW DRAWINGS AND THIRD ANGLE ORTHOGRAPHIC PROJECTION ............................. 14

APPLE WATCH ......................................................................................................... 17

    Apple Efforts to Protect Apple Watch Design................................................. 19

    Apple's D'279 Patent...................................................................................... 20

    Apple's D'842 Patent...................................................................................... 25

    Apple's D'936 Patent...................................................................................... 29

CERTAIN APPLE WATCHES EMBODY THE WATCH PATENTS ......................................... 35

    Apple Watch Series 4 and 5 Embody The D'279 Patent Design....................... 35

    Apple Watch Series 4 and 5 Embody The D'842 Patent Design....................... 36

    Apple Watch Series 4-8 and Apple Watch Ultra Embody The D'936 Patent Design ........ 38

MASIMO'S W1 WATCH ............................................................................................. 40

COMPARING APPLE WATCH'S AND W1'S MATERIAL FINISHES .................................... 42

INFRINGEMENT ANALYSIS OF THE MASIMO W1 WATCH ............................................. 43

    The D'279 Patent .......................................................................................... 44

        Comparison with the D'279 Patent ...................................................... 44

        Comparison in Light of the Prior Art .................................................... 51

        Comparison Between Apple Watch and W1 Further Demonstrates
        Masimo's Infringement Of The D'279 Patent ........................................ 54

    The D'842 Patent .......................................................................................... 56

        Comparison with the D'842 Patent ...................................................... 56

        Comparison in Light of the Prior Art .................................................... 63

        Comparison Between Apple Watch and W1 Further Demonstrates
        Masimo's Infringement Of The D'842 Patent ........................................ 66

The D'936 Patent ................................................................................... 68

    Comparison with the D'936 Patent ...................................................... 68

    Comparison in Light of the Prior Art .................................................... 75

    Comparison Between Apple Watch and W1 Further Demonstrates
        Masimo's Infringement Of The D'936 Patent ........................................ 77

THE ASSERTED PATENTS ARE NOT INVALID ................................................ 81

    The D'279 Patent Is Not Invalid ........................................................... 81

    The D'279 Patent Is Not Invalid in Light Of Prior Art............................. 81

    The D'279 Patent Is Not Invalid for Functionality ................................. 81

    The D'842 Patent Is Not Invalid ........................................................... 86

    The D'842 Patent Is Not Invalid in Light Of Prior Art............................. 86

    The D'842 Patent Is Not Invalid for Functionality ................................. 86

    The D'936 Patent Is Not Invalid ........................................................... 88

    The D'936 Patent Is Not Invalid in Light Of Prior Art............................. 88

    The D'936 Patent Is Not Invalid for Functionality ................................. 88

I, Alan Ball, declare as follows:

**INTRODUCTION**

1.      I have been retained by counsel for Plaintiff Apple Inc. ("Apple") as an expert in the above-captioned matter.

2.      I understand that Apple has accused Defendants Masimo Corp. and Sound United, LLC (collectively, "Masimo") of infringing U.S. Patent Nos. D883,279 (the "D'279 patent"), D947,842 (the "D'842 patent"), and D962,936 (the "D'936 patent") (collectively, the "Watch Patents").[1] I understand that Apple has accused Masimo of infringing the Watch Patents through unauthorized making, using, selling, and/or offering for sale within the United States, and/or importing into the United States, Masimo's W1 watch ("W1" or "Accused Product").[2] I have been asked to perform analyses and provide expert testimony regarding whether Masimo infringes the Watch Patents and whether the Watch Patents are valid.

3.      I further understand that Apple has accused Masimo of infringing U.S. Patent No. D735131 (the "D'131 patent").[3] I was not asked to analyze or provide expert testimony regarding the D'131 patent for purposes of this declaration.

4.      This declaration accurately reflects a summary of my infringement and validity opinions and analyses regarding the Watch Patents in this case to date, based on facts and information currently available to me.

5.      I understand that I may later be asked to supplement, modify, or expand on my opinions expressed in this declaration, including for example to provide analysis and opinions regarding the D'131 patent and additional analysis and opinions regarding the Watch Patents, in accordance with a schedule or any other order of the Court, and/or in light of further evidence or information presented or provided to me, the testimony and/or opinions of other witnesses, or other information that may be provided by Masimo and/or discovered by Apple. I expressly reserve the right to make such supplementations, modifications, and/or expansions at a future point in this litigation.

6.      If called upon to do so, I will offer testimony at trial or otherwise regarding my opinions and will offer rebuttal testimony as appropriate throughout the remainder of

---

1 Complaint, Dkt. 1.

2 *Id.*

3 *Id.*

this proceeding. I may also prepare and present demonstratives at trial that summarize and illustrate my opinions and analyses.

7.        I am being compensated for my work on this case at my standard consulting rate of $425 per hour. I am also reimbursed for expenses that I incur.  My compensation does not depend in any way on the outcome of this case, the results of my analysis, or the substance of my testimony.

**SUMMARY OF OPINIONS**

8.      The following summarizes my current opinions regarding Masimo's infringement of the Watch Patents and the Watch Patents' validity. I expect to offer additional opinions regarding information and/or issues later raised in this matter.

9.      Relevant background, including regarding smart watch design prior to Apple Watch, Apple Watch, the Watch Patents, and Masimo's W1 is summarized in paragraphs 66-127 below.

10.     Apple Watch Series 4-5 embody the D'279 patent design.

11.     Apple Watch Series 4-5 embody the D'842 patent design.

12.     Apple Watch Series 4-8 and Apple Watch Ultra embody the D'936 patent design.

13.     Masimo's making, using, selling, and/or offering for sale within the United States, and/or importing into the United States, the W1 infringes the D'279 patent.

14.     Masimo's making, using, selling, and/or offering for sale within the United States, and/or importing into the United States, the W1 infringes the D'842 patent.

15.     Masimo's making, using, selling, and/or offering for sale within the United States, and/or importing into the United States, the W1 infringes the D'936 patent.

16.     The D'279 patent is not invalid.

17.     The D'842 patent is not invalid.

18.     The D'936 Patent is not invalid.

**BACKGROUND AND QUALIFICATIONS**

19.     My qualifications are summarized in my curriculum vitae, which is attached as Exhibit 1.  I briefly summarize my education, work experience, and other qualifications below.

20.     I am an Industrial Designer and Inventor. I am the founder and president of A.B.I.D. Inc. (Alan Ball Industrial Design), an Industrial Design consulting firm. I have over 35 years of experience as an Industrial Designer, designing products for clients ranging from start-ups to Fortune 500 companies. My Industrial Design expertise includes design research, product design, human factors (ergonomics), engineering, graphic design, packaging design, and user interface design. I am a named inventor of 55 U.S. Design

3

Patents, including multiple directed to handheld computers. I am also a named inventor on 11 U.S. Utility Patents. I am an active member of the Industrial Designers Society of America ("IDSA").

21.     I received a Bachelor of Industrial Design (B.I.D.) from Syracuse University in 1987. My studies included art and design studio courses, math and physics courses, technology and engineering courses, marketing and business courses, and psychology/human factors courses. I minored in information science. As part of my education, I worked as an Industrial Design intern at Black and Decker in Bridgeport, Connecticut, and IBM in Kingston, New York. I designed handheld cleaning, kitchen, and lighting products at Black and Decker. I designed human interface devices for commercial computer systems at IBM.

22.     For the past 35 years, I have worked extensively as an Industrial Design consultant. During this time, I have been employed as a full-time staff designer in a large consultancy, in addition to performing freelance design work. I have founded three design consultancies: Altitude Inc., Ziba Boston LLC, and my current company A.B.I.D. Inc. I have managed large interdisciplinary design teams and have served as a sole design practitioner. In my current position at A.B.I.D., I provide a wide range of Industrial Design consulting services to my clients.

23.     I have many years of Industrial Design and product design experience over a broad range of product types including handheld computers, electronics, medical equipment, laboratory instruments, power tools, household cleaning products, residential and commercial kitchen appliances, toys, industrial products, sports equipment, personal care products, and pet products. I have designed products that are manufactured by methods that include plastic injection molding, thermoforming, pressure forming, rotational molding, blow molding, extrusion, sheet metal fabrication, machining, 3D printing, die cutting, stamping, forming, forging and die casting.

24.     I have received a number of honors and awards throughout my career, including three IDSA/BusinessWeek IDEA Gold Awards.

**MATERIALS CONSIDERED**

25.      In preparing this declaration, I have reviewed the D'279 patent; the D'842
patent; the D'936 patent; the file history for each patent; physical samples of Apple
Watch Series 4, 5, 8 and Apple Watch Ultra; images of each Apple Watch Series 1
through 8 and Apple Watch Ultra; a physical W1 watch; images of W1; the declarations
of Mr. Peter Russell-Clark, and Mr. Eric Jue; and additional materials cited throughout
this declaration. Exhibit 2 lists the materials that I have reviewed in forming the opinions
summarized in this declaration. Citations to references in this report are intended to be
exemplary and are not intended to convey that the citations are the only source of
evidence to support the propositions for which they are cited.

26.      My opinions are further based on my education, training, research, knowledge,
and experience. In forming my opinions, I have particularly relied on my knowledge and
experience as an Industrial Designer and as a Product Designer with experience
designing numerous consumer products.

**UNDERSTANDING OF THE LAW**

27.      I am not an attorney. For purposes of this declaration, I have been informed about certain aspects of the law that are relevant to my analysis and conclusions. My understanding of the law is as follows.

<b>Design Patents Generally</b>

28.      I understand that a design patent can be obtained by "[w]hoever invents any new, original and ornamental design for an article of manufacture."[4]

29.      I understand that the scope of [a design patent] claim . . . must be limited to the ornamental aspects of the design and does not extend to the broader general design concept."[5]

30.      I understand that a design patent includes a single claim and that the language of the claim is written such that it is directed to the "ornamental design for the article (specifying name) as shown, or as shown and described" in the patent specification, such as through drawings or figures.[6]

31.      I further understand that in a design patent, the drawings may include solid and broken lines and that "the solid lines . . . show the claimed design, whereas the broken lines show structure that is not part of the claimed design . . . ."[7]

<b>Claim Construction</b>

32.      I understand that the Court has not issued a claim construction order in this case to date.

33.      I understand that, "[g]iven the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design" and that doing so could "risk . . . placing undue emphasis on particular features of the design and . . . that a finder of fact will focus on

---

[4] 35 U.S.C. § 171.
[5] *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015) (internal citations and quotations omitted).
[6] 37 C.F.R. § 1.153.
[7] *In re Maatita*, 900 F.3d 1369, 1372 (Fed. Cir. 2018).

6

each individual described feature in the verbal description rather than on the design as a whole."[8] I understand that "as a rule, the illustration in the drawing views is its own best description."[9]

34.     Any written description I include of designs or design elements in this declaration is solely for purposes of explaining my analyses and conclusions and is not intended to change or specify the scope of the claimed designs, nor to suggest any particular claim construction or claim construction itself is appropriate or necessary.

### Design Patent Infringement

### Generally – The Ordinary Observer Test

35.     I understand that to determine whether an accused product infringes a patented design, courts apply the "ordinary observer test" stated by the Supreme Court in *Gorham Co. v. White*, 81 U.S. 511, 528 (1872). I understand that, under the "ordinary observer test," "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."[10]

36.     I understand the ordinary observer is not an expert in the claimed designs, but one of "ordinary acuteness" who is an "ordinary purchaser of" or "sufficiently interested in" the article that displays the patented designs.[11]

37.     I understand that the infringement analysis focuses on the "design as a whole," and not "particular features" of the design.[12] Further, I understand that the accused product need not be identical to the patented design to infringe.[13] "The mandated overall comparison is a comparison taking into account significant differences between

---

[8] *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008).

[9] *Crocs*, 598 F.2d at 1303 (quoting Manual of Patent Examining Proc. § 1503.01 (8th ed.2006)).

[10] *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (quoting *Gorham Co. v. White*, 81 U.S. 511, 528 (1871)).

[11] *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1116 (Fed. Cir. 1998); *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1337 (Fed. Cir. 2015); A*rminak & Assocs. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1323 (Fed. Cir. 2007).

[12] *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303 (Fed. Cir. 2010).

[13] *Payless Shoe Source, Inc. v. Reebok Int'l, Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993); *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303 (Fed. Cir. 2010); *Egyptian Goddess*, 543 F.3d at 670.

the two designs, not minor trivial differences that necessarily exist between any two designs that are not exact copies of one another."[14] The critical issue is whether "the effect of the whole design [is] substantially the same" as the corresponding portions of the accused design.[15]

### Comparison of Patented and Accused Designs to Prior Art

38.     I understand that when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same may benefit from a comparison of the claimed and accused designs with the prior art.[16] I further understand that the ordinary observer is deemed to be familiar with the prior art.[17]

39.     I understand that "[w]here there are many examples of similar prior art designs . . . differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art."[18] I also understand that "[i]f the accused design has copied a particular feature of the claimed design that departs conspicuously from the prior art, the accused design is naturally more likely to be regarded as deceptively similar to the claimed design, and thus infringing. At the same time . . . the ordinary observer test does not present the risk of assigning exaggerated importance to small differences between the claimed and accused designs relating to an insignificant feature simply because that feature can be characterized as a point of novelty."[19]

40.     I understand that an "ordinary observer, comparing the claimed and accused designs in light of the prior art, will attach importance to differences between the claimed design and the prior art depending on the overall effect of those differences on the design. If the claimed design consists of a combination of old features that creates an appearance deceptively similar to the accused design, even to an observer familiar with similar prior art designs, a finding of infringement would be justified. Otherwise,

---

[14] *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1243 (Fed. Cir. 2009).

[15] *Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993) (internal quotations omitted, citation omitted).

[16] *Egyptian Goddess*, 543 F.3d at 678.

[17] *Id.*

[18] *Egyptian Goddess*, 543 F.3d at 678.

[19] *Id.* at 677.

infringement would not be found."[20]

**Accused Product Compared to Patentee's Commercial**
**Embodiments of Patented Design**

41.     I understand that "[w]hen the patented design and the design of the article sold by the patentee are substantially the same," a comparison of "the patentee's and the accused articles directly" is permissible to assist in the analysis of whether the accused products infringe the design at issue.[21] I understand that such a comparison will facilitate understanding "whether an ordinary purchaser would be deceived into thinking that one were the other."[22]

**Validity**

**Presumption of Validity**

42.     I understand that the clams of issued U.S. design patents are presumed to be valid. I understand that this presumption of validity applies to the Watch Patents' claims.

**Prior Art**

43.     I understand that a claim is invalid if the claimed design was known or used by others in the U.S. or patented or described in a printed publication before the applicant's date of invention. I further understand that a claim is invalid if the design was patented or published anywhere, or was in public use, on sale, or offered for sale in this country, more than one year prior to the filing date of the patent application. I further understand that a design patent claim is invalid if it was described in an application for a patent or a patent granted on an application for patent filed by another before the applicant's date of invention.

44.     I understand that a "printed publication" is a publication that is sufficiently accessible to the public interested in the relevant art without restriction, which depends on dissemination and accessibility. In other words, the defendant must show that such a document has been disseminated or otherwise made accessible to the extent that persons interested and ordinarily skilled in the art, exercising reasonable diligence, can

---

[20] *Id.* at 677-78.

[21] *See L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125-26 (Fed. Cir. 1993).

[22] *L.A. Gear*, 988 F.2d at 1125–26.

locate it. It is my understanding that internal documents intended to be confidential are not "printed publications," because such documents would not be readily accessible to an interested researcher employing standard research tools to locate them. Accordingly, documents that are stored privately and to which access is restricted to only authorized persons are not considered "printed publications." Similarly, even if a document has been distributed, it is not necessarily a printed publication if distribution is subject to restrictions due to confidentiality, or by a reasonable expectation, based on professional or behavioral norms, that a document will not be copied or further distributed.

45.     I further understand that an invention is "used by others in this country" if the use is accessible to the public.

46.     I understand that a "public use," may be established by showing a public, non-secret, non-experimental use of the design in the United States more than one year before the effective filing date of the patent. Use of a design may be public where it is exposed or demonstrated to persons other than the inventors, who are under no secrecy and where there is no attempt to keep the device from the public.

### Anticipation

47.     I understand that the ordinary observer test discussed in paragraphs 35-37 above regarding infringement also applies to design patent anticipation. I understand that when determining whether a design patent's claim is invalid based on a description in a printed publication, the publication must show the same subject matter as that of the patent and must be identical in all material respects.[23]

### Obviousness

48.     I understand that the central inquiry in analyzing an ornamental design for obviousness is whether "the design would have been obvious to a designer of ordinary skill who designs articles of the type involved."[24]

49.     I further understand that factors considered in determining whether a design patent is obvious include the scope and content of the prior art; the differences between the claim and the prior art; the level of ordinary skill in the art; and secondary considerations of non-obviousness, which may include commercial success, long-felt unmet need, prior failure, licensing, unexpected results, skepticism, industry praise, and

---

[23] *Hupp v. Siroflex of America, Inc.*, 122 F.3d 1456, 1461, 43 U.S.P.Q.2d 1887 (Fed. Cir. 1997).
[24] *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996).

copying.

### Functionality

50.     As stated above, I understand that a design patent protects ornamental design. I further understand that "[i]f the patented design is primarily functional rather than ornamental, the patent is invalid. However, when the design also contains ornamental aspects, it is entitled to a design patent whose scope is limited to those aspects alone and does not extend to any functional elements of the claimed article."[25]

51.     I understand that just because an element of a design may also be practiced by a particular product in a way that serves a functional purpose, that does not mean that the specific design of the element is dictated by functional considerations.[26] Rather, I understand that "[a] design is not dictated solely by its function when alternative designs for the article of manufacture are available."[27]

52.     I further understand that "[w]hen there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose."[28] And "if other designs could produce the same or similar functional capabilities, the design of the article in question is likely ornamental, not functional."[29]

## THE ORDINARY OBSERVER

53.     I understand that *Gorham Co. v. White* states that the test for infringement of a design patent involves whether an "ordinary observer" would find two designs to be substantially the same, giving such attention as a purchaser usually gives. I understand that any infringement analysis, therefore, must carefully consider the general identity of the ordinary observer, and the manner in which they encounter the accused products as a potential purchaser. I have found that an experienced Industrial Designer consultant, with many years designing a large variety of products, has valuable expertise which is particularly helpful in understanding the ordinary observer, and their ability to

---

[25] *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293-94 (Fed. Cir. 2010) (internal citations omitted).

[26] *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993).

