## IN THE U.S. DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

APPLE INC.,

                    *Plaintiff*,

v.

MASIMO CORPORATION and
SOUND UNITED, LLC,

                    *Defendants*.

**REDACTED - PUBLIC VERSION**

Civil Action No. 22-1377 (MN)

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
## FOR AN EXPEDITED TRIAL

*Of Counsel:*

Joseph R. Re
Stephen C. Jensen
Stephen W. Larson
Benjamin A. Katzenellenbogen
Jared C. Bunker
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404 Telephone
(949) 760-9502 Fax
joe.re@knobbe.com

Brian Horne
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450 Telephone
(310) 551-3458 Fax
brian.horne@knobbe.com

Adam Powell
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
(858) 707-4000 Telephone
(858) 707-4001 Facsimile
adam.powell@knobbe.com

John C. Phillips, Jr. (No. 110)
Megan C. Haney (No. 5016)
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200 Telephone
(302) 655-4210 Fax
jcp@pmhdelaw.com
mch@pmhdelaw.com

*Counsel for Defendants*
*Masimo Corporation and Sound United, LLC*

Dated: February 24, 2023

## TABLE OF CONTENTS

**Page No.**

INTRODUCTION ................................................................................................................. 1

NATURE AND STAGE OF THE PROCEEDINGS ................................................... 2

SUMMARY OF ARGUMENTS .................................................................................... 3

STATEMENT OF FACTS ............................................................................................... 4

    A.    Masimo Revolutionizes Non-Invasive Monitoring ................................. 4

    B.    Masimo Develops The W1 Health Watch ................................................. 4

    C.    The W1 Health Watch Outperforms The Apple Watch........................... 6

    D.    Masimo's Next Generation Health Watch (Freedom) ............................ 6

    E.    An ALJ Determines That The Apple Watch Infringes Masimo's Patents ......................................................................................................... 6

LEGAL STANDARDS ..................................................................................................... 7

ARGUMENT ...................................................................................................................... 8

I.     Consolidation Would Moot Apple's Request For An Expedited Trial............................ 8

II.    An Expedited Trial Would Unfairly Prejudice Masimo ................................. 8

III.   An Expedited Trial Would Be Futile ................................................................ 10

    A.    An Expedited Trial Could Not Give Apple Expedited Injunctive Relief ...................................................................................................... 10

    B.    Masimo Changed Its Accused Design ................................................. 11

IV.   Apple Failed To Move For A Preliminary Injunction ................................... 11

V.    Apple's Claims Are Unlikely To Succeed.................................................... 11

    A.    Apple's Claimed Designs Are Dictated By Function ......................... 11

    B.    Apple's Patents Are Unenforceable.................................................... 14

    C.    Apple's Claimed Designs Are Obvious ............................................. 15

**TABLE OF CONTENTS**
(*cont'd*)

**Page No.**

D.     The W1 Health Watch Does Not Infringe ............................................................ 16

E.     Apple Failed To Establish A Likelihood Of Irreparable Harm .......................... 18

F.     Apple Has Not Established That The Balance Of Hardships Or
       Public Interest Favor An Injunction.................................................................... 19

CONCLUSION.................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page No(s).**

*ABC Corp. v. Partnership and Unincorporated Associations*,
   52 F.4th 934 (Fed. Cir. 2022) ................................................................................................17

*Beacon Theatres, Inc. v. Westover*,
   359 U.S. 500 (1959).................................................................................................................11

*Cirba Inc. v. VMWare, Inc.*,
   No. 19-742-LPS, 2020 WL 7489765 (D. Del. Dec. 21, 2020) .................................................7

*Crocs, Inc. v. Int'l Trade Comm'n*,
   598 F.3d 1294 (Fed. Cir. 2010).................................................................................................9

*Durling v. Spectrum Furniture Co.*,
   101 F.3d 100 (Fed. Cir. 1996).................................................................................................15

*Eaton Corp. v. Rockwell Int'l Corp.*,
   No. 97-421-JJF, 1997 WL 33708214 (D. Del. Nov. 4, 1997) ..................................................7

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
   543 F.3d 665 (Fed. Cir. 2008)............................................................................................9, 16

*High Point Design LLC v. Buyers Direct, Inc.*,
   730 F.3d 1301 (Fed. Cir. 2013)..........................................................................................15, 16

*Interdigital Commc'ns Inc. v. Huawei Techs. Co. Ltd*,
   No. CV 13-8-RGA, 2013 WL 8507613 (D. Del. Mar. 14, 2013).............................................7

*Kargo Global, Inc. v. Advance Magazine Publishers, Inc.*,
   No. 06 Civ. 550 (JFK), 2007 WL 2258688 (S.D.N.Y. Aug. 6, 2007)....................................18

*Lanard Toys, Ltd. v. Dolgencorp LLC*,
   958 F.3d 1337 (Fed. Cir. 2020)..........................................................................................15, 17

*Schering Corp. v. Mylan Pharms., Inc.*,
   No. 09-6383, 2010 WL 11474547 (D.N.J. June 10, 2010).....................................................11

