**IN THE U.S. DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

APPLE INC.,

        *Plaintiff*,

v.

MASIMO CORPORATION and
SOUND UNITED, LLC,

        *Defendants*.

Civil Action No. 22-1377-MN-JLH

**DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION
TO DISMISS MASIMO CORPORATION'S INEQUITABLE CONDUCT
COUNTERCLAIM AND STRIKE ITS AFFIRMATIVE DEFENSE**

*Of Counsel:*

Joseph R. Re
Stephen C. Jensen
Benjamin A. Katzenellenbogen
Stephen W. Larson
Jared C. Bunker
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404 Telephone
(949) 760-9502 Fax
joe.re@knobbe.com
steve.jensen@knobbe.com
Stephen.larson@knobbe.com
Ben.katzenellenbogen@knobbe.com
Jared.bunker@knobbe.com

Brian Horne
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450 Telephone
(310) 551-3458 Fax
brian.horne@knobbe.com

Adam Powell
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive, Suite 300

John C. Phillips, Jr. (No. 110)
Megan C. Haney (No. 5016)
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200 Telephone
(302) 655-4210 Fax
jcp@pmhdelaw.com
mch@pmhdelaw.com

*Counsel for Defendants
Masimo Corporation and Sound United, LLC*

Dated: March 28, 2023

San Diego, CA 92130
(858) 707-4000 Telephone
(858) 707-4001 Facsimile
adam.powell@knobbe.com

**TABLE OF CONTENTS**

**Page No.**

INTRODUCTION ................................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS ................................................ 3

SUMMARY OF THE ARGUMENT ..................................................................... 3

STATEMENT OF FACTS ..................................................................................... 4

    A.    Masimo Pleads Particularized Facts Showing Concealment Of The
Functionality And Non-Ornamentality Of The Claimed Designs ........................ 4

    B.    Masimo Alleges The Who, What, Where, When And How Of The
Concealment Of The Functionality And Non-Ornamentality Of
The Claimed Designs .......................................................................................... 5

    C.    Masimo Pleads Particularized Facts Showing Concealment of The
Correct Inventors Who Conceived the Designs Claimed in the
Sensor Design Patents ........................................................................................ 7

    D.    Masimo Alleges The Who, What, Where, When And How Of The
Concealment Of Proper Inventorship ................................................................. 8

LEGAL STANDARDS ......................................................................................... 9

ARGUMENT ...................................................................................................... 10

    A.    Masimo Properly Alleges Particularized Conduct of Specific
Individuals ......................................................................................................... 10

    B.    Masimo Plausibly Alleges Mr. Myers Had a Duty of Disclosure ...................... 11

    C.    Masimo Pleads Facts from which the Court Can Reasonably Infer
that Specific Individuals Knew that the Purported Sensor Designs
were Functional and Non-Ornamental and that Inventorship of the
Sensor Design Patents was Incorrect ................................................................. 12

    D.    Masimo Plausibly Alleges Facts from which the Court Can
Reasonably Infer that Specific Individuals Withheld Material
Information with Deceptive Intent ..................................................................... 16

    E.    Masimo Properly Alleges Information as But-For Material to the
Patentability of the Sensor Design Patents ........................................................ 17

## TABLE OF CONTENTS
### (*cont'd*)

**Page No.**

F.     Masimo Properly Pleads Infectious Unenforceability ......................................... 19

CONCLUSION.................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page No(s).**

*Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC,*
930 F.3d 1314 (Fed. Cir. 2019)..................................................................................................19

*Baxter Int'l., Inc. v. McGaw, Inc.,*
149 F.3d 1321 (Fed. Cir. 1998)..................................................................................................19

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955 (2007)......................................................................................3, 9

*Certainteed Gypsum, Inc. v. Pac. Coast Bldg. Prods., Inc.,*
2021 WL 5449073 (N.D. Cal. Nov. 22, 2021) .........................................................................12

*EIS, Inc. v. WOW Tech Int'l GmbH,*
C.A. No. 19-1227-LPS, 2020 WL 7027528 (D. Del. Nov. 30, 2020) .........................16, 18, 19

*EMC Corp. v. Pure Strategies, Inc.,*
2014 WL 5795557 (D. Del. Nov. 5, 2014) ...............................................................................12

*Exergen Corp. v. Wal-Mart Stores, Inc.,*
575 F.3d 1312 (Fed. Cir. 2009)...............................................................................................3, 10

*Honeywell Int'l Inc. v. Maltseff,*
2014 WL 3360334 (W.D. Wash. July 9, 2014) .......................................................... 12, 13, 16

*Int'l Bus. Machines Corp. v. Priceline Grp., Inc.,*
2017 WL 1349175 (D. Del. Apr. 10, 2017)..............................................................................11

*Lipocine Inc. v. Clarus Therapeutics, Inc.,*
C.A. No. 19-622, 2020 WL 4794576 (D. Del. Aug. 18, 2020) ...............................................10

*Meyers v. Heffernan,*
740 F. Supp. 2d 637 (D. Del. 2010)..........................................................................................19

*Natera, Inc. v. Genosity Inc.,*
C.A. No. 20-1352, 2022 WL 767602 (D. Del. Mar. 14, 2022)..................................................9

