# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| APPLE INC., | |
| *Plaintiff*, | |
| v. | C.A. No. 22-1377-MN-JLH |
| MASIMO CORPORATION and SOUND UNITED, LLC, | **JURY TRIAL DEMANDED** |
| *Defendants*. | |
| MASIMO CORPORATION, | |
| *Counter-Claimant*, | |
| v. | |
| APPLE INC. | |
| *Counter-Defendant*. | |
| APPLE INC., | |
| *Plaintiff*, | |
| v. | C.A. No. 22-1378-MN-JLH |
| MASIMO CORPORATION and SOUND UNITED, LLC, | **JURY TRIAL DEMANDED** |
| *Defendants*. | |
| MASIMO CORPORATION and CERCACOR LABORATORIES, INC., | |
| *Counter-Claimants*, | |
| v. | |
| APPLE INC. | |
| *Counter-Defendant*. | |

**AGREED PROTECTIVE ORDER – PAGE 1**

**AGREED PROTECTIVE ORDER**
**REGARDING THE DISCLOSURE AND USE OF DISCOVERY MATERIAL**

Plaintiff and Counter-Defendant Apple Inc. ("Plaintiff"), Defendants and Counter-Claimants Masimo Corporation and Sound United, LLC and Counter-Claimant Cercacor Laboratories, Inc. (together, "Masimo") anticipate that documents, testimony, or information containing or reflecting confidential, proprietary, trade secret, and/or commercially sensitive information are likely to be disclosed or produced during the course of discovery, initial disclosures, and supplemental disclosures in these cases and request that the Court enter this Order setting forth the conditions for treating, obtaining, and using such information.

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Court finds good cause for the following Agreed Protective Order Regarding the Disclosure and Use of Discovery Material ("Order" or "Protective Order").

1. **PURPOSES AND LIMITATIONS**

(a) Protected Material designated under the terms of this Protective Order shall be used by a Receiving Party solely for these cases, and shall not be used directly or indirectly for any other purpose whatsoever.

(b) The Parties acknowledge that this Order does not confer blanket protections on all disclosures during discovery, or in the course of making initial or supplemental disclosures under Rule 26(a). Designations under this Order shall be made with care and shall not be made absent a good faith belief that the designated material satisfies the criteria set forth below. If it comes to a Producing Party's attention that designated material does not qualify for protection at all, or does not qualify for the level of protection initially asserted, the Producing Party must promptly notify all other Parties that it is withdrawing or changing the designation.

**AGREED PROTECTIVE ORDER – PAGE 2**

(c)     <u>Other Proceedings.</u> By entering this order and limiting the disclosure of information in these cases, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a request or motion that would require disclosure of another party's information designated "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE," pursuant to this Order shall promptly notify that party of the request or motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

2.     **<u>DEFINITIONS</u>**

(a)     "Affiliate" means any corporation, company, or other business entity over which a Party has the power to direct or cause the direction of the management, policies, or legal actions through: (1) at least 50% ownership of voting securities; or (2) contract; or (3) other means.

(b)     "Discovery Material" means all items or information, including from any non-party, regardless of the medium or manner generated, stored, or maintained (including, among other things, testimony, transcripts, or tangible things) that are produced, disclosed, or generated in connection with discovery or Rule 26(a) disclosures in these cases.

(c)     "Outside Counsel" means (i) outside counsel who appear on the pleadings as counsel for a Party and (ii) partners, associates, and staff of such counsel to whom it is reasonably necessary to disclose the information for this litigation.

(d)     "Patents-in-suit" means U.S. Patent Nos. D735,131, D883,279, D947,842, D962,936, 10,076,257, 10,627,783, 10,942,491, 10,987,054, 11,106,352, 11,474,483, 10,912,501, 10,912,502, 10,945,648, 10,687,743, 10,687,745, 10,722,159, 7,761,127, 8,190,223, 10,736,507,

**AGREED PROTECTIVE ORDER – PAGE 3**

and 10,984,911 and any other patent asserted in these cases, as well as any related patents, patent applications, provisional patent applications, continuations, and/or divisionals.

      (e)    "Party" means any party to these cases, including all of its officers, directors, employees, consultants, vendors, retained experts, and outside counsel and their support staffs.

      (f)    "Producing Party" means any Party or non-party that discloses or produces any Discovery Material in these cases.

      (g)    "Protected Material" means any Discovery Material that is designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE," as provided for in this Order. Protected Material shall not include:  (i) advertising materials that have been actually published or publicly disseminated; and (ii) materials that show on their face they have been disseminated to the public.

      (h)    "Receiving Party" means any Party who receives Discovery Material from a Producing Party.

      (i)    "Source Code" means computer code, scripts, assembly, binaries, object code, source code listings (e.g., file names and path structure), descriptions of source code (e.g., descriptions of declarations, functions, and parameters), object code listings and descriptions of object code, Hardware Description Language (HDL) or Register Transfer Level (RTL) files that describe the hardware design of any ASIC or other chip, and native Computer Aided Design (CAD) files that describe the hardware design of any component, the disclosure of which to another Party or non-party is likely to cause harm or competitive disadvantage to the Producing Party.  To avoid any doubt, still images of CAD files are not Source Code and will not be subject to the

**AGREED PROTECTIVE ORDER – PAGE 4**

disclosure and review restrictions in Section 11.  Still images of CAD files may be designated as "CONFIDENTIAL" or "CONFIDENTIAL - ATTORNEYS' EYES ONLY," as provided for in this Order.

3.   **COMPUTATION OF TIME**

The computation of any period of time prescribed or allowed by this Order shall be governed by the provisions for computing time set forth in Federal Rules of Civil Procedure 6.

4.   **SCOPE**

(a)   The protections conferred by this Order cover not only Discovery Material governed by this Order as addressed herein, but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by Parties or their counsel in court or in other settings that might reveal Protected Material.

(b)   Nothing in this Protective Order shall prevent or restrict a Producing Party's own disclosure or use of its own Protected Material for any purpose, and nothing in this Order shall preclude any Producing Party from showing its Protected Material to an individual who prepared the Protected Material.

(c)   Nothing in this Order shall be construed to prejudice any Party's right to use any Protected Material with the consent of the Producing Party or by order of the Court.

(d)   This Order is without prejudice to the right of any Party to seek further or additional protection of any Discovery Material or to modify this Order in any way, including, without limitation, an order that certain matter not be produced at all.

(e)     Any use of Protected Material at trial shall be governed by the orders of the trial judge and other applicable authorities.  This Order does not govern the use of Protected Material at trial.

5.     **DURATION**

Even after the termination of these cases, the confidentiality obligations imposed by this Order shall remain in effect until a Producing Party agrees otherwise in writing or a court order otherwise directs.

6.     **ACCESS TO AND USE OF PROTECTED MATERIAL**

(a)     Basic Principles.  All Protected Material shall be used solely for these cases or any related appellate proceedings, and not for any other purpose whatsoever, including without limitation, any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function.  Protected Material shall not be distributed, disclosed, or made available to anyone except as expressly provided in this Order.

(b)     Patent Prosecution Bar.  After the adoption of this provision by the parties, Outside Counsel and any person associated with a Party who receives a Producing Party's material designated "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" under this Protective Order or who has access to, accesses, or otherwise learns of, in whole or in part, said material designated "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" under this Protective Order shall not: (i) prepare, prosecute, supervise, advise, counsel, or assist in the preparation or prosecution of any patent application seeking a patent on behalf of the Receiving Party or its acquirer, successor, predecessor, or Affiliate in the field of non-invasive monitoring and/or consumer wearables (generally or as

described in any patent in suit) during the pendency of this Action and for two years after final termination of this action, including all appeals.; or (ii) advise on or consult on the acquisition of patents (including patent applications), or the rights to any such patents or patent applications with the right to sublicense, in the field of non-invasive monitoring and/or consumer wearables (generally or as described in any patent in suit) during the pendency of this Action and for two years after final termination of this action, including all appeals, for assertion against or licensing to a Party or its acquirer, successor, predecessor, or Affiliate.  To avoid any doubt, "prosecution" as used in this section does not include representing or advising a Party before a domestic or foreign agency in connection with a reissue, ex parte reexamination, covered business method review, inter partes review, opposition, cancelation, or similar proceeding; though in connection with any such foreign or domestic agency proceeding involving the patents-in-suit, any attorney who has access to, accesses, obtains, receives, or otherwise learns, in whole or in part, any other Party's "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" shall not: (i) participate in the preparation, prosecution, supervision, advice, counsel, or assistance of any amended claims; (ii) reveal a Producing Party's Protected Material to any prosecuting reexamination counsel or agent; or (iii) use a Producing Party's Protected Material for any purpose not permitted by Section 1.  Further, nothing in this Order shall prohibit the acquisition of patents or patent applications for assertion against or licensing to any entity other than a Party or its acquirer, successor, predecessor, or Affiliate.

      (c)    <u>Secure Storage, No Export</u>. Protected Material must be stored and maintained by a Receiving Party at a location in the United States and in a secure manner that ensures that access is limited to the persons authorized under this Order.  To ensure compliance

with applicable United States Export Administration Regulations, Protected Material ~~that is subject to export control shall be so marked or designated by the Producing Party and the Receiving Party shall~~may not ~~export it~~be exported outside the United States or ~~release it~~released to any foreign national (even if within the United States).  If this case eventually requires depositions or experts located outside the United States, the parties agree to revisit this issue at that time, and attempt to reach agreement about the export of specific materials to the extent necessary.

(d)  <u>Legal Advice Based on Protected Material</u>. Nothing in this Protective Order shall be construed to prevent counsel from advising their clients with respect to these cases based in whole or in part upon Protected Materials, provided counsel does not disclose the Protected Material itself except as provided in this Order.

(e)  <u>Limitations</u>.  Nothing in this Order shall restrict in any way a Producing Party's use or disclosure of its own Protected Material.  Nothing in this Order shall restrict in any way the use or disclosure of Discovery Material by a Receiving Party: (i) that is or has become publicly known through no fault of the Receiving Party; (ii) that is lawfully acquired by or known to the Receiving Party independent of the Producing Party; (iii) previously produced, disclosed and/or provided by the Producing Party to the Receiving Party or a non-party without an obligation of confidentiality and not by inadvertence or mistake; (iv) with the consent of the Producing Party; or (v) pursuant to order of the Court.

7.  **DESIGNATING PROTECTED MATERIAL**

(a)  <u>Available Designations</u>.  Any Producing Party may designate Discovery Material with any of the following designations, provided that it meets the requirements for such designations as provided for herein: "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS'

EYES ONLY," or "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE."

(b)  <u>Written Discovery and Documents and Tangible Things</u>.  Written discovery, documents (which include "electronically stored information," as that phrase is used in Federal Rule of Procedure 34), and tangible things that meet the requirements for the confidentiality designations listed in Section 7(a) may be so designated by placing the appropriate designation on every page of the written material prior to production.  For digital files being produced, the Producing Party may mark each viewable page or image with the appropriate designation, and mark the medium, container, and/or communication in which the digital files were contained.  In the event that original documents are produced for inspection, the original documents shall be presumed "CONFIDENTIAL – ATTORNEYS' EYES ONLY" during the inspection and re-designated, as appropriate during the copying process.

(c)  Native Files.  Where electronic files and documents are produced in native electronic format, such electronic files and documents shall be designated for protection under this Order by appending to the file names or designators information indicating whether the file contains  "CONFIDENTIAL,"  "CONFIDENTIAL - ATTORNEYS' EYES ONLY,"  or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE," material, or shall use any other reasonable method for so designating Protected Materials produced in electronic format. When electronic files or documents are printed for use at deposition, in a court proceeding, or for provision in printed form to an expert or consultant pre-approved pursuant to Section 12, the party printing the electronic files or documents shall affix a legend to the printed document corresponding to the designation of the Producing Party and including the production number and designation associated with the native file.  The parties reserve the right to object to

**AGREED PROTECTIVE ORDER – PAGE 9**

the use of any image format version of a document produced in native format to the extent any information has been altered.

(d)     Depositions and Testimony.   Parties or testifying persons or entities may designate depositions and other testimony with the appropriate designation by indicating on the record at the time the testimony is given or by sending written notice of how portions of the transcript of the testimony are designated within fifteen (15) days of receipt of the transcript of the testimony. If no indication on the record is made, all information disclosed during a deposition shall be deemed "CONFIDENTIAL – ATTORNEYS' EYES ONLY" until the time within which it may be appropriately designated as provided for herein has passed.  Any Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Protective Order, along with the transcript pages of the deposition testimony dealing with such Protected Material.  In such cases the court reporter shall be informed of this Protective Order and shall be required to operate in a manner consistent with this Protective Order.  In the event the deposition is videotaped, the original and all copies of the videotape shall be marked by the video technician to indicate that the contents of the videotape are subject to this Protective Order, substantially along the lines of "This videotape contains confidential testimony used in this case and is not to be viewed or the contents thereof to be displayed or revealed except pursuant to the terms of the operative Protective Order in this matter or pursuant to written stipulation of the parties."  Counsel for any Producing Party shall have the right to exclude from oral depositions, other than the deponent, deponent's counsel, the reporter and videographer (if any), any person who is not authorized by this Protective Order to receive or access Protected Material based on the designation of such Protected Material.  Such right of exclusion shall be applicable only during periods of examination or testimony regarding such Protected Material.

**AGREED PROTECTIVE ORDER – PAGE 10**

8.      **DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL"**

(a)     A Producing Party may designate Discovery Material as "CONFIDENTIAL" if it contains or reflects confidential, proprietary, and/or commercially sensitive information.

(b)     Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL" may be disclosed only to the following:

(i)     The Receiving Party's Outside Counsel, such counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(ii)    Officers or employees of the Receiving Party, who may be, but need not be, in-house counsel for the Receiving Party, as well as their immediate paralegals and staff, to whom disclosure is reasonably necessary for this case, provided that each such person has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

(iii)   Any outside expert or consultant retained by the Receiving Party to assist in these cases, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party; ~~and (c~~(c) such expert or consultant accesses the materials in the United States only, and does not transport them to or access them from any foreign jurisdiction; and (d) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Section 12 below;

**AGREED PROTECTIVE ORDER – PAGE 11**

(iv)     Witnesses at depositions or hearings in these cases and the witnesses' counsel, provided however that the disclosure shall only be made to: (1) a witness who is ~~an employee of the Producing Party,~~ identified on the document as an author, addressee, or recipient of the material in question, or if there are other indicia (such as from metadata, cover emails, or other records of distribution) that the witness has seen or had access to the document previously; or (2) a witness who has been designated to testify on behalf of the Producing Party on the subject matter of the material in question, provided however that the Protected Material shown to such a witness shall be limited to Protected Material of the Producing Party;

(v)      Court reporters, stenographers and videographers retained to record testimony taken in these cases, and their staff;

(vi)     The Court, jury, and court personnel;

(vii)    Graphics, translation, design, trial consulting personnel, and/or other professional vendors, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

(viii)   Mock jurors having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A.

(ix)     Any mediator who is assigned to hear these matters, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(x)      Any other person with the prior written consent of the Producing Party.

**AGREED PROTECTIVE ORDER – PAGE 12**

9.      **DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL – ATTORNEYS' EYES ONLY"**

(a)     A Producing Party may designate Discovery Material as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" if it contains or reflects information that is extremely confidential and/or sensitive in nature and the Producing Party reasonably believes that the disclosure of such Discovery Material is likely to cause harm or significant competitive disadvantage to the Producing Party.  The Parties agree that the following information, if non-public, shall be presumed to merit the "CONFIDENTIAL – ATTORNEYS' EYES ONLY" designation:   trade secrets, pricing information, financial data, sales information, sales or marketing forecasts or plans, business plans, sales or marketing strategy, product development information, engineering documents, testing documents, employee information, and other non-public information of similar competitive and business sensitivity.

(b)     Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" may be disclosed only to:

(i)      The Receiving Party's Outside Counsel, provided that such Outside Counsel is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party, and such Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(ii)     Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that:  (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time

**AGREED PROTECTIVE ORDER – PAGE 13**

of retention to become an officer, director, or employee of a Party or of a competitor of a Party; (c) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party; ~~and (d~~(d) such expert or consultant accesses the materials in the United States only, and does not transport them to or access them from any foreign jurisdiction; and (e) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Section 12 below;

(iii)    Witnesses at depositions or hearings in these cases and the witnesses' counsel, provided however that the disclosure shall only be made to: (1) a witness who is ~~an employee of the Producing party,~~ identified on the document as an author, addressee, or recipient of the material in question, or if there are other indicia (such as from metadata, cover emails, or other records of distribution) that the witness has seen or had access to the document previously; or (2) a witness who has been designated to testify on behalf of the Producing Party on the subject matter of the material in question, provided however that the Protected Material shown to such a witness shall be limited to Protected Material of the Producing Party;

(iv)    Court reporters, stenographers and videographers retained to record testimony taken in this action, and their staff;

(v)    The Court, jury, and court personnel;

(vi)    Graphics, translation, design, trial consulting personnel, and/or other professional vendors, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

**AGREED PROTECTIVE ORDER – PAGE 14**

(vii)   Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(viii)   Any other person with the prior written consent of the Producing Party.

(c)   In addition, a Party may disclose arguments and materials derived from Discovery Material designated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" to mock jurors who have signed an undertaking or agreement agreeing not to publicly disclose Protected Material and to keep any information concerning Protected Material confidential.  A Party may not disclose to mock jurors any original, as-produced materials or information (including, for example, documents, deposition testimony, or interrogatory responses) produced by another Party designated as "CONFIDENTIAL - ATTORNEYS' EYES ONLY."

10.   **DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE"**

(a)   To the extent production of Source Code becomes necessary to the prosecution or defense of the cases, a Producing Party may designate Source Code as "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" if it comprises or includes confidential, proprietary, and/or trade secret Source Code.

(b)   Nothing in this Order shall be construed as a representation or admission that Source Code is properly discoverable in these cases, or to obligate any Party to produce any Source Code.

(c)   Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" shall be

subject to the provisions set forth in Section 11 below, and may be disclosed, subject to Section 11 below, solely to:

(i)       The Receiving Party's Outside Counsel, provided that such Outside Counsel is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party, and such Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(ii)      Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party; (c) such expert or consultant accesses the materials in the United States only, and does not transport them to or access them from any foreign jurisdiction; (d) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party; and (de) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Section 12 below;

(iii)     Witnesses at depositions or hearings in these cases and the witnesses' counsel, provided however that the disclosure shall only be made to: (1) a witness who is identified on the document as an employeeauthor, addressee, or recipient of the Producing partymaterial in question, or if there are other indicia (such as from metadata, cover

**AGREED PROTECTIVE ORDER – PAGE 16**

emails, or other records of distribution) that the witness has seen or had access to the ~~materials~~document previously; or (2) a witness who has been designated to testify on behalf of the Producing Party on the subject matter of the material in question, provided however that the Protected Material shown to such a witness shall be limited to Protected Material of the Producing Party;

(iv)    Court reporters, stenographers and videographers retained to record testimony taken in this action, and their staff;

(v)    The Court, jury, and court personnel;

(vi)    Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(vii)    Any other person with the prior written consent of the Producing Party.

11.    **DISCLOSURE AND REVIEW OF SOURCE CODE**

(a)    Any Source Code that is produced by Plaintiff will be made available for inspection at the San Francisco office of its outside counsel, Desmarais LLP, or any other location mutually agreed by the Parties.  Any Source Code that is produced by Masimo will be made available for inspection at the Orange County office of their outside counsel, Knobbe Martens Olsen & Bear LLP, or any other location mutually agreed by the Parties. Source Code will be made available for inspection between the hours of 8 a.m. and 6 p.m. on business days (i.e., weekdays that are not Federal holidays), although the Parties will be reasonable in accommodating reasonable requests to conduct inspections at other times.

**AGREED PROTECTIVE ORDER – PAGE 17**

(b)      Prior to the first inspection of any requested Source Code, the Receiving Party shall provide ten (10) days' notice of its intent to review the Source Code that has been made available by the Producing Party and, if known, the specific Source Code the Receiving Party intends to inspect.  The Receiving Party shall provide seven (7) days' notice prior to any additional inspections.

(c)      Source Code that is designated "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" shall be produced for inspection and review subject to the following provisions, unless otherwise agreed by the Producing Party:

(i)      All Source Code shall be made available by the Producing Party to the Receiving Party's Outside Counsel and/or experts in a secure room on a secured computer without Internet access or network access to other computers and on which all access ports have been disabled (except for one printer port), as necessary and appropriate to prevent and protect against any unauthorized copying, transmission, removal or other transfer of any Source Code outside or away from the computer on which the Source Code is provided for inspection (the "Source Code Computer" in the "Source Code Review Room").  The Producing Party shall install tools that are sufficient for viewing and searching the code produced, on the platform produced, if such tools exist and are presently used in the ordinary course of the Producing Party's business. The Receiving Party's Outside Counsel and/or experts may request that commercially available software tools for viewing and searching Source Code be installed on the secured computer, provided, however, that (a) the Receiving Party possesses an appropriate license to such software tools; (b) the Producing Party approves such software tools (approvals will not be unreasonably denied); and (c) such other software tools are reasonably necessary for the Receiving Party to perform its review of the Source Code consistent with all of the protections herein.  The Receiving

**AGREED PROTECTIVE ORDER – PAGE 18**

Party must provide the Producing Party with the CD or DVD or other media containing such licensed software tool(s) at least seven (7) days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the Source Code Computer.

(ii)     No recordable media or recordable devices, including without limitation sound recorders, computers, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind, shall be permitted into the Source Code Review Room.

(iii)     The Receiving Party's Outside Counsel and/or experts shall be entitled to take notes relating to the Source Code but may not copy the Source Code into the notes and may not take such notes electronically on the Source Code Computer itself or any other computer.

(iv)     The Producing Party may visually monitor the activities of the Receiving Party's representatives during any Source Code review, but only to ensure that no unauthorized electronic records of the Source Code and no information concerning the Source Code are being created or transmitted in any way.

(v)     No copies of all or any portion of the Source Code may leave the room in which the Source Code is inspected except as otherwise provided herein.  Further, no other written or electronic record of the Source Code is permitted except as otherwise provided herein.  The Producing Party shall make available a laser printer with commercially reasonable printing speeds for on-site printing during inspection of the Source Code.  The Receiving Party may print limited portions of the Source Code only when necessary to prepare court filings or pleadings or other papers (including a testifying expert's expert report). The Receiving Party may print the Source Code in 12-point font and with information necessary to later identify that Source Code, such as, but not limited to, a header or footer, that identifies the file name and directory path.

**AGREED PROTECTIVE ORDER – PAGE 19**

Any printed portion that consists of more than fifteen (15) pages of a continuous block of Source Code shall be presumed to be excessive, and the burden shall be on the Receiving Party to demonstrate the need for such a printed copy.  The Receiving Party may print out no more than 200 pages total without prior agreement from the Producing Party or order of the Court. The Receiving Party shall not print Source Code in order to review blocks of Source Code elsewhere in the first instance, i.e., as an alternative to reviewing that Source Code electronically on the Source Code Computer, as the Parties acknowledge and agree that the purpose of the protections herein would be frustrated by printing portions of code for review and analysis elsewhere, and that printing is permitted only when necessary to prepare court filings or pleadings or other papers (including a testifying expert's expert report).  Upon printing any such portions of Source Code, the printed pages shall be collected by the Producing Party.  The Producing Party shall Bates number, copy, and label "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" any pages printed by the Receiving Party.  Within seven (7) days, the Producing Party shall either (i) provide one copy set of such pages to the Receiving Party or (ii) inform the Requesting Party that it objects that the printed portions are excessive and/or not done for a permitted purpose.  If, after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the objection, the Receiving Party shall be entitled to seek a Court resolution of whether the printed Source Code in question is narrowly tailored and was printed for a permitted purpose.  The burden shall be on the Receiving Party to demonstrate that such printed portions are no more than is reasonably necessary for a permitted purpose and not merely printed for the purposes of review and analysis elsewhere.  The printed pages shall constitute part of the Source Code produced by the Producing Party in these cases.

**AGREED PROTECTIVE ORDER – PAGE 20**

(vi)     All persons who will review a Producing Party's Source Code on behalf of a Receiving Party, including members of a Receiving Party's outside law firm, shall be identified in writing to the Producing Party at least five (5) days in advance of the first time that such person reviews such Source Code.  Such identification shall be in addition to any other disclosure required under this Order.  All persons viewing Source Code shall sign on each day they view Source Code a log that will include the names of persons who enter the locked room to view the Source Code and when they enter and depart.  The Producing Party shall be entitled to a copy of the log upon one (1) day's advance notice to the Receiving Party.

(vii)    Unless otherwise agreed in advance by the Parties in writing, following each day on which inspection is done under this Order, the Receiving Party's Outside Counsel and/or experts shall remove all notes, documents, and all other materials from the Source Code Review Room.  The Producing Party shall not be responsible for any items left in the room following each inspection session, and the Receiving Party shall have no expectation of confidentiality for any items left in the room following each inspection session without a prior agreement to that effect.  Proper identification of all authorized persons shall be provided prior to any access to the secure room or the computer containing Source Code.  Proper identification requires showing, at a minimum, a photo identification card sanctioned by the government of any State of the United States, by the government of the United States, or by the nation state of the authorized person's current citizenship. Access to the secure room or the Source Code Computer may be denied, at the discretion of the supplier, to any individual who fails to provide proper identification.

(viii)   Other than as provided above, the Receiving Party will not copy, remove, or otherwise transfer any Source Code from the Source Code Computer including, without

limitation, copying, removing, or transferring the Source Code onto any recordable media or recordable device.  The Receiving Party will not transmit any Source Code in any way from the Producing Party's facilities or the offices of its Outside Counsel of record.

(ix)    The Receiving Party's Outside Counsel of record may make no more than three (3) additional paper copies of any portions of the Source Code received from a Producing Party pursuant to Section 11(c)(v), not including copies attached to court filings or used at depositions, and shall maintain a log of all paper copies of the Source Code.  The log shall include the names of the reviewers and/or recipients of paper copies and locations where the paper copies are stored.  Upon one (1) day's advance notice to the Receiving Party by the Producing Party, the Receiving Party shall provide a copy of this log to the Producing Party.

(x)    The Receiving Party's Outside Counsel of record and any person receiving a copy of any Source Code shall maintain and store any paper copies of the Source Code at their offices in a manner that prevents duplication of or unauthorized access to the Source Code, including, without limitation, storing the Source Code in a locked room or cabinet at all times when it is not in use.  No more than a total of fifteen (15) individuals identified by the Receiving Party shall have access to the printed portions of Source Code (except insofar as such code appears in any court filing or expert report).

(xi)    For depositions, the Receiving Party shall not bring copies of any printed Source Code.  Rather, at least seven (7) days before the date of the deposition, the Receiving Party shall notify the Producing Party about the specific portions of Source Code it wishes to use at the deposition, and the Producing Party shall bring printed copies of those portions to the deposition for use by the Receiving Party.  The Producing Party shall also accommodate reasonable requests from the Receiving Party to make a Source Code Computer available at the deposition for use at the

**AGREED PROTECTIVE ORDER – PAGE 22**

deposition.  Copies of Source Code that are marked as deposition exhibits shall not be provided to

the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify

the exhibit by its production numbers. All paper copies of Source Code brought to the deposition

shall remain with the Producing Counsel's Outside Counsel for secure destruction in a timely

manner following the deposition.

     (xii) Except as provided in this section, absent express written permission

from the Producing Party, the Receiving Party may not create electronic images, or any other

images, or make electronic copies, of the Source Code from any paper copy of Source Code for

use in any manner (including by way of example only, the Receiving Party may not scan the Source

Code to a PDF or photograph the code).  Images or copies of Source Code shall not be included in

correspondence between the Parties (references to production numbers shall be used instead), and

shall be omitted from pleadings and other papers whenever possible.  If a Party reasonably believes

that it needs to submit a portion of Source Code as part of a filing with the Court, the Parties shall

meet and confer as to how to make such a filing while protecting the confidentiality of the Source

Code and such Source Code will not be filed absent agreement from the Producing Party that the

confidentiality protections will be adequate.  If a Producing Party agrees to produce an electronic

copy of all or any portion of its Source Code or provide written permission to the Receiving Party

that an electronic or any other copy needs to be made for a Court filing, access to the Receiving

Party's submission, communication, and/or disclosure of electronic files or other materials

containing any portion of Source Code (paper or electronic) shall at all times be limited solely to

individuals who are expressly authorized to view Source Code under the provisions of this Order.

Where the Producing Party has provided the express written permission required under this

provision for a Receiving Party to create electronic copies of Source Code, the Receiving Party

**AGREED PROTECTIVE ORDER – PAGE 23**

shall maintain a log of all such electronic copies of any portion of Source Code in its possession or in the possession of its retained consultants, including the names of the reviewers and/or recipients of any such electronic copies, and the locations and manner in which the electronic copies are stored.  Additionally, any such electronic copies must be labeled "CONFIDENTIAL - ATTORNEYS' EYES ONLY - SOURCE CODE" as provided for in this Order.

12.     **NOTICE OF DISCLOSURE**

(a)     Prior to disclosing any Protected Material to any person described in Sections 8(b)(ii), 8(b)(iii), **Error! Reference source not found.**, or 10(c)(ii) (referenced below as "Person"), the Party seeking to disclose such information shall provide the Producing Party with written notice that includes:

(i) the name of the Person;

(ii) an up-to-date curriculum vitae of the Person;

(iii) the present employer and title of the Person;

(iv) an identification of all of the Person's past and current employment and consulting relationships in the past five years, including direct relationships and relationships through entities owned or controlled by the Person, including but not limited to an identification of any individual or entity with or for whom the person is employed or to whom the person provides consulting services relating to the design, development, operation, or patenting of technologies relating to non-invasive monitoring and/or consumer wearables (generally or as described in any patent in suit), or relating to the acquisition of intellectual property assets relating to non-invasive monitoring and/or consumer wearables (generally or as described in any patent in suit);

(v) an identification of all pending patent applications on which the Person is named as an inventor, in which the Person has any ownership interest, or as to which the Person has had or anticipates in the future any involvement in advising on, consulting on, preparing, prosecuting, drafting, editing, amending, or otherwise affecting the scope of the claims; and

(vi) a list of the cases in which the Person has testified at deposition or trial within the last five (5) years.

Further, the Party seeking to disclose Protected Material shall provide such other information regarding the Person's professional activities reasonably requested by the Producing Party for it to evaluate whether good cause exists to object to the disclosure of Protected Material to the outside expert or consultant.

(b)     Within ten (10) days of receipt of the disclosure of the Person, the Producing Party or Parties may object in writing to the Person for good cause.  In the absence of an objection at the end of the ten (10) day period, the Person shall be deemed approved under this Protective Order.  There shall be no disclosure of Protected Material to the Person prior to expiration of this ten (10) day period.  If the Producing Party objects to disclosure to the Person within such ten (10) day period, the Parties shall meet and confer via telephone or in person within four (4) days following the objection and attempt in good faith to resolve the dispute on an informal basis.  If the dispute is not resolved, the Party objecting to the disclosure will have four (4) days from the date of the meet and confer to seek relief from the Court and shall have the burden of proving the need for a protective order.  If relief is not sought from the Court within that time, the objection shall be deemed withdrawn.  If relief is sought, designated materials shall not be disclosed to the Person in question until the Court resolves the objection.

**AGREED PROTECTIVE ORDER – PAGE 25**

(c)      For purposes of this section, "good cause" shall include an objectively reasonable concern that the Person will, advertently or inadvertently, use or disclose Discovery Material in a way or ways that are inconsistent with the provisions contained in this Order.

(d)      Prior to receiving any Protected Material under this Order, the Person must execute a copy of the "Agreement to Be Bound by Protective Order" (Exhibit A hereto) and serve it on all Parties.

(e)      An initial failure to object to a Person under this Section 12 shall not preclude the nonobjecting Party from later objecting to continued access by that Person for good cause.  If an objection is made, the Parties shall meet and confer via telephone or in person within seven (7) days following the objection and attempt in good faith to resolve the dispute informally. If the dispute is not resolved, the Party objecting to the disclosure will have seven (7) days from the date of the meet and confer to seek relief from the Court.  The designated Person may continue to have access to information that was provided to such Person prior to the date of the objection. If a later objection is made, no further Protected Material shall be disclosed to the Person until the Court resolves the matter or the Producing Party withdraws its objection.  Notwithstanding the foregoing, if the Producing Party fails to move for a protective order within seven (7) business days after the meet and confer, further Protected Material may thereafter be provided to the Person.

13.    **CHALLENGING DESIGNATIONS OF PROTECTED MATERIAL**

(a)      A Party shall not be obligated to challenge the propriety of any designation of Discovery Material under this Order at the time the designation is made, and a failure to do so shall not preclude a subsequent challenge thereto.

(b)      Any challenge to a designation of Discovery Material under this Order shall be written, shall be served on Outside Counsel for the Producing Party, shall particularly identify

the documents or information that the Receiving Party contends should be differently designated, and shall state the grounds for the objection.  Thereafter, further protection of such material shall be resolved in accordance with the following procedures:

(i)     The objecting Party shall have the burden of conferring either in person, in writing, or by telephone with the Producing Party claiming protection (as well as any other interested party) in a good faith effort to resolve the dispute.  The Producing Party shall have the burden of justifying the disputed designation;

(ii)    Failing agreement, the Receiving Party may bring a request or motion to the Court for a ruling that the Discovery Material in question is not entitled to the status and protection of the Producing Party's designation.  The Parties' entry into this Order shall not preclude or prejudice either Party from arguing for or against any designation, establish any presumption that a particular designation is valid, or alter the burden of proof that would otherwise apply in a dispute over discovery or disclosure of information;

(iii)   Notwithstanding any challenge to a designation, the Discovery Material in question shall continue to be treated as designated under this Order until one of the following occurs: (a) the Party who designated the Discovery Material in question withdraws such designation in writing; or (b) the Court rules that the Discovery Material in question is not entitled to the designation.

14.    **DATA SECURITY**

(a)     The Receiving Party shall implement an information security management system ("ISMS") to safeguard Protected Materials, including reasonable and appropriate administrative, physical, and technical safeguards, and network security and encryption technologies governed by written policies and procedures, which shall comply with at least one of

**AGREED PROTECTIVE ORDER – PAGE 27**

the following standards: (a) the International Organization for Standardization's 27001 standard; (b) the National Institute of Standards and Technology's (NIST) 800-53 standard; (c) the Center for Internet Security's Critical Security Controls, Version 8; or (d) the most recently published version of another widely recognized industry or government cybersecurity framework. The Parties shall implement multi-factor authentication[1] for any access to Protected Materials and implement encryption of all Protected Materials in transit outside of network(s) covered by the Party's ISMS (and at rest, where reasonably practical).

(b)     If the Receiving Party becomes aware of any unauthorized access, use, or disclosure of Protected Materials or devices containing Protected Materials ("Data Breach"), the Receiving Party shall promptly, and in no case later than 48 hours after learning of the Data Breach, notify the Producing Party in writing and fully cooperate with the Producing Party as may be reasonably necessary to (a) determine the source, extent, or methodology of such Data Breach, (b) recover or protect Protected Materials, and/or (c) to satisfy the Producing Party's legal, contractual, or other obligations. For the avoidance of doubt, notification obligations under this section arise when the Receiving Party both (a) learns of a Data Breach, and (b) learns that any of the Producing Party's Protected Materials are potentially subject to the Data Breach. The notification obligations set forth in this section do not run from the time the Data Breach itself.

---

[1] Multi-factor authentication is "[a]uthentication using two or more factors to achieve authentication. Factors are (i) something you know (e.g., password/personal identification number); (ii) something you have (e.g., cryptographic identification device, token); and (iii) something you are (e.g., biometric)." National Institute of Standards and Technology (NIST), Special Publication SP 1800-12, Appendix B at 63, available at https://nvlpubs.nist.gov/nistpubs/SpecialPublications/ NIST.SP.1800-12.pdf; *see also* NIST, Special Publication 800-53, at 132, available at https://nvlpubs.nist.gov/nistpubs/SpecialPublications/NIST.SP.800-53r5.pdf.

**AGREED PROTECTIVE ORDER – PAGE 28**

(c)      If the Receiving Party is aware of a Data Breach, the Parties shall meet and confer in good faith regarding any adjustments that should be made to the discovery process and discovery schedule in these cases, potentially including but not limited to (1) additional security measures to protect Discovery Material; (2) a stay or extension of discovery pending investigation of a Data Breach and/or implementation of additional security measures; and (3) a sworn assurance that Discovery Material will be handled in the future only by entities not impacted by the Data Breach.  In the event of a Data Breach affecting Protected Material of the Designating Party, at the Designating Party's request, the Receiving Party within 10 business days shall provide a copy of its most recent ISMS policies and procedures that relate to the safeguarding of Protected Materials and that preceded the Data Breach.  Further, the Receiving Party shall submit to reasonable discovery concerning the Data Breach.

15.     **SUBPOENAS OR COURT ORDERS**

(a)      If at any time Protected Material is subpoenaed by any court, arbitral, administrative, or legislative body, the Party to whom the subpoena or other request is directed shall immediately give prompt written notice thereof to every Party who has produced such Discovery Material and to its counsel and shall provide each such Party with an opportunity to move for a protective order regarding the production of Protected Materials implicated by the subpoena.  The Producing Party must also notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order, and include a copy of this Protective Order.  The parties agree to work together to allow the Producing Party to seek a protective order, after the filing of which the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL – ATTORNEYS EYES ONLY" or

**AGREED PROTECTIVE ORDER – PAGE 29**

"CONFIDENTIAL – ATTORNEYS EYES ONLY – SOURCE CODE" before a determination on the protective order by the court from which the subpoena or order issued, unless the Party has obtained the Producing Party's permission.

16.     **FILING PROTECTED MATERIAL**

(a)     Absent written permission from the Producing Party or a court Order secured after appropriate notice to all interested persons, a Receiving Party may not file or disclose in the public record any Protected Material.

(b)     Any Party is authorized under District of Delaware Local Rule 5.1.3 to file under seal with the Court any brief, document or materials that are designated as Protected Material under this Order.  However, nothing in this section shall in any way limit or detract from this Order's requirements as to Source Code.

17.     **INADVERTENT DISCLOSURE OF PRIVILEGED MATERIAL**

(a)     Pursuant to Federal Rule of Evidence 502(d) and (e), the inadvertent production by a Party of Discovery Material subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection, despite the Producing Party's reasonable efforts to prescreen such Discovery Material prior to production, will not waive the applicable privilege and/or protection in any other federal or state proceeding if a request for return of such inadvertently produced Discovery Material is made promptly after the Producing Party learns of its inadvertent production.  For example, the mere production of a privileged or work product protected document in this case as part of a production is not itself a waiver. Nothing in this Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections as to the production, discoverability,

**AGREED PROTECTIVE ORDER – PAGE 30**

admissibility, or confidentiality of documents and ESI. Moreover, nothing in this Order shall be interpreted to require disclosure of information subject to privacy protections as set forth in law or regulation, including information that may need to be produced from outside of the United States and/or may be subject to foreign laws.

(b)     Upon a request from any Producing Party who has inadvertently produced Discovery Material that it believes is privileged and/or protected, each Receiving Party shall immediately return such Protected Material or Discovery Material and all copies to the Producing Party, except for any pages containing privileged markings by the Receiving Party which shall instead be destroyed and certified as such by the Receiving Party to the Producing Party.

(c)     Nothing herein shall prevent the Receiving Party from preparing a record for its own use containing the date, author, addresses, and topic of the inadvertently produced Discovery Material and such other information as is reasonably necessary to identify the Discovery Material and describe its nature to the Court in any motion to compel production of the Discovery Material.

18.   **INADVERTENT FAILURE TO DESIGNATE PROPERLY**

(a)     The inadvertent failure by a Producing Party to designate Discovery Material as Protected Material with one of the designations provided for under this Order shall not waive any such designation provided that the Producing Party notifies all Receiving Parties that such Discovery Material is protected under one of the categories of this Order within ten (10) days of the Producing Party learning of the inadvertent failure to designate. The Producing Party shall reproduce the Protected Material with the correct confidentiality designation within five (5) days upon its notification to the Receiving Parties.  Upon receiving the Protected Material with the correct confidentiality designation, the Receiving Parties shall return or securely destroy, at the Producing Party's option, all Discovery Material that was not designated properly.

(b)     A Receiving Party shall not be in breach of this Order for any use of such Discovery Material before the Receiving Party receives such notice that such Discovery Material is protected under one of the categories of this Order, unless an objectively reasonable person would have realized that the Discovery Material should have been appropriately designated with a confidentiality designation under this Order. Once a Receiving Party has received notification of the correct confidentiality designation for the Protected Material with the correct confidentiality designation, the Receiving Party shall treat such Discovery Material (subject to the exception in Section 18(c) below) at the appropriately designated level pursuant to the terms of this Order.

(c)     Notwithstanding the above, a subsequent designation of "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" shall apply on a going forward basis and shall not disqualify anyone who reviewed "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" materials while the materials were not marked "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" from engaging in the activities set forth in Section 6(b).

19.     **INADVERTENT DISCLOSURE NOT AUTHORIZED BY ORDER**

(a)     In the event of a disclosure of any Discovery Material pursuant to this Order to any person or persons not authorized to receive such disclosure under this Protective Order, the Party responsible for having made such disclosure, and each Party with knowledge thereof, shall immediately notify counsel for the Producing Party whose Discovery Material has been disclosed and provide to such counsel all known relevant information concerning the nature and circumstances of the disclosure.  The responsible disclosing Party shall also promptly take all

reasonable measures to retrieve the improperly disclosed Discovery Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made.

(b)     Unauthorized or inadvertent disclosure does not change the status of Discovery Material or waive the right to hold the disclosed document or information as Protected.

20.     **FINAL DISPOSITION**

(a)     Not later than ninety (90) days after the Final Disposition of these cases, each Party shall return all Discovery Material of a Producing Party to the respective Outside Counsel of the Producing Party or destroy such Material, at the option of the Producing Party. For purposes of this Order, "Final Disposition" occurs after an order, mandate, or dismissal finally terminating these cases with prejudice, including all appeals.

(b)     All Parties that have received any such Discovery Material shall certify in writing that all such materials have been returned to the respective Outside Counsel of the Producing Party or destroyed. Notwithstanding the provisions for return of Discovery Material, Outside Counsel may retain one set of pleadings, correspondence and attorney and consultant work product (but not document productions) for archival purposes, but must return any pleadings, correspondence, and consultant work product that contain Source Code.

21.     **MISCELLANEOUS**

(a)     Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future. By stipulating to this Order, the Parties do not waive the right to argue that certain material may require additional or different confidentiality protections than those set forth herein.

(b)     Termination of Matters and Retention of Jurisdiction. The Parties agree that the terms of this Protective Order shall survive and remain in effect after the Final Determination

**AGREED PROTECTIVE ORDER – PAGE 33**

of the above-captioned matters.  The Court shall retain jurisdiction after Final Determination of these matters to hear and resolve any disputes arising out of this Protective Order.

(c)     <u>Successors</u>.  This Order shall be binding upon the Parties hereto, their successors, and anyone, including law firms, who obtains access to Protected Material.

(d)     <u>Right to Assert Other Objections</u>.  By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item.  Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.  This Order shall not constitute a waiver of the right of any Party to claim in these cases or otherwise that any Discovery Material, or any portion thereof, is privileged or otherwise non-discoverable, or is not admissible in evidence in these cases or any other proceeding.

(e)     <u>Modification by Court</u>.  This Order is subject to further court order based upon public policy or other considerations, and the Court may modify this Order *sua sponte* in the interests of justice. The United States District Court for the District of Delaware is responsible for the interpretation and enforcement of this Order.  All disputes concerning Protected Material, however designated, produced under the protection of this Order shall be resolved by the United States District Court for the District of Delaware.

**SO ORDERED.**

**AGREED PROTECTIVE ORDER – PAGE 34**

## **EXHIBIT A**

I, _____, acknowledge and declare that I have received a copy of the Protective Order ("Order") in *Apple Inc. v. Masimo Corp. et al.*, United States District Court, District of Delaware, C.A. Nos. 22-1377-MN-JLH and 22-1378-MN-JLH. Having read and understood the terms of the Order, I agree to be bound by the terms of the Order and consent to the jurisdiction of said Court for the purpose of any proceeding to enforce the terms of the Order.

Name of individual: _____

Present occupation/job description: _____

_____

_____

Name of Company or Firm: _____

Address: _____

Dated: _____

_____
[Signature]

57633463
57657921

# EXHIBIT B

ORAL ORDER: After having reviewed the parties' letters (D.I. 25, 26) regarding the disputed provisions of the proposed protective order, IT IS HEREBY ORDERED that: (1) with regard to export control requirements, Defendants' proposal reasonably articulates the parties' responsibilities to comply with federal law and is adopted; (2) with regard to the prosecution bar, Defendants' proposal, which is warranted by the risks and the balance of interests and is more reasonable than Plaintiff's proposal, is adopted; (3) with regard to the source code log, Defendants' proposal is reasonable and not unduly burdensome except with regard to the time and duration requirements (which appear to interfere with work product protection) and is therefore adopted except that the words "time, and duration" are to be stricken; and (4) the parties shall submit a revised version of the protective order, incorporating the Court's rulings and any other modifications the parties agreed upon, no later than August 5, 2014. The teleconference scheduled for August 1, 2014 at 3:00 p.m. to address these disputes is CANCELLED. ORDERED by Judge Leonard P. Stark on 7/31/14. Associated Cases: 1:13-cv-01412-LPS et al. (ntl) (Entered: 07/31/2014)

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PARALLEL NETWORKS, LLC,<br><br>      Plaintiff,<br><br>  v.<br><br>BARRACUDA NETWORKS, INC.,<br><br>      Defendant. | C.A. No. 13-1412-LPS |
| PARALLEL NETWORKS, LLC,<br><br>      Plaintiff,<br><br>  v.<br><br>BROCADE COMMUNICATIONS<br>SYSTEMS, INC.,<br><br>      Defendant. | C.A. No. 13-1413-LPS |
| PARALLEL NETWORKS, LLC,<br><br>      Plaintiff,<br><br>  v.<br><br>CITRIX SYSTEMS, INC.,<br><br>      Defendant. | C.A. No. 13-1414-LPS |
| PARALLEL NETWORKS, LLC,<br><br>      Plaintiff,<br><br>  v.<br><br>SAP AMERICA, INC.,<br><br>      Defendant. | C.A. No. 13-1476-LPS |

PARALLEL NETWORKS, LLC,

      Plaintiff,

    v.

RIVERBED TECHNOLOGY, INC.,

      Defendant.

C.A. No. 13-1477-LPS

---

PARALLEL NETWORKS, LLC,

      Plaintiff,

    v.

ARRAY NETWORKS, INC.,

      Defendant.

C.A. No. 13-1481-LPS

---

PARALLEL NETWORKS, LLC,

      Plaintiff,

    v.

A10 NETWORKS, INC.,

      Defendant.

C.A. No. 13-1943-LPS

---

PARALLEL NETWORKS, LLC,

      Plaintiff,

    v.

F5 NETWORKS, INC.,

      Defendant.

C.A. No. 13-2001-LPS

PARALLEL NETWORKS, LLC,

      Plaintiff,

    v.

CISCO SYSTEMS, INC.,

      Defendant.

C.A. No. 13-2051-LPS

PARALLEL NETWORKS, LLC,

      Plaintiff,

    v.

RADWARE LTD. and
RADWARE, INC.,

      Defendants.

C.A. No. 13-2085-LPS

## [PROPOSED] STIPULATED PROTECTIVE ORDER

This Protective Order is issued to facilitate document disclosure and production under the Local Rules of the District of Delaware (the "Local Rules") and the Federal Rules of Civil Procedure. Unless modified pursuant to the terms contained in this Order, this Order shall remain in effect through the conclusion of this litigation.

In support of this Protective Order, the Court finds that:

1.     Documents or information containing confidential research, development, business, commercial, or personal information or trade secrets within the meaning of Fed. R. Civ. P. 26(c) ("Confidential Information") that bear on the parties' claims or defenses is likely to be disclosed or produced during the course of discovery in this litigation;

2.      The parties to this litigation may assert that public dissemination and disclosure of Confidential Information could severely injure or damage the party disclosing or producing the Confidential Information and/or could place that party at a competitive disadvantage;

3.      Counsel for the party or parties receiving Confidential Information are presently without sufficient information to accept the representation(s) made by the party or parties producing Confidential Information as to the confidential, proprietary, and/or trade secret nature of such Confidential Information; and

4.      To protect the respective interests of the parties and to facilitate the progress of disclosure and discovery in this case, the following Protective Order should issue.

**IT IS THEREFORE ORDERED THAT:**

1.      **Proceedings and Information Governed.**  This Protective Order shall apply to all information, documents, and things subject to discovery in this Action produced either by a party or a non-party ("Action" shall include without limitation this litigation and any adjunct subpoena proceedings incident hereto before any tribunal) including, without limitation, testimony adduced at deposition upon oral examination or upon written questions, answers to interrogatories, documents and things produced, information obtained from inspection of premises or things, answers to requests for admission, and information disclosed pursuant to subpoena under Fed. R. Civ. P. 45 ("Discovery Material").  Discovery Material containing Confidential Information is referred to as "Confidential Material."

2.      **Information Not Protected.**  The following is not Confidential Material: (i) material, which on its face shows or which, through other evidence, the receiving party can show has been published to the general public; (ii) information that the receiving party can show was lawfully in the receiving party's possession prior to being designated as Confidential

Material in this litigation and that the receiving party is not otherwise obligated to treat as confidential; (iii) information that the receiving party can show was obtained (without any benefit or use of Confidential Material) from a third party having the right to disclose such information to the receiving party without restriction or obligation of confidentiality; (iv) information which, after its disclosure to a receiving party, is published to the general public by a party having the right to publish such information; (v) information that the receiving party can show by written record was independently developed by it after the time of disclosure by personnel who did not have access to the producing party's Confidential Material; and (vi) information that was submitted to a governmental entity without request for confidential treatment.

      **3.**       <u>**Designations to be Made in Good Faith.**</u>  In determining the scope of information that a party may designate as its Confidential Material, each party acknowledges the importance of client access to information necessary to client decision-making in the prosecution or defense of litigation, and therefore agrees that designations of information as Confidential Material and responses to requests to permit further disclosure of Confidential Material shall be made in good faith and not (i) to impose burden or delay on an opposing party or (ii) for tactical or other advantage in litigation.

      **4.**       <u>**Designation of CONFIDENTIAL Information.**</u>  The producing party shall label or mark each document and thing that it deems to be Confidential Material with the following term:

"**CONFIDENTIAL**"

      **5.**       <u>**Designation of CONFIDENTIAL – OUTSIDE COUNSEL ONLY**</u>
<u>**Information.**</u>  The parties may further designate as "CONFIDENTIAL – OUTSIDE COUNSEL

3

ONLY" those Confidential Materials that contain Confidential Information that is especially sensitive and could cause significant competitive harm if disclosed to an unauthorized person, including, without limitation, pending but unpublished patent applications; information concerning research, development and other activities related to unreleased products; and other highly confidential technical, research and development, and financial information.  This designation shall be made in good faith.  The parties shall label or mark each such document or thing with the following term:

"**CONFIDENTIAL – OUTSIDE COUNSEL ONLY**"

The parties may also elect to label or mark documents or things with the term "CONFIDENTIAL – ATTORNEYS EYES ONLY" or "CONFIDENTIAL – AEO," and this shall have the same meaning as and shall be afforded the same protection as documents and information marked "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" pursuant to this Protective Order.

**6.**     **Designation of CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE Information.**     The parties acknowledge that a distinct level of protection is required for source code for which the "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" designation would not provide adequate protection to the interests of the designating party, and the wrongful dissemination of which could result in irreparable harm to the designating party.  Such information may be designated by labeling or marking each such document or thing with the following term:

"**CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE**"

Such designation should be made only in good faith and should be used only for source code.  As used herein, "Source Code" means human readable computer instructions, data structures, and

4

data definitions expressed in a form suitable for input to an assembler, compiler, translator, or other data processing module in native format. Such designation shall be used sparingly and only for Source Code as defined herein. The parties may also label or mark paper copies or electronic images (such as TIFF's or PDFs') of source code that are not native format as "CONFIDENTIAL – ATTORNEYS EYES ONLY – SOURCE CODE" pursuant to this Protective Order. Notwithstanding the preceding sentence, parties shall make Source Code available for inspection in its native format, to the extent it exists and is in the custody or control of the producing party, pursuant to the provisions herein. As noted in Section 14(d), excerpts of Source Code may be printed or imaged. Documents generated by parties' counsel (or their experts) and portions of deposition transcripts that contain quotes or excerpts from document fitting within the definition of "Source Code" shall be labeled "CONFIDENTIAL – OUTSIDE COUNSEL ONLY - SOURCE CODE" and treated according to Section 14 below. Nothing in this Protective Order shall act as a waiver of any party's right to object to production of Source Code.

   **7.**    **Designation and Re-Designation of Confidential Information.** The labeling or marking of a document or tangible thing with the designation "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE" shall be made when a copy of the document or thing is provided to the receiving party by placing the legend "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE" on the face of each such document or thing. Any such designation that is inadvertently omitted or misdesignated may be corrected by written notification to counsel for the receiving party, and the receiving party shall thereafter treat the materials as

"CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or

"CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE," as appropriate.  The

designating party shall provide to the receiving party substitute copies of the material with the

proper designation, and such material shall be subject to this Protective Order as if it had been

initially so designated.  If, prior to receiving such notice, the receiving party has disseminated the

Confidential Material to individuals not authorized to receive it hereunder based on the new

designation, it shall make a reasonable effort to retrieve the Confidential Material or to otherwise

assure that the recipient(s) properly mark the Confidential Material and maintain the

confidentiality of the Confidential Material, but shall have no other responsibility or obligation

with respect to the information disseminated.

     **8.**    **Depositions.**  In the case of deposition upon oral examination, such testimony

shall be deemed "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" until the expiration of

thirty (30) days after the designating party's receipt of the deposition transcript, unless the

testimony is otherwise designated at the time of the deposition or during the thirty (30) day

period.  Pages or entire transcripts of testimony given at a deposition may be designated as

containing "CONFIDENTIAL" or "CONFIDENTIAL – OUTSIDE COUNSEL ONLY"

information by an appropriate statement either at the time of the giving of such testimony or by

written notification within thirty (30) days after the designating party's receipt of the deposition

transcript.  If the testimony is not otherwise designated at the time of the deposition or during the

thirty (30) day period, the testimony will be deemed to be "CONFIDENTIAL."

     **9.**    **Written Discovery.**  In the case of written discovery responses and the

information contained therein, the responses may be designated as containing

"CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or

6

"CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE" information by means of a statement at the conclusion of each response that contains such information specifying the level of designation of the Confidential Information and by placing a legend on the front page of such discovery responses stating: "CONTAINS CONFIDENTIAL INFORMATION/[the highest level of designation contained in the answers]." Any such designation that is inadvertently omitted or misdesignated may be corrected within thirty (30) days of service of such discovery responses by written notification to counsel for the receiving party, and the receiving party shall thereafter treat the materials as "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE," as appropriate. The designating party shall provide to the receiving party substitute copies of the material with the proper designation, and such material shall be subject to this Protective Order as if it had been initially so designated. If, prior to receiving such notice, the receiving party has disseminated the Confidential Material to individuals not authorized to receive it hereunder based on the new designation, it shall make a reasonable effort to retrieve the Confidential Material or to otherwise assure that the recipient(s) properly mark and maintain the confidentiality of the Confidential Material, but shall have no other responsibility or obligation with respect to the information disseminated.

10. **Designation of Other Confidential Information.** In the case of Confidential Information not reduced to documentary or tangible form or that cannot be conveniently designated as set forth above, such information may be designated "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE" information by informing the receiving party of the

designation in writing either at the time of transfer of such information or within thirty (30) days after the transfer of such information.

        **11.**    **Designation of Documents and Things Made Available for Inspection.**  Any documents or tangible things made available for inspection prior to producing copies of selected items shall initially be deemed "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" unless otherwise designated at the time of inspection and shall be subject to this Protective Order. Thereafter, the Producing Party shall have a reasonable time to review and designate the documents as set forth in Paragraph 7 above prior to furnishing copies to the Receiving Party.

        **12.**    **Disclosure of CONFIDENTIAL – OUTSIDE COUNSEL ONLY Material.** CONFIDENTIAL – OUTSIDE COUNSEL ONLY material and any information contained therein shall be disclosed only to the following persons:

        a.    Outside counsel of record in this action for the receiving party, including both local and trial counsel;

        b.    Employees of such outside counsel of record, including partners, associates, paralegals, staff, and copying or clerical litigation support personnel, who are working at the direction of such outside counsel of record in connection with this Action and to whom it is reasonably necessary to disclose the information;

        c.    Contract attorneys who are not employees of outside counsel of record but who are working at the direction of such outside counsel in connection with this Action and to whom it is reasonably necessary to disclose the information, provided, however, that disclosure to such persons shall be made only on the conditions set forth in Paragraphs 15 and 16 below;

        d.    Persons or entities engaged by a party or counsel for a party to provide outside electronic discovery hosting and electronic discovery consulting services; foreign language

translation services; stenographic and video reporting and transcription services; graphics, translation, or design services retained by counsel of record for purposes of preparing demonstrative or other exhibits for deposition, trial, or other court proceedings in this action; and professional jury or trial consultants (and their employees and subcontractors) to whom disclosure is reasonably necessary for this litigation—provided that such persons and entities execute Exhibit A;

e. The Court, its personnel, its stenographic reporters, and the jury in this Action (with such Confidential Material having been filed under seal or with other suitable precautions as determined by the Court);

f. At a deposition or at trial, any person who authored or previously received the Confidential Material and, subject to timely objection including objection that such person is not internally authorized to receive such information, any person currently employed by the designating party;

g. Any approved expert or consultant (including his or her secretarial and clerical personnel actually assisting such expert or consultant in connection with this Action) who (1) is engaged by counsel of record in this Action, whether or not such expert or consultant is paid directly by a party and (2) is not regularly employed by or associated with a party hereto, other than by or with the designating party, provided however that disclosure to such experts or consultants shall be made only on the conditions set forth in Paragraphs 15 and 16 below.

 **13.** **Disclosure of CONFIDENTIAL Material.** CONFIDENTIAL material and any information contained therein may be disclosed to the persons designated in Paragraphs 12(a) through (g) above and additionally may be disclosed to no more than two (2) designated representatives of the party who do not have competitive decision-making responsibilities and

are either in-house counsel who act in a legal capacity for the receiving party or a non-lawyer corporate representative directly supervised by in-house counsel and who are responsible for supervising or otherwise directly working on these Actions, provided that such representatives agree to be bound by this Protective Order.

**14.** **Disclosure of CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE Material.** Source Code labeled "CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE" material may be disclosed only to persons designated under Paragraph 12(a), (b) (provided that such persons sign the Undertaking attached hereto), (e), (f), and (g) (excluding their secretarial and clerical personnel) above, and only in strict accordance with the following procedures:

a. Source code designated "CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE," to the extent it exists in electronic format, will be made available for inspection on a standalone, non-networked computer with all ports, software, and other avenues that could be used to copy or transfer such data blocked ("Standalone Computer"). The Standalone Computer shall be a current vintage, Windows-based laptop or desktop computer having at least 4 gigabytes of memory and connected to a printer for printing, shall have a mouse and a screen with a minimum size of fifteen inches, and shall be connectable to a second screen supplied by the Receiving Party at the Receiving Party's option.

b. The Standalone Computer will be made available for inspection, at the option of the producing party, at the offices of any outside counsel of record of the producing party.

c. Only approved persons designated under Paragraph 12(a), (e), and 12(g) above (excluding their secretarial and clerical personnel) above shall have access to the Standalone

Computer provided, however, that the following additional restrictions shall apply to such access:

(i)     At least seven (7) business days prior to the first date on which access is sought to such Standalone Computer ("seven-day notice period"), counsel of record for the receiving party shall provide a list of individuals including attorneys seeking to access such Standalone Computer. The designating party shall have the right to object to such access in accordance with the procedure set forth in Paragraph 15 herein.  Subsequently this procedure shall be followed for each person not previously disclosed.  However, as to persons already disclosed, notice need not be given, and such persons shall have unlimited access so long as the other provision of paragraph iv immediately below is followed:

(ii)     During the pendency of the seven-day notice period, no listed individual shall have access to the Standalone Computer;

(iii)     If an objection to any specific listed individual is made, that individual shall not have access to the Standalone Computer until resolution of such objection;

(iv)     Each time a person accesses the Standalone Computer, the person shall sign a sign-in sheet prior to, and a sign-out sheet subsequent to, accessing the Standalone Computer including the name of the person accessing, the date and time in and out, and an indication of whether any hard copiers were made;

(v)     After the initial access reference in paragraph (i) above, the party requesting access to such Standalone Computer shall provide five (5) business days notice prior to the date on which access is sought.  While the producing party shall have

the right to object to such access, consent to reasonable and timely requests for access shall not be unreasonably withheld; and

(vi)     All CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE materials in the possession of the Receiving Party, or its expert(s) shall be maintained in the United States in a secured, locked area at an office of outside counsel of record or their expert(s) for the receiving party in a manner that prevents duplication of or unauthorized access to the CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE material.

d.     **Printing and Copies of Source Code.**  The receiving party shall not have the right to, and agrees not to, copy, transmit, or duplicate CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE materials in any manner, including scanning or otherwise creating an electronic image of the CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE materials, except as set forth herein.

(i)     A printer shall be attached to the Standalone Computer with pre-bates labeled paper specific to the Producing Party's source code.  All information printed from the printer shall be on watermarked paper provided by the Producing Party bearing bates-numbers and the legend "CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE."

(ii)     The Receiving Party shall not print any continuous block of Source Code that results in more than 25 printed pages and shall not be entitled to more than 400 printed pages absent a showing of good cause. If necessary, the Receiving Party may request to print continuous blocks that exceed 25 pages, which request the Producing Party shall not unreasonably deny.  Upon printing, the Receiving Party shall provide the

printed Source Code to the Producing Party's outside counsel who will make copies of

the Source Code and return the original to the Receiving Party on the same day of

printing, provided that the printed Source Code is provided to the Producing Party before

4 p.m. local time.  If provided after 4 p.m., the Producing Party shall return the original

printed Source Code by noon of the following day.

      (iii)     Four hard copies of the printed copies may be made for use by outside

counsel, consultant(s) and expert(s), and other persons who are otherwise entitled to

receive CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE materials.

The Receiving Party shall maintain a log of all copies of the source code that are

provided by the Receiving Party to any qualified person.  The log shall include the (1) the

number of copies made, (2) the number of pages copied, (3) the bates number range of

the material being copied, (4) the date and time when the copying occurred, (5) the

identity of individual(s) accessing such material, and (6) the date of each such access.

The Producing Party shall be entitled to a copy of the log upon request.

      (iv)     Source Code may not be digitally imaged except in limited excerpts

necessary for the purposes of infringement contentions, expert reports, presentations to

the court, or court filings so long as the other provisions of this Order are followed.

      (v)     The Receiving Party may save an unlimited amount of Source Code to

PDF files in folders in the storage media on the Standalone Computer.  Such files shall

remain in the Standalone Computer until the conclusion of this Litigation unless deleted

by the Receiving Party.

     e.      **<u>Paper Copies of Source Code to be Secured.</u>**  The Receiving Party's Outside

Counsel and retained experts or consultants must maintain any paper copies of and notes relating

to the Source Code in a secure location in a manner that prevents duplication of or unauthorized

access to the paper copies of the Source Code or notes when not in use.

   f. **Source Code in Depositions.** All CONFIDENTIAL – OUTSIDE COUNSEL

ONLY – SOURCE CODE materials used during a deposition or marked as an exhibit at a

deposition will be retrieved by the party conducting the deposition at the end of each day.  At no

time, will any CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE material be

given to or left with the Court Reporter or any other individual.

   g. **Viewing and Searching Tools.** In the event that the receiving party's Outside

Counsel reasonably believes that additional commercially-available software tools for viewing

and searching source code are necessary for the efficient review and analysis of source code, the

designating party shall, to the extent technically feasible, install such software on the Standalone

computer at the receiving party's expense, provided that (1) the software is a source code

analysis program or utility and (2) the receiving party provides, at the receiving party's expense,

a licensed copy of such software for installation on the Standalone Computer.  The designating

party may not configure its source code in a manner that unreasonably impedes or slows the

receiving party's ability to inspect the source code or that allows the designating party to monitor

the receiving party's inspection (e.g., key logging, video capture, etc.).  The receiving party may

save an unlimited number of files generated by the viewing and searching tool(s) on the

Standalone Computer, which files shall be maintained and not erased by the Producing Party

until the conclusion of the Litigation.

   **15.** **Disclosure to Experts and Consultants.** Trial counsel desiring to disclose

Confidential Materials to experts or consultants specified in Paragraph 12(g) above shall first

obtain a signed undertaking, in the form of Exhibit A attached hereto, from each such expert or

consultant, and such counsel shall retain in his/her files the original of each such signed undertaking. A copy of the proposed undertaking shall be forwarded to opposing counsel with the current curriculum vitae for such expert or consultant. Such curriculum vitae shall identify all current and former employers and/or consulting engagements within the ten (10) years prior to the date of such disclosure.[1] No Confidential Materials shall be disclosed to such expert or consultant attorney until after the expiration of a seven (7) business day period commencing with the service of a copy of the proposed undertaking and curriculum vitae, provided, however, that if during that seven (7) business day period opposing counsel makes an objection to such disclosure, there shall be no disclosure of Confidential Materials to such expert or consultant except by mutual agreement of the parties or further order of the Court. All objections must be made in writing and for good cause, and must state the reasons for such objections. The party desiring disclosure of such Confidential Materials shall have the burden of filing a motion with the Court seeking leave to make such disclosure.

16. **Party's Own Information.** The restrictions on the use of Confidential Materials established by this Protective Order are applicable only to the use of information received by a party from another party or from a nonparty. A party is free to use its own information as it pleases.

17. **Information Produced In Related Cases.** Nothing in this Protective Order permits the use or disclosure by any party in one of the above-captioned actions of Confidential Materials originally produced by a Defendant in another of the above-captioned actions absent

---

[1] If the expert or consultant believes any of this information is subject to a confidentiality obligation to a third-party, then the expert or consultant should provide whatever information the expert or consultant believes can be disclosed without violating any confidentiality agreements, and the party seeking to disclose to the expert or consultant shall be available to meet and confer with opposing counsel regarding any such engagement.

agreement of the producing Defendant and/or separate order of the Court. However, this

provision shall not be construed as preventing outside counsel for Defendants in any of the

above-captioned actions from discussing amongst themselves any of Plaintiffs' Confidential

Information to which each such outside counsel individually has lawful access through Plaintiffs'

productions and/or disclosures in the respective actions.

      18.    **Export Control Requirements**: Notwithstanding anything to the contrary

contained herein, the following additional requirements apply to all Confidential Materials:

      a.    The receiving party acknowledges that the Confidential Materials received under

this Protective Order may be subject to export controls under the laws of the United States and

other applicable laws. The receiving party shall comply with such laws and agrees not to

knowingly export, re-export or transfer Confidential Materials of the producing party. The

receiving party acknowledges that Confidential Materials disclosed by the producing party may

be subject to, including but not limited to, the U.S. Export Administration Regulations (EAR),

Export Control Classification Number (ECCN) 5EOO 1 pertaining to Dynamic Adaptive

Routing, Optical Switching, SS7, non-aggregated port speed data transfer rates exceeding

15Gbps; and ECCN 5E002 cryptography.

      b.    The receiving party agrees to maintain adequate controls to prevent nationals of

countries listed in the EAR, Part 740 Supplement No.1, Country Group D:l orE from accessing

the producing party's Confidential Materials, subject to ECCN SEOO 1; or nationals outside the

U.S. and Canada from accessing such Confidential Materials, subject to ECCN 5E002 –without

U.S. Government authorization. The receiving party furthermore, agrees to notify the producing

party prior to granting a foreign national, of countries listed in the groups D: 1 orE, access to the

Standalone Computer, access to hard copies of Confidential Materials, or placement on a project

requiring receipt or review of the producing party's Confidential Materials. The term "national" is defined as any person who is not a U.S. person or national/citizen, lawful permanent resident, person granted asylum or refugee status, or temporary resident granted amnesty.

19.     **Court Procedures.**  Any party may file or lodge with the Court documents or tangible items designated as CONFIDENTIAL, CONFIDENTIAL – OUTSIDE COUNSEL ONLY, or CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE.  Any briefs, transcripts, exhibits, depositions, or documents that are filed with the Court and that comprise, embody, summarize, discuss, or quote from documents or tangible things designated as CONFIDENTIAL, CONFIDENTIAL – OUTSIDE COUNSEL ONLY, or CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE material shall be sealed, unless the parties otherwise agree in writing or the Court otherwise orders.  Where reasonably practicable, only the portions of documents consisting of such items or information shall be lodged under seal.  Such items or information shall be filed or lodged in sealed envelopes or other appropriate sealed containers.  Each sealed envelope or container shall be endorsed with the title and case number of this action, and a legend in substantially the following form:

> CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER.  THE MATERIALS CONTAINED HEREIN HAVE BEEN DESIGNATED AS CONFIDENTIAL, CONFIDENTIAL – OUTSIDE COUNSEL ONLY, OR CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE PURSUANT TO PROTECTIVE ORDER AND MAY NOT BE EXAMINED OR COPIED EXCEPT BY THE COURT OR PURSUANT TO COURT ORDER.

20.     **No Waiver.**  The acceptance by a party of documents designated as CONFIDENTIAL, CONFIDENTIAL – OUTSIDE COUNSEL ONLY, or CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE shall not constitute an agreement, admission, or concession, or permit an inference, that the material(s) are in fact properly subject to

protection under Fed. R. Civ. P. 26(c), or some other basis.  Documents designated CONFIDENTIAL, CONFIDENTIAL – OUTSIDE COUNSEL ONLY, or CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE shall be treated in accordance with the provisions of this Protective Order, except that any party may at any time seek an Order from the Court determining that specified information or categories of information are not properly designated as CONFIDENTIAL, CONFIDENTIAL – OUTSIDE COUNSEL ONLY, or CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE, *provided that* prior to making such motion the party seeking de-designation shall first provide to the producing party written notice particularly identifying the documents or information that the receiving party contends should be differently designated, and stating the grounds for the objection.  Thereafter, the parties shall meet and confer in good faith to resolve any differences over the designation. With respect to the filing of such a motion, the party challenging confidentiality shall have the burden of conferring in compliance with the Court's local rules, either in person or by telephone, with the producing party (as well as any other Party who expresses an interest in maintaining the designation) in a good faith effort to resolve the dispute.  In the event that the dispute cannot be resolved, the party challenging the designation may contact the Court pursuant to the procedures of Paragraph 3(g) of the Scheduling Order within seven (7) days of the conclusion of the meet and confer process seeking a ruling that the Discovery Material in question is not entitled to the protection conferred by the producing party's designation.  Such contact with the Court must occur within seven (7) calendar days of the conclusion of the meet and confer process; otherwise, the objection is deemed waived.  The producing party shall have the burden of proving that the Confidential Material in question is protectable under Fed. R. Civ. P. 26(c) or some other basis, or as the case may be, that the designation of "CONFIDENTIAL," "CONFIDENTIAL –

OUTSIDE COUNSEL ONLY," or "CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE" is necessary under the circumstances. A party shall not be obligated to challenge the propriety of a designation of Confidential Material at the time made, and failure to do so shall not preclude subsequent challenge. Should any party (or non-party) seek an Order from the Court to determine whether specified information or categories of information are not properly designated as CONFIDENTIAL, CONFIDENTIAL – OUTSIDE COUNSEL ONLY, or CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE, the claimed designation shall remain operative and respected by all the parties and non-parties pending the Court's ruling.

21. **No Waiver of Privilege.** Nothing in this Protective Order shall require disclosure of material that a party contends is protected from disclosure by the attorney-client privilege or the attorney work-product immunity, or any other applicable privilege. This shall not preclude any party from moving the Court for an Order directing the disclosure of such material.

22. Production or disclosure of documents or information subject to the attorney-client privilege, work product immunity, or any other applicable privilege shall not constitute a waiver of, nor a prejudice to, any claim that such or related material is privileged or protected by the work product immunity or any other applicable privilege. A producing party may notify the receiving party in writing that produced documents or information are subject to the attorney-client privilege, work product immunity, or any other applicable privilege. Within five (5) business days of such notice, the receiving party shall return or destroy all such documents or information and all copies thereof, including those that have been shared with experts, consultants, and vendors, and confirm in writing that all such documents or information have been returned or destroyed. No use shall be made of such documents or information during

depositions, through motion practice, or at trial. In the case of such returned production, the producing party shall provide a privilege log identifying such documents or information within ten (10) business days of its original notice to the receiving party. The receiving party may move the Court for an Order compelling production of any such documents or information in accordance with the Federal Rules of Civil Procedure and Paragraph 3 of the Scheduling Order. The motion shall be filed under seal and shall not assert as a ground for production the fact of the earlier production, nor shall the motion disclose or otherwise use the content of the previously produced and returned documents or information in any way (beyond any information appearing on the above-referenced privilege log).

23.     **Inadvertent Disclosure of Confidential Material.**  In the event of any accidental or inadvertent disclosure of Confidential Material other than in a manner authorized by this Protective Order, counsel for the party responsible for the disclosure shall immediately notify the producing party of all the pertinent facts, and make every effort to prevent further unauthorized disclosure including retrieving all copies of the Confidential Material from the recipient(s) thereof and securing the agreement of the recipients not to further disseminate the Confidential Material in any form.  Compliance with the foregoing shall not prevent a party from seeking further relief from the Court.

24.     **Treatment of Confidential Information.**  In addition to the specific requirements set forth in Paragraph 14 hereof regarding the handling of CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE materials, the recipient of any Confidential Material shall maintain such information in a secure and safe place, and shall exercise at least the same degree of care in handling the Confidential Material as is exercised by the recipient with respect to its own Confidential Material and to confidential information of a similar nature, but in

no event less than due care. Each recipient of any Confidential Material hereby agrees to be subject to the jurisdiction of this Court for purposes of the implementation and enforcement of this Protective Order.

25. **Amendments.** This Protective Order shall not prevent the parties from applying to the Court for relief therefrom or modification thereto, or from applying to the Court for further or additional relief by way of protective orders or otherwise, or from agreeing between themselves to modifications of this Protective Order.

In the event that a party desires to provide access to or disseminate Confidential Materials to any person not entitled to access under this Protective Order, it may move the Court for an order that such person be given access thereto if the parties cannot, after negotiating in good faith, agree to such additional access or dissemination.

26. **Use of Confidential Information.** Confidential Materials shall be used solely for the purposes of litigating this Action and shall not be used for any other purpose except as expressly provided herein or by further Order of the Court.

27. **Prosecution Bar.** The Plaintiff, any attorney representing Plaintiff, whether in-house or outside counsel, and any person retained by Plaintiff or attorneys of Plaintiff who obtains, receives, accesses, or otherwise learns, in whole or in part, technical information relating to the design or functionality of any product or service, or any proposed product or service, of an opposing party, which technical information is designated CONFIDENTIAL, CONFIDENTIAL – OUTSIDE COUNSEL ONLY, or CONFIDENTIAL — OUTSIDE COUNSEL ONLY –

SOURCE CODE under this Protective Order, shall not participate in, prepare, prosecute,[2] supervise, or assist in the prosecution of any patent application, reexamination, reissue, or proceeding before the P.T.A.B. (e.g., *inter partes* review) pertaining to the subject matter of the patents-in-suit within two (2) years from disclosure of the technical information or one (1) year after conclusion of these Actions (including any appeals), whichever period is longer. To ensure compliance with the purpose of this provision, Plaintiff shall create an ethical wall between those persons who have accessed technical information relating to the design or functionality of any product or service, or any proposed product or service, of an opposing party and which is designated CONFIDENTIAL – OUTSIDE COUNSEL ONLY or CONFIDENTIAL — OUTSIDE COUNSEL ONLY – SOURCE CODE and: (1) those individuals who prepare, prosecute, supervise, or assist in the prosecution of any patent application pertaining to the same or substantially the same subject matter of the patent(s)-in-suit and (2) those individuals who participate, prosecute, supervise, or assist in any practice or proceeding before the P.T.A.B. involving any patent pertaining to the same or substantially the same subject matter of the patent(s)-in-suit.

28. **Return of Confidential Information.** Within sixty (60) days after the final conclusion of this Action ("Termination of Action"), including any appeals, all Confidential Materials (except CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE materials) produced by any party, and all copies of such information, shall be returned to the producing party, or counsel of record shall certify in writing that such material has been destroyed. Within ten (10) days after the final conclusion of this Action, including any appeals,

---

[2] Throughout this protective order, patent "prosecution" includes all forms of practice and proceedings at the United States Patent and Trademark Office, including, for example, both examination proceedings before examination units and review proceedings before the Patent Trial and Appeal Board ("P.T.A.B.").

all CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE materials produced by any party shall be returned to the producing party along with certification by outside counsel of record and any other individuals who accessed such materials that all such materials have been returned. Counsel of record may retain a copy of all correspondence, pleadings, motion papers, discovery responses, deposition and trial transcripts, legal memoranda, and work product.

29. **Advice of Counsel to Party.** Nothing in this Protective Order shall prevent or otherwise restrict outside counsel from rendering advice to their clients and, in the course thereof, relying generally on Confidential Material; provided, however, that in rendering such advice, counsel shall not disclose, reveal, or describe any such materials except insofar as allowed (if allowed at all) under the terms of this Order.

30. **Exclusion from Depositions and Trial.** If a party wishes to use Confidential Material at the examination at deposition or trial of any witness not entitled to have access to such Confidential Materials, such party shall obtain the consent of the producing party, in advance, and the failure of the examining attorney to obtain such consent or order of the Court shall not be grounds for delaying the deposition or trial or their progress, unless, in the case of a deposition, all persons attending the deposition (including the producing party) consent, and in the case of trial, the Court so rules. Where Confidential Material may be revealed or referred to in a question that will be put to the witness at a deposition upon oral examination or Confidential Materials will be used as exhibits during the examination, the producing party may require that all persons in attendance who are not entitled access to such Confidential Material under this Protective Order leave the room until such line of inquiry is completed. Where Confidential Material may be revealed or referred to in a question that will be put to the witness at trial upon oral examination or Confidential Materials will be used as exhibits during the examination, the

producing party may request that the Court require that all persons in attendance who are not entitled to access such Confidential Material under this Protective Order leave the courtroom until such line of inquiry is completed.

31. **Disclosure of Transcripts Containing Confidential Information.** No copy of any transcript of any deposition which is designated, in whole or in part, as CONFIDENTIAL, CONFIDENTIAL – OUTSIDE COUNSEL ONLY, or CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE shall be furnished by the court reporter to any person other than to counsel of record and counsel for a non-party, if the furnished transcript is of the non-party's own deposition. The original of any transcript of any deposition designated as CONFIDENTIAL, CONFIDENTIAL – OUTSIDE COUNSEL ONLY, or CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE, if required to be filed, shall be filed with the Court under seal in accordance with Paragraph 19 hereof, unless otherwise agreed by the producing party.

32. **Non-Party Reliance on Order.** The terms of this Protective Order may be applied to the Confidential Materials of a non-party.

33. **Non-Party Requests for Information Subject to This Order.** If "CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "CONFIDENTIAL" information in the possession, custody, or control of any receiving party is sought by subpoena, request for production of documents, interrogatories, or any other form of discovery request or compulsory process, including any form of discovery request or compulsory process of any court, administrative, or legislative body or any other person or tribunal purporting to have opportunity to seek such information by compulsory process or discovery request, including private parties, the receiving party to whom

the process or discovery request is directed shall (i) by the third business day after receipt thereof, or the earliest practicable date thereafter, give written notice by hand, e-mail, or facsimile of such process or discovery request together with a copy thereof, to counsel for the producing party; (ii) cooperate to the extent necessary to permit the producing party to seek to quash such process or discovery request; and (iii) not make production or disclosure of such confidential information until the producing party consents in writing to production or the receiving party is ordered by a court of competent jurisdiction to produce or disclose such confidential information, so long as the order is not stayed prior to the date set for production or disclosure.

34. **Other Proceedings:**  By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case.  Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated as confidential pursuant to this order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

35. **Effective Date.**  Upon the entry of this Protective Order by the Court, this Protective Order shall be effective as against all party signatories hereto as of the date of such signature of that party or party's representative, thereby rendering this Order effective nunc pro tunc to the date of such party's signature.  The terms and conditions in this Protective Order shall survive and remain in full force and effect after the termination of this Action until canceled or otherwise modified by Order of this Court, or by written agreement of the parties.  The Court shall retain jurisdiction to enforce the provisions of this Order.

Dated: August 5, 2014

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

/s/ Gregory J. Brodzik
Adam W. Poff (No. 3990)
Monté T. Squire (No. 4764)
Gregory J. Brodzik (No. 5722)
1000 N. King Street
Wilmington, Delaware 19801
*apoff@ycst.com*
*msquire@ycst.com*
*gbrodzik@ycst.com*

*Attorneys for Plaintiff Parallel Networks, LLC*


DUANE MORRIS LLP


/s/ Gary W. Lipkin
Gary W. Lipkin (No. 4044)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801
*gwlipkin@duanemorris.com*

*Attorneys for Defendant SAP America, Inc.*

POTTER ANDERSON & CORROON LLP

/s/ Philip A. Rovner
Philip A. Rovner (No. 3215)
Jonathan A. Choa (No. 5319)
1313 North Market Street
Wilmington, DE 19899-0951
*provner@potteranderson.com*
*jchoa@potteranderson.com*

*Attorneys for Defendants Barracuda Networks,*
*Inc., Brocade Systems, Inc. and Citrix Systems,*
*Inc.*


MORRIS, NICHOLS, ARSHT & TUNNELL
LLP


/s/ Thomas C. Grimm
Thomas C. Grimm (No. 1098)
Jeremy A. Tigan ( No. 5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
*tgrimm@mnat.com*
*jtigan@mnat.com*

*Attorneys for Defendant Riverbed Technology,*
*Inc.*

| | |
|---|---|
| BUCHANAN INGERSOLL & ROONEY PC | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | |
| */s/ Peter J. Duhig* | */s/ Thomas C. Grimm* |
| Peter J. Duhig (No. 4024) | Thomas C. Grimm (No. 1098) |
| 919 North Market Street | Stephen J. Kraftschik ( No. 5623) |
| Suite 1500 | 1201 North Market Street |
| Wilmington, DE 19801 | P.O. Box 1347 |
| *peter.duhig@bipc.com* | Wilmington, DE 19899-1347 |
| | *tgrimm@mnat.com* |
| | *skraftschik@mnat.com* |
| *Attorneys for Defendant Array Networks, Inc.* | |
| | *Attorneys for Defendant A10 Networks, Inc.* |

| | |
|---|---|
| SHAW KELLER LLP | MORRIS NICHOLS ARSHT & TUNNELL LLP |
| | |
| */s/ John W. Shaw* | */s/ Ethan H. Townsend* |
| John W. Shaw (No. 3362) | Jack B. Blumenfeld (No. 1014 ) |
| David M. Fry (No. 5486) | Ethan H. Townsend ( No. 5813) |
| 300 Delaware Avenue, Suite 1120 | 1201 North Market Street |
| Wilmington, DE 19801 | Wilmington, DE 19899-1347 |
| *jshaw@shawkeller.com* | *jblumenfeld@mnat.com* |
| *dfry@shawkeller.com* | *etownsend@mnat.com* |
| | |
| *Attorneys for Defendant F5 Networks, Inc.* | *Attorneys for Defendant Cisco Systems, Inc.* |

MORRIS, NICHOLS, ARSHT & TUNNELL
LLP

*/s/ Rodger D. Smith, II*
Jack B. Blumenfeld (No. 1014 )
Rodger D. Smith, II ( No. 3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
*jblumenfeld@mnat.com*
*rsmith@mnat.com*

*Attorneys for Defendants Radware Ltd. and
Radware, Inc.*

**SO ORDERED** this _____ day of _____, 2014.

_____
CHIEF UNITED STATES DISTRICT JUDGE

## EXHIBIT A

## UNDERTAKING CONCERNING RECEIPT OF
## CONFIDENTIAL MATERIALS SUBJECT TO PROTECTIVE ORDER

I, _____ declare that:

1.        My present residential address is

_____.

2.        My present employer is _____

and the address of my present employer is

_____.

3.        My present occupation or job description is

_____.

4.        I have received and carefully read the Protective Order in this Action dated

_____, and I understand its provisions.  As a condition precedent to receiving any

Confidential Materials, as such are defined in the Protective Order, I agree to subject myself to

the personal jurisdiction of this Court with respect to the enforcement of the provisions of the

attached Protective Order.  I understand that I am obligated, under Order of the Court, to hold in

confidence and not to disclose the contents of any document marked or later designated pursuant

to the Protective Order as CONFIDENTIAL, CONFIDENTIAL – OUTSIDE COUNSEL

ONLY, or CONFIDENTIAL – OUTSIDE COUNSEL ONLY – SOURCE CODE to anyone

other than those persons identified in Paragraphs 12, 13, and 14 of the Protective Order to the

extent that such persons are qualified to review such information.  I further understand that I am

not to disclose to persons other than those persons identified in Paragraphs 12, 13, and 14 of the

Protective Order any words, substances, summaries, abstracts, or indices of Confidential

Materials or transcripts disclosed to me. In addition to the foregoing, I understand that I must abide by all of the provisions of the Protective Order.

5.      At the termination of this Action or at any time requested by counsel of record in this Action, I will return to counsel of record in this Action all documents and other materials, including notes, computer data, summaries, abstracts, or any other materials containing or reflecting Confidential Materials that have come into my possession, and I will return all documents or things I have prepared relating to or reflecting such information.

6.      I understand that if I violate the provisions of this Protective Order, I will be in violation of a Court Order and subject to sanctions or other remedies that may be imposed by the Court, and I may be potentially liable in a civil action for damages by the disclosing party.

7.      I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.


Executed on: _____, 20___.          Name:_____

# EXHIBIT D

```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -
                                        :    CIVIL ACTION
 4                                      :
                                        :    NO. 12-1042-LPS
 5      REEFEDGE NETWORKS, LLC,         :        and
                                        :    NO. 12-1043-LPS
 6              Plaintiff,              :    NO. 12-1044-LPS
                                        :    NO. 12-1045-LPS
 7      v                               :    NO. 12-1143-LPS
                                        :    NO. 12-1144-LPS
 8      ARUBA NETWORKS,INC., and DELL, INC., :  NO. 12-1147-LPS
                                        :    NO. 12-1149-LPS
 9              Defendants.             :    NO. 12-1150-LPS
                                        :    NO. 12-1151-LPS
10                                      :    NO. 12-1674-LPS
                                   - - -     NO. 13-0412-LPS
11
                              Wilmington, Delaware
12                            Friday, August 23, 2013
                                Telephone Conference
13
                                   - - -
14
        BEFORE:           HONORABLE LEONARD P. STARK, U.S.D.C.J.
15
                                   - - -
16       APPEARANCES:

17

18                    FARNAN, LLP
                      BY:  MICHAEL J. FARNAN, ESQ.
19
                          and
20
                      RUSS, AUGUST & KABAT
21                    BY:  J. POWER HELY, VI, ESQ., and
                          ANDREW D. WEISS, ESQ.
22                        (Los Angeles, California)

23                          Counsel for ReefEdge Networks, LLC

24
                                Brian P. Gaffigan
25                              Registered Merit Reporter
```

```
1   APPEARANCES:  (Continued)

2

3           MORRIS NICHOLS ARSHT & TUNNELL, LLP
            BY:  MICHAEL J. FLYNN, ESQ.

4                   Counsel for Aruba Networks, Inc., and
                    Dell, Inc.

5

6           MORRIS NICHOLS ARSHT & TUNNELL, LLP
            BY:  MICHAEL J. FLYNN, ESQ.

7               and

8

9           DUANE MORRIS, LLP
            BY:  MATTHEW C. GAUDET, ESQ.,
                 (Atlanta, Georgia)

10

11              and

12          DUANE MORRIS, LLP
            BY:  JOHN M. BAIRD, ESQ., and
                 CHRISTOPHER J. TYSON, ESQ.

13               (Washington, District of Columbia)

14                  Counsel for Cisco Systems, Inc., and
                    Meraki, Inc.

15

16          MORRIS NICHOLS ARSHT & TUNNELL, LLP
            BY:  MICHAEL J. FLYNN, ESQ.

17              and

18          IRELL & MANELLA, LLP
19          BY:  TIMOTHY J. HEGGEM, ESQ.
                 (Newport Beach, California)

20                  Counsel for Juniper Networks, Inc.

21

22

23

24

25
```

```
 1   APPEARANCES:  (Continued)

 2
               DLA PIPER, LLP
 3             BY:  BRIAN A. BIGGS, ESQ.

 4                  and

 5             DLA PIPER, LLP
               BY:  SUMMER KRAUSE, ESQ.
 6                  (East Palo Alto, California)

 7                       Counsel for Ruckus Wireless, Inc.

 8
               POTTER ANDERSON & CORROON, LLP
 9             BY:  BINDU ANN PALAPURA, ESQ.

10                  and

11             MORRISON & FOERSTER, LLP
               BY:  L. SCOTT OLIVER, ESQ.
12                  (Palo Alto, California)

13                       Counsel for Meru Networks, Inc.

14
               PHILLIPS, GOLDMAN & SPENCE, P.A.
15             BY:  JOHN C. PHILLIPS, JR., ESQ.

16                  and

17             McKENNA LONG & ALDRIDGE, LLP
               BY:  LORA A. BRZEZYNSKI, ESQ.
18                  (Washington, District of Columbia)

19                       Counsel for Adtran, Inc.

20
               SHAW & KELLER, LLP
21             BY:  DAVID M. FRY, ESQ.

22                  and

23             LEE TRAN and LIANG, LLP
               BY:  EDWARD S. QUON, ESQ.
24                  (Redwood City, California)

25                       Counsel for Netgear, Inc.
```

```
 1    APPEARANCES:  (Continued)

 2
                  O'KELLY, ERNST, & BIELLI, LLC
 3                BY:  DANIEL P. MURRAY, ESQ.

 4                     and

 5                VASQUEZ BENISEK & LINDGREN, LLP
                  BY:  JEFFREY LINDGREN, ESQ.
 6                     (Lafayette, California)

 7                     Counsel for Enterasys Networks Inc.

 8

 9

10                     - oOo -

11                 P R O C E E D I N G S

12                (REPORTER'S NOTE:  Telephone conference was held

13    in chambers, beginning at 3:47 p.m.)

14                THE COURT:  Good afternoon, everybody.  This is

15    Judge Stark.  Who is there, please?

16                MR. FARNAN:  Good afternoon, Your Honor.  This

17    is Michael Farnan on behalf of plaintiff; and with us on the

18    line are Andrew Weiss and Power Hely of Russ August & Kabat

19    from California.

20                THE COURT:  Thank you.

21                MR. FLYNN:  Good afternoon, Your Honor.  Michael

22    Flynn from Morris Nichols for defendants Aruba Networks and

23    Dell.

24                And also for Cisco Systems, with me on the line,

25    Matt Gaudet and John Baird and Chris Tyson from Duane
```

1    Morris.

2              And also for Meraki and from Juniper Network, I

3    have Tim Heggem from Irell & Manella.

4              A VOICE:  Joining meeting:  Jack Phillips.

5              MS. PALAPURA:  Good afternoon, Your Honor.  This

6    is Bindu Palapura from Potter Anderson on behalf of Brocade

7    and Meru Networks.  On the line with me is Scott Oliver from

8    Morrison & Foerster.

9              THE COURT:  Okay.

10             MR. FRY:  Good afternoon, Your Honor.  This is

11   David Fry from Shaw Keller on behalf of Netgear.  And with

12   me on the line today is Ed Quon from Lee Tran and Liang.

13             THE COURT:  Thank you.

14             MR. BIGGS:  Good afternoon, Your Honor.  This

15   is Brian Biggs from DLA Piper here in Wilmington on behalf

16   of Ruckus Wireless.  Withe me on the phone, I have Summer

17   Krause also from DLA Piper.

18             THE COURT:  Thank you.

19             MR. PHILLIPS:  Good afternoon, Your Honor.  This

20   is Jack Phillips on behalf of Adtran.  And with me on the

21   line is Lora Brzezynski of the McKenna Long & Aldridge firm.

22             THE COURT:  Thank you.  Is there anyone else?

23             MR. MURRAY:  Good afternoon, Your Honor.  This

24   is Daniel Murray from O'Kelly, Ernst, & Bielli on behalf of

25   Enterasys Networks Group; and also on the line is Jeff

1    Lindgren.

2              THE COURT:  Thank you.  Is there anything else?

3              I hear silence so I will take it that that is a

4    no.

5              I do have my court reporter here.  For the

6    record, it is our I think 12 related ReefEdge Networks

7    cases.  The first one is ReefEdge Networks LLC versus Aruba

8    Networks et al., our Civil Action No. 12-1042-LPS.  The

9    other cases have the numbers 1043, 1044, 1045, 1143, 1144,

10   1147, 1149, 1150 --

11             A VOICE:  Joining the meeting.

12             THE COURT:  -- 1151, 1674 and 13-412.

13             We're here to talk about the disputes relating

14   to the protective order.  So let me hear first from the

15   plaintiff on all of the issues, and then we'll hear from

16   defendant or defendants on all of the issues.  So we'll hear

17   from the plaintiff first.

18             MR. HELY:  Thank you, Your Honor.  Power Hely

19   representing the plaintiff.  There are a few disputes which

20   are divided into essentially three categories.

21             The first dispute is with regards to defendants'

22   proposals as to a prosecution bar.  The prosecution bar the

23   defendants propose would cover a number of different PTO

24   proceedings.  One of those are the new proceedings, inter

25   partes review and post-grant review.  These proceedings are

1    in effect a minitrial or a pseudo-trial on the validity of

2    the patent.  As such, plaintiffs should be allowed and

3    permitted to utilize the counsel of their choice just as

4    defendants, based on their proposal, would not be prevented

5    from aiding their counsel or their clients in the inter

6    partes review or post-grant review.

7          The courts have reviewed these proceedings and

8    note that claims can only be narrowed and additionally the

9    claims, amendment to the claims require very strict rules.

10    Recent case law on this from the PTO has required that any

11    amendments be made in a 15 page filing.  That filing must

12    note specification support for any amendments.  That the

13    amendments are novel and cover all other patentability

14    requirements.  That the patentee and not those requesting

15    the review show that it is patentable over all subject or

16    prior art, both those listed in the IPR or those that would

17    otherwise be known to the patentee.  It's a very, very

18    narrow and strict process.

19          Further, defendants would have the ability to

20    respond to any such amendments, thus giving them the ability

21    to argue that such amendments are improper or otherwise not

22    patentable if they were involved in the IPR.

23          The second limitation is as to reexaminations.

24    Again, as we cite in our letter brief, a number of courts

25    have taken a look at this and said that because in

1    reexamination claims may only be narrowed, a prosecution

2    bar should not extend to them, yet plaintiff is not asking

3    that no prosecution bar be set.  Rather, using similar

4    cases, we ask that plaintiffs' lead counsel at least be

5    allowed to advise in the process.

6         If it were to eliminate or alleviate some of

7    defendants' concerns, plaintiff would be willing to amend

8    its proposal such that we can only advise our reexamination

9    counsel as to the prior art and not to claim amendment.

10   This is again to ensure that there is consistency within the

11   cases.

12        The last issue with regards to these prosecution

13   bar is as to who and when the prosecution bar attaches.

14   Defendants have listed in their actual request in the

15   proposed protective order that it attach with someone who

16   has access to defendants' protected information.  Yet even

17   in their letter brief, they acknowledge the real concern

18   is who has access, who has actually learned of defendants'

19   protected information.

20        We would ask that any prosecution bar be limited

21   to those or to attach to those who have actually learned and

22   not merely on the broad amorphous concept of who might have

23   access.

24        Lastly, defendants believe that a prosecution

25   bar should be unilateral, applying only to the plaintiff.

1    Plaintiff would ask that any prosecution bar should attach

2    equally to both parties.  As we mentioned about, to allow

3    defendants' counsel a choice to be involved in proceedings

4    such as an IPR which may be the only real proceeding as to

5    invalidity while somehow preventing plaintiff's counsel

6    of choice to be involved would be horribly prejudicial.

7              THE COURT:  Let me stop you there before you

8    move on to the other issues.

9              If I were to agree that any prosecution bar is

10   bilateral, then what is left to your argument on whether the

11   AIA-type proceedings should be implicated by a bar or not?

12             MR. HELY:  Your Honor, we would ask that both

13   parties' counsel be allowed to be involved in the same

14   manner as to AIA proceedings or as to reexaminations.  That

15   it should be equally applied.

16             Furthermore, for prosecutions outside of that

17   context, for example, filing of new patents, it should be

18   likewise applied equally.

19             We believe that defendants will ask for

20   third-party discovery in this case.  As such, they would be

21   in a position as to those third parties in the same manner

22   that plaintiff is as to defendants' information.

23             THE COURT:  Now, what about the point though that

24   given, it's at least alleged that you are a non-practicing

25   entity, that you are not going to be producing confidential

1    information of a nature that should give rise to concerns

2    about defense counsel having access to it?

3              MR. HELY:  We acknowledge there is a likelihood

4    that any production by plaintiff itself would be very

5    minimal particularly as to those natures, Your Honor,

6    but that does not affect the issue with regards to third

7    parties.

8              THE COURT:  So it's really third parties that

9    you are placing the burden on here.

10             MR. HELY:  Well, it's more that there would be a

11   burden applied to third parties who would be responding to

12   discovery issued either by plaintiff or by defendants in the

13   case, Your Honor, but yes.

14             THE COURT:  Did you have anything more to say

15   about the prosecution bar issues?

16             MR. HELY:  No, Your Honor.

17             THE COURT:  You can move on to the other three

18   points, please.

19             MR. HELY:  With regards to source code, there

20   are two issues.  One is where source code should be hosted.

21   Plaintiff believes that it's a perfect balance of the issues

22   and the equities of the case to require that source code be

23   hosted with defendants' local counsel in Delaware.

24             While the defendants argue without really

25   enumerating there would be some security concerns, surely

1   Delaware counsel is in a position to protect from those

2   security concerns.  Plaintiff's counsel has hosted security

3   code reviews and found no problems or concerns there.

4           Nor has defendant specifically enumerated any

5   issues specifically saying they would prefer to have it at

6   their lead counsel's office.  Hosting it in Delaware leaves

7   it in one place which allows for efficient source code

8   review and makes it available to review, should the need

9   arise at trial.

10          The second issue with regards to source code

11  is a limitation as to number of pages to be printed.

12  Plaintiff's position simply is there isn't sufficient

13  information at present to determine whether the number set

14  forth by defendants will be sufficient.

15          Defendants state that 1,000 pages should be

16  sufficient, yet for some defendants there are approximately

17  50 products at issue which would leave only 20 pages of

18  source code per product.

19          Defendants also state by their proposal, leave

20  would be granted to print additional pages but if sufficient

21  is the case, why set any arbitrary number at present?

22          We believe that even as cited in defendants' own

23  cases, all this will do is lead to a likelihood this will have

24  to come back to Your Honor for further litigation, whereas

25  if the parties proceed without an arbitrary limitation and at

1    some point in the future defendants feel that plaintiff is

2    taking advantage of an ability to print out, they could then

3    seek a protective order and all the facts would be set forth

4    at that time so that Your Honor would have the ability to

5    review and determine whether plaintiff's actions were

6    appropriate or not.

7              The last issue is regards to marking documents as

8    to export restriction requirements.  Your Honor, we feel that

9    this should be very straightforward.  Just as with confident-

10   iality designations, the best individual to determine whether

11   or not such should be marked is defendants, themselves.  They

12   know their documents.  They know whether they are documents

13   that would likely meet export restriction requirements.

14   They are in the best position to mark the documents.

15             Should they over-mark, that still allows

16   plaintiff to have some idea of whether or not such documents

17   should be restricted from being reviewed or revealed to

18   foreign nationals.

19             Now, I should say at present, plaintiff can

20   think of no circumstances in which we would provide such

21   documents to a foreign national.  However, again, that

22   doesn't affect the fact that the best person as with

23   confidentiality designations to mark the documents are the

24   producing defendants.

25             THE COURT:  Let me ask you a little bit about

1    that last point.

2              If you don't see any likelihood at the present

3    that you are going to be sharing these documents with

4    foreign nationals, why should I put a burden on the

5    defendants to have to mark these documents at this time?

6              MR. HELY:  Your Honor, it's because they're

7    in the best position, but should later on in the case

8    circumstances change, we can't imagine what those would be,

9    but circumstances change and we need to provide documents to

10   a foreign national, we are now left in a position of being

11   in a poor -- we're now in a poor position to determine what

12   documents would and would not be subject to export control.

13             Since defendants are in the best position, would

14   have to review all the documents under confidentiality in

15   the first instance, having them marked for export control is

16   the optimal solution.

17             THE COURT:  Do you agree with defendants that

18   the obligation or restriction I guess on sharing information

19   subject to an export restriction is an obligation that each

20   and every one of us as United States citizens share?

21             MR. HELY:  Absolutely, Your Honor.  However,

22   given the ambiguity and the risk, the party best situated to

23   ensure that no one inadvertently violates those restrictions

24   and requirement are the defendants.

25             THE COURT:  All right.  Thank you.  We'll give

1    you a chance for rebuttal.

2              Are the defendants all going to wish to be heard

3    or is there one person speaking for you all?

4              MR. GAUDET:  Your Honor, this is Matt Gaudet at

5    Duane Morris for Cisco and Meraki.  I believe I'm the

6    spokesperson for all the defendants.

7              THE COURT:  Great.  Go ahead.

8              MR. GAUDET:  Thank you.  I'll take up the

9    issues in the same order that plaintiff addressed them, so

10   beginning with respect to the prosecution bar and the issue

11   of the inter partes review proceedings.

12             To step back.  The question is under *Deutsche*

13   *Bank*, the Federal Circuit's *Deutsche Bank* case that guides

14   this analysis is simply whether or not there is a risk that

15   our confidential information could be used or misused in

16   the Patent Office.  The plaintiffs have never disputed that

17   we have satisfied that burden, that we have confidential

18   information that could be used or misused in the Patent

19   Office.  That is why there is no -- they're not debating the

20   prosecution bar in some form should at least apply to them.

21   There is a question about whether it should also apply to

22   us, but it will at least apply to them.

23             Their argument with respect to the inter

24   partes review proceedings is that there is only a limited

25   opportunity to amend the claim.  The response to that is

1    there is still an opportunity to amend the claim, and the

2    point of *Deutsche Bank* is you cannot use our confidential

3    information or misuse it for that purpose.

4           Beyond that, it's not just the amendment of

5    claims that pose an opportunity to misuse our confidential

6    information.  Important argument-based estoppels can occur

7    as well.

8           In other words, per *Deutsche Bank,* it's not

9    permissible for them to take our confidential information,

10   dig deep in our source code and figure out, all right, the

11   key nugget that our claims have to cover is X so whatever we

12   do in the reexam, be sure the claims always cover X.  That

13   is something that would not be known otherwise publicly,

14   and it's precisely the kind of thing that would be able to

15   be used and shaped around through arguments and front end

16   amendments in the inter partes proceeding.

17          With respect to the argument by plaintiff that

18   prosecution counsel might say something that inadvertently

19   hurts the litigation, Your Honor, I would submit that is

20   precisely the issue in *Deutsche Bank.*  That you are not

21   allowed to take our litigation information and be sure

22   you give things just so, so that you are still right top

23   on our products based on confidential information while

24   maintaining the validity of the claims.  That is precisely

25   the *Deutsche Bank* issue.  And,

1        Finally, with respect to this issue of fairness,

2   how can it be the defendants can participate -- defendants'

3   trial counsel can participate but the plaintiff can't.

4        Let me first say that fairness is not an element

5   of the *Deutsche Bank* test, prejudice is.  Those are two very

6   different things.  The parties here are not similarly situated.

7   It's not just the fact that they are a non-practicing entity,

8   it's that a defendant cannot in an inter partes review amend

9   the claim.  A defendant cannot make an argument-based estoppel.

10  They're fundamentally different issues.

11       Beyond that, it actually goes a step further.

12  There are 12 defendants here.  Cisco, we're already past the

13  one year bar so I'm not going to participate no matter what.

14  There is nothing I can do to participate in an inter partes

15  review, and yet at some level, just as the plaintiff is

16  saying, my fate could well rise or fall with our best prior

17  art of somebody else's issue in an inter partes review.

18       So the punchline is the inter partes review is

19  fundamentally not a procedure under any circumstance where

20  everybody who might be impacted with something at trial can

21  have their counsel, their trial counsel be heard in that

22  proceeding.  That is just not the way that it works.

23       Instead, the issue, again under *Deutsche Bank*,

24  is just fundamentally is there an opportunity for our

25  confidential information to be used?  There certainly is.

1    If that is the case, is there some unique prejudice?  And

2    there has been no prejudice articulated here.

3            That is that issue, Your Honor.  I'll move on

4    to the more general question about participation and general

5    reexams.

6            With respect to that issue, the plaintiff would

7    have trial counsel be able to advise with respect to reexams.

8            In contrast to that, our position is that, no,

9    there should be an ethical wall between people who are

10   subject to the prosecution bar and people who are accessing

11   confidential information.

12           The reason for that flows directly from *Deutsche*

13   *Bank*.  What I mean by that is when you look at the proposal

14   -- and this is on page 18 of the Exhibit A to our letter,

15   which is the competing proposals in the protective order.

16   They've got the circumstances under which trial counsel

17   could advice reexam counsel.  They can advice reexam counsel

18   as long as they don't directly prosecute, which I think

19   means they're not actually signing the paper, don't reveal

20   confidential information and don't use confidential

21   information.  *Deutsche Bank* says that is exactly what the

22   human mind can't do.  And,

23           I think the perfect example is, again, if -- and

24   they said and now would suggest they can only talk about

25   prior art, and I will use that example.  Trial counsel knows

Case: 12-1548 Document: 49 Page: 90 Filed: 08/05/2013 Case: 12-1548 Document: 49 Page: 90 Filed: 08/05/2013 Page ID #: 8163

18

1   that no matter what the claim has to cover X.  And so trial

2   counsel advises reexam counsel whatever you do in this

3   reexam, however you distinguish this piece of prior art, I

4   just really don't feel good on a distinction between based

5   on X.  Let's not say that.  Let's say something else.

6          That accomplishes what *Deutsche Bank* and other

7   case is say you can't do.  It's simply once you are having a

8   substantive conversation about this subject matter and the

9   question of what to say to the Patent Office comes up, it's

10  impossible to segregate strategy based on our confidential

11  information from any other advice.  That's that that issue.

12         I will move from the bilateral to the unilateral

13  point.

14         On this issue, again, there is no debate that at

15  least a unilateral prosecution bar is necessary.  It again

16  comes back to *Deutsche Bank,* the burden of proof issue here,

17  and the question basically being has there been a showing

18  that confidential information could be used or misused by

19  the Patent Office.

20         Because the plaintiff is not a practicing

21  entity, they haven't even suggested that they would produce

22  information that we would use or misuse.  Instead, the only

23  argument is that a third party down the line may present

24  information that could be used or misused.  And,

25         The response to that is the possibility that

1    somebody down the line could satisfy the burden of proof

2    doesn't mean the burden of proof is satisfied today.  No

3    third party would be forced to sit, to give over information

4    without being able to review the presentative order first.

5          If we come to a situation, and I don't know what

6    it would be, before a third party, presumably somebody who

7    is not already supplying something to Cisco, but whatever

8    the case may be, some third party produces confidential

9    information, they will first review the presentative order.

10   They will then have an opportunity, if they look at the

11   protective order, and say you know what?  If my information

12   cannot be viewed by the defendants' counsel in this case,

13   they'll be able to come before the Court and see if they can

14   satisfy the *Deutsche Bank* factors.  If they can, they will

15   get relief.  If they can't, they won't.  But the idea of

16   sort of doing it now, just in case prospectively, every

17   plaintiff in every patent case could make that argument and

18   that doesn't substitute for actual proof.

19         The other point here, and I think we actually

20   have an agreement on this one point, is they made the point

21   that our trigger language in terms of the prosecution bar

22   refers to people who "have access to," which is, as they

23   pointed out, that could be interpreted more broadly than it

24   is intended.  So we would agree that in our proposal,

25   whatever we say, wherever it says "have access to" would be

1   changed to "accesses." So it would be people who have

2   access to the information, not sort of theoretically having

3   access to. At least as to that point, we have agreement.

4   THE COURT: Before you move on, I understand

5   what you are saying particularly about the unfairness, but

6   I am concerned about the unfairness. It may not, strictly

7   speaking, come into the *Deutsche Bank* analysis. This is

8   really focused on the bilateral/unilateral question.

9   I understand that some defendants would not be

10  participating if there is, say, some sort of proceeding in

11  the PTO that could be decisive on a particular invalidity

12  defense but some defendant would be. If I go with your

13  proposal, at least that defendant will have its choice

14  of counsel at what may be the only battlefront on that

15  important issue, and plaintiff would not have its choice of

16  counsel. So I have heard what you said but I'm still a

17  little concerned about whether that is truly fair and

18  appropriate in the circumstances.

19  Do you have anything more to say on that?

20  MR. GAUDET: I do, Your Honor. Two points

21  on that. The first is that that is not a new concern.

22  That is not a new issue with inter partes review. The

23  possibility of a reexam being the only front in the battle

24  is also true in inter partes reexams and ex parte reexams,

25  but it never should have called out this special special

1    case.

2            Beyond that is the fact that a client, a defense

3    client might have the same counsel do both, it will save a

4    little money, but beyond that there is no other advantage

5    because there is nothing that the plaintiff has produced

6    that will help the defendants out.  If there was, then the

7    defendants would have been barred in the first place.

8            But the question of whether or not there

9    actually is something of a fairness point, in other words,

10   if there is some substantive advantage, is coextensive

11   with the *Deutsche Bank* question in the first place.  The

12   fact that the defendant knows about its own confidential

13   information, well, so would the next counsel that is hired.

14           There is no advantage or disadvantage, one

15   way or the other, from the defense standpoint.  The only

16   difference is perhaps they save a little bit of money but

17   that's it.

18           I very much hear the Court if there was some

19   substantive advantage that you are better positioned in the

20   reexam for having known what was going on in the litigation,

21   but it just wouldn't be the case.  There is nothing that a

22   defense lawyer in the IPR would know by virtue of the

23   litigation that would help them invalidate a claim.  The

24   claim would be invalidated based on the record there.  It

25   has got nothing to do with infringement or any of the other

1     issues.  It's just the prior art that is present there.

2               But the problem is the reverse isn't true.  That

3     a plaintiff, if it's the same plaintiff, plaintiff's trial

4     counsel will have advantages in their ultimate goal, which

5     is not just to save the claim but to save the claim and keep

6     it right on top of the defendants' products.

7               THE COURT:  Okay.  Thank you.  Did you want to

8     move on to the other issues?

9               MR. GAUDET:  Yes, Your Honor.

10              With respect to the location of source code.

11    As people will say in these situations, source code,

12    particularly for technology companies like this defendants,

13    it's the Crown Jewels.  In many instances, it's the single

14    most valuable asset within a company.

15              All of the defendants here regularly find

16    themselves in this position.  That is to say, defending

17    patent litigation brought by non-practicing entities or

18    others.  But Cisco, for instance, has dozens and dozens of

19    cases pending against it; and all of these defendants have

20    come up with procedures that maintain the safety and security

21    of this highly valuable asset, and whether that is particular

22    vendors that do it, particular rules that they use and people

23    understand how to sign in and sign out sheets, there are

24    certainly circumstances where clients will not allow code

25    to be transported by mail or some other postal delivery.

1    Instead, it has always got to be in the possession of a

2    custodian.  There are all sorts of procedures like that.

3          The point is simply that we want to be sure for

4    this incredibly important asset, the clients are allowed to

5    ensure that the process that they have always used and are

6    most familiar and they know works can be used here as well.

7          In effect, the plaintiff would have us sort of

8    reinvent the wheel and see if couldn't you just transfer

9    that process to Delaware?  To start with, there would be a

10   number of expenses, including the likelihood that somebody

11   would have to fly the code to Delaware instead of the

12   plaintiff flying out to where the code naturally formally

13   exists, which is closer to where it's kept in the ordinary

14   course of business.  And,

15          The argument that in effect there is a cost

16   savings here, I would submit that in the grand scheme of

17   things, the cost savings to the plaintiff is, it's probably

18   less than the expenses being put on the defendants for

19   coming up with a new procedure and perhaps having to

20   transport in person the code, in the case of Cisco, across

21   the country.  But beyond that, most of the costs shift, and

22   given the paramount interest in protecting the source code,

23   we don't think it's appropriate to impose that new procedure.

24          But the other point I want to make -- and this

25   sort of struck me.  The last point from the plaintiff about

1    the idea of this being close to trial sort of just in case

2    so it would be there in case for some reason they needed it,

3    I think that point sort of speaks to the larger issue here.

4    That almost envisions that we would have source code just

5    there available on a computer in case somebody wants to stop

6    by and look at it.  And,

7            When you look at the agreed part of this

8    protective order, this would be in a highly secure room into

9    which people have to sign in and sign out on a stand-alone

10   computer that doesn't communicate with anything else, in a

11   reserved room, and somebody watching the whole process.  By

12   definition, that will be long gone and shut down by the time

13   of any trial, not to mention that discovery will be closed

14   and the exhibit lists will be in.  But it's not as if this is

15   a document production when you can bring a box of documents

16   somewhere.  It's a heavily involved process that will exist

17   for a period of time, and it's absolutely necessary.  After

18   that, the code is returned back to the client.

19           That is everything I have on that point, Your

20   Honor.  I was going to move on unless there are questions.

21           THE COURT:  Just one.  Do you have any idea how

22   many different cities we're talking about, if I agree to the

23   defendants' proposal?

24           MR. GAUDET:  I believe that is listed in the

25   protective order.  Let me confirm that.

1        The protective order identifies Palo Alto or

2   San Francisco, Lafayette, California, those two; Atlanta,

3   Georgia; Wilmington, Delaware.  Again, Palo Alto, Newport

4   Beach, and San Francisco.

5        The protective order has five, Your Honor.

6   Someone will jump in and correct me if that is not right,

7   but I believe the number will be five.

8             THE COURT:  Thank you.  You can move on.

9             MR. GAUDET:  The next issue is the page

10  limitation.  The page limit of 1,000, the point is not to

11  eventually have sort of a "gotcha" moment with plaintiff to

12  say, well, you hit 1,000 and that's it.  The point is if

13  there is not some limit, there is absolutely no incentive on

14  the part of the plaintiff to actually do the review there

15  and only print out the bare minimum that needs to be printed

16  out to fairly prosecute its case.  We certainly don't want

17  to stand in the way of the plaintiff's right to print out

18  what it needs to print out to fairly prosecute its case,

19  but if there is not some limit, then what will happen

20  potentially is that you just, you sort of hit the printout

21  button, and there is no incentive to try to actually do the

22  review and learn the code there on the spot.  And,

23        I would say the idea that this would somehow

24  come back to you is a provision that, look, we have a

25  thousand as sort of the starting point.  If you've got a

1   reason you need to go beyond that, we cannot unreasonably

2   withhold an agreement.  And there have been dozens -- from

3   in my experience about the question about whether or not

4   this would come back to you if you enter a provision on

5   this, I have been involved in probably dozens of cases

6   that had exactly this protective order or something like

7   that or perhaps even a lower number, and I have never seen a

8   situation when there was a fight that a court didn't have to

9   resolve about whether or not the plaintiff could still print

10  more pages.

11          I certainly hope it wouldn't happen, but if it

12  did happen, and there was a legitimate good faith dispute

13  about whether or not the plaintiff had gone too far, and

14  the parties couldn't resolve it, that would be a good thing

15  to present to Your Honor, but the idea that sort of the

16  floodgates are open is inconsistent with my experience on

17  that.

18          THE COURT:  You can move on to the last point.

19          MR. GAUDET:  Thank you, Your Honor.  In terms of

20  export controls, a quick sort of background on this.

21          The regulations apply to products in certain --

22  I'm sorry -- the documents in certain categories of products,

23  and it is typically the kinds of documents that explain how

24  certain products work.

25          One of those categories is cryptography, which

1    is encryption.  The products here for Cisco are wireless

2    access points and wireless controllers, so the things that

3    create wireless networks.  And these products have a very

4    strong form of encryption to keep, if you want to, to keep

5    those communications secure.  That's at the heart of this

6    category.

7            So we asked a Cisco expert on this, an expert in

8    terms of the documents, subject matter expert:  Give us an

9    estimate what percentage of the documents that we could

10   reasonably foresee and give a figure about these products

11   would be covered by or at least potentially covered by this

12   export control regulation.  The answer we got was 70 to

13   90 percent of the technical documents.  And to figure out

14   which 10 to 30 percent would not be subject would take a

15   very nuanced legal analysis, frankly, because this is not at

16   all coextensive with the confidentiality analysis.  It's a

17   completely different test.

18           So we asked the question:  Well, frankly, how

19   does Cisco deal with this?  What do you do to operate in

20   this environment?  And their answer made a lot of sense,

21   which is you don't do this on a document-by-document basis.

22   We don't mark documents that way because you know by being

23   in this area that you are in the zone, and probably if you

24   started giving people access to documents in any substantial

25   way, you would be in trouble, so you deal with it on an

1    employee-by-employee basis.  And,

2          What I mean by that is that any time Cisco wants

3    a foreign national hired in as an employee or have access to

4    these documents, they go to the United States Department of

5    Commerce, and they get them licensed so they have permission

6    to access these documents.

7          What I would suggest is that is exactly the

8    procedure that should happen here.  Namely -- and although

9    that I can't think of a scenario where it would happen --

10   in the unlikely event that in the future there is a foreign

11   national who has to participate in this litigation on

12   behalf of the plaintiff, they would take it up on an

13   employee-by-employee basis and get that person licensed,

14   if they can.

15         But us identifying what is potentially as low as

16   10 percent of the document production we think might not be

17   subject to export control regulation would be incredibly

18   burdensome and wouldn't accomplish a thing in terms of

19   being able to let anybody meaningfully participate in the

20   litigation.

21         THE COURT:  Okay.  Thank you.  Mr. Hely, is

22   there anything you want to respond to?

23         MR. HELY:  If I could, Your Honor.

24         First with regards to the prosecution bar, the

25   real issue with regard to *Deutsche Bank* and associated cases

1    is inadvertent disclosure, unintentional disclosure.  The

2    examples that defense counsel just used are examples of

3    intentional disclosure which is expressly prohibited.  I

4    hope I'm misreading defense counsel.  I don't believe he

5    meant to say that we would violate such an intentional

6    prohibition.

7              The courts have taken this into consideration

8    and analyzed *Deutsche Bank* factors with regards to things

9    such as reexam -- AIA is I think is a little bit too new to

10   have been properly analyzed -- have found the risk of this

11   inadvertent disclosure where claims can only be limited in

12   scope is highly, highly low; that versus the high prejudice

13   to plaintiff from not being able to utilize counsel of their

14   choice.  And, yes, that is part of the *Deutsche Bank* factors

15   because that unfairness is a prejudice to plaintiff, meaning

16   that weighing those factors allows for use of plaintiff's

17   counsel choice in reexam in AIA activities.

18             With regards to the unilateral bar, defendants'

19   position is that should there be third-party discovery, that

20   at that time the third parties should then go to Your Honor

21   and seek a protective order, seek a carveout of the current

22   protective order, but that is just likely to lead to further

23   action before the Court.  If we settle this now with a

24   bilateral bar, then there is no risk of that.

25             One other thing on prosecution bar.  Defense

```
 1    counsel says that there is no advantage to having defense
 2    counsel or lead defense counsel be involved in PTO
 3    proceedings.  But if there really is no advantage, why not
 4    wall them off?  Why have a unilateral bar?
 5                With regards to the source code, unless
 6    defendants' position is that all defendants always use the
 7    same outside counsel for every case, they must be able to
 8    transfer their process -- their security process to other
 9    others counsel.  If so, they can safely transfer it to
10    Delaware local counsel.
11                I also just want to touch on defendants'
12    statement that the source code will be long gone as of
13    the time of trial.  There is no such carveout in the
14    protective order, none that we can find, none that we are
15    aware; and we would object to any removal of the source
16    code prior to the close of trial.
17                There may be issues that come up at trial that
18    would require access wherever it is located, and in such
19    manner, we would still, of course, apply the other standards
20    of the protective order.  People would sign in.  People would
21    sign out.  People would undergo all the other restrictions
22    required.  But there may be need to access at trial and we
23    would object to any removal of source code prior to that time.
24                The last issue with regards to the export control
25    -- defendants' position in this was not really stated in their
```

1  briefing -- was that they talked to a Cisco individual with

2  regards to certain technical documents.  And 70 to 90 percent,

3  defense counsel's position is that 70 to 90 percent of those

4  technical documents would need to be marked for export control.

5       But that isn't the subset of all technical

6  documents at issue in the case.  That is not covering other

7  documents that may tangentially refer to those technical

8  documents:  financial documents, product assembly documents,

9  things of that nature.  Again, the person best situated to

10  make that determination is the defendant.

11       We didn't hear from other defendants.  Perhaps

12  for other defendants, the number isn't 70 to 90 percent.

13  Again, a very broad scope.

14       That's all plaintiff has at this time, Your

15  Honor.  Thank you.

16       THE COURT:  All right.  Thank you.  Let me give

17  you my rulings on the issues in dispute relating to the

18  protective order.

19       Many of these issues are difficult and I could

20  see going either way, particularly as circumstances change

21  from case to case.  But having carefully reviewed what you

22  submitted prior to the call and having listened today, and I

23  had my questions answered, I find that in the circumstances

24  of this case, I agree with the defendants on each of the

25  issues in dispute.  Therefore, the protective order that I

1    sign will contain the defendants' proposals on each of these

2    issues.  Let me touch on each of them just briefly.

3           The first three disputes all relate, of course,

4    to the prosecution bar.  Here, I simply think that it's

5    appropriate to have a unilateral bar because the parties

6    and counsel are not similarly situated given that we have a

7    non-practicing entity on one side and we have practicing

8    entities on the other side.

9           The plaintiff does not really argue that it has

10    any information or any significant amount of information

11    that it expects to produce that would raise the type of risk

12    that *Deutsche Bank* is concerned with, and plaintiff does

13    not contest the fact that defendants do have likely a great

14    deal of that information that they expect to produce in this

15    litigation.

16           The probability or possibility that third

17    parties may produce information that may cause additional

18    protections to perhaps become more warranted is not enough

19    basis in my view to impose these, to justify really a

20    bilateral bar at this time.  We can and, if need be, will

21    take up any disputes relating to additional protections if,

22    and when, some party asks me to evaluate that, and I will

23    evaluate it then based on the record then.  But based on the

24    record here, and based on what is likely to be produced by

25    the parties in the case, I believe that the unilateral bar

1    is appropriate.

2           I think that, yes, *Deutsche Bank* is concerned

3    with a risk of inadvertent disclosure.  While the examples

4    given by the defendant here may have been articulated in

5    the form of a risk of intentional disclosure, I think the

6    analysis applies also to inadvertent disclosure.  That is,

7    one can easily envision counsel for plaintiff in the best

8    good faith possibility, in a best good faith efforts, having

9    a conversation with prosecution counsel and giving advice,

10    even advice limited to the prior art and because counsel,

11    like all of us, is human, counsel not being able to put

12    aside whatever information he or she has learned through

13    access to the defendants' confidential information and in

14    that regard, inadvertently, perhaps even unknowingly,

15    counsel could be unfairly making use of confidential

16    information in the context of a proceeding before the PTO.

17           So seeing it that way, and considering, yes,

18    this will have some burden on plaintiff, they will have

19    their choice of prosecution counsel but they will not be

20    able to use litigation counsel as part of a PTO proceeding.

21    I recognize that is some burden, but weighing it in the

22    circumstances of this case, I think the bar proposed by the

23    defendants is appropriate.  I think it follows that those

24    who are barred will not be permitted even to advise counsel

25    involved in any PTO proceedings.  And I think it follows as

1   well that any PTO proceedings includes any PTO proceedings

2   including the more recent ones created under the AIA.

3            So again I will be adopting the defendants'

4   proposals.

5            Turning to the source code issues.

6            I understand that the source code really is

7   frequently the most important, most valuable asset of

8   companies like the defendants here.  It's clearly highly

9   sensitive information subject internally to controls and

10  necessarily subject externally to very substantial controls.

11           Those controls are costly and create burden.  I

12  see no reason to increase the burden to the defendants by

13  requiring them to recreate whatever protections they're

14  comfortable with here in Delaware or to take on the burden

15  and expense of transporting the source code and anything

16  necessary to protect the source code here to Delaware.

17           The plaintiff chose to file suit in one particular

18  district against a whole lot of different entities that are

19  not all located in the same place, and plaintiff had to

20  anticipate that there would be some at least financial costs

21  associated with doing that.  And I think the cost of having to

22  travel to potentially five different cities to review source

23  code under the circumstances is not an undue burden on the

24  plaintiff.

25           In terms of printing of source code, the

1     defendants' proposal is reasonable.  1,000 pages is actually

2     more than I typically see proposed by defendants, and it's

3     not 1,000 pages full stop, it is a thousand pages initially

4     without prior written approval of the producing party which

5     approval shall not be unreasonably withheld.  And I'm

6     confident that approval will not be unreasonably withheld.

7              In the unlikely event that plaintiff needs more

8     and defendants unreasonably refused, then, yes we'll be back

9     here and I'm resolve the dispute and, if need be, we'll at

10    that point shift costs or impose sanctions if somebody truly

11    is believing unreasonably.

12             Finally, on the issue of the export controls,

13    export restrictions and whether the defendants should have

14    to mark their documents when they produce them, I'm just not

15    persuaded under the circumstances that I should burden the

16    defendants with doing that.

17             As best as I can tell from the record in front

18    of me and from counsel's statements on the phone, it's an

19    entirely hypothetical concern.  Plaintiff, as I understand

20    it, has no intention and does not even foresee likely

21    circumstances arising in which it would be sharing documents

22    subject to export restrictions with a foreign national.

23             I balance that theoretical problem against a

24    real burden to the defendants who, as best I can tell, and

25    certainly Cisco has represented this, do not in the ordinary

1      course actually mark their documents for the use purposes.

2      So I don't see any basis or any reason at this time to

3      require defendants to undertake that obligation.

4              So that's my ruling.  I direct that the

5      plaintiffs on behalf of all parties submit to me a clean

6      version of the proposed protective order consistent with

7      today's ruling and to get that to me by next Thursday.

8              Are there any questions about any of the

9      rulings, Mr. Hely?

10             MR. HELY:  Yes, Your Honor.  One question with

11     regards to the prosecution bar.

12             As I understand from defendants' counsel, they

13     acknowledge that their language could be read to be too

14     broad.  Is it my understanding that that first sentence of

15     the proposal for paragraph 19 should read:

16             The plaintiff, any attorney representing

17     plaintiff, whether in-house or outside counsel, and any

18     person retained by plaintiff or attorneys of plaintiff who

19     accesses or otherwise learns, in whole or in part, technical

20     information, et cetera, rather than language the language as

21     drafted.

22             THE COURT:  Mr. Gaudet, is that what you intended?

23             MR. GAUDET:  Your Honor, what I was actually

24     looking at was striking the phrase "have access to" and

25     putting "accesses" there.

```
 1          We thought -- to me, I thought that would

 2   address the issue, but our intent certainly is that somebody

 3   who merely theoretically could look at this stuff but didn't

 4   is not going to be subject to it.

 5          THE COURT:  Right.  Mr. Hely, I think you and

 6   Mr. Gaudet and the others can talk about that further.  You

 7   have reached an agreement on that; and I appreciate you

 8   raising it.  I meant to touch on it and say I certainly

 9   agree to your agreement.  I'm confident you will be able to

10   work out the language on that.

11          Are there other questions, Mr. Hely?

12          MR. HELY:  No, Your Honor.

13          THE COURT:  Okay.  Mr. Gaudet?

14          MR. GAUDET:  No questions.  Thank you, Your

15   Honor.

16          THE COURT:  Thank you all very much.  Have a

17   nice weekend.  Good-bye.

18          (Telephone conference ends at 4:36 p.m.)

19

20       I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.

21

22                      /s/ Brian P. Gaffigan
                        Official Court Reporter
23                        U.S. District Court

24

25
```

# EXHIBIT E

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

|  |  |  |
|---|---|---|
| **WAPP TECH LMIITED PARTNERSHIP** <br> **and WAPP TECH CORP.,** | § | |
| | § | |
| | § | |
| **Plaintiffs,** | § | **Case No. 4:21-cv-00671-ALM** |
| | § | |
| **v.** | § | |
| | § | **Jury Trial Requested** |
| **WELLS FARGO BANK, N.A.,** | § | |
| | § | |
| **Defendant.** | § | |
| _____ | § | |

## <u>PROTECTIVE ORDER - SOURCE CODE ADDENDUM</u>

Before the Court is the parties' Joint Motion for Entry of Protective Order Source Code Addendum (Dkt. #117). The Court finds the Motion should be and hereby is GRANTED:

(1) Recognizing that this litigation may involve the inspection of confidential, highly sensitive Source Code, the following provisions—in addition to all other provisions of this Order—shall apply:

(2) "Source Code" means documents or information containing confidential, proprietary, and/or trade secret computer source code, including both compiled and interpreted code. Documents or other materials that contain Source Code shall bear the designation "RESTRICTED CONFIDENTIAL – SOURCE CODE" and shall be treated as Protected Documents in addition to the increased protections found below. To ensure compliance with applicable United States Export Administration Regulations, Source Code and any document designated RESTRICTED CONFIDENTIAL – SOURCE CODE may not be exported outside the United States or released to any foreign national (even if within the United States).

(3) Absent the express written consent of the producing party, only Qualified Persons (defined in the Protective Order entered in this case 4:21-cv-00671, Dkt. 32 (hereinafter, "Protective Order")]) meeting the requirements of paragraphs 5(a), (b), (d), (f) or (g) of the Protective Order shall have access to Source Code or a document designated RESTRICTED CONFIDENTIAL – SOURCE CODE.

(4) Whenever Source Code is produced, it need only be produced in accordance with the procedures below.

(5) Source Code shall be made available in electronic format as it is maintained in the ordinary course of business at the offices of the producing party's outside counsel of record in this action

or at such other location that the parties may mutually agree upon. Access to and review of Source Code shall be strictly for the purpose of investigating the claims and defenses at issue in this case, and is not to be used for any other purpose.

(6) All Source Code will be made available in computer searchable format at the designated facility in a private, secured, and locked room on a secured, password-protected computer ("the Source Code Computer"). The Source Code computer shall not be removed from the secured room by the receiving party. The Source Code Computer shall not have removable storage means, printing capability, or access to any networks or other computers, including the Internet. The receiving party shall not attempt to connect any input/output or storage device (e.g., printer, USB, memory stick, CD-ROM, DVD, etc.) to the Source Code Computer at any time. A mouse and keyboard may be used as necessary to view and search (but not edit) the Source Code. No computers, cell phones, or other electronic devices (including PDAs, tablets, wearables, cameras, storage, or peripheral equipment) may be brought into secured room. All persons entering the room containing the Source Code Computer must agree to submit to reasonable security measures to ensure they are not carrying any prohibited items before they will be given access to the room. The producing party may periodically "check in" on the activities of the receiving party's representatives in the room containing the Source Code Computer and may visually monitor the activities of the receiving party's representatives from outside the room containing the Source Code Computer, but only to ensure that the reviewer is complying with the Protective Order restrictions concerning source code. Such monitoring shall not involve any attempts to discern the reviewer's work product and shall not operate as a waiver of the attorney work product doctrine or any other applicable privilege.

(7) The receiving party, at its own expense, may request that the producing party install a software tool on the Source Code Computer to assist reviewing the Source Code, provided that such software tool does not permit compiling or storing the Source Code. The receiving party must provide the producing party with appropriate access and/or licenses to such software tool at least seven (7) business days in advance of the date upon which the receiving party wishes to have the software available for use on the Source Code Computer. Timely requests for the installation of such search software will not be unreasonably denied so long as the requested software is compatible with the operating system and other software necessary to make the Source Code available for inspection, does not prevent or impede the receiving party's access to the Source Code produced for inspection on a Source Code Computer, and does not side-step any of the security features enabled on a Source Code Computer (e.g., enable connection and use of USB thumb drives) or otherwise compromise the security of the Source Code. The receiving party shall not erase, load, install, compile, or otherwise modify any program (or request that any other program be erased, loaded, installed, or otherwise modified by the producing party) on the Source Code Computer without first submitting a written request and obtaining the producing party's agreement to the request.

(8) The Source Code Computer will be made available for inspection until the close of discovery in this action between the hours of 8 a.m. and 6 p.m. local time on business days, upon reasonable written notice to the producing party, which shall not be less than five (5) business days in advance of the requested inspection. The receiving party will make good faith efforts to complete inspections during normal business hours but may make a reasonable request to review the Source

Code outside of such hours. The producing party will make good faith efforts to accommodate the receiving party's request. The parties agree to cooperate in good faith such that maintaining the producing party's Source Code at the offices of its outside counsel shall not unreasonably hinder the receiving party's ability to efficiently and effectively conduct the prosecution or defense of this Action.

(9) A list of names of persons who will view the Source Code will be provided to the producing party in conjunction with any written (including email) notice requesting inspection. The producing party shall maintain a daily log of the names of persons who enter the designated facility to view the Source Code and when they enter and depart. The producing party shall be entitled to have a person observe all entrances and exits from the Source Code viewing room. Proper identification of each authorized person shall be provided prior to any access to the inspection room. Access to the inspection room may be denied, at the discretion of producing party, to any individual who fails to provide proper identification.

(10) The receiving party's outside counsel and/or experts shall be entitled to take paper notes relating to the Source Code, but may not copy any line of Source Code into the notes; however, function names, variable names, parameter names, and other individual identifiers derived from Source Code, do not, by themselves, constitute a line of Source Code. Any notes relating to the Source Code shall bear the designation RESTRICTED CONFIDENTIAL – SOURCE CODE. No copies of all or any portion of the Source Code may leave the room in which the Source Code is inspected except as otherwise provided herein. Further, no other written or electronic record of the Source Code is permitted except as otherwise provided herein.

(11) Unless otherwise agreed in advance by the parties in writing, following each inspection, the receiving party's outside counsel of record and/or outside experts or consultants shall remove all notes, documents, and all other materials from the room that may contain work product and/or attorney-client privileged information. Materials inadvertently left in the designated facility do not operate as a waiver of the attorney work product doctrine or any other applicable privilege and shall be returned to the owner promptly. The producing party shall not be responsible for the physical safety of any items left in the room following each inspection session.

(12) The inspecting party may request a reasonable number of pages of Source Code to be printed on watermarked or colored pre-bates numbered paper for the purposes of case preparation activity. The inspecting party may not request paper copies for the purposes of reviewing the Source Code in the first instance. In no event may the inspecting party print any continuous block of Source Code that result in more than fifteen (15) printed pages, or an aggregate total of more than 500 pages during the duration of the case without prior written approval by the producing party. Source code shall be printed on 8.5" x 11" paper, in twelve (12) point font. Within five (5) business days the producing party will provide three copies of the requested material on watermarked or colored paper bearing Bates numbers and the legend RESTRICTED CONFIDENTIAL – SOURCE CODE unless objected to, as discussed below.

(13) If the producing party objects that the printed portions are not reasonably necessary to any case preparation activity, the producing party shall make such objection known to the inspecting

party within five (5) business days. If, after meeting and conferring, the producing party and the inspecting party cannot resolve the objection (where such meet and confer need not take place in person), the inspecting party may seek a Court resolution of whether the printed Source Code in question is reasonably necessary to any case preparation activity. Contested Source Code print outs need not be produced to the inspecting party until the matter is resolved by the Court.

(14) The inspecting party shall not create a copy or reproduce Source Code in any way except that the inspecting party may reproduce selected excerpts of Source Code if such selected excepts are reasonably necessary for the purpose of any filing with the Court, the service of any pleading or other paper on any party, testifying expert reports, consulting expert written analyses, deposition exhibits as discussed below, or any draft of these documents ("Source Code Documents"). Source Code Documents shall be designated RESTRICTED CONFIDENTIAL – SOURCE CODE either (a) in their entirety, or (b) on any page containing quoted Source Code.

(15) Any document designated RESTRICTED CONFIDENTIAL – SOURCE CODE shall be stored only at the following locations:

    a) The offices of outside counsel for the Receiving Party;
    b) The offices of outside experts or consultants who have been approved to access Source Code;
    c) The site where any deposition is taken;
    d) The Court; or
    e) Any intermediate location necessary to transport the information to office of outside counsel for the Receiving Party, offices of outside expert or consultants who have been approved to access Source Code, a hearing, trial or, deposition.

(16) A producing party's Source Code may only be transported by the receiving Party at the direction of a person authorized under paragraph (3) above to another person authorized under paragraph (3) above, on paper via hand carry, Federal Express or other similarly reliable courier. Otherwise, any document designated RESTRICTED CONFIDENTIAL – SOURCE CODE shall be maintained at all times either under the direct physical control of counsel or experts responsible for maintaining the security and confidentiality of the designated materials or, when not in use, in a secure locked filing cabinet or safe under the direct control of counsel or experts responsible for maintaining the security and confidentiality of the designated materials.

(17) The inspecting party's outside counsel shall maintain a log of all copies of such designated material that are delivered by the inspecting party to any person. The log shall include the names of the recipients of copies and the dates when such copies were provided. Within forty five (45) days after the termination of the case, the inspecting party must serve upon the producing party the log.

(18) All copies of any portion of the Source Code shall be either destroyed or returned to the producing party if they are no longer in use, at the producing party's preference. Materials designated RESTRICTED CONFIDENTIAL – SOURCE CODE that are marked as deposition exhibits shall not be provided to the court reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers.

(19) Any printed pages of Source Code may not be copied, digitally imaged, e-mailed, transmitted, uploaded, downloaded, photographed, or otherwise electronically duplicated, except for the purpose of creating Source Code Documents which, pursuant to the Court's rules, must be filed or served electronically or for use in Court proceeding(s), deposition(s), and expert reports, and is at all times subject to the restrictions set forth herein. The producing party shall not unreasonably withhold permission to make additional copies where receiving party has demonstrated that creating a copy or image of limited portions of the Source Code is reasonably necessary and for use that otherwise complies with this order. Images or copies of Source Code shall not be included in correspondence between the Parties (references to production numbers shall be used instead) and shall be omitted from pleadings and other papers except to the extent permitted herein. The receiving party may not create electronic images, or any other images, of the Source Code from the paper copy for use on a computer (e.g., may not scan the Source Code to a PDF, or photograph the code) except as otherwise permitted herein.

(20) Source Code may not be transported or transmitted electronically over a network of any kind, including over a local area network (LAN), intranet, or the Internet.

**IT IS SO ORDERED.**

**SIGNED this 1st day of August, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| SUMMIT 6 LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:14-cv-14-O |
| | § | |
| HTC CORPORATION, | § | |
| HTC AMERICA, INC., | § | |
| LG ELECTRONICS, INC., | § | |
| LG ELECTRONICS USA, INC., | § | |
| LG ELECTRONICS MOBILECOMM | § | Jury Trial Demanded |
| USA, INC., | § | |
| MOTOROLA MOBILITY LLC, | § | |
| APPLE INC., and | § | |
| TWITTER INC., | § | |
| | § | |
| Defendants. | § | |

**PROTECTIVE ORDER
REGARDING THE DISCLOSURE AND USE OF DISCOVERY MATERIALS**

Pursuant to the Order of Referral from the District Court (Docket No. 102), comes for consideration the parties' Joint Motion for Protective Order.  Having considered the parties' written submissions and arguments of counsel, I find that the following Protective Order should be entered in place and in lieu of the Protective Order (Docket No.107) heretofore entered on June 24, 2014:

In order to expedite the flow of discovery materials, facilitate the prompt resolution of disputes over confidentiality of discovery materials, adequately protect information the parties are entitled to keep confidential, ensure that only materials the parties are entitled to keep confidential are subject to such treatment, and ensure that the parties are permitted reasonably necessary uses of such materials in preparation for and in the conduct of trial, pursuant to Fed. R. Civ. P. 26(c), it is hereby ORDERED THAT:

## 1.   INTRODUCTION AND SCOPE

This Protective Order governs all Discovery Material furnished by any party to any other party, and it includes any non-party who receives a subpoena in connection with this action.  The information protected includes Discovery Material produced, given, or filed in this action that is designated by a party as "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY - SOURCE CODE" information in accordance with the terms of this Protective Order, as well as to any copies, excerpts, abstracts, analyses, summaries, descriptions, compilations thereof, plus testimony, or presentations by parties or their counsel in court that might reveal such information.

Production or disclosure of "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY - SOURCE CODE" information under this Protective Order shall not prejudice the right of any party making that production or disclosure to maintain the trade secret status or confidentiality of that information in other contexts.

## 2.   DISCOVERY RULES REMAIN UNCHANGED

Nothing herein shall alter or change in any way the discovery provisions of the Federal Rules of Civil Procedure, the Local Rules, or the Court's own orders.  Identification of any individual pursuant to this Protective Order does not make that individual available for deposition or any other form of discovery outside of the restrictions and procedures of the Federal Rules of Civil Procedure, the Local Rules, the Court's own orders, and the Court's Deadlines set out in the applicable Scheduling Order.  Nothing in this Protective Order shall be construed to require a party to produce or disclose information not otherwise required to be produced under the applicable rules or orders of this Court.

## 3.   DEFINITIONS AND DESIGNATIONS

### 3.1 Discovery Material

"Discovery Material" means all items, documents, and information, including from any non-party, regardless of the medium or manner generated, stored, or maintained (including, but not limited to, answers to interrogatories, answers to requests for admission, responses to requests for production of documents, deposition transcripts and videotapes, deposition exhibits, testimony taken at a hearing or other proceeding, and other documents, writings, or things) that are produced, disclosed, or generated in connection with discovery or Rule 26(a) disclosures in this case.

### 3.2 Protected Information

Protected Information is defined in this Protective Order as any Discovery Material that the Disclosing Party in good faith designates as "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY - SOURCE CODE" pursuant to this Protective Order, and any excerpts of such information included in other documents.

Any Protected Information obtained by any party from any person pursuant to discovery in this litigation or otherwise may be used only for purposes of preparation and litigation of this matter, and may not be used for any other purpose, including but not limited to use in other unrelated litigations, use for business purposes, or use for patent prosecution or for providing strategic patent prosecution advice other than specifically provided for in Section  5 of this Protective Order.

### 3.3 Confidential Information

For purposes of this Protective Order, the "CONFIDENTIAL" designation means that the document or information is comprised of commercial information that is not publicly known and

is of technical or commercial advantage to its possessor, in accordance with Fed. R. Civ. P. 26(C)(7), or other information required by law or agreement to be kept confidential, including information the producing party considers to constitute confidential research and development, financial, technical, marketing, or other information, whether embodied in physical objects, documents, or the factual knowledge of persons, and which has been so designated by the Producing Party.

### 3.4 Confidential - Outside Attorney's Eyes Only Information

For purposes of this Protective Order, the "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY" designation means that the document or information is comprised of information that the producing party deems especially sensitive, which may include, but is not limited to, confidential research and development, financial, technical, marketing, any other sensitive trade secret information, or information capable of being utilized for the preparation or prosecution of a patent application dealing with such subject matter.  Discovery Material may only be designated as "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY" if such Discovery Material contains particularly sensitive confidential information that the Designating Party believes in good faith cannot be disclosed to a competitor without threat of competitive injury or economic harm because such Discovery Material contains trade secret or other proprietary or commercially sensitive information.  In the event that original documents are produced for inspection, the Producing Party will provide a confidentiality designation at or before such inspection, and re-designated, as appropriate, during the copying process.

### 3.5 Confidential - Outside Attorney's Eyes Only - Source Code

For purposes of this Protective Order, the "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY - SOURCE CODE" designation means that the document or information is comprised of

information containing computer source code or similar confidential programming statements or instructions that in general are converted into machine language by compilers, assemblers, or interpreters, including but not limited to scripts, assembly, binaries, object code, source code listings, and descriptions of source code, object code listings, and descriptions of object code, and Hardware Description Language (HDL) or Register Transfer Level (RTL) files that describe the hardware design of any ASIC or other chip.

**3.6 The following is not "Confidential Information," "Confidential - Outside Attorney's Eyes Only Information" or "Confidential - Outside Attorney's Eyes Only - Source Code:"**

a. any information which, at the time of disclosure to a Receiving Party, is lawfully in the public domain;

b. any information which, after disclosure to a Receiving Party, lawfully becomes part of the public domain as a result of publication not involving a violation of this Protective Order;

c. any information that a Receiving Party can show was received by it, whether before or after the disclosure, from a source other than the Producing Party who obtained the information lawfully and under no obligation of confidentiality to the Producing Party; and

d. any information that a Receiving Party can show was independently developed by it after the time of disclosure by personnel who have not had access to the Producing Party's Protected Information.

Notwithstanding the foregoing, the existence of unconfirmed information in the public domain, such as rumors or speculation as to the existence or operation of a product, even if

consistent with Protected Information, shall not affect the status of information that is otherwise protectable as Protected Information.

### 3.7 Outside Counsel

"Outside Counsel" means (I) outside counsel who appear on the pleadings as counsel for a party and (ii) partners, associates, technical advisors employed by counsel for a party, and staff of such counsel to whom it is reasonably necessary to disclose the information for this litigation.

### 3.8 Outside Consultant

The term "Outside Consultant" shall mean any outside person (and their support personnel) who is (1) not an employee, officer, or director of a party or of a competitor of a party, nor anticipated at the time of retention to become an officer, director, or employee of a party or of a competitor of a party, and (2) who is identified as an expert whose opinions may be presented at trial of this case, or is retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, including but not limited to, a proposed expert witness with whom counsel may deem it necessary to consult concerning technical, financial, or other aspects of this case for the preparation or trial thereof.  Outside Consultants may access Protected Information only in the United States only, and may not transport it to or access it from any foreign jurisdiction without the prior express consent of the Producing Party.

### 3.9 Producing Party

"Producing Party" means any party or non-party that discloses or produces any Discovery Material in this case.

### 3.10   Receiving Party

"Receiving Party" means any party who receives Discovery Material from a Producing Party.

## 4. TIME AND MANNER OF DESIGNATION

### 4.1 Time of Designation

Designation of Discovery Material shall be made at the following times:

    4.1.1   For documents and things, prior to or at the time of the production of the document;

    4.1.2   For declarations, written discovery responses, and pleadings, at the time of the service or filing, whichever occurs first;

    4.1.3   For any form of deposition testimony the designation shall be made either (a) at the time that such testimony is given, or (b) within the Testimony Designation Period. The Testimony Designation Period shall be a period of thirty (30) calendar days commencing upon receipt by a Designating Party of transcript of such testimony. Until the expiration of the Designation Period, all testimony shall be deemed and treated as "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY." Unless otherwise designated (a) at the time such testimony is given or (b) during the Designation Period, such testimony shall be deemed non-confidential. The designation during the Designation Period shall be made by written notice designating the whole or the parts or portions of the transcripted testimony that shall be subject to the designation.

Any Protected Information that is used in the taking of a deposition shall remain subject to the provisions of this Protective Order, along with the transcript pages of the deposition testimony dealing with such Protected Information. In such cases the court reporter shall be informed of this Protective Order and shall be required to operate in a manner consistent with this Protective Order. In the

event the deposition is videotaped, the original and all copies of the videotape shall be marked by the video technician to indicate that the contents of the videotape are subject to this Protective Order, substantially along the lines of "This videotape contains confidential testimony used in this case and is not to be viewed or the contents thereof to be displayed or revealed except pursuant to the terms of the operative Protective Order in this matter or pursuant to written stipulation of the parties."  Counsel for any Producing Party shall have the right to exclude from oral depositions, other than the deponent, deponent's counsel, the reporter and videographer (if any), any person who is not authorized by this Protective Order to receive or access Protected Information based on the designation of such Protected Information.  Such right of exclusion shall be applicable only during periods of examination or testimony regarding such Protected Information.

### 4.2 Manner of Designation

Designation of Discovery Material shall be made by placing the notation "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY - SOURCE CODE" or a substantially similar designation on the Discovery Material in the following manner:

4.2.1   For documents, on each page of such document;

4.2.2   For tangible items, on the object or container thereof; or, if not practicable, as otherwise agreed by the parties;

4.2.3   For declarations, written discovery responses, court filing or pleadings, on the face of such document;

4.2.4   For testimony, Outside Counsel for either party may designate on the record at
the deposition any testimony as "CONFIDENTIAL" or "CONFIDENTIAL -
OUTSIDE ATTORNEY'S EYES ONLY" under this Protective Order.  Each
page the designated testimony and any exhibit on which a witness gives
testimony designated as "CONFIDENTIAL" or "CONFIDENTIAL - OUTSIDE
ATTORNEY'S EYES ONLY" whether designated on the record at the
deposition,  prior to the deposition or within the Testimony Designation Period,
shall be treated in accordance with the terms of this Protective Order;

4.2.5   Computer source code produced following inspection may be so designated by
affixing the legend "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES
ONLY - SOURCE CODE" on the media itself or on printed pages.  Prior to
production, source code shall be treated according to the provisions set forth
below;

4.2.6   All "CONFIDENTIAL INFORMATION," or "CONFIDENTIAL - OUTSIDE
ATTORNEY'S EYES ONLY" information not reduced to documentary, tangible
or physical form or which cannot be conveniently designated as set forth in
Sections 4.2.1 through 4.2.5 (such as electronic files and/or documents), shall be
designated by informing the Receiving Party of the designation in writing and by
any other means deemed appropriate by the Producing Party (e.g., database tags,
file names, or other reasonable means. To the extent the Receiving Party
subsequently generates copies of this information, whether electronic or
hard-copy, it shall mark such copies with the appropriate confidentiality
designations.  When documents are produced in electronic form, the Producing

Party shall include the confidentiality designation on the medium containing the documents.  In the event that the Receiving Party prints documents from such medium, the Receiving Party shall mark each such page of the documents with the appropriate designation.

4.2.7   Where electronic files and documents are produced in native electronic format, such electronic files and documents shall be designated for protection under this Order by appending to the file names or designation information indicating whether the file contains "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY - SOURCE CODE," material, or shall use any other reasonable method for so designating Protected Information produced in electronic format.  When electronic files or documents are printed for use at deposition, in a court proceeding, or for provision in printed form to an Outside Consultant, the party printing the electronic files or documents shall affix a legend to the printed document corresponding to the designation of the Designating Party and including the production number and designation associated with the native file.  No one shall seek to use in this litigation a .TIFF, .PDF, or other image format version of a document produced in native format that is not true and correct representation of the native file.

**4.3 Non-Party Discovery**

4.3.1   The parties recognize that, during the course of this case, non-parties may be called upon to produce "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE

Page 10

ATTORNEY'S EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY - SOURCE CODE" Discovery Materials.  In such a case, the non-party who must produce such Discovery Material is considered to be a Producing Party, protected under this Protective Order as though a signatory to it, and may use the procedures described herein to designate its Discovery Materials as Protected Information.

4.3.2   Information originating with a non-party and in a Producing Party's custody or control that a Producing Party reasonably and in good faith believes is subject to a confidentiality obligation may designate the Discovery Material as "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY - SOURCE CODE" and the Protected Information shall be subject to the restrictions on disclosure specified in this Protective Order.  The foregoing notwithstanding, if a party has a good faith belief that the production of Discovery Material is objectionable on the grounds that the requested Discovery Material  is subject to a third-party confidentiality obligation, the Producing Party shall confer with the non-party to resolve the confidentiality issue.  If this issue cannot be resolved then the Producing Party shall (1) immediately notify the Receiving Party; (2) identify the non-party; (3) provide the Receiving Party, where permitted, with the portion(s) of any agreement containing the alleged obligation of confidentiality; and (4) to the extent permitted by said agreement, provide a schedule of all documents and things being withheld on the basis of the third-party confidentiality obligation.  All parties shall attempt to resolve all

disputes promptly, informally, and in good faith. If the parties are unable to resolve the matter, the prospective "Receiving Party" may seek relief from the Court. No disclosure is required until the objection is resolved.

4.3.3   A non-party's use of this Protective Order to designate Protected Information does not entitle that non-party access to any other Protected Information produced by any party or non-party.

**4.4 Changing the Designation of Discovery Material**

4.4.1   The inadvertent failure by a Producing Party to designate Discovery Material as Protected Information with one of the designations provided for under this Order shall not waive any such designation provided that the Producing Party notifies all Receiving Parties that such Discovery Material is protected under one of the categories of this Order within fourteen (14) days of the Producing Party learning of the inadvertent failure to designate. The Producing Party shall reproduce the Protected Information with the correct confidentiality designation within seven (7) days upon its notification to the Receiving Parties. Upon receiving the Protected Information with the correct confidentiality designation, the Receiving Parties shall return or securely destroy, at the Producing Party's option, all Discovery Material that was not designated properly.

4.4.2   A Receiving Party shall not be in breach of this Order for any use of such Discovery Material before the Receiving Party receives such notice that such Discovery Material is protected under one of the categories of this Order, unless an objectively reasonable person would have realized that the Discovery Material should have been appropriately designated with a confidentiality designation

under this Order. Once a Receiving Party has received notification of the correct confidentiality designation for the Protected Information with the correct confidentiality designation, the Receiving Party shall treat such Discovery Material (subject to the exception in Section 4.4.3 below) at the appropriately designated level pursuant to the terms of this Order.

4.4.3   Notwithstanding the above, a subsequent designation of "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY - SOURCE CODE" shall apply on a going forward basis and shall not disqualify anyone who reviewed "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY," "or "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY - SOURCE CODE" materials while the materials were not marked "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY" or "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY - SOURCE CODE" from engaging in the activities set forth by this Protective Order's patent prosecution bar.

**4.5 Resolution of Disputes Regarding Designation**

The parties will use reasonable care in designating information as Protected Information. In the event that the party receiving Protected Information disagrees with the designation (or changed designation) by the Designating Party, such a challenge shall be written, shall be served on counsel for the Producing Party and shall particularly identify the documents or information that the Receiving Party contends should be designated differently.  The parties should then meet and confer in good faith to resolve the dispute.  The Producing Party shall have the burden of justifying the

disputed designation.  The parties will engage in a good faith effort to try to resolve the dispute on

an informal basis.  If the parties are unable to resolve such a dispute informally within five (5)

business days of having requested a meeting of counsel, the Receiving Party may apply to the Court

for relief at any time.  Any such disputed items shall be treated as most recently designated by the

Designating Party and subject to the protections of this Protective Order unless and until the Court

determines otherwise.

Neither party shall be obligated to challenge the propriety of any designation, and failure to

do so shall not constitute an admission that any item or information is in fact considered proprietary.

### 4.6 No Presumption of Protected Status

This Protective Order does not address discovery objections or preclude either party from

moving for any relief cognizable under the Federal Rules of Civil Procedure or this Court's inherent

power.   Nothing in this Protective Order creates a presumption or implies that information

designated as Protected Information actually constitutes a trade secret, is proprietary, or is otherwise

protectable information.  If a Receiving Party believes that any information is improperly designated

under this Protective Order, it may, at any time, contest such designation in the manner described

in 4.5 above.  Protected Information that is subject to such a dispute shall, until further order of this

Court, be treated consistently with its designation by the Designating Party.

### 4.7 Inadvertent Disclosure Not Authorized by Order

In the event of a disclosure of any Protected Information pursuant to this Protective Order

to any person or persons not authorized to receive such disclosure under this Protective Order, the

party responsible for having made such disclosure, and each party with knowledge thereof, shall

immediately notify counsel for the Producing Party whose Protected Information has been disclosed

and provide to such counsel all known relevant information concerning the nature and circumstances

Page 14

of the disclosure.  The responsible disclosing party shall also promptly take all reasonable measures to retrieve the improperly disclosed Discovery Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made.  Unauthorized or inadvertent disclosure does not change the status of Protected Information or waive the right to hold the disclosed document or information as Protected.

## 5. USE OR DISCLOSURE OF PROTECTED INFORMATION

Protected Information exchanged during this litigation shall only be used in this case, and its use shall be governed by this Protective Order.

No Receiving Party or other person receiving any Protected Information in accordance with this Protective Order shall disclose or permit the disclosure of any such Protected Information to any other person or entity, except the following:

### 5.1 Disclosure of "CONFIDENTIAL INFORMATION" Discovery Material

Protected Information that has been designated "CONFIDENTIAL" and such copies as are reasonably necessary for maintaining, defending or evaluating this case, may be furnished and disclosed to Outside Counsel and Outside Consultants for a Receiving Party.  Outside Consultants must comply with the provisions of this Protective Order.  For the avoidance of doubt, unless otherwise agreed to by the Producing Party, no Outside Counsel or Outside Consultant for one defendant may have access to material designated "CONFIDENTIAL" produced by another defendant in this matter.

Disclosure may also be made to a maximum of three (3) employees in the Receiving Party who may be, but need not be, an attorney or in-house counsel for the Receiving Party, as well as their  paralegals and staff, to whom disclosure is reasonably necessary for this case.  Prior to the disclosure of any of the Designating Party's Protected Information to an employee, the Receiving

Party shall give at least eight (8) business days written notice to the Designating Party, providing: a) the name, business title and business address of each employee to whom the disclosure is proposed to be made; and b) a copy of the employee's executed Confidentiality Agreement.

No disclosure of Protected Information shall be made to such employee until after the expiration of the foregoing notice period.  If, during the eight (8) business days' notice period the Producing Party serves a good faith objection to the proposed disclosure to showing the employee Protected Information, there shall be no disclosure of said Protected Information to such employee pending resolution of the objection.  Consent to the disclosure of Protected Information to the employee shall not be unreasonably withheld.  The Producing Party objecting

to disclosure of Protected Information to the employee shall provide an explanation of the basis of its objection.  If a Producing Party objects to the disclosure of Protected Information to an employee, the Receiving Party shall then have five (5) business days after such objection is served to respond to the objection.  The Producing Party shall then have five (5) business days after such response is served to file an objection with the Court and seek a motion for protection or other appropriate relief, if the parties cannot come to an agreement.  No Protected Information shall be provided to the proposed employee until after resolution of the objection either by the parties or by the Court.  If the Producing Party fails to file an objection and motion for protection or other appropriate relief with the Court within the prescribed period, then any objection to the employee is waived, and any Protected Information may be thereafter disclosed to such individual.

In the event of a changed circumstance or discovery of new information, not otherwise available during the time period for objection laid out above in this Section 5.1, the Producing Party may raise an objection if such changed circumstance or newly discovered information would result in undue prejudice to the Producing Party.  If an objection is made, the parties shall meet and confer

Page 16

via telephone or in person within seven (7) days following the objection and attempt in good faith

to resolve the dispute informally.  If the dispute is not resolved, the party objecting to the disclosure

will have seven (7) days from the date of the meet and confer to seek relief from the Court.  The

designated employee may continue to have access to information that was provided to such

employee prior to the date of the objection.  If a later objection is made, no further Protected

Information shall be disclosed to the employee until the Court resolves the matter or the Producing

Party withdraws its objection.  Notwithstanding the foregoing, if the Producing Party fails to move

for a protective order within seven (7) business days after the meet and confer, further Protected

Information may thereafter be provided to the employee.

### 5.2 Disclosure of "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY" Discovery Material

Disclosure of Protected Information that is designated "CONFIDENTIAL - OUTSIDE

ATTORNEY'S EYES ONLY" may be made only to Outside Counsel and Outside Consultants, as

those terms are defined above, in this case.  Outside Consultants must comply with the provisions

of this Protective Order.  For the avoidance of doubt, unless otherwise agreed, no Outside Counsel

or Outside Consultant for one defendant may have access to material designated "CONFIDENTIAL

- OUTSIDE ATTORNEY'S EYES ONLY" produced by another defendant in this matter unless

agreed to by the Producing Party.  In no event shall an employee, officer, or director of any party

to this action or of any competitor of any party to this action have access to Protected Information

relating to source code without a court order or the written consent of the Designating Party.

### 5.3 Review of Source Code

5.3.1    Nothing in this Protective Order shall admit that source code is discoverable. To

the extent source code is produced in this action, access to such source code will

be given only to Outside Counsel and Outside Consultants, as those terms are

defined above, in this case.   Outside Consultants must comply with the provisions of this Protective Order.  For the avoidance of doubt, unless otherwise agreed, no Outside Counsel or Outside Consultant for one defendant may have access to material designated "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY - SOURCE CODE" produced by another defendant in this matter unless agreed by the Producing Party.

5.3.2   Prior to the first inspection of any requested Source Code, the Receiving Party shall provide at least ten (10) days notice of the Source Code that it wishes to inspect.  Unless otherwise agreed in writing between the Producing Party and the Receiving Party, all source code shall be made available by the Producing Party to the Receiving Party's Outside Counsel and/or Outside Consultants in a secure room on a "stand alone" computers (i.e., computer that is not connected to any other network, internet or peripheral device except that the stand-alone computer may be connected to a printer or printers and may, at the Producing Party's option, be connected to a private wired network), at the following addresses:

(i)   for Summit 6 at the office of McKool Smith, P.C. in Dallas, Texas,

(ii)   for HTC Corporation and HTC America, Inc. at the office of McDermott Will & Emery LLP in Menlo Park, California,

(iii)   for LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics MobileComm USA, Inc. at the office of Orrick, Herrington & Sutcliffe LLP in Orange County, California,

(iv)   for Motorola Mobility LLC at the office of Kilpatrick Townsend in San Francisco, California,

(v)     for Apple Inc. at the office of Jones Day in Dallas, Texas, and

(vi)    for Twitter Inc. at the office of Keker & Van Nest LLP in San Francisco, California.

Source code shall be made available at the above listed locations during regular business hours (8:00 a.m. to 6:00 p.m. local time) on business days (i.e., weekdays that are not Federal holidays), although the Parties will be reasonable in accommodating reasonable requests to conduct inspections at other times. Following the first deployment of source code and any supplementation, source code shall be made available on 24 hours notice. The parties shall also work together to accommodate requests by the Requesting Party for review outside regular business hours, provided that such requests are made with 72 hours notice. For good cause, the Requesting Party can inspect the source code after the fact discovery cutoff date. If the Producing Party contends that good cause does not exist and objects to such inspection, Lead and Local Counsel for the parties to the dispute shall meet and confer within 24 hours of the request to inspect and attempt to resolve the dispute. If the dispute is not resolved, such lead and local counsel shall agree to an expedited briefing schedule for Requesting Party to file the appropriate motion and for Producing Party to respond. Beginning one week prior to the beginning of trial and continuing through the end of trial, the source code of all parties will be made available for inspection in Dallas, TX under the same conditions and with the same limitations and restrictions as provided in this Paragraph.

5.3.3   Any source code produced in discovery shall be made available for inspection, in

a format allowing it to be reasonably reviewed and searched, during normal business hours or at other mutually agreeable times. The Producing Party shall make available source code review tools appropriate for the language in which the source code is written to allow for the reasonable review and searching of the source code. If the Receiving Party needs a review tool not provided by the Producing Party, the Receiving Party may provide its own licensed copy to the Producing Party for use in reviewing the source code no later than 5 business days prior to the review. The Producing Party may challenge the request for a source code review tool pursuant to the dispute resolution procedure and time frames set forth in Paragraph 4.5. The Receiving Party shall not copy, remove, or otherwise transfer any portion of the source code onto any recordable media or recordable device.

No recording devices (including cell phones, PDAs, or cameras) or recordable media will be permitted inside the source code review room; however the Receiving Party's Outside Counsel and/or Outside Consultants shall be entitled to take notes relating to the Source Code, including on a laptop. The Receiving Party may use a printer for on-site printing of notes taken on its laptop. The Receiving Party's laptop computer must have its wireless and camera functions disabled at all times inside the source code review room. The Producing Party may visually monitor the activities of the Receiving Party's representatives during any source code review and confirm the disabling of the wireless and camera functions, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code, including the copying of large portions of source

code (e.g., more than filepath names, call paths, or isolated lines of source code) verbatim into one's notes.  Any such visual monitoring may be conducted within or from outside of the source code review room in such manner as not to impede or interfere with the Receiving Party's review. The Receiving Party may not copy portions of source code into the notes, with the exception of filepath names or call paths.  Filepath names or call path names must nevertheless be designated and treated as "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY - SOURCE CODE."

5.3.4   The Receiving Party may print limited portions of source code that are reasonably necessary for inclusion in court filings, pleadings, expert reports, or other papers, or for use in deposition or trial, but shall not request paper copies for the purpose of reviewing the source code other than electronically.  The Parties agree that the printouts can be reviewed for purposes of Outside Counsels' or Outside Consultants' work in the case.  Such printout paper may, at the election of the Producing Party, be non-copyable paper; however, such paper must be readable by humans under normal conditions and without the need for special tools or methods (e.g., water-marked or lightly-colored paper).  Unacceptable forms of non-copyable paper include reflective paper, paper that is not readable without the assistance of cover sheets, or darkly-colored paper).  All printed copies of source code shall be securely maintained in a locked room or cabinet at the office of Outside Counsel of the Receiving Party when not in use and shall be destroyed as soon as they are no longer needed.  Outside Consultants preparing or submitting expert reports may keep in their offices a paper copy of those portions of the code

pertinent to their report and anticipated testimony subject to the following conditions: (1) the Party that has retained the Outside Consultant shall disclose the specific location of the Outside Consultant's office and the specific security precautions to be taken and shall not allow source code to be stored at the Outside Consultant's office until the Producing Party has had an opportunity to review the request and object pursuant to the dispute resolution procedure and time frames set forth in Paragraph 4.5; (2) the Party that has retained the Outside Consultant shall keep a log of the transmission of any paper copies of the source code provided to the Outside Consultant; (3) the printed copies of the source code shall not be copied by the Outside Consultant and must be securely maintained in a locked cabinet in the Outside Consultant's office that is accessible only to the Outside Consultant and his staff working on this matter; (4) after service or submission of rebuttal expert reports and any deposition of that Outside Consultant, the paper copies of the source code shall be returned to Outside Counsel for the Party that has retained the Outside Consultant; (5) Outside Counsel for the Party that has retained the Outside Consultant shall certify that it has received all paper copies of the source code from the Outside Consultant within 3 days of that Outside Consultant's deposition (to occur after service of rebuttal expert reports); and (6) upon completion of the Outside Consultant's work in this case, the Outside Counsel shall certify that all paper copies of the source code provided to the Outside Consultant have been destroyed.

In no circumstances will any copies of source code leave the United States, except as reasonably believed may be necessary to depose a party witness, in which case

the Receiving Party will provide the Producing Party advance notice of its intent to take source code outside the United States and the parties will work in good faith to obtain the Producing Party's consent to allow the secure transporting of said source code outside the United States.

Notwithstanding the above and consistent with the protections in this Protective Order, an Outside Consultant, after submission of his report, may retain a complete copy of his report including exhibits and attachments that contain source code for preparation for trial.

The Receiving Party agrees to request no more than a reasonable amount of paper copies of source code, and if the Producing Party reasonably believes that an excessive amount of source code has been requested, it reserves the right to seek relief from the Court.  Requests for more than twenty (20) pages of continuous block source code or 500 pages total shall be deemed excessive. Prior to the Producing Party seeking relief from the Court and within 48 hours of raising an objection to the amount of source code that may be printed, Lead and Local Counsel for the Parties must meet and confer in good faith to try to resolve the dispute.  If a resolution cannot be reached during the meet and confer, and the Producing Party seeks relief from the Court, such relief must be sought within 48 hours of the meet and confer.  During the pendency of seeking relief by the Producing Party, no further paper copies shall be provided until the dispute is resolved in favor of the Receiving Party. If the Producing Party fails to seek relief from the Court pursuant to the terms and timing of this paragraph, then the Producing Party must comply with the Receiving Party's request.  If a Party

reasonably believes that it needs to submit a portion of source code as part of a filing with the Court, as part of an expert report, or as an exhibit at trial, such portion shall not include more than a reasonable number of pages of Source Code, and the parties shall confer as to how to submit the portion of source code while protecting the confidentiality of the source code.  The Producing Party shall provide, within two business days, all such source code in paper form, including bates numbers and the label "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY - SOURCE CODE."  The Producing Party may challenge the request for source code in hard copy form pursuant to the dispute resolution procedure and time frames set forth in Paragraph 4.5. The printed pages shall constitute part of the Source Code produced by the Producing Party in this action.

5.3.5   The Receiving Party shall maintain a record of any individual who has inspected any portion of the source code in electronic form on the stand-alone computer or paper form.  The Receiving Party shall not create any electronic or other images or copies of the paper copies into any electronic format. The Receiving Party's Outside Counsel may make no more than three (3) additional paper copies of any portions of the source code received from a Producing Party, not including copies attached to court filings or used at depositions.  Under no circumstances will the source code be compiled into executable code by the Receiving Party, and the parties agree not to comment, argue or suggest at trial that another party's expert did not test execution of a party's source code or modifications thereto.  The agreement of the previous sentence applies only to testing of Plaintiff's or Defendants' source code, and not any source code that relates to alleged prior art.  Upon 3 business day's advance notice to the Receiving

Party by the Producing Party, the Receiving Party shall provide a copy of this log to the Producing Party.

5.3.6   Outside Counsel and no more than a total of fifteen (15) other individuals identified by the Receiving Party shall have access to the printed portions of source code (except insofar as such code appears in any court filing or expert report).  All persons who will review a Producing Party's Source Code on behalf of a Receiving Party, including members of a Receiving Party's Outside Counsel, shall be identified in writing to the Producing Party at least five days in advance of the first time that such person reviews such Source Code.  Proper identification of all authorized persons shall be provided prior to any access to the secure room or the computer containing Source Code. Proper identification requires showing, at a minimum, a photo identification card sanctioned by the government of any State of the United States, by the government of the United States, or by the nation state of the authorized person's current citizenship. Access to the secure room or the Source Code Computer may be denied, at the discretion of the supplier, to any individual who fails to provide proper identification.   All persons viewing Source Code shall sign on each day they view Source Code a log that will include the names of persons who enter the locked room to view the Source Code and when they enter and depart.  The Producing Party shall be entitled to a copy of the log upon one day's advance notice to the Receiving Party.

**5.4 General Disclosures**

Notwithstanding the restrictions set forth above, the following disclosures may be made in accordance with this Protective Order:

5.4.1   Outside Consultants

Page 25

5.4.1.1 Subject to the requirement that the person(s) receiving the Protected Information duly execute the Confidentiality Agreement attached as Attachment A and this section, disclosure of Protected Information may be made to Outside Consultants.

5.4.1.2 Prior to disclosure of any of the Designating Party's Protected Information to an Outside Consultant, the Receiving Party shall give at least eight (8) business days written notice to the Designating Party, providing:

a)  the name, business title and business address of the Outside Consultant to whom the disclosure is proposed to be made;

b)  a copy of the proposed Outside Consultant's executed Confidentiality Agreement;

c)  a copy of the proposed Outside Consultant's current curriculum vitae showing their education;

d)  a list of any previous or current relationships (personal or professional) with any of the parties;

e)  a list of all pending patent applications in which the proposed Outside Consultant is an inventor or is otherwise involved in the prosecution; and

f)  a list of all other cases in which the Outside Consultant has testified (at trial or deposition), all companies for which the individual has provided consulting services, either directly or through a consulting firm, and all companies by which the individual has been employed, within the last four years.  Such a listing, as appropriate, may itself be designated as "CONFIDENTIAL."

5.4.1.3 No disclosure of Protected Information shall be made to such Outside Consultant and/or staff until after the expiration of the foregoing notice period.  The disclosure requirement of an Outside Consultant shall apply to all professionals working at the direction of counsel, including testifying experts and their employees who provide technical, engineering, accounting or financial support services ("staff").

5.4.1.4 If, during the eight (8) business days' notice period the Producing Party serves a good faith objection to the proposed disclosure to showing the Outside Consultant Protected Information, there shall be no disclosure of said Protected Information to such Outside Consultant pending resolution of the objection.  Consent to the disclosure of Protected Information to the Outside Consultant shall not be unreasonably withheld.   The Producing Party objecting to disclosure of Protected Information to the Outside Consultant shall provide an explanation of the basis of its objection.  If a Producing Party objects to the disclosure of Protected Information to an Outside Consultant, the Receiving Party shall then have five (5) business days after such objection is served to respond to the objection.  The Producing Party shall then have five (5) business days after such response is served to file an objection with the Court and seek a motion for protection or disqualification of the Outside Consultant or other appropriate relief, if the parties cannot come to an agreement.  No Protected Information shall be provided to the proposed Outside Consultant until after resolution of the objection either by the parties or by the Court.  If the Producing Party fails to file an objection and motion

for protection with the Court within the prescribed period, then any objection to the Outside Consultant is waived, and any Protected Information may be thereafter disclosed to such individual.

5.4.1.5 In the event of a changed circumstance or discovery of new information, not otherwise available during the time period for objection laid out above by this Protective Order, the Producing Party may raise an objection if such changed circumstance or newly discovered information would result in undue prejudice to the Producing Party.  If an objection is made, the parties shall meet and confer via telephone or in person within seven (7) days following the objection and attempt in good faith to resolve the dispute informally.  If the dispute is not resolved, the party objecting to the disclosure will have seven (7) days from the date of the meet and confer to seek relief from the Court. The designated employee may continue to have access to information that was provided to such employee prior to the date of the objection.  If a later objection is made, no further Protected Information shall be disclosed to the employee until the Court resolves the matter or the Producing Party withdraws its objection.  Notwithstanding the foregoing, if the Producing Party fails to move for a protective order within seven (7) business days after the meet and confer, further Protected Information may thereafter be provided to the employee.

5.4.2   Disclosure to Author or Recipient

Notwithstanding any other provision, nothing in this Protective Order shall prohibit Outside Counsel for a party from disclosing Protected Information to any person

whom the Discovery Material clearly identifies as an author, addressee, or carbon copy recipient of such Discovery Material.  In addition, regardless of its designation, if Discovery Material makes reference to the actual or alleged conduct or statement of a person, Outside Counsel may discuss such conduct or statements with such person, provided that such discussions do not disclose or reveal any other portions of the document.

### 5.4.3   Disclosure of Party's Own Information

The restrictions on the use of Discovery Material established by the Protective Order are applicable only to Discovery Material received by a party from another party or from a non-party as a direct result of this litigation.  Any party is free to use its own Discovery Material for any purpose, and no use by the Producing Party shall affect or otherwise act as a waiver with respect to the confidential status of that information.

### 5.4.4   Disclosure to the Court or Jury

Protected Information may be disclosed to the Court, its personnel and the jury for this case, provided any Discovery Material designated as Protected Information that is filed with the Court shall be filed and kept by the Court under seal and shall be made available only to the Court and to persons authorized by the terms of this Protective Order.  The party filing any paper that reflects or contains any Protected Information shall file such paper under seal pursuant to the rules and practice of the Court.

Notwithstanding the foregoing, any intended filing of information designated "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY - SOURCE CODE" shall be governed by Section 5.3.

### 5.4.5   Disclosure to Necessary Personnel

Disclosure of Protected Information may be made to court reporters, independent shorthand reporters, videographers, interpreters, or translators engaged for depositions or proceedings necessary to this case.

### 5.4.6   Disclosure to Vendors and Graphics/Trial Consultants/Mediator

Disclosure of Protected Information may be made to any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order.

Disclosure of Protected Information may be made to employees of outside vendors providing copy services, document and exhibit preparation services, and jury consultant and research services, mock jurors, or other counsel retained by the client or by counsel who have not entered an appearance in the lawsuit in connection with this case upon execution of the Confidentiality Agreement attached as Attachment A or an agreement providing at least as much protection as the Confidentiality Agreement attached as Attachment A.

Notwithstanding the foregoing, the following Protected Information may not be disclosed to mock jurors: (1) documents marked as "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY - SOURCE CODE" and (2) documents marked as "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY."  The executed Confidentiality Agreement shall be retained by Outside Counsel for the Receiving Party making such disclosures.

### 5.5 Disclosure During Depositions

Subject to the requirement that the person(s) receiving the Protected Information duly execute the Confidentiality Agreement attached as Attachment A, and except as otherwise approved by

the Designating Party or by an order of this Court, a party may use Protected Information in deposing only: (a) an individual who has had or who is eligible to have access to the Protected Information by virtue of their employment with the Designating Party; (b) an employee of the Designating Party designated as a witness under Fed. R. Civ. P. 30(b)(6) for topics relating to the Protected Information; (c) an individual identified in the Protected Information as an author, addressee, or recipient of such information; (d) an individual who although not identified as an author, addressee, or recipient of such Protected Information, has, in the ordinary course of business, seen such Protected Information; or (e) an Outside Consultant subject to the requirements of this Protective Order.

No one may attend or review the transcripts or the portions of any depositions at which Protected Information is shown or discussed other than those individuals qualified to see such Protected Information as set forth in this Protective Order.

**5.6 Disclosure Pursuant to Subpoena**

If any entity subpoenas or orders production of Protected Information from a Receiving Party that a Receiving Party has obtained subject to this Protective Order, such party shall promptly notify the Designating Party of the pendency of the subpoena or order and shall not produce the information until the Designating Party shall have reasonable time (which shall not be less than ten (10) business days) to object or take other appropriate steps to protect the information, unless such delay would violate another court order. The Receiving Party in such circumstance must take reasonable steps to ensure that the Designating Party is given an opportunity to protect its interests in its Protected Information. Such reasonable steps include informing the competing tribunal of Receiving Party's obligations under this Protective Order.

**5.7 Inadvertent Disclosure of Protected or Privileged Information**

Inadvertent failure to designate as Protected Information or the inadvertent production or disclosure of documents or information subject to the attorney-client privilege, work product immunity or any other applicable privilege, despite the Producing Party's reasonable efforts to pre-screen such Discovery Material prior to production, shall not constitute a waiver of, nor a prejudice to, any claim that such or related material is Protected Information, privileged, or protected by the work product immunity or any other applicable privilege, provided that the Producing Party notifies the Receiving Party in writing within ten (10) business days after discovery of such inadvertent production or disclosure. Such inadvertently produced or disclosed documents or information, including all copies thereof, shall be returned to the Producing Party immediately upon request, and the Receiving Party shall immediately destroy any notes or other writing or recordings that summarize, reflect, or discuss the content of such privileged or Protected Information. No use shall be made of such documents or information during deposition or at trial, nor shall such documents or information be shown to anyone who has not already been given access to them by the Producing Party subsequent to the request that they be returned. In the case of an inadvertently produced or disclosed document, the Producing Party shall include the Discovery material in a privilege log identifying such inadvertently produced or disclosed document. The Receiving Party may move the Court for an Order compelling the production of any inadvertently produced or disclosed document or information, but the motion shall not assert as a ground for production the fact of the inadvertent production or disclosure, nor shall the motion disclose or otherwise use the content of the inadvertently produced document or information (beyond any information appearing on the above-referenced privilege log) in any way in connection with any such motion.

### 5.8 Duty to Return or Destroy Discovery Material

Within 120 calendar days after conclusion of the above-captioned case (including all appeals and further proceedings resulting therefrom), all Discovery Material containing Protected Information including backup and archival systems shall be either returned to the Designating Party or shall be destroyed.  Counsel for any party or non-party receiving Protected Information shall make written certification of compliance with this provision regarding return or destruction and shall deliver the same to counsel for the Designating Party within 120 calendar days after the conclusion of the above-captioned case.  Notwithstanding the provisions for return of Discovery Material, Outside Counsel may retain an electronic set at one server location of pleadings, correspondence and attorney and consultant work product (but not document productions) for archival purposes, but shall provide security and safeguarding against inadvertent disclosure of any Source Code contained therein.

### 5.9 Prosecution Bar

Absent written consent from the Producing Party, any individual who receives and reviews material designated "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY - SOURCE CODE," including oral or written summaries or other derivations of such material, shall not be involved, directly or indirectly, in any of the following activities:  (I) advising on, consulting on, preparing, prosecuting, drafting, editing, and/or amending of patent applications, specifications, claims, and/or responses to office actions, or otherwise affecting the scope of claims in patents or patent applications relating to the functionality, operation, and design of obtaining multimedia digital content, processing that digital content, and transmitting or sharing it with other devices, transmitting the digital content in multimedia messages or by Messaging-related Application Programming Interfaces ("APIs"), apps, and other sharing options accessible without an app

(generally or as described in any patent in suit), before any foreign or domestic agency, including the United States Patent and Trademark Office; and (ii) the acquisition of patents (including patent applications), or the rights to any such patents or patent applications with the right to sublicense, relating to the functionality, operation, and design of obtaining multimedia digital content, processing that digital content, and transmitting or sharing it with other devices, transmitting the digital content in multimedia messages or by Messaging-related Application Programming Interfaces ("APIs"), apps, and other sharing options accessible without an app. However, to avoid any doubt, "prosecution" as used in this paragraph does not include representing a party challenging a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, ex parte reexamination or *inter partes* reexamination).   This Prosecution Bar shall begin when an affected individual first receives "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY - SOURCE CODE" information and shall end two (2) years after final termination of this action.  Consistent with Section 3.6, this Prosecution Bar shall not apply to disclosures of "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY - SOURCE CODE" information made as admitted evidence  in an unsealed courtroom that is open to the public.

## 6. MISCELLANEOUS

### 6.1 Continuing Jurisdiction

After the conclusion of the above-captioned case, the provisions of this Protective Order shall continue to be binding until further order of this Court or the Producing Party agrees  in writing, and this Court shall retain jurisdiction over the parties and any other person who has had access to Protected Information pursuant to this Protective Order, in order to enforce the provisions of this Protective Order.

### 6.2 Interpretation

Should the parties have any issues concerning the interpretation of this Protective Order, before any party moves for this Court's assistance, they shall first endeavor to promptly meet and confer to resolve the dispute.  The headings used in this Protective Order are supplied for convenience only and shall not be taken into account in the interpretation of this Protective Order.

### 6.3 Modification

This Protective Order may be modified by this Court for good cause shown or by mutual written agreement between the parties and this Court's approval of such agreement.  The Court may enter a subsequent order addressing the use of Protected Information at trial or at the conclusion of the above-captioned case.

### 6.4 Successors

This Protective Order shall be binding upon the parties hereto, their attorneys, and their successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, retained consultants and experts, and any persons or organizations over which they have direct control.

### 6.5 Outside Counsel's Communication with Client

Nothing in this Protective Order shall preclude or impede Outside Counsel's ability to communicate with or advise their client based on their review and evaluation of Protected Information produced by the opposing party, provided that such communications or advice shall not disclose or reveal Protected Information in violation of this Protective Order.

### 6.6 No Probative Value

The Protective Order shall not aggregate or diminish any contractual, statutory or other legal obligation or right of any party or person with respect to any Protected Information.  The fact that

information is designated "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY - SOURCE CODE" under this Protective Order shall not be deemed to be determinative of what a trier of fact may determine to actually be "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY - SOURCE CODE." This Protective Order shall be without prejudice to the right of any party to bring before the Court questions regarding (a) whether any particular material is or is not properly designated or (b) whether any particular information or material is or is not entitled to a greater or lesser degree of protection under the terms of this Protective Order, provided that in doing so, the party complies with the procedures set forth herein. The fact that any information is disclosed, used, or produced in any court proceeding in this case shall not be offered in any action proceeding before any court, agency or tribunal as evidence of or concerning whether or not such information is admissible, confidential, or proprietary.

### 6.7 Secure Storage, No Export

Protected Information must be stored and maintained by a Receiving Party at a location in the United States and in a secure manner that ensures that access is limited to the persons authorized under this Order. Nothing in this section precludes the reasonable use of Protected Information by a Receiving Party's Outside Counsel or Outside Consultants for their work in this case. To ensure compliance with applicable United States Export Administration Regulations, Protected Information may not be exported outside the United States or released to any foreign national (even if within the United States).

### 6.8 Prohibitions on Negative Commentary on Protective Order Compliance

Under no circumstances may a party comment negatively on a party not doing an act

prohibited by this Protective Order.

**6.9 Right to Assert Other Objections**

By stipulating to the entry of this Protective Order, no party waives any right it otherwise would have to object to disclosing or producing any information or item.  Similarly, no party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

**6.10    Burdens of Proof**

Nothing in this Protective Order shall be construed to change the burdens of proof or legal standards applicable in this case.

**6.11    Protections for Expert Discovery**

In addition to the protections against disclosure of Expert Discovery provided by the Federal Rules, including Rule 26, the parties agree to the following additional protections:

(1) Oral and written communication between an expert witness for any party or parties, and the party or parties, or their attorneys or representatives employing such expert which are made in connection with the expert witness' engagement for this case are not discoverable and need not be preserved, except to the extent that the expert relies upon them for his opinions.

(2) Drafts of a report of an expert witness for any party or parties that are prepared in connection with the expert witness' engagement for this action are not discoverable and need not be preserved.

(3) All notes, memoranda and other writings of an expert witness that are prepared in connection with the expert witness' engagement for this case are not discoverable and need not be preserved, except to the extent that the expert consults them or refreshes his or her memory with them while testifying at a deposition or at trial.

(4) No party will argue or suggest at trial that any expert should have produced discovery, e.g., that the expert should have produced draft reports, beyond what is required under this section.

(5) Notwithstanding the above, experts must preserve communications to the extent they communications: (I) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

**6.12     Privilege Logging**

The parties agree that there is no duty to disclose privileged documents or information. Further, the parties agree that neither side need exchange privilege logs identifying privileged documents or attorney work product generated on or after February 18, 2014 (the date of the complaint in the instant case). The parties also agree that Summit 6 need not log documents created before February 18, 2014, solely for the purpose of the previous Samsung litigation. However, Summit 6 will log any otherwise responsive but withheld documents created before February 18, 2014 (i.e., documents not created specifically for the Samsung litigation).

**It is so ORDERED on this 26th day of June, 2014**


_____

Robert K. Roach
UNITED STATES MAGISTRATE JUDGE

Page 38

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| SUMMIT 6 LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:14-cv-14-O |
| | § | |
| HTC CORPORATION, | § | |
| HTC AMERICA, INC., | § | |
| LG ELECTRONICS, INC., | § | |
| LG ELECTRONICS USA, INC., | § | |
| LG ELECTRONICS MOBILECOMM | § | Jury Trial Demanded |
| USA, INC., | § | |
| MOTOROLA MOBILITY LLC, | § | |
| APPLE INC., and | § | |
| TWITTER INC., | § | |
| | § | |
| Defendants. | § | |

**ATTACHMENT A TO THE PROTECTIVE ORDER
CONFIDENTIALITY AGREEMENT**

I reside at _____.

My present employer is _____.

1.    My present occupation or job description is _____.

2.    I am an inventor, applicant, assignee, and/or involved in the filing or prosecution of the

following patents and patent applications (identify by number, country, and subject matter if

not published): _____.

3.    I acknowledge and declare that I have received a copy of the Protective Order ("Order") in

Summit 6 LLC v. HTC Corporation, HTC America, LG Electronics, Inc., LG Electronics

USA, Inc., LG Electronics MobileComm USA, Inc., Motorola Mobility LLC, Apple Inc.,

Twitter Inc., United States District Court, Northern District of Texas, Wichita Falls Division,

Civil Action No. 7:14-cv-14-O.

4.      Having read and understood the terms of the Order, I am fully familiar with and agree to comply with and be bound by the provisions of said Order.  I understand that I am to retain all copies of any documents designated as "CONFIDENTIAL INFORMATION," "CONFIDENTIAL OUTSIDE ATTORNEY'S EYES ONLY INFORMATION," or "CONFIDENTIAL - OUTSIDE ATTORNEY'S EYES ONLY - SOURCE CODE" in the manner set forth in the Protective Order and no less than a secure manner, and that all copies are to remain in my personal custody until I have completed my assigned duties, whereupon the copies and any writings prepared by me containing any Protected Information are to be returned to counsel who provided me with such material or destroyed as directed by such counsel.

5.      I will not divulge to persons other than those specifically authorized by said Protective Order, and will not copy or use except solely for the purpose of this action, any information obtained pursuant to said Protective Order, except as provided in said Protective Order.  I also agree to notify any stenographic or clerical personnel who are required to assist me of the terms of said Protective Order.

6.      Attached is the information required by paragraph 5.4.1.2 of the Agreed Protective Order.

7.      I agree that with the exception of my work on this litigation, I will not consult, advise, or otherwise obtain employment with any competitor of any Producing Party from which I have received or been provided access to Protected Information in the subject areas of the products or businesses at issue in this litigation or contained within the Protected Information I have received without the consent of the Producing Party(ies), which consent shall not be unreasonably withheld.  This obligation expires two years after the final termination of this litigation.

8.    I state under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.


Executed on the ___day of _____, 201_____.


_____


Print Name: _____

# EXHIBIT G

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TOT POWER CONTROL, S.L. | |
| Plaintiff, | C.A. No. 21-1302-MN |
| v. | |
| APPLE INC. | |
| Defendant. | |
| TOT POWER CONTROL, S.L. | |
| Plaintiff, | C.A. No. 21-1304-MN |
| v. | |
| LG ELECTRONICS, INC. and LG ELECTRONICS U.S.A., INC. | |
| Defendants. | |
| TOT POWER CONTROL, S.L., | |
| Plaintiff, | C.A. No. 21-1305-MN |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., | |
| Defendants. | |

## AGREED PROTECTIVE ORDER
## REGARDING THE DISCLOSURE AND USE OF DISCOVERY MATERIALS

Plaintiff TOT Power Control, S.L. ("Plaintiff") and Defendants Apple Inc.

("Apple"), LG Electronics, Inc. and LG Electronics U.S.A., Inc. ("LGE"), and Samsung

Electronics Co., Ltd. and Samsung Electronics America, Inc. ("Samsung") (collectively, "Defendants") anticipate that documents, testimony, or information containing or reflecting confidential, proprietary, trade secret, and/or commercially sensitive information are likely to be disclosed or produced during the course of discovery, initial disclosures, and supplemental disclosures in this case and request that the Court enter this Order setting forth the conditions for treating, obtaining, and using such information.[1]

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Court finds good cause for the following Agreed Protective Order Regarding the Disclosure and Use of Discovery Materials ("Order" or "Protective Order").

1.    **PURPOSES AND LIMITATIONS**

(a)    Protected Material designated under the terms of this Protective Order shall be used by a Receiving Party solely for this case, and shall not be used directly or indirectly for any other purpose whatsoever.

(b)    The Parties acknowledge that this Order does not confer blanket protections on all disclosures during discovery, or in the course of making initial or supplemental disclosures under Rule 26(a).  Designations under this Order shall be made with care and shall not be made absent a good faith belief that the designated material satisfies the criteria set forth below.  If it comes to a Producing Party's attention that designated material does not qualify for protection at all, or does not qualify for the level of protection initially asserted, the Producing Party must promptly notify all other Parties that it is withdrawing or changing the designation.

---

[1] This Order applies to each of the three above-captioned cases separately and independently, and nothing herein should be interpreted as providing for consolidation of the cases or permitting use of a defendant's Protected Material in connection with above-captioned cases other than the one in which the Protected Material is disclosed.

## 2.   **DEFINITIONS**

(a)     "Accused Technology" shall mean the functionality, operation, and design of power control mechanisms for 3G cellular systems (generally or as described in any patent-in-suit).

(b)     "Discovery Material" means all items or information, including from any non-party, regardless of the medium or manner generated, stored, or maintained (including, among other things, testimony, transcripts, or tangible things) that are produced, disclosed, or generated in connection with discovery or Rule 26(a) disclosures in this case.

(c)     "Outside Counsel" means (i) outside counsel who appear on the pleadings as counsel for a Party and (ii) partners, associates, and staff of such counsel to whom it is reasonably necessary to disclose the information for this litigation.

(d)     "Party" means any party to this case, including all of its officers, directors, employees, consultants, retained experts, and outside counsel and their support staffs.

(e)     "Producing Party" means any Party or non-party that discloses or produces any Discovery Material in this case.

(f)     "Protected Material" means any Discovery Material that is designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE," as provided for in this Order. Protected Material shall not include: (i) advertising materials that have been actually published or publicly disseminated; and (ii) materials that show on their face they have been disseminated to the public.

(g)     "Receiving Party" means any Party who receives Discovery Material from a Producing Party.

(h)     "Source Code" means computer code, scripts, assembly, binaries, object code, source code listings (e.g., file names and path structure), descriptions of source code (e.g., descriptions of declarations, functions, and parameters), object code listings and descriptions of object code, and other computer-based code including but not limited to Hardware Description Language (HDL) and Registered Transfer Level information.

3.     **COMPUTATION OF TIME**

The computation of any period of time prescribed or allowed by this Order shall be governed by the provisions for computing time set forth in Federal Rules of Civil Procedure 6.

4.     **SCOPE**

(a)     The protections conferred by this Order cover not only Discovery Material governed by this Order as addressed herein, but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by Parties or their counsel in court or in other settings that might reveal Protected Material, with the exception that nothing herein shall be read to contravene the Court's preferred practices relating to disclosure of Protected Material in court proceedings.

(b)     Nothing in this Protective Order shall prevent or restrict a Producing Party's own disclosure or use of its own Protected Material for any purpose, and nothing in this Order shall preclude any Producing Party from showing its Protected Material to an individual who prepared the Protected Material.

(c)     Nothing in this Order shall be construed to prejudice any Party's right to use any Protected Material in court or in any court filing with the consent of the Producing Party or by order of the Court.

(d)     This Order is without prejudice to the right of any Party to seek further or additional protection of any Discovery Material or to modify this Order in any way, including, without limitation, an order that certain matter not be produced at all.

5.     **DURATION**

Even after the termination of this case, the confidentiality obligations imposed by this Order shall remain in effect until a Producing Party agrees otherwise in writing or a court order otherwise directs.

6.     **ACCESS TO AND USE OF PROTECTED MATERIAL**

(a)     <u>Basic Principles</u>.  All Protected Material shall be used solely for this case, or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function.  Protected Material shall not be distributed, disclosed, or made available to anyone except as expressly provided in this Order.

(b)     <u>Patent Prosecution Bar</u>.  Absent the written consent of the Producing Party, any person who receives one or more items designated "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" shall not be involved, directly or indirectly, in consulting on, preparing, prosecuting, drafting, editing, and/or amending of patent applications, specifications, claims, and/or responses to office actions, or otherwise affecting the scope of claims in patents or patent applications relating to the Accused Technology), before any foreign or domestic agency, including the United States Patent and Trademark Office.  To avoid doubt, these prohibitions are not intended to and shall not preclude counsel from assisting in challenging or defending any patents before a domestic or foreign agency (including, but not limited to, a reissue protest, ex parte reexamination, inter partes review, post-

5

grant review, or covered business method review), provided that such participation or assistance shall not, directly or indirectly, include suggesting, proposing for substitution, drafting, or amending patent claim language. Nothing in this paragraph prohibits an attorney subject to this section from forwarding to counsel participating in patent prosecution any nonconfidential information identified by any defendant as prior art during the course of this action, and nothing in this section shall prevent any attorney from sending nonconfidential information to an attorney involved in any prosecution for purposes of ensuring that such prior art is submitted to the U.S. Patent and Trademark Office (or any similar agency of a foreign government) to assist a patent applicant in complying with its duty of candor. These prohibitions shall begin when access to "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" materials are first received by the affected individual, and shall end two (2) years after the final resolution of this action, including all appeals.

(c)     Secure Storage, No Export. Protected Material must be stored and maintained by a Receiving Party at a location in the United States and in a secure manner that ensures that access is limited to the persons authorized under this Order. All Parties shall comply with applicable United States Export Administration Regulations, and nothing in this Order should be read to be inconsistent with or to permit disclosure otherwise prohibited by those regulations. Nothing in this Provision shall prejudice a Receiving Party's ability to transport and use Protected Materials at a deposition conducted outside the United States, provided that such transportation and use is in compliance with applicable United States laws and regulations.

(d)     Legal Advice Based on Protected Material. Nothing in this Protective Order shall be construed to prevent counsel from advising their clients with respect to this case based in

6

whole or in part upon Protected Materials, provided counsel does not disclose the Protected Material itself except as provided in this Order.

(e)   Limitations.   Nothing in this Order shall restrict in any way a Producing Party's use or disclosure of its own Protected Material.  Nothing in this Order shall restrict in any way the use or disclosure of Discovery Material by a Receiving Party: (i) that is or has become publicly known through no fault of the Receiving Party; (ii) that is lawfully acquired by or known to the Receiving Party independent of the Producing Party; (iii) previously produced, disclosed and/or provided by the Producing Party to the Receiving Party or a non-party without an obligation of confidentiality and not by inadvertence or mistake; (iv) with the consent of the Producing Party; or (v) pursuant to order of the Court.

7.   **DESIGNATING PROTECTED MATERIAL**

(a)   Available Designations.   Any Producing Party may designate Discovery Material with any of the following designations, provided that it meets the requirements for such designations as provided for herein: "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE."

(b)   Written Discovery and Documents and Tangible Things.   Written discovery, documents (which include "electronically stored information," as that phrase is used in Federal Rule of Procedure 34), and tangible things that meet the requirements for the confidentiality designations listed in Paragraph 7(a) may be so designated by placing the appropriate designation on every page of the written material prior to production.  For digital files being produced, the Producing Party may mark each viewable page or image with the appropriate designation, and mark the medium, container, and/or communication in which the digital files were

7

contained. In the event that original documents are produced for inspection, the original documents shall be presumed "CONFIDENTIAL – ATTORNEYS' EYES ONLY" during the inspection and re-designated, as appropriate during the copying process.

(c)     Native Files.  Where electronic files and documents are produced in native electronic format, such electronic files and documents shall be designated for protection under this Order by appending to the file names or designators information indicating whether the file contains "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE," material, or shall use any other reasonable method for so designating Protected Materials produced in electronic format. When electronic files or documents are printed for use at deposition, in a court proceeding, or for provision in printed form to an expert or consultant pre-approved pursuant to paragraph 12, the party printing the electronic files or documents shall affix a legend to the printed document corresponding to the designation of the Designating Party and including the production number and designation associated with the native file.  A party reserves the right to object to the image version of a native file upon good faith discovery of any discrepancies.

(d)     Depositions.  Parties or testifying persons or entities may designate depositions with the appropriate designation by indicating on the record at the time the testimony is given or by sending written notice of how portions of the transcript of the testimony is designated within thirty (30) days of receipt of the transcript of the testimony.  If after such time no designation is made, the information disclosed shall be deemed not Protected Material.  If no indication on the record is made, all information disclosed during a deposition shall be deemed "CONFIDENTIAL – ATTORNEYS' EYES ONLY" until the time within which it may be appropriately designated as provided for herein has passed.  Any Party that wishes to disclose portions the transcript, or

8

information contained therein, may challenge the confidentiality designation pursuant to Paragraph 13. Any Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Protective Order, along with the transcript pages of the deposition testimony dealing with such Protected Material. In such cases the court reporter shall be informed of this Protective Order and shall be required to operate in a manner consistent with this Protective Order. In the event the deposition is videotaped, the original and all copies of the videotape shall be marked by the video technician to indicate that the contents of the videotape are subject to this Protective Order, substantially along the lines of "This videotape contains confidential testimony used in this case and is not to be viewed or the contents thereof to be displayed or revealed except pursuant to the terms of the operative Protective Order in this matter or pursuant to written stipulation of the parties." Counsel for any Producing Party shall have the right to exclude from oral depositions, other than the deponent, deponent's counsel, the reporter and videographer (if any), any person who is not authorized by this Protective Order to receive or access Protected Material based on the designation of such Protected Material. Such right of exclusion shall be applicable only during periods of examination or testimony regarding such Protected Material.

8.  **DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL"**

(a)     A Producing Party may designate Discovery Material as "CONFIDENTIAL" if it contains or reflects confidential, proprietary, and/or commercially sensitive information.

(b)     Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL" may be disclosed only to the following:

(i)      The Receiving Party's Outside Counsel, such counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(ii)     Not more than three (3) representatives of the Receiving Party who are officers or employees of the Receiving Party, who may be, but need not be, in-house counsel for the Receiving Party, as well as their immediate paralegals and staff, to whom disclosure is reasonably necessary for this case, provided that: (a) each such person has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; and (b) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

(iii)     Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party (or of the Producing Party if not a Party), nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party (or the Producing Party); (c) such expert or consultant accesses the materials in the United States only, and does not transport them to or access them from any foreign jurisdiction; and (d) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

(iv)     Court reporters, stenographers and videographers retained to record testimony taken in this action;

(v)     The Court, jury, and court personnel;

10

(vii)    Any persons who are witnesses during a deposition, court hearing, or trial where specific documentary or testimonial evidence establishes either (1) at the time that the "CONFIDENTIAL" Discovery Material was authored or received by the witness without any violation of any confidentiality obligation owed to any party in this action, or (2) the witness is an employee of the Producing Party and would have access to the "CONFIDENTIAL" Discovery Material pursuant to that employee's job responsibilities and position;

(viii)    Graphics, translation, design, and/or trial consulting personnel, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

(ix)    Mock jurors who have signed an undertaking or agreement agreeing not to publicly disclose Protected Material and to keep any information concerning Protected Material confidential;

(x)    Any mediator or arbitrator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(xi)    Any other person with the prior written consent of the Producing Party.

9.    **DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL – ATTORNEYS' EYES ONLY"**

(a)    A Producing Party may designate Discovery Material as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" if it contains or reflects information that is extremely confidential and/or sensitive in nature and the Producing Party reasonably believes that the disclosure of such Discovery Material is likely to cause economic harm or significant

11

competitive disadvantage to the Producing Party. The Parties agree that the following information, if non-public, shall be presumed to merit the "CONFIDENTIAL – ATTORNEYS' EYES ONLY" designation: trade secrets, pricing information, financial data, sales information, sales or marketing forecasts or plans, business plans, sales or marketing strategy, product development information, engineering documents, testing documents, employee information, and other non-public information of similar competitive and business sensitivity.

(b)     Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" may be disclosed only to:

(i)     The Receiving Party's Outside Counsel;

(ii)     Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party (or of the Producing Party if not a Party), nor anticipated at the time of retention to become an officer, director, or employee of a Party or of a competitor of a Party (or the Producing Party); (d) such expert or consultant accesses the materials in the United States only, and does not transport them to or access them from any foreign jurisdiction; and (e) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

(iii)     Court reporters, stenographers and videographers retained to record testimony taken in this action;

(iv)     The Court, jury, and court personnel;

12

(v)     Any persons who are witnesses during a deposition, court hearing, or trial where specific documentary or testimonial evidence establishes either (1) at the time that the "CONFIDENTIAL – ATTORNEYS' EYES ONLY" Discovery Material was authored or received by the witness without any violation of any confidentiality obligation owed to any party in this action, or (2) the witness is an employee of the Producing Party and would have access to the "CONFIDENTIAL – ATTORNEYS' EYES ONLY" Discovery Material pursuant to that employee's job responsibilities and position;

(vi)     Graphics, translation, design, and/or trial consulting personnel, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

(vii)     Any mediator or arbitrator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(viii)     Any other person with the prior written consent of the Producing Party.

(c)     In addition, a Party may disclose arguments, information, and materials derived from Discovery Material designated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" to mock jurors who have signed an undertaking or agreement agreeing not to publicly disclose Protected Material and to keep any information concerning Protected Material confidential.  A Party may not disclose to mock jurors any original, as-produced materials (including, for example, documents, deposition transcripts, or interrogatory responses) produced by another Party designated as "CONFIDENTIAL - ATTORNEYS' EYES ONLY."

13

10. **DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE"**

(a)     To the extent production of Source Code becomes necessary to the prosecution or defense of the case, a Producing Party may designate Source Code as "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" if it comprises or includes confidential, proprietary, and/or trade secret Source Code.

(b)     Nothing in this Order shall be construed as a representation or admission that Source Code is properly discoverable in this action, or to obligate any Party to produce any Source Code.

(c)     Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" shall be subject to the provisions set forth in Paragraph 11 below, and may be disclosed, subject to Paragraph 11 below, solely to:

(i)     The Receiving Party's Outside Counsel;

(ii)    Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party (or the Producing Party if not a Party), nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party (or the Producing Party); and (d) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

14

(iii)     Court reporters, stenographers and videographers retained to record testimony taken in this action;

(iv)     The Court, jury, and court personnel;

(v)     Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(vi)     Any other person with the prior written consent of the Producing Party.

11.     **DISCLOSURE AND REVIEW OF SOURCE CODE**

(a)     Any Source Code that is produced by Plaintiff shall be made available for inspection in electronic format at the Washington, D.C. office of its Outside Counsel, Hausfeld LLP, or any other location mutually agreed by the Parties.  Any Source Code that is produced by Apple will be made available for inspection at the Palo Alto office of Apple's Outside Counsel, DLA Piper LLP (US), or any other location mutually agreed by the Parties.  Any Source Code that is produced by LGE will be made available for inspection at the Delaware office of LGE's Outside Counsel, DLA Piper LLP (US), or any other location mutually agreed by the Parties.  Any Source code that is produced by Samsung will be made available for inspection at the New York office of Samsung's Outside Counsel, Blank Rome LLP, or any other location mutually agreed by the Parties.  Source Code will be made available for inspection between the hours of 8 a.m. and 6 p.m. on business days (i.e., weekdays that are not Federal holidays), although the Parties will be reasonable in accommodating reasonable requests to conduct inspections at other times.

      (b)    Prior to the first inspection of any requested Source Code, the Receiving Party shall provide fourteen (14) days notice of the Source Code that it wishes to inspect. The Receiving Party shall provide seven (7) days notice prior to any additional inspections.

      (c)    Source Code that is designated "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" shall be produced for inspection and review subject to the following provisions, unless otherwise agreed by the Producing Party:

      (i)    All Source Code shall be made available by the Producing Party to the Receiving Party's Outside Counsel and/or experts in a secure room on a secured computer without Internet access or network access to other computers and on which all access ports have been disabled (except for one printer port), as necessary and appropriate to prevent and protect against any unauthorized copying, transmission, removal or other transfer of any Source Code outside or away from the computer on which the Source Code is provided for inspection (the "Source Code Computer" in the "Source Code Review Room"). The Producing Party shall install tools that are sufficient for viewing and searching the code produced, on the platform produced, if such tools exist and are presently used in the ordinary course of the Producing Party's business. The Receiving Party's Outside Counsel and/or experts may request that commercially available software tools for viewing and searching Source Code be installed on the secured computer, provided, however, that (a) the Receiving Party possesses an appropriate license to such software tools; (b) the Producing Party approves such software tools, the approval of which shall not be unreasonably withheld; and (c) such other software tools are reasonably necessary for the Receiving Party to perform its review of the Source Code consistent with all of the protections herein. The Receiving Party must provide the Producing Party with the CD or DVD containing such licensed software tool(s) at least twenty-one (21) days in advance of the date upon which the

16

Receiving Party wishes to have the additional software tools available for use on the Source Code Computer. The Producing Party shall provide a manifest of the contents of the stand-alone computer. This manifest, which will be supplied in both printed and electronic form, will list the name, location, and MD5 checksum of every source and executable file on the Source Code computer. The Producing Party shall not add, alter, or remove any file from the Source Code Computer without notice to the Receiving Party.

(ii)     No recordable media or recordable devices, including without limitation sound recorders, computers, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind, shall be permitted into the Source Code Review Room. However, the Producing Party shall make available a landline telephone in the Source Code Review Room. The Producing Party shall make a space available outside the Source Code Review Room in which persons reviewing "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" may utilize such devices and/or transfer their notes to a personal computer or other device. However, under no circumstances, is any portion of the source code to be recorded in notes as a way to circumvent the protections of this Protective Order.

(iii)     The Receiving Party's Outside Counsel and/or experts shall be entitled to take notes relating to the Source Code but may not copy the Source Code into the notes and may not take such notes electronically on the Source Code Computer itself or any other electronic device in the Source Code Review Room.

(iv)     The Producing Party may visually monitor, at a distance from which work product or conversation is not observed or heard, the activities of the Receiving Party's representatives during any Source Code review, but only to ensure that no unauthorized electronic records of the Source Code and no information concerning the Source Code are being created or

17

transmitted in any way. The Producing Party shall not electronically track, record, or monitor any Source Code review.

(v)　　No copies of all or any portion of the Source Code may leave the room in which the Source Code is inspected except as otherwise provided herein. Further, no other written or electronic record of the Source Code is permitted except as otherwise provided herein. The Producing Party shall make available a laser printer with commercially reasonable printing speeds for on-site printing during inspection of the Source Code. The Receiving Party may print limited portions of the Source Code only when necessary to prepare court filings or pleadings or other papers (including a testifying expert's expert report). Any printed portion that consists of more than twenty (20) pages of a continuous block of Source Code shall be presumed to be excessive, and the burden shall be on the Receiving Party to demonstrate the need for such a printed copy. The Receiving Party may print out no more than 200 pages total (for each Party), subject to further agreement between the Parties or order by the Court. The Receiving Party shall not print Source Code in order to review blocks of Source Code elsewhere in the first instance, i.e., as an alternative to reviewing that Source Code electronically on the Source Code Computer, as the Parties acknowledge and agree that the purpose of the protections herein would be frustrated by printing portions of code for review and analysis elsewhere, and that printing is permitted only when necessary to prepare court filings or pleadings or other papers (including a testifying expert's expert report). Upon printing any such portions of Source Code, the printed pages shall be collected by the Producing Party. The Producing Party shall Bates number, copy, and label "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" any pages printed by the Receiving Party. Within five (5) business days, the Producing Party shall either (i) provide one copy set of such pages to the Receiving Party or (ii) inform the Requesting Party that

18

it objects that the printed portions exceed the presumptive page limits established in this paragraph and/or not done for a permitted purpose. If, after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the objection, the Receiving Party shall be entitled to seek a Court resolution of whether the printed Source Code in question was printed for a permitted purpose or whether good cause exists for exceeding the presumptive page limits established in this paragraph. The burden shall be on the Receiving Party to demonstrate good cause for exceeding the presumptive page limits established in this paragraph. The printed pages shall constitute part of the Source Code produced by the Producing Party in this action.

(vi)     All persons who will review a Producing Party's Source Code on behalf of a Receiving Party, including members of a Receiving Party's outside law firm, shall be identified in writing to the Producing Party at least five (5) days in advance of the first time that such person reviews such Source Code. Such identification shall be in addition to any other disclosure required under this Order. All persons viewing Source Code shall sign on each day they view Source Code a log that will include the names of persons who enter the locked room to view the Source Code and when they enter and depart. The Producing Party shall be entitled to a copy of the log upon one (1) day's advance notice to the Receiving Party.

(vii)     Unless otherwise agreed in advance by the Parties in writing, following each day on which inspection is done under this Order, the Receiving Party's Outside Counsel and/or experts shall remove all notes, documents, and all other materials from the Source Code Review Room. The Producing Party shall not be responsible for any items left in the room following each inspection session, but neither confidentiality nor any privilege shall be waived if the Receiving Party leaves any items in the room following an inspection session. Proper identification of all authorized persons shall be provided prior to any access to the secure room or

19

the computer containing Source Code.  Proper identification requires showing, at a minimum, a photo identification card sanctioned by the government of any State of the United States, by the government of the United States, or by the nation state of the authorized person's current citizenship. Access to the secure room or the Source Code Computer may be denied, at the discretion of the supplier, to any individual who fails to provide proper identification.

(viii)    Other than as provided above, the Receiving Party will not copy, remove, or otherwise transfer any Source Code from the Source Code Computer including, without limitation, copying, removing, or transferring the Source Code onto any recordable media or recordable device.  The Receiving Party will not transmit any Source Code in any way from the Producing Party's facilities or the offices of its outside counsel of record.

(ix)    The Receiving Party's outside counsel of record may make no more than three (3) additional paper copies of any portions of the Source Code received from a Producing Party pursuant to Paragraph 11(c)(v), not including copies attached to court filings, expert reports, or used at depositions, and shall maintain a log of all paper copies of the Source Code.  The log shall include the names of the reviewers and/or recipients of paper copies and locations where the paper copies are stored.  Upon five (5) day's advance notice to the Receiving Party by the Producing Party, the Receiving Party shall provide a copy of this log to the Producing Party.

(x)    The Receiving Party's outside counsel of record and any person receiving a copy of any Source Code shall maintain and store any paper copies of the Source Code at their offices in a manner that prevents duplication of or unauthorized access to the Source Code, including, without limitation, storing the Source Code in a locked room or cabinet at all times when it is not in use.  No more than a total of ten (10) individuals identified by the Receiving Party

shall have access to the printed portions of Source Code (except insofar as such code appears in any court filing or expert report).

(xi) For depositions, prior to each noticed deposition in which a Party intends to use Source Code, the Parties shall meet-and-confer to discuss a mutually agreeable approach to utilizing Source Code at such noticed deposition.

(xii) Except as provided in this sub-paragraph, absent express written permission from the Producing Party, the Receiving Party may not create electronic images, or any other images, or make electronic copies, of the Source Code from any paper copy of Source Code for use in any manner (including by way of example only, the Receiving Party may not scan the Source Code to a PDF or photograph the code). Images or copies of Source Code shall not be included in correspondence between the Parties (references to production numbers shall be used instead). To the extent a Party wishes to use Source Code in Court filings, the Parties must meet-and-confer and agree on the scope of such use and means of transmitting to the Court before any Source Code can be included in a Court filing.

(xiii) If a Producing Party agrees to produce an electronic copy of all or any portion of its Source Code, access to the Receiving Party's submission, communication, and/or disclosure of electronic files or other materials containing any portion of Source Code (paper or electronic) shall at all times be limited solely to individuals who are expressly authorized to view Source Code under the provisions of this Order. Where the Producing Party has provided the express written permission required under this provision for a Receiving Party to create electronic copies of Source Code, the Receiving Party shall maintain a log of all such electronic copies of any portion of Source Code in its possession or in the possession of its retained consultants, including the names of the reviewers and/or recipients of any such electronic copies, and the

21

locations and manner in which the electronic copies are stored. Additionally, any such electronic copies must be labeled "CONFIDENTIAL - ATTORNEYS' EYES ONLY - SOURCE CODE" as provided for in this Order.

12. **NOTICE OF DISCLOSURE**

(a)    Prior to disclosing any Protected Material to any person described in Paragraphs 8(b)(ii), 8(b)(iii), **Error! Reference source not found.**, 9(b)(ii), or 10(c)(ii) (referenced below as "Person"), the Party seeking to disclose such information shall provide the Producing Party with written notice that includes:

(i) the name of the Person;

(ii) an up-to-date curriculum vitae of the Person;

(iii) the present employer and title of the Person;

(iv) an identification for the last five years of all of the Person's employment and consulting relationships, including direct relationships and relationships through entities owned or controlled by the Person, including but not limited to an identification of any individual or entity with or for whom the person is employed or to whom the person provides consulting services relating to the design, development, operation, or patenting of power control mechanisms for 3G cellular systems, or relating to the acquisition of intellectual property assets relating to power control mechanisms for 3G cellular systems;

(v) an identification of all pending patent applications on which the Person is named as an inventor, in which the Person has any ownership interest, or as to which the Person has had or anticipates in the future any involvement in advising on, consulting on,

22

preparing, prosecuting, drafting, editing, amending, or otherwise affecting the scope of the claims; and

(vi) a list of the cases in which the Person has testified at deposition or trial within the last five (5) years.

Further, the Party seeking to disclose Protected Material shall provide such other information regarding the Person's professional activities reasonably requested by the Producing Party for it to evaluate whether good cause exists to object to the disclosure of Protected Material to the outside expert or consultant. During the pendency of this action, including all appeals, the Party seeking to disclose Protected Material shall immediately provide written notice of any change with respect to the Person's involvement in the design, development, operation or patenting of power control mechanisms for 3G cellular systems, or the acquisition of intellectual property assets relating to power control mechanisms for 3G cellular systems.

(b) Within fourteen (14) days of receipt of the disclosure of the Person, the Producing Party or Parties may object in writing to the Person for good cause. In the absence of an objection at the end of the fourteen (14) day period, the Person shall be deemed approved under this Protective Order. There shall be no disclosure of Protected Material to the Person prior to expiration of this fourteen (14) day period. If the Producing Party objects to disclosure to the Person within such fourteen (14) day period, the Parties shall meet and confer via telephone or in person within seven (7) days following the objection and attempt in good faith to resolve the dispute on an informal basis. If the dispute is not resolved, the Party objecting to the disclosure will have seven (7) days from the date of the meet and confer to seek relief from the Court. If relief is not sought from the Court within that time, the objection shall be deemed withdrawn. If

23

relief is sought, designated materials shall not be disclosed to the Person in question until the Court resolves the objection.

(c)     Prior to receiving any Protected Material under this Order, the Person must execute a copy of the "Agreement to Be Bound by Protective Order" (Exhibit A hereto) and serve it on all Parties.

(d)     An initial failure to object to a Person under this Paragraph 12 shall not preclude the nonobjecting Party from later objecting to continued access by that Person for good cause.  If an objection is made, the Parties shall meet and confer via telephone or in person within seven (7) days following the objection and attempt in good faith to resolve the dispute informally. If the dispute is not resolved, the Party objecting to the disclosure will have seven (7) days from the date of the meet and confer to seek relief from the Court.  The designated Person may continue to have access to information that was provided to such Person prior to the date of the objection. If a later objection is made, no further Protected Material shall be disclosed to the Person until the Court resolves the matter or the Producing Party withdraws its objection.  Notwithstanding the foregoing, if the Producing Party fails to move for a protective order within seven (7) business days after the meet and confer, further Protected Material may thereafter be provided to the Person.

13.     **CHALLENGING DESIGNATIONS OF PROTECTED MATERIAL**

(a)     A Party shall not be obligated to challenge the propriety of any designation of Discovery Material under this Order at the time the designation is made, and a failure to do so shall not preclude a subsequent challenge thereto.

(b)     Any challenge to a designation of Discovery Material under this Order shall be written, shall be served on Outside Counsel for the Producing Party, shall particularly identify the documents or information that the Receiving Party contends should be differently designated,

24

and shall state the grounds for the objection.  Thereafter, further protection of such material shall be resolved in accordance with the following procedures:

        (i)     The objecting Party shall have the burden of conferring either in person, in writing, or by telephone with the Producing Party claiming protection (as well as any other interested party) in a good faith effort to resolve the dispute.  The Producing Party shall have the burden of justifying the disputed designation;

        (ii)     Failing agreement, the Receiving Party may seek relief from the Court.  The Parties' entry into this Order shall not preclude or prejudice either Party from arguing for or against any designation, establish any presumption that a particular designation is valid, or alter the burden of proof that would otherwise apply in a dispute over discovery or disclosure of information;

        (iii)     Notwithstanding any challenge to a designation, the Discovery Material in question shall continue to be treated as designated under this Order until one of the following occurs: (a) the Party who designated the Discovery Material in question withdraws such designation in writing; or (b) the Court rules that the Discovery Material in question is not entitled to the designation.

14.    **SUBPOENAS OR COURT ORDERS**

        (a)     If at any time Protected Material is subpoenaed by any court, arbitral, administrative, or legislative body, the Party to whom the subpoena or other request is directed shall immediately give prompt written notice thereof to every Party who has produced such Discovery Material and to its counsel and shall provide each such Party with an opportunity to move for a protective order regarding the production of Protected Materials implicated by the subpoena.

(b)     Other Proceedings.  By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a subpoena or motion to disclose another party's information designated "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE" pursuant to this order shall promptly notify that party of the subpoena or motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

15.     **FILING PROTECTED MATERIAL**

All filings containing Protected Material shall be filed under seal in accordance with the Court's procedures.

16.     **INADVERTENT DISCLOSURE OF PRIVILEGED MATERIAL**

(a)     The inadvertent production by a Party of Discovery Material subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection, despite the Producing Party's reasonable efforts to prescreen such Discovery Material prior to production, will not waive the applicable privilege and/or protection if a request for return of such inadvertently produced Discovery Material is made promptly after the Producing Party learns of its inadvertent production.

(b)     Upon a request from any Producing Party who has inadvertently produced Discovery Material that it believes is privileged and/or protected, each Receiving Party shall immediately return such Protected Material or Discovery Material and all copies to the Producing Party, except for any pages containing privileged markings by the Receiving Party which shall instead be destroyed and certified as such by the Receiving Party to the Producing Party.

26

(c)     Nothing herein shall prevent the Receiving Party from preparing a record for its own use containing the date, author, addresses, and topic of the inadvertently produced Discovery Material and such other information as is reasonably necessary to identify the Discovery Material and describe its nature to the Court in any motion to compel production of the Discovery Material.

17.     **INADVERTENT FAILURE TO DESIGNATE PROPERLY**

(a)     The inadvertent failure by a Producing Party to designate Discovery Material as Protected Material with one of the designations provided for under this Order shall not waive any such designation provided that the Producing Party notifies all Receiving Parties that such Discovery Material is protected under one of the categories of this Order within fourteen (14) days of the Producing Party learning of the inadvertent failure to designate. The Producing Party shall reproduce the Protected Material with the correct confidentiality designation within seven (7) days upon its notification to the Receiving Parties.  Upon receiving the Protected Material with the correct confidentiality designation, the Receiving Parties shall return or securely destroy, at the Producing Party's option, all Discovery Material that was not designated properly.

(b)     A Receiving Party shall not be in breach of this Order for any use of such Discovery Material before the Receiving Party receives such notice that such Discovery Material is protected under one of the categories of this Order.  Once a Receiving Party has received notification of the correct confidentiality designation for the Protected Material with the correct confidentiality designation, the Receiving Party shall treat such Discovery Material (subject to the exception in Paragraph 17(c) below) at the appropriately designated level pursuant to the terms of this Order.

27

(c)    Notwithstanding    the    above,    a    subsequent    designation    of "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" shall apply on a going forward basis and shall not disqualify anyone who reviewed "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" materials while the materials were not marked "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" from engaging in the activities set forth in Paragraph 6(b).

18.    **INADVERTENT DISCLOSURE NOT AUTHORIZED BY ORDER**

(a)    In the event of a disclosure of any Discovery Material pursuant to this Order to any person or persons not authorized to receive such disclosure under this Protective Order, the Party responsible for having made such disclosure, and each Party with knowledge thereof, shall immediately notify Outside Counsel for the Producing Party whose Discovery Material has been disclosed and provide to such counsel all known relevant information concerning the nature and circumstances of the disclosure.  The responsible disclosing Party shall also promptly take all reasonable measures to retrieve the improperly disclosed Discovery Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made

(b)    Unauthorized or inadvertent disclosure does not change the status of Discovery Material or waive the right to hold the disclosed document or information as Protected.

19.    **FINAL DISPOSITION**

(a)    Not later than ninety (90) days after the Final Disposition of this case, each Party shall return all Discovery Material of a Producing Party to the respective Outside Counsel of the Producing Party or destroy such Material, at the option of the Producing Party.  For purposes

28

of this Order, "Final Disposition" occurs after an order, mandate, or dismissal finally terminating the above-captioned action with prejudice, including all appeals.

        (b)    All Parties that have received any such Discovery Material shall certify in writing that all such materials have been returned to the respective Outside Counsel of the Producing Party or destroyed. Notwithstanding the provisions for return of Discovery Material, Outside Counsel may retain one set of pleadings, transcripts, written discovery, correspondence and attorney and consultant work product (but not document productions) for archival purposes, but must return or destroy any pleadings, correspondence, and consultant work product that contain Source Code.

## 20.   <u>DISCOVERY FROM EXPERTS OR CONSULTANTS</u>

        (a)    Testifying experts shall not be subject to discovery with respect to any draft of his or her report(s) in this case. Draft reports, notes, or outlines for draft reports developed and drafted by the testifying expert and/or his or her staff are also exempt from discovery.

        (b)    No discovery can be taken from any non-testifying expert except to the extent that such non-testifying expert has provided information, opinions, or other materials to a testifying expert relied upon by that testifying expert in forming his or her final report(s), trial, and/or deposition testimony or any opinion in this case or as otherwise allowed pursuant to the Federal Rules of Civil Procedure.

        (c)    Materials, communications, and other information exempt from discovery under the foregoing Paragraphs 20(a)-(b) shall be treated as attorney work product for the purposes of this case and Protective Order.

## 21.   <u>MISCELLANEOUS</u>

(a) <u>Right to Further Relief</u>.  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.  By stipulating to this Order, the Parties do not waive the right to argue that certain material may require additional or different confidentiality protections than those set forth herein.

(b) <u>Termination of Matter and Retention of Jurisdiction</u>.  The Parties agree that the terms of this Protective Order shall survive and remain in effect after the Final Determination of the above-captioned matter.  The Court shall retain jurisdiction after Final Determination of this matter to hear and resolve any disputes arising out of this Protective Order.

(c) <u>Successors</u>.  This Order shall be binding upon the Parties hereto, their attorneys, and their successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, retained consultants and experts, and any persons or organizations over which they have direct control.

(d) <u>Right to Assert Other Objections</u>. By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item.  Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.  This Order shall not constitute a waiver of the right of any Party to claim in this action or otherwise that any Discovery Material, or any portion thereof, is privileged or otherwise non-discoverable, or is not admissible in evidence in this action or any other proceeding.

(e) <u>Burdens of Proof</u>.  Notwithstanding anything to the contrary above, nothing in this Protective Order shall be construed to change the burdens of proof or legal standards applicable in disputes regarding whether particular Discovery Material is confidential, which level

of confidentiality is appropriate, whether disclosure should be restricted, and if so, what restrictions should apply.

   (f) <u>Modification by Court</u>.  This Order is subject to further court order based upon public policy or other considerations, and the Court may modify this Order *sua sponte* in the interests of justice. The United States District Court for Delaware is responsible for the interpretation and enforcement of this Order.  All disputes concerning Protected Material, however designated, produced under the protection of this Order shall be resolved by the United States District Court for the Delaware.

   (g) <u>Discovery Rules Remain Unchanged</u>.  Nothing herein shall alter or change in any way the discovery provisions of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for Delaware, or the Court's own orders.  Identification of any individual pursuant to this Protective Order does not make that individual available for deposition or any other form of discovery outside of the restrictions and procedures of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for Delaware, or the Court's own orders.

AGREED AND STIPULATED TO:

Dated: January 13, 2023

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Respectfully submitted,

DLA PIPER LLP (US)

/s/ Brian A. Biggs
Brian A. Biggs (DE Bar No. 5591)
1201 North Market Street, Suite 2100
Wilmington, DE 19801-1147
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
brian.biggs@us.dlapiper.com

*Attorneys for Defendant Apple Inc.*

31

*Attorneys for Plaintiff TOT Power Control, S.L.*

DLA PIPER LLP (US)

/s/ Brian A. Biggs
Brian A. Biggs (DE Bar No. 5591)
Erin E. Larson (DE Bar No 6616)
1201 North Market Street, Suite 2100
Wilmington, DE 19801-1147
Telephone: (302) 468 - 5700
Facsimile: (302) 394 - 2341
brian.biggs@us.dlapiper.com
erin.larson@us.dlapiper.com

*Attorneys for Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc.*

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/   Adam W. Poff
Adam W. Poff (No. 3990)
Samantha G. Wilson (No. 5816)
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
swilson@ycst.com

*Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

SO ORDERED this 17th day of January 2023.

The Honorable Maryellen Noreika
United States District Judge

32

## EXHIBIT A

I, _____, acknowledge and declare that I have received a copy of the Protective Order ("Order") in *TOT Power Control, S.L. v. Apple Inc.*, United States District Court, District of Delaware, Civil Action No. 21-1302-MN, *TOT Power Control, S.L. v. LG Electronics, Inc. et al.*, United States District Court, District of Delaware, Civil Action No. 21-1304-MN; and *TOT Power Control, S.L. v. Samsung Electronics Co., Ltd. et al.*, United States District Court, District of Delaware, Civil Action No. 21-1305-MN. Having read and understood the terms of the Order, I agree to be bound by the terms of the Order and consent to the jurisdiction of said Court for the purpose of any proceeding to enforce the terms of the Order.

Name of individual: _____

Present occupation/job description: _____

_____

_____

Name of Company or Firm: _____

Address: _____

Dated: _____

_____

[Signature]

# EXHIBIT H

Case 1:22-cv-01377-MN-JLH   Document 109-1   Filed 05/26/23   Page 193 of 239 PageID #:
8266
Case 8:08-cv-01596-SCB-MAP   Document 17   Filed 01/26/2009   Page 1 of 15
Case 8:08-cv-01596-᠊᠊ᎁᏴ-MAP   Document 16   Filed 01/᠊᠊᠊Ꮖ/2009   Page 1 of 13

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| **GKWF, INC.,** <br> **D/B/A CON-SERV MANUFACTURING,** <br> **a Florida corporation,** | / <br> / <br> / |
| | / |
| **Plaintiff,** | / |
| | / |
| **vs.** | / **Case No.: 8:08-cv-01596-SCB-MAP** |
| | / |
| **AQUACHEM, INC.,** <br> **a Florida corporation,** <br> **and ROBERT W. KOO,** <br> **an individual,** | / <br> / <br> / <br> / |
| | / |
| **Defendants.** | / |
| | / |

## STIPULATED CONFIDENTIALITY ORDER
## BETWEEN PLAINTIFF AND DEFENDANTS

Plaintiff, GKWF, Inc., and Defendants, AquaChem, Inc. and Robert W. Koo ("the

Parties") seek to take depositions and to obtain documents of other parties hereto. The

Parties agree and stipulate that any depositions of any current or former employee or

representative of any Party, and any documents produced herein, may contain or disclose

confidential commercial information and/or trade secrets of the disclosing Party

(hereinafter, "Confidential Information"), within the meaning of Federal Rules of Civil

Procedure 26, 30, 34, and 45 and the laws of the State of Florida.

The Parties acknowledge and agree that the Party, whose Confidential

Information is disclosed in any depositions and/or produced in documents, may designate

such documents, materials, testimony or information as Confidential Information. For

the purposes of this Confidentiality Order, the designation of any documents, materials,

Case 1:22-cv-01377-MN-JLH   Document 109-1   Filed 05/26/23   Page 194 of 239 PageID #: 8267

Case 8:08-cv-01596-SCB-MAP     Document 17     Filed 01/26/2009     Page 2 of 15
Case 8:08-cv-01596-⎵⎵B-MAP     Document 16     Filed 01/21/2009     Page 2 of 13

testimony or information as Confidential Information shall be sufficient to subject such materials to the provisions of this Confidentiality Order.

The Parties further acknowledge and agree that certain Confidential Information is information that is highly sensitive commercial or competitive information to officers, employees, or representatives of the requesting Party, such that disclosure would harm the designating Party or its customers in the marketplace. The Parties may designate such sensitive Confidential Information as "Confidential Information -- For Attorneys' Eyes Only." For the purposes of this Confidentiality Order, the designation of any documents, materials, testimony or information as "Confidential Information – For Attorneys' Eyes Only" shall be sufficient to subject such materials to the provisions of this Confidentiality Order.

To the extent a Party asserts that the disclosure of certain Confidential Information could grant the receiving party a competitive advantage in certain on-going patent prosecutions related to the patent-in-suit, the party disclosing such Confidential Information may designate such Confidential Information as "Confidential Information -- Prosecution Bar." For the purposes of this Confidentiality Order, the designation of any documents, materials, testimony, or information as "Confidential Information -- Prosecution Bar" shall be sufficient to subject such materials to the provisions of this Confidentiality Order.

1.      This Confidentiality Order covers: (a) all testimony (including, without limitation, all transcripts, tapes and recordings thereof) designated as Confidential Information or "Confidential Information -- For Attorneys' Eyes Only" or "Confidential

Case 1:22-cv-01377-MN-JLH   Document 109-1   Filed 05/26/23   Page 195 of 239 PageID #: 8268
Case 8:08-cv-01596-SCB-MAP   Document 17   Filed 01/26/2009   Page 3 of 15
Case 8:08-cv-01596-SCB-MAP   Document 16   Filed 01/26/2009   Page 3 of 13

Information -- Prosecution Bar"; (b) all documents designated as "Confidential Information" or "Confidential Information -- For Attorneys' Eyes Only" or "Confidential Information -- Prosecution Bar"; and (c) all other materials, testimony or information designated as Confidential Information or "Confidential Information -- For Attorneys' Eyes Only" or "Confidential Information -- Prosecution Bar". Except as specified below, references in this Confidentiality Order to Confidential Information shall include any information designated as "Confidential Information -- For Attorneys' Eyes Only" and "Confidential Information -- Prosecution Bar", and all protection and procedures provided to or for Confidential Information shall apply to information designated as "Confidential Information -- For Attorneys' Eyes Only" and "Confidential Information -- Prosecution Bar".

2.      The fact that information or material has been designated Confidential Information or "Confidential Information – For Attorneys' Eyes Only" is not determinative of whether such information is, in fact, entitled to be deemed as such. Should any Party or Non-Party object to the protection provided by this Confidentiality Order to any testimony, documents, materials and other information designated as Confidential Information or "Confidential Information -- For Attorneys' Eyes Only", that Party shall request in writing that the producing party downgrade or eliminate the designation on any information or material in question. The parties or persons must then negotiate in good faith regarding any disputes over the proper designation of such material before presenting the dispute to the Court. Should the dispute not be resolved following good faith negotiation, the receiving party may file a motion with the Court

3

Case 1:22-cv-01377-MN-JLH   Document 109-1   Filed 05/26/23   Page 196 of 239 PageID #: 8269

Case 8:08-cv-01596-SCB-MAP      Document 17      Filed 01/26/2009     Page 4 of 15
Case 8:08-cv-01596-___B-MAP     Document 16      Filed 01/__/2009     Page 4 of 13

seeking downgrade and/or elimination of the designation on the material at issue, stating the basis for its objection. The burden of proving that the challenged material has been properly designated shall be on the party or person who made the original designation.

      3.      The fact that a party wishes to designate information or material as "Confidential Information – Prosecution Bar" is not determinative of whether such information is, in fact, entitled to be deemed as such. Should any Party or Non-Party seek to invoke the protection provided by this Confidentiality Order to any testimony, documents, materials and other information designated as "Confidential Information -- Prosecution Bar", that Party shall request in writing that the receiving party acquiesce to the designation on any information or material in question. The parties or persons must then negotiate in good faith regarding any disputes over the proper designation of such material before presenting the dispute to the Court. Should the dispute not be resolved following good faith negotiation, the designating party may file a motion with the Court seeking invoke the designation on the material at issue, stating the basis for the Prosecution Bar protection. During the pendency of the motion, the parties will proceed as if the Prosecution Bar protection is in effect pursuant to paragraph 10 of this Order until the Court determines otherwise. The burden of proving that the material has been properly designated shall be on the party or person who seek to make the designation.

      4.      Any less restrictive means than the provisions of this Order will not adequately protect the designated Confidential Information. Such Confidential Information shall only be used by the Parties and the undersigned pursuant to and consistent with the terms of this Confidentiality Order.

4

Case 1:22-cv-01377-MN-JLH   Document 109-1   Filed 05/26/23   Page 197 of 239 PageID #: 8270

Case 8:08-cv-01596-SCB-MAP    Document 17    Filed 01/26/2009    Page 5 of 15
Case 8:08-cv-01596-___B-MAP    Document 16    Filed 01/__/2009    Page 5 of 13

5.      All deposition transcripts containing Confidential Information shall contain the following notation:

> This deposition contains Confidential Information [or Confidential Information -- For Attorneys' Eyes Only or Confidential Information -- Prosecution Bar] within the meaning of the Confidentiality Order of the United States District Court for the Middle District of Florida dated _____ and previously entered in this action.

6.      Any party seeking to file Confidential Information, "Confidential Information – For Attorneys' Eyes Only," or "Confidential Information -- Prosecution Bar" must first obtain Court approval by filing a motion for leave to file such information under seal.    This motion will generally describe the Confidential Information, "Confidential Information – For Attorneys' Eyes Only," or "Confidential Information -- Prosecution Bar" and set forth the necessity for its receipt under seal.  Only after the Court rules that such information may be received may the Confidential Information, "Confidential Information – For Attorneys' Eyes Only," or "Confidential Information -- Prosecution Bar" be filed.  Prior to bringing a motion for leave to file documents under seal, the parties shall confer in an effort to minimize the number of requests for in camera filings.

7.      If any party is permitted to include Confidential Information in any documents filed with the Court, such documents shall be filed under seal in a container bearing the caption of the case, the identification of the documents, and the name of the party filing the sealed items.  The container shall state:

> This envelope (or container) is sealed pursuant to Order of the Court and contains confidential information and is not to be opened or the contents thereof to be

5

Case 1:22-cv-01377-MN-JLH   Document 109-1   Filed 05/26/23   Page 198 of 239 PageID #: 8271
Case 8:08-cv-01596-SCB-MAP      Document 17      Filed 01/26/2009    Page 6 of 15
Case 8:08-cv-01596-SCB-MAP      Document 16      Filed 01/21/2009    Page 6 of 13

displayed or revealed except to counsel of record in this action or by court order or pursuant to stipulation of the disclosing party or parties to these actions.

The envelope or container shall not be opened without further order of the Court except by qualified persons, who shall return such envelope or container to the Clerk of the Court appropriately sealed and endorsed as herein above provided, or pursuant to stipulation of the disclosing party.

8.   All material designated as Confidential Information shall be retained by the receiving counsel and shall not be disclosed to or used by any Party or person other than:

a.   The Court and its authorized staff;

b.   The attorneys for the Parties who have <u>executed</u> this Order;

c.   Members of the legal, paralegal, secretarial or clerical staff of the firms of the counsel identified in paragraph 8(b) above, who are directly involved in the above captioned litigation and whose knowledge is deemed by receiving counsel to be essential to the preparation of the Party's case, and who shall be informed of and agree to be bound by this Confidentiality Order;

d.   Court reporters and their respective staff who are directly involved in this litigation, except as otherwise provided in this Confidentiality Order, who shall be informed of and agree to be bound by this Confidentiality Order;

6

Case 1:22-cv-01377-MN-JLH   Document 109-1   Filed 05/26/23   Page 199 of 239 PageID #: 8272
Case 8:08-cv-01596-SCB-MAP   Document 17   Filed 01/26/2009   Page 7 of 15
Case 8:08-cv-01596-ᴄᴄB-MAP   Document 16   Filed 01/2 1/2009   Page 7 of 13

  e. A Party or Employee of Party directly involved in the prosecution or defense of this proceeding to the extent access to the Confidential Information is necessary to their role in this proceeding;

  f. Consultants and experts retained by the Parties to this litigation, provided they have executed an affidavit of confidentiality in the form attached hereto as Appendix "A", and provided the Confidential Information is used by them solely for the purposes of this litigation; and,

  g. Authors, addressees, recipients, and persons copied on the Confidential Information as shown thereon or otherwise known to have received it in the normal course of business.

 9. All material designated as Confidential Information -- For Attorneys' Eyes Only or "Confidential Information -- Prosecution Bar" shall be retained by the receiving counsel and <u>shall not be disclosed to the Party, including any general counsel or in-house counsel of the Party</u>, or disclosed to or used by anyone other than:

  a. The Court and its authorized staff;

  b. The attorneys for the Parties who have <u>executed</u> this Order;

  c. Members of the legal, paralegal, secretarial or clerical staff of the firms of the counsel identified in paragraph 9(b) above, who are directly involved in the above captioned litigation and whose knowledge is deemed by receiving counsel to be essential to the

Case 1:22-cv-01377-MN-JLH   Document 109-1   Filed 05/26/23   Page 200 of 239 PageID #: 8273
Case 8:08-cv-01596-SCB-MAP      Document 17      Filed 01/26/2009    Page 8 of 15
Case 8:08-cv-01596-ᏟᏟB-MAP      Document 16      Filed 01/∠1/2009    Page 8 of 13

preparation of the Party's case, and who shall be informed of and agree to be bound by this Confidentiality Order;

d.   Court reporters and their respective staff who are directly involved in this litigation, except as otherwise provided in this Confidentiality Order, who shall be informed of and agree to be bound by this Confidentiality Order;

e.   Consultants and experts retained by the Parties to this litigation, provided they have executed an affidavit of confidentiality in the form attached hereto as Appendix "A", and provided the Confidential Information is used by them solely for the purposes of this litigation; and,

f.   Authors, addressees, recipients, and persons copied on the Confidential Information as shown thereon or otherwise known to have received it in the normal course of business.

10.   In addition to the disclosure limitations provided above, certain material shall not be disclosed to any person, including attorneys for the Parties, who participates in preparing and/or prosecuting patent applications relating to the patent-in-suit. More specifically:

a.   Any person who accesses information that has been properly designated "Confidential Information – Prosecution Bar" in this litigation may not thereafter participate in preparing and/or prosecuting pending or future patent applications relating to the

Case 1:22-cv-01377-MN-JLH Document 109-1 Filed 05/26/23 Page 201 of 239 PageID #: 8274

Case 8:08-cv-01596-SCB-MAP Document 17 Filed 01/26/2009 Page 9 of 15
Case 8:08-cv-01596-SCB-MAP Document 16 Filed 01/26/2009 Page 9 of 13

patent-in-suit for one (1) year after termination of this litigation, including appeals.

    b.    Nothing in this Stipulated Confidentiality Order shall prohibit or restrict persons who participate in prosecuting patent applications related to the patent-in-suit from viewing Confidential Information.

11.    This Confidentiality Order shall not prevent a Party from attempting to examine as witnesses, at depositions and at trial, persons who are not afforded access to Confidential Information, as identified herein, so long as the examination concerns Confidential Information of which such witnesses have prior knowledge, as demonstrated by prior foundation testimony during the deposition or trial. The parties shall work together to prevent any disclosure of a Party's information designated as "Confidential Information -- For Attorneys' Eyes Only" or "Confidential Information -- Prosecution Bar" to any employees or corporate representative of the adverse party during any examination of any witness.

12.    Confidential Information received, learned or disclosed during this litigation shall not be used by any recipient thereof for any purpose other than for purposes of this action, and then only pursuant to the terms of this Confidentiality Order. Confidential Information shall not be used by a Party or recipient for any business or competitive purposes or function whatsoever.

13.    No copies or reproductions of any kind of Confidential Information shall be made except by or on behalf of the undersigned attorneys for the named parties.

Case 1:22-cv-01377-MN-JLH   Document 109-1   Filed 05/26/23   Page 202 of 239 PageID #:
8275
Case 8:08-cv-01596-SCB-MAP   Document 17   Filed 01/26/2009   Page 10 of 15
Case 8:08-cv-01596-С_СB-MAP   Document 16   Filed 01/∠₁/2009   Page 10 of 13

14.     This Confidentiality Order is intended to provide a mechanism for the handling and protection of Confidential Information produced in this action. It is not intended to resolve issues relating to the scope of permissible discovery. The Parties reserve the right to object to any disclosure of any information covered hereby or to any production of any documents or disclosure of information on any ground that each may deem appropriate, including objections based on privileges, relevance, unnecessary, trade secrets, burdensome, or any other reason.

15.     This Confidentiality Order is intended to regulate the handling of Confidential Information during the pretrial, trial, any appellate period of this litigation, through the final termination of this action and the return of all Confidential Information to the Party producing or disclosing the information. Subject to the provisions of paragraph 18 this Confidentiality Order shall remain in full force and effect until modified, superseded or terminated on the record by order of this Court or by express, written action of all parties hereto.

16.     Without waiver of any deadlines for exhibit disclosures or record designations of any scheduling orders or Rules, each of the Parties shall notify all counsel of record, at least two (2) weeks in advance of any trial or appellate use of Confidential Information during the trial or appeal of this matter, identifying each particular item of Confidential Information that will be used. Nothing herein shall prevent any Party from seeking a further order of this Court to protect its interests at trial or otherwise.

17.     Within 45 days of final termination of this matter, including all appellate proceedings, each Party shall assemble and return to counsel for the producing or

Case 1:22-cv-01377-MN-JLH   Document 109-1   Filed 05/26/23   Page 203 of 239 PageID #:
8276
Case 8:08-cv-01596-SCB-MAP   Document 17   Filed 01/26/2009   Page 11 of 15
Case 8:08-cv-01596-_ _B-MAP   Document 16   Filed 01/2. ./2009   Page 11 of 13

disclosing Party all Confidential Information, including, without limitation, all transcripts containing Confidential Information, all copies of those transcripts, all copies of portions of those transcripts, all portions of other transcripts disclosing Confidential Information, all documents designated as Confidential Information or "Confidential Information -- For Attorneys' Eyes Only" or "Confidential Information -- Prosecution Bar" all copies of such documents, and all notes, renderings, compilations, recordings, lists, microfilm, summaries, or other references to any Confidential Information.  This return of this material shall be accompanied by a letter certifying the return of all Confidential Information of the producing or disclosing Party, except as allowed below.  Attorneys for the receiving Party may retain one copy of all documents and other material produced in the case and their work product which refers to or mentions Confidential Information.

18.     The restrictions set forth in any of the preceding paragraphs shall not apply to any information, which the receiving Party can prove:

> a.     At the time of the disclosure, was in the public domain; or
>
> b.     After disclosure, becomes a part of the public domain through no act, or failure to act, on behalf of the receiving Party, its representatives, counsel, witnesses, or technical experts; or
>
> c.     Was received by the receiving Party from a Party not signatory to this Confidentiality Order, without any obligation of confidentiality and without any fault of the receiving Party.

If (a), (b) or (c) above are asserted, the burden will be upon the Party asserting the information is "Confidential" to prove the confidential nature of the information.

Case 1:22-cv-01377-MN-JLH Document 109-1 Filed 05/26/23 Page 204 of 239 PageID #: 8277
Case 8:08-cv-01596-SCB-MAP Document 17 Filed 01/26/2009 Page 12 of 15
Case 8:08-cv-01596-␣␣B-MAP Document 16 Filed 01/␣␣/2009 Page 12 of 13

19. All documents designated as Confidential Information or "Confidential Information -- For Attorneys' Eyes Only" or "Confidential Information -- Prosecution Bar" shall be appropriately numbered for identification and future reference including, but not limited to, the return at the conclusion of this litigation.

20. This Confidentiality Order may be signed in several counterparts. All counterparts shall constitute an integral part of the Confidentiality Order.

21. Violations of the provisions of this Confidentiality Order may subject the offender to sanctions.

22. This Order shall be binding upon the Parties in the above-styled cause, the attorneys for each Party and upon any recipient of confidential documents and upon any successor, executor, personal representative, administrator, heir, legal representative, assign, subsidiaries, division, employee, agent, independent contractor, or other person or legal entity over which any Party or attorney or recipient of confidential documents may have control.

23. The terms of the foregoing Confidentiality Order are hereby acknowledged and agreed to by the Parties to this action by and through their undersigned counsel of record.


/s/Jackson O. Brownlee
Jackson O. Brownlee
Florida Bar No.: 0009581
Robert L. Wolter
Florida Bar No.: 0906344
Beusse, Wolter, Sanks, Mora & Maire, P.A.
390 North Orange Avenue, Suite 2500

/s/ Stefan V. Stein
Stefan V. Stein
Florida Bar No.: 300527
Michael J. Colitz, III
Florida Bar No.: 164348
HOLLAND & KNIGHT LLP
100 N. Tampa St., Suite 4100
Tampa, Florida 33602-3644


12

Case 1:22-cv-01377-MN-JLH   Document 109-1   Filed 05/26/23   Page 205 of 239 PageID #:
8278
Case 8:08-cv-01596-SCB-MAP   Document 17   Filed 01/26/2009   Page 13 of 15
Case 8:08-cv-01596-ᴗᴗB-MAP   Document 16   Filed 01/ᴢ ᵢ/2009   Page 13 of 13

Orlando, Florida 32801
Tel: (407) 926-7700
Fax: (407) 926-7720
Email: jbrownlee@iplawfl.com
      rwolter@iplawfl.com

Tel:  (813) 227-6578
Fax:  (813) 229-0134
Email: stefan.stein@hklaw.com
      michael.colitz@hklaw.com

The foregoing Confidentiality Order is hereby DONE AND ORDERED in
Chambers in Tampa, Hillsborough County, Florida, this 27 day of Jan , 2009.

_____

**UNITED STATES MAGISTRATE JUDGE**

13

## APPENDIX A

The   undersigned,_____, undertakes, covenants, agrees and states as follows:

    1.    My address is:

    2.    My present employer is:

    3.    My present occupation or job description is:

    4.    I have carefully read and understand the provisions of the Confidentiality Order in the case of <u>GKWF, Inc. v. AquaChem, Inc. and Robert W. Koo.</u>, Case no: 8:08-cv-01596-SCB-MAP, and signed by the Honorable _____ , and dated _____, and I agree to be bound by all of the provisions of this Confidentiality Order.

    5.    I will hold in confidence and not disclose to anyone not qualified under the Confidentiality Order, any Confidential Information or any words, summaries, abstracts or indices of Confidential Information disclosed to me or of which I become aware in the course of this litigation, and will not use any Confidential Information except as permitted by the Confidentiality Order.

    6.    I will return <u>all</u> Confidential Information and summaries, abstracts and indices thereof which come into my possession, and documents or things which I have prepared relating thereto, to counsel for the Party by whom I am retained, employed or called.

7.     I consent to the exercise of personal jurisdiction by the United States District Court for the Middle District of Florida in connection with my obligations pursuant to the Confidentiality Order, and all matters associated therewith.

Dated this __ day of _____, 2009. _____

                                       Signature

# 5928499_v2

15

# EXHIBIT I

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

Wi-LAN, Inc., Wi-LAN USA, Inc., and Wi-LAN Labs, Inc.,

      **Plaintiffs,**

**v.**

LG Electronics, Inc., LG Electronics U.S.A., Inc., and LG Electronics Mobilecomm U.S.A., Inc.,

      **Defendants.**

Civil Action No. 3:17-cv-358-BEN-MDD

**STIPULATED SUPPLEMENTAL**
**PROTECTIVE ORDER BETWEEN NON-PARTY QUALCOMM**
**INCORPORATED, PLAINTIFFS, AND ALL DEFENDANTS**

WHEREAS, Plaintiffs Wi-LAN, Inc., Wi-LAN USA, Inc., and Wi-LAN Labs, Inc.

("Plaintiffs"), and Defendants LG Electronics, Inc., LG Electronics U.S.A., Inc., and LG

Electronics Mobilecomm U.S.A., Inc. (collectively, "Defendants") (together, hereinafter

referred to as "the Parties"), and Qualcomm Incorporated ("QUALCOMM"), a non-party to this

action, may produce confidential source code, schematics, and other documents in this action that

include or incorporate CONFIDENTIAL INFORMATION belonging to QUALCOMM

("QUALCOMM Confidential Information");

WHEREAS the Parties and Non-Party QUALCOMM have agreed to additional provisions to protect against misuse or disclosure of such QUALCOMM Confidential Information;

WHEREFORE, IT IS HEREBY ORDERED that source code, schematics, or documents that incorporate QUALCOMM Confidential Information produced after entry of this Stipulated Supplemental Protective Order in connection with the above-captioned matter that are designated as "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" and "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE" shall be subject to the following restrictions:

**A.    Definitions**

1.    "QUALCOMM MATERIAL": Confidential information (regardless of how generated, stored, or maintained) or tangible things that include or incorporate Non-Party QUALCOMM Confidential Information, that Non-Party QUALCOMM (i) would not normally reveal to third parties except in confidence, or has undertaken with others to maintain in confidence, (ii) believes in good faith is significantly sensitive, or (iii) protected by a right to privacy under federal or state law, or any other applicable privilege or right related to confidentiality or privacy.  QUALCOMM MATERIAL includes all information, documents, source code, schematics, testimony, and things produced, served, or otherwise provided in this action after entry of this Stipulated Supplemental Protective Order by any Party or by Non-Party QUALCOMM, that include or incorporate QUALCOMM Confidential Information.

2.    "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" material: information, documents, and things that include or incorporate QUALCOMM MATERIAL.

3.    "Source Code":  includes human-readable programming language text that defines software, firmware, (collectively, "software Source Code") and integrated circuits ("hardware

2

Source Code").  Text files containing Source Code shall hereinafter be referred to as "Source Code files."  Software Source Code files shall include, but are not limited to, files containing Source Code in "C," "C++," BREW, Java ME, J2ME, assembler, digital signal processor (DSP) programming languages, and other human readable text programming languages.  Software Source Code files further include ".include files," "make" files, "link" files, and other human-readable text files used in the generation and/or building of software directly executed on a microprocessor, micro-controller, or DSP.  Hardware Source Code files include, but are not limited to, files containing Source Code in VHDL, Verilog, and other Hardware Description Language ("HDL") formats, including but not limited to, Register Transfer Level ("RTL") descriptions.

4.      "Chip-Level Schematics":  means symbolic representations of analog electric or electronic circuits from which the physical structure of a chip is directly derived.

5.      "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE" Material:  QUALCOMM MATERIAL that includes Source Code and Chip-Level Schematics that constitute proprietary technical or commercially sensitive competitive information that Non-Party QUALCOMM maintains as highly confidential in its business, the disclosure of which is likely to cause harm to the competitive position of Non-Party QUALCOMM.  This includes Source Code and Chip-Level Schematics in the Producing Party's possession, custody, or control, and made available for inspection by the Producing Party.

6.      "Designated QUALCOMM Material":  material that is designated "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" or "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE" under this Supplemental Protective Order.

7.      "Designated Source Code Material":  material that is designated "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE" under this Supplemental Protective Order.

8.      "Personnel Retained by a Receiving Party in this Action" means any consultants, experts, or outside counsel (including their support staff) that have been and continue to be retained by a Receiving Party in this action.  For the sake of clarity, any person who was retained by a Receiving Party in this action will no longer fall under this definition if that person ceases to be retained by a Receiving Party in this action.

9.      "Party" means any Party to the above-captioned action, including all of its officers, directors, employees, consultants, retained experts, and all support staff thereof.

10.      "Producing Party" means a party or non-party that discloses or produces Designated QUALCOMM Material in the above-captioned action.

11.      "Receiving Party" a Party that receives Designated QUALCOMM Material from a Producing Party in the above-captioned action.

12.      "Authorized Reviewer(s)" shall mean persons authorized to review "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" and "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE" material in accordance with this Supplemental Protective Order.

13.      "Counsel of Record":  (i) Outside Counsel who appears on the pleadings, or has entered an appearance in this action, as counsel for a Party, and (ii) partners, principals, counsel, associates, employees, and contract attorneys of such Outside Counsel to whom it is reasonably necessary to disclose the information for this litigation, including supporting personnel employed

by the attorneys, such as paralegals, legal translators, legal secretaries, legal clerks and shorthand reporters.

14.     "Outside Consultant":  a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by Counsel of Record to serve as an expert witness or a litigation consultant in this action (including any necessary support personnel of such person to whom disclosure is reasonably necessary for this litigation), and who is not a current employee of a Party, of a competitor of a Party, or of Non-Party QUALCOMM, and who, at the time of retention, is not anticipated to become an employee of, or a non-litigation consultant of: 1) a Party, 2) a competitor of a Party, 3) a competitor of Non-Party QUALCOMM, or of 4) Non-Party QUALCOMM.

15.     "Professional Vendors":  persons or entities that provide litigation support services (e.g., photocopying; videotaping; translating; designing and preparing exhibits, graphics, or demonstrations; organizing, storing, retrieving data in any form or medium; etc.) and their employees and subcontractors who have been retained or directed by Counsel of Record in this action, and who are not current employees of a Party, a competitor of a Party, or of Non-Party QUALCOMM, and who, at the time of retention, are not anticipated to become employees of: 1) a Party, 2) a competitor of a Party, or 3) a competitor of Non-Party QUALCOMM. This definition includes ESI vendors, and professional jury or trial consultants retained in connection with this litigation to assist a Party, Counsel of Record, or any Outside Consultant in their work. Professional vendors do not include consultants who fall within the definition of Outside Consultant.

**B.     Scope**

16.     The protections conferred by this Supplemental Protective Order cover not only Designated QUALCOMM Material (as defined above), but also any information copied or

extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof.  Nothing herein shall alter or change in any way the discovery provisions of the Federal Rules of Civil Procedure or any applicable local rules or General Orders.  Identification of any individual pursuant to this Supplemental Protective Order does not make that individual available for deposition, or any other form of discovery outside of the restrictions and procedures of the Federal Rules of Civil Procedure or any applicable rules or General Orders.

17.     This Supplemental Protective Order shall not prevent a disclosure to which Non-Party QUALCOMM consents in writing before that disclosure takes place.

18.     This Supplemental Protective Order shall apply to all Designated QUALCOMM Material that is produced or provided for inspection in this action, including all Designated QUALCOMM Material that is in the possession, custody or control of QUALCOMM or any Party in this action, or that is otherwise relevant to this action.

## C.     Access to Designated QUALCOMM Material

19.     Access to "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" Material: Unless otherwise ordered by the Court or permitted in writing by Non-Party QUALCOMM, a Receiving Party may disclose any information, document or thing designated "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" only to:

> a.     Persons who appear on the face of Designated QUALCOMM Material as an author, addressee or recipient thereof, or persons who have been designated under FRCP 30(b)(6) to provide testimony on behalf of a Producing Party;
>
> b.     Counsel of Record;
>
> c.     Outside Consultants of the Receiving Party to whom disclosure is reasonably necessary for this litigation, and who have, after the date of this

Supplemental Protective Order, signed the "Acknowledgement And Agreement To Be Bound By Supplemental Protective Order Governing Confidential Information of Non-Party Qualcomm In This Case" attached hereto as Exhibit A, and the "Certification Of Consultant Re Supplemental Protective Order Governing Confidential Information of Non-Party Qualcomm In This Case," attached hereto as Exhibit B;

d.      Any designated arbitrator or mediator who is assigned to hear this matter, or who has been selected by the Parties, and his or her staff; who have, after the date of this Supplemental Protective Order, signed the "Acknowledgement And Agreement To Be Bound By Supplemental Protective Order Governing Confidential Information of Non-Party Qualcomm In This Case" attached hereto as Exhibit A, and the "Certification Of Consultant Re Supplemental Protective Order Governing Confidential Information of Non-Party Qualcomm In This Case," attached hereto as Exhibit B, as well as any arbitrator's or mediator's staff who have also signed Exhibits A and B;

e.      Court reporters and videographers employed in connection with this action; and

f.      Professional Vendors to whom disclosure is reasonably necessary for this action;

g.      The Court and its personnel, including the jury.

20.      Access to "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE" Material:   Unless otherwise ordered by the Court or

permitted in writing by Non-Party QUALCOMM, a Receiving Party may disclose any information, document, or thing designated "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE" only to:

a.   Persons who appear on the face of Designated QUALCOMM Material as an author, addressee or recipient thereof, or persons who have been designated under FRCP 30(b)(6) to provide testimony of behalf of a Producing Party or Qualcomm regarding the same;

b.   Counsel of Record;

c.   Outside Consultants of the Receiving Party to whom disclosure is reasonably necessary for this litigation, and who have, after the date of this Supplemental Protective Order, signed the "Acknowledgement And Agreement To Be Bound By Supplemental Protective Order Governing Confidential Information of Non-Party Qualcomm In This Case" attached hereto as Exhibit B1, and the "Certification Of Consultant Re Supplemental Protective Order Governing Confidential Information of Non-Party Qualcomm In This Case," attached hereto as Exhibit B2;

d.   Any designated arbitrator or mediator who is assigned to hear this matter, or who has been selected by the Parties, and his or her staff; who have, after the date of this Supplemental Protective Order, signed the "Acknowledgement And Agreement To Be Bound By Supplemental Protective Order Governing Confidential Information of Non-Party Qualcomm In This Case" attached hereto as Exhibit B1, and the "Certification Of Consultant Re Supplemental Protective Order Governing

8

Confidential Information of Non-Party Qualcomm In This Case," attached hereto as Exhibit B2, as well as any arbitrator's or mediator's staff who have also signed Exhibits B1 and B2, provided, however, that before such disclosure, QUALCOMM is provided notice including: (a) the individual's name and business title; (b) business address; (c) business or professions; and (d) the individual's CV.  QUALCOMM shall have five (5) business days from receipt of the notice to object in writing to such disclosure (plus three (3) extra days if notice is given other than by hand delivery, e-mail delivery or facsimile transmission).  After the expiration of the 5 business days (plus 3 days, if appropriate) period, if no objection has been asserted, then "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE" materials may be disclosed pursuant to the terms of this Supplemental Protective Order;

e.     Court reporters and videographers employed in connection with this action, subject to the provisions provided in subparagraph 30(g) herein;

f.     Professional Vendors to whom disclosure is reasonably necessary for this action, and a representative of which has signed the "Acknowledgement And Agreement To Be Bound By Supplemental Protective Order Governing Confidential Information of Non-Party Qualcomm In This Case" attached hereto as Exhibit A, subject to the following exception: Designated QUALCOMM Material shall not be disclosed to mock jurors without Non-Party QUALCOMM's express written consent; and

g.     The Court, its personnel, and the jury.

9

21.     Notwithstanding the Protective Order, unless otherwise ordered or agreed in writing by Non-Party QUALCOMM, Designated QUALCOMM Material may not be disclosed to employees of a Receiving Party, including its in-house attorneys and support staff.

22.     Notwithstanding the Protective Order, unless otherwise ordered or agreed in writing by Non-Party QUALCOMM, Designated QUALCOMM Material may not be disclosed to mock jurors.

24.     The Parties acknowledge that Designated QUALCOMM Material also may be subject to the US government export control and economic sanctions laws, including the Export Administration Regulations ("EAR", 15 CFR 730 et seq., http://www.bis.doc.gov/) administered by the Department of Commerce, Bureau of Industry and Security, and the Foreign Asset Control Regulations (31 CFR 500 et seq., http://www.treas.gov/offices/enforcement/ofac/) administered by the Department of Treasury, Office of Foreign Assets Control ("OFAC"). Receiving Parties may not directly or indirectly export, re-export, transfer or release (collectively, "Export") any Designated QUALCOMM Material to any destination, person, entity or end use prohibited or restricted under US law without prior US government authorization to the extent required by regulation.  The US government maintains embargoes and sanctions against the countries listed in Country Groups E:1/2 of the EAR (Supplement 1 to part 740), currently Cuba, Iran, Libya, North Korea, North Sudan and Syria but any amendments to these lists shall apply.

25.     Receiving Party may host "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" Material only on either 1) any system inside the firewall of a law firm representing the Receiving Party, or 2) inside the system of a professional ESI Vendor retained by Counsel of Record of the Receiving Party.  "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" Material also cannot be sent or transmitted to any person, location, or vendor outside of the United

States except to Counsel of Record and Outside Consultants designated pursuant to subparagraphs 19(c) and 20(c) above.  To the extent that any "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" Material is transmitted from or to authorized recipients outside of the Receiving Party's Outside Counsel's office, or outside of the ESI Vendor's system, the transmission shall be by hand (and encrypted if in electronic format), by a secure transport carrier (e.g., Federal Express), or by secure electronic means, such as email using an encrypted password protected container (other than Trucrypt), or download via secure FTP.  "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE" may not be transmitted by electronic means; however, this should not be understood to prohibit the electronic transmittal of testifying experts' expert reports or drafts, court filings, and trial demonstratives, thereof that may refer to QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE, subject to the limitations set forth in Section 30(g) herein, and as long as such electronic transmittal is by secure electronic means, such as email using an encrypted password protected container (other than Trucrypt), or download via secure FTP.  Court filings containing QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY and QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE may be submitted via the Court's ECF filing system subject to the limitations set forth in Section 30(g).

26.     Each person to whom Designated QUALCOMM Material may be disclosed, and who is required to sign the "Acknowledgement And Agreement To Be Bound By Supplemental Protective Order Governing Confidential Information of Non-Party Qualcomm In This Case" attached hereto as Exhibit A and, if applicable, the "Certification Of Consultant Re Supplemental Protective Order Governing Confidential Information of Non-Party Qualcomm In This Case," attached hereto as Exhibit B, shall do so, prior to the time such Designated QUALCOMM Material

is disclosed to him or her. Counsel for the Receiving Party who makes any disclosure of Designated QUALCOMM Material shall retain each original executed certificate and, upon written request, shall provide copies to counsel for Non-Party QUALCOMM at the termination of this action.

27.    Absent written permission from Non-Party QUALCOMM, persons not permitted access to Designated QUALCOMM Material under the terms of this Supplemental Protective Order shall not be present at depositions while Designated QUALCOMM Material is discussed or otherwise disclosed. Pre-trial and trial proceedings shall be conducted in a manner, subject to the supervision of the Court, to protect Designated QUALCOMM Material from disclosure to persons not authorized to have access to such Designated QUALCOMM Material. Any Party intending to disclose or discuss Designated QUALCOMM Material at pretrial or trial proceedings must give advance notice to the Producing Party to assure the implementation of the terms of this Supplemental Protective Order.

**D.    Access By Outside Consultants**

28.    **Notice.** If a Receiving Party wishes to disclose Designated QUALCOMM Material to any Outside Consultant, Receiving Party must, prior to the Outside Consultant being granted access to any Designated QUALCOMM Material, provide notice to counsel for Non-Party QUALCOMM, which notice shall include:  (a) the individual's name and business title; (b) business address; (c) business or profession; (d) the individual's CV; (e) any previous or current relationship (personal or professional) with Non-Party QUALCOMM or any of the Parties to this action; (f) a list of other cases in which the individual has testified (at trial or deposition) within the last five years; (g) a list of all companies with which the individual has consulted or by which the individual has been employed within the last four years, the dates of the consultancy or employment, a brief description of the subject matter of the consultancy or employment, and

copies of the "Acknowledgement and Agreement To Be Bound By Supplemental Protective Order Governing Confidential Information of Non-Party Qualcomm In This Case," attached as Exhibit A, and the "Certification Of Consultant Re Supplemental Protective Order Governing Confidential Information of Non-Party Qualcomm In This Case," attached hereto as Exhibit B, that have both been signed by that Outside Consultant.

29.    **Objections.**  With respect to Outside Consultants that have not been previously disclosed to Non-Party QUALCOMM, Non-Party QUALCOMM shall have five (5) business days, starting from the first business day following the date upon which Receiving Party provides the notice and all information required by paragraph 28 to the Producing Party, to object for good cause in writing to such disclosure (plus three (3) extra days if notice is given in any manner other than by hand delivery, e-mail delivery or facsimile transmission).  After the expiration of the 5 business days (plus 3-days, if appropriate) period, if no objection for good cause has been asserted by Non-Party QUALCOMM, then Designated QUALCOMM Material may be disclosed to the Outside Consultant pursuant to the terms of this Supplemental Protective Order.  Any objection by Non-Party QUALCOMM must be made for good cause, and must set forth in detail the grounds on which it is based.  Should Receiving Party disagree with the basis for the objection(s), Receiving Party must first attempt to resolve the objection(s) informally with Non-Party QUALCOMM.  If the informal efforts do not resolve the dispute within five (5) business days from the date upon which Receiving Party was first notified of any objection for good cause by Non-Party QUALCOMM, Receiving Party may file a motion requesting that the objection(s) be quashed after that five (5) day period has passed.  The Parties and Non-Party QUALCOMM agree that the Receiving Party and Non-Party QUALCOMM will jointly request an expedited briefing and hearing schedule.  Non-Party Qualcomm shall have the burden of proof by a preponderance of the

13

evidence on the issue of the sufficiency of the objection(s).  Pending a ruling by the Court upon any such objection(s), or the subsequent resolution of the objection for good cause by Receiving Party and Non-Party QUALCOMM, the discovery material shall not be disclosed to the person objected to by Non-Party QUALCOMM.

**E.     Production of QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE Material**

30.     Non-Party QUALCOMM's Source Code and Chip-Level Schematics:

a.     To the extent that a Producing Party makes Non-Party QUALCOMM's Source Code or Chip-Level Schematics available for inspection: (i) The Producing Party shall make all relevant and properly requested Non-Party QUALCOMM Source Code available electronically and in text searchable form (1) if produced by Non-Party QUALCOMM, in a separate room at a secure facility selected by Non-Party QUALCOMM or (2) if produced by Defendants, at the offices of Counsel of Record for the producing Defendant or at a secure facility approved by QUALCOMM. The Producing Party shall make the Source Code available for inspection on a stand-alone, non-networked personal computer running a reasonably current version of the Microsoft Windows operating system ("Source Code Computer").  Alternatively, solely at the option of the Producing Party, the Producing Party may make such source code available on a Source Code Computer that is networked, in a configuration deemed secure by Non-Party QUALCOMM.  The Source Code Computer shall be configured to permit review of the Source Code through a password-protected account having read-only access.  To facilitate review of the Source Code at the secure

facility, the Receiving Party may use appropriate tool software on the Source Code Computer, which shall be installed by the Producing Party, including at least one text editor like Visual Slick Edit that is capable of printing out Source Code with page and/or line numbers, a source code comparison tool like Winmerge, and at least one multi-text file text tool such as "grep." Should it be necessary, other mutually agreed upon tools may be used. Licensed copies of other mutually agreed upon tool software shall be installed on the Source Code Computer by the Producing Party and paid for by the Receiving Party.

(ii) The Producing Party shall make all relevant and properly requested Chip-Level Schematics available for inspection electronically on the Source Code Computer in a secure room at a secure facility selected by Non-Party QUALCOMM. The Producing Party shall ensure that the Source Code Computer includes software sufficient to allow a user to view such electronic Chip-Level Schematics.

b.     The Producing Party shall provide access to the Source Code Computer during the normal operating hours of the secure facility.

c.     The Source Code Computer shall be equipped to allow printing of the Source Code and Chip-Level Schematics made available for inspection by the Producing Party. Copies of Source Code and Chip-Level Schematics shall only be made on watermarked pre-Bates numbered paper, which shall be provided by the Producing Party. Under no circumstances are original printouts of the Source Code or Chip-Level Schematics to be made except

15

for directly onto the watermarked and numbered sides of the paper provided by the Producing Party.  Additionally, the Receiving Party may not print any continuous block of source code that results in more than 50 consecutive printed pages, except that Authorized Reviewer(s) may request the printing of a continuous block of more than 50 pages, which request shall not be unreasonably denied by the Producing Party.  Counsel for the Producing Party will keep the original printouts, and shall provide copies of such original printouts to counsel for the Receiving Party within seven (7) business days of (1) any request by the Receiving Party, or (2) otherwise being notified that such original printouts have been made or designated. Counsel of Record for the Receiving Party may request up to 10 copies of each original printout of Source Code or Chip-Level Schematics.  No more than 10% or 500 pages of the total Source Code (not including copies of original printouts), whichever is greater, for any software release (or in the case of hardware Source Code, for any hardware product), no more than 10% or 500 pages of Chip-Level Schematics, whichever is greater, and no continuous blocks of Source Code or Chip-Level Schematics that exceed 50 pages, may be in printed form at any one time, without the express written consent of Non-Party QUALCOMM, which shall not be unreasonably denied.  All printed Source Code and Chip-Level Schematics shall be logged by Receiving Party's Counsel of Record and/or other Personnel Retained by a Receiving Party in this action as noted in subparagraph 30(i) below.  No additional electronic copies of the Source Code or Chip-Level

16

Schematics shall be provided by the Producing Party. Hard copies of the Source Code or Chip-Level Schematics also may not be converted into an electronic document, and may not be scanned using optical character recognition ("OCR") technology. Only printouts of Source Code and Chip-Level Schematics may be made, and such printouts must include (1) directory path information and filenames from which the Source Code and Chip-Level Schematics came and (2) line numbers. The Producing Party may refuse to provide copies of Source Code and Chip-Level Schematics printouts that fail to comply with this section.

d.      Authorized Reviewer(s) in this action shall not print Source Code or Chip-Level Schematics which have not been reviewed on the Source Code Computer, or in order to review the Source Code or Chip-Level Schematics elsewhere in the first instance, i.e., as an alternative to reviewing that Source Code or Chip-Level Schematics electronically on the Source Code Computer, as the Parties and QUALCOMM acknowledge and agree that the purpose of the protections herein would be frustrated by such actions.

e.      Authorized Reviewer(s) are prohibited from bringing outside electronic devices including but not limited to laptops, floppy drives, zip drives, or other hardware and electronic devices into the secure room (such as any cellular telephones, personal digital assistants (PDAs), Blackberries, cameras, voice recorders, Dictaphones, external or portable jacks), except for medical devices, implants, or equipment reasonably necessary for any legitimate medical reason.

17

f.      If any Authorized Reviewer(s) reviewing Non-Party QUALCOMM's Source Code or Chip-Level Schematics seeks to take notes, all such notes will be taken on bound (spiral or other type of permanently bound) notebooks.  No loose paper or other paper that can be used in a printer may be brought into the secure room.

g.      A Receiving Party may make copies of excerpts of no more than 5 lines of Designated Source Code Material for inclusion in a pleading, discovery document (not including expert reports), or other Court document (including exhibits thereto) filed with the Court under seal in accordance with the Court's rules, procedures and orders, and each such pleading, discovery document, or other Court document (including exhibits thereto) filed with the Court under seal containing excerpts of Designated Source Code Material should be designated as QUALCOMM -OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE, except that the Receiving Party may request to make copies of excerpts of more than 5 lines of Designated Source Code Material for such purpose, which request shall not be unreasonably denied by QUALCOMM.  Except as approved by QUALCOMM, longer excerpts shall not be copied for use in a pleading, discovery document, or other Court document (including exhibits thereto) filed with the Court under seal, but shall be referred to by citation to production page numbers and lines.  A Receiving Party may make copies of excerpts of no more than 500 lines of Designated Source Code Material for purposes of inclusion in expert reports or demonstrative

18

exhibits, as long as such reports and demonstratives are designated QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE", except that the Receiving Party may request to make copies of more than 500 lines of Designated Source Code Material for such purpose, which request will not be unreasonably denied by QUALCOMM. A Receiving Party shall provide notice to QUALCOMM or its counsel for each occasion on which it submits portions of Designated Source Code Material in a pleading or other Court document. In the event copies of Source Code or Chip-Level Schematic printouts are used as exhibits in a deposition, printouts shall not be provided to the court reporter, and the further copies of the original QUALCOMM Source Code or Chip-Level Schematics printouts made for the deposition or trial shall be destroyed at the conclusion of the deposition or trial. The original copies of deposition exhibits designated "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE" will be maintained by the deposing party under the terms set forth in this Supplemental Protective Order.

h.     In addition to other reasonable steps to maintain the security and confidentiality of Non-Party QUALCOMM's Source Code and Chip-Level Schematics, printed copies of the Designated Source Code Material maintained by the Receiving Party must be kept in a locked storage container when not being actively reviewed or otherwise being transferred as permitted by this Supplemental Protective Order.

19

i.  The Receiving Party's Counsel of Record shall keep log(s) recording the identity of each individual to whom each hard copy of each Producing Party's QUALCOMM Source Code or Chip-Level Schematics is provided and when it was provided to that person in the first instance, and within thirty (30) days after the issuance of a final, non-appealable decision resolving all issues in this action, the Receiving Party must serve upon Non-Party QUALCOMM the log.  In addition, any Outside Consultants of the Receiving Party to whom the paper copies of the QUALCOMM Source Code or Chip-Level Schematics were provided must certify in writing that all copies of the QUALCOMM Source Code or Chip-Level Schematics were destroyed or returned to the counsel who provided them the information and that they will make no use of the Source Code or Chip-Level Schematics, or of any knowledge gained from the source code in any future endeavor.

**F.     Procedure for Designating Materials**

31.     Subject to the limitations set forth in this Supplemental Protective Order, Non-Party QUALCOMM may:  designate as "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" information that it believes, in good faith, meets the definition set forth in paragraph 2 above; and designate as "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE" information that it believes, in good faith, meets the definition set forth in paragraph 5 above.

32.     Except as provided above in paragraph 30 with respect to "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE" Material, any material, (including physical objects) made available by Non-Party QUALCOMM for initial

inspection by counsel for the Receiving Party prior to producing copies of selected items shall initially be considered, as a whole, to constitute "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" information, and shall be subject to this Order.   Thereafter, Non-Party QUALCOMM shall have seven (7) calendar days from the inspection to review and designate the appropriate documents as "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" prior to furnishing copies to the Receiving Party.

33.     Designation in conformity with this Supplemental Protective Order shall be made as follows:

a.     <u>For information in documentary (including "electronically stored information") form (apart from transcripts of depositions or other pretrial or trial proceedings):</u>   the Designating Party shall affix the legend "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" or "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE" conspicuously on each page that contains Protected Material.

A party or non-party that makes original documents or materials available for inspection need not designate them for protection until after the Receiving Party has indicated which material it would like copied or produced.  Before and during the inspection, all material made available for inspection shall be deemed "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY."  After the Receiving Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order and,

before producing the specified documents, the Producing Party must affix the appropriate legend to each page that contains Designated QUALCOMM Material.

b.    <u>For Testimony Given in Deposition:</u>   For deposition transcripts, the Designating Party shall specify any portions of the testimony that it wishes to designate, by line and page number, no later than 20 business days after the final transcript of the deposition has been received.  The Party or Non-Party may identify the entirety of the transcript as "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" or "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE," but all deposition transcripts not designated during the deposition will nonetheless be treated as "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" or "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE," until the time within which it may be appropriately designated as provided for herein has passed.  Any Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Supplemental Protective Order in these actions, along with the transcript pages of the deposition testimony dealing with such Protected Material.  In such cases the court reporter shall be informed of this Supplemental Protective Order and shall be required to operate in a manner consistent with this Supplemental Protective Order. Transcript pages containing Designated Material must be separately bound by the court reporter, who must affix to the top of each such page the legend

"QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" and/or "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE."  An encrypted, password protected copy of deposition transcripts containing Designated Qualcomm Material made pursuant to this paragraph may be hosted electronically by the Receiving Party on any system inside the firewall of a law firm representing the Receiving Party, however, all other restrictions in this Supplemental Protective Order pertaining to Designated Source Code Material apply.  In the event the deposition is videotaped, the original and all copies of the videotape shall be marked by the video technician to indicate that the contents of the videotape are subject to this Supplemental Protective Order, substantially along the lines of "This videotape contains confidential or outside counsel eyes only confidential testimony used in this case and is not to be viewed or the contents thereof to be displayed or revealed except pursuant to the terms of the operative protective orders in this matter or pursuant to written stipulation of the parties."  Counsel for any Designating Party shall have the right to exclude from oral depositions, other than the deponent, deponent's counsel, and the reporter and videographer (if any), any person who is not authorized by the Supplemental Protective Order in this action to receive or access Protected Material based on the designation of such Protected Material.

c.  <u>For information produced in some form other than documentary, and for any other tangible items,</u> the Designating Party shall affix, in a prominent

place on the exterior of the medium, container or containers in which the information or item is stored, the appropriate legend.

d.  The provisions of subparagraphs 33(a-c) do not apply to documents produced in native format.  For documents produced in native format, the parties shall provide written notice to the Receiving Party of any confidentiality designations at the time of production.

**G.   Use of Designated QUALCOMM Material**

34.   Use of Designated QUALCOMM Material By Receiving Party:  Unless otherwise ordered by the Court, or agreed to in writing by Non-Party QUALCOMM, all Designated QUALCOMM Material, and all information derived therefrom, shall be used by the Receiving Party only for purposes of this action, and shall not be used in any other way, or for any other purpose, including the acquisition, preparation or prosecution before the Patent office of any patent, patent application, for drafting or revising patent claims, or in connection with patent licensing or product development work directly or indirectly intended for commercial purposes related to the particular technologies or information disclosed in the Designated QUALCOMM Material.  Information contained or reflected in Designated QUALCOMM Material shall not be disclosed in conversations, presentations by parties or counsel, in court or in other settings that might reveal Designated QUALCOMM Material, except in accordance with the terms of this Supplemental Protective Order.

35.   Use of Designated QUALCOMM Material by Non-Party QUALCOMM:  Nothing in this Supplemental Protective Order shall limit Non-Party QUALCOMM's use of its own documents and information, nor shall it prevent Non-Party QUALCOMM from disclosing its own confidential information, documents or things to any person.  Such disclosure shall not affect any designations made pursuant to the terms of this Supplemental Protective Order, so long as the

disclosure is made in a manner that is reasonably calculated to maintain the confidentiality of the information.

36.     Use of Designated QUALCOMM Material at Deposition:   Non-Party QUALCOMM shall, on request prior to the deposition, make a searchable electronic copy of the QUALCOMM Source Code available on a stand-alone computer connected to a printer during depositions of QUALCOMM personnel otherwise permitted access to such Source Code.  To the extent required, the party conducting the deposition may print additional pages of Source Code printouts to be marked as exhibits at such depositions consistent with other provisions and limitations of this Supplemental Protective Order.  Except as may be otherwise ordered by the Court, any person may be examined as a witness at depositions and trial, and may testify concerning all Designated QUALCOMM Material of which such person has prior knowledge.

37.     Use of Designated QUALCOMM Material at Hearing or Trial:  The parties will give Non-Party QUALCOMM prior notice of, and an opportunity to object to, any intended use of the Designated QUALCOMM Material at any hearing or trial in this case.  Said notice shall (a) be served by facsimile or email on counsel for Non-Party QUALCOMM at least five (5) business days prior to the hearing or first day of trial, (2) identify the Designated QUALCOMM Material with specificity while redacting any other Party's Confidential Business Information and (3) identify the measures the party intends to rely upon to protect the Designated QUALCOMM Material when used at any hearing or trial consistent with this Supplemental Protective Order. Where, after the notice required by this section, QUALCOMM objects to either the intended use of the Designated QUALCOMM Material and/or the sufficiency of the measures proposed to protect the Designated QUALCOMM Materials during such use, and QUALCOMM and the party cannot resolve QUALCOMM'S objection informally, the burden will be on QUALCOMM to

25

apply to the Court for any relief it deems necessary. This section shall not limit in any way the use of Designated QUALCOMM Material during the cross-examination of any witness otherwise permitted access to such Designated QUALCOMM Material, as long as the parties take all necessary steps to protect and maintain the confidentiality of any such Designated QUALCOMM Material.

**H.    Prosecution and Development Bar**

38.    Unless otherwise permitted in writing between Producing Party and Receiving Party, any individual who personally receives, other than on behalf of Producing Party, any material designated "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" or "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE" shall not participate in amending or drafting patent specifications or claims before a Patent Office of any patent or patent application related to 2G, 3G UMTS or 4G LTE wireless technology from the time of receipt of such material through the date the individual person(s) cease to have access to materials designated "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" or "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE," as well as any materials that contain or disclose Designated QUALCOMM Material.  This provision shall not apply to post-grant proceedings, including without limitation *inter partes* review (IPR), reexamination, covered business method (CBM), post grant review (PGR) or opposition proceedings.

39.    Unless otherwise permitted in writing between Non-Party QUALCOMM and Receiving Party, any Outside Consultant retained on behalf of Receiving Party who is to be given access to Non-Party QUALCOMM's documents, Source Code, or Chip-Level Schematics designated as "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" or "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE" must agree in

writing, using the form in Exhibit B, not to perform hardware or software development work or product development work directly or indirectly intended for commercial purposes related to 2G, 3G UMTS or 4G LTE wireless technology, from the time of first receipt of such material through the date the expert consultant ceases to have access to any material designated "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" or "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE," as well as any materials that contain or disclose Designated QUALCOMM Material.

**I.      Designated QUALCOMM Material Subpoenaed or Ordered Produced In Other Litigation**

40.      If a Receiving Party is served with a subpoena or a court order that would compel disclosure of any information, documents or things designated in this action as "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" or "QUALCOMM –OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL SOURCE CODE," Receiving Party must notify the Producing Party and Non-Party QUALCOMM of such information, documents or things, in writing (by fax and email) promptly, and in no event more than ten (10) calendar days after receiving the subpoena or order.  Such notification must include a copy of the subpoena or order.  Receiving Party also must immediately inform, in writing, the party who caused the subpoena or order to issue that some or all of the material covered by the subpoena or order is subject to this Supplemental Protective Order.  In addition, the Receiving Party must provide a copy of this Supplemental Protective Order promptly to the party in the other action that caused the subpoena or order to issue.  The purpose of imposing these duties is to alert the interested parties to the existence of this Supplemental Protective Order, and to afford the Party whose Designated QUALCOMM Material in this case, is at issue in the other case, an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued.  Producing Party shall bear the burdens and the expenses

27

of seeking protection in that court of its Designated QUALCOMM Material.  Nothing in these provisions should be construed as authorizing or encouraging any Receiving Party in this action to disobey a lawful directive from another court.

**J.     Unauthorized Disclosure Of Designated QUALCOMM Material**

41.     If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Designated QUALCOMM Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately (a) notify in writing Producing Party and Non-Party QUALCOMM of the unauthorized disclosures, (b) use its best efforts to retrieve all copies of the Designated QUALCOMM Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound By Supplemental Protective Order Governing Confidential Information of Non-Party Qualcomm In This Case" that is attached hereto as Exhibit A.  Nothing in these provisions should be construed as limiting any Producing Party's rights to seek remedies for a violation of this Supplemental Protective Order.

**K.     Duration**

42.     Even after the termination of this action, the confidentiality obligations imposed by this Supplemental Protective Order shall remain in effect following the termination of this action, or until Non-Party QUALCOMM agrees otherwise in writing or a court order otherwise directs.

**L.     Final Disposition**

43.     Unless otherwise ordered or agreed in writing by Producing Party, within sixty (60) days of the termination of all of this action, whether through settlement or final judgment (including any and all appeals therefrom), each Receiving Party, including Outside Counsel for each Receiving Party, will destroy all Designated QUALCOMM Material produced by Non-Party QUALCOMM or any other Party in this action and will destroy or redact any such Designated

28

QUALCOMM Material included in work product, pleadings, motion papers, legal memoranda, correspondence, trial transcripts and trial exhibits admitted into evidence ("derivations") and all copies thereof, with the exception of copies stored on back-up tapes or other disaster recovery media.  Within sixty (60) days of the date of settlement or final judgment, each Receiving Party shall serve Non-Party QUALCOMM with a certification stating that it, including its Outside Counsel, has complied with its obligations under this paragraph.  With respect to any copy of Designated QUALCOMM Material or derivation thereof that remains on back-up tapes and other disaster storage media of an Authorized Reviewer(s), neither the Authorized Reviewer(s) nor its consultants, experts, counsel or other party acting on its behalf shall make copies of any such information available to any person for any purpose other than backup or disaster recovery unless compelled by law and, in that event, only after thirty (30) days prior notice to Producing Party or such shorter period as required by court order, subpoena, or applicable law.

IT IS SO ORDERED.

Dated:   November 7, 2017

Hon. Mitchell D. Dembin
United States Magistrate Judge

29

**EXHIBIT A**

**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND BY SUPPLEMENTAL PROTECTIVE ORDER GOVERNING CONFIDENTIAL INFORMATION OF NON-PARTY QUALCOMM IN THIS CASE**

I, _____ [print or type full name], state:  My business address is _____;

    1.    My present employer is _____;

    2.    My present occupation or job description is _____;

    3.    I have been informed of and have reviewed the Supplemental Protective Order Governing Discovery from Non-Party QUALCOMM in this case (the "Supplemental Protective Order") entered in this case, and understand and agree to abide by its terms.  I agree to keep confidential all information provided to me in the matter of *Wi-LAN, Inc., et al. v. LG Electronics, Inc.,* et al., Case No. 3:17-cv-358-BEN-MDD in the United States District Court, Southern District of California, in accordance with the restrictions in the Supplemental Protective Order, and to be subject to the authority of that Court in the event of any violation or dispute related to the Supplemental Protective Order.

    4.    I state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
[Signature]

Executed On_____    _____
[Printed Name]

**EXHIBIT B**

**CERTIFICATION OF CONSULTANT RE SUPPLEMENTAL PROTECTIVE ORDER GOVERNING CONFIDENTIAL INFORMATION OF NON-PARTY QUALCOMM IN THIS CASE**

I, _____ [print or type full name], of

_____ am not an employee of the Party who retained me

or of a competitor of any Party or Non-Party QUALCOMM and will not use any information,

documents, or things that are subject to the Supplemental Protective Order Governing Discovery

From Non-Party QUALCOMM in *Wi-LAN, Inc., et al. v. LG Electronics, Inc.,* et al., Case No. 3:17-

cv-358-BEN-MDD in the United States District Court, Southern District of California for any

purpose other than this litigation.  I agree not to perform hardware or software development work or

product development work intended for commercial purposes related to 2G, 3G UMTS or 4G LTE

wireless technology, from the time of receipt of such material through and including the date that I

cease to have access to any material designated "QUALCOMM – OUTSIDE ATTORNEYS' EYES

ONLY" or "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY – CONFIDENTIAL

SOURCE CODE."

I state under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

_____
[Signature]

Executed On_____          _____
[Printed Name]