**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| APPLE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-1377-MN-JLH |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| MASIMO CORPORATION and | ) | |
| SOUND UNITED, LLC, | ) | **PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |
| MASIMO CORPORATION, | ) | |
| | ) | |
| Counter-Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |
| APPLE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1378-MN-JLH |
| | ) | |
| MASIMO CORPORATION and | ) | **JURY TRIAL DEMANDED** |
| SOUND UNITED, LLC, | ) | |
| | ) | **PUBLIC VERSION** |
| Defendants. | ) | |
| MASIMO CORPORATION and | ) | |
| CERCACOR LABORATORIES, INC., | ) | |
| | ) | |
| Counter-Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**LETTER TO THE HONORABLE JENNIFER L. HALL FROM DAVID E. MOORE**

OF COUNSEL:

John M. Desmarais
Jordan N. Malz
Cosmin Maier
Kerri-Ann Limbeek
Jeffrey Scott Seddon, II
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400

Peter C. Magic
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: (415) 573-1900

Jennifer Milici
Leon B. Greenfield
Dominic Vote
WILMER CUTLER PICKERING HALE
  AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington DC 20037
Tel: (202) 663-6000

Mark A. Ford
WILMER CUTLER PICKERING HALE
  AND DORR LLP
60 State Street
Boston, MA  02109
Tel: (617) 526-6423

Dated:  July 21, 2023
10929423 / 12209.00051/52

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Plaintiff/Counter-Defendant Apple Inc.*

Re:     Apple Inc.'s Letter Brief Concerning Discovery Disputes

Dear Judge Hall:

Apple requests that the Court compel Masimo to produce documents related to the litigation costs Masimo asserts as antitrust injury and damages, as well as documents bearing on factors that influence demand for the Masimo products at issue.

### ISSUE #1: MASIMO IS IMPROPERLY WITHHOLDING CRITICAL EVIDENCE RELEVANT TO ANTITRUST DAMAGES.

When asked to detail its antitrust damages, Masimo stated that it has "been forced to expend substantial amounts of money on litigation." Ex. 1, Masimo's Interrogatory Responses, at 7. It added that those "millions of dollars" in fees and costs have in turn caused anticompetitive harm in the market. *Id.* at 7, 32-33, 42-43. But when it comes to substantiating those litigation costs, Masimo wants Apple and the jury simply to take its word for it. Indeed, Masimo insists that if Apple wants to challenge the eventual damages figure Masimo presents, Apple cannot do so before the jury but must instead rely on a constitutionally improper, post-trial special master proceeding. None of that is appropriate. Masimo affirmatively chose to put its litigation costs at issue, hoping to recover those amounts three-fold. The consequences of that are straightforward—the records underlying its litigation costs are subject to the same scrutiny as records underlying any other damages claim, and a jury decides the amount to which Masimo is entitled.

Apple requests invoices from law firms, experts, consultants, and vendors associated with this litigation (No. 61, Ex. 2, Masimo's RFP Responses, at 7) and the fee agreements between Masimo and those entities (No. 62, *id.*), all of which are necessary to determine the amount of costs that qualify as antitrust damages. Litigation cost damages require scrutiny, especially in a multifaceted case like this. Masimo acknowledges that the only litigation costs that would be recoverable as treble damages are those costs it incurred because of Apple's assertion of patents that Masimo is able to prove were fraudulently procured. *See* Ex. 3, June 30, 2023 Apple Ltr., at 2-3; Ex. 4, July 12, 2023 Apple Ltr., at 3-4; Ex. 5, July 14, 2023 Masimo Ltr., at 1. Costs that Masimo would have incurred anyway based on Apple's assertion of three non-*Walker Process*-challenged patents are not recoverable as antitrust damages. Nor are costs Masimo incurs in bringing affirmative counterclaims. The fee agreements (which would specify any fixed fees, discounts, contingencies, success awards, or other terms necessary to understand whether any incremental costs exist) and billing records with narrative descriptions of the work performed are essential to determining whether the claimed fees are properly included as treble damages. *See Dulcich, Inc. v. USI Ins. Servs. Nat'l, Inc.*, 2019 WL 1500701, at *2 (D. Or. Apr. 5, 2019) (billing records "are the primary form of direct evidence that goes to the heart of plaintiff's claim for [attorneys' fees] damages."). This detail will be even more critical if Masimo prevails only on some of the *Walker Process* assertions it makes against seven Apple patents.

Masimo refused these requests. It maintains instead that it has set up a billing code for the fees *it unilaterally contends* are recoverable as treble damages, and it will provide only documents sufficient to show the total dollar amounts for that code. Masimo refuses to provide any information about the work performed underlying those amounts, *see* Ex. 5 at 1, thus blocking discovery into whether Masimo is overstating recoverable fees, how Masimo is allocating work among the different patents and theories at issue, how it is allocating its litigation work between recoverable and non-recoverable fees, or even whether there are any time entry coding errors.

Masimo's "black box" approach to damages is impermissible. "Rule 26 requires more than simply taking a party's word for it." *Chesser v. Fifth Third Bank, Nat'l Ass'n*, 2020 WL 5535869, at *3 (E.D. Ky. Sept. 15, 2020). A party seeking damages must provide information sufficient for those claims to "be vetted in discovery." *Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*, 2017 WL 11558096, at *8 (D. Del. Dec. 11, 2017); *see also Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 514-15 (7th Cir. 2011) (rejecting "black box" damages calculations). A party cannot limit discovery to only the ***amount*** of fees it seeks as damages, especially where, as here, those amounts may cover work done on other patents and Masimo's own counterclaims. *HLV, LLC v. Van Buren, Cnty.*, 775 F. App'x 204, 212-14 (6th Cir. 2019) (redacted invoices improperly left defendant "in the dark," noting "some of [the] fees are unrelated to the alleged conspiracy").

Masimo insists that disputing the amount of litigation costs should be reserved for post-trial submissions to a special master, as in *Transweb*. But the parties in *Transweb* consented to that approach. Ex. 6, R&R, *Transweb, LLC v. 3M Innovative Props., Co.*, No. 10-cv-4413, D.I. 567, at 1. Apple does not waive its Seventh Amendment right to have a jury quantify damages. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353-54 (1998) ("It has long been recognized that 'by the law the jury are judges of the damages.'"); *J.R. Simplot v. Chevron Pipeline Co.*, 563 F.3d 1102, 1115-17 (10th Cir. 2009) ("[W]e hold that Chevron has a Seventh Amendment right to a jury trial on the amount of attorneys' fees due Simplot as damages[.]"); *Dulcich*, 2019 WL 1500701, at *5 ("[A] damages claim for attorney's fees must be determined by the factfinder.").[1] Moreover, without determining the amount of litigation costs, a jury could not begin to assess Masimo's claim that those costs have impaired its ability to compete, or potentially whether Masimo even establishes injury-in-fact, an essential prerequisite to liability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Masimo's categorical claim of privilege, Ex. 5 at 1, fails. Courts have uniformly concluded that "fee arrangements" are not privileged. *See, e.g.*, *United States v. Kossak*, 275 F. Supp. 2d 525, 533 (D. Del. 2003); Edna S. Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* (5th ed. 2007) ("Epstein"), at 95 ("Federal courts uniformly allow … matters regarding fee arrangements to be discovered[.]"). And time entry descriptions rarely reveal the substance of client communications. *See* Epstein at 124 ("Lawyers are exceedingly fond of claiming that billing records contain detailed descriptions that would reveal privileged communications. The claim rarely bears up to scrutiny."). The descriptions of work performed typically found in attorney billing records, and the ones that Apple seeks here—e.g., "draft invalidity contentions for '783 patent," "revise inequitable conduct allegations," "review claim chart for '491 patent"—do not reveal any privileged communication or provide Apple any litigation advantage. *See Renner v. Chase Manhattan Bank*, 2001 WL 1356192, at *8 (S.D.N.Y. Nov. 2, 2001) (finding that attorney billing records at issue "give no details with respect to the contents of [attorney-client] communications"); *Chesapeake & Ohio Ry. Co. v. Kirwan*, 120 F.R.D. 660, 665 (S.D.W. Va. 1988) (finding attorney time entries stated in "very general terms" were not privileged).[2]

---

[1] The *Guardant* case, which Masimo referenced during conferral, *see* Ex. 5 at 1, supports Apple because there the *Transweb*-style proposal was not pursued after the antitrust defendant asserted its Seventh Amendment rights, Ex. 7, Guardant Health Br., D.I. 444, at 48-49.

[2] To the extent Masimo claims that routine entries like this constitute work product, Apple's substantial need justifies an order requiring production. Fed. R. Civ. P. 26(b)(3)(A)(ii). These records are the only source of information from which Apple could challenge damages.

Furthermore, to the extent any privilege existed over Masimo's attorney billing records, Masimo waived it because, by seeking those fees as damages, Masimo affirmatively put those underlying records at issue. *See, e.g.*, *Moldex Metric, Inc. v. 3M Co.*, 2015 WL 9859754, at *3-4 (D. Minn. Oct. 28, 2015) (party seeking damages in the form of attorneys' fees in "sham litigation" claim under antitrust laws waived privilege over invoices); *Ideal Elec. Sec. Co. v. Int'l Fidelity Ins. Co.*, 129 F.3d 143, 151 (D.C. Cir. 1997) (finding waiver of privilege over attorney invoices where "party partially discloses the allegedly privileged information in support of its claim against another, but then asserts the privilege as a basis for withholding from its opponent the remainder of the information which is necessary to defend against the claim"); *Equitable Prod. Co. v. Elk Run Coal Co.*, 2008 WL 5263735, at *6 (S.D.W. Va. Oct. 3, 2008) (ordering production of attorney invoices where plaintiff seeks attorneys' fees as damages, holding "a party may not attempt to recover damages for a particular type of loss and then refuse to produce the evidence of that alleged loss for thorough examination and testing by the opposing party"). Masimo is affirmatively relying on its attorneys' categorization of work. It cannot then block discovery into that categorization. At a minimum, the Court should decide that, for any entries that do describe privileged communications or reveal legal strategy, Masimo has a choice: seek to recover for those costs and waive any privilege, or redact and withdraw any damages claim based on that time entry.

Apple also seeks budgets and forecasts for those fees and/or costs (No. 64, Ex. 2), documents discussing those fees and costs (No. 65, *id.*), Masimo's companywide litigation budgets (No. 77, *id.*), its forecasts for its companywide litigation expenditures (No. 78, *id.*), and documents concerning forecasts for its overall revenue and profitability (No. 76, *id.*). These are necessary to test Masimo's additional claim that those litigation costs impaired its ability to compete and injured consumers. *See* Ex. 1 at 32, 42-43. The relative size of the costs at issue to Masimo's overall litigation budget and general revenues and profitability—including forecasts for those costs and profits—go to whether it is credible that those costs hampered Masimo or forced Masimo to shift strategy or product investment decisions, or that it will do so in the future. Masimo's internal discussions about any impact of those costs is also probative. Masimo's own history of initiating litigation—*e.g.*, against Mindray in 2012, Philips Electronics in 2016, True Wearables in 2018, and Sotera Wireless and Foxconn in 2019—suggests otherwise, and Apple should be allowed discovery into the magnitude of those litigation costs and their corresponding effects on Masimo.

**ISSUE #2:   MASIMO IS IMPROPERLY WITHHOLDING DOCUMENTS ON FACTORS IMPACTING FORECASTS AND PROFITABILITY.**

Through this litigation, Masimo seemingly points the finger at Apple for all its current or future losses in the marketplace—blaming Apple's alleged infringement, its advertising, its litigation, and even Apple's alleged failure to expedite App Store approvals. *See, e.g.*, Ex. 1 at 5-7, 33-39. But when it comes to requests for ordinary course documents revealing what Masimo employees believe will impact the commercial performance and profitability of Masimo watch products (specifically Apple's RFP No. 74, Ex. 2), Masimo claims to be confused as to the relevance of the request and refuses even to look. As Apple repeatedly explained over two meet-and-confers, if Masimo employees point to other factors as negatively impacting demand or profitability—e.g., product quality, poor launch strategy, global supply shortages or delays, etc.—that would be relevant to whether Masimo's commercial failures are due to Apple's alleged conduct or some other factor(s). Masimo agrees only to produce the forecasts and projections themselves. But Apple is entitled to the reasoning, assumptions, and analyses underlying those forecasts, including emails reflecting what the author believes may affect those forecasts.

3

                Sincerely,

                */s/ David E. Moore*

                David E. Moore

cc: Clerk of Court (via hand delivery)
   Counsel of Record (via electronic mail)