[27] *See Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed. Cir. 1996) (citation omitted).

[28] *L.A. Gear*, 988 F.2d at 1123.

[29] *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2002).

11

determine similarity between designs.

54.     An Industrial Design consultant is hired by companies to create successful designs for new products. To accomplish this goal, it is essential that the Industrial Designer understand the intended users or purchasers and their ability to perceive and use the product being designed. To develop this ability, an Industrial Designer is trained in techniques used to gain insight and understanding into users' or purchasers' needs and desires related to the product being designed. This ability is further developed over time as a designer gains experience designing products.

55.     Techniques a designer uses to understand the intended user or purchaser may include observational design research, direct design research, and secondary research. Observational Research involves the designer observing a user or purchaser, and his or her environment, usually as they are examining, purchasing, and using the product being designed. Direct design research involves the designer directly engaging with the user or purchaser to learn their desires, motivations, sensitivities, and prejudices regarding the product at hand. Secondary design research involves research into existing data that may shed light onto the user's or purchaser's relationship to the product at hand. As user or purchaser insights are gained, the designer uses techniques to document, communicate, and experience these insights. The goal is often to create an accurate hypothetical model of the user or purchaser of the product at hand that the designer can use during the design process.

56.     I have found that over time, by applying the tools and methodologies described above, an Industrial Design consultant gains insight and sensitivity into the behavior of consumers for which they are designing products. This experience may allow an experienced designer to forego formal design research and directly apply their experience in understanding the consumer directly in the design process. This experience is often the reason why companies employ consulting Industrial Designers or Design Firms.

57.     The cumulative experience in understanding user and purchaser behavior I have obtained over 30 years as an Industrial Design consultant gives me the necessary expertise to opine regarding an ordinary observer's ability to recognize substantial similarity between two products.

**DESIGNER OF ORDINARY SKILL IN THE ART**

58.     For the purposes of this case, a Designer of Ordinary Skill in the Art ("DOSA") would have a degree in Industrial Design or Mechanical Engineering, and at least two years of professional experience creating Industrial Designs of consumer products.

**MULTIVIEW DRAWINGS AND THIRD ANGLE ORTHOGRAPHIC PROJECTION**

59.     A DOSA would be familiar with how a three-dimensional design can be communicated by a multi-view drawing using the drafting convention of Orthographic Third Angle Projection. A DOSA would be comfortable using Orthographic Third Angle Projection to understand and communicate three dimensional designs on a two-dimensional plane such as a sheet of paper.

60.     This standard is commonly used to arrange multiple views, or elevations, such that comparisons between views can easily be made and contextual information in one view can be used to better understand a different view. This is a standard technique used and understood by any competent industrial designer.

61.     Below is an example of a three-dimensional design visualized through multi-view drawings using the drafting convention of Orthographic Third Angle Projection:[30]

---

[30] Gary R. Bertoline, *Introduction to Graphic Communication for Engineers* (4th Ed.), Figure 2.35, (2009).

14



**Figure 2.35** Visualizing a Multiview Drawing
By rotating a real object in your hand, you can simulate how a multiview drawing is created. A different principal view of the object is produced for every 90 degrees of rotation.

62.    The following diagram describes the principle of third angle orthographic projection using a "glass box" metaphor:[31]

---

[31] Gary R. Bertoline, *Introduction to Graphic Communication for Engineers* (4th Ed.), Figure 3.30 (2009).



**Figure 3.30** **Object in Glass Box, and Resulting Six Views When the Box Is Unfolded**

63.     Rather than just using individual views of a design patent in isolation, a DOSA would understand that by considering all of the figures of a patent collectively in orthographic third angle projection, the overall ornamental design claimed could best be expressed and appreciated.

64.     A DOSA would recognize that many of the views in the D'822 and D'317 Patents can be used to contextually inform each other in this manner.

**65.**     When considering the design claimed in each of D'822 and D'317 Patents, I have used the convention of orthographic third angle projection in my analysis to consider the overall design being claimed. I have also considered all of the figures of each patent collectively in order to understand the overall design being claimed.

16

**APPLE WATCH**

66.     Apple Watch, in part due to its innovative, stylish, and distinctive design, revolutionized the nascent smart watch market.

67.     For example, the Wall Street Journal's review of Apple Watch (shown below[32]) noted that "[o]ne big challenge Apple conquered is making its wrist computer small and stylish enough to wear without a nerdy pocket protector."[33]

68.     Similarly, the Verge noted that Apple Watch was "full of new hardware, new software, and entirely new ideas about how the worlds of fashion and technology should intersect."[34]

69.     Apple released its first Apple Watch in 2015 and has continued to release a new generation or "Series" annually.[35]  In this declaration, I discuss Apple Watch Series 4-8 and Apple Watch Ultra, shown below:

---

[32]   *Apple      Watch      Series      1      –      Technical      Specifications*,      Apple, https://support.apple.com/kb/sp745?locale=en_US.
[33] Geoffrey A. Fowler, *Apple Watch Review: The Smartwatch Finally Makes Sense*, The Wall Street Journal   (Apr.   8,   2015),   https://www.wsj.com/articles/apple-watch-review-the-smartwatch-finally-makes-sense-1428494495.
[34]Nilay      Patel,      *Apple      Watch      Review*,      The      Verge      (Apr.      8,      2015), https://www.theverge.com/a/apple-watch-review.
[35] *See, eg.*, Russell-Clarke Decl. ¶ 3; Jue Decl. ¶ 3.

  

  

*Apple Watch Series 4*          *Apple Watch Series 5*          *Apple Watch Series 6*

18









*Apple Watch Series 7*　　　*Apple Watch Series 8*　　　*Apple Watch Ultra*

**Apple Efforts to Protect Apple Watch Design**

70.　　Apple invests heavily in developing the beautiful and distinctive designs used by its products.[36]

71.　　Apple protects these investments and advances through its intellectual property rights, including patents. For example, the United States Patent and Trademark Office ("USPTO") has awarded thousands of patents to Apple for its contributions to science and the useful arts.[37] Apple's patents include the D'279 patent, the D'842 patent, and the D'936 patent.

---

[36] *See, e.g.*, Russell-Clark Decl. ¶¶ 3-9.

[37] *See, e.g.*, Google Patents, https://patents.google.com/?assignee=apple+inc.

**Apple's D'279 Patent**

72.     The D'279 patent is a design patent titled "Electronic Device," the front page of which is shown below:



*D'279 Patent, Front Page*

73.     The D'279 patent was filed on March 25, 2019 and issued on May 5, 2020. It is a continuation of Application No. 29/654,754, filed on June 27, 2018, now U.S. Patent No. D882,563.

74.     The D'279 patent lists the following inventors: Jody Akana, Molly Anderson, Bartley K. Andre, Shota Aoyagi, Anthony Michael Ashcroft, Marine C. Bataille, Jeremy Bataillou, Markus Diebel, M. Evans Hankey, Julian Hoenig, Richard P. Howarth, Jonathan P. Ive, Julian Jaede, Duncan Robert Kerr, Peter Russell-Clarke, Benjamin Andrew Shaffer, Mikael Silvanto, Sung-Ho Tan, Clement Tissandier, Eugene Antony Whang, and Rico Zörkendörfer.

75.     The D'279 patent is assigned to Apple Inc.

76.     The D'279 patent claims "[t]he ornamental design for an electronic device, as shown and described" in the patent.

77.     The patent includes nine patent figures or drawings. The figures show various angles and/or projections—a drawing convention used by designers to show a three-dimensional design in two dimensions. This practice allows all the views (or figures) to be considered together, and an Industrial Designer would appreciate how each view contextually informs the other. By considering all of the views in this manner, the overall three-dimensional design can be considered, which is not possible by consideration of individual views in isolation. An Industrial Designer would view the drawings in this manner to consider the overall claimed ornamental design as a whole.

78.     Design patents may be published with images that are pixelated, sometimes making the distinction between solid and broken lines less clear. Throughout this declaration, I have considered the D'279 patent's drawings at the size and resolution as they appear in the patent publication, which is attached to this report as Exhibit 3, as well as high resolution images of the D'279 patent's drawings that were examined and granted by the USPTO, which are attached as Exhibit 4.[38] To explain my analysis and findings in this report, I have included images that have been magnified or reduced in size, cropped, juxtaposed, colored and/or annotated. These images are only provided to describe the specific issue being addressed at that point and are not offered to replace or bolster the D'279 patent's drawings.

79.     Figure 1 is a bottom front perspective view of an electronic device showing the claimed design. Figure 2 is a bottom rear perspective view:

---

[38] The as-filed, examined, and granted high resolution images are available at the Supplemental Content tab of the Patent Center page for the D'297 Patent: https://patentcenter.uspto.gov/applications/29684822/supplementalContent/fileType/Design%20Drawings



*D'279 Patent Figure 1*



*D'279 Patent Figure 2*

80.     Figure 3 is a front orthographic view and figure 4 is a rear orthographic view thereof:



*D'279 Patent Figure 3*



*D'279 Patent Figure 4*

81.     Figures 5 and 6 are left and right side orthographic views and figures 7 and 8 are top and bottom views thereof:

22



*D'279 Patent Figures 5 and 6*



*D'279 Patent Figures 7 and 8*

82.     Figure 9 is a bottom front perspective reference view thereof:



*D'279 Patent Figure 9*

83.     The claimed design is only shown in figures 2, 4, 5, 6, 7 and 8. Figures 1, 3, and 9 do not show the claimed design.

84.     Figures 3-8 are orthographic views. A Designer of Ordinary Skill in the Art would understand that the proper way to consider these views is in a third angle orthographic projection layout, so that the overall design can be considered, with each figure contextually informing the others:



*D'279 Patent Figures 3-8, Orthographic Third Angle Projection Layout*

**Apple's D'842 Patent**

85.    The D'842 patent is a design patent titled "Electronic Device," the front page of which is shown below:



*D'842 Patent, Front Page*

86.    The D'842 patent was filed on November 18, 2021 and issued on April 5, 2022. It is a continuation of Application No. 29/780,292, filed on April 23, 2021, now U.S. Patent No. D'949,146, which is a continuation of No. 29/684,825, filed on March 25, 2019, now U.S. Patent No. D917,470, which is a continuation of Application No. 29/654,754, filed on June 27, 2018, now U.S. Patent No. D882,563.

87.    The D'842 patent lists the following inventors: Jody Akana, Molly Anderson, Bartley K. Andre, Shota Aoyagi, Anthony Michael Ashcroft, Marine C. Bataille, Jeremy Bataillou, Markus Diebel, M. Evans Hankey, Julian Hoenig, Richard P. Howarth, Jonathan P. Ive, Julian Jaede, Duncan Robert Kerr, Peter Russell-Clarke, Benjamin Andrew Shaffer, Mikael Silvanto, Sung-Ho Tan, Clement Tissandier, Eugene Antony Whang, and Rico Zörkendörfer.

25

88.      The D'842 patent is assigned to Apple Inc.

89.      The D'842 patent claims "[t]he ornamental design for an electronic device, as shown and described" in the patent.

90.      The patent includes nine patent figures or drawings. As described in paragraph 77 above, the figures show various angles and/or projections such that an Industrial Designer could and would view the drawings together to consider the overall claimed ornamental design as a whole.

91.      Design patents may be published with images that are pixelated, sometimes making the distinction between solid and broken lines less clear. Throughout this declaration, I have considered the D'842 patent's drawings at the size and resolution as they appear in the patent publication, which is attached to this report as Exhibit 5, as well as high resolution images of the D'842 patent's drawings, that were examined and granted by the USPTO, which are attached as Exhibit 6. To explain my analysis and findings in this report, I have included images that have been magnified or reduced in size, cropped, juxtaposed, colored and/or annotated. These images are only provided to describe the specific issue being addressed at that point and are not offered to replace or bolster the D'842 patent's drawings.[39]

92.      Figure 1 is a bottom front perspective view of an electronic device showing the claimed design. Figure 2 is a bottom rear perspective view:

---

[39] The as-filed, examined, and granted high resolution images are available at the Supplemental Content tab of the Patent Center page for the D'842 Patent: https://patentcenter.uspto.gov/applications/29816024/supplementalContent/fileType/Design%20Drawings





*D'842 Patent Figure 1*

*D'842 Patent Figure 2*

93.    Figure 3 is a front orthographic view and figure 4 is a rear orthographic view thereof:





*D'842 Patent Figure 3*

*D'842 Patent Figure 4*

94.    Figures 5 and 6 are left and right side orthographic views and figures 7 and 8 are top and bottom views thereof:



D'842 Patent Figures 5 and 6



D'842 Patent Figures 7 and 8

95.     Figure 9 is a bottom front perspective reference view thereof:



D'842 Patent Figure 9

96.     The claimed design is shown in figures 2, 4, 5, 6, 7 and 8. Figures 1, 3, and 9 do not show the claimed design.

97.     Figures 3-8 are orthographic views. A Designer of Ordinary Skill in the Art would understand that the proper way to consider these views is in a third angle orthographic projection layout, so that the overall design can be considered, with each figure contextually informing the others:

28



*D'842 Patent Figures 3-8, Orthographic Third Angle Projection Layout*

**Apple's D'936 Patent**

98.    The D'936 patent is a design patent titled "Electronic Device," the front page of which is shown below:

29



*D'936 Patent, Front Page*

99.     The D'936 patent was filed on November 18, 2021 and issued on September 6, 2022. It is a continuation of Application No. 29/780,292, filed on April 23, 2021, now U.S. Patent No. D'949,146, which is a continuation of No. 29/684,825, filed on March 25, 2019, now U.S. Patent No. D917,470, which is a continuation of Application No. 29/654,754, filed on June 27, 2018, now U.S. Patent No. D882,563.

100.    The D'936 patent lists the following inventors: Jody Akana, Molly Anderson, Bartley K. Andre, Shota Aoyagi, Anthony Michael Ashcroft, Marine C. Bataille, Jeremy Bataillou, Markus Diebel, M. Evans Hankey, Julian Hoenig, Richard P. Howarth, Jonathan P. Ive, Julian Jaede, Duncan Robert Kerr, Peter Russell-Clarke, Benjamin Andrew Shaffer, Mikael Silvanto, Sung-Ho Tan, Clement Tissandier, Eugene Antony Whang, and Rico Zörkendörfer.

101.    The D'936 patent is assigned to Apple Inc.

102.    The D'936 patent claims "[t]he ornamental design for an electronic device, as shown and described" in the patent.

30

103.    The patent includes nine patent figures or drawings. As described in paragraph 77 above, the figures show various angles and/or projections such that an Industrial Designer could and would view the drawings together to consider the overall claimed ornamental design as a whole.

104.    Design patents may be published with images that are pixelated, sometimes making the distinction between solid and broken lines less clear. Throughout this declaration, I have considered the D'936 patent's drawings at the size and resolution as they appear in the patent publication, which is attached to this report as Exhibit 7, as well as high resolution images of the D'936 patent's drawings, that were examined and granted by the USPTO, which are attached as Exhibit 8. To explain my analysis and findings in this report, I have included images that have been magnified or reduced in size, cropped, juxtaposed, colored and/or annotated. These images are only provided to describe the specific issue being addressed at that point and are not offered to replace or bolster the D'936 patent's.[40]

105.    Figure 1 is a bottom front perspective view of an electronic device showing the claimed design. Figure 2 is a bottom rear perspective view:




*D'936 Patent Figure 1*                    *D'936 Patent Figure 2*

---

[40] The as-filed, examined, and granted high resolution images are available at the Supplemental Content tab of the Patent Center page for the D'936 Patent: https://patentcenter.uspto.gov/applications/29816025/supplementalContent/fileType/Design%20Drawings

106.     Figure 3 is a front orthographic view and figure 4 is a rear orthographic view thereof:





D'936 Patent Figure 3                    D'936 Patent Figure 4

107.     Figures 5 and 6 are left and right side orthographic views and figures 7 and 8 are top and bottom views thereof:




D'936 Patent Figures 5 and 6                    D'936 Patent Figures 7 and 8

108.     Figure 9 is a bottom front perspective reference view thereof:



*D'936 Patent Figure 9*

109.    The claimed design is shown in figures 2, 4, 5, 6, 7 and 8. Figures 1, 3, and 9 do not show the claimed design.

110.    Figures 3-8 are orthographic views. A Designer of Ordinary Skill in the Art would understand that the proper way to consider these views is in a third angle orthographic projection layout, so that the overall design can be considered, with each figure contextually informing the others:



*D'936 Patent Figures 3-8, Orthographic Third Angle Projection Layout*

**CERTAIN APPLE WATCHES EMBODY THE WATCH PATENTS**

111.    I have analyzed whether Apple Watch embodies the designs protected by the Watch Patents. I examined physical samples of Apple Watch Series 4, Series 5, and Series 8 and images thereof, as well as images of the remaining Series of Apple Watch.

**Apple Watch Series 4 and 5 Embody The D'279 Patent Design**

112.    Based on my analysis, Apple Watch Series 4 and Series 5[41] embody the design protected by the D'279 patent.

113.    For example, the comparison shows that Apple Watch embodies the various design elements that give the D'279 patent its unique appearance, including, on the rear of the watch:

a.   A protruding circular element having a concentric circular arrangement with a beveled edge, contained within an outermost circle (labelled "A" below);

b.   Two semi-circular arches, together forming an outer broken-circular shape, each semi-circular arch arching across half of that circular arrangement (labelled "B" below);

c.   Moving toward the center of the circular arrangement, spaced apart from the outer broken-circular shape, eight four-sided shapes aligned to form an inner broken-circular shape smaller in diameter than the outer broken-circular shape (labelled "C" below);

d.   Moving further toward the center of the circular arrangement, spaced apart from the inner broken-circular shape, a central circular shape (labelled "D" below); and

e.   A transparent, domed shape protruding out from the rear of the watch (labelled "E" below):

---

[41] Throughout this section, I refer to "Apple Watch" and include images of Apple Watch Series 5, but my analysis regarding the D'279 patent applies equally regarding Apple Watch Series 4. *See* ¶ 69 *supra* (showing Apple Watch designs, including Series 4 and 5).



114.    When the overall ornamental designs of Apple Watch and the D'279 patent are compared, the overarching similarities make the overall impression of the Apple Watch substantially similar to the D'279 patent design.

115.    Based on my analysis, Apple Watch Series 4 and 5 embody the design protected by the D'279 patent.

### Apple Watch Series 4 and 5 Embody The D'842 Patent Design

116.    Based on my analysis, Apple Watch Series 4 and Series 5[42] embody the design protected by the D'842 patent.

117.    For example, the comparison shows that Apple Watch embodies the various design elements that give the D'842 patent its unique appearance, including, on the rear of the watch:

    a.    A protruding circular element having a concentric circular arrangement, contained within an outermost circle (labelled "A" below);

    b.    Two semi-circular arches, together forming an outer broken-circular shape, each semi-circular arch arching across half of that circular arrangement (labelled

---

[42] Throughout this section, I refer to "Apple Watch" and include images of Apple Watch Series 5, but my analysis regarding the D'842 patent applies equally regarding Apple Watch Series 4. *See* ¶ 69 *supra* (showing Apple Watch designs, including Series 4 and 5).

"B" below); and

c.   Moving toward the center of the circular arrangement, spaced apart from the outer broken-circular shape, eight four-sided shapes aligned to form an inner broken-circular shape smaller in diameter than the outer broken-circular shape (labelled "C" below).



118.   When the overall ornamental designs of Apple Watch and the D'842 patent are compared, the overarching similarities make the overall impression of the Apple Watch substantially similar to the D'842 patent design.

119.   Based on my analysis, Apple Watch Series 4 and 5 embody the design protected by the D'842 patent.

**Apple Watch Series 4-8 and Apple Watch Ultra Embody The D'936**

**Patent Design**

120.    Based on my analysis, Apple Watch Series 4, 5, 6, 7, 8, and Apple Watch Ultra[43] embody the design protected by the D'936 patent.

121.    For example, the comparison shows that Apple Watch embodies the various design elements that give the D'936 patent its unique appearance, including, on the rear of the watch:

   a.   A protruding circular element having a circular arrangement, contained within an outermost circle (labelled "A" below); and

   b.   Two semi-circular arches, together forming an outer broken-circular shape, each semi-circular arch arching across half of that circular arrangement (labelled "B" below).

---

[43] Throughout this section, I refer to "Apple Watch" and include images of Apple Watch Series 8, but my analysis regarding the D'936 patent applies equally regarding Apple Watch Series 4-7 and Apple Watch Ultra. *See* ¶ 69 *supra* (showing Apple Watch designs, including Apple Watch Series 4-7 and Apple Watch Ultra).

38



FIG. 4

122.    When the overall ornamental designs of Apple Watch and the D'936 patent are compared, the overarching similarities make the overall impression of the Apple Watch substantially similar to the D'936 patent design.

123.    Based on my analysis, Apple Watch Series 4-8 and Apple Watch Ultra embody the design protected by the D'936 patent.

**MASIMO'S W1 WATCH**

124.    I purchased the accused Masimo W1 watch for my infringement analysis, shown below.

 

*Masimo W1 watch*

125.    The sample is shown below, in photos I took in my studio. The views were taken to correspond to figures of the Watch Patents, for ease of comparison:

40



*Masimo w1 watch sample.*

**COMPARING APPLE WATCH'S AND W1'S MATERIAL FINISHES**

126.    As mentioned above, I purchased and examined samples of Apple Watch and Masimo's W1.  Apple Watch's finishes are highly sophisticated, rivaling what a consumer would expect from a piece of jewelry.  I understand that Apple Watch uses high-quality materials such as aluminum, stainless steel, ceramics, and sapphire crystal.  For example, the back of Apple Watch is made from black ceramic and sapphire crystal.[44] The housing varies by Series but has been made available in finishes such as aluminum, stainless steel, titanium, and ceramic.[45]

127.    The W1's design details, materials, and finishes do not appear to have the same sophisticated and premium appearance as found on the various models of Apple Watch. Instead of having an expensive jewelry-like quality like Apple Watch, the W1's materials and finish are more pedestrian, in line with what a consumer might expect from a tech gadget or exercise/fitness monitor. The Apple Watch design appears chic, while the W1 appears functional and suited for its intended task.

---

[44] *See, e.g.*, *Apple Watch Series 8 – Technical Specifications*, Apple, https://support.apple.com/kb/SP878?locale=en_US (Series 8); *Apple Watch Ultra – Technical Specifications*, Apple, https://support.apple.com/kb/SP879?locale=en_US (Ultra); *Apple Watch Series 5 – Technical Specifications*, Apple, https://support.apple.com/kb/SP808?locale=en_US (Series 5); *Apple Watch Series 4 – Technical Specifications*, Apple, https://support.apple.com/kb/SP778?locale=en_US (Series 4).
[45] *See, e.g.*, *Apple Watch Series 8 – Technical Specifications*, Apple, https://support.apple.com/kb/SP878?locale=en_US (Series 8 available in aluminum and stainless steel); *Apple Watch Ultra – Technical Specifications*, Apple, https://support.apple.com/kb/SP879?locale=en_US (Ultra available in titanium); *Apple Watch Series 5 – Technical Specifications*, Apple, https://support.apple.com/kb/SP808?locale=en_US (Series 5 available in aluminum, stainless steel, titanium, and ceramic); *Apple Watch Series 4 – Technical Specifications*, Apple, https://support.apple.com/kb/SP778?locale=en_US (Series 4 available in aluminum and stainless steel).

**INFRINGEMENT ANALYSIS OF THE MASIMO W1 WATCH**

128.     As described above in paragraphs 35-37, I understand that, under the "ordinary observer test," "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."  In applying the ordinary observer test, I compared the Masimo W1's accused design to the three Watch Patents' claimed designs. I considered all the figures from each particular patent together as a whole, including through a multi-view Orthographic Third Angle Projection I created based on those figures, which allows the claimed ornamental design as a whole to be compared to a physical sample of the W1. I also considered each Watch Patent's figures individually in a side-by-side comparison to corresponding images of Masimo W1—*i.e.*, images showing a similar perspective or angle as shown in the individual patent figures, for ease of comparison.

129.     Upon completion of that comparison, I found that an ordinary observer would find the accused W1 design is substantially similar—thus, not plainly dissimilar—from the Watch Patents' claimed designs, as described further below.  Accordingly, following the guidance provided in *Egyptian Goddess*, I compared the accused and claimed designs in light of the prior art.  For ease of explanation in this declaration, I selected an exemplary piece of prior art that is cited on the faces of the Watch Patents: U.S. Patent No. D728,624 (the "D'624 patent, attached as Exhibit 9").[46] The D'624 patent is a design patent titled "Electronic Device" and that claims "[t]he ornamental design for an electronic device, as shown and described" in the patent.  It was filed on August 11, 2014 and issued on May 5, 2015. After that comparison, I found that the similarities between the Watch Patents' designs and the W1's design, and their conspicuous departure from the prior art, further demonstrate that the ordinary observer would regard the W1 design as substantially similar to the claimed Watch Patents' designs, as described further below.

130.     Additionally, because the design of the Watch Patents and of various Series of patentee's Apple Watch are substantially the same, as described in paragraphs 110-123 above, I also compared Apple Watch embodiments of the claimed designs to the Masimo W1's accused design—through an examination of physical Apple Watches as

---

[46] I selected the D'624 patent because, looking at the prior art cited on the faces of the Watch Patents, it was among the closest designs to the Watch Patents' designs.  I made that choice to be conservative in my analysis—the ordinary observer would be conversant with all prior art, including prior art with differences even more exaggerated in nature that the D'624 patent.

well as images thereof.

131.    In some circumstances I have annotated the comparisons to visually describe aspects of my analysis. My focus has been the comparison of the overall design as a whole as claimed by the Watch Patents with the design of W1. Any images or description using a single particular view or figure from the design patent and/or the accused product is to illustrate a specific point and should not diminish the importance of considering the overall claimed design.

132.    In each of those comparisons, described further below, I employed my expertise in designing products for consumers and users to consider how an Ordinary Observer, giving such attention as a purchaser usually gives, would compare the Accused Product to the claimed Watch Patent designs, and whether they would find the designs to be substantially the same, such that the resemblance would deceive them to purchase one supposing it to be the other.

133.    My descriptions and comparisons of the designs are simply an explanation of my findings comparing the overall designs. It is not intended as, or should be taken as, a points of novelty analysis. At all times my infringement analysis has considered the asserted and accused designs as a whole.

134.    In some circumstances I have annotated the comparisons to visually describe aspects of my analysis. My focus has been the comparison of the overall design as a whole as claimed by the Watch Patents with the design of W1. Any images or description using a single particular view or figure from the design patent and/or the accused product is to illustrate a specific point and should not diminish the importance of considering the overall claimed design.

**The D'279 Patent**

**Comparison with the D'279 Patent**

135.    I have compared the design claimed by the D'279 patent with the accused Masimo W1 watch. The following comparison shows Figures 1 and 2 compared with corresponding views of the Masimo W1 watch:



136.    As part of my analysis, I considered all the figures from the D'279 patent together as a whole, including through a multi-view Orthographic Third Angle Projection I created based on those figures, which allows the claimed ornamental design as a whole to be compared to a physical sample of the W1, as shown below:





137.    Figures 6 and 4 of the D'279 patent show the claimed design to be compared to

the accused design.  Figures 6 and 4, as well as corresponding views of the W1 are
shown below:






138.    Figure 2 of the D'279 patent shows a bottom rear perspective view of the
claimed design.  Figure 2, as well as a corresponding view of W1, are shown below:



*FIG. 2*



139.    My analysis included a physical and intellectual exercise in which I compared and analyzed the physical sample of the accused W1 design to the design claimed by the D'279 patent. Because of the three-dimensional nature of that portion of my analysis, it is not possible for me to completely document it in this declaration. I do, however,

48

explain my process and findings and could and would testify thereto if called upon to do so.  I have included figures from the D'279 patent and images of the W1 at corresponding views for ease of comparison.

140.    Based on my analysis, the W1 appropriates the various design elements that give the D'279 patent its unique appearance, including, on the rear of the watch:

a.   A protruding circular element having a concentric circular arrangement with a beveled edge, contained within an outermost circle (labelled "A" below);

b.   Two semi-circular arches, together forming an outer broken-circular shape, each semi-circular arch arching across half of that circular arrangement (labelled "B" below);

c.   Moving toward the center of the circular arrangement, spaced apart from the outer broken-circular shape, eight four-sided shapes aligned to form an inner broken-circular shape smaller in diameter than the outer broken-circular shape (labelled "C" below);

d.   Moving further toward the center of the circular arrangement, spaced apart from the inner broken-circular shape, a central circular shape (labelled "D" below); and

e.   A transparent, domed shape protruding out from the rear of the watch (labelled "E" below):

49



FIG. 6

FIG. 4



*FIG. 2*

141.    All of those similarities make the overall impressions of the D'279 patent and W1 designs substantially similar to an ordinary observer.

142.    The only noticeable differences between the two designs are: (1) instead of having eight four-sided shapes aligned to form a broken-circular shape, it has six ("C" above); (2) instead of a single circular element at the center of the circular layout, Masimo split the central element into two semi-circles placed to, together, form a broken-oval shape ("D" above); and (3) instead of the domed shape being a single surface, it has a cover ("E" above) that aligns with the two semicircular arches ("B" above), still creating an overall protruding domed shape to the circular rear layout.

143.    These differences do not change my opinion. They do not give the design of the W1 a visual impression that would readily allow an ordinary consumer to differentiate its design as distinct from the D'279 patent design.  The W1 is, at a minimum, still a "colorable imitation" of the D'279 patent design and infringes.[47]

**Comparison in Light of the Prior Art**

144.    As described in paragraphs 135-143 above, the claimed D'279 patent design and the accused W1 design are substantially similar—and they are not "plainly dissimilar." I understand that the ordinary observer might find that comparison of the claimed and accused designs would benefit from consideration and comparison to the prior art. Accordingly, as part of my analysis, I considered the D'279 patent design, the accused

---

[47] 35 U.S.C. § 289.

W1 design, and prior art together, using the prior art D'624 patent as an example.

145.    Based on my analysis, the designs of the D'279 patent and W1 are much more similar to each other than to the prior art, which further demonstrates that the ordinary observer would regard the W1 design as substantially similar to the claimed D'279 patent design.

146.    In light of the prior art, an ordinary observer would find that the D'279 patent and W1 designs share at least the following elements that depart conspicuously from the prior art:

   a.  A circular element having a concentric circular arrangement, contained within an outermost circle (labelled "A" below), as opposed to merely a layout contained within a single circular shape;

   b.  Two semi-circular arches, together forming an outer broken-circular shape, each semi-circular arch arching across half of that circular arrangement (labelled "B" below);

   c.  Moving toward the center of the circular arrangement, spaced apart from the outer broken-circular shape, multiple four-sided shapes aligned to form an inner broken-circular shape smaller in diameter than the outer broken-circular shape (labelled "C" below); and

   d.  Moving further toward the center of the circular arrangement, spaced apart from the inner broken-circular shape, a central circular shape (labelled "D" below).





147.    Those similarities between the D'279 patent design and the W1 design, and their conspicuous departure from the prior art, further demonstrate that the ordinary observer would regard the W1 design as substantially similar to the claimed D'279 patent design.

**Comparison Between Apple Watch and W1 Further
Demonstrates Masimo's Infringement Of The D'279 Patent**

148.     As described in paragraphs 112-115 above, Apple Watch Series 4 and Series 5[48] embody the design protected by the D'279 patent and in that scenario, it is permissible to compare Apple's commercial embodiment with the accused W1.

149.     Based on my analysis, the comparison of Apple Watch to the W1 further demonstrates and confirms that Masimo infringes the D'279 patent with the W1.

150.     For example, the comparison shows that the W1 appropriates the various design elements that give the Apple Watches embodying the D'279 patent their unique appearance, including, on the rear of the watch:

   a.   A protruding circular element having a concentric circular arrangement with a beveled edge, contained within an outermost circle (labelled "A" below);

   b.   Two semi-circular arches, together forming an outer broken-circular shape, each semi-circular arch arching across half of that circular arrangement (labelled "B" below);

   c.   Moving toward the center of the circular arrangement, spaced apart from the outer broken-circular shape, multiple four-sided shapes aligned to form an inner broken-circular shape smaller in diameter than the outer broken-circular shape (labelled "C" below); and

   d.   Moving further toward the center of the circular arrangement, spaced apart from the inner broken-circular shape, a central circular shape (labelled "D" below); and

   e.   A transparent, domed shape protruding out from the rear of the watch (labelled "E" below).

---

[48] Throughout this section, I refer to "Apple Watch" and include images of Apple Watch Series 5, but my analysis regarding the D'279 patent applies equally regarding Apple Watch Series 4. *See* ¶ 69 *supra* (showing Apple Watch designs, including Series 4 and 5).

54



151.   When the overall ornamental designs of the Apple Watch embodying the D'279 patent design and the W1 are compared, the overarching similarities would cause an ordinary observer to be deceived because they are substantially the same.

152.   The only noticeable differences between the two designs are as described in paragraph 142 above.

153.   As described in paragraph 143 above, these differences do not change my opinion.

154.   I understand that Masimo has asserted that there are additional differences between Apple Watch and the W1, including asserting that:

a.   "Apple Watch has a round crown, 'winder' type button, and a flush button whereas the W1® has a classic computer on the wrist appearance";

b.   "Apple Watch and W1® have a different band design";

c.   "Bands for the Apple Watch and W1® have a different attachment mechanism";

d.   "Apple Watch includes text surrounding the circular sensor whereas the W1® does not"; and

e.   "Apple Watch includes three gray circles whereas the W1® does not."

55

155.    None of those alleged differences are claimed elements of the D'279 design. Further, none of those alleged differences have a notable presence in view of the claimed design elements. For example, both Apple Watch and the W1 have two buttons along the right side of the watch. Apple Watch having one round "crown" button and one oblong button, while the W1 has two oblong buttons, would not be such a striking difference so as to prevent the ordinary observer from being deceived by the W1's design, and thus the ordinary observer would see it as embodying the D'279 design. As another example, band attachment style is not readily apparent from the ornamental design, nor is watch band style notable when considering the design of the watch itself. Further, the circular text and "gray circles" present on Apple Watch are not at the forefront of the design, not only are they subdued in appearance, but they also follow the concentric circular layout of the design. Their absence from the W1 would not be so notable as to prevent the ordinary observer from finding the designs substantially similar.

156.    Accordingly, based on my analysis, the comparison of Apple Watch to the W1 further demonstrates and confirms that Masimo infringes the D'279 patent with the W1.

### The D'842 Patent

### Comparison with the D'842 Patent

157.    I have compared the design claimed by the D'842 patent with the accused Masimo W1 watch. The following comparison shows Figures 1 and 2 compared with corresponding views of the Masimo W1 watch:



FIG. 1                    FIG. 2

56



158.     As part of my analysis, I considered all the figures from the D'842 patent together as a whole, including through a multi-view Orthographic Third Angle Projection I created based on those figures, which allows the claimed ornamental design as a whole to be compared to a physical sample of the W1, as shown below:



57



159.    Figures 6 and 4 of the D'842 patent show the claimed design to be compared to the accused design.  Figures 6 and 4, as well as corresponding views of the W1 are shown below:





160.     Figure 2 of the D'842 patent shows a bottom rear perspective view of the claimed design.  Figure 2, as well as a corresponding view of W1, are shown below:

59



*FIG. 2*



161.     My analysis included a physical and intellectual exercise in which I compared and analyzed the physical sample of the accused W1 design to the design claimed by the D'842 patent. Because of the three-dimensional nature of that portion of my analysis, it is not possible for me to completely document it in this declaration. I do, however, explain my process and findings and could and would testify thereto if called upon to do

60

so.  I have included figures from the D'842 patent and images of the W1 at corresponding views for ease of comparison.

162.    Based on my analysis, the W1 appropriates the various design elements that give the D'842 patent its unique appearance, including, on the rear of the watch:

a.   A protruding circular element having a concentric circular arrangement, contained within an outermost circle (labelled "A" below);

b.   Two semi-circular arches, together forming an outer broken-circular shape, each semi-circular arch arching across half of that circular arrangement (labelled "B" below); and

c.   Moving toward the center of the circular arrangement, spaced apart from the outer broken-circular shape, multiple four-sided shapes aligned to form an inner broken-circular shape smaller in diameter than the outer broken-circular shape (labelled "C" below).



FIG. 6

FIG. 4



163.    All of those similarities make the overall impressions of the D'842 patent and W1 designs substantially similar to an ordinary observer.

164.    The only noticeable difference between the two designs is instead of having eight four-sided shapes aligned to form a broken-circular shape, it has six ("C" above).

165.    That difference does not change my opinion. The difference does not give the design of the W1 a visual impression that would readily allow an ordinary consumer to differentiate its design as distinct from the D'842 patent design.  The W1 is, at a minimum, still a "colorable imitation" of the D'842 patent design and infringes.[49]

### Comparison in Light of the Prior Art

166.    As described in paragraphs 157-165 above, the claimed D'842 patent design and the accused W1 design are substantially similar—and they are not "plainly dissimilar." I understand that the ordinary observer might find that comparison of the claimed and accused designs would benefit from consideration and comparison to the prior art. Accordingly, as part of my analysis, I considered the D'842 patent design, the accused W1 design, and prior art together, using the prior art D'624 patent as an example.

167.    Based on my analysis, the designs of the D'842 patent and W1 are much more similar to each other than to the prior art, which further demonstrates that the ordinary

---

[49] 35 U.S.C. § 289.

observer would regard the W1 design as substantially similar to the claimed D'842 patent design.

168.    In light of the prior art, an ordinary observer would find that the D'842 patent and W1 designs share at least the following elements that depart conspicuously from the prior art:

> a.  A circular element having a concentric circular arrangement, contained within an outermost circle (labelled "A" below), as opposed to merely a layout contained within a single circular shape;

> b.  Two semi-circular arches, together forming an outer broken-circular shape, each semi-circular arch arching across half of that circular arrangement (labelled "B" below); and

> c.  Moving toward the center of the circular arrangement, spaced apart from the outer broken-circular shape, multiple four-sided shapes aligned to form an inner broken-circular shape smaller in diameter than the outer broken-circular shape (labelled "C" below).





169.    Those similarities between the D'842 patent design and the W1 design, and their conspicuous departure from the prior art, further demonstrate that the ordinary observer would regard the W1 design as deceptively similar to the claimed D'842 patent design.

65

**Comparison Between Apple Watch and W1 Further**
**Demonstrates Masimo's Infringement Of The D'842 Patent**

170.     As described in paragraphs 116-119 above, Apple Watch Series 4 and Series 5[50] embody the design protected by the D'842 patent and in that scenario, it is permissible to compare Apple's commercial embodiment with the accused W1.

171.     Based on my analysis, the comparison of Apple Watch to the W1 further demonstrates and confirms that Masimo infringes the D'842 patent with the W1.

172.     For example, the comparison shows that the W1 appropriates the various design elements that give the Apple Watches embodying the D'842 patent their unique appearance, including, on the rear of the watch:

   a.   A protruding circular element having a concentric circular arrangement, contained within an outermost circle (labelled "A" below);

   b.   Two semi-circular arches, together forming an outer broken-circular shape, each semi-circular arch arching across half of that circular arrangement (labelled "B" below); and

   c.   Moving toward the center of the circular arrangement, spaced apart from the outer broken-circular shape, multiple four-sided shapes aligned to form an inner broken-circular shape smaller in diameter than the outer broken-circular shape (labelled "C" below).

---

[50] Throughout this section, I refer to "Apple Watch" and include images of Apple Watch Series 5, but my analysis regarding the D'279 patent applies equally regarding Apple Watch Series 4. *See* ¶ 69 *supra* (showing Apple Watch designs, including Series 4 and 5).

66



173.    When the overall ornamental designs of the Apple Watch embodying the D'842 patent design and the W1 are compared, the overarching similarities would cause an ordinary observer to be deceived because they are substantially the same.

174.    The only noticeable difference between the two designs is as described in paragraph 164 above.

175.    As described in paragraph 165 above, these differences do not change my opinion.

176.    I understand that Masimo has asserted that there are additional differences between Apple Watch and the W1 that are **not** claimed, including:

a.   instead of a single circular element at the center of the circular layout, Masimo split the central element into two semi-circles placed to, together, form a broken-oval shape;

b.   instead of the domed shape being a single surface, it has a cover that aligns with the two semicircular arches, still creating an overall protruding domed shape to the circular rear layout;

c.   "Apple Watch has a round crown, 'winder' type button, and a flush button whereas the W1® has a classic computer on the wrist appearance";

d.  "Apple Watch and W1® have a different band design";

e.  "Bands for the Apple Watch and W1® have a different attachment mechanism";

f.  "Apple Watch includes text surrounding the circular sensor whereas the W1® does not"; and

g.  "Apple Watch includes three gray circles whereas the W1® does not."

177.   None of those alleged differences are claimed elements of the D'842 design. Further, for the reasons described regarding the D'279 patent design in paragraph 155 above, none of those alleged differences have a notable presence in view of the claimed design elements of the D'842 patent so as to prevent the ordinary observer from finding the designs substantially similar—the ordinary observer would see the W1 as embodying the D'842 design.

178.   Accordingly, based on my analysis, the comparison of Apple Watch to the W1 further demonstrates and confirms that Masimo infringes the D'842 patent with the W1.

**The D'936 Patent**

179.   Based on my analysis, I conclude that Masimo's making, using, selling, and/or offering for sale within the United States, and/or importing into the United States, the W1 infringes the D'936 patent. I explain this opinion in detail below.

**Comparison with the D'936 Patent**

180.   I have compared the design claimed by the D'936 patent with the accused Masimo W1 watch. The following comparison shows Figures 1 and 2 compared with corresponding views of the Masimo W1 watch:



FIG. 1                    FIG. 2

181.    As part of my analysis, I considered all the figures from the D'936 patent together as a whole, including through a multi-view Orthographic Third Angle Projection I created based on those figures, which allows the claimed ornamental design as a whole to be compared to a physical sample of the W1, as shown below:



182.    Figures 6 and 4 of the D'936 patent show the claimed design to be compared to the accused design.  Figures 6 and 4, as well as corresponding views of the W1 are shown below:





183.    Figure 2 of the D'936 patent shows a bottom rear perspective view of the claimed design.  Figure 2, as well as a corresponding view of W1, are shown below:



FIG. 2



184.    My analysis included a physical and intellectual exercise in which I compared and analyzed the physical sample of the accused W1 design to the design claimed by the D'936 patent. Because of the three-dimensional nature of that portion of my analysis, it is not possible for me to completely document it in this declaration. I do, however, explain my process and findings and could and would testify thereto if called upon to do so.  I have included figures from the D'936 patent and images of the W1 at

corresponding views for ease of comparison.

185.    Based on my analysis, the W1 appropriates the various design elements that give the D'936 patent its unique appearance, including, on the rear of the watch:

    a.  A protruding circular element having a circular arrangement, contained within an outermost circle (labelled "A" below); and

    b.  Two semi-circular arches, together forming an outer broken-circular shape, each semi-circular arch arching across half of that circular arrangement (labelled "B" below).





FIG. 2

186.    All of those similarities make the overall impressions of the D'936 patent and W1 designs substantially similar to an ordinary observer.

187.    An ordinary observer would not find any noticeable differences between the two designs.

188.    Any minor differences do not change my opinion. They do not give the design of the W1 a visual impression that would readily allow an ordinary consumer to differentiate its design as distinct from the D'936 patent design. The W1 is, at a minimum, still a "colorable imitation" of the D'936 patent design and infringes.[51]

**Comparison in Light of the Prior Art**

189.    As described in paragraphs 180-188 above, the claimed D'936 patent design and the accused W1 design are substantially similar—and they are not "plainly dissimilar." I understand that the ordinary observer might find that comparison of the claimed and accused designs would benefit from consideration and comparison to the prior art. Accordingly, as part of my analysis, I considered the D'936 patent design, the accused W1 design, and prior art together, using the prior art D'624 patent as an example.

190.    Based on my analysis, the designs of the D'936 patent and W1 are much more similar to each other than to the prior art, which further demonstrates that the ordinary

---

[51] 35 U.S.C. § 289.

observer would regard the W1 design as substantially similar to the claimed D'936 patent design.

191.    In light of the prior art, an ordinary observer would find that the D'936 patent and W1 designs share at least the following elements that depart conspicuously from the prior art:

> a.   A protruding circular element having a circular arrangement, contained within an outermost circle (labelled "A" below), as opposed to merely a layout contained within a single circular shape; and
>
> b.   Two semi-circular arches, together forming an outer broken-circular shape, each semi-circular arch arching across half of that circular arrangement (labelled "B" below).





192.   Those similarities between the D'936 patent design and the W1 design, and their conspicuous departure from the prior art, further demonstrate that the ordinary observer would regard the W1 design as deceptively similar to the claimed D'936 patent design

**Comparison Between Apple Watch and W1 Further
Demonstrates Masimo's Infringement Of The D'936 Patent**

193.   As described in paragraphs 120-123 above, Apple Watch Series 4, 5, 6, 7, 8, and

77

Apple Watch Ultra[52] embody the design protected by the D'936 patent and in that scenario, it is permissible to compare Apple's commercial embodiment with the accused W1.

194.    Based on my analysis, the comparison of Apple Watch to the W1 further demonstrates and confirms that Masimo infringes the D'936 patent with the W1.

195.    For example, the comparison shows that the W1 appropriates the various design elements that give the Apple Watches embodying the D'936 patent their unique appearance, including, on the rear of the watch:

> a.  A protruding circular element having a circular arrangement, contained within an outermost circle (labelled "A" below); and

> b.  Two semi-circular arches, together forming an outer broken-circular shape, each semi-circular arch arching across half of that circular arrangement (labelled "B" below).



---

[52] Throughout this section, I refer to "Apple Watch" and include images of Apple Watch Series 8, but my analysis regarding the D'936 patent applies equally regarding Apple Watch Series 4-7 and Apple Watch Ultra. *See* ¶ 69 *supra* (showing Apple Watch designs, including Apple Watch Series 4-7 and Apple Watch Ultra).



196.    When the overall ornamental designs of the Apple Watch embodying the D'936 patent design and the W1 are compared, the overarching similarities would cause an ordinary observer to be deceived because they are substantially the same.

197.    An ordinary observer would not find any noticeable differences between the two designs as described in paragraph 187 above.

198.    As described in paragraph 188 above, any minor differences do not change my opinion.

199.    I understand that Masimo has asserted that there are additional differences between Apple Watch and the W1 that are **not** claimed, including:

a.  instead of having eight four-sided shapes aligned to form a broken-circular shape, it has six;

b.  instead of a single circular element at the center of the circular layout, Masimo split the central element into two semi-circles placed to, together, form a broken-oval shape;

c.  instead of the domed shape being a single surface, it has a cover that aligns with the two semicircular arches, still creating an overall protruding domed shape to the circular rear layout;

d.  "Apple Watch has a round crown, 'winder' type button, and a flush button

79

whereas the W1® has a classic computer on the wrist appearance";

e.   "Apple Watch and W1® have a different band design";

f.   "Bands for the Apple Watch and W1® have a different attachment
mechanism";

g.   "Apple Watch includes text surrounding the circular sensor whereas the W1®
does not"; and

h.   "Apple Watch includes three gray circles whereas the W1® does not."

200.   None of those alleged differences are claimed elements of the D'936 design.
Further, for the reasons described regarding the D'279 patent design in paragraph 155
above, none of those alleged differences have a notable presence in view of the claimed
design elements of the D'936 patent so as to prevent the ordinary observer from finding
the designs substantially similar—the ordinary observer would see the W1 as
embodying the D'936 design.

201.   Accordingly, based on my analysis, the comparison of Apple Watch to the W1
further demonstrates and confirms that Masimo infringes the D'936 patent with the
W1.

80

**THE ASSERTED PATENTS ARE NOT INVALID**

### The D'279 Patent Is Not Invalid

### The D'279 Patent Is Not Invalid in Light Of Prior Art

202.    As described above in paragraphs 144-147 above, the D'279 patent claims a design that departs conspicuously from, and is not anticipated by, the prior art.

203.    I am not aware of any contentions by Masimo that the D'279 patent is obvious based on any particular prior art reference or references. Additionally, I understand that Mr. James Malackowski is addressing secondary considerations of non-obviousness regarding the Watch Patents' validity, such as commercial success, industry praise, and copying.

### The D'279 Patent Is Not Invalid for Functionality

204.    I understand that Masimo has asserted that the D'279 patent should be invalidated for claiming functional, non-ornamental designs, citing to the '282 application, '912 publication, '211 patent, and related testimony. Specifically, Masimo claims that the D'279 patent should be invalid due to alleged functionality of the "convex protrusion, the arc-shaped ECG sensors, and the photodiodes."[53]  I disagree.

205.    As described in paragraphs 50-52 above, I understand that just because an element of a design may also be practiced by a particular product in a way that serves a functional purpose, that does not mean that the specific design of the element is dictated by functional considerations. Rather, I understand that a design is not dictated by its function when alternative designs for the article of manufacture are available and could produce the same or similar functional capabilities.

206.    I am not offering opinions in this declaration regarding the technical requirements of any particular feature.  Rather, I have examined available smart watches and their advertised features and analyzed their designs.  There are numerous alternative ways the rear of a smart watch could be designed and have functionality such as ECG applications, blood oxygen and heart rate tracking, and wireless charging.[54] In the remainder of this section, I show products that prove these various alternative designs exist and are possible. For example, ECG sensors are not required to take the

---

[53] Dkt. 31 at 14-21.

[54] *See, e.g.*, Russell-Clarke Decl. ¶¶ 10-13.

specific shape and layout as shown in the D'279 patent's concentric circle design. They could, for example, be oblong or more angular. The photodiodes likewise could take many other forms than the multiple four-sided shapes aligned to form a broken-circular shape. They could, for example, each be circular or oval, or could be aligned in a non-circular layout. Wireless charging and necessary skin contact likewise could be achieved by rear watch layouts other than a domed shape. It could be achieved, for example, by use of a cylindrical rear shape or a square or rectangular shape with rounded edges.

207.    An examination of other smart watches available on the market further demonstrates that designs alternative to the D'279 patent's design are available that provide the same or similar functional capabilities as Apple Watch.

208.    For example, Aries AW80 and P11 Plus have similar sensor-related functions to Apple Watch, but do not use the design protected by the D'279 patent:

82

| Watch | Design | Exemplary Functions |
|---|---|---|
| Aries AW80[55] |  | • ECG functionality for atrial fibrillation assessment<br><br>• Heart rate tracking<br><br>• Blood oxygen tracking |

---

[55] *Smartwatch ARIES WATCHES AW E80*, Gepard Watches, https://gepardwatches.pl/pl/meskie/1630-smartwatch-aries-watches-aw-e80.html; *Aries Watches Watch AW80 – Unisex*, https://allegro.pl/oferta/smartwatch-zegarek-ekg-pulsoksymetr-termometr-pl-9927412179.

| | | |
|---|---|---|
| |  | |
| P11 Plus[56] | | • ECG functionality for atrial fibrillation assessment<br><br>• Heart rate tracking<br><br>• Blood oxygen tracking |

---

[56]*0.96 Inch Health Monitoring Smart Watch P11 Plus ECG+PPG Bracelet Heart Rate Blue tooth Waterproof Wearable Devices Smart Bands*, Alibaba.com, https://www.alibaba.com/product-detail/0-96-Inch-Health-Monitoring-Smart_1600315358892.html?spm=a2700.7724857.0.0.7fac6ca930d1xN; *ECG PPG P11 Plus Smart Band Watch Body Temperature Heart Rate Blood Pressure Oxygen Bracelet IP67*



209. The Aries AW80 does not, for example, include the following design elements that are part of the ornamental D'279 patent design and appropriated by W1:

a.  A protruding circular element having a concentric circular arrangement with a beveled edge, contained within an outermost circle;

b.  Two semi-circular arches, together forming an outer broken-circular shape, each semi-circular arch arching across half of that circular arrangement;

c.  Moving toward the center of the circular arrangement, spaced apart from the outer broken-circular shape, multiple four-sided shapes aligned to form an inner broken-circular shape smaller in diameter than the outer broken-circular shape; or

d.  A transparent, domed shape protruding out from the rear of the watch.

210. Similarly, the P11 Plus does not, for example, include the following design elements that are part of the ornamental D'279 patent design and appropriated by W1:

a.  A protruding circular element having a concentric circular arrangement with

---

*Waterproof Sport Fitness*, AliExpress, https://www.aliexpress.us/item/3256801861931242.html?gatewayAdapt=glo2usa4itemAdapt &_randl_shipto=US.

85

a beveled edge, contained within an outermost circle;

b.   Two semi-circular arches, together forming an outer broken-circular shape, each semi-circular arch arching across half of that circular arrangement;

c.   Moving toward the center of the circular arrangement, spaced apart from the outer broken-circular shape, multiple four-sided shapes aligned to form an inner broken-circular shape smaller in diameter than the outer broken-circular shape; or

d.   A transparent, domed shape protruding out from the rear of the watch.

211.   Accordingly, based on my analysis, the D'279 patent's design is not dictated solely by its function and therefore the D'279 patent is not invalid.

### The D'842 Patent Is Not Invalid

### The D'842 Patent Is Not Invalid in Light Of Prior Art

212.   As described above in paragraphs 166-169 above, the D'842 patent claims a design that departs conspicuously from, and is not anticipated by, the prior art.

213.   I am not aware of any contentions by Masimo that the D'842 patent is obvious based on any particular prior art reference or references. Additionally, I understand that Mr. James Malackowski is addressing secondary considerations of non-obviousness regarding the Watch Patents' validity, such as commercial success, industry praise, and copying.

### The D'842 Patent Is Not Invalid for Functionality

214.   I understand that Masimo has asserted that the D'842 patent should be invalidated for claiming functional, non-ornamental designs, citing to the '282 application, '912 publication, '211 patent, and related testimony. Specifically, Masimo claims that the D'842 patent should be invalid due to alleged functionality of the "the arc-shaped ECG sensors, and the photodiodes."[57] I disagree.

215.   As described in paragraphs 204-211 above, there are numerous alternative ways the rear of a smart watch could be designed and have functionality such as ECG

---

[57] Dkt. 31 at 14-21 (Masimo's Answer and Counterclaims).

applications and blood oxygen and heart rate tracking.[58] *See supra* paragraphs 204-211.

216.     Also as described in paragraphs 204-211 above regarding the D'279 patent, an examination of other smart watches available on the market further demonstrates that designs alternative to the D'842 patent's design are available that provide the same or similar functional capabilities as Apple Watch. *See supra* paragraphs 208-210 (discussing Aries AW80 and P11 Plus).

217.     The Aries AW80 does not, for example, include the following design elements that are part of the ornamental D'842 patent design and appropriated by W1:

   a.  A protruding circular element having a concentric circular arrangement, contained within an outermost circle;

   b.  Two semi-circular arches, together forming an outer broken-circular shape, each semi-circular arch arching across half of that circular arrangement; or

   c.  Moving toward the center of the circular arrangement, spaced apart from the outer broken-circular shape, multiple four-sided shapes aligned to form an inner broken-circular shape smaller in diameter than the outer broken-circular shape.

218.     Similarly, the P11 Plus does not, for example, include the following design elements that are part of the ornamental D'842 patent design and appropriated by W1:

   a.  A protruding circular element having a concentric circular arrangement, contained within an outermost circle;

   b.  Two semi-circular arches, together forming an outer broken-circular shape, each semi-circular arch arching across half of that circular arrangement; or

   c.  Moving toward the center of the circular arrangement, spaced apart from the outer broken-circular shape, multiple four-sided shapes aligned to form an inner broken-circular shape smaller in diameter than the outer broken-circular shape.

219.     Accordingly, based on my analysis, the D'842 patent's design is not dictated solely by its function and therefore the D'842 patent is not invalid.

---

[58] *See, e.g.*, Russell-Clarke Decl. ¶¶ 10-13.

**The D'936 Patent Is Not Invalid**

**The D'936 Patent Is Not Invalid in Light Of Prior Art**

220.    As described above in paragraphs 189-192, the D'936 patent claims a design that departs conspicuously from, and is not anticipated by, the prior art.

221.    I am not aware of any contentions by Masimo that the D'936 patent is obvious based on any particular prior art reference or references. Additionally, I understand that Mr. James Malackowski is addressing secondary considerations of non-obviousness regarding the Watch Patents' validity, such as commercial success, industry praise, and copying.

**The D'936 Patent Is Not Invalid for Functionality**

222.    I understand that Masimo has asserted that the D'936 patent should be invalidated for claiming functional, non-ornamental designs, citing to the '282 application, '912 publication, '211 patent, and related testimony. Specifically, Masimo claims that the D'936 patent should be invalid due to alleged functionality of the "the arc-shaped ECG sensors."[59] I disagree.

223.    As described in paragraphs 204-211 above, there are numerous alternative ways the rear of a smart watch could be designed and have functionality such as ECG applications.[60] *See supra* paragraphs 204-211 .

224.    Also as described in paragraphs 204-211 above regarding the D'279 patent, an examination of other smart watches available on the market further demonstrates that designs alternative to the D'936 patent's design are available that provide the same or similar functional capabilities as Apple Watch.  *See supra* paragraphs 208-210 (discussing Aries AW80 and P11 Plus).

225.    The Aries AW80 does not, for example, include the following design elements that are part of the ornamental D'936 patent design and appropriated by W1:

a.  A protruding circular element having a circular arrangement, contained within an outermost circle; or

---

[59] Dkt. 31 at 14-21.

[60] *See, e.g.*, Russell-Clarke Decl. ¶¶ 10-13.

b.  Two semi-circular arches, together forming an outer broken-circular shape, each semi-circular arch arching across half of that circular arrangement.

226.    Similarly, the P11 Plus does not, for example, include the following design elements that are part of the ornamental D'936 patent design and appropriated by W1:

a.   A protruding circular element having a circular arrangement, contained within an outermost circle; or

b.  Two semi-circular arches, together forming an outer broken-circular shape, each semi-circular arch arching across half of that circular arrangement.

227.    Accordingly, based on my analysis, the D'936 patent's design is not dictated solely by its function and therefore the D'936 patent is not invalid.

I hereby declare under penalty of perjury under that the foregoing is true and correct to the best of my knowledge.

_1/29/2023_

Date

Alan Ball

# EXHIBIT 1

**Alan D. Ball, IDSA**
Industrial Designer, Inventor, and Design Expert.

50 Francesca Ave, Somerville, MA 02144-2002
Phone: 617.718.9342.
Email: alball@abidstudio.com

> *"I'm going to credit the testimony of Mr. Ball in all respects over the other witnesses who testified to the contrary. I thought his expert report was thorough and credible, and I thought his testimony was thorough and credible. And to the extent that I have not made a full oral ruling in that respect, I'm adopting his testimony because I thought that I found it credible and covered the areas that deal with infringement very well."*
>
> *- Honorable **Thomas M. Durkin**, United States District Court for the Northern District of Illinois, from the transcript of December 7, 2021, Oral Ruling Vacating TRO and Denying Motion for Preliminary Injunction, **Think Green Limited d/b/a Haakaa v. Medela**, Case No. 1:21-cv-05445.*

**Expert Witness Employment:**

2021            **Think Green Limited d/b/a Haakaa v. Medela,** Case No. 1:21-cv-05445, United States District Court for the Northern District of Illinois. Provided expert services to Marshall, Gerstein & Borun LLP representing defendant Medela.

2018-2021       **Boehringer Ingelheim Pharmaceuticals, Inc. v. Lupin Atlantis Holdings SA,** Consolidated Civil Action No. 18-cv-12663-BRM-TJB, United States District Court for the District Of New Jersey. Provided expert services to Covington & Burling LLP representing patent owner Boehringer Ingelheim.

2020-2021       **Raffel Systems LLC, v. Man Wah Holdings LTD Inc.,** Case No. 2:18-CV-01765, United States District Court for the Eastern District of Wisconsin. Provided expert services to Mayer Brown for defendant Man Wah Holdings.

2019-present    **United States District Court Central District of California,** appointed Special Master to the Court by Hon. Judge David O. Carter in the matter of Case No.: 8:19-cv-01118-DOC-DFM, Panasonic Corporation, vs. Getac Technology Corporation.

-2020-present   **Skull Shaver, LLC, V. Ideavillage Products Corporation,** CIVIL ACTION No. 2:18-cv-03836, United States District Court for the District Of New Jersey. Provided expert services to Delarosa & Associates representing defendant Ideavillage.

2020-2021       **Gentex Corporation v. Galvion Ltd.,** Case No. 19-921-MN, United States District Court for the District of Delaware. Provided expert services to Morgan, Lewis & Bockius LLP representing patent owner Gentex Corp.

2020-2021       **Hyper Ice, Inc. v. Addaday LLC, Performance Health Systems, LLC, WODFitters, Massimo Motor Sports, LLC, Kinghood International Logistics Inc., Manybo Ecommerce Ltd., Shenzhen Let Us Win-Win Technology Co., Shenzhen Infein Technology Co., Ltd., Hong Kong Yongxu Capital Management Co., Ltd., Laiwushiyu Xinuan Trading Company, Shenzhen QingYueTang E-commerce Co., Ltd., Shenzhen Shiluo Trading Co., Ltd., Kula eCommerce Co., Ltd., Fu Si, Shenzhen Qifeng Technology Co., Ltd., Rechar, Inc., Ning Chen, Opove, and Shenzhen Shufang E-Commerce Co., Ltd.,** Investigation No. 337-Ta-1206, United

States International Trade Commission Washington, DC. Provided expert services to Lewis Brisbois Bisgaard & Smith LLP representing patent owner Hyper Ice, Inc.

2020-2021  **Five Star Gourmet Foods, Inc., v. Ready Pac Foods, Inc.,** Case No. 5:18-cv-2436-DDP-KK, United States District Court Central District of California. Provided expert services to Morgan, Lewis & Bockius LLP representing defendant Ready Pac Foods.

2019-2020  **Kolcraft Enterprises, Inc., v. Graco Children's Products Inc.,** Case No. 1:15-cv-07950, United States District Court for the Northern District of Illinois Eastern Division. Provided expert services to Meunier Carlin & Curfman LLC representing defendant Graco.

2019  **Radio Flyer Inc., v. American Plastic Toys, Inc.,** Case No. 1:19-Cv-05527, United States District Court for The Northern District of Illinois Eastern Division. Provided expert services to Barnes & Thornburg LLP representing patent owner Radio Flyer Inc.

2019  **Hunter Fan Company v. Luminex international Co., LTD.,** Civil Action No. 18-cv-344, United States District Court for the Western District of Wisconsin. Provided expert services to Baker, Donelson, Bearman, Caldwell & Berkowitz, PC representing plaintiff Hunter Fan.

2018-2021  **Nike Inc. v. Skechers USA Inc.**, Case No. Case No. 2:17-cv-08509-JAK(Ex), United States District Court Central District of California. Provided expert services to Banner & Witcoff, LTD. representing patent owner Nike.

2018  **Spigen Korea Co., Ltd. v. Modne, Inc., et al.**, Civil Action No. 3:17-cv-00771, United States District Court, Central District of California. Provided expert services to Stradling Yocca Carlson & Rauth, P.C. representing defendant Modne, Inc.

2018  **Stephen F. Evans & Roof N Box, Inc., v. Building Materials Corporation of America**, Civil Action No.: 16-CV-282-GBL-IDD, United States District Court for the Eastern District of Virginia. Provided expert services to Fitzpatrick, Cella, Harper & Scinto representing defendant Building Materials Corporation of America.

2017-2018  **Apple Inc., v. Samsung Electronics Co. Ltd., et** al, Case No. 11-CV-01846-LHK, United States District Court Northern District of California, San Jose Division. Provided expert services to WilmerHale and Morrison & Foerster LLP representing patent owner Apple Computer.

2017  **Bridgestone Brands, LLC v. BKT Tires Inc.**, Civil Action No. 3:17-cv-00771, United States District Court, Middle District of Tennessee, Nashville Division. Provided expert services to Covington & Burling LLP representing defendant BKT Tires Inc.

2017  **Pono Paani, LLC v. Belkin International, Inc.**, Civil Action No. 1:17-cv-00054-SS, United States District Court, Western District of Texas, Austin Division. Provided expert services to Meyertons, Hood, Kivlin, Kowert & Goetzel (MHKKG) representing plaintiff Pono Paani.

2016-2018  **Nike Inc. v. Skechers USA Inc.**, Case No. IPR2017-00621, United States Patent and Trademark Office Before the Patent Trial and Appeal Board. Provided expert services to Banner & Witcoff, LTD. representing patent owner Nike.

2016  **Snap-On, L.P. v. Harbor Freight**, Case No. 2:16-cv-01265-LA, United States District Court, Eastern District of Wisconsin, Milwaukee Division. Provided expert services to Quinn Emanuel Urquhart & Sullivan, LLP representing defendant Harbor Freight.

2015-2018    **Hinrichs v. Beats Electronics, LLC**, Case No. BC 533089, Superior Court of The State of California, County of Los Angeles. Provided expert services to Morrison & Foerster LLP representing defendant Beats.

2015-2017    **C&A Marketing Inc. v. GoPro Inc.**, Case No. 1:15-cv-7854-RMB-JS, United States District Court, District of New Jersey. Provided expert services to Morrison & Foerster LLP representing plaintiff C&A Marketing.

2015-2016    **Schluter Systems, L.P. v. Imre Batori and Progress Profiles**, Civil Act No. 1:15cv144 (CMH/IDD), United States District Court for the Eastern District of Virginia, Alexandria Division. Provided expert services to Fish & Richardson P.C. (Dallas) representing plaintiff Schluter Systems.

2015-2016    **Hamilton Beach, petitioner v. Courtesy Products, patent owner,** Cases IPR2014-01257 and 01258, United States Patent and Trademark Office, before the Patent Trial and Appeal Board. Provided expert services to Finnegan, Henderson, Farabow, Garrett & Dunner, LLP (Washington DC) representing patent owner Courtesy Products.

2014-15    **Caterpillar, Inc., petitioner, V. Miller International, Ltd., patent owner.** Case IPR2015-00416, Patent D673,982 S, United States Patent and Trademark Office, before the Patent Trial and Appeal Board. Provided expert services to Finnegan, Henderson, Farabow, Garrett & Dunner, LLP (Washington DC) representing petitioner Caterpillar, Inc.

2014-2018    **Pass and Seymour, Inc., Opposer, v. Lutron Electronics Co., Inc., Applicant**, Application Nos. 85/298,572,85/298,600, 85/298,606, Mark: Product Configuration for Light Dimmer Switch Opposition Nos. 91208865 (parent),91212529, 91212524. United States Patent and Trademark Office before The Trademark Trial and Appeal Board Provided expert services to McCarter English representing opposer.

2014-2017    **Dyson, Inc. v. SharkNinja Operating LLC**, Case No. 1:14-cv-00779, United States District Court for the Northern District of Illinois, Eastern Division. Provided expert services to Jones Day representing defendant Shark Ninja.

2014-15    **SkyHawke Technologies, LLC petitioner v. L&H Concepts, LLC patent owner**, Cases IPR2014-00437 & IPR2014-00438, United States Patent and Trademark Office, before the Patent Trial and Appeal Board. Provided expert services to Fish & Richardson P.C. (Austin) representing US 5,779,566 patent owner L&H Concepts, LLC.

2014    **Sunlight Supply Inc. v. Maverick Sun Inc.**, Case No. 2:13-cv-2052, United States District Court Western District of Washington at Seattle. Provided expert services to Betts Patterson Mines (Seattle) representing defendant Maverick Sun.

2013-14    **Nokia Corporation et al. v. HTC Corporation et al.**, Investigation Number 337-TA-847. United States International Trade Commission, Washington DC. Provided expert services to Finnegan, Henderson, Farabow, Garrett & Dunner, LLP (Washington DC) representing the defendant, HTC.

2013-14    **Ethicon Endo-Surgery, Inc. et al. v. Covidien Inc., et al.**, 11-cv-871 (S.D. Ohio). Served as the expert witness for the plaintiff, Ethicon, concerning alleged infringement of design patents US D661,801; US D661,802; US D661,803; and US D661,804. Provided expert services to Patterson Belknap Webb & Tyler LLP (NYC) representing plaintiff Ethicon.

| 2012 | **Emerson Electric Company v. Anaheim Manufacturing Company**, In the Matter of Certain Food Waste Disposers and Components and Packaging Thereof, Investigation Number 337-TA-838. United States International Trade Commission, Washington DC. Provided expert services to Dechert LLP (Philadelphia) representing defendant Anaheim. |
|------|------|
| 2012 | **Samsung Electronics (UK) LTD. v Apple Inc.**, Case No: HC 11 C 03050, In the High Court of Justice, Chancery Division Patents Court. Provided expert services to Morrison & Foerster LLP (San Francisco) and Freshfields Bruckhaus Deringer, (London) representing Apple computer. |

**Design Employment:**

| 2002-present | Alan Ball Industrial Design, Inc. (A.B.I.D.), Somerville, Massachusetts, President. |
|------|------|
| 2006-present | Margit Manufacturing Company, Somerville MA, President |
| 2011-2013 | Respirgames Inc., Somerville MA, Director of Product Development. |
| 2000-2002 | Ziba Boston LLC, Arlington, Massachusetts, Managing Director. |
| 1994-2000 | Shinola LLC, Somerville, MA, Founder and President. |
| 1992-2000 | Altitude Inc., Somerville, Massachusetts, Founder and Principal, Director of Design. |
| 1991-1992 | Herbst Lazar Bell, Inc., Cambridge, Massachusetts, Freelance Industrial Designer. |
| 1988-1991 | Design Continuum, Inc., Boston, Massachusetts, Industrial Designer. |
| 1987-1988 | Group Four Design Inc., Avon, Connecticut, Industrial Designer. |

**Education:**

| 2008 | IDSA Expert Witness Certification Seminar, Reston, VA. |
|------|------|
| 1981-1987 | Syracuse University, Syracuse NY, Bachelor of Industrial Design, Minor in Information Studies, 1987. Magna Cum Laude. |

**Awards, Honors and Other Activities:**

| 2007 | DIMe Mexican Design Industry Congress, featured keynote speaker. |
|------|------|
| 2005 | Best in Category, 2nd Annual HomeWorld Business® Housewares Design Awards, CSC-650 Slow Cooker, Cuisinart Inc. |
| 2004 | Innovations CES Design and Engineering Showcase Award, PepperPad Handheld Tablet Computer, Pepper Computer Inc. |
| 2002 | IDSA/BusinessWeek IDEA Gold Award, Xpressa IP Business Telephone, Pingtel Corporation. |
| 2000 | IDSA/BusinessWeek IDEA Silver Award, DeWalt Worksite Radio/Charger, Black and Decker, Inc. |

| | |
|---|---|
| 2000 | IDSA/BusinessWeek IDEA Silver Award, ID Research Process, PDT 7200 Barcode Scanner Terminal, Symbol Technologies, Inc. |
| 1999 | IDSA/BusinessWeek IDEA Bronze Award, Brita Cascade Water Filtration Pitcher, the Clorox Company. |
| 1998 | IDSA/BusinessWeek IDEA Gold Award, P300 Phaser Barcode Scanning Terminal, Symbol Technologies, Inc. |
| 1998 | IDSA/BusinessWeek IDEA Silver Award, LS2100 Hotshot Retail Barcode Scanner, Symbol Technologies, Inc. |
| 1998 | IDSA/BusinessWeek IDEA Silver Award, Cyclone Retail Scanner Concept, Symbol Technologies, Inc. |
| 1998 | IDSA/BusinessWeek IDEA Bronze Award, LeashLight Dog Leash w/integrated flashlight, Black and Decker, Inc. |
| 1998 | Bronze Bean Award: IDSA Boston Chapter, Award for leadership and contribution to the local design community. |
| 1997 | IDSA/BusinessWeek IDEA Gold Award, DLL 5010M Laser Barcode Scanner, Symbol Technologies, Inc. and Datalogic S.p.A. |
| 1997 | IDSA/BusinessWeek IDEA Bronze Award, Snake Light Outdoor Lanterns, Black and Decker, Inc. |
| 1997 | IDSA/BusinessWeek IDEA Bronze Award, DeWalt 12.0 Volt Flexible Floodlight, Black and Decker, Inc. |
| 1997 | IDSA NE Regional Conference Serious Fun Syracuse NY. Featured Speaker. |
| 1997 | Industrie Forum (iF) Seal for Design Excellence, PPT4600 Plato Barcode Scanning Terminal, Symbol Technologies, Inc. |
| 1997 | Industrie Forum (iF) Seal for Design Excellence, LS4000 Eclipse Retail Barcode Scanner, Symbol Technologies, Inc. and Datalogic S.p.A. |
| 1996 | IDSA/BusinessWeek IDEA Gold Award, PPT4600 Plato Barcode Scanning Terminal, Symbol Technologies, Inc. |
| 1996 | IDSA/BusinessWeek IDEA Silver Award, LS4000 Eclipse Retail Barcode Scanner, Symbol Technologies, Inc. |
| 1996 | IDSA/BusinessWeek IDEA Silver Award, PDT 4000 Zircon Barcode Scanning Terminal, Symbol Technologies, Inc. |
| 1987 | IDSA Student Merit Award. |

**US Design Patents (57):**

| | | |
|---|---|---|
| 2012 | D690,992 | Beverage Filter Stand, Eternal East (HK) Ltd. (Bonavita). |
| 2010 | D611,760 | Blender, Cuisinart (Conair Corporation). |
| 2009 | D586,807 | Hand-held Computer, Pepper Computer. |
| 2008 | D561,758 | Hand-held Computer, Pepper Computer. |
| 2008 | D575,578 | Slow Cooker, Cuisinart (Conair Corporation). |
| 2008 | D575,579 | Slow Cooker, Cuisinart (Conair Corporation). |

| | | |
|---|---|---|
| 2008 | D559,133 | Temperature Probe, Cuisinart (Conair Corporation). |
| 2007 | D553,427 | Food Processor, Cuisinart (Conair Corporation). |
| 2006 | D521,314 | Control knob for toaster, Cuisinart (Conair Corporation). |
| 2006 | D522,308 | Cooker, Cuisinart (Conair Corporation). |
| 2006 | D529,491 | Handheld Computer, Pepper Computer. |
| 2006 | D530,146 | Standmixer, Cuisinart (Conair Corporation). |
| 2006 | D532,644 | Toaster oven, Cuisinart (Conair Corporation). |
| 2006 | D533,390 | Toaster oven, Cuisinart (Conair Corporation). |
| 2006 | D534,189 | Frozen food maker, Cuisinart (Conair Corporation). |
| 2006 | D534,190 | Frozen food maker, Cuisinart (Conair Corporation). |
| 2006 | D554,637 | Handheld Computer, Pepper Computer. |
| 2005 | D510,675 | Coffee Urn, Cuisinart (Conair Corporation). |
| 2005 | D511,643 | Cooker, Cuisinart (Conair Corporation). |
| 2005 | D512,058 | Hand-held Computer, Pepper Computer. |
| 2005 | D507,149 | Blender Base, Cuisinart (Conair Corporation). |
| 2004 | D492,770 | Inhalation device, Glaxo Group Limited. |
| 2004 | D492,771 | Mouthpiece for an inhalation device, Glaxo Group Limited. |
| 2004 | D492,993 | Mouthpiece for an inhalation device, Glaxo Group Limited. |
| 2004 | D492,994 | Mouthpiece for an inhalation device, Glaxo Group Limited. |
| 2004 | D493,222 | Mouthpiece for an inhalation device, Glaxo Group Limited. |
| 2004 | D494,673 | Inhalation device, Glaxo Group Limited. |
| 2004 | D494,674 | Actuator body for an inhalation device, Glaxo Group Limited. |
| 2004 | D495,414 | Inhalation device, Glaxo Group Limited. |
| 2004 | D496,455 | Actuator body for an inhalation device, Glaxo Group Limited. |
| 2004 | D497,988 | Actuator body for an inhalation device, Glaxo Group Limited. |
| 2004 | D498,840 | Inhalation device, Glaxo Group Limited. |
| 2004 | D507,149 | Consumer blender base design, Cuisinart (Conair Corporation). |
| 2003 | D480,475 | Actuator body for an inhalation device, Glaxo Group Limited. |
| 2001 | D437,027 | Water filter reservoir, The Clorox Company. |
| 2001 | D438,524 | Telephone base, Pingtel Inc. |
| 2001 | D445,627 | Coffee maker, Black & Decker Inc. |
| 2001 | D445,795 | Game controller precision button, Acco Brands, Inc. |
| 2001 | D450,687 | Scroll wheel for a telephone base, Pingtel Inc. |
| 2001 | D451,091 | Bezel for a telephone base, Pingtel Inc. |
| 2000 | D418,714 | Water filtration pitcher, The Clorox Company. |
| 2000 | D419,027 | Water filtration pitcher, The Clorox Company. |
| 2000 | D425,980 | Hand-held tissue examination device, Assurance Medical, Inc. |

| 2000 | D435,084 | Water filter, The Clorox Company. |
| 2000 | D445,627 | Electric coffee maker housing, Black and Decker. |
| 1999 | D408,566 | Flexible Flashlight, Black and Decker Inc. |
| 1999 | D410,117 | Combination light and retractable leash, Black & Decker Inc. |
| 1999 | D414,171 | Optical Scanner, Symbol Technologies Inc. |
| 1999 | D416,247 | Game pad for laptop computers, Acco Brands, Inc. |
| 1999 | D417,934 | Combined mop head with squeegee, Easy Day Manufacturing Company. |
| 1998 | D391,250 | Ring mounted optical scanner, Symbol Technologies Inc. |
| 1997 | D378,295 | Binoculars, Essecson Associates, Inc. |
| 1997 | D382,359 | Miniature Lantern, Black and Decker Inc. |
| 1997 | D385,075 | Electric Iron, Black and Decker Inc. |
| 1997 | D388,076 | Optical Scanner, Symbol Technologies Inc. |
| 1996 | D370,478 | Combined optical scanner and portable terminal, Symbol Technologies Inc. |
| 1996 | D372,772 | Portable fan, Black and Decker Inc. |

**U.S. Utility Patents (11)**

| 2008 | 7,325,413 | Ice cream maker & dispenser apparatus, Cuisinart (Conair Corporation). |
| 2007 | 7,224,345 | Pad computer, Pepper Computer. |
| 2000 | 6,024,054 | Combined retractable leash and flashlight, Black & Decker Inc. |
| 2000 | 6,058,548 | Removable cleaning elements from mop, Easy Day Manufacturing Company. |
| 2000 | 6,098,886 | Glove-mounted System for reading bar code symbols, Symbol Technologies. |
| 1999 | 5,950,020 | Folding photographic method and apparatus, Polaroid Corporation. |
| 1999 Inc. | 5,979,764 | Hand-held electronic apparatus with pivoting display, Symbol Technologies |
| 1999 | 6,003,187 | Combination mop and wiper, Easy Day Manufacturing Company. |
| 1999 | 6,003,472 | Combined retractable leash and flashlight, Black & Decker Inc. |
| 1998 | 5,763,865 | Bar code reader terminal module, Symbol Technologies Inc. |
| 1997 | 5,610,386 | Portable optical scanning system, Symbol Technologies Inc. |

**Professional Affiliations:**

| 1983-present | Member Industrial Designs Society of America (IDSA). |
| 2004-2012 | Member, Design Management Institute (DMI). |
| 1994-2010 | Member, American Institute of Graphic Artists (AIGA). |
| 2004- 2008 | Member, Toastmasters International. |
| 1994-1999 | Member Color Marketing Group (CMG). |

# EXHIBIT 2

## ALAN D. BALL - LIST OF MATERIALS CONSIDERED

All documents and materials referenced or cited in this declaration.

### PATENTS AND FILE HISTORIES

U.S. Patent No. D883,279
U.S. Patent No. D947,842
U.S. Patent No. D962,936
Certified File History for U.S. Patent No. D883,279
Certified File History for U.S. Patent No. D947,842
Certified File History for U.S. Patent No. D962,936

### PLEADINGS AND COURT FILINGS - Civil Action No. 1 22-1377-MN (D. Del.)

Plaintiff Apple Inc.'s Complaint for Patent Infringement and Accompanying Exhibits, filed on October 20, 2022 (D.I. 1)
Defendant and Counterclaimant Masimo Corporation's Answer and Counterclaims, filed on December 12, 2022 (D.I. 31)

### DECLARATIONS

Declaration of Eric Jue in Support of Apple Inc.'s Motion for an Expedited Trial (Jan. 18, 2023)
Declaration of Peter Russell-Clarke in Support of Apple Inc.'s Motion for an Expedited Trial (Jan. 12, 2023)

### PHYSICAL SAMPLES

Masimo W1 Watch
Apple Watch Series 4
Apple Watch Series 5
Apple Watch Series 8
Apple Watch Ultra

### ADDITIONAL DOCUMENTS AND MATERIALS

*Apple Watch Series 1 – Technical Specifications*, Apple,
https://support.apple.com/kb/sp745?locale=en_US

*Apple Watch Series 4 – Technical Specifications*, Apple,
https://support.apple.com/kb/SP778?locale=en_US

*Apple Watch Series 5 – Technical Specifications*, Apple,
https://support.apple.com/kb/SP808?locale=en_US

*Apple Watch Series 8 – Technical Specifications*, Apple,
https://support.apple.com/kb/SP878?locale=en_US

*Apple Watch Ultra – Technical Specifications*, Apple,
https://support.apple.com/kb/SP879?locale=en_US

*Aries Watches Watch AW80 – Unisex*, https://allegro.pl/oferta/smartwatch-zegarek-ekg-
pulsoksymetr-termometr-pl-9927412179

*ECG PPG P11 Plus Smart Band Watch Body Temperature Heart Rate Blood Pressure Oxygen
Bracelet IP67 Waterproof Sport Fitness*, AliExpress,
https://www.aliexpress.us/item/3256801861931242.html?gatewayAdapt=glo2usa4itemAdapt
&_randl_shipto=US

Gary R. Bertoline, *Introduction to Graphic Communication for Engineers* (4th Ed.) (2009)

Geoffrey A. Fowler, Apple Watch Review: The Smartwatch Finally Makes Sense, The Wall Street
Journal (Apr. 8, 2015), https://www.wsj.com/articles/apple-watch-review-the-smartwatch-
finally-makes-sense-1428494495

Google Patents, https://patents.google.com/?assignee=apple+inc

Images of the Masimo W1 watch, as shown throughout this declaration

Images of Apple Watch Series 1 through 8 and Apple Watch Ultra, as shown throughout this
declaration

Nilay Patel, *Apple Watch Review*, The Verge (Apr. 8, 2015), https://www.theverge.com/a/apple-
watch-review

*Smartwatch ARIES WATCHES AW E80*, Gepard Watches,
https://gepardwatches.pl/pl/meskie/1630-smartwatch-aries-watches-aw-e80.html

*0.96 Inch Health Monitoring Smart Watch P11 Plus ECG+PPG Bracelet Heart Rate Blue tooth
Waterproof Wearable Devices Smart Bands*, Alibaba.com, https://www.alibaba.com/product-
detail/0-96-Inch-Health-Monitoring-
Smart_1600315358892.html?spm=a2700.7724857.0.0.7fac6ca930d1xN

# EXHIBIT 3

US00D883279S

(12) **United States Design Patent**   (10) **Patent No.:**   **US D883,279 S**

Akana et al.   (45) **Date of Patent:** **   May 5, 2020

(54) **ELECTRONIC DEVICE**

(71) Applicant: **Apple Inc.**, Cupertino, CA (US)

(72) Inventors: **Jody Akana**, San Francisco, CA (US); **Molly Anderson**, San Francisco, CA (US); **Bartley K. Andre**, Palo Alto, CA (US); **Shota Aoyagi**, San Francisco, CA (US); **Anthony Michael Ashcroft**, San Francisco, CA (US); **Marine C. Bataille**, San Francisco, CA (US); **Jeremy Bataillou**, San Francisco, CA (US); **Markus Diebel**, San Francisco, CA (US); **M. Evans Hankey**, San Francisco, CA (US); **Julian Hoenig**, San Francisco, CA (US); **Richard P. Howarth**, San Francisco, CA (US); **Jonathan P. Ive**, San Francisco, CA (US); **Julian Jaede**, San Francisco, CA (US); **Duncan Robert Kerr**, San Francisco, CA (US); **Peter Russell-Clarke**, San Francisco, CA (US); **Benjamin Andrew Shaffer**, San Jose, CA (US); **Mikael Silvanto**, San Francisco, CA (US); **Sung-Ho Tan**, San Francisco, CA (US); **Clement Tissandier**, San Francisco, CA (US); **Eugene Antony Whang**, San Francisco, CA (US); **Rico Zörkendörfer**, San Francisco, CA (US)

(73) Assignee: **Apple Inc.**, Cupertino, CA (US)

(**) Term: **15 Years**

(21) Appl. No.: **29/684,822**

(22) Filed: **Mar. 25, 2019**

**Related U.S. Application Data**

(63) Continuation of application No. 29/654,754, filed on Jun. 27, 2018.

(51) **LOC (12) Cl.** .............................................. **14-02**

(52) **U.S. Cl.**
USPC ........................................................ **D14/344**

(58) **Field of Classification Search**
USPC ... D14/138 R, 144, 341, 344, 358, 388, 218, D14/485–495; D10/30–39, 70, 98; D11/3, 4, 26, 93–94, 78.1, 79, 86; D24/167, 169, 186–187, 164
CPC ...... A41D 1/002; A41D 19/0034; G06F 1/04; G06F 1/08; G06F 1/10; G06F 1/14; G06F 1/1626; G06F 1/1628; G06F 1/163; G06F 1/1635; G06F 1/3203; G06Q 20/10; G06Q 20/12; G06Q 20/108; G06Q 20/145; H04B 1/3833; H04B 1/385; H04B 1/3888; H04M 1/02; H04M 1/03; H04M 1/04; H04M 1/05; H04M 1/667; H04M 1/6058; Y02B 60/1217
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,640,065 A | 2/1972 | Lederrey et al. | |
| D287,471 S | 12/1986 | Sato et al. | |
| 5,386,933 A | 2/1995 | Greene et al. | |
| D394,815 S | * 6/1998 | Jorss | ............................. D10/33 |
| D439,172 S | 3/2001 | Brzezinski | |
| 6,655,831 B1 | 12/2003 | Ruffieux | |
| D496,589 S | 9/2004 | Perrenoud | |
| 6,970,157 B2 | 11/2005 | Siddeeq | |
| D513,195 S | 12/2005 | Gruosi | |
| 7,004,469 B2 | 2/2006 | Von Goeben | |
| D528,439 S | 9/2006 | Burton | |
| D528,928 S | 9/2006 | Burton | |
| 7,106,197 B2 | 9/2006 | Gaiotto et al. | |
| D558,227 S | 12/2007 | Cho et al. | |
| D572,266 S | 7/2008 | Anderson et al. | |
| D574,735 S | 8/2008 | Landman et al. | |
| D578,922 S | 10/2008 | Hoshino | |
| D584,170 S | 1/2009 | Morrison | |
| D586,823 S | 2/2009 | Anderson et al. | |
| D589,375 S | 3/2009 | Tang | |
| D596,610 S | 7/2009 | Hou | |
| D616,417 S | 5/2010 | Liao | |
| 7,708,457 B2 | 5/2010 | Girardin et al. | |
| D637,094 S | 5/2011 | Cobbett et al. | |
| D637,918 S | 5/2011 | Cobbett et al. | |
| D649,069 S | * 11/2011 | Galli | ............................. D10/30 |
| D650,706 S | 12/2011 | Zanella et al. | |



**US D883,279 S**

Page 2

| | | | | |
|---|---|---|---|---|
| D666,503 | S | 9/2012 | Bulgari | |
| D672,256 | S * | 12/2012 | Behar | D10/39 |
| D681,483 | S | 5/2013 | Biegert et al. | |
| D699,701 | S | 2/2014 | Kim | |
| 8,996,064 | B2 * | 3/2015 | Heil-Brice | H04M 1/15 455/515 |
| D728,624 | S | 5/2015 | Akana et al. | |
| 9,065,921 | B2 * | 6/2015 | Merenda | B65H 75/48 |
| D741,726 | S | 10/2015 | Akana et al. | |
| D769,869 | S | 10/2016 | Zhou et al. | |
| D789,545 | S * | 6/2017 | Pippel | D24/186 |
| D816,667 | S * | 5/2018 | Hardi | D14/344 |
| 10,120,109 | B2 * | 11/2018 | Ni | G02B 5/001 |
| D835,521 | S * | 12/2018 | Berthier | D10/32 |
| D847,664 | S * | 5/2019 | Mutsch | D10/39 |
| 10,396,252 | B2 * | 8/2019 | Lee | H01L 25/0753 |
| D861,020 | S * | 9/2019 | Chaudhri | D14/486 |
| D863,295 | S * | 10/2019 | Hardi | D14/344 |
| D865,760 | S * | 11/2019 | Beristain | D14/344 |
| 10,474,192 | B2 * | 11/2019 | Song | H01R 13/6273 |
| D870,103 | S * | 12/2019 | Akana | D14/341 |
| 2010/0061191 | A1 | 3/2010 | Chen | |
| 2015/0296963 | A1 * | 10/2015 | Byun | A45F 5/02 224/191 |
| 2017/0046451 | A1 * | 2/2017 | Akana | G06F 17/50 |

## FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| DE | 10229050 | C1 | 6/2003 |
| EP | 1098231 | A1 | 5/2001 |
| WO | WO-DM/066491-004 | | 3/2005 |
| WO | WO-DM072215 | | 9/2009 |
| WO | WO-DM/077452-004 | | 6/2011 |
| WO | WO-2014135709 | A2 | 9/2014 |

## OTHER PUBLICATIONS

Apple Watch Series 5, Apple's latest Apple Watch, with always-on display and built-in compass, posted Dec. 19, 2019, [retrieved Dec. 19, 2019]. Retrieved from Internet, <URL: https://www.macrumors.com/roundup/apple-watch/ >.*

Apple Watch Series 5 Release Date, Specs: Glucose Sensor Is One of the New Health Features?, posted Feb. 22, 2019, [retrieved Dec. 19, 2019]. Retrieved from Internet, <URL: https://www.econotimes.com/Apple-Watch-Series-5-Release-Date-Specs-Glucose-Sensor-Is-One-of-the-New-Health-Features-1501562 >.*

Concept: an Apple Watch Series 5 neither round nor square, deep black or 18 carat gold, posted May 30, 2019, [retrieved Dec. 19, 2019]. Retrieved from Internet, <URL: https://www.mac4ever.com/actu/143936_concept-une-apple-watch-series-5-ni-ronde-ni-carree-noir-profond-ou-or-18-carats >.*

Alvarez, Edgar, "Basis Peak to get its smartwatch-like features in December," engadget.com,< http://www.engadget.com/2014/11/20/basis-peak-new-features/>, dated Nov. 20, 2014, accessed Dec. 15, 2014.

Cool Material, "Braun Square Digital Watch,"< http://web.archive.org/web/20111125033014/http://coolmaterial.com/style/braun-square-digital-watch/>, dated Nov. 25, 2011, accessed Dec. 18, 2014.

Emily, "Nixon—The Newton Digital,"< http://www.freshnessmag.com/2009/09/08/nixon-the-newton-digital/>, freshnessmag.com dated Sep. 8, 2009, accessed Oct. 9, 2014.

Fitbit, "Fitbit Surge™ Fitness Super Watch"< https://www.fitbit.com/surge>, accessed Dec. 15, 2014.

geekbuying.com, "Makibes unisex red led digital wrist watch with square case silicone watchband—white,"< http://www.geekbuying.com/item/Unisex-Red-LED-Digital-Wrist-Watch-with-Square-Case-Silicone-Watchband---White-326443.html>, accessed Oct. 9, 2014.

Hodinkee.com, "Apple iPod Nano Now Available With Mickey Mouse Dial, Also Cheesy, Mechanically Inaccurate Open-Worked Dial,"< http://web.archive.org/web/20111006043916/http://www.hodinkee.com/blog/2011/10/5/apple-ipod-nano-now-available-with-mickey-mouse-dial-also-ch.html>, dated Oct. 6, 2011, accessed Dec. 18, 2014.

Homego, "M6 Silver Smart Watch Cell Phone 1.54 inch Bluetooth 3.0 Dialer Outdoor Sports Pedometer," amazon.com,< http://www.amazon.com/Silver-Bluetooth-Dialer-Outdoor- Pedometer/dp/B00MQTBGK6>, accessed Dec. 15, 2014.

Ikepod, "Original Ikepod Watch With GMT—Marc Newson Design," Watchbox.be,< http://www.watchbox.be/prod/Others-Watches/Marc%20Newson%20Design/item7165.htm#.VJL.m2fAo5D8>, accessed Dec. 17, 2014.

LG Life's Good, "LG G Watch (W100),"< http://www.lg.com/us/smart-watches/lg-W100-g-watch>, accessed Dec. 18, 2014.

Metawatch, "Frame—Black (MW3005),"< http://meta.watch/collections/smartwatch-all/products/frame-ss-black-leather>, accessed Dec. 15, 2014.

Omate, "Omate TrueSmart: Water-resistant standalone Smartwatch 2.0,"< http://www.kickstarter.com/projects/omate/omate-truesmart-water-resistant-standalone-smartwa>, dated Aug. 21, 2013, accessed Oct. 8, 2014.

Omate, "The TrueSmart™ is the world's first standalone smartwatch 2.0 running on top of Android and OUI 2.0,"< http://www.omate.com/product.html>, accessed Dec. 15, 2014.

Pebble, "Pebble Smartwatch," getpebble.com,< https://getpebble.com/checkout>, accessed Dec. 15, 2014.

Samsung, "Samsung Gear™ 2 Charcoal Black SM-R3800VSAXAR," < http://www.samsung.com/us/mobile/wearable-tech/SM-R3800VSAXAR>, accessed Dec. 15, 2014.

Samsung, "Samsung Gear S™, (Sprint), Black SM-R750PZKASPR," < http://www.samsung.com/us/mobile/wearable-tech/SM-R750PZKASPR>, accessed Dec. 15, 2014.

Samsung, "Galaxy Gear™ Live, Black SM-R3820ZKAXAR," < http://www.samsung.com/us/mobile/wearable-tech/SM-R3820ZKAXAR>, accessed Dec. 15, 2014.

Sony, "SmartWatch 3 SWR50,"< http://www.sonymobile.com/us/products/smartwear/smartwatch-3-swr50/>, accessed Dec. 15, 2014.

Sony, "SmartWatch,"< http://www.sonymobile.com/us/products/accessories/smartwatch/>, accessed Dec. 15, 2014.

Stables, James, "Clevercare smartwatch aims to help Alzheimer's suffers and carers: Revamped Sony SmartWatch 2 designed for users that need care," Wearable News,< http://www.wareable.com/wearable-tech/clevercare-smartwatch-aims-to-help-alzheimers-suffers-and-carers-585>, dated Dec. 15, 2014.

Team Luxe, "Collector's Edition: Hermes Carre H Watch," Luxpresso, < http://luxpresso.com/news-couture/collectors-edition-hermes-carre-h-watch/2814>, dated Jan. 10, 2011, accessed Dec. 15, 2014.

Ted Baker, "Ted Baker Men's TE1054 Time Flies Contemporary Square Digital Case Watch,"< http://www.amazon.com/Ted-Baker-TE1054-Contemporary-Digital/dp/B0045CRTYO%3F SubscriptionId%3DAKIAJ3U4YRIBWCGGKZ2A%26tag%3Dfrases365-20%26linkCode%3Dsp1%26camp%3D2025%26creative%3D165953%26creativeASIN%3DB0045CRTYO>, accessed Oct. 9, 2014.

Velazco, Chris, "ASUS ZenWatch review: subtle and stylish, with a few shortcomings," Engadget.com,< http://www.engadget.com/2014/12/11/asus-zenwatch-review/>, dated Dec. 11, 2014 accessed Dec. 15, 2014.

Watches Infoniac.com, "Hermes Carre H Watch—Extremely Contemporary Design,"< http://watches.infoniac.com/carre-h-watch-hermes.html>, dated Aug. 13, 2010, accessed Dec. 18, 2014.

Watchismo, "Braun BN0042 Black Date Leather,"< http://web.archive.org/web/20130815073830/http://www.watchismo.com/braun-bn0042bkbk.aspx>, dated Aug. 15, 2013, accessed Dec. 18, 2014.

* cited by examiner

*Primary Examiner* — Karen E Kearney
*Assistant Examiner* — Kristin E Reed
(74) *Attorney, Agent, or Firm* — Sterne, Kessler, Goldstein & Fox P.L.L.C.

(57)          **CLAIM**

The ornamental design for an electronic device, as shown and described.

**DESCRIPTION**

FIG. **1** is a bottom front perspective view of an electronic device showing the claimed design;

**US D883,279 S**

Page 3

FIG. **2** is a bottom rear perspective view thereof;
FIG. **3** is a front view thereof;
FIG. **4** is a rear view thereof;
FIG. **5** is a left side view thereof;
FIG. **6** is a right side view thereof;
FIG. **7** is a top view thereof;
FIG. **8** is a bottom view thereof; and,
FIG. **9** is a bottom front perspective reference view thereof showing the electronic device in an environment in which it may be used.
The broken lines in the figures show portions of the electronic device and environment that form no part of the claimed design.

**1 Claim, 7 Drawing Sheets**

**U.S. Patent**          May 5, 2020          Sheet 1 of 7          US D883,279 S



*FIG. 1*



*FIG. 2*



*FIG. 3*



*FIG. 4*




*FIG. 5*



*FIG. 6*



*FIG. 7*



*FIG. 8*



*FIG. 9*

# EXHIBIT 4

Replacement Sheet
Sheet 1 of 7
Title: ELECTRONIC DEVICE
Appl. No. 29/684,822; Filed: March 25, 2019
Inventors: AKANA et al.
Docket No.: 3607.2060003(P38133USC3)



*FIG. 1*

Replacement Sheet
Sheet 2 of 7
Title: ELECTRONIC DEVICE
Appl. No. 29/684,822; Filed: March 25, 2019
Inventors: AKANA et al.
Docket No.: 3607.2060003(P38133USC3)



*FIG. 2*

Replacement Sheet
Sheet 3 of 7
Title: ELECTRONIC DEVICE
Appl. No. 29/684,822; Filed: March 25, 2019
Inventors: AKANA et al.
Docket No.: 3607.2060003(P38133USC3)



*FIG. 3*

Replacement Sheet
Sheet 4 of 7
Title: ELECTRONIC DEVICE
Appl. No. 29/684,822; Filed: March 25, 2019
Inventors: AKANA et al.
Docket No.: 3607.2060003(P38133USC3)



*FIG. 4*

Replacement Sheet
Sheet 5 of 7
Title: ELECTRONIC DEVICE
Appl. No. 29/684,822; Filed: March 25, 2019
Inventors: AKANA et al.
Docket No.: 3607.2060003(P38133USC3)




FIG. 5



FIG. 6

Replacement Sheet
Sheet 6 of 7
Title: ELECTRONIC DEVICE
Appl. No. 29/684,822; Filed: March 25, 2019
Inventors: AKANA et al.
Docket No.: 3607.2060003(P38133USC3)



**FIG. 7**



**FIG. 8**

Replacement Sheet
Sheet 7 of 7
Title: ELECTRONIC DEVICE
Appl. No. 29/684,822; Filed: March 25, 2019
Inventors: AKANA et al.
Docket No.: 3607.2060003(P38133USC3)



*FIG. 9*

# EXHIBIT 5

US00D947842S

(12) **United States Design Patent** (10) Patent No.: **US D947,842 S**
Akana et al. (45) Date of Patent: ** **Apr. 5, 2022**

(54) **ELECTRONIC DEVICE**

(71) Applicant: **Apple Inc.**, Cupertino, CA (US)

(72) Inventors: **Jody Akana**, San Francisco, CA (US); **Molly Anderson**, San Francisco, CA (US); **Bartley K. Andre**, Palo Alto, CA (US); **Shota Aoyagi**, San Francisco, CA (US); **Anthony Michael Ashcroft**, San Francisco, CA (US); **Marine C. Bataille**, San Francisco, CA (US); **Jeremy Bataillou**, San Francisco, CA (US); **Markus Diebel**, San Francisco, CA (US); **M. Evans Hankey**, San Francisco, CA (US); **Julian Hoenig**, San Francisco, CA (US); **Richard P. Howarth**, San Francisco, CA (US); **Jonathan P. Ive**, San Francisco, CA (US); **Julian Jaede**, San Francisco, CA (US); **Duncan Robert Kerr**, San Francisco, CA (US); **Peter Russell-Clarke**, San Francisco, CA (US); **Benjamin Andrew Shaffer**, San Jose, CA (US); **Mikael Silvanto**, San Francisco, CA (US); **Sung-Ho Tan**, Vienna (AT); **Clement Tissandier**, San Francisco, CA (US); **Eugene Antony Whang**, San Francisco, CA (US); **Rico Zörkendörfer**, San Francisco, CA (US)

(73) Assignee: **Apple Inc.**, Cupertino, CA (US)

(**) Term: **15 Years**

(21) Appl. No.: **29/816,024**

(22) Filed: **Nov. 18, 2021**

**Related U.S. Application Data**

(63) Continuation of application No. 29/780,292, filed on Apr. 23, 2021, which is a continuation of application
(Continued)

(51) **LOC (13) Cl.** ............................................. **14-02**

(52) **U.S. Cl.**
USPC ....................................................... **D14/344**

(58) **Field of Classification Search**
USPC ............. D10/30, 31, 32, 38, 39; D14/138 R, D14/138 G, 144, 341, 344, 346, 388, 389, D14/390
(Continued)

(56) **References Cited**

U.S. PATENT DOCUMENTS

D649,069 S * 11/2011 Galli ............................. D10/30
D728,624 S 5/2015 Akana et al.
(Continued)

FOREIGN PATENT DOCUMENTS

CN 305445559 11/2019
CN 305478027 12/2019
(Continued)

OTHER PUBLICATIONS

Ivan, "Huawei Watch GT 2 Pro review," gsmarena.com, dated Sep. 20, 2020. <https://www.gsmarena.com/huawei_watch_gt2_pro_review-news-45285.php>.

*Primary Examiner* — Joseph Kukella
(74) *Attorney, Agent, or Firm* — Sterne, Kessler, Goldstein & Fox P.L.L.C.

(57) **CLAIM**

The ornamental design for an electronic device, as shown and described.

**DESCRIPTION**

FIG. **1** is a bottom front perspective view of an electronic device showing the claimed design;
FIG. **2** is a bottom rear perspective view thereof;
FIG. **3** is a front view thereof;
FIG. **4** is a rear view thereof;
FIG. **5** is a left side view thereof;
FIG. **6** is a right side view thereof;
(Continued)



**US D947,842 S**

Page 2

FIG. **7** is a top view thereof;
FIG. **8** is a bottom view thereof; and,
FIG. **9** is a bottom front perspective view thereof showing the electronic device in an environment in which it may be used.

The broken lines in the figures show portions of the electronic device and environment that form no part of the claimed design.

**1 Claim, 7 Drawing Sheets**

**Related U.S. Application Data**

No. 29/684,825, filed on Mar. 25, 2019, now Pat. No. Des. 917,470, which is a continuation of application No. 29/654,754, filed on Jun. 27, 2018, now Pat. No. Des. 882,563.

(58) **Field of Classification Search**
CPC ...... G04G 17/00; G04G 17/045; G04G 17/08; G04G 17/083; G04G 21/00; G04G 21/08; G04G 99/006
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| D759,120 | S | | 6/2016 | Akana et al. |
| D768,634 | S | | 10/2016 | Akana et al. |
| D782,537 | S | | 3/2017 | Akana et al. |
| D789,545 | S | * | 6/2017 | Pippel ......................... D24/186 |
| D816,524 | S | | 5/2018 | Akana et al. |
| D816,667 | S | * | 5/2018 | Hardi ......................... D14/344 |
| D863,295 | S | * | 10/2019 | Hardi ......................... D14/344 |
| D882,565 | S | * | 4/2020 | Akana ......................... D14/344 |
| D883,279 | S | | 5/2020 | Akana et al. |
| D894,192 | S | * | 8/2020 | Akana ......................... D14/439 |
| D900,809 | S | * | 11/2020 | Gao ......................... D14/344 |
| D917,470 | S | * | 4/2021 | Akana ......................... D14/344 |
| D923,004 | S | * | 6/2021 | Gao ......................... D14/344 |
| D924,240 | S | * | 7/2021 | Akana ......................... D14/439 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CN | 305723203 | 4/2020 |
| CN | 305723211 | 4/2020 |
| CN | 305885217 | 6/2020 |
| CN | 305885218 | 6/2020 |
| CN | 305945726 | 7/2020 |
| CN | 306045664 | 9/2020 |
| CN | 306064357 | 9/2020 |
| CN | 306077480 | 9/2020 |
| CN | 306091473 | 10/2020 |
| CN | 306139204 | 10/2020 |
| CN | 306148267 | 11/2020 |
| CN | 306173790 | 11/2020 |
| CN | 306272401 | 1/2021 |
| CN | 306313721 | 2/2021 |
| CN | 306389855 | 3/2021 |
| CN | 306400228 | 3/2021 |
| CN | 306458843 | 4/2021 |
| CN | 306520137 | 5/2021 |
| CN | 306568831 | 5/2021 |
| CN | 306669521 | 7/2021 |
| EM | 008435762-0001 | 7/2021 |
| EM | 008607378-0002 | 7/2021 |
| GB | 9006578860-0001 | 6/2019 |
| KR | 301056449.0000 | 4/2020 |
| KR | 301064289.0000 | 6/2020 |
| KR | 301067863.0000 | 7/2020 |

* cited by examiner



*FIG. 1*



*FIG. 2*



*FIG. 3*



*FIG. 4*



FIG. 5          FIG. 6



*FIG. 7*



*FIG. 8*



*FIG. 9*

# EXHIBIT 6

Replacement Sheet
Sheet 84 of 7
Title: ELECTRONIC DEVICE
Appl. No. 29/816,024; Filed: November 18, 2021
Inventors: AKANA et al.
Docket No.: 3607.2060012(P38133USC12)



FIG. 1

Replacement Sheet
Sheet 57
Title: ELECTRONIC DEVICE
Appl. No. 29/816,024; Filed: November 18, 2021
Inventors: AKANA et al.
Docket No.: 3607.2060012(P38133USC12)



*FIG. 2*

Replacement Sheet
Sheet 7
Title: ELECTRONIC DEVICE
Appl. No. 29/816,024; Filed: November 18, 2021
Inventors: AKANA et al.
Docket No.: 3607.2060012(P38133USC12)



*FIG. 3*

Replacement Sheet
Sheet 7
Title: ELECTRONIC DEVICE
Appl. No. 29/816,024; Filed: November 18, 2021
Inventors: AKANA et al.
Docket No.: 3607.2060012(P38133USC12)



*FIG. 4*

Replacement Sheet
Sheet 3 of 7
Title: ELECTRONIC DEVICE
Appl. No. 29/816,024; Filed: November 18, 2021
Inventors: AKANA et al.
Docket No.: 3607.2060012(P38133USC12)



*FIG. 5*



*FIG. 6*

Replacement Sheet
Sheet 7 of 7
Title: ELECTRONIC DEVICE
Appl. No. 29/816,024; Filed: November 18, 2021
Inventors: AKANA et al.
Docket No.: 3607.2060012(P38133USC12)



FIG. 7



FIG. 8

Replacement Sheet
Sheet 90 of 7
Title: ELECTRONIC DEVICE
Appl. No. 29/816,024; Filed: November 18, 2021
Inventors: AKANA et al.
Docket No.: 3607.2060012(P38133USC12)



*FIG. 9*

# EXHIBIT 7

US00D962936S

(12) **United States Design Patent**     (10) Patent No.:     **US D962,936 S**
Akana et al.                             (45) Date of Patent:     **       Sep. 6, 2022**

(54) **ELECTRONIC DEVICE**

(71) Applicant: **Apple Inc.**, Cupertino, CA (US)

(72) Inventors: **Jody Akana**, San Francisco, CA (US);
**Molly Anderson**, San Francisco, CA
(US); **Bartley K. Andre**, Palo Alto, CA
(US); **Shota Aoyagi**, San Francisco, CA
(US); **Anthony Michael Ashcroft**, San
Francisco, CA (US); **Marine C.
Bataille**, San Francisco, CA (US);
**Jeremy Bataillou**, San Francisco, CA
(US); **Markus Diebel**, San Francisco,
CA (US); **M. Evans Hankey**, San
Francisco, CA (US); **Julian Hoenig**,
San Francisco, CA (US); **Richard P.
Howarth**, San Francisco, CA (US);
**Jonathan P. Ive**, San Francisco, CA
(US); **Julian Jaede**, San Francisco, CA
(US); **Duncan Robert Kerr**, San
Francisco, CA (US); **Peter
Russell-Clarke**, San Francisco, CA
(US); **Benjamin Andrew Shaffer**, San
Jose, CA (US); **Mikael Silvanto**, San
Francisco, CA (US); **Sung-Ho Tan**,
Vienna (AT); **Clement Tissandier**, San
Francisco, CA (US); **Eugene Antony
Whang**, San Francisco, CA (US); **Rico
Zörkendörfer**, San Francisco, CA (US)

(73) Assignee: **Apple Inc.**, Cupertino, CA (US)

(**) Term: **15 Years**

(21) Appl. No.: **29/816,025**

(22) Filed: **Nov. 18, 2021**

**Related U.S. Application Data**

(63) Continuation of application No. 29/780,292, filed on
Apr. 23, 2021, now Pat. No. Des. 949,146, which is
(Continued)

(51) **LOC (13) Cl.** ............................................. **14-02**

(52) **U.S. Cl.**
USPC ...................................................... **D14/344**
(58) **Field of Classification Search**
USPC ............. D10/30, 31, 32, 38, 39; D14/138 R,
D14/138 G, 144, 341, 344, 346, 388, 389,
D14/390
(Continued)

(56) **References Cited**

U.S. PATENT DOCUMENTS

D728,624 S     5/2015   Akana et al.
D759,120 S     6/2016   Akana et al.
(Continued)

FOREIGN PATENT DOCUMENTS

CN     305445559     11/2019
CN     305478027     12/2019
(Continued)

OTHER PUBLICATIONS

Ivan, "Huawei Watch GT 2 Pro review," gsmarena.com, dated Sep.
20, 2020. <https://www.gsmarena.com/huawei_watch_gt2_pro_
review-news-45285.php>.

*Primary Examiner* — Joseph Kukella
(74) *Attorney, Agent, or Firm* — Sterne, Kessler,
Goldstein & Fox P.L.L.C.

(57) **CLAIM**

The ornamental design for an electronic device, as shown
and described.

**DESCRIPTION**

FIG. **1** is a bottom front perspective view of an electronic
device showing the claimed design;
FIG. **2** is a bottom rear perspective view thereof;
FIG. **3** is a front view thereof;
FIG. **4** is a rear view thereof;
FIG. **5** is a left side view thereof;
FIG. **6** is a right side view thereof;
(Continued)



**US D962,936 S**

Page 2

FIG. **7** is a top view thereof;
FIG. **8** is a bottom view thereof; and,
FIG. **9** is a bottom front perspective view thereof showing the electronic device in an environment in which it may be used.

The broken lines in the figures show portions of the electronic device and environment that form no part of the claimed design.

**1 Claim, 7 Drawing Sheets**

**Related U.S. Application Data**

a continuation of application No. 29/684,825, filed on Mar. 25, 2019, now Pat. No. Des. 917,470, which is a continuation of application No. 29/654,754, filed on Jun. 27, 2018, now Pat. No. Des. 882,563.

(58) **Field of Classification Search**
CPC ...... G04G 17/00; G04G 17/045; G04G 17/08; G04G 17/083; G04G 21/00; G04G 21/08; G04G 99/006
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| D768,634 | S | | 10/2016 | Akana et al. | |
| D782,537 | S | | 3/2017 | Akana et al. | |
| D816,524 | S | | 5/2018 | Akana et al. | |
| D883,279 | S | | 5/2020 | Akana et al. | |
| D894,192 | S | * | 8/2020 | Akana | D14/344 |
| D899,429 | S | * | 10/2020 | Akana | D14/439 |
| D900,809 | S | * | 11/2020 | Gao | D14/344 |
| D919,617 | S | * | 5/2021 | Akana | D14/344 |
| D923,002 | S | * | 6/2021 | Hong | D14/344 |
| D924,240 | S | * | 7/2021 | Akana | D14/344 |
| D939,512 | S | * | 12/2021 | Akana | D14/439 |
| D947,841 | S | * | 4/2022 | Akana | D14/344 |
| D947,842 | S | * | 4/2022 | Akana | D14/344 |
| D949,144 | S | * | 4/2022 | Akana | D14/344 |
| D949,145 | S | * | 4/2022 | Akana | D14/344 |
| D949,146 | S | * | 4/2022 | Akana | D14/344 |
| D953,324 | S | * | 5/2022 | Akana | D14/344 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CN | 305723203 | 4/2020 |
| CN | 305723211 | 4/2020 |
| CN | 305885217 | 6/2020 |
| CN | 305885218 | 6/2020 |
| CN | 305945726 | 7/2020 |
| CN | 306045664 | 9/2020 |
| CN | 306064357 | 9/2020 |
| CN | 306077480 | 9/2020 |
| CN | 306091473 | 10/2020 |
| CN | 306139204 | 10/2020 |
| CN | 306148267 | 11/2020 |
| CN | 306173790 | 11/2020 |
| CN | 306272401 | 1/2021 |
| CN | 306313721 | 2/2021 |
| CN | 306389855 | 3/2021 |
| CN | 306400228 | 3/2021 |
| CN | 306458843 | 4/2021 |
| CN | 306520137 | 5/2021 |
| CN | 306568831 | 5/2021 |
| CN | 306669521 | 7/2021 |
| EM | 008435762-0001 | 7/2021 |
| EM | 008607378-0002 | 7/2021 |
| GB | 9006578860-0001 | 6/2019 |
| KR | 301056449.0000 | 4/2020 |
| KR | 301064289.0000 | 6/2020 |
| KR | 301067863.0000 | 7/2020 |

* cited by examiner

**U.S. Patent**          Sep. 6, 2022          Sheet 1 of 7          US D962,936 S



*FIG. 1*



FIG. 2



*FIG. 3*



FIG. 4



*FIG. 5*



*FIG. 6*



*FIG. 7*



*FIG. 8*



*FIG. 9*

# EXHIBIT 8

Replacement Sheet
Sheet 127
Title: ELECTRONIC DEVICE
Appl. No. 29/816,025; Filed: November 18, 2021
Inventors: AKANA et al.
Docket No.: 3607.2060013(P38133USC13)



**FIG. 1**

Replacement Sheet
Sheet 137
Title: ELECTRONIC DEVICE
Appl. No. 29/816,025; Filed: November 18, 2021
Inventors: AKANA et al.
Docket No.: 3607.2060013(P38133USC13)



**FIG. 2**

Replacement Sheet
Sheet 17
Title: ELECTRONIC DEVICE
Appl. No. 29/816,025; Filed: November 18, 2021
Inventors: AKANA et al.
Docket No.: 3607.2060013(P38133USC13)



*FIG. 3*

Replacement Sheet
Sheet 4 of 7
Title: ELECTRONIC DEVICE
Appl. No. 29/816,025; Filed: November 18, 2021
Inventors: AKANA et al.
Docket No.: 3607.2060013(P38133USC13)



FIG. 4

Replacement Sheet
Sheet 4 of 7
Title: ELECTRONIC DEVICE
Appl. No. 29/816,025; Filed: November 18, 2021
Inventors: AKANA et al.
Docket No.: 3607.2060013(P38133USC13)



*FIG. 5*



*FIG. 6*

Replacement Sheet
Sheet 7 of 7
Title: ELECTRONIC DEVICE
Appl. No. 29/816,025; Filed: November 18, 2021
Inventors: AKANA et al.
Docket No.: 3607.2060013(P38133USC13)



*FIG. 7*



*FIG. 8*

Title: ELECTRONIC DEVICE
Appl. No. 29/816,025; Filed: November 18, 2021
Inventors: AKANA et al.
Docket No.: 3607.2060013(P38133USC13)



*FIG. 9*

# EXHIBIT 9

US00D728624S

(12) **United States Design Patent** (10) Patent No.: **US D728,624 S**

Akana et al. (45) Date of Patent: ** **May 5, 2015**

(54) **ELECTRONIC DEVICE**

(71) Applicant: **Apple Inc.**, Cupertino, CA (US)

(72) Inventors: **Jody Akana**, San Francisco, CA (US); **Bartley K. Andre**, Palo Alto, CA (US); **Shota Aoyagi**, San Francisco, CA (US); **Anthony Michael Ashcroft**, San Francisco, CA (US); **Jeremy Bataillou**, San Francisco, CA (US); **Daniel J. Coster**, San Francisco, CA (US); **Daniele De Iuliis**, San Francisco, CA (US); **M. Evans Hankey**, San Francisco, CA (US); **Julian Hoenig**, San Francisco, CA (US); **Richard P. Howarth**, San Francisco, CA (US); **Jonathan P. Ive**, San Francisco, CA (US); **Duncan Robert Kerr**, San Francisco, CA (US); **Marc A. Newson**, London (GB); **Matthew Dean Rohrbach**, San Francisco, CA (US); **Peter Russell-Clarke**, San Francisco, CA (US); **Benjamin Andrew Shaffer**, San Jose, CA (US); **Mikael Silvanto**, San Francisco, CA (US); **Christopher J. Stringer**, Woodside, CA (US); **Eugene Antony Whang**, San Francisco, CA (US); **Rico Zörkendörfer**, San Francisco, CA (US)

(73) Assignee: **Apple Inc.**, Cupertino, CA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/499,042**

(22) Filed: **Aug. 11, 2014**

(51) **LOC (10) Cl.** .............................................. **14-03**

(52) **U.S. Cl.**
USPC ...................................................... **D14/496**

(58) **Field of Classification Search**
CPC ............ H04J 11/00; H04J 13/00; H04J 14/00
USPC ........ D14/496, 401, 435, 474, 483, 217, 137, D14/138, 160, 168, 356, 203.1–203.8, 507; 345/156, 169, 173–179, 905; 715/727–729, 864; 710/1, 5, 8; 713/1, 713/600; 455/1.1, 1.7, 73, 344–347, 93, 95, 455/3.01–3.06, 550.1, 573.1; 370/342–344; 369/1, 2, 6–12; 463/43–47; 273/148 B;

D10/30, 31, 38, 128
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

3,640,065 A    2/1972  Lederrey et al.
(Continued)

FOREIGN PATENT DOCUMENTS

DE        10229050 C1      6/2003
(Continued)

OTHER PUBLICATIONS

Alvarez, Edgar, "Basis Peak to get its smartwatch-like features in December," engadget.com, <http://www.engadget.com/2014/11/20/basis-peak-new-features/>, dated Nov. 20, 2014, accessed Dec. 15, 2014.
(Continued)

*Primary Examiner* — Prabhakar Deshmukh

(74) *Attorney, Agent, or Firm* — Sterne, Kessler, Goldstein & Fox P.L.L.C.

(57) **CLAIM**

The ornamental design for an electronic device, as shown and described.

**DESCRIPTION**

FIG. **1** is a bottom front perspective view of an electronic device showing our new design;
FIG. **2** is a bottom rear perspective view thereof;
FIG. **3** is a front view thereof;
FIG. **4** is a rear view thereof;
FIG. **5** is a left side view thereof;
FIG. **6** is a right side view thereof;
FIG. **7** is a top view thereof;
FIG. **8** is a bottom view thereof; and,
FIG. **9** is a top front perspective reference view of the electronic device of the present invention showing our new design in an environment in which it may be used.
The oblique shade lines in the Figures show a transparent, reflective, or shiny surface, and not surface ornamentation.

**1 Claim, 7 Drawing Sheets**



**US D728,624 S**

Page 2

(56)                **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| D287,411 | S | 12/1986 | Sato et al. | |
| 5,386,933 | A * | 2/1995 | Greene et al. | 224/219 |
| D439,172 | S | 3/2001 | Brzezinski | |
| 6,655,831 | B1 | 12/2003 | Ruffieux | |
| D496,589 | S | 9/2004 | Perrenoud | |
| 6,970,157 | B2 * | 11/2005 | Siddeeq | 345/168 |
| D513,195 | S | 12/2005 | Gruosi | |
| 7,004,469 | B2 * | 2/2006 | von Goeben | 273/348 |
| D528,439 | S | 9/2006 | Burton | |
| D528,928 | S | 9/2006 | Burton | |
| 7,106,197 | B2 * | 9/2006 | Gaiotto et al. | 340/572.1 |
| D558,227 | S * | 12/2007 | Cho et al. | D14/496 |
| D572,266 | S * | 7/2008 | Anderson et al. | D14/496 |
| D574,735 | S | 8/2008 | Landman et al. | |
| D578,922 | S * | 10/2008 | Hoshino | D10/128 |
| D584,170 | S | 1/2009 | Morrison | |
| D586,823 | S * | 2/2009 | Anderson et al. | D14/496 |
| D589,375 | S | 3/2009 | Tang | |
| D596,610 | S | 7/2009 | Hou | |
| D616,417 | S * | 5/2010 | Liao | D14/203.5 |
| 7,708,457 | B2 | 5/2010 | Girardin et al. | |
| D637,090 | S | 5/2011 | Cobbett et al. | |
| D637,918 | S | 5/2011 | Cobbett et al. | |
| D650,706 | S | 12/2011 | Zanella et al. | |
| D666,503 | S * | 9/2012 | Bulgari | D10/31 |
| D681,483 | S | 5/2013 | Biegert et al. | |
| D699,701 | S * | 2/2014 | Kim | D14/203.7 |
| 2010/0061191 | A1 | 3/2010 | Chen | |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 1098231 A1 | 5/2001 |
| WO | D066491-004 | 3/2005 |
| WO | DM / 072215 | 9/2009 |
| WO | D077452-004 | 6/2011 |
| WO | 2014135709 A2 | 9/2014 |

OTHER PUBLICATIONS

Cool Material, "Braun Square Digital Watch," <http://web.archive.org/web/20111125033014/http://coolmaterial.com/style/braun-square-digital-watch/>, dated Nov. 25, 2011, accessed Dec. 18, 2014.

Fitbit, "Fitbit Surge™ Fitness Super Watch" <https://www.fitbit.com/surge>, accessed Dec. 15, 2014.

Hodinkee.com, "Apple iPod Nano Now Available With Mickey Mouse Dial, Also Cheesy, Mechanically Inaccurate Open-Worked Dial," <http://web.archive.org/web/20111006043916/http://www.hodinkee.com/blog/2011/10/5/apple-ipod-nano-now-available-with-mickey-mouse-dial-also-ch.html>, dated Oct. 6, 2011, accessed Dec. 18, 2014.

HOMEGO, "M6 Silver Smart Watch Cell Phone 1.54 inch Bluetooth 3.0 Dialer Outdoor Sports Pedometer," amazon.com, <http://www.amazon.com/Silver-Bluetooth-Dialer-Outdoor-Pedometer/dp/B00MQTBGK6>, accessed Dec. 15, 2014.

Ikepod., "Original Ikepod Watch With GMT—Marc Newson Design," Watchbox.be, <http://www.watchbox.be/prod/Others-Watches/Marc%20Newson%20Design/item7165.htm#.VJLm2fAo5D8>, accessed Dec. 17, 2014.

LG Life's Good, "LG G Watch (W100)," <http://www.lg.com/us/smart-watches/lg-W100-g-watch>, accessed Dec. 18, 2014.

Metawatch, "FRAME—Black (MW3005)," <http://meta.watch/collections/smartwatch-all/products/frame-ss-black-leather>, accessed Dec. 15, 2014.

Omate, "The TrueSmart™ is the world's first standalone smartwatch 2.0 running on top of Android and OUI 2.0," <http://www.omate.com/product.html>, accessed Dec. 15, 2014.

Pebble, "Pebble Smartwatch," getpebble.com, <https://getpebble.com/checkout>, accessed Dec. 15, 2014.

Samsung, "Galaxy Gear™ Live, Black SM-R3820ZKAXAR," <http://www.samsung.com/us/mobile/wearable-tech/SM-R3820ZKAXAR>, accessed Dec. 15, 2014.

Samsung, "Samsung Gear S™, (Sprint), Black SM-R750PZKASPR," <http://www.samsung.com/us/mobile/wearable-tech/SM-R750PZKASPR>, accessed Dec. 15, 2014.

Samsung, "Samsung Gear™ 2 Charcoal Black SM-R3800VSAXAR," <http://www.samsung.com/us/mobile/wearable-tech/SM-R3800VSAXAR>, accessed Dec. 15, 2014.

Sony, "SmartWatch 3 SWR50," <http://www.sonymobile.com/us/products/smartwear/smartwatch-3-swr50/>, accessed Dec. 15, 2014.

Sony, "SmartWatch," <http://www.sonymobile.com/us/products/accessories/smartwatch/>, accessed Dec. 15, 2014.

Stables, James, "Clevercare smartwatch aims to help Alzheimer's suffers and carers: Revamped Sony SmartWatch 2 designed for users that need care," WEARABLE NEWS, <http://www.wareable.com/wearable-tech/clevercare-smartwatch-aims-to-help-alzheimers-suffers-and-carers-585>, dated Dec. 15, 2014.

Team Luxe, "Collector's Edition: Hermes Carre H Watch," Luxpresso, <http://luxpresso.com/news-couture/collectors-edition-hermes-carre-h-watch/2814>, dated Jan., 10, 2011, accessed Dec. 18, 2014.

Velazco, Chris, "ASUS ZenWatch review: subtle and stylish, with a few shortcomings," Engadget.com, <http://www.engadget.com/2014/12/11/asus-zenwatch-review/>, dated Dec. 11, 2014, accessed Dec. 15, 2014.

Watches Infoniac.com, "Hermes Carre H Watch—Extremely Contemporary Design," <http://watches.infoniac.com/carre-h-watch-hermes.html>, dated Aug. 13, 2010, accessed Dec. 18, 2014.

Watchismo, "Braun BN0042 Black Date Leather," <http://web.archive.org/web/20130815073830/http://www.watchismo.com/braun-bn0042bkbk.aspx>, dated Aug. 15, 2013, accessed Dec. 18, 2014.

OMATE, "Omate TrueSmart: Water-resistant standalone Smartwatch 2.0," <http://www.kickstarter.com/projects/omate/omate-truesmart-water-resistant-standalone-smartwa>, dated Aug. 21, 2013, accessed Oct. 8, 2014.

geekbuying.com, "Makibes unisex red led digital wrist watch with square case silicone watchband—white," <http://www.geekbuying.com/item/Unisex-Red-LED-Digital-Wrist-Watch-with-Square-Case-Silicone-Watchband—White-326443.html>, accessed Oct. 9, 2014.

Emily, "Nixon—The Newton Digital," <http://www.freshnessmag.com/2009/09/08/nixon-the-newton-digital/>, freshnessmag.com, dated Sep. 8, 2009, accessed Oct. 9, 2014.

Ted Baker, "Ted Baker Men's TE1054 Time Flies Contemporary Square Digital Case Watch," <http://www.amazon.com/Ted-Baker-TE1054-Contemporary-Digital/dp/B0045CRTYO%3FSubscriptionID%3DAKIAJ3U4YRIBWCGGKZ2A%26tag%3Dfrases365-20%linkCode%3Dsp1%26camp%3D2025%26creativeASIN%3DB0045CRTYO>, accessed Oct. 9, 2014.

* cited by examiner

**U.S. Patent**          **May 5, 2015**          **Sheet 1 of 7**          **US D728,624 S**



*FIG. 1*



*FIG. 2*



*FIG. 3*

**U.S. Patent**      **May 5, 2015**      **Sheet 4 of 7**      **US D728,624 S**



*FIG. 4*

**U.S. Patent**        May 5, 2015        Sheet 5 of 7        US D728,624 S





*FIG. 5*                                    *FIG. 6*



*FIG. 7*



*FIG. 8*



*FIG. 9*