*Shum v. Intel Corp.*,
   499 F.3d 1272 (Fed. Cir. 2007)...............................................................................................11

*Sport Dimension, Inc. v. Coleman Co.*,
   820 F.3d 1316 (Fed. Cir. 2016)...........................................................................................9, 11

**TABLE OF AUTHORITIES**
(*cont'd*)

**Page No(s).**

*Takeda Pharm. Co. Ltd. v. Norwich Pharms., Inc.*,
   No. 20-cv-8966-SRC, 2022 275991 (D.N.J. July 14, 2022)....................................................10

**OTHER AUTHORITIES**

35 U.S.C. § 171.........................................................................................................................11

Fed. R. Civ. P. 16........................................................................................................................7

## INTRODUCTION

Apple filed two patent-infringement cases in this Court against Masimo and Sound United on the same day.  In each case, Apple asserts all of its patents against the same product—Masimo's W1 health watch—and asserts that many of those patents also cover its own product, the Apple Watch.  In the companion case, Masimo counterclaimed for false advertising, antitrust violations, and patent infringement based on the marketing and sale of the Apple Watch.  Every claim in the two cases thus involves Masimo's W1, the Apple Watch, or both.  Moreover, Masimo's antitrust counterclaims include *Walker Process* claims based on Apple's inequitable conduct in procuring patents asserted in both cases.  Due to the numerous overlapping legal and factual issues, Masimo filed its counterclaims in only the companion case and is concurrently moving to consolidate the two cases for pretrial matters.  Rather than cooperating, Apple instead seeks to race to trial here while severing and staying Masimo's counterclaims in the companion case.

Consolidating the two cases would moot Apple's motion for an expedited trial.  Regardless, a shortened schedule would unfairly prejudice Masimo's ability to develop and present its many invalidity defenses—including functionality as demonstrated by a utility patent Apple asserted in the companion case.  The requested schedule would also prejudice Masimo's noninfringement defense by eliminating claim construction proceedings.  Apple's overly compressed schedule leaves inadequate time in discovery and at trial to address the many other issues in the case.

Apple's proposal would also be futile.  Masimo's *Walker Process* counterclaims rely in part on Apple's inequitable conduct in procuring the design patents asserted in this case.  Under the Supreme Court's *Beacon Theatres* decision, a jury must decide those *Walker Process* counterclaims before the Court can enter final judgement in this case.  Thus, an expedited trial could not provide expedited relief.  Moreover, Masimo has changed the accused design.

Apple is also unlikely to succeed on the merits.  Apple's claimed designs are functional and not protectable.  Its claimed designs are also obvious over prior art that neither Apple nor its expert addressed.  And when Apple's claims are properly construed to eliminate functional features and considered in light of the prior art, an ordinary observer would not see Masimo's W1 as substantially similar to Apple's claimed designs.

Finally, Apple fails to show irreparable harm or that the balance of hardships or public interest would favor an injunction.  It offers no real analysis that it stands to lose substantial market share or that it faces reputational harm.  Moreover, the W1 is a medical-grade device that outperforms Apple's unreliable Apple Watch.  Apple also ignores that an ALJ at the ITC found the Apple Watch infringes Masimo's patents, and Apple may be banned from importing the watch.

## NATURE AND STAGE OF THE PROCEEDINGS

Apple filed this case and a companion case, *Apple, Inc. v. Masimo Corp., et al.*, No. 22-cv-01378-MN (D. Del.) on October 20, 2022.  Apple asserts design patents in this case and utility patents in the companion case.  Masimo answered and counterclaimed in both cases on December 12, 2022.  In the companion case, Masimo counterclaimed for false advertising, antitrust violations, and patent infringement.  Companion Case, D.I. 15 at Counterclaims.

In this case, Apple previously moved for expedited discovery and threatened to move for a preliminary injunction.  The Court denied the motion for expedited discovery, December 21, 2022 Minute Entry, and Apple never sought its preliminary injunction.  Instead, Apple filed this motion seeking an expedited trial and, in the companion case, moved to (1) sever Masimo's antitrust and false advertising claims and (2) stay Masimo's patent infringement counterclaims. Companion Case, D.I. 34.

## SUMMARY OF ARGUMENTS

1.      The legal and factual issues in this case overlap with those in the companion case, and the two cases should be consolidated.  Masimo is concurrently moving to consolidate.

2.      A shortened schedule and trial would prejudice Masimo's ability to develop and present its case.  Masimo has many invalidity defenses, assessing infringement of Apple's claimed designs requires claim construction, and Apple has injected many other issues into the case.

3.      An expedited trial would be futile.  Under the Supreme Court's *Beacon Theatres* decision, Masimo's unenforceability defense to Apple's design patents in this case must be resolved as part of Masimo's *Walker Process* counterclaim in the companion case.  Moreover, Masimo has changed the accused design, undermining Apple's asserted need for expedited trial.

4.      Apple's failure to seek a preliminary injunction further undermines its purported need for expedited relief.

5.      Apple is not likely to succeed on the merits.  Apple's claimed designs are purely functional and are obvious, and Apple committed inequitable conduct to procure the asserted patents.  Moreover, when the claimed designs are properly construed to remove functional subject matter and are considered in light of the prior art, an ordinary observer would not find that the claimed designs and the back of the W1 are substantially the same.

6.      Apple is unlikely to establish irreparable harm or that the balance of hardships or public interest favor an injunction.  Apple fails to show that the W1 will take appreciable market share or harm Apple's reputation.  In fact, the W1 outperforms the Apple Watch.  Moreover, an ALJ at the ITC found that the Apple Watch infringed two of Masimo's valid patents, and Apple may be banned from importing the watch.

## STATEMENT OF FACTS

**A.   Masimo Revolutionizes Non-Invasive Monitoring**

Masimo is a medical-technology company that revolutionized non-invasive monitoring of physiological parameters such as pulse rate, oxygen saturation, and more.  Declaration of Joe Kiani ¶ 8-13.  Masimo's pioneering Signal Extraction Technology ("Masimo SET") dramatically improved clinicians' ability to monitor physiological signals.  *Id*.  Masimo's technology is proven to reduce blindness in premature infants, detect congenital heart disease in infants, save lives on the general care floor and post-surgery, and improve blood transfusion management, all while saving money.  *Id*. ¶ 11.

**B.   Masimo Develops The W1 Health Watch**



*Id*.

Masimo ultimately developed the W1 health watch, which it publicly unveiled in January 2022. *Id.* ¶ 27. The W1 is a medical-grade wrist-wearable continuous medical monitor. *Id.* ¶ 25. The W1 uses Masimo SET to accurately and continuously measure oxygen saturation, even during motion. It also measures pulse rate, respiration rate, hydration, steps, and calories. *Id.* The Masimo W1 is being used by hospitals outside the U.S. for patient care, and Masimo is seeking FDA approval for use in U.S. hospitals. *Id.* Reporters, professional athletes, and healthcare professionals have called the W1 a "gamechanger." *Id.*

The back of the W1, shown below, includes optical and electrical components for performing, among other things, pulse oximetry, ECG, device charging, and hydration index measurements. *Id.* ¶ 28. It includes two sets of LED lights, six photodiodes or detectors, a charging coil for inductively charging the battery, and ECG leads. *Id.* ¶ 29. The LEDs emit light that travels through the wearer's tissue, reflects back to the watch, and is received by the photodiodes. *Id.* ¶ 30. Based on the light received by the photodiodes, the W1 detects a signal that it uses to calculate heart rate, blood-oxygen saturation, and many of the other health parameters that the W1 calculates. *Id.* Masimo chose the size, shape, and location of the LEDs, photodiodes, and ECG leads to increase the accuracy and precision of the device. *Id.* ¶ 31. Masimo recently modified the design of its ECG leads to improve durability. That design is shown below.



*Id.* ¶¶ 28-34.

Masimo announced the limited release of the W1 in May 2022. *Id.* ¶ 27. Masimo announced the full release on August 31, 2022 and began selling the W1 on its website. *Id.*

### C.    The W1 Health Watch Outperforms The Apple Watch

Apple touts the pulse oximetry feature in the Apple Watch. Ex. 13 at 2.[1] The Apple Watch, however, does not measure blood oxygen continuously or through movement. Ex. 14 at 2. Rather, the wearer must be still with their palm facing down. *Id.* And during tests, the Apple Watch detected life-threatening blood-oxygenation drops less than 7% of the time. Kiani Decl. ¶ 36. In contrast, the W1 detected 100% of those drops. *Id.* A recent peer-reviewed article concluded that the Apple watch "is not yet up to the medical standard of pulse oximetry." Ex. 15 at 1.

### D.    Masimo's Next Generation Health Watch (Freedom)

Masimo plans to release its next generation health watch, the Freedom,



### E.    An ALJ Determines That The Apple Watch Infringes Masimo's Patents

In July 2021, Masimo filed a patent infringement complaint against Apple at the ITC. Ex. 16. Masimo asserted that the Apple Watch infringes five of Masimo's patents directed to

---

[1] Unless noted otherwise, "Ex." refers to the exhibits attached to the Declaration of Brian Horne.

smartwatch technology.  *Id.* ¶ 38.  The ALJ held an evidentiary hearing in June 2022.  The ALJ issued an initial determination on January 10, 2023, and found that the Apple Watch infringes Masimo's U.S. Patent Nos. 10,912,502 and 10,945,648, which Masimo is also asserting in the companion case.  Because the ALJ also determined that Masimo satisfied the domestic industry requirement for the '648 patent, Apple may be banned from importing the watch.  Ex. 17 at 6-7.

During the ITC investigation, Apple filed four petitions with the U.S. Patent Trial and Appeal Board ("PTAB") seeking *inter partes* review of the '502 and '648 patents (Apple filed two petitions for each patent).  Horne Decl. ¶ 2.  The PTAB denied all four of Apple's petitions.  *Id.*

## LEGAL STANDARDS

The Court has broad discretion to manage its schedule.  Fed. R. Civ. P. 16.  In setting a schedule, courts consider efficiency to the court and to the parties, as well as prejudice to the parties.  *Interdigital Commc'ns Inc. v. Huawei Techs. Co. Ltd*, No. CV 13-8-RGA, 2013 WL 8507613, at *1 (D. Del. Mar. 14, 2013).  Courts in this District order an expedited trial usually only after the moving party has made a showing on a motion for a preliminary injunction.  *See Eaton Corp. v. Rockwell Int'l Corp.,* No. 97-421-JJF, 1997 WL 33708214, at *8 (D. Del. Nov. 4, 1997); *Cirba Inc. v. VMWare, Inc.,* No. 19-742-LPS, 2020 WL 7489765, at *1 (D. Del. Dec. 21, 2020); *see also* Ex. 27 (*Ethicon LLC v Intuitive Surgical, Inc.*, C.A. No. 17-871-LPS-CJB, D.I. 27 (Memorandum Order) at 3 (D. Del. Aug. 25, 2017) ("Ethicon has not filed a motion for a preliminary injunction, which '[t]he majority of courts have held . . .weigh[s] against allowing [a] plaintiff's motion for expedited discovery.'").

## ARGUMENT

### I.    Consolidation Would Moot Apple's Request For An Expedited Trial

Masimo is concurrently filing a motion to consolidate this case with the companion case for all pretrial proceedings.  Because Apple's design-patent claims in this case contain common issues of fact and law with Apple's utility-patent claims and Masimo's false-advertising, antitrust, and patent-infringement counterclaims in the companion case, the two cases should be consolidated.  For this reason alone, the Court should deny Apple's motion.

### II.    An Expedited Trial Would Unfairly Prejudice Masimo

Apple's argument that the infringement and validity issues will be limited and "generally involve comparing readily apparent designs" is incorrect.  *See* D.I. 45 at 18.  This case is much more complicated than Apple suggests, and Masimo needs adequate discovery and time at trial to defend itself.  Apple's proposed short schedule, short trial, and limited discovery would unfairly prejudice Masimo's ability to do so.

For example, Masimo has multiple invalidity defenses—functionality, obviousness, and indefiniteness—as well as unenforceability defenses.  *See* D.I. 31 at 10-34.  As explained in more detail below, Apple's claimed designs are dictated by function.  Masimo is entitled to discover Apple's engineering documents and depose Apple's engineers to help establish its defense.  Masimo is also entitled to take discovery on its inequitable conduct defense.  As explained in more detail in Masimo's counterclaim and below, Apple withheld information from the U.S. Patent Office ("PTO") when it prosecuted three of the Asserted Design Patents.  *See id.* at 13-21.  As one example, Apple withheld a utility patent that shows the claimed designs are invalid because they are functional.  *Id.*  Apple also concealed that the inventors on the utility patent should be named as inventors on the design patents.  *Id.* at 54-67.  The utility patent lists 9 inventors and the design patents list 21 inventors.  *See id.* at 12-13, 21.  Masimo must take discovery about the roles of each

named inventor and will likely need to depose many of them.  Apple's in-house counsel also chose different firms to prosecute the utility and design patents, which, in Masimo's view, was done to facilitate the inequitable conduct.  *See id.* at 12, 18.  Masimo therefore plans to seek discovery from Apple's in-house and outside counsel.

Apple's proposed schedule also unfairly omits claim construction proceedings.  The Court must construe Apple's design claims to eliminate functional features.  *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016) (citing *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396 (Fed. Cir. 1997) ("[w]here a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent.").  Apple wrongly argues that *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665 (Fed. Cir. 2008) and *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294 (Fed. Cir. 2010) hold that claim construction is unnecessary in design-patent cases.  D.I. 45 at 19. In *Egyptian Goddess,* the Federal Circuit explained that, although detailed verbal descriptions of claimed designs may not be required in every case, courts must distinguish ornamental and functional features in the claimed design.  *Egyptian Goddess*, 543 F.3d at 680.  Similarly, in *Crocs*, the court did not broadly hold that courts should not construe claimed designs.  Instead, it faulted a lengthy and overly detailed verbal description of a design.  *Crocs*, 598 F.3d at 1302-1303.

Apple also accuses Masimo of copying Apple's designs.  D.I. 45 at 3-4.  Masimo's development story, however, rebuts Apple's accusation.  ██████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████  Masimo needs adequate time at trial to present this story.

Apple also raised many other issues that will require more than the limited discovery and trial time Apple seeks to impose on Masimo.  Apple contends that it is the innovator, that its

designs are iconic, that the Apple Watch is superior to Masimo's W1, and that the W1 is harming the reputation of the Apple Watch.  D.I. 45 at 10-12.  In fact, Apple relies on two experts to try to prove harm.  D.I. 46, Exs. N and O.  Apple has thus put its reputation and the design and functionality of the Apple Watch at issue.  Masimo needs time to take discovery and demonstrate at trial that the Apple Watch performs poorly and that Masimo's W1, which is a medical-grade device, far outperforms the Apple Watch.  Masimo also needs time to demonstrate that Apple is the copyist, Apple stole Masimo's technology, and incorporated that technology in the Apple Watch.  Indeed, an ALJ recently found that the Apple Watch—the product Apple contends is being irreparably harmed—infringes Masimo's patents.  Ex. 17 at 6.  The ITC may ban Apple from importing the Apple Watch based on one of those patents.  *Id.* at 7.

Despite these numerous issues, Apple asks the Court to limit Masimo to ten weeks of fact discovery, about half the interrogatories and fact depositions provided under the Federal Rules, and eight hours of trial testimony.  D.I. 45 at 19; *see also id.* at 19 n.8.  Apple's proposal is untenable.  Moreover, Apple misplaces its reliance on *Gavrieli Brands LLC v. Soto Massini (USA) Corp*.  D.I. 45 at 17-18.  In *Gavrieli*, the parties largely agreed to the schedule, Ex. 18 at 13-14, and neither functionality nor claim construction were at issue.  *See* Ex. 19 at 16-27.  Apple's citation to *Takeda Pharm.*, D.I. 45 at 17, is also misplaced.  That was a Hatch-Waxman litigation and involved amending a schedule to ensure trial finished before a 30-month stay expired.  *Takeda Pharm. Co. Ltd. v. Norwich Pharms., Inc.,* No. 20-cv-8966-SRC, 2022 275991, at *2-*3 (D.N.J. July 14, 2022).  Apple's proposed schedule is far shorter than 30 months.

## III.    An Expedited Trial Would Be Futile

### A.    An Expedited Trial Could Not Give Apple Expedited Injunctive Relief

As Masimo explains in its motion to consolidate and in its opposition to Apple's motion to sever in the companion case, under the Supreme Court's *Beacon Theatres* decision, Masimo's

unenforceability defense to Apple's design patents asserted in this case must be resolved as part of Masimo's *Walker Process* counterclaim in the companion case. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959); *Shum v. Intel Corp.*, 499 F.3d 1272, 1276 (Fed. Cir. 2007); *Schering Corp. v. Mylan Pharms., Inc.*, No. 09-6383, 2010 WL 11474547, at *1 (D.N.J. June 10, 2010). Thus, Masimo's *Walker Process* counterclaim must be tried before the Court can resolve Masimo's unenforceability defense or enter a final judgment on Apple's design-patent claims in this case. There is thus no benefit to expediting trial.

### B.    Masimo Changed Its Accused Design

As shown above, Masimo redesigned the ECG leads on the back of the W1. Kiani Decl. ¶ 34. Rather than two leads, the new design has six smaller leads. *Id.* Before Apple filed this motion, Masimo displayed the new design in a whitepaper on its website. *Id.* ¶ 35. Apple has no need for an expedited trial to enjoin a design that is being phased out.

## IV.    Apple Failed To Move For A Preliminary Injunction

Separating overlapping cases and rushing to trial here is not the way to seek expedited relief. If Apple wanted such relief, it should have moved for a preliminary injunction. Apple still has not done so despite knowing about the W1 for more than a year. D.I. 1 ¶¶ 35-36. Therefore, the Court should reject Apple's arguments that it is likely to suffer irreparable harm. *See* Ex. 27 (*Ethicon LLC v Intuitive Surgical, Inc.*, C.A. No. 17-871-LPS-CJB, D.I. 27 (Memorandum Order) at 3 (D. Del. Aug. 25, 2017). Apple's citations to cases involving expedited trial where the plaintiff sought a preliminary injunction support Masimo, not Apple. *See* D.I. 45 at 6-7.

## V.    Apple's Claims Are Unlikely To Succeed

### A.    Apple's Claimed Designs Are Dictated By Function

Design patents protect "ornamental designs" and are invalid if the claimed design is dictated by its function. 35 U.S.C. § 171; *Sport Dimension, Inc. v. Coleman Co., Inc.*, 820 F.3d

1316, 1320 (Fed. Cir. 2016).

Apple contends that its three design patents claim one or more of the elements shown in the pictures below: (A) a circular protrusion (D'279, D'842, D'936); (B) two semi-circular ECG leads that arch across half of a semi-circle (D'279, D'842, D'936); (C) eight photodiodes in a circle (D'279, D'842); (D) central light emitters (D'279); and (E) a transparent, convex (domed) protrusion (D'279).  D.I. 45 at 13-14; D.I. 46, Ex. M ¶¶ 113, 117, 121.  As shown by the pictures below from its expert's report, Apple contends that Masimo's W1 (middle) and the Apple Watch (right) also contain each of these features:



*See* D.I. 46, Ex. M ¶¶ 140, 150.

Apple ignores that the accused components on the back of the Masimo W1 are used for hospital-grade physiological measurements. ███████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

██████████   *Id.*  The '502 and '648 patents, which Masimo asserts in the companion case and which an ALJ has found to be infringed by the Apple Watch, also describe the benefits of the

protrusion.  Companion Case, D.I. 15, Ex. 2 at 7:52-67, Ex. 3 at 7:47-62.  In short, Masimo chose every aspect of the W1's accused design after extensive experimentation to provide the best possible performance in a precise medical-grade device.

Masimo expects discovery will confirm that Apple chose its claimed design for functional reasons.  Indeed, Apple's '054 patent, which Apple asserts in the companion case, discloses and describes the functions of Apple's claimed designs.  The '054 patent explains that the ECG leads or electrodes may be arc-shaped and positioned at the periphery "so as not to interfere with optical communication" between the watch's light sensors and the wearer's skin.  Companion Case, D.I. 1, Ex. D at 13:41-42, 13:60-65.  The '054 patent also explains that the electrodes can be sized to provide good contact with the skin and to avoid interfering with other components of the watch.  *Id*. at 17:25-40.  In fact, Claim 11 of the '054 patent recites two arc-shaped electrodes with a set of gaps between their ends.  *Id*. at 57:42-46.  The '054 patent also confirms that an array of eight photodiodes is functional.  The patent explains that the feature is used to receive the light needed "to perform a sensor function (*e.g*., to determine a heart rate)."  *Id*. at 15:40-43, 15:13-21, 16:6-16:8.  The images in the '054 patent of these functional elements are strikingly similar to the claimed design.

| D'279 (asserted design patent) | '054 Patent |
|---|---|
|  |  |

Another Apple utility patent publication confirms the claimed central lens performs the function of "obscuring internal components" and ensuring emitted light can "retain its optical power, collection efficiency, beam shape, and collection area such that the light undergoes minimal change due to the cover structure" of the watch.  Ex. 20 ¶ 53.

Finally, Apple readily admits that the convex dome on the back of its watch is functional. During the parties' June 2022 ITC hearing, Apple argued that "there was a very practical reason for that dome shape" on the back of the Apple Watch: to create a better fit with charging hardware. Ex. 21 at 47:14-25; *see also* Ex. 22 at 959:14-960:2.  Apple's U.S. Patent No. 10,702,211also explains that the convex protruding back is functional and designed to push the sensor windows into the wearer's skin.  Ex. 23 at 8:2-9.

### B.    Apple's Patents Are Unenforceable

As Masimo explained in detail in its counterclaim, Apple committed inequitable conduct to obtain its asserted patents.  *See* D.I. 31 at 11-13.  For example, as discussed above, Apple's '054 utility patent demonstrates that Apple's claimed designs are functional.  Apple knowingly pursued design patent claims for the functional, and therefore unprotectable, feature of its convex protrusion.  Apple also concealed material prior art that showed this functionality.  A parent application to the '054 patent, which shares the same specification, published before Apple prosecuted its design patents.  *See id.* at 11.  Apple withheld that application from the PTO when it prosecuted the design patents to deceive the PTO into allowing the asserted claims.  *See id.* at 13-21.  Apple also concealed the true inventors who conceived the claimed designs.  Apple fraudulently failed to identify any of the 9 inventors listed on the '054 patent as inventors on the asserted design patents.  *Id.* at 13-21.

### C.    Apple's Claimed Designs Are Obvious

Design patents are invalid if the "claimed design would have been obvious to a designer of ordinary skill ["DOSA"] who designs articles of the type involved." *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1312 (Fed. Cir. 2013) (quoting *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996)).  Obviousness is a two-step inquiry: (1) identify a primary reference with design characteristics like the claimed design; and (2) use related secondary references "to modify [the primary reference] to create a design that has the same overall visual appearance as the claimed design." *Id*. at 1311-12.

| WO 2017/165532 (Paulke), Ex. 24 | U.S. 2019/0196411 (Yuen), Ex. 25 | U.S. 6,801,799 (Mendelson), Ex. 26 | D'279 |
|---|---|---|---|
|  |  |  |  |
| FIG. 1F | FIG. 1B | FIG. 7 | FIG. 2 |

Paulke and Yuen, shown above, each qualify as a primary reference because each design is "basically the same as the claimed design." *Durling*, 101 F.3d at 103.  Indeed, each reference discloses a convex surface with optical sensors and arc-shaped leads surrounding the optical sensor. Ex. 24 at Figs. 1E-1F, Fig. 2A, 14:12-16, 14:26-32; Ex. 25 at Fig. 1B, Fig. 3A, ¶¶ 35, 42. Mendelson is an appropriate secondary reference because Paulke and Yuen expressly suggest using any suitable oxygen saturation sensor, which Mendelson discloses. Ex. 24 at 15:9-18; Ex. 25 ¶ 41.  Because combining either Paulke or Yuen with Mendelson would "create a design that

has the same overall visual appearance as the claimed design," each combination renders Apple's patents obvious and invalid.  *High Point*, 730 F.3d at 1311-12.

###    D.    The W1 Health Watch Does Not Infringe

Design-patent infringement is assessed in two steps.  *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341 (Fed. Cir. 2020).  First, the court construes the claims.  This may entail limiting the scope to non-functional features.  *Id.* at 1341-42.  Second, the properly construed claim is compared to the accused design to determine whether an ordinary observer, familiar with the prior art, would find the designs substantially the same.  *Id.* at 1341-42.  If the prior art contains designs like the claimed and accused designs, subtle differences "can become significant to the hypothetical ordinary observer." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008).

Apple's cursory infringement analysis failed to establish a likelihood of infringement. Apple's expert, Alan Ball, did not even attempt to remove functional aspects of Apple's designs before performing his infringement analysis.  D.I. 46, Ex. M ¶¶ 128-134.  Instead, Ball opined that the mere presence of other third-party designs establishes that Apple's designs are not functional. *See id.* at ¶¶ 204-211.  But Ball lacks the requisite technical expertise to offer such an opinion. Indeed, Ball admitted that he was not opining on "the technical requirements of any particular feature."  *See id.* at ¶ 206.  Thus, Ball's opinion on functionality did not address the standard identified in his report—whether the "other designs could produce the same or similar functional capabilities" as Apple's claimed design.  *Id*. at ¶ 52 (citing *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993).  Ball also failed to consider the closest prior art.  He ignored Paulke, Yuen, and Mendelson.  *See Id.* at ¶ 191.

Contrary to Apple's and Ball's contention and their cursory analysis, the differences between Apple's designs and the W1 are stark:

| D'279 | Paulke, Yuen, and Mendelson | Masimo W1 |
|-------|------------------------------|-----------|
|  | | |

As explained earlier, placing arc-shaped ECG leads on the outer perimeter is functional. Thus, if the leads are not completely stricken from Apple's design, Apple cannot rely on the arc shape and outer position to establish infringement. *See Lanard Toys*, 958 F.3d at 1341-42. With Apple's design properly construed, and considering the prior art, the differences between the claimed designs and the W1 are readily apparent—the W1's leads are narrower, spaced farther apart, and have rounded ends. *See ABC Corp. v. Partnership and Unincorporated Associations Identified on Schedule "A"*, 52 F.4th 934, 942 (Fed. Cir. 2022) ("Where a dominant feature of the patented design and the accused products . . . appears in the prior art, the focus of the infringement substantial similarity analysis in most cases will be on other features of the design.").

Arranging multiple photodiodes in a circle is also functional. *See* Ex. 26 at 4:59-62; *see also id.* at 4:14-33. A proper construction and the prior art highlight the differences between the claimed designs and the W1—the W1 has six trapezoids rather than the claimed eight rectangles. A central light-emitting lens is functional, too. Companion Case, D.I. 1, Ex. D at 15:19-21, 16:6-9. Thus, a proper construction and the prior art confirm the differences from the claimed designs—the W1 has two D-shaped LED emitters that form an oval, which differs from concentric circles.

Regarding the protrusion and convex dome, multiple references show this element, and Apple has repeatedly explained that the structure is functional. Ex. 21 at 47:14-25; *see also* Ex. 22 at 959:14-960:2. Thus, it has no place in any infringement analysis. Moreover, Apple claims

a transparent dome.  D.I. 46, Ex. M ¶ 113.  The W1's convex sensor is not transparent, and Apple does not even allege that it is.

### E.     Apple Failed To Establish A Likelihood Of Irreparable Harm

Citing a report from Malackowski, Apple argues that the W1 will take market share from Apple and harm Apple's reputation.  D.I. 45 at 8-10.  But Malackowski conducted no useful analysis to support those opinions.  Rather than provide reasoned analysis, Malackowski flatly refers to the W1 as a "knockoff" and parrots harm from cited references addressing "piracy" and "counterfeiting."  *Id*. at ¶¶ 89, 117-119.  But this case does not involve piracy, and Malackowski offers no facts to support the assertion that the W1 is a counterfeit of the Apple Watch.  In fact, Malackowski even acknowledges that the W1 is priced similarly to the Apple Watch, which demonstrates that the W1 is no cheap knockoff.  Thus, Apple's argument that the W1 will harm Apple's reputation for providing high-quality products misses the mark.  D.I. 45 at 11.  Indeed, Masimo's W1 clearly outperforms the Apple Watch.  *See supra* Statement of Facts, Part C.

Nor can Apple show that consumers associate the W1 with Apple Watch.  Apple relies on Simonson, its survey expert, to establish that the design of the back of the W1 creates such an association.  But Simonson's surveys are riddled with flaws that render them unreliable.  For example, Simonson's association survey instructed respondents to suppose that, "while looking for a smartwatch on the Internet, for example, on Best Buy's website, you see the following designs of the backs of five smartwatches."  D.I. 46, Ex. N at D.4-7.  But Simonson's survey stimulus, which shows only the backs of watches, looks nothing like Best Buy's website, which showcases portions of the watch that are visible when the watch is worn.  D.4-7-D.4-9; Ex. 28.  Because his stimulus differs from what consumers would likely see in the marketplace, his survey lacks probative value.  *See Kargo Global, Inc. v. Advance Magazine Publishers, Inc.*, No. 06 Civ. 550 (JFK), 2007 WL 2258688 at *10 (S.D.N.Y. Aug. 6, 2007).

**F.      Apple Has Not Established That The Balance Of Hardships Or Public Interest Favor An Injunction**

Apple contends that an injunction would not harm Masimo because Masimo's W1 is not a "core product." D.I. 45 at 16.  That is irrelevant.  Masimo spent several years and significant resources developing the W1 so that it can become a core product.  *See supra* Statement of Facts, Part B.  Indeed, Apple acknowledges that Masimo paid over $1 billion to acquire Sound United to distribute the W1 and Masimo's forthcoming smart watches. D.I. 45 at 5.  Moreover, because the Apple Watch uses Masimo's patent technology, Apple is facing an import ban. Ex. 17 at 6-7.  This eviscerates Apple's balance-of-hardship argument.

Regarding the public interest, Masimo's W1 is superior to the Apple Watch.  *See supra* Statement of Facts, Part C.  The W1 is a clinical-grade device that continuously monitors vital physiological parameters such as blood-oxygen saturation—even when patients move.  Kiani Decl. ¶¶ 8, 25.  In fact, hospitals outside the U.S. currently use the W1 and have called it a "game changer." *Id.* ¶ 25.  Masimo is pursuing FDA approval to sell the W1 for medical use, ████ ██████████████████████████████████████████████████████████ *Id.* In contrast, despite Apple's false and misleading marketing, the Apple Watch does not ***continuously*** monitor blood oxygen, and it can only measure blood oxygen while the wearer is holding still, with their palm facing down. Ex. 14 at 2.  Moreover, at least one study has shown that the Apple Watch detects life-threatening blood-oxygenation drops less than 7% of the time.  Kiani Decl.¶ 36.  Masimo's W1, on the other hand, detects blood-oxygenation drops 100% of the time.  *Id.* Prominent doctors recently explained to the ITC that even health care professionals are confused about the Apple Watch's inability to reliably measure oxygen saturation and that continued use of the Apple Watch as a pulse oximeter harms the public.  *See* Ex. 29 (using Apple Watch Blood Oxygen feature "damages public health and welfare"); Ex. 30 (Apple's  pulse oximetry "has

potential to harm the public health"); Ex. 31 (Apple Watch is "potentially dangerous to the public"). The poorly performing Apple Watch is no substitute for Masimo's W1. *See* D.I. 45 at 16.

## CONCLUSION

For the reasons detailed above and in Defendants' related Motion to Consolidate, the Court should deny Apple's motion and instead consolidate this case with Apple's companion case.

Respectfully submitted,

February 24, 2023

PHILLIPS MCLAUGHLIN & HALL, P.A.

*Of Counsel:*

By: */s/ John C. Phillips, Jr.*

Joseph R. Re
Stephen C. Jensen
Stephen W. Larson
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA  92614
(949) 760-0404 Telephone
(949) 760-9502 Facsimile
joe.re@knobbe.com

Brian Horne
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450 Telephone
(310) 551-3458 Facsimile
brian.horne@knobbe.com

Adam Powell
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
(858) 707-4000 Telephone
(858) 707-4001 Facsimile
adam.powell@knobbe.com

John C. Phillips, Jr. (No. 110)
Megan C. Haney (No. 5016)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200 Telephone
(302) 655-4210 Fax
jcp@pmhdelaw.com
mch@pmhdelaw.com

*Counsel for Defendants*
*Masimo Corporation and Sound United, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 24, 2023, a true and correct copy of Defendants'
Opposition to Plaintiff's Motion for an Expedited Trial was served on the following counsel of
record at the addresses and in the manner indicated:

***VIA ELECTRONIC MAIL:***

David E. Moore
Bindu A. Palapura
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
dmoore@potteranderson.com
bpalapura@potteranderson.com

John M. Desmarais
Kerri-Ann Limbeek
Cosmin Maier
Jordan N. Malz
Benjamin N. Luehrs
Joze Welsh
Jamie L. Kringstein
Desmarais LLP
230 Park Avenue
New York, NY 10169
jdesmarais@desmaraisllp.com
klimbeek@desmaraisllp.com
cmaier@desmaraisllp.com
jmalz@desmaraisllp.com
bluehrs@desmaraisllp.com
jwelsh@desmaraisllp.com
jkringstein@desmaraisllp.com

Peter C. Magic
Desmarais LLP
101 California Street
San Francisco, CA 94111
pmagic@desmaraisllp.com

Jennifer Milici
Dominic Vote
Leon B. Greenfield

Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
jennifer.milici@wilmerhale.com
dominic.vote@wilmerhale.com
leon.greenfield@wilmerhale.com

Mark A. Ford
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
mark.ford@wilmerhale.com

/s/ Megan C. Haney
Megan C. Haney (No. 5016)