*Polara Eng'g, Inc. v. Campbell Co.,*
2014 WL 12584441 (C.D. Cal. Nov. 4, 2014)..........................................................................11

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,*
2009 WL 4928024 (D. Del. Dec. 18, 2009)..............................................................................20

## TABLE OF AUTHORITIES
### (*cont'd*)

**Page No(s).**

*Sun Microsystems, Inc. v. Versata Enters., Inc.*,
  630 F. Supp. 2d 395 (D. Del. 2009) .......................................................................... 9

*Symbol Techs., Inc. v. Aruba Networks, Inc.*,
  609 F. Supp. 2d 353 (D. Del. 2009) .......................................................................... 9

## OTHER AUTHORITIES

37 C.F.R. 1.56 .............................................................................................................. 11

37 C.F.R. § 1.32 ........................................................................................................... 12

## INTRODUCTION

Apple obtained the asserted design patents through fraud.  Before the PTO, Apple orchestrated and maintained an elaborate pretense that two completely different teams of supposed inventors separately and independently conceived of ***substantially identical subject matter***.  For example, in prosecuting ***utility*** patents for the Apple Watch, Apple represented to the PTO that a first group of supposed inventors conceived the "arc-shaped" electrodes that they claimed as their invention in the following sensor configuration (highlighted in green):



*FIG. 5E*

In prosecuting ***design*** patents for the Apple Watch device, Apple represented to the PTO that a second and entirely different team of ***twenty-one*** supposed inventors conceived the following arc-shaped ornamentation (highlighted in green):



Two separate teams of Apple inventors did not independently conceive the same arc configuration for the electrodes of the Apple Watch.  And Apple offers no explanation in its brief.

What is ***irrefutable***, however, is the public record before the PTO, which shows precisely what Apple's inventors did and did not disclose during prosecution of the many patent applications they filed, including the subject matter each represented as his or her invention.  The public record shows a widespread pretense of ***duplicative inventorship*** that is neither true nor accidental, but rather the result of purposeful concealment of inconsistent inventorship positions to obtain duplicative patents.

The public record also shows that Apple's first team of inventors described and claimed Apple Watch sensor configurations as ***functional*** in their utility patents.  For example, the utility patent inventors claimed they invented an "electronic watch" having an "ECG function" that is activated when a user contacts "arc-shaped" electrodes.  D.I. 31 at 16.  Apple's second team of twenty-one design inventors then claimed the same arc-shaped electrode configuration as their own ***ornamental*** invention.  The law is well settled that functional, non-ornamental subject matter is not eligible for design patent protection.  The public record shows that the Patent Examiners of the design patents were ***never provided*** any of the utility patent applications that described and claimed the sensor designs as functional, or the representations of the utility patent inventors that they had invented the arc-shaped ECG sensors.  As a result, Apple currently and improperly holds ***design patents*** that protect ***functional*** sensor configurations.

Apple then furthered its scheme by simultaneously asserting its incompatible design and patent rights in separate lawsuits.  Apple filed one lawsuit asserting Masimo's W1 infringes Apple's utility patents.  On the same day and in the same court, Apple filed a ***separate*** lawsuit

asserting the same Masimo W1 infringes the design patents.  Apple then filed various motions and oppositions to avoid having to present its incompatible patent rights to the same jury.

Masimo's pleading shows detailed, particularized, and plausible allegations that provide "the specific who, what, when, where, and how" of the fraud committed before the PTO.  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009).  Masimo's pleading of the public-record facts and the conduct of named individuals involved in the widespread fraud establishes a "reasonably founded hope that the [discovery] process will reveal relevant evidence." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1967 (2007).  For these and additional reasons explained below, the Court should deny Apple's motion to dismiss.

## NATURE AND STAGE OF THE PROCEEDINGS

Apple mentions the filings in this case.  D.I. 55 at 6-7.  But Apple also filed a companion patent infringement case, C.A. No. 22-1378. In both cases, Masimo pleads, *inter alia*, Apple's fraud in obtaining patents by committing inequitable conduct.  Apple filed Rule 12 motions in both cases to dismiss Masimo's inequitable conduct pleadings.  D.I. 54; C.A. No. 22-1378, D.I. 39.

## SUMMARY OF THE ARGUMENT

1.     With no ambiguity, Masimo's allegations expressly identify Jeffrey Myers, Apple's Chief IP Counsel and each of twenty-one inventors named on U.S. Patent Nos. D883,279, D947,842, and D962,936 ("the Sensor Design Patents").  Masimo alleges Mr. Myers's substantive conduct in compartmentalizing assignment of sensor subject matter to different law firms to control what information they would and would not disclose to the PTO.  The utility patents at issue identify Mr. Myers in power of attorney designations, corroborating his duty of disclosure to the PTO.

2.      Masimo sufficiently pleads Mr. Myers's knowledge of material information from assigning functional sensor configurations to one law firm and design configurations to another. Masimo also sufficiently pleads the 21 design inventors' knowledge of material information from their exposure to development of the Apple Watch.

3.      Masimo alleges facts sufficient to show that Mr. Myers and the twenty-one design inventors each had incentive to conceal the material information from the PTO and did so intending to deceive the PTO into improperly issuing the Sensor Design Patents.

4.      The Court need not address here legal and factual disputes Apple raises regarding supposed availability of alternative designs.  And Masimo sufficiently pleads that a PTO Examiner would never have allowed the Sensor Design Patents to issue had Mr. Myers or the twenty-one design inventors disclosed the functionality and non-ornamentality of the claimed ornamental designs, or that none of the twenty-one inventors named on the Sensor Design Patents was a correct inventor.

5.      Masimo's pleading properly ties infectious unenforceability to the relevance of material information that was improperly withheld. There is no basis to strike it.

## STATEMENT OF FACTS

**A.      Masimo Pleads Particularized Facts Showing Concealment Of The Functionality And Non-Ornamentality Of The Claimed Designs**

Masimo's allegations of inequitable conduct center around the public record concerning two different patent families Apple prosecuted, each family naming an entirely separate set of inventors.  Masimo pleads facts explaining that the earlier of the two patent families includes applications for utility patents dating back to September 2017, which disclose and claim *functional* subject matter.  D.I. 31 at 11-12.  Masimo also explains that the later of the two patent families includes applications for design patents dating back to June, 2018, which disclose and purport to

claim *ornamental* subject matter.  *Id.*  Masimo pleads facts specifically identifying each inventor named in each of the two patent families and showing that the two families have no inventors in common.  *Id.* at 12-13, 21.

Masimo's pleading includes detailed charts showing that the utility patent inventors (the "Named Utility Inventors") disclosed watch sensor features, including a convex protrusion, arc-shaped ECG sensors, and photodiodes.  *Id.* at 15-17.  Masimo pleads additional facts showing that the utility patent applications describe those features as *functional*.  *Id.*  The same charts comparatively allege that the design patent inventors (the "Named Design Inventors") disclosed and claimed substantially identical convex protrusion, arc-shaped ECG sensors, and photodiodes, but claimed they were *ornamental*.  *Id.*

Masimo alleges in detail that design patents are rejected when the ornamentation they claim is primarily functional.  *Id.* at 13.  Hence, information indicating the claimed designs are functional is highly material to a design patent application.  *Id.*  For example, Masimo alleges that a utility patent (the '912 Publication) describes the convex protrusion, arc-shaped ECG sensors, and photodiodes as functional.  *Id.* at 13-14.  Masimo explains that this information in the '912 Publication was material to the patentability of the applications that issued as the Sensor Design Patents.  Masimo further alleges that concealment of that information was but-for material to the issuance of the Sensor Design Patents because, had it been disclosed, the Sensor Design Patents would not have issued.  *Id.* at 14.

**B.    Masimo Alleges The Who, What, Where, When And How Of The Concealment Of The Functionality And Non-Ornamentality Of The Claimed Designs**

Masimo specifically identifies Jeffrey Myers and each Named Design Inventor as individuals who affirmatively concealed from the PTO the functionality and non-ornamentality of

the designs for the convex protrusion, arc-shaped ECG sensors, and photodiodes that were claimed as ornamental in the Sensor Design Patents.

Masimo alleges Mr. Myers:

- Selected different law firms to prosecute the utility patents and the design patents to compartmentalize information about the related patents so the law firms would not disclose material information about the functionality and non-ornamentality of the convex protrusion, arc-shaped ECG sensors, and photodiodes claimed in the design patents.

- Knew that the '912 Publication (utility application) disclosed that the designs claimed in the Sensor Design Patents were functional and non-ornamental.

- Knew that the designs claimed in the Sensor Design Patents were functional, non-ornamental, and resulted from development of functional aspects of the Apple Watch, including features present in the original Apple Watch Series 0 in 2015.

- Affirmatively concealed the '912 Publication, concealed the functional nature of the claimed designs, and concealed that the claimed designs resulted from development of functional features of the Apple Watch.

- Intended to deceive the PTO into improperly allowing the Sensor Design Patents—the single most reasonable inference from his alleged conduct.

*Id*. at 12-14, 20-21.

Masimo alleges that the Named Design Inventors:

- Knew the designs claimed in the Sensor Design Patents resulted from development of functional aspects of the Apple Watch, and knew the designs were not created for the purpose of ornamenting the article in which they are embodied.

- Affirmatively concealed the functional nature of the claimed designs and concealed that they resulted from development of functional features of the Apple Watch.

- Intended to deceive the PTO into improperly allowing the Sensor Design Patents—the single most reasonable inference.

*Id*. at 14-15, 20-21.

**C.     Masimo Pleads Particularized Facts Showing Concealment of The Correct Inventors Who Conceived the Designs Claimed in the Sensor Design Patents**

Masimo also pleads the public-record facts showing that the sensor designs claimed in the Sensor Design Patents were not conceived by the Named Design Inventors but rather the Named Utility Inventors.  That information was never provided to the PTO.  D.I. 31 at 21-22.

Masimo specifically alleges that the Named Utility Inventors disclosed sensor features in the utility patent applications, including arc-shaped ECG sensors, eight photodiodes and a central circular lens.  *Id*. at 22-31.  Masimo provides detailed charts comparing the arc-shaped ECG sensors, the eight photodiodes, and the circular lenses disclosed in both the utility patent applications and the Sensor Design Patents.  *Id*. at 23-31.  Masimo alleges that the Sensor Design Patents claim designs created during development of the Apple Watch's functional sensor, as disclosed and claimed in the '912 Publication and in multiple utility patents.  *Id*. at 31. Masimo alleges the Named Utility Inventors, not the Named Design Inventors, conceived those same designs, including the arc-shaped ECG sensors, eight photodiodes, and central circular lens.

Masimo alleges in detail the materiality of proper inventorship, including the statutory requirements that the application include all inventors, and only those inventors, who contributed to the conception of the claimed invention.  *Id*. at 31-32.  Masimo explains that a patent is invalid if it does not name all the inventors, and that each inventor must execute a declaration.  *Id*. Masimo's allegations also explain that, during prosecution, an Examiner should issue a rejection

upon determining that inventorship is incorrect. *Id*. at 32. Masimo alleges the identity of the true inventors was highly material and, but for misrepresentation and concealment regarding inventorship, the PTO would not have issued the Sensor Design Patents. *Id*. Masimo further alleges that, had true inventorship been disclosed, the Sensor Design Patent claims would have been rejected based on intervening prior art (such as the '912 Publication) because the Sensor Design Patents could not have claimed priority to U.S. Patent No. D882,563. *Id*.

**D.** **Masimo Alleges The Who, What, Where, When And How Of The Concealment Of Proper Inventorship**

Masimo specifically identifies Jeffrey Myers and each of the Named Design Inventors as individuals who affirmatively misrepresented and deliberately concealed the inventorship of the Sensor Design Patents before the PTO. In particular, Masimo alleges that Mr. Myers:

- Had a duty to disclose information material to patentability and breached that duty.

- Affirmatively misrepresented who should be named as inventors and concealed the identity of the inventors who should have been named as inventors of the Sensor Design Patents with intent to deceive the PTO.

- Affirmatively misrepresented the correct inventorship because he knew that, if he identified the correct inventors, the applications would no longer have priority to the originally-filed design patent and the PTO would have known the claimed designs were functional.

- Deliberately concealed his knowledge that inventorship was incorrect, and the single most reasonable inference from that concealment is that he intended to mislead the PTO into improperly allowing the Sensor Design Patents.

D.I. 31 at 21, 32. Masimo's pleading also alleges that the Named Design Inventors:

- Affirmatively misrepresented the correct inventorship because they knew that, if they identified the correct inventors, the applications would no longer have priority to the originally-filed design patent and the PTO would have known the claims were functional.

- Affirmatively misrepresented who should be named as inventors and concealed the identity of the inventors who should have been named as inventors of the Sensor Design Patents with intent to deceive the PTO.

- Deliberately concealed their knowledge that inventorship of the Sensor Design Patents was incorrect, and the single most reasonable inference from their concealment is that they intended to mislead the PTO into improperly allowing the Sensor Design Patents.

Taken as a whole, Masimo's allegations easily satisfy the plausibility requirements. Masimo (1) pleads public-record facts that bespeak fraud, (2) alleges particularized conduct of individuals involved in the fraud, and (3) alleges deceptive intent supported by underlying facts sufficient for the Court to reasonably infer such intent. Masimo's pleading establishes a "reasonably founded hope that the [discovery] process will reveal relevant evidence." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 (2007).

## LEGAL STANDARDS

A court considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) must accept all factual allegations as true and consider them in the light most favorable to the nonmovant. *See Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 401 (D. Del. 2009). A court considering a Rule 12(f) motion to strike, which is generally disfavored, must construe all facts in favor of the nonmovant and deny the motion if the defense is sufficient under the law. *Id*; *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 356 (D. Del. 2009). A court should not strike a Rule 12(f) defense unless its insufficiency is "clearly apparent." *Natera, Inc. v. Genosity*

*Inc.*, C.A. No. 20-1352, 2022 WL 767602, at *2 (D. Del. Mar. 14, 2022) (citing *Fesnak & Assocs., LLP v. U.S. Bank Nat'l Ass'n*, 722 F. Supp. 2d 496, 502 (D. Del. 2010)).

Inequitable conduct is sufficiently pled under Rule 9(b) when there are particularized allegations that provide the specific who, what, when, where, and how of the material misrepresentation or omission. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326-27 (Fed. Cir. 2009). Knowledge and intent may be averred generally through factual allegations sufficient for a court to reasonably infer a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive. *Id.* at 1328-29. Inequitable conduct "is rarely disallowed at the pleading stage due to failure to adequately allege scienter." *Lipocine Inc. v. Clarus Therapeutics, Inc.*, C.A. No. 19-622, 2020 WL 4794576, at *8 (D. Del. Aug. 18, 2020).

## ARGUMENT

### A.     Masimo Properly Alleges Particularized Conduct of Specific Individuals

Apple argues that allegations that reference "Apple," "Others at Apple," "Named Design Inventors" and "Mr. Myers" as a collective group are deficient. D.I. 55 at 12. But Apple's cited cases identify deficiencies only when individuals are not identified by name, such as in "Exergen, its agents and/or attorneys." None of Apple's cases indicates any impropriety in attributing alleged conduct to a named individual in addition to alleging others who may also have been involved. Apple has provided no basis to find any "who" deficiency with any of Masimo's allegations concerning Jeffrey Myers's conduct, knowledge, or intent.

Apple also argues that Masimo's allegations suffer from a "who" deficiency when referring to the "Named Design Inventors." *Id.* at 14-15. But Masimo merely saves space by defining a term instead of repeating 21 names. The "who" requirement is met so long as the allegations "could be understood to accuse each of the members of a known, clearly ascertainable group."

*Int'l Bus. Machines Corp. v. Priceline Grp., Inc.*, 2017 WL 1349175, at *9 (D. Del. Apr. 10, 2017). Masimo's allegations expressly define "Named Design Inventors" to mean twenty-one distinct individuals, naming each individual. D.I. 31 at 12-13. Masimo consistently and properly alleges the same conduct, knowledge, and intent for all of the Named Design Inventors.

Some of Masimo's allegations refer to multiple individuals and groups. But, unlike the deficiencies in Apple's cited cases, D.I. 55 at 13-15, Masimo's allegations never use "or" or "and/or" to separate any identified individuals and groups. Masimo alleges that many people knew of and were involved in the fraud, but Masimo's allegations create no ambiguity or uncertainty as to who committed the specified conduct or possessed the specified knowledge and intent. Moreover, Masimo's occasional use of "and others" in some allegations does nothing to negate Masimo's precision in identifying individuals (e.g., "Mr. Myers," "the Named Design Inventors").

## B.  Masimo Plausibly Alleges Mr. Myers Had a Duty of Disclosure

Apple argues that Masimo pleads no facts showing Mr. Myers had a duty of disclosure. D.I. 55 at 11. But Apple ignores the detailed allegations that Mr. Myers selected one law firm "to prosecute utility patent applications that resulted in the '912 Publication" and selected another law firm "to prosecute design patent applications that resulted in the issuance of the Sensor Design Patents." D.I. 31 at 12. Apple also ignores Masimo's allegation that "Mr. Myers and others at Apple compartmentalized information about these highly related patents" so his selected law firms would not disclose material information. *Id*. An employee that oversees patents and uses that power to withhold or disclose prior art has "substantive involvement" under 37 C.F.R. 1.56(c). *See, Polara Eng'g, Inc. v. Campbell Co.*, 2014 WL 12584441, at *2 (C.D. Cal. Nov. 4, 2014) (alleging president "supervised the patent application" sufficiently pleaded "who" element of inequitable conduct). Indeed, it is hard to see how Mr. Myers's involvement in dictating and avoiding disclosure of material information in related patent applications would not be substantive.

Apple cites *EMC Corp. v. Pure Strategies, Inc.*, 2014 WL 5795557 (D. Del. Nov. 5, 2014),

and *Certainteed Gypsum, Inc. v. Pac. Coast Bldg. Prods., Inc.*, 2021 WL 5449073 at *8 (N.D. Cal.

Nov. 22, 2021).  But the plaintiff in *EMC* did not "offer[] any particularized allegations" beyond

the listing of two attorneys as having power of attorney.  2014 WL 5795557 at *2.  And the plaintiff

in *Certainteed Gypsum* failed to allege any decisions relating to prosecution.

Here, the PTO website (of which the Court can take judicial notice as official government

records) lists Mr. Myers as one of a few Apple employees with "Power of Attorney" for the Sensor

Design Patents.  Horne Decl., Exs. 1-3.[1]  Apple uses a "customer number" to "[s]ubmit a list of

patent practitioners such that those patent practitioners associated with the Customer Number

would have power of attorney."  37 C.F.R. § 1.32.  This confirms the plausibility of Masimo's

allegation that he was substantively involved in the concealment and compartmentalization of

material information.  *See Honeywell Int'l Inc. v. Maltseff*, 2014 WL 3360334, at *2 (W.D. Wash.

July 9, 2014) (denying summary judgment because "appearance on a customer number may

nonetheless be one indication of substantive involvement.").

In sum, Masimo specifically pleads facts that plausibly allege that Mr. Myers had a duty to

disclose to the PTO information material to patentability.  D.I. 31 at 12.

## C.     Masimo Pleads Facts from which the Court Can Reasonably Infer that Specific Individuals Knew that the Purported Sensor Designs were Functional and Non-Ornamental and that Inventorship of the Sensor Design Patents was Incorrect

Apple argues that Masimo failed to plead facts sufficient to permit a reasonable inference

that specific individuals had knowledge of material information.  D.I. 55 at 18-21.  To the contrary,

Masimo's allegations set forth sufficient facts for the Court to reasonably infer that Mr. Myers and

---

[1] Exhibits are appended to the declaration of Brian Horne, filed concurrently herewith.

the Named Design Inventors knew the claimed designs were functional and non-ornamental, and that inventorship of the Sensor Design Patents was incorrect.

Apple overlooks the numerous allegations that show both the shape of the dome (highlighted in red below) and the configurations of the biological sensors (highlighted in green and blue below) in the utility patents are substantially identical to the dome and sensor designs claimed in the Sensor Design Patents, including the examples below:

| Sensor Design Patents | Utility Patents |
|---|---|
|  |  |
|  |  |

D.I. 31 at 23-31,

Masimo also alleges that the utility patent filings began nine months earlier than the Sensor Design Patent filings. *Id*. at 11-12. That timing indicates the sensor designs resulted from prior development of the Apple Watch's ***functional*** biological sensors. The allegations include figures from the Sensor Design Patents depicting a ***completed*** Apple Watch, further showing the claimed designs resulted from prior development of the functional sensors. Exemplary figures of the completed Apple Watch included in Masimo's pleading are provided below in this section.

Moreover, Apple fails to address the significance of Masimo's further allegations that Mr. Myers assigned prosecution of utility patents on the ***functional*** biological sensors to one law firm and specifically decided to segregate prosecution of design patents on the supposedly ***ornamental*** design of those sensors to a different law firm. *Id*. at 12. In making those decisions, Mr. Myers

would have been aware of the functional biological sensors he asked the first law firm to patent before he gave the same sensors to the second law firm. Masimo's allegations thus plead sufficient facts to reasonably infer that Mr. Myers knew the purported sensor designs were functional and non-ornamental and resulted from development of *functional* aspects of the Apple Watch. Mr. Myers would have this knowledge from simply looking at the figures.

A design patent consists of a brief description of each drawing and a claim that consists of the drawings. Thus, far from Apple's suggestion of material information buried in lengthy references, this case largely involves illustrations that readily show similarity and materiality. D.I. 55 at 19-20. Masimo pleads facts sufficient to reasonably infer Mr. Myers knew the purported sensor designs were functional and non-ornamental and resulted from development of functional aspects of the Apple Watch. D.I. 31 at 20.

Masimo's pleadings also support a reasonable inference that Mr. Myers knew inventorship of the Sensor Design Patents was incorrect. As explained above, Mr. Myers was aware of the functional biological sensor configurations when he assigned them to the first law firm to seek utility patents. And he was aware of the purported sensor designs when he assigned them to a second law firm to seek design patents. These allegations, combined with the nine months between the patent filings, suffice to reasonably infer that Mr. Myers knew the Named Design Inventors did not invent the purported designs claimed in the Sensor Design Patents.

Masimo also pleads sufficient facts for the Court to reasonably infer that the Named Design Inventors knew the claimed designs were functional and non-ornamental, and that inventorship was not correct. Masimo pleads, and it must be accepted as true, that the Named Design Inventors had exposure to the development of the Apple Watch. D.I. 31 at 14-15. That exposure is corroborated by the Sensor Design Patents, which include drawings of the back of the *completed*

Apple Watch sensor module, including the functional shape of the dome and the biological sensors disclosed earlier in utility patent filings.  For example, the Sensor Design Patents, include the following drawings (from left to right, U.S. Patent Nos. D883,279, D947,842, and D962,936):



It is not believable that the Named Design Inventors could have drawn the Apple Watch with a *completed* sensor module without exposure to development of the Apple Watch.  That is particularly true because the '912 Publication, filed nine months earlier, showed the sensor module having the functional dome and biological sensor configurations in the back of a rectangular watch:



Contrary to Apple's arguments, Masimo expressly pleads these comparative rear-facing figures, and thus sufficiently pleads that the Named Design Inventors were exposed to the development process for the Apple Watch.  *See* D.I. 31 at 32.  Masimo's allegations are sufficient to reasonably infer that the Named Design Inventor knew the designs claimed in the Sensor Design Patents were the functional and non-ornamental result of developing the Apple Watch, and were not created for the purpose of ornamenting anything.

Masimo's allegations that the twenty-one Named Design Inventors knew the designs they claimed were functional aspects of the Apple Watch are also sufficient to reasonably infer that

each Named Design Inventors knew he or she had not invented the designs and thus, the assertions

of inventorship were incorrect. *See id.* at 12-13, 31-32.

In sum, Masimo properly pleads knowledge of material information.

**D.     Masimo Plausibly Alleges Facts from which the Court Can Reasonably Infer that
Specific Individuals Withheld Material Information with Deceptive Intent**

Apple argues that Masimo failed to plead facts sufficient to permit a reasonable inference

that specific individuals withheld material information with deceptive intent.  D.I. 55 at 18-21.

Apple is wrong.   Masimo pleads facts showing Mr. Myers and the Named Design Inventors

understood the consequences that the material information could have in trying to obtain the

Sensor Design Patents.   "It is reasonable to infer that an applicant who is aware of material prior

art and the possible adverse effect that disclosure could have on the application would have an

incentive to conceal the prior art."   *EIS, Inc. v. WOW Tech Int'l GmbH*, C.A. No. 19-1227-LPS,

2020 WL 7027528, at *11 (D. Del. Nov. 30, 2020) (quoting *Zadro Prods. Inc. v. SDI Techs., Inc.*,

2019 WL 1100470, at *5 & n.4 (D. Del. Mar. 8, 2019)).

In addition to pleading Mr. Myers's awareness of material information, Masimo further

alleges that he specifically compartmentalized information about the related patents so that the law

firm to which he assigned the design patent applications would not know the but-for material

information.  D.I. 31 at 12.   Apple cites extrinsic evidence to argue it has regularly retained

different law firms to handle patent prosecution and IPR proceedings.  D.I. 55 at 17.   At best,

however, Apple cherry-picks evidence to contradict Masimo's pleadings.   Other extrinsic evidence

shows that Apple *has* employed the same firm to argue IPRs and prosecute monitoring and sensing

patents.   *See* Horne Decl., Exs. 4-6.   Moreover, Apple's assertion that it may have innocently

compartmentalized information in connection with other patent filings in no way diminishes that

the pleaded conduct provides a sufficient basis to reasonably infer deceptive intent.  D.I. 55 at 22.

Masimo alleges facts showing that Mr. Myers concealed and withheld this material information from the PTO because he knew it would have resulted in the PTO rejecting the claims. D.I. 31at 21, 32.  The most reasonable inference is that Mr. Myers acted with intent to deceive the PTO into issuing the Sensor Design Patents.

As explained above, Masimo also pleads that the Named Design Inventors were aware of material information.  Masimo's allegations show they had incentive to conceal the information and expressly declared before the PTO that they invented the purported ornamental designs.  *E.g.*, U.S. Patent No. D883,279 (Naming all twenty-one of the Named Design Inventors and stating, "CLAIM:  The ornamental design for an electronic device, as shown and described.")  Disclosing the claimed designs were non-ornamental or that others had invented the claimed designs would have revealed their false, and likely perjurous, declarations of inventorship.

Masimo's pleadings thus support the reasonable inference that the Named Design Inventors had incentive and acted to conceal: (1) the functional and non-ornamental nature of the claimed designs, (2) that the designs resulted from development of functional features of the Apple Watch, and (3) that the claimed designs were invented by others.  The most reasonable inference is that the Named Design Inventors misrepresented and concealed this material information to deceive the PTO into improperly allowing the Sensor Design Patents.  Thus, Masimo's allegations satisfy the pleading-stage requirements for alleging that specific individuals acted with deceptive intent.

E.    **Masimo Properly Alleges Information as But-For Material to the Patentability of the Sensor Design Patents**

Apple argues that Masimo's allegations fail to sufficiently plead but-for materiality. On this argument, however, Apple questions only the sufficiency of allegations concerning but-for materiality of the purported sensor designs being functional and non-ornamental.  Apple presents no argument challenging the sufficiency of Masimo's allegations that incorrect inventorship on

the Sensor Design Patents is but-for material.  As Masimo need plead only one sufficient theory in support of its claim, Apple's other arguments are irrelevant.  They are also improperly directed toward the merits, not Masimo's pleadings.

Masimo alleges with particularity that Mr. Myers and the Named Design Inventors concealed the analogous utility patents and applications because they knew this information would have caused the PTO to reject the Sensor Design Patents.  *See, e.g.*, D.I. 31 at 21.  Masimo pleads facts indicating that "[t]he Patent Office instructs Patent Examiners that a 'specification of an analogous utility patent' evidencing a claimed design lacks ornamentality can be cited as evidence supporting an Examiner's rejection." *Id*. at 14.

Masimo also alleges in detail numerous ways in which the specifications of the concealed utility filings describe the shapes and arrangements of the claimed designs as functional. *Id*. at 15-20.  Masimo alleges the '211 Patent identified the dome shape as functional because "the user must have both the transmit and the receive windows in direct and intimate contact with their skin, preferably with enough force to push the window into their skin so that [it] displaces not only arterial blood 270, but also a substantial amount of lower pressure venous blood 275." *Id.* at 19.  Masimo alleges Apple argued before the ITC that "the shape, a dome shape of the watch, has been constant since the [Apple Watch] Series 0. And the reason for that domed, curved shape, there are multiple reasons, one of which has to do with charging." *Id.* at 18.  Masimo further alleges the '912 Publication disclosed that "[t]he first and second electrodes … may be arc-shaped (e.g. semi-circle-shaped) and that its claim 9 required that "the first electrode is arc-shaped" and "the second electrode is arc-shaped[.]" *Id.* at 19.  These facts plausibly allege the claimed design of the dome and the sensor was both functional and invented by others, and "was but-for material to the issuance of the Sensor Design Patents." *Id.* at 20.  The Court accepts Masimo's particularized

allegations as true because Apple's motion tests the sufficiency of Masimo's pleading—not the merits.  *See, e.g.*, *Meyers v. Heffernan*, 740 F. Supp. 2d 637, 641 (D. Del. 2010).

Apple argues that an alternative design could accomplish the sensor configuration described as functional in the '912 Publication.  D.I. 55 at 23-24.  Apple argues that the supposed availability of an alternative design indicates that the references it withheld from the PTO may not have invalidated the Sensor Design Patents.  *Id*. at 25.  Apple's "alternative design" argument hinges on a handful of instances in which the word "may" appears in the '912 Publication, including the "carrier 404 may be dome-shaped" or the "electrodes 412, 414 may be arc-shaped." But the '912 Publication discloses no alternative designs, and Apple ignores that one of the claims requires arc-shaped electrodes.  Apple also provides no authority indicating that use of the word "may," without more, conclusively establishes the existence of an alternative design, as opposed to recognizing its theoretical possibility.  The numerous figures from the '912 Publication show no alternative designs.  Thus, even if the Court were inclined to consider this dispute, Apple fails to show any deficiency in Masimo's pleading of the but-for materiality of the functionality and non-ornamentality of the purported sensor designs.

Moreover, Apple's own cases recognize that alternative designs are merely one factor in evaluating functionality and even the existence of "several ways to achieve the function of an article of manufacture" is "not dispositive[.]"  *Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, 930 F.3d 1314, 1319 (Fed. Cir. 2019).  Apple's factual arguments may be relevant at trial, but they do not defeat the sufficiency of Masimo's pleading of but-for materiality.

## F.    Masimo Properly Pleads Infectious Unenforceability

When withheld material information results in a finding of inequitable conduct, the inequitable conduct extends to any related patents to which the withheld information is also material.  *See Baxter Int'l., Inc. v. McGaw, Inc*., 149 F.3d 1321, 1332 (Fed. Cir. 1998) (refusing to

extend unenforceability to patent whose claims had no relation to omitted prior art).  Infectious unenforceability is not necessary to render unenforceable the asserted patents, all of which are directly implicated by the allegations of inequitable conduct.  Apple is merely quibbling about the potential scope of relief beyond the Sensor Design Patents.  Apple is also wrong.

Masimo's pleading limits unenforceability to additional patents that are "child" patents or related patents based on the same specification or relevant portions thereof.  D.I. 31 at 32-33.  Other design patents having the "same specification or relevant portions thereof" would encompass only additional patents to which the withheld information is material.

Apple argues Masimo's allegation is vague and conclusory and cites the *Power Integrations* case as support.  D.I. 55 at 25.  However, unlike Masimo's pleading here, the pleading in *Power Integrations* failed to tie the infectious unenforceability to the relevance of information found to be material and improperly withheld.  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc*., 2009 WL 4928024, at *9 (D. Del. Dec. 18, 2009).  The Court should not dismiss Masimo's allegations concerning the extended effect of Apple's inequitable conduct.

## CONCLUSION

For the reasons detailed above, Masimo respectfully requests that the Court deny Apple's Motion.

Respectfully submitted,

March 28, 2023

PHILLIPS MCLAUGHLIN & HALL, P.A.

By: */s/ John C. Phillips, Jr.*

*Of Counsel:*

Joseph R. Re
Stephen C. Jensen
Benjamin A. Katzenellenbogen
Stephen W. Larson

John C. Phillips, Jr. (No. 110)
Megan C. Haney (No. 5016)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200 Telephone
(302) 655-4210 Fax

Jared C. Bunker
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA  92614
(949) 760-0404 Telephone
(949) 760-9502 Facsimile
joe.re@knobbe.com
steve.jensen@knobbe.com
Stephen.larson@knobbe.com
Ben.katzenellenbogen@knobbe.com
Jared.bunker@knobbe.com

Brian Horne
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450 Telephone
(310) 551-3458 Facsimile
brian.horne@knobbe.com

Adam Powell
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
(858) 707-4000 Telephone
(858) 707-4001 Facsimile
adam.powell@knobbe.com

jcp@pmhdelaw.com
mch@pmhdelaw.com

*Counsel for Defendants*
*Masimo Corporation and Sound United, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2023, a true and correct copy of the foregoing document

was served on the following counsel of record at the addresses and in the manner indicated:

*VIA ELECTRONIC MAIL:*

| | |
|---|---|
| David E. Moore<br>Bindu A. Palapura<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>Wilmington, DE 19801<br>dmoore@potteranderson.com<br>bpalapura@potteranderson.com | Peter C. Magic<br>DESMARAIS LLP<br>101 California Street<br>San Francisco, CA 94111<br>pmagic@desmaraisllp.com |
| John M. Desmarais<br>Kerri-Ann Limbeek<br>Cosmin Maier<br>Jordan N. Malz<br>Benjamin N. Luehrs<br>Joze Welsh<br>Jamie L. Kringstein<br>DESMARAIS LLP<br>230 Park Avenue<br>New York, NY 10169<br>jdesmarais@desmaraisllp.com<br>klimbeek@desmaraisllp.com<br>cmaier@desmaraisllp.com<br>jmalz@desmaraisllp.com<br>bluehrs@desmaraisllp.com<br>jwelsh@desmaraisllp.com<br>jkringstein@desmaraisllp.com | Jennifer Milici<br>Dominic Vote<br>Leon B. Greenfield<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>1875 Pennsylvania Avenue, NW<br>Washington DC 20006<br>jennifer.milici@wilmerhale.com<br>dominic.vote@wilmerhale.com<br>leon.greenfield@wilmerhale.com |
| Mark A. Ford<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>60 State Street<br>Boston, MA 02109<br>mark.ford@wilmerhale.com | |

March 28, 2023

/s/ Megan C. Haney
Megan C. Haney (#5016)