# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| APPLE INC., | |
| *Plaintiff*, | |
| v. | C.A. No. 22-1377-MN-JLH |
| | C.A. No. 22-1378-MN-JLH |
| MASIMO CORPORATION and SOUND UNITED, LLC, | **JURY TRIAL DEMANDED** |
| *Defendants*. | |
| MASIMO CORPORATION and CERCACOR LABORATORIES, INC., | |
| *Counter-Claimants*, | |
| v. | |
| APPLE INC. | |
| *Counter-Defendant*. | |

**PLAINTIFF APPLE INC.'S OBJECTIONS AND RESPONSES TO DEFENDANTS'**
**SECOND SET OF REQUESTS FOR PRODUCTION (NOS. 50-165)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and the Local Rules of the United States District Court for the District of Delaware, Plaintiff Apple Inc. ("Apple") hereby provides the following Objections and Responses to Defendants Masimo Corporation's ("Masimo"), Sound United, LLC's ("Sound United"), and Counterclaimant Cercacor Laboratories, Inc.'s ("Cercacor") (collectively, "Defendants") Second Set of Requests for Production (Nos. 50-165). Apple's discovery and investigation in connection with this action are continuing. As a result, Apple's objections and responses are limited to information obtained and reviewed to date and are given without prejudice to Apple's right to supplement or amend these objections and responses to the extent allowed by the Federal Rules of Civil Procedure, the Local

1

Rules of this Court, and any applicable scheduling orders as discovery and Apple's investigation in the action proceeds.

## **GENERAL OBJECTIONS**

Apple makes the following General Objections to Defendants' Second Set of Requests For Production, which apply to each request regardless of whether the General Objections are specifically incorporated into the specific objections and responses below.

1.      Apple objects to each request, definition, and instruction to the extent it calls for information that is protected from discovery by the attorney-client privilege, the work product doctrine, the joint defense/common interest privilege, or that is otherwise protected from disclosure under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules of this Court, any applicable Orders of this Court, and/or relevant statutory or case law. Inadvertent disclosure of any such information shall not be deemed a waiver of any privilege or immunity.

2.      Apple objects to each request, definition, and instruction to the extent it seeks to impose any requirements or obligations in addition to or broader than those set forth in the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules of this Court, any applicable orders of this Court, any stipulation or agreement between the parties, and/or relevant statutory or case law.

3.      Apple objects to each request, definition, and instruction to the extent it seeks information that: (a) is not proportional to the needs of the case; (b) is not relevant to any party's claims or defenses; (c) is unreasonably cumulative, repetitive, or duplicative; (d) has already been provided to Defendants or is obtainable from some other source that is more convenient, less

2

burdensome, or less expensive; (e) creates a burden or expense outweighing any likely benefit; (f) is not restricted to any particular time frame; and/or (g) is overbroad.

4.      Apple objects to each request, definition, and instruction to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.

5.      Apple objects to each request to the extent it calls for confidential and/or proprietary information of any individual or entity other than Apple, except as allowed by any court orders, including any applicable orders of this Court, and/or relevant statutory or case law governing the disclosure of such information.

6.      Apple objects to each request, definition, and instruction to the extent it conflicts with or purport to require the production of information prohibited from disclosure by protective orders in other litigations or improperly seek to cross-use information from other litigations.

7.      Apple objects to each request to the extent it calls for legal conclusions, presents questions of pure law, or calls for expert opinion.  No response or agreement to produce discovery shall be construed as acceptance of any contention or legal claim included or implied in the request.

8.      Apple objects to each request to the extent it seeks mental impressions, legal conclusions, legal opinions, or legal theories of Apple.

9.      Apple objects to each request as premature to the extent it calls for discovery, including discovery concerning initial disclosures, the parties' contentions, claim construction, or expert testimony, in advance of the dates set by the Court for disclosure of such information in the relevant scheduling orders.

10.     Apple objects to each definition and instruction to the extent it purports to alter the plain meaning and/or scope of any specific request on the ground that such alteration renders the request vague, ambiguous, overbroad, or uncertain.

11.     Apple objects to each request using the term "Apple Watch," as well as Defendants' definition of that term, as overbroad, vague, ambiguous, unduly burdensome, and calling for information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.  For example, Defendants' definition of "Apple Watch" includes versions of Apple Watch that are unrelated to the parties' claims and defenses in this case.

12.     Apple objects to each request using the term "Apple Asserted Patents," as well as Defendants' definition of that term, as overbroad, vague, ambiguous, irrelevant, unduly burdensome, and calling for information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.  In particular, Apple objects to defining, in this case, "Apple Asserted Patents" to include any patent asserted by Apple in Case No. 22-1378, including but not limited to United States Patent Nos. 10,076,257 (the "'257 patent"), 10,627,783 (the "'783 patent"), 10,942,491 (the "'491 patent"), 10,987,054 (the "'054 patent"), 11,106,352 (the "'352 patent"), and 11,474,483 (the "'483 patent").  Apple interprets "Apple Asserted Patents" in these responses as one or more of the patents asserted by Apple in Case No. 22-1377, including United States Patent Nos. D883,279 (the "'D279 Patent"), D947,842 (the "'D842 Patent"), D962,936 (the "'D936 Patent"), and D735,131 (the "'D131 Patent").

13.     Apple objects to each request using the term "Apple Fraudulently Obtained Patents" as misleadingly adopting Defendants' baseless contention that U.S. Patent Nos. D883,279 (the "'D279 Patent"), D947,842 (the "'D842 Patent"), D962,936 (the "'D936 Patent"), 10,627,783 (the "'783 Patent"), 10,942,491 (the "'491 Patent"), 11,474,483 (the "'483 Patent") were

4

fraudulently procured.  Apple will construe the term as those patents subject to Defendants' *Walker Process* claims ("Walker Process Patents") and use that terminology.

14.    Apple objects to each request using the term "concerning," "relating to," "related to," "relate to," or "including," or similar phrases as overbroad, vague, and ambiguous. Furthermore, Apple objects to each use of these terms to the extent that it requires subjective judgment and speculation on the part of Apple.

15.    Apple objects to each request using the terms "document," "communication," and "thing," as well as Defendants' definition of those terms, to the extent it seeks materials beyond what is contemplated by Federal Rule of Civil Procedure 34, applicable Local Rules of this Court, or agreements entered into by the parties.  Apple objects to each request to the extent that it seeks to require Apple to conduct a general search of email or other ESI to identify responsive documents.  Apple does not intend to search and produce emails or ESI based on any such search, absent a showing of good cause by Defendants.  Defendants have not made such a showing with respect to any request.  Apple will not produce tangible things unless specifically designated in the request.

16.    Apple objects to each request using the term "Apple," "You" and "Your," as well as Defendants' definition of those terms, to the extent that those definitions include any persons or entities other than Apple Inc.

17.    Apple objects to each request using the term "Masimo," as well as Defendants' definition of that term, to the extent that those definitions include any persons or entities other than Masimo Corp.

18.     Apple objects to each request using the term "Sound United," as well as Defendants' definition of that term, to the extent that those definitions include any persons or entities other than Sound United, LLC.

19.     Apple objects to each request using the term "Cercacor" as well as Defendants' definition of that term, to the extent that those definitions include any persons or entities other than Cercacor Laboratories, Inc.

20.     Apple objects to each request using the term "prior art," as well as Defendants' definition of that term, as overbroad, vague, ambiguous, unduly burdensome, and calling for information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.

21.     Apple objects to each request using the term "prosecute," as well as Defendants' definition of that term, as overbroad, vague, ambiguous, unduly burdensome, and calling for information that is neither relevant to any party's claim or defense, nor proportional to the needs of the case.

22.     Apple objects to each request, definition, and/or instruction as overbroad, unduly burdensome, and calling for information that is neither relevant to any party's claim or defense nor proportional to the needs of the case to the extent the request, definition, and/or instruction seeks identification of "all" facts, documents, persons, evidence, or bases, or that purports to require Apple to marshal "all" evidence concerning any issue in dispute.  Consistent with its obligations under the Federal Rules of Civil Procedure, Apple will make a reasonable response and/or production at the appropriate stage of discovery proportional to the needs of the case.  Where Apple commits to producing categories of documents that "are located after a reasonably diligent search" it intends to limit its search to the parties' agreed upon scope of ESI custodians and search

terms, as well as any applicable Court orders.  Unless otherwise stated herein, Apple's reasonably diligent search will include documents created on or between December 12, 2020 and May 31, 2023.

23.     Apple objects to each request using the term "person," as well as Defendants' definition of that term, as overbroad, vague, and ambiguous.  Furthermore, Apple objects to each use of this term to the extent that it requires subjective judgment and speculation on the part of Apple.  Apple interprets Defendants' definition of "Person" as any natural person or legal entity.

24.     Apple's discovery and investigation in connection with this case are continuing. As a result, Apple's objections and responses are limited to information obtained and reviewed to date and are given without prejudice to Apple's right to amend or supplement these objections and responses as discovery and Apple's investigation in this case proceeds.

25.     Apple objects to each request, definition, and instruction to the extent it requires Apple to respond to discovery that is duplicative of discovery provided in *Masimo Corporation et al. v. Apple Inc.*, No. 8:20-cv-00048 and *In the Matter of Certain Light-Based Physiological Measurement Devices and Components Thereof*, Inv. No. 337-TA-1276 and subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

26.     To the extent each request relates to Counter-Claimants' Counterclaims in Case No. 22-1378, Apple reserves the right to revisit its responses following the Court's decision on Apple's motion to dismiss Counterclaims I-VI.  D.I. 39 (No. 22-1378).

to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, and control, that contain competitive assessments and competitive analysis of Defendants' W1 Watch, Defendants' Freedom Watch, and any other watch product sold in the United States, to the extent such documents exist, are located after a reasonably diligent search, and are not duplicative of discovery subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

**REQUEST FOR PRODUCTION NO. 56:**

All documents, communications, and things referring or relating to competitive conditions for any market in which You contend the Apple Watch competes, including  (a) market shares of competing products; (b) trends in pricing; (c) the maturity or lack of maturity of the industries for such products; (d) supply and/or demand; (e) price elasticity; (f) cross-elasticity; (g) the presence or absence of product substitutes; (h) product fungibility or interchangeability; and (i) industry concentration or consolidation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

Apple incorporates by reference its General Objections.  In addition, Apple specifically objects to this request as containing a series of sub-requests that are overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it requests "[a]ll documents, communications, and things" without limitation, including with respect to a relevant temporal or geographic scope.  Apple further objects to this request because the terms and phrases "competing products," "trends in pricing," "the maturity or lack of maturity of the industries," "price elasticity," "cross-elasticity," "the presence or absence of product substitutes," "product

fungibility or interchangeability," and "industry concentration or consolidation" are vague, ambiguous, overbroad, and does not describe with reasonable particularity the type of documents sought.  Apple further objects to this request as premature to the extent it calls for legal conclusions and/or expert discovery in advance of dates for disclosing such information set by the Court.  Apple will disclose expert opinions in accordance with the applicable scheduling orders of the Court. Apple further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.  Apple further objects to this request to the extent that it seeks discovery duplicative of discovery previously produced in the cases captioned *Masimo Corp. et al., v. Apple, Inc.*, No. 20-cv-00048 (C.D. Cal.) and *In the Matter of Certain Light-Based Physiological Measurement Devices and Components Thereof*, No. 337-TA-1276 that is subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, and control, that constitute market analyses for the Apple Watch, including documents that discuss any share estimates, competitive products, pricing analyses or comparisons

17

among products (including price elasticity), and other supply and demand factors facing the Apple

Watch, to the extent such documents exist, are located after a reasonably diligent search, and are

not duplicative of discovery subject to the parties' cross-use agreement and the Court's oral order

regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

## REQUEST FOR PRODUCTION NO. 57:

All documents, communications, and things referring or relating to the buying patterns or behavior of consumers of Apple Watch inside the U.S. as compared to the buying patterns or behavior of consumers of Apple Watch outside the U.S.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 57:

Apple incorporates by reference its General Objections.  Apple further objects to this

request as not relevant to the claims or defenses of any party because it seeks discovery concerning

markets outside of the United States.  Apple further objects to this request as overbroad, unduly

burdensome, and not proportional to the needs of this case to the extent that it requests "[a]ll

documents, communications, and things" without limitation, including with respect to a relevant

temporal or geographic scope.  Apple further objects to this request because the terms and phrases

"buying patterns" and "behavior of consumers" are vague, ambiguous, and overbroad does not

describe with reasonable particularity the type of documents sought.  Apple further objects to this

request to the extent it seeks information protected from disclosure by the attorney-client privilege,

common interest privilege, and/or work product doctrine, or that is otherwise protected from

disclosure.  Apple further objects to this request to the extent it seeks information, documents,

and/or things that are outside the possession, custody, or control of Apple; that are not kept in the

ordinary course of Apple's business; that can be obtained from other sources that are more

convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or

that are publicly available.  Apple further objects to this request to the extent that it seeks discovery

outside of the United States. Apple further objects to this request as overbroad, unduly burdensome, and not proportional to the needs of this case on the same grounds.  Apple further objects to this request because the phrase "differences between the Apple App Store inside the U.S. and the Apple App Store outside the U.S." is vague, ambiguous, overbroad, and does not describe with reasonable particularity the type of documents sought.  Apple further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request to the extent that it seeks discovery duplicative of discovery previously produced in the cases captioned *Masimo Corp. et al., v. Apple, Inc.*, No. 20-cv-00048 (C.D. Cal.) and/or *In the Matter of Certain Light-Based Physiological Measurement Devices and Components Thereof,* No. 337-TA-1276 that is subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

Apple will not search for or produce documents responsive to this request.

## REQUEST FOR PRODUCTION NO. 62:

All documents, communications, and things referring or relating to any definition, description, or analysis of the market(s) for app stores or app distribution, including marketing studies, analyses, or market reports (internal to Apple or from a third party) that refer to app stores or app distribution.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 62:

Apple incorporates by reference its General Objections.  In addition, Apple specifically objects to this request as not relevant to the claims or defenses of any party as it seeks irrelevant

discovery regarding the Apple App Store.  Apple further objects to this request as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it requests "[a]ll documents, communications, and things" without limitation, including with respect to a relevant temporal or geographic scope.  Apple further objects to this request because the phrase "marketing studies, analyses, or market reports (internal to Apple or from a third party) that refer to app stores or app distribution" is vague, ambiguous, overbroad, and does not describe with reasonable particularity the type of documents sought.  Apple further objects to this request as improper to the extent it calls upon Apple to identify a relevant antitrust market applicable to the Apple App Store on the grounds that it calls for legal conclusions and/or is premature to the extent it seeks expert discovery in advance of dates for disclosing such information set by the Court. Apple further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.  Apple further objects to this request to the extent that it seeks discovery duplicative of discovery previously produced in the cases captioned *Masimo Corp. et al., v. Apple, Inc.*, No. 20-cv-00048 (C.D. Cal.) and/or *In the Matter of Certain Light-Based Physiological Measurement Devices and Components Thereof,* No. 337-TA-1276 that is subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

24

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

Apple will not search for or produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 63:**

All documents, communications, and things referring or relating to Apple's control of iOS app distribution.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63:**

Apple incorporates by reference its General Objections.  In addition, Apple specifically objects to this request as not relevant to the claims or defenses of any party on the grounds that it seeks irrelevant discovery into Apple's iOS application distribution.  Apple further objects to this request as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it requests "[a]ll documents, communications, and things" without limitation, including with respect to a relevant temporal or geographic scope.  Apple further objects to this request because the terms and phrases "referring or relating to Apple's control of iOS app distribution" are vague, ambiguous, overbroad, and do not describe with reasonable particularity the type of documents sought.  Apple further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available. Apple further objects to this request to the extent that it seeks discovery duplicative of discovery previously produced in the cases

25

captioned *Masimo Corp. et al., v. Apple, Inc.*, No. 20-cv-00048 (C.D. Cal.) and/or *In the Matter of Certain Light-Based Physiological Measurement Devices and Components Thereof,* No. 337-TA-1276 that is subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

Apple will not search for or produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 64:**

All documents, communications, and things referring or relating to the ability of Apple users to switch to products or services from other companies, including but not limited to the ease or difficulty with which consumers can switch between Android and Apple devices.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

Apple incorporates by reference its General Objections.  In addition, Apple specifically objects to this request as not relevant to the claims or defenses of any party to the extent it seeks irrelevant discovery concerning Apple products other than the Apple Watch.  Apple further objects to this request as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it requests "[a]ll documents, communications, and things" without limitation, including with respect to a relevant temporal or geographic scope.  Apple further objects to this request because the phrase "referring or relating to . . . the ease or difficulty with which consumers can switch between Android and Apple devices" is vague, ambiguous, overbroad, and does not describe with reasonable particularity the type of documents sought.  Apple further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request to the extent it seeks information, documents,

26

discovery subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

**REQUEST FOR PRODUCTION NO. 71:**

All documents, communications, and things referring or relating to the impact Masimo's products may have on the price, quality, availability, or market-wide output of products in any market in which Apple Watch competes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71:**

Apple incorporates by reference its General Objections.  In addition, Apple specifically objects to this request to the extent it seeks information concerning any market outside of the United States on the grounds that it is not relevant to the claims or defenses of any party.  Apple further objects to this request as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it requests "[a]ll documents, communications, and things" without limitation, including with respect to a temporal or geographic scope of the request.  Apple further objects to this request as premature to the extent it calls for legal conclusions and/or expert discovery in advance of dates for disclosing such information set by the Court.  Apple will disclose expert opinions in accordance with the applicable scheduling orders of the Court.  Apple further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

Apple will produce responsive, relevant, and non-privileged documents in its possession, custody, and control, which discuss or analyze the competitive impact (if any) Defendants' products may have on the Apple Watch or other products competing with the Apple Watch in the United States, including impact on product pricing, quality, and supply, to the extent such document exists, are located after a reasonably diligent search, and are not duplicative of discovery subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

### REQUEST FOR PRODUCTION NO. 72:

For the period from January 1, 2018 to present, documents sufficient to show for each of your Apple Watches on a transactional basis (or the most granular level at which such information is stored):

a. The net price charged;
b. Gross revenue and net revenue, by customer and product, listing the amount of all deductions required to reconcile gross and net revenues;
c. Total quantity of units sold and the total quantity sold, net of any returns by customer;
d. Total quantity of units produced;
e. Marginal cost of production;
f. Cost of goods sold on a per product basis, including but not limited to: (i) direct labor and material costs, (ii) indirect labor and material costs, (iii) manufacturing overhead costs, (iv) standard costs and any associated variances, (v) actual total costs and variances from standard costs, (vi) gross profit, gross margins, or standard margins on a per product basis, and (vii) all costs other than manufacturing costs, on a per product basis, including but not limited to: (A) commissions and other selling expenses, (B) general and administrative expenses, (C) engineering, research, and development expenses, and (D) net income or net profit before taxes on a per product basis;
g. Marketing and sales expenses;
h. Advertising and promotional expenses;
i. Commission and selling expenses;
j. General and administrative expenses;
k. All costs other than standard costs;
l. Actual total cost;
m. Average variable cost;

Apple is willing to meet and confer with Defendants regarding the scope of this request.

**REQUEST FOR PRODUCTION NO. 76:**

All documents, communications, and things referring or relating to Apple's process for approving apps for Apple's App Store.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 76:**

Apple incorporates by reference its General Objections.  In addition, Apple specifically objects to this request as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it requests "[a]ll documents, communications, and things" without limitation, including with respect to a relevant temporal or geographic scope.  Apple further objects to this request because the request for discovery "relating to" Apple's process for approving apps for Apple's App Store is vague, ambiguous, overbroad, and does not describe with reasonable particularity the type of information sought.  Apple further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, and control, which are sufficient to show Apple's standard protocol for review

of applications for Apple's App Store, to the extent such documents exist and are prepared and maintained in the ordinary course, are located after a reasonably diligent search, and are not duplicative of discovery subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

**REQUEST FOR PRODUCTION NO. 77:**

All documents, communications, and things referring or relating to Articles 9.3 or 14.4 of Apple's Developer Agreement as referenced in the Counterclaims, including internal and external communications regarding those provisions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 77:**

Apple incorporates by reference its General Objections.  In addition, Apple specifically objects to this request on the grounds that it seeks discovery not relevant to the claims or defenses of any party.  Apple further objects to this request as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks "[a]ll documents, communications, and things" without limitation, including with respect to a relevant temporal or geographic scope. Apple further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control created on or between January 1, 2020 and May 31, 2023 discussing the application of Articles 9.3 or 14.4 of Apple's Developer Agreement to Masimo's application for the "Masimo Health" app, Masimo's "SafetyNet" app, and the Cercacor Ember app to the extent such documents exist, are located by a reasonably diligent search, and are not duplicative of discovery subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

**REQUEST FOR PRODUCTION NO. 78:**

All documents, communications, and things referring or relating to instances where Apple invoked, enforced, or attempted to enforce Article 9.3 or 14.4 of Apple's Developer Agreement as referenced in the Counterclaims, in connection with any app or proposed app.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 78:**

Apple incorporates by reference its General Objections.  In addition, Apple specifically objects to this request to the extent it pertains to any application other than the Masimo Health App, Masimo's "SafetyNet" app, or the Cercacor Ember app as not relevant to the claims or defenses of any party.  Apple further objects to this request as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it requests "[a]ll documents, communications, and things" without limitation, including with respect to a relevant temporal or geographic scope.  Apple further objects to this request because the request for discovery regarding "instances where Apple invoked, enforced, or attempted to enforce Article 9.3 or 14.4 of Apple's Developer Agreement" and "proposed app" is vague, ambiguous, overbroad, and does not describe with reasonable particularity the type of information sought.  Apple further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure. Apple further objects to this request to the extent it seeks information, documents,

45

and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control created on or between January 1, 2020 and May 31, 2023, which discuss the application of Articles 9.3 or 14.4 of Apple's Developer Agreement to Masimo's application for the "Masimo Health" app, Masimo's "SafetyNet" app, and the Cercacor Ember as well as any documents received from Masimo or Cercacor as part of the review and approval of those applications to the extent such documents exist, are located by a reasonably diligent search, and are not duplicative of discovery subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

## REQUEST FOR PRODUCTION NO. 79:

All documents, communications, and things referring or relating to new or updated Masimo or Cercacor iOS apps (including for Masimo SafetyNet, Masimo W1, or Cercacor Ember), including Apple's review, evaluation, and decision to approve or reject such apps or updates.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 79:

Apple incorporates by reference its General Objections.  In addition, Apple specifically objects to this request on the grounds that it seeks discovery not relevant to the claims or defenses of any party.  Apple further objects to this request as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it requests "[a]ll documents, communications, and things" without limitation, including with respect to a relevant temporal or

geographic scope.  Apple also objects to the request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it requests discovery concerning Apple's "review, evaluation, and decision to approve or reject" applications that do not appear to have any bearing on the relevant market Masimo pleaded.  Apple further objects to this request because the identification of the "Masimo W1" app is vague, ambiguous, overbroad, and does not describe with reasonable particularity the type of information sought, and construes it to refer to the "Masimo Health" app.  Apple further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure. Apple further objects to this request to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

Apple will produce responsive, relevant, and non-privileged documents in its possession, custody, or control created on or between January 1, 2020 and May 31, 2023 concerning Apple's review and approval of the "Masimo Health" app, Masimo's "SafetyNet" app, and the Cercacor Ember app, as well as concerning Apple's review and approval of updates to the Masimo "SafetyNet" app to the extent such documents exist, are located after a reasonably diligent search, and are not duplicative of discovery subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

**REQUEST FOR PRODUCTION NO. 80:**

All documents, communications, and things referring or relating to Masimo's FDA strategies and/or interactions with the FDA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 80:**

Apple incorporates by reference its General Objections.  In addition, Apple specifically objects to this request to the extent it seeks Apple documents concerning Masimo's FDA strategies or communications as not relevant to the claims or defenses of any party.  Apple further objects to this request as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it requests "all documents, communications, and things" without limitation, including with respect to a relevant temporal or geographic scope.  Apple further objects to the phrase "Masimo's FDA strategies" on the grounds that it is vague, ambiguous, overbroad, and does not describe with reasonable particularity the type of information sought.  Apple further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure. Apple further objects to this request to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available. Apple further objects to this request to the extent that it seeks discovery duplicative of discovery previously produced in the cases captioned *Masimo Corp. et al., v. Apple, Inc.*, No. 20-cv-00048 (C.D. Cal.) and/or I*n the Matter of Certain Light-Based Physiological Measurement Devices and Components Thereof,* No. 337-TA-1276 that is subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

48

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

Apple is willing to meet and confer with Defendants regarding the scope of this request.

**REQUEST FOR PRODUCTION NO. 81:**

All documents, communications, and things referring or relating to Apple's App Store Review Guideline 1.4.1, as referenced in the Counterclaims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 81:**

Apple incorporates by reference its General Objections. In addition, Apple specifically objects to this request to the extent it pertains to any application other than the Masimo Health App, Masimo's "SafetyNet" app, or the Cercacor Ember app as not relevant to the claims or defenses of any party. Apple further objects to this request as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it requests "[a]ll documents, communications, and things" without limitation, including with respect to a relevant temporal or geographic scope. Apple further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure. Apple further objects to this request to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

49

Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control created on or between January 1, 2020 and May 31, 2023 that discuss the application of App Store Review Guideline 1.4.1 to Masimo's application for the "Masimo Health" app, Masimo's "SafetyNet" app, and to Cercacor's application of the Ember app to the extent such documents exist, are located after a reasonably diligent search, and are not duplicative of discovery subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

**REQUEST FOR PRODUCTION NO. 82:**

All documents, communications, and things referring or relating to Apple using information submitted during the iOS app approval process for competitive purposes, including for development of Apple apps or products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 82:**

Apple incorporates by reference its General Objections.  In addition, Apple specifically objects to this request to the extent unrelated with any of Defendants' technology or information as not relevant to the claims or defenses of any party.  Apple further objects to this request to the extent that it requests discovery relevant only to claims already subject to litigation between the parties in *Masimo Corp. et al. v. Apple Inc.*, 8:20-cv-00048 (C.D. Cal.) for which discovery is complete.  Apple further objects to this request as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it requests "[a]ll documents, communications, and things" without limitation, including with respect to a relevant temporal or geographic scope.  Apple objects to the phrase "for competitive purposes" as vague, ambiguous, overbroad, and not describing with reasonable particularity the type of information sought.  Apple further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request to the extent it seeks

information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, or control created on or between January 1, 2020 and May 31, 2023 that comprise or discuss information received from Defendants as part of Apple's App Store review process to the extent such documents exist, are located by a reasonably diligent search, and are not duplicative of discovery subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

**REQUEST FOR PRODUCTION NO. 83:**

All documents or communications referencing, relating to, or discussing the practice of efficient infringement or the practice of infringing or misappropriating intellectual property, even after being informed of such improper conduct, because it is more advantageous to do so than pay to lawfully use or develop the intellectual property.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 83:**

Apple incorporates by reference its General Objections.  In addition, Apple specifically objects to this request to the extent it seeks discovery of alleged infringement of intellectual property other than the Masimo Asserted Patents as not relevant to the claims or defenses of any party.  Apple further objects to this request to the extent that it requests discovery relevant only to claims already subject to litigation between the parties in *Masimo Corp. et al. v. Apple Inc.*, 8:20-cv-00048 (C.D. Cal.) for which discovery is complete.  Apple further objects to this request as

overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it requests "all documents or communications" without limitation, including with respect to a relevant temporal or geographic scope.  Apple further objects to this request because the request for discovery regarding "improper conduct" is vague, ambiguous, overbroad, and does not describe with reasonable particularity the type of information sought.  Apple further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.  Apple further objects to this request to the extent that it seeks discovery duplicative of discovery previously produced in the cases captioned *Masimo Corp. et al., v. Apple, Inc.*, No. 20-cv-00048 (C.D. Cal.) and *In the Matter of Certain Light-Based Physiological Measurement Devices and Components Thereof*, No. 337-TA-1276 that is subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

Apple will not search for or produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 84:**

All communications with third parties relating to allegations that Apple unlawfully acquired or used intellectual property.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 84:**

Apple incorporates by reference its General Objections.  In addition, Apple specifically objects to this request to the extent it seeks discovery into allegations that Apple unlawfully acquired or used third-party intellectual property as not relevant to the claims or defenses of any party.  Apple further objects to this request to the extent it seeks discovery relevant only to claims already subject to litigation between the parties in *Masimo Corp. et al. v. Apple Inc.*, 8:20-cv-00048 (C.D. Cal.) for which discovery is complete.  Apple further objects to this request as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it requests "all communications with third parties" regarding such allegations, and to the extent it requests discovery of anything based on "allegations."  Apple further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure. Apple further objects to this request to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.  Apple further objects to this request to the extent that it seeks discovery duplicative of discovery previously produced in the cases captioned *Masimo Corp. et al., v. Apple, Inc.*, No. 20-cv-00048 (C.D. Cal.) and *In the Matter of Certain Light-Based Physiological Measurement Devices and Components Thereof*, No. 337-TA-1276 that is subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

53

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

Apple will not search for or produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 85:**

All documents, communications, and things referring or relating to any decision or consideration by Apple whether to consider, respect or disregard intellectual property rights.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 85:**

Apple incorporates by reference its General Objections.  In addition, Apple specifically objects to this request to the extent it seeks discovery unrelated to the Masimo Asserted Patents as not relevant to the claims or defenses of any party.  Apple also objects to this request to the extent it seeks discovery relevant only to claims already subject to litigation between the parties in *Masimo Corp. et al. v. Apple Inc.*, 8:20-cv-00048 (C.D. Cal.) for which discovery is complete. Apple further objects to this request as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it requests "all documents, communications, or things" without limitation, including with respect to a relevant temporal or geographic scope. Apple further objects to this request because the request for discovery relating to "any decision or consideration...whether to consider, respect or disregard intellectual property rights" without defining with reasonable particularity the terms "consider," "respect," or "disregard" is vague, ambiguous, overbroad, and does not describe with reasonable particularity the type of information sought.  Apple further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request to the extent it seeks information, documents, and/or things that are outside the possession, custody, or

54

control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available. Apple further objects to this request to the extent that it seeks discovery duplicative of discovery previously produced in the cases captioned *Masimo Corp. et al., v. Apple, Inc*., No. 20-cv-00048 (C.D. Cal.) and *In the Matter of Certain Light-Based Physiological Measurement Devices and Components Thereof*, No. 337-TA-1276 that is subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use. D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

Apple will not search for or produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 86:**

All documents, communications, and things referring or relating to the quote "good artists copy, great artists steal," Apple's use of pirate imagery and flags, the quote "it's better to be a pirate than join the navy," or Apple's practice of taking something from someone else and making it your own, as explained by Bud Tribble (*see* https://www.cnet.com/tech/tech-industry/what-steve-jobs-really-meant-when-he-said-good-artists-copy-great-artists-steal/).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 86:**

Apple incorporates by reference its General Objections. In addition, Apple specifically objects to this request as not relevant to the claims or defenses of any party nor proportional to the needs of the case as it seeks discovery unrelated to Defendants or Apple Watch. Apple also objects to this request to the extent it seeks discovery relevant only to claims already subject to litigation between the parties in *Masimo Corp. et al. v. Apple Inc.*, 8:20-cv-00048 (C.D. Cal.) for which discovery is complete. Apple further objects to this request as overbroad, unduly burdensome, and

not proportional to the needs of this case to the extent that it requests "all documents, communications, or things" without limitation, including with respect to a relevant temporal or geographic scope.  Apple further objects to the request on the grounds that it mischaracterizes statements from the article cited.  Apple objects to this request because the request for discovery regarding "pirate imagery and flags" is vague, ambiguous, overbroad, and does not describe with reasonable particularity the type of information sought.  No statement in the cited article refers to Apple's use of "pirate imagery and flags" or the quote "it's better to be a pirate than join the navy."  Apple further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.  Apple further objects to this request to the extent that it seeks discovery duplicative of discovery previously produced in the cases captioned *Masimo Corp. et al., v. Apple, Inc.*, No. 20-cv-00048 (C.D. Cal.) and *In the Matter of Certain Light-Based Physiological Measurement Devices and Components Thereof*, No. 337-TA-1276 that is subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

Apple will not search for or produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 87:**

All documents, communications, and things referring or relating to the practice of "Sherlocking" or meeting with another company and then Apple deciding to implement an idea or technology from the other company without permission.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 87:**

Apple incorporates by reference its General Objections.  In addition, Apple specifically objects to this request as not relevant to the claims or defenses of any party.  Apple also objects to this request to the extent it seeks discovery relevant only to claims already subject to litigation between the parties in *Masimo Corp. et al. v. Apple Inc.*, 8:20-cv-00048 (C.D. Cal.) for which discovery is complete. Apple further objects to this request as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it requests "all documents, communications, and things" without limitation, including with respect to a relevant temporal or geographic scope.  Apple objects to this request because the request for discovery regarding "Sherlocking."" is vague, ambiguous, overbroad, and does not describe with reasonable particularity the type of information sought.  Apple further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.  Apple further objects to this request to the extent that it seeks discovery duplicative of discovery previously produced in the cases captioned *Masimo Corp. et al., v. Apple, Inc.*, No. 20-cv-00048 (C.D. Cal.) and *In the Matter of Certain Light-Based Physiological Measurement*

*Devices and Components Thereof,* No. 337-TA-1276 that is subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

Apple will not search for or produce documents responsive to this request.

## REQUEST FOR PRODUCTION NO. 88:

Communications between Tim Cook and Bruce Sewell related to *U.S. v. Apple Inc., et al.,* No. 1:12-cv-02826-DLC (S.D.N.Y), as referenced in the video available at https://www.youtube.com/watch?v=-wuf3KI76Ds&t=2s, including communications related to the following:

    a. Sewell explaining that case was an example of Apple making a conscious and deliberate choice to use the legal system to gain a "competitive advantage" over others by "sailing as close to the wind" as possible because capturing ebook sales was "so important" to Apple;

    b. Sewell stating Apple "ended up being sued by the government and ended up having to pay a large fine;"

    c. Sewell stating that Apple's CEO, Tim Cook, did not discipline him for his role in allowing Apple to engage in anticompetitive conduct;

    d. Cook applauding Sewell;

    e. Cook stating to Sewell, "that's the right choice;" and

    f. Cook telling Sewell "don't let that scare you, I don't want you to stop pushing the envelope."

## RESPONSE TO REQUEST FOR PRODUCTION NO. 88:

Apple incorporates by reference its General Objections.  In addition, Apple specifically objects to this request as seeking discovery—relating to *U.S. v. Apple Inc., et al.,* No. 1:12-cv-02826-DLC (S.D.N.Y) and communications between Apple's CEO and then general counsel about that litigation—that is not relevant to the claims or defenses of any party nor proportional to the needs of the case. Apple further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or the work

product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.  Apple further objects to this request to the extent that it seeks discovery duplicative of discovery produced in the cases captioned *Masimo Corp. et al., v. Apple, Inc.*, No. 20-cv-00048 (C.D. Cal.) and *In the Matter of Certain Light-Based Physiological Measurement Devices and Components Thereof*, No. 337-TA-1276 that is subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).  Apple further objects to the request to the extent that the request itself mischaracterizes statements made in the video cited.  No statement in the cited video suggests in any way that Apple "made a conscious and deliberate choice to use the legal system to gain a competitive advantage," or that Mr. Sewell "allow[ed] Apple to engage in anticompetitive conduct"  Regardless, the conduct at issue in *U.S. v. Apple Inc., et al.,* No. 1:12-cv-02826-DLC (S.D.N.Y), has no bearing on the claims or defenses in this case, or even the relevant market Defendants have alleged.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

Apple will not search for or produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 89:**

All documents, communications, and things referring or relating to AliveCor, Omni MedSci and/or Valencell's allegations that Apple misappropriated their intellectual property and/or improperly acquired their technologies, including all communications and interactions with these companies relating to such allegations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 89:**

Apple incorporates by reference its General Objections.  In addition, Apple specifically objects to this request to the extent it seeks discovery into third-party allegations of intellectual property infringement or trade secret misappropriation as not relevant to the claims or defenses of any party.  Apple further objects to this request to the extent that it seeks discovery relevant only to claims already subject to litigation between the parties in duplicative of discovery produced in the cases captioned *Masimo Corp. et al., v. Apple, Inc.*, No. 20-cv-00048 (C.D. Cal.) for which discovery is complete. Apple further objects to this request as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it requests "[a]ll documents, communications, and things" without limitation, including with respect to a relevant temporal or geographic scope.  Apple further objects to this request because the request for discovery including the phrase "improperly acquired" is vague, ambiguous, overbroad, and does not describe with reasonable particularity the type of information sought.  Apple further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure. Apple further objects to this request to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.  Apple further objects to this request to the extent that it seeks discovery duplicative of discovery produced in the cases captioned *Masimo Corp. et al., v. Apple, Inc.*, No. 20-cv-00048 (C.D. Cal.) and *In the Matter of Certain Light-Based Physiological Measurement Devices and*

60

*Components Thereof*, No. 337-TA-1276 that is subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

Apple will not search for or produce documents responsive to this request.

## REQUEST FOR PRODUCTION NO. 90:

All documents, communications, and things referring or relating to Apple's litigations with AliveCor, Omni MedSci, and Valencell, including discovery responses, deposition and trial testimony of Apple witnesses, unsealed trial exhibits, sealed Apple trial exhibits, and documents produced by Apple.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 90:

Apple incorporates by reference its General Objections.  In addition, Apple specifically objects to this request to the extent it seeks discovery into Apple's litigation with third parties and/or third-party allegations of intellectual property infringement or trade secret misappropriation as not relevant to the claims or defenses of any party.  Apple further objects to this request to the extent that it seeks discovery relevant only to claims already subject to litigation between the parties in duplicative of discovery produced in the cases captioned *Masimo Corp. et al., v. Apple, Inc.*, No. 20-cv-00048 (C.D. Cal.) for which discovery is complete.  Apple further objects to this request as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it requests "[a]ll documents, communications, and things" without limitation, including with respect to a relevant temporal or geographic scope.  Apple further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure. Apple further objects to this request to the extent it seeks information, documents, and/or things

that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.  Apple further objects to this request to the extent that it seeks discovery duplicative of discovery produced in the cases captioned *Masimo Corp. et al., v. Apple, Inc.*, No. 20-cv-00048 (C.D. Cal.) and *In the Matter of Certain Light-Based Physiological Measurement Devices and Components Thereof*, No. 337-TA-1276 that is subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

Apple will not search for or produce documents responsive to this request.

## REQUEST FOR PRODUCTION NO. 91:

All documents, communications, and things referring or relating to any possible, alleged, or actual violations of U.S. federal, state, or foreign antitrust laws, competition laws, anti-bribery laws, or any similar laws, rules, or regulations by Apple or any current or former officer, director, employee, or agent of Apple, including any documents produced or provided to any governmental entity in connection with an investigation of a violation or alleged violation of the same laws, rules, or regulations.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 91:

Apple incorporates by reference its General Objections.  In addition, Apple specifically objects to this request to the extent it seeks discovery concerning "any possible, alleged, or actual violations of U.S. federal, state, or foreign antitrust laws, competition laws, anti-bribery laws, or any similar laws, rules, or regulations" as not relevant to the claims or defenses of any party.  In addition, Apple specifically objects to this request as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it requests "[a]ll documents,

1276 that is subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.  D.I. 95 (No. 22-1377); D.I. 83 (No. 22-1378).

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent that Apple understands this request, Apple responds as follows:

Apple will produce responsive, relevant, and non-privileged documents in Apple's possession, custody, and control that constitute or describe analyses of the impacts of any price increases on the Apple Watch Series 4-8, SE and Ultra, including financial impacts and customer reactions, to the extent they exist, are located after a reasonably diligent search, and are not duplicative of discovery subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross-use.

**REQUEST FOR PRODUCTION NO. 112:**

All documents, communications, and things referring to both Apple Watch and Apple's "ecosystem" of interconnected products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 112:**

Apple incorporates by reference its General Objections.  In addition, Apple specifically objects to this request as not relevant to the claims or defenses of any party to the extent it seeks "documents, communications, and things referring to . . . Apple's 'ecosystem' of interconnected products."  To the extent any responsive documents would be relevant to the claims or defenses of any party, or proportional to needs of the case, it is covered by Apple's responses to other requests herein.  Apple further objects to this request as overbroad, unduly burdensome, irrelevant, and not proportional to the needs of this case to the extent it seeks "[a]ll documents, communications, and things" without limitation, including with respect to a relevant temporal or geographic scope. Apple objects to this request because the phrase "Apple's 'ecosystem' of interconnected products"

is vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case.  Apple objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

Apple will not search for or produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 113:**

All documents, communications, and things referring or relating to Apple's strategy to build and maintain users in Apple's ecosystem.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 113:**

Apple incorporates by reference its General Objections.  In addition, Apple specifically objects to this request as not relevant to the claims or defenses of any party to the extent it seeks "documents, communications, and things referring or relating to . . . Apple's strategy to build and maintain users in Apple's ecosystem."  To the extent any responsive documents would be relevant to the claims or defenses of any party, or proportional to needs of the case, it is covered by Apple's responses to other requests herein.  Apple further objects to this request as overbroad, unduly burdensome, irrelevant, and not proportional to the needs of this case to the extent it seeks "[a]ll documents, communications, and things" without limitation, including with respect to a relevant

temporal or geographic scope.  Apple objects to this request because the phrase "Apple's ecosystem" is vague, ambiguous, overbroad, and seeks materials that are neither relevant nor proportional to the needs of the case.  Apple objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.  Apple further objects to this request to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

Apple will not search for or produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 114:**

All documents, communications, and things referring or relating to Apple's strategy regarding functionality, compatibility, or interoperability of products within Apple's ecosystem, including documents referring or relating to limiting functionality, compatibility, or interoperability to Apple-approved apps and products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 114:**

Apple incorporates by reference its General Objections.  In addition, Apple specifically objects to this request as not relevant to the claims or defenses of any party to the extent it seeks "Apple's strategy regarding functionality, compatibility, or interoperability of products within Apple's ecosystem."  Apple further objects to this request as overbroad, unduly burdensome, irrelevant, and not proportional to the needs of this case to the extent it seeks "[a]ll documents, communications, and things" without limitation, including with respect to a relevant temporal or

geographic scope.  Apple also objects to this request because the phrases and terms "Apple's strategy regarding functionality, compatibility, or interoperability of products within Apple's ecosystem," are vague, ambiguous, overbroad, and seek materials that are neither relevant nor proportional to the needs of the case.  Apple further objects to this request to the extent it seeks information, documents, and/or things that are outside the possession, custody, or control of Apple; that are not kept in the ordinary course of Apple's business; that can be obtained from other sources that are more convenient, less burdensome, and/or less expensive; that are equally available to Defendants; or that are publicly available.  Apple objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, common interest privilege, and/or work product doctrine, or that is otherwise protected from disclosure.

Based on its investigation to date, and subject to and without waiving the foregoing general and specific objections, and to the extent Apple understands this request, Apple responds as follows:

Apple will not search for or produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 115:**

All documents, communications, and things referring or relating to any alleged legitimate business interests or procompetitive benefits that You contend justify Apple's conduct.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 115:**

Apple incorporates by reference its General Objections.  In addition, Apple specifically objects to this request as overbroad, unduly burdensome, irrelevant, and not proportional to the needs of this case to the extent it seeks "[a]ll documents, communications, and things" without limitation, including with respect to a relevant temporal or geographic scope.  Apple objects to this request because the phrases and terms "any alleged legitimate business interests or procompetitive benefits" relating to "Apple's conduct" is vague, ambiguous, overbroad, and seeks materials that

Respectfully submitted,

OF COUNSEL:                              POTTER ANDERSON & CORROON LLP

John M. Desmarais                        By:  */s/ Bindu A. Palapura*
Jordan N. Malz                                David E. Moore (#3983)
Cosmin Maier                                  Bindu A. Palapura (#5370)
Kerri-Ann Limbeek                             Andrew L. Brown (#6766)
Jamie L. Kringstein                           Hercules Plaza, 6th Floor
DESMARAIS LLP                                 1313 N. Market Street
230 Park Avenue                               Wilmington, DE  19801
New York, NY 10169                            Tel: (302) 984-6000
Tel: (212) 351-3400                           dmoore@potteranderson.com
                                              bpalapura@potteranderson.com
Peter C. Magic                                abrown@potteranderson.com
DESMARAIS LLP
101 California Street                    *Attorneys for Plaintiff/Counter-Defendant*
San Francisco, CA 94111                  *Apple Inc.*
Tel: (415) 573-1900

Jennifer Milici
Leon B. Greenfield
Dominic Vote
WILMER CUTLER PICKERING HALE
  AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington DC 20037
Tel: (202) 663-6000

Mark A. Ford
WILMER CUTLER PICKERING HALE
  AND DORR LLP
60 State Street
Boston, MA  02109
Tel: (617) 526-6423

Dated:  June 13, 2023

## <u>CERTIFICATE OF SERVICE</u>

I, Mark A. Ford, hereby certify that on June 13, 2023, true and correct copies of the within document were served on the following counsel of record at the addresses and in the manner indicated:

### <u>VIA ELECTRONIC MAIL</u>

John C. Phillips, Jr.
Megan C. Haney
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 N. Broom Street
Wilmington, DE 19806
jcp@pmhdelaw.com
mch@pmhdelaw.com

Joseph R. Re
Stephen C. Jensen
Stephen W. Larson
Jared C. Bunker
Benjamin A. Katzenellenbogen
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Knobbe.MasimoDE@knobbe.com

Brian Horne
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park E., Suite 600
Los Angeles, CA 90067
Knobbe.MasimoDE@knobbe.com

Adam Powell
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
Knobbe.MasimoDE@knobbe.com

*/s/ Mark A. Ford*
Mark A. Ford

# EXHIBIT B

CONFIDENTIAL – ATTORNEYS' EYES ONLY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| APPLE INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>MASIMO CORPORATION and<br>SOUND UNITED, LLC,<br><br>*Defendants*. | C.A. No. 22-1378-MN-JLH<br><br>**JURY TRIAL DEMANDED** |
| MASIMO CORPORATION and<br>CERCACOR LABORATORIES, INC.,<br><br>*Counter-Claimants*,<br><br>v.<br><br>APPLE INC.<br><br>*Counter-Defendant*. | |

**DEFENDANT MASIMO CORPORATION'S RESPONSES AND OBJECTIONS TO
APPLE INC.'S SECOND SET OF INTERROGATORIES (4-14)**



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



June 26, 2023                                 PHILLIPS MCLAUGHLIN & HALL, P.A.


                                              By: */s/ John C. Phillips, Jr.*
*Of Counsel:*                                     John C. Phillips, Jr. (No. 110)
                                                  Megan C. Haney (No. 5016)
Joseph R. Re                                      1200 North Broom Street
Stephen C. Jensen                                 Wilmington, DE 19806
Stephen W. Larson                                 (302) 655-4200 Telephone
Benjamin A. Katzenellenbogen                      (302) 655-4210 Fax
Jared C. Bunker                                   jcp@pmhdelaw.com
KNOBBE, MARTENS, OLSON & BEAR, LLP                mch@pmhdelaw.com
2040 Main Street, 14th Floor

CONFIDENTIAL – ATTORNEYS' EYES ONLY

Irvine, CA  92614                                      *Counsel for Defendant*
(949) 760-0404 Telephone                               *Masimo Corporation*
(949) 760-9502 Facsimile
joe.re@knobbe.com
steve.jensen@knobbe.com
Stephen.larson@knobbe.com
Ben.katzenellenbogen@knobbe.com
Jared.bunker@knobbe.com

Brian Horne
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450 Telephone
(310) 551-3458 Facsimile
brian.horne@knobbe.com

Adam Powell
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
(858) 707-4000 Telephone
(858) 707-4001 Facsimile
adam.powell@knobbe.com

CONFIDENTIAL – ATTORNEYS' EYES ONLY

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2023, a true and correct copy of the foregoing document was served on the following counsel of record at the addresses and in the manner indicated:

*VIA ELECTRONIC MAIL:*

| | |
|---|---|
| David E. Moore<br>Bindu A. Palapura<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>Wilmington, DE 19801<br>dmoore@potteranderson.com<br>bpalapura@potteranderson.com | Peter C. Magic<br>DESMARAIS LLP<br>101 California Street<br>San Francisco, CA 94111<br>pmagic@desmaraisllp.com |
| John M. Desmarais<br>Kerri-Ann Limbeek<br>Cosmin Maier<br>Jordan N. Malz<br>Benjamin N. Luehrs<br>Joze Welsh<br>Jamie L. Kringstein<br>Jennifer M. Przybylski<br>Carson Olsheski<br>Desmarais LLP<br>230 Park Avenue<br>New York, NY 10169<br>jdesmarais@desmaraisllp.com<br>klimbeek@desmaraisllp.com<br>cmaier@desmaraisllp.com<br>jmalz@desmaraisllp.com<br>bluehrs@desmaraisllp.com<br>jwelsh@desmaraisllp.com<br>jkringstein@desmaraisllp.com<br>jprzybylski@desmaraisllp.com<br>colsheski@desmaraisllp.com | Jennifer Milici<br>Dominic Vote<br>Leon B. Greenfield<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>1875 Pennsylvania Avenue, NW<br>Washington DC 20006<br>jennifer.milici@wilmerhale.com<br>dominic.vote@wilmerhale.com<br>leon.greenfield@wilmerhale.com |
| Mark A. Ford<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>60 State Street<br>Boston, MA 02109<br>mark.ford@wilmerhale.com | |

June 26, 2023

CONFIDENTIAL – ATTORNEYS' EYES ONLY

_/s/ Megan C. Haney_____
Megan C. Haney (#5016)

# EXHIBIT C

CONFIDENTIAL – ATTORNEYS' EYES ONLY

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| APPLE INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 22-1377-MN-JLH |
| | ) |
| MASIMO CORPORATION and | ) **JURY TRIAL DEMANDED** |
| SOUND UNITED, LLC, | ) |
| | ) |
| Defendants. | ) |
| MASIMO CORPORATION and | ) |
| SOUND UNITED, LLC, | ) |
| | ) |
| Counter-Claimants, | ) |
| | ) |
| v. | ) |
| | ) |
| APPLE INC., | ) |
| | ) |
| Counter-Defendant. | ) |
| APPLE INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 22-1378-MN-JLH |
| | ) |
| MASIMO CORPORATION and | ) **JURY TRIAL DEMANDED** |
| SOUND UNITED, LLC, | ) |
| | ) |
| Defendants. | ) |
| MASIMO CORPORATION, | ) |
| CERCACOR LABORATORIES, INC., and | ) |
| SOUND UNITED, LLC, | ) |
| | ) |
| Counter-Claimants, | ) |
| | ) |
| v. | ) |
| | ) |
| APPLE INC., | ) |
| | ) |
| Counter-Defendant. | ) |

1

CONFIDENTIAL – ATTORNEYS' EYES ONLY

**DECLARATION OF MARK D. SELWYN IN SUPPORT OF APPLE'S LETTER TO THE HONORABLE JENNIFER L. HALL FROM DAVID E. MOORE**

I, Mark D. Selwyn, declare and state as follows:

1.　　I am a partner at the law firm of Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale"), counsel for Plaintiff and Counterclaim-Defendant Apple Inc. ("Apple") in the above-captioned matters.  Together with my partners, I serve as one of the lead counsel for Apple in *Masimo Corp. et al. v. Apple, Inc.*, 8:20-cv-00048-JVS-JDE (C.D. Cal.) ("C.D. Cal. Litigation").

2.　　The following is based on my personal knowledge and investigation, and if called upon to do so, I could and would competently testify thereto.

3.　　I understand that Masimo Corporation ("Masimo") seeks discovery in this litigation relating to its allegation that Apple engages in what Masimo calls "'efficient' or 'predatory' infringement" and "Sherlocking."  *See* Masimo's July 21, 2023 Letter Br. at 2 (C.A. No. 22-1377-MN-JLH, D.I. 189; C.A. No. 22-1378-MN-JLH, D.I. 192).

4.　　I also understand that Masimo seeks an order that certain antitrust-related document discovery should cover the time period beginning October 20, 2018, four years before the filing of Apple's complaints in this litigation.  *Id.* at 3.  In this declaration, I address the overlap of Masimo's requests with discovery that it sought and obtained in the C.D. Cal. Litigation.

5.　　Masimo filed its Complaint in the C.D. Cal. Litigation on January 9, 2020.  *See* C.D. Cal. Litigation, D.I. 1.  Masimo subsequently amended its Complaint several times.  Attached as Exhibit 1 is a true and accurate copy of the public version of the operative Fourth Amended Complaint in the C.D. Cal. Litigation, D.I. 295-2.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

6.      The C.D. Cal. Complaint asserts that Apple misappropriated Masimo alleged trade secrets and confidential information. Ex. 1 at ¶ 8.[1]  The Complaint describes a 2013 meeting between Apple and Masimo "regarding a potential collaboration," following which Masimo alleges that "Apple quickly began trying to hire Masimo employees, including engineers and key management." *Id.* at ¶ 19.  Masimo specifically focused on Apple's hiring of Michael O'Reilly, Masimo's former Chief Medical Officer and Executive Vice President for Medical Affairs, and Marcelo Lamego, Cercacor's former Chief Technical Officer and a former Research Scientist at Masimo. *Id.* ¶¶ 20-24.  The Complaint then asserts that Apple "misappropriated [Masimo's] Confidential Information by acquisition at least from [Masimo's] former employees who left [Masimo] to work for [Apple]." *Id.* at ¶ 228; *see also id.* ("For example, upon information and belief, O'Reilly and Lamego disclosed Plaintiffs' Confidential Information, without Plaintiffs' consent, to Defendant"); *id.* 223-267 (allegations of misappropriation).

7.      Fact discovery in the C.D. Cal. Litigation opened in April 2020, C.D. Cal. Litigation, D.I. 33, and closed in August 2022, *id.*, D.I. 627.  During fact discovery, Apple responded to 779 requests for production, and produced over 290,000 documents comprising over 3.1 million pages.

8.      Fact discovery in the C.D. Cal. Litigation concerned not only the specific claims of misappropriation based on Apple's hiring of Dr. O'Reilly and Dr. Lamego, but also Masimo's allegation regarding "efficient infringement" by Apple.  Masimo sought and ultimately obtained an order compelling production of "documents regarding the practice of efficient infringement," as requested by Request No. 446 in Masimo's Ninth Set of Requests for Production.  Attached as

---

[1] Masimo's allegations in the C.D. Cal. Litigation originally included claims for patent infringement.  Those claims were stayed based on Apple's filing of petitions for *inter partes* review for each of the asserted patents.  *See* C.D. Cal. Litigation, D.I. 222.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

Exhibit 2 is true and accurate copy of a March 17, 2022 discovery order requiring confirmation that Apple completed a reasonably diligent search for any documents concerning "efficient infringement" (*see* pages 3-4).  In connection with responding to Masimo's request, Apple searched dozens of ESI custodians' documents and e-mails for the terms "efficient infringement" and "sherlock*" and produced the non-privileged documents hitting on those terms.

9.      Masimo also sought and obtained corporate deposition testimony on the topics of "efficient infringement" and "Sherlocking."   Apple presented Principal Counsel & Senior Manager, IP Transactions, Jackie Harlow, as its Rule 30(b)(6) witness to address topics including "[a]ll discussion, analysis, and consideration of efficient infringement or economically beneficial infringement of another party's intellectual property rights…" (Topic 68) and "[t]he discussion, analysis, and consideration of 'sherlocking' or Apple developing and releasing functionality that is implemented by a third party…." (Topic 70).  Attached as Exhibit 3 is a true and accurate copy of Masimo's Rule 30(b)(6) Notice.  At her August 5, 2022 deposition, Ms. Harlow was questioned extensively on both topics.  Attached as Exhibit 4 is a true and accurate excerpt from Ms. Harlow's August 5, 2022 deposition during which she testified that "'[e]fficient infringement' is not a term that Apple uses.  It's not a practice at Apple."  Ex. 4 at 133-138.  She similarly confirmed Sherlocking is "not an Apple term" and that "Apple is absolutely not engaged in Sherlocking."  *Id.* at 109-128.  Masimo never contended that the corporate testimony on these subjects was in any way inadequate or incomplete.

10.      The C.D. Cal. Litigation also included discovery that is relevant to Masimo's antitrust claims here, including market definition.  For example, Masimo requested, and Apple produced, extensive discovery during the C.D. Cal. Litigation on sales and marketing of the Apple Watch, including consumer surveys and marketing analyses.   Likewise, Apple's financial

CONFIDENTIAL – ATTORNEYS' EYES ONLY

productions in the C.D. Cal. Litigation included sales data through Q1 of Apple's fiscal year 2023 for Apple Watch Series 0 through Series 7, line of business reports for all Apple Watches through Q2 of Apple's fiscal year 2022, and Apple Watch bills of materials.

11.     Trial on Masimo's misappropriation claims began on April 4, 2023.  C.D. Cal. Litigation, D.I. 1538.  On April 25, 2023, the Court granted Apple's Fed. R. Civ. P. 50(a) motion for judgment as a matter of law on Masimo's business strategy trade secret misappropriation claims, and then issued a final order to that effect on May 4, 2023.  *Id.*, D.I. 1724 at 4-7.  The remaining claims, including Masimo's misappropriation claim with respect to alleged technical trade secrets, went to the jury.  After approximately three days of deliberations, six of the seven jurors reported in a jury note that they favored a verdict for Apple.  *Id.*, D.I. 1713.  Because the jury was unable to reach a unanimous verdict, the Court declared a mistrial.  *Id.*, D.I. 1711.  The parties' post-trial motions under Fed. R. Civ. P. 50(b) and 52 are fully briefed, and a hearing is scheduled for July 31, 2023.  *Id.*, D.I. 1881.


I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 26th day of July 2023.


By:     */s/ Mark D. Selwyn*

Mark D. Selwyn

# Exhibit 1

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404 Facsimile: (949) 760-9502

Adam B. Powell (Bar No. 272725)
adam.powell@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
12790 El Camino Real
San Diego, CA 92130
Telephone: (858) 707-4000 Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
Masimo Corporation and Cercacor Laboratories, Inc.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | ) Case No. 8:20-cv-00048-JVS-JDE<br>)<br>) **FOURTH AMENDED**<br>) **COMPLAINT FOR**<br>) **(1) PATENT INFRINGEMENT**<br>) **(2) TRADE SECRET**<br>) **MISAPPROPRIATION**<br>) **(3) CORRECTION OF**<br>) **INVENTORSHIP AND**<br>) **(4) OWNERSHIP OF PATENTS**<br>)<br>) **DEMAND FOR JURY TRIAL**<br>)<br>) Hon. James V. Selna<br>) |

## REDACTED VERSION OF DOCUMENT
## PROPOSED TO BE FILED UNDER SEAL

Plaintiffs MASIMO CORPORATION ("Masimo") and CERCACOR LABORATIES, INC. ("Cercacor") hereby complain of Defendant APPLE INC. ("Apple"), and allege as follows:

## I.  THE PARTIES

1.     Plaintiff Masimo is a Delaware corporation having its principal place of business at 52 Discovery, Irvine, California 92618.

2.     Plaintiff Cercacor is a Delaware corporation having its principal place of business at 15750 Alton Pkwy, Irvine, California 92618.

3.     Upon information and belief, Defendant Apple is a California corporation having a principal place of business at One Apple Park Way, Cupertino, California, 95014.

## II.  JURISDICTION AND VENUE

4.     This civil action includes claims for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq*., more particularly, 35 U.S.C. §§ 271 and 281.  This civil action includes claims for correction of inventorship of certain United States patents arising under the patent law of the United States, more particularly 35 U.S.C. § 256.   This Complaint further alleges trade secret misappropriation and seeks a declaration of ownership of certain patents and patent applications.

5.     This Court has subject matter jurisdiction over claims 1-12 and 14-18 pursuant to at least 28 U.S.C. §§ 1331 and 1338(a), and has at least supplemental jurisdiction over claims 13 and 19-27 pursuant to at least 28 U.S.C. §§ 1367(a), including because, as alleged in more detail below, they are sufficiently related to the claims over which this Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6.     Apple has its principal place of business in California.  Apple is subject to personal jurisdiction in California and has committed the acts complained of in this Judicial District.

7.     Venue is proper in the Southern Division of the Central District of California pursuant to 28 U.S.C. § 1400(b) with respect to patent infringement because Defendant has a regular and established place of business in the County of Orange within the Central District of California and committed acts of infringement in this Judicial District.  Defendant also committed acts of misappropriation in this Judicial District.  Inventive contributions to the patents and patent application as to which Plaintiffs seek correction of inventorship and/or declarations of ownership also took place in this Judicial District.  Thus, venue is proper pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this Judicial District.

### III.  STATEMENT OF THE CASE

8.     This action seeks relief for the theft of Plaintiffs' highly confidential information and trade secrets, and infringement of Masimo's patents by Defendant, correction of inventorship, and ownership of patents assigned to or filed by Apple on subject matter that belongs to Plaintiffs.

### IV.  STATEMENT OF FACTS

9.     Masimo is a medical technology company that revolutionized non-invasive monitoring of physiological parameters, such as pulse rate, arterial oxygen saturation and many others.

10.     Most of these parameters are measured using light that is transmitted through the body tissue.  The received light, that has been attenuated by the various components of the body tissue, including the blood, is known in the industry as a photoplethysmograph or "PPG."  The transmission and receipt

of this light is typically accomplished through a sensor that is applied to a body part such as a finger, arm, toe, forehead or ear.

11.     Before Masimo, non-invasive measurements from the PPG were plagued by unreliability, often when the measurement was needed most, due to the person moving or having low peripheral blood flow (known as "low perfusion").  The industry had essentially given up on solving these problems, concluding they were largely unsolvable.  In the medical context, clinicians had to live with the results – patient monitors gave excessive false alarms, froze their measurements for prolonged periods of time despite potential changes in the physiological parameter (e.g., oxygen saturation or pulse rate), delayed notification of alarms due to long averaging times of sensor data, produced inaccurate measurements, or were unable to obtain data on the most critical patients and babies who cannot be instructed to stay still.  Masimo's pioneering technology, known as Masimo Signal Extraction Technology ("Masimo SET"), solved this problem and dramatically improved the reliability of monitoring and reporting physiological signals derived from the PPG.

12.     Following its initial success with Masimo SET, Masimo invested heavily in developing additional breakthrough measurement technologies, such as non-invasively measuring total hemoglobin, carboxyhemoglobin, and methemoglobin.  Masimo has continued to innovate, succeeding where others have consistently failed.  Masimo was the first, and remains the only, company delivering these game-changing technologies to hospitals in the United States. Use of Masimo's technology in the clinical setting has been proven to reduce blindness in premature infants, detect congenital heart disease in infants, save lives on the general care floor and post-surgery, and improve transfusion management, while saving money.

13.     From its inception, Masimo has continuously developed cutting-edge noninvasive patient monitoring technologies.  Masimo sought and received

numerous U.S. patents for many of its inventions. Masimo's revolutionary technology was a key to its gaining significant market praise and penetration. After introduction into the market, many competitors, much larger than Masimo, used Masimo's technology without a license, resulting in patent infringement lawsuits that ultimately confirmed the validity of Masimo's innovations. Masimo also maintains some technology as trade secrets. Masimo also closely guards its future product and market plans. Only select employees have knowledge of and access to these guarded secrets.

14. Masimo's innovations also include important advances in sensor technologies that work together as part of Masimo's system and algorithms. Masimo's sensors are integral to the success of the revolutionary technologies Masimo has developed.

15. In 1998, Masimo spun certain technologies off into a new company, Masimo Laboratories, Inc. or "Masimo Labs," to further research and develop the technologies. The name of the company was later changed to Cercacor Laboratories Inc. or "Cercacor." Cercacor and Masimo have a cross-license agreement to facilitate confidential collaboration between the companies. Cercacor is not owned by Masimo.

16. Like Masimo, Cercacor is an innovator of non-invasive monitoring technologies. Cercacor is on the frontline of understanding how measuring, tracking, and analyzing physiological parameters can impact pre-diabetic and diabetic patients, sports training and performance and overall health and wellness principally in the consumer market. Cercacor continued the development that started at Masimo on non-invasive total hemoglobin (SpHb®), methemoglobin (SpMet®), and carboxyhemoglobin (SpCO®) and other non-invasive physiological parameters.

17. Leading hospitals around the world use Cercacor technology licensed to Masimo and sold under the name Masimo rainbow SET. Like

-5-

Masimo, Cercacor also maintains some technology as trade secrets, and Cercacor closely guards its future product and market plans. Only select employees have knowledge of and access to these guarded secrets.

18. Plaintiffs carefully guard the secrecy of their confidential information and documents. For example, Plaintiffs have policies regarding labeling confidential information and documents as "CONFIDENTIAL AND PROPRIETARY." They also restrict these documents and information from disclosure to third parties and employees on a need-to-know basis. Plaintiffs also have policies in place regarding the use of computers and related equipment that govern how their computer systems may be used. Those policies also govern the protection of Plaintiffs' confidential information. Plaintiffs have document management systems that restrict access to confidential documents to only those employees with proper security credentials and a need for access. Plaintiffs also require employees to sign agreements precluding the employees from disclosing or making use of any confidential information except as authorized by Plaintiffs and as necessary for the performance of the employees' duties. Plaintiffs also require third parties, including customers, to execute confidential non-disclosure agreements. Plaintiffs implemented such policies and procedures to maintain the confidentiality of sensitive information. These policies remain in place today.

19. In 2013, Apple contacted Masimo and asked to meet regarding a potential collaboration. Apple told Masimo that Apple would like to understand more about Masimo's technology to potentially integrate that technology into Apple's products. Apple and Masimo later entered into a confidentiality agreement, and Masimo's management met with Apple. The meetings included confidential discussions of Masimo's technology. After what seemed to Masimo to have been productive meetings, Apple quickly began trying to hire Masimo employees, including engineers and key management.

20.     Masimo employed Michael O'Reilly as its Chief Medical Officer and Executive Vice President for Medical Affairs beginning in January 2008. As part of the Masimo executive team, O'Reilly was privy to extremely sensitive information, including information about mobile medical products and applications, wellness applications, clinical data gathering and analytics, and other technology of Masimo.  Upon information and belief, Apple employed O'Reilly in July 2013, shortly after the meetings with Masimo, to assist in wellness and mobile applications that include non-invasive measurement of physiological parameters.  Not long after, by December of 2013, O'Reilly was already meeting with the FDA on behalf of Apple to discuss medical applications and discuss medical products that non-invasively measures blood constituents.

21.     Apple systematically recruited other key Masimo personnel, such as Marcelo Lamego, who was the former Chief Technical Officer of Cercacor and a former Research Scientist at Masimo.  Lamego was a Masimo employee during 2000-2001 and 2003-2006, and the Cercacor Chief Technical Officer during 2006-2014.

22.     Lamego had unfettered access to Plaintiffs' highly confidential technical information.  He was trained and mentored at Masimo by the most skilled engineers and scientists, and was taught about the keys to effective non-invasive monitoring, something he was not involved in prior to Masimo. Masimo engineers and scientists taught Lamego about non-invasive monitoring, including, among others, Ammar Al-Ali, Mohamed Diab, and Walter Weber. The Masimo engineers, including Al-Ali, Diab, and Weber, were Masimo employees at all relevant times.   Lamego also had access to and learned guarded secrets regarding Plaintiffs' mobile medical products, including key technology and advance plans for future products.

23.    When Lamego left Cercacor, he assured Plaintiffs that he would not violate his agreements with Plaintiffs and volunteered that he would not work on technology similar to Plaintiffs' technology.  On January 24, 2014, Plaintiffs sent a letter to Defendant explaining that Lamego possessed Plaintiffs' confidential proprietary information and warning Apple to respect Plaintiffs' rights in such information.  The letter stated "we trust that Apple will employ Mr. Lamego in an area that does not involve healthcare technology, including mobile health applications and the measurement of physiological information." The letter also asked that "Apple refrain from inducing Mr. Lamego to take actions that would violate the Agreement while he performs services for Apple" and asked Apple to "direct Mr. Lamego to honor his obligations to all of his prior employers."  Based on Plaintiffs' conversations with Lamego, Plaintiffs' letter to Apple, and Plaintiffs' confidentiality agreement with Apple, Plaintiffs reasonably believed that Lamego would not use or disclose Plaintiffs' confidential information and that Defendant would not induce Lamego to do so or itself use Plaintiffs' confidential information.

24.    Unbeknownst to Plaintiffs at the time, it now appears that, shortly after joining Apple in January 2014, Lamego began pursuing on behalf of Apple numerous patent applications directed toward technologies he worked on at Plaintiffs, and with which he had no prior experience or knowledge.

25.    Upon information and belief, Apple announced the first version of its watch in September 2014, and began shipping its watch in April 2015.  The Apple Watch Series 3 was released on September 22, 2017, and upon information and belief had significant performance issues with the non-invasive physiological measurements.  Apple announced the Apple Watch Series 4 on September 12, 2018, and upon information and belief, that watch includes technology that tracks Plaintiffs' technologies to solve some of the performance issues.  The Apple Watch Series 5 was announced on September 10, 2019 and

released on September 20, 2019.  Upon information and belief, the Apple Watch Series 5 also includes Plaintiffs' technologies to solve some of the prior performance issues, including technology as to which Lamego was an inventor while at Plaintiffs.  The Apple Watch Series 6 and Series SE were announced on September 15, 2020, and released on September 18, 2020.  Upon information and belief, the Apple Watch Series 6 and Series SE also includes Plaintiffs' technologies to solve some of the prior performance issues, including technology as to which Lamego was an inventor while at Plaintiffs.

26.    As set forth in detail below, and on information and belief, each portion of evidence cited by Plaintiffs, such as the selected portions of Apple patent applications and Apple websites, accurately portrays, in relevant part, the structure, design, function and/or operation of the Apple Watch devices.

## V.  THE PATENTS-IN-SUIT

27.    Masimo is the owner by assignment of U.S. Patent No. 10,258,265 entitled "Multi-stream data collection system for noninvasive measurement of blood constituents" ("the '265 patent"), which the United States Patent and Trademark Office lawfully and duly issued on April 16, 2019.

28.    Masimo is the owner by assignment of U.S. Patent No. 10,292,628 entitled "Multi-stream data collection system for noninvasive measurement of blood constituents" ("the '628 patent"), which the United States Patent and Trademark Office lawfully and duly issued on May 21, 2019.

29.    Masimo is the owner by assignment of U.S. Patent No. 10,588,553 entitled "Multi-Stream Data Collection System For Noninvasive Measurement of Blood Constituents" ("the '553 patent"), which the United States Patent and Trademark Office lawfully and duly issued on March 17, 2020.

30.    Masimo is the owner by assignment of U.S. Patent No. 10,588,554 entitled "Multi-Stream Data Collection System For Noninvasive Measurement

of Blood Constituents" ("the '554 patent"), which the United States Patent and Trademark Office lawfully and duly issued on March 17, 2020.

31.    Masimo is the owner by assignment of U.S. Patent No. 10,624,564 entitled "Multi-Stream Data Collection System For Noninvasive Measurement of Blood Constituents" ("the '564 patent"), which the United States Patent and Trademark Office lawfully and duly issued on April 21, 2020.

32.    Masimo is the owner by assignment of U.S. Patent No. 10,631,765 entitled "Multi-Stream Data Collection System For Noninvasive Measurement of Blood Constituents" ("the '765 patent"), which the United States Patent and Trademark Office lawfully and duly issued on April 28, 2020.

33.    Masimo is the owner by assignment of U.S. Patent No. 10,702,194 entitled "Multi-Stream Data Collection System For Noninvasive Measurement of Blood Constituents" ("the '194 patent"), which the United States Patent and Trademark Office lawfully and duly issued on July 7, 2020.

34.    Masimo is the owner by assignment of U.S. Patent No. 10,702,195 entitled "Multi-Stream Data Collection System For Noninvasive Measurement of Blood Constituents" ("the '195 patent"), which the United States Patent and Trademark Office lawfully and duly issued on July 7, 2020.

35.    Masimo is the owner by assignment of U.S. Patent No. 10,709,366 entitled "Multi-Stream Data Collection System For Noninvasive Measurement of Blood Constituents" ("the '366 patent"), which the United States Patent and Trademark Office lawfully and duly issued on July 14, 2020.

36.    Masimo is the owner by assignment of U.S. Patent No. 6,771,994 entitled "Pulse oximeter probe-off detection system" ("the '994 patent"), which the United States Patent and Trademark Office lawfully and duly issued on August 3, 2004.

37.     Masimo is the owner by assignment of U.S. Patent No. 8,457,703 entitled "Low power pulse oximeter" ("the '703 patent"), which the United States Patent and Trademark Office lawfully and duly issued on June 4, 2013.

38.     Masimo is the owner by assignment of U.S. Patent No. 10,433,776 entitled "Low power pulse oximeter" ("the '776 patent"), which the United States Patent and Trademark Office lawfully and duly issued on October 8, 2019.

## VI.  PLAINTIFFS' TRADE SECRETS

39.     Plaintiffs allege Apple misappropriated the following specific trade secrets discussed in Paragraphs 40-45 below.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28







1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28





1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28





46.     The aforementioned information in Paragraphs 40-45 is referred to herein as Plaintiffs' "Confidential Information."

## VII.  THE DISPUTED LAMEGO PATENTS

47.     Lamego is named as an inventor on U.S. Provisional Patent Application No. 62/043,294, filed Aug. 28, 2014 and titled "Reflective Surface Treatments for Optical Sensors."  Related applications that also name Lamego as an inventor include U.S Patent Application Nos. 14/740,196 and 16/114,003, which issued as U.S. Patent Nos. 10,078,052 and 10,247,670.

48.     Lamego is also named as an inventor on U.S. Provisional Patent Application No. 62/047,818, filed Sep. 9, 2014, entitled "Modulation and

Demodulation Techniques for a Health Monitoring System." A related application that names Lamego as the sole inventor includes U.S Patent Application No. 14/621,268, which issued as U.S. Patent No. 10,219,754.

49.    Lamego is also named as an inventor on U.S. Provisional Patent Application No. 62/056,299, filed on Sep. 26, 2014, and entitled "Electronic Device that Computes Health Data." Related applications that also name Lamego as the sole inventor include U.S Patent Application Nos. 14/617,422, 15/667,832, and 16/700,710. The '422 Application issued as U.S. Patent No. 9,723,997 and the '832 Application issued as U.S. Patent No. 10,524,671.

50.    Lamego is also named as an inventor on U.S. Provisional Patent Application No. 62/057,089, filed on Sep. 29, 2014, and entitled "Methods and Systems for Modulation and Demodulation of Optical Signals." Related applications that also name Lamego as an inventor include U.S Patent Application Nos. 14/618,664 and 15/960,507. The '664 Application issued as U.S. Patent No. 9,952,095.

## VIII.  <u>FIRST CAUSE OF ACTION</u>
## <u>(INFRINGEMENT OF U.S. PATENT NO. 10,258,265)</u>

51.    Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

52.    Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claims 1-3, 6-11, 13, 16-25 of the '265 patent under at least 35 U.S.C. § 271(a), (b), and (c).

53.    Upon information and belief, Defendant has directly infringed one or more claims of the '265 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

54.    For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices include all of the limitations of Claim 1 of the

'265 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1. The Apple Watch Series 4 and later devices are adapted to be worn by a wearer and provide an indication of a physiological parameter (for example, heart rate) of the wearer as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



Upon information and belief, relevant technology in the Apple Watch Series 4 and later devices is described in International Application Publication WO 2018/226305 (the '305 publication). For example, the Apple Watch Series 4 and later devices provide an indication of a physiological parameter of the wearer as described in the '305 publication at paragraphs [0055]-[0061].

55.     The Apple Watch Series 4 and later devices include a plurality of emitters of different wavelengths (for example, green and infrared LEDs) and at least four detectors (for example, photodiode sensors) spaced apart from each other as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



56.    The detectors output signals responsive to light from the light emitters attenuated by body tissue.  Upon information and belief, the signals are indicative of a physiological parameter (for example, heart rate) of the wearer.

57.    Upon information and belief, relevant technology in the Apple Watch Series 4 and later devices is described in the below citation to U.S. Patent Application Publication 2019/0072912 (the '912 publication).  The Apple Watch Series 4 and later devices include a housing having a surface and a circular wall protruding from the surface, and a light permeable cover arranged above a portion of the housing and covering the detectors.  Fig. 4C and the corresponding text of the '912 publication show, for example, such housing:

FIG. 4C

58.     Upon information and belief, Defendant has knowledge of Masimo's patents, including the '265 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs.  Masimo filed provisional patent applications that led to the '265 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor.  Lamego is a named inventor of the '265 patent.  Defendant had knowledge of the '265 patent no later than the filing of the original Complaint.

59.     Upon information and belief, Defendant has actively induced others to infringe the '265 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '265 patent.  To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be

used to infringe the '265 patent.  Defendant's acts constitute infringement of the '265 patent in violation of 35 U.S.C. § 271(b).

60.     Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '265 patent.  By way of example only, upon information and belief, Defendant actively induces direct infringement of the '265 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices, including use with Apple iPhones. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

61.     Upon information and belief, Defendant's acts constitute contributory infringement of the '265 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '265 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendant to be especially made or especially adapted for use in an infringement of the '265 patent.

62.     Defendant's infringement of the '265 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '265 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

63.     Because of Defendant's infringement of the '265 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

64.     Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## IX.  SECOND CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,292,628)

65.     Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

66.     Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 1 of the '628 patent under at least 35 U.S.C. § 271(a), (b), and (c).

67.     Upon information and belief, Defendant has directly infringed one or more claims of the '628 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

68.     For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices include all of the limitations of Claim 1 of the '628 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1.

69.     The Apple Watch Series 4 and later devices include a housing configured to house a plurality of detectors.  Fig. 4C and the corresponding text of the '912 publication show, for example, such housing:

FIG. 4C

70.     The Apple Watch Series 4 and later devices include a plurality of emitters that emit light into tissue of a user and a plurality of detectors that detect light that has been attenuated by tissue of the user as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



71.     The Apple Watch Series 4 and later devices include a light permeable cover configured to be located between tissue of the user and the plurality of detectors when the noninvasive optical physiological sensor is worn by the user, wherein the cover comprises an outwardly protruding convex surface configured to cause tissue of the user to conform to at least a portion of the outwardly protruding convex surface when the noninvasive optical physiological sensor is worn by the user and during operation of the noninvasive optical physiological sensor, and wherein the plurality of detectors are configured to receive light passed through the outwardly protruding convex surface after attenuation by tissue of the user.  Fig. 4C and the corresponding text of the '912 publication show, for example, such cover:

FIG. 4C

72.    Upon information and belief, Defendant has knowledge of Masimo's patents, including the '628 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs.  Masimo filed provisional patent applications that led to the '628 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor.  Lamego is a named inventor of the '628 patent.  Defendant had knowledge of the '628 patent no later than the filing of the original Complaint.

73.    Upon information and belief, Defendant has actively induced others to infringe the '628 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '628 patent.  To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be

used to infringe the '628 patent. Defendant's acts constitute infringement of the '628 patent in violation of 35 U.S.C. § 271(b).

74.     Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '628 patent.  By way of example only, upon information and belief, Defendant actively induces direct infringement of the '628 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices, including use with Apple iPhones. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

75.     Upon information and belief, Defendant's acts constitute contributory infringement of the '628 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '628 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '628 patent.

76.     Defendant's infringement of the '628 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '628 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

77.     Because of Defendant's infringement of the '628 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

78.     Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## X.  THIRD CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,588,553)

79.     Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

80.     Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 1 of the '553 patent under at least 35 U.S.C. § 271(a), (b), and (c).

81.     Upon information and belief, Defendant has directly infringed one or more claims of the '553 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

82.     For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices include all of the limitations of Claim 1 of the '553 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1.  The Apple Watch Series 4 and later devices are noninvasive optical physiological sensor devices as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



83.     The Apple Watch Series 4 and later devices include a plurality of emitters configured to emit light into tissue of a user, and at least four detectors, wherein at least one of the at least four detectors is configured to detect light that has been attenuated by tissue of the user, and wherein the at least four detectors are arranged on a substrate as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:

84.     The detectors output signals responsive to light from the light emitters attenuated by body tissue.  Upon information and belief, the signals are indicative of a physiological parameter (for example, heart rate) of the wearer.

85.     Upon information and belief, relevant technology in the Apple Watch Series 4 and later devices is described in the below citation to U.S. Patent Application Publication 2019/0072912 (the '912 publication).   The Apple Watch Series 4 and later devices include a wall configured to circumscribe at least the at least four detectors and a cover configured to be located between tissue of the user and the at least four detectors when the noninvasive optical physiological sensor is worn by the user, wherein the cover comprises a single protruding convex surface operable to conform tissue of the user to at least a portion of the single protruding convex surface when the noninvasive optical physiological sensor is worn by the user, and wherein the wall operably connects to the substrate and the cover. Fig. 4C and the corresponding text of the '912 publication show, for example, such wall and cover:



FIG. 4C

86. Upon information and belief, Defendant has knowledge of Masimo's patents, including the '553 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs. Masimo filed provisional patent applications that led to the '553 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor. Lamego is a named inventor of the '553 patent. Defendant had knowledge of the '553 patent no later than the filing of the First Amended Complaint.

87. Upon information and belief, Defendant has actively induced others to infringe the '553 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '553 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be used to infringe the '553 patent. Defendant's acts constitute infringement of the '553 patent in violation of 35 U.S.C. § 271(b).

88. Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '553 patent. By way of example only, upon information and belief, Defendant actively induces direct infringement of the '553 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices, including use with Apple iPhones. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

89. Upon information and belief, Defendant's acts constitute contributory infringement of the '553 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4

and later devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '553 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendant to be especially made or especially adapted for use in an infringement of the '553 patent.

90.     Defendant's infringement of the '553 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '553 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

91.     Because of Defendant's infringement of the '553 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

92.     Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XI.  FOURTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,588,554)

93.     Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

94.     Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 20 of the '554 patent under at least 35 U.S.C. § 271(a), (b), and (c).

95.     Upon information and belief, Defendant has directly infringed one or more claims of the '554 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

96.    For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices in combination with iPhone devices include all of the limitations of Claim 20 of the '554 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1.  The Apple Watch Series 4 and later devices combined with Apple iPhones are physiological measurement systems with physiological sensors as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



97.    The Apple Watch Series 4 and later devices include a plurality of emitters configured to emit light into tissue of a user, and at least four detectors, wherein each of the at least four detectors has a corresponding window that allows light to pass through to the detector as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:

98.     The detectors output signals responsive to light from the light emitters attenuated by body tissue.  Upon information and belief, the signals are indicative of a physiological parameter (for example, heart rate) of the wearer. Upon information and belief, relevant technology in the Apple Watch Series 4 and later devices is described in International Application Publication WO 2018/226305 (the '305 publication), for example, at paragraphs [0055]-[0061].

99.     Upon information and belief, relevant technology in the Apple Watch Series 4 and later devices is described in the below citation to U.S. Patent Application Publication 2019/0072912 (the '912 publication).   The Apple Watch Series 4 and later devices include a wall that surrounds at least the at least four detectors, a cover comprising a single protruding convex surface, wherein the single protruding convex surface is configured to be located between tissue of the user and the at least four detectors when the physiological sensor device is worn by the user, wherein at least a portion of the single protruding convex surface is sufficiently rigid to cause tissue of the user to conform to at least a portion of a shape of the single protruding convex surface when the physiological sensor device is worn by the user, and wherein the cover

operably connects to the wall.  Fig. 4C and the corresponding text of the '912 publication show, for example, such wall and cover:



FIG. 4C

100.  The Apple Watch Series 4 and later devices communicate wirelessly with handheld computing devices as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666 and as further described at https://support.apple.com/en-us/HT204505:

101. Upon information and belief, Defendant has knowledge of Masimo's patents, including the '554 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs. Masimo filed provisional patent applications that led to the '554 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor. Lamego is a named inventor of the '554 patent. Defendant had knowledge of the '554 patent no later than the filing of the First Amended Complaint.

102. Upon information and belief, Defendant has actively induced others to infringe the '554 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '554 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be used to infringe the '554 patent. Defendant's acts constitute infringement of the '554 patent in violation of 35 U.S.C. § 271(b).

103. Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '554 patent. By way of example only, upon information and belief, Defendant actively induces direct infringement of the '554 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the

Apple Watch Series 4 and later devices, including use with Apple iPhones. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

104. Upon information and belief, Defendant's acts constitute contributory infringement of the '554 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '554 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendant to be especially made or especially adapted for use in an infringement of the '554 patent.

105. Defendant's infringement of the '554 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '554 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

106. Because of Defendant's infringement of the '554 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

107. Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XII.  FIFTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,624,564)

108. Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

-41-

109. Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 1 of the '564 patent under at least 35 U.S.C. § 271(a), (b), and (c).

110. Upon information and belief, Defendant has directly infringed one or more claims of the '564 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices and the iPhone devices.

111. For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices in combination with iPhone devices include all of the limitations of Claim 1 of the '564 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1. The Apple Watch Series 4 and later devices are user-worn physiological measurement devices as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



112. The Apple Watch Series 4 and later devices include one or more emitters configured to emit light into tissue of a user and at least four detectors arranged on a substrate as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



113.   The detectors output signals responsive to light from the light emitters attenuated by body tissue.  Upon information and belief, the signals are indicative of a physiological parameter (for example, heart rate) of the wearer.

114.   Upon information and belief, relevant technology in the Apple Watch Series 4 and later devices is described in the below citation to U.S. Patent Application Publication 2019/0072912 (the '912 publication).   The Apple Watch Series 4 and later devices include a wall that surrounds at least the at least four detectors and that operably connects to the substrate and a cover comprising a protruding convex surface, wherein the protruding convex surface extends over all of the at least four detectors arranged on the substrate, wherein at least a portion of the protruding convex surface is rigid.  Fig. 4C and the corresponding text of the '912 publication show, for example, such wall and cover:



FIG. 4C

115.   The Apple Watch Series 4 and later devices include one or more processors configured to receive one or more signals from at least one of the at least four detectors, the one or more signals responsive to at least a physiological parameter of the user; and process the one or more signals to determine measurements of the physiological parameter. Further, the Apple Watch Series 4 and later devices include a network interface configured to communicate with a mobile phone and a touch-screen display configured to provide a user interface where the user interface is configured to display indicia responsive to the measurements of the physiological parameter, a storage device configured to at least temporarily store at least the measurements of the physiological parameter, and a strap configured to position the physiological measurement device on the user as shown in the image below found on the

Apple website at https://support.apple.com/en-us/HT204666 and as further described at https://support.apple.com/en-us/HT204505:



116.   The Apple Watch Series 4 and later devices have an orientation of the user interface that is configurable responsive to a user input as described on the Apple website at https://support.apple.com/guide/watch/change-language-orientation-apple-watch-apd0bf18f46b/watchos.

117.   Upon information and belief, Defendant has knowledge of Masimo's patents, including the '564 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs.  Masimo filed provisional patent applications that led to the '564 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor.  Lamego is a named inventor of the '564 patent.  Defendant had knowledge of the '564 patent no later than the filing of this Second Amended Complaint.

118.   Upon information and belief, Defendant has actively induced others to infringe the '564 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '564 patent.  To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be

used to infringe the '564 patent.  Defendant's acts constitute infringement of the '564 patent in violation of 35 U.S.C. § 271(b).

119.   Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '564 patent.  By way of example only, upon information and belief, Defendant actively induces direct infringement of the '564 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices, including use with Apple iPhones.  Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

120.  Upon information and belief, Defendant's acts constitute contributory infringement of the '564 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '564 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendant to be especially made or especially adapted for use in an infringement of the '564 patent.

121.   Defendant's infringement of the '564 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '564 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

122.   Because of Defendant's infringement of the '564 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

123.   Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

### XIII.  SIXTH CAUSE OF ACTION
### (INFRINGEMENT OF U.S. PATENT NO. 10,631,765)

124.   Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

125.   Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 1 of the '765 patent under at least 35 U.S.C. § 271(a), (b), and (c).

126.   Upon information and belief, Defendant has directly infringed one or more claims of the '765 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices and the iPhone devices.

127.   For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices in combination with iPhone devices include all of the limitations of Claim 1 of the '765 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1.  The Apple Watch Series 4 and later devices in combination with iPhone devices are physiological measurement systems with physiological sensors as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



128.    The Apple Watch Series 4 and later devices include one or more emitters configured to emit light into tissue of a user, and at least four detectors, wherein each of the at least four detectors has a corresponding window that allows light to pass through to the detector as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



129.    The detectors output signals responsive to light from the light emitters attenuated by body tissue.  Upon information and belief, the signals are indicative of a physiological parameter (for example, heart rate) of the wearer.

130.   Upon information and belief, relevant technology in the Apple Watch Series 4 and later devices is described in the below citation to U.S. Patent Application Publication 2019/0072912 (the '912 publication).   The Apple Watch Series 4 and later devices include a wall that surrounds at least the at least four detectors, a cover comprising a protruding convex surface above the detectors that is sufficiently rigid and operably connects to the wall.  Fig. 4C and the corresponding text of the '912 publication show, for example, such wall and cover:



FIG. 4C

131.   The Apple Watch Series 4 and later devices include a storage device configured to at least temporarily store at least the measurements of the physiological parameter and communicate wirelessly with iPhone devices that include a touch-screen display configured to provide a user interface to display indicia responsive to measurements of the physiological parameter and one or

more processors configured to wirelessly receive one or more signals from the physiological sensor device, the one or more signals responsive to at least a physiological parameter of the user, and an orientation of the user interface is configurable responsive to a user input as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666 and as further described at https://support.apple.com/en-us/HT204505:



132. Upon information and belief, Defendant has knowledge of Masimo's patents, including the '765 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs. Masimo filed provisional patent applications that led to the '765 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor. Lamego is a named inventor of the '765 patent. Defendant had knowledge of the '765 patent no later than the filing of this Second Amended Complaint.

133. Upon information and belief, Defendant has actively induced others to infringe the '765 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '765 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be

used to infringe the '765 patent.  Defendant's acts constitute infringement of the '765 patent in violation of 35 U.S.C. § 271(b).

134.   Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '765 patent.  By way of example only, upon information and belief, Defendant actively induces direct infringement of the '765 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices, including use with Apple iPhones. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

135. Upon information and belief, Defendant's acts constitute contributory infringement of the '765 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '765 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendant to be especially made or especially adapted for use in an infringement of the '765 patent.

136.   Defendant's infringement of the '765 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '765 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

137.   Because of Defendant's infringement of the '765 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

138. Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

### XIV. SEVENTH CAUSE OF ACTION
### (INFRINGEMENT OF U.S. PATENT NO. 10,702,194)

139. Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

140. Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 1 of the '194 patent under at least 35 U.S.C. § 271(a), (b), and (c).

141. Upon information and belief, Defendant has directly infringed one or more claims of the '194 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

142. For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices in combination with iPhone devices include all of the limitations of Claim 1 of the '194 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1. The Apple Watch Series 4 and later devices in combination with iPhone devices are physiological measurement systems with physiological sensors as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



143. The Apple Watch Series 4 and later devices include one or more emitters configured to emit light into tissue of a user, and first and second sets of four photodiodes, wherein upon information and belief the photodiodes in each set are connected to one another in parallel to provide a two signal streams each of the at least photodiodes has a corresponding window that allows light to pass through to the photodiode as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



144. The photodiodes output signals responsive to light from the light emitters attenuated by body tissue. Upon information and belief, the signals are

1  indicative of a physiological parameter (for example, heart rate) of the wearer.

2  145. Upon information and belief, relevant technology in the Apple

3  Watch Series 4 and later devices is described in the below citation to U.S. Patent

4  Application Publication 2019/0072912 (the '912 publication). The Apple

5  Watch Series 4 and later devices include a wall that surrounds at least the

6  photodiodes, a cover comprising a rigid protruding convex surface above the

7  photodiodes and wall. Fig. 4C and the corresponding text of the '912

8  publication show, for example, such wall and cover:



FIG. 4C

146. The Apple Watch Series 4 and later devices include a storage

device configured to at least temporarily store at least the measurements of the

physiological parameter and communicate wirelessly with iPhone devices that

include one or more processors configured to wirelessly receive one or more

signals from the physiological sensor device, the one or more signals responsive

-54-

to at least a physiological parameter of the user, and a touch-screen display configured to provide a user interface to display indicia responsive to measurements of the physiological parameter with an orientation of the user interface configurable as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666 and as further described at https://support.apple.com/en-us/HT204505:



147. Upon information and belief, Defendant has knowledge of Masimo's patents, including the '194 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs. Masimo filed provisional patent applications that led to the '194 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor. Lamego is a named inventor of the '194 patent. Defendant had knowledge of the '194 patent no later than the filing of this Second Amended Complaint.

148. Upon information and belief, Defendant has actively induced others to infringe the '194 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '194 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be

used to infringe the '194 patent. Defendant's acts constitute infringement of the '194 patent in violation of 35 U.S.C. § 271(b).

149. Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '194 patent. By way of example only, upon information and belief, Defendant actively induces direct infringement of the '194 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices, including use with Apple iPhones. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

150. Upon information and belief, Defendant's acts constitute contributory infringement of the '194 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '194 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendant to be especially made or especially adapted for use in an infringement of the '194 patent.

151. Defendant's infringement of the '194 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '194 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

152. Because of Defendant's infringement of the '194 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

153.   Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XV.  EIGHTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,702,195)

154.   Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

155.   Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 1 of the '195 patent under at least 35 U.S.C. § 271(a), (b), and (c).

156.   Upon information and belief, Defendant has directly infringed one or more claims of the '195 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

157.   For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices in combination with iPhone devices include all of the limitations of Claim 1 of the '195 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1.  The Apple Watch Series 4 and later devices are are user-worn physiological measurement devices as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



158.   The Apple Watch Series 4 and later devices include one or more emitters configured to emit light into tissue of a user, a first set of four photodiodes connected to one another in parallel to provide a first signal stream and a second set of four photodiodes connected to one another in parallel to provide a second signal stream and positioned on a first surface and surrounded by a wall that is operably connected to the first surface, as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



159.   Upon information and belief, relevant technology in the Apple Watch Series 4 and later devices is described in the below citation to U.S. Patent Application Publication 2019/0072912 (the '912 publication).   The Apple Watch Series 4 and later devices include a wall that surrounds the photodiodes, a cover located above the wall and comprising a single protruding convex surface configured to be located between tissue of the user and the photodiodes when the physiological measurement device is worn by the user, wherein the physiological measurement device provides a plurality of optical paths, wherein each of the optical paths exits an emitter of the one or more emitters, passes through tissue of the user, passes through the single protruding convex surface, and arrives at a corresponding photodiode of the at least one of the first or second sets of photodiodes, the corresponding photodiode configured to receive light emitted by the emitter after traversal by the light of a corresponding optical path of the plurality of optical paths and after attenuation of the light by tissue of the user.  Fig. 4C and the corresponding text of the '912 publication show, for example, such wall and cover:

FIG. 4C

160. Upon information and belief, Defendant has knowledge of Masimo's patents, including the '195 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs. Masimo filed provisional patent applications that led to the '195 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor. Lamego is a named inventor of the '195 patent. Defendant had knowledge of the '195 patent no later than the filing of this Second Amended Complaint.

161. Upon information and belief, Defendant has actively induced others to infringe the '195 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '195 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be

1    used to infringe the '195 patent. Defendant's acts constitute infringement of the
2    '195 patent in violation of 35 U.S.C. § 271(b).

3        162.   Upon information and belief, Defendant actively induces users to
4    directly infringe the asserted claims of the '195 patent. By way of example
5    only, upon information and belief, Defendant actively induces direct
6    infringement of the '195 patent by providing directions, demonstrations, guides,
7    manuals, training for use, and/or other materials necessary for the use of the
8    Apple Watch Series 4 and later devices, including use with Apple iPhones.
9    Upon information and belief, Defendant knew or should have known that these
10   activities would cause direct infringement.

11       163.   Upon information and belief, Defendant's acts constitute
12   contributory infringement of the '195 patent in violation of 35 U.S.C. § 271(c).
13   Upon information and belief, Defendant contributorily infringes because, among
14   other things, Defendant offers to sell and/or sells within the United States,
15   and/or imports into the United States, components of the Apple Watch Series 4
16   and later devices and Apple iPhones that constitute material parts of the
17   invention of the asserted claims of the '195 patent, are not staple articles or
18   commodities of commerce suitable for substantial non-infringing use and are
19   known by Defendant to be especially made or especially adapted for use in an
20   infringement of the '195 patent.

21       164.   Defendant's infringement of the '195 patent is willful, deliberate,
22   and intentional by continuing its acts of infringement after becoming aware of
23   the '195 patent and its infringement thereof, thus acting in reckless disregard of
24   Masimo's patent rights.

25       165.   Because of Defendant's infringement of the '195 patent, Masimo
26   has suffered and will continue to suffer irreparable harm and injury, including
27   monetary damages in an amount to be determined at trial.

28

166.   Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XVI.  NINTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,709,366)

167.   Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

168.   Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 1 of the '366 patent under at least 35 U.S.C. § 271(a), (b), and (c).

169.   Upon information and belief, Defendant has directly infringed one or more claims of the '366 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

170.   For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices include all of the limitations of Claim 1 of the '366 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1.   The Apple Watch Series 4 and later devices are noninvasive physiological parameter measurement devices adapted to be worn by a wearer as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:

-62-



171.  The Apple Watch Series 4 and later devices include upon information and belief one or more emitters, a substrate having a surface, a first set of four photodiodes arranged on the surface and spaced apart from each other and connected to one another in parallel to provide a first signal stream responsive to light from at least one of the one or more light emitters attenuated by body tissue, a second set of four photodiodes arranged on the surface and spaced apart from each other and connected to one another in parallel to provide a second signal stream responsive to light from at least one of the one or more light emitters attenuated by body tissue, at least one of the first signal stream or the second signal stream includes information usable to determine a physiological parameter of a wearer of the noninvasive physiological parameter measurement device as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:

1
2
3
4
5
6
7
8
9
10



11    172.  Upon  information  and  belief,  relevant  technology  in  the  Apple
12 Watch Series 4 and later devices is described in the below citation to U.S. Patent
13 Application  Publication  2019/0072912  (the  '912  publication).    The  Apple
14 Watch Series 4 and later devices include a wall extending from the surface and
15 configured to surround at least the first and second sets of photodiodes; and a
16 cover arranged to cover at least a portion of the surface of the substrate, wherein
17 the cover comprises a protrusion that extends over all of the photodiodes of the
18 first and second sets of photodiodes arranged on the surface, and wherein the
19 cover is further configured to cover the wall.  Fig. 4C and the corresponding text
20 of the '912 publication show, for example, such wall and cover:

21
22
23
24
25
26
27
28



FIG. 4C

173. Upon information and belief, Defendant has knowledge of Masimo's patents, including the '366 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs. Masimo filed provisional patent applications that led to the '366 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor. Lamego is a named inventor of the '366 patent. Defendant had knowledge of the '366 patent no later than the filing of this Second Amended Complaint.

174. Upon information and belief, Defendant has actively induced others to infringe the '366 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '366 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be

used to infringe the '366 patent. Defendant's acts constitute infringement of the '366 patent in violation of 35 U.S.C. § 271(b).

175. Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '366 patent. By way of example only, upon information and belief, Defendant actively induces direct infringement of the '366 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices, including use with Apple iPhones. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

176. Upon information and belief, Defendant's acts constitute contributory infringement of the '366 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '366 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendant to be especially made or especially adapted for use in an infringement of the '366 patent.

177. Defendant's infringement of the '366 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '366 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

178. Because of Defendant's infringement of the '366 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

179.   Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XVII.  TENTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 6,771,994)

180.   Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

181.   Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 15 of the '994 patent under at least 35 U.S.C. § 271(a), (b), and (c).

182.   Upon information and belief, Defendant has directly infringed one or more claims of the '994 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

183.   For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices include all of the limitations of Claim 15 of the '994 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1.   Upon information and belief, the Apple Watch Series 4 and later devices detect light transmitted through body tissue carrying pulsing blood to determine heart rate as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



184.   The Apple Watch Series 4 and later devices include at least one light emission device and a light sensitive detector as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:

185.   The detectors output signals responsive to light from the light emitters attenuated by body tissue.  Upon information and belief, the signals are indicative of a physiological parameter (for example, heart rate) of the wearer.

186.   Upon information and belief, relevant technology in the Apple Watch Series 4 and later devices is described in the below citation to U.S. Patent Application Publication 2019/0090806 (the '806 publication).   The Apple

Watch Series 4 and later devices include a plurality of louvers positioned over the light sensitive detector to accept light from the at least one light emission device originating from a general direction of the at least one light emission device and then transmitting through body tissue carrying pulsing blood, wherein the louvers accept the light when the sensor is properly applied to tissue of a patient. Upon information and belief, this technology is described, for example, in Fig. 7 and the corresponding text of the '806 publication:



FIG. 7

187. Upon information and belief, Defendant has knowledge of Masimo's patents, including the '994 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs. Masimo filed a patent application that led to the '994 patent on June 16, 2000. The '994 patent issued on August 3, 2004, and Masimo has maintained the patent while O'Reilly and Lamego were with Masimo and/or Cercacor. Defendant had knowledge of the '994 patent no later than the filing of the original Complaint.

188. Upon information and belief, Defendant has actively induced others to infringe the '994 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '994 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be used to infringe the '994 patent. Defendant's acts constitute infringement of the '994 patent in violation of 35 U.S.C. § 271(b).

189. Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '994 patent. By way of example only, upon information and belief, Defendant actively induces direct

infringement of the '994 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

190. Upon information and belief, Defendant's acts constitute contributory infringement of the '994 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices that constitute material parts of the invention of the asserted claims of the '994 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '994 patent.

191. Defendant's infringement of the '994 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '994 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

192. Because of Defendant's infringement of the '994 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

193. Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

# XVIII.  ELEVENTH CAUSE OF ACTION

## (INFRINGEMENT OF U.S. PATENT NO. 8,457,703)

194.    Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

195.    Upon information and belief, Defendant's products, including at least the Apple Watch Series 3 and later devices, infringe at least Claim 1 of the '703 patent under at least 35 U.S.C. § 271(a), (b), and (c).

196.    Upon information and belief, Defendant has directly infringed one or more claims of the '703 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 3 and later devices.

197.    For example, upon information and belief, in operation, the Apple Watch Series 3 and later devices include all of the limitations of Claim 1 of the '703 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1.  The Apple Watch Series 3 and later devices provide an indication of a physiological parameter (for example, heart rate) of the wearer as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



198.   The Apple Watch Series 3 and later devices drive one or more light sources configured to emit light into tissue and receives one or more signals from one or more detectors configured to detect light after attenuation by tissue as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



199.   The detectors output signals responsive to light from the light emitters attenuated by body tissue.  Upon information and belief, the signals are indicative of a physiological parameter (for example, heart rate) of the wearer.

200.   Upon information and belief, the Apple Watch Series 3 and later devices continuously operate at a lower power consumption level to determine measurement values for heart rate, as described at https://support.apple.com/en-us/HT204666:

The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment.

When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate.

201. Upon information and belief, the Apple Watch Series 3 and later devices as described above compare processing characteristics to a predetermined threshold, and when the processing characteristics pass the threshold, the Apple Watch Series 3 and later devices transition to continuously operating at a higher power consumption level, wherein the continuously operating at the lower power consumption level comprises reducing activation of an attached sensor, the sensor positioning the light sources and the detectors proximate to the tissue. Upon information and belief, relevant technology in the Apple Watch Series 3 and later devices is described in International Application Publication WO 2018/226305 (the '305 publication), for example, at paragraphs [0055]-[0061].

202. Upon information and belief, Defendant has knowledge of Masimo's patents, including the '703 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs. Masimo filed a provisional patent application that led to the '703 patent on July 2, 2001. The '703 patent issued on June 4, 2013, while O'Reilly and Lamego were with Masimo and/or Cercacor. Defendant had knowledge of the '703 patent no later than the filing of the original Complaint.

203. Upon information and belief, Defendant has actively induced others to infringe the '703 patent by marketing and selling the above Apple

Watch Series 3 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '703 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 3 and later devices be used to infringe the '703 patent. Defendant's acts constitute infringement of the '703 patent in violation of 35 U.S.C. § 271(b).

204. Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '703 patent. By way of example only, upon information and belief, Defendant actively induces direct infringement of the '703 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 3 and later devices. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

205. Upon information and belief, Defendant's acts constitute contributory infringement of the '703 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 3 and later devices that constitute material parts of the invention of the asserted claims of the '703 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '703 patent.

206. Defendant's infringement of the '703 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '703 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

207.   Because of Defendant's infringement of the '703 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

208.   Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XIX.  TWELFTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,433,776)

209.   Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

210.   Upon information and belief, Defendant's products, including at least the Apple Watch Series 3 and later devices, infringe at least Claim 1 of the '776 patent under at least 35 U.S.C. § 271(a), (b), and (c).

211.   Upon information and belief, Defendant has directly infringed one or more claims of the '776 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 3 and later devices.

212.   For example, upon information and belief, in operation, the Apple Watch Series 3 and later devices include all of the limitations of Claim 1 of the '776 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1.   The Apple Watch Series 3 and later devices are configured to monitor at least a pulse rate of a patient by processing signals responsive to light attenuated by body tissue of the wearer as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



213. The Apple Watch Series 3 and later devices drive one or more light sources configured to emit light into tissue and receives one or more signals from one or more detectors configured to detect light after attenuation by tissue as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:

214. Upon information and belief, the Apple Watch Series 3 and later devices operate according to a first control protocol, wherein said operating includes activating a first control protocol light source in accordance with the

first control protocol, the first control protocol light source including one or more of a plurality of light sources, and when operating according to the first control protocol, calculating, by the patient monitor, measurement values of the pulse rate, the measurement values responsive to light from the first control protocol light source, detected by a detector of an optical sensor after attenuation by body tissue of the patient using the patient monitor as explained, for example, on the Apple website at https://support.apple.com/en-us/HT204666. That webpage explains the optical heart sensor uses photoplethysmography. "Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate." That webpage further explains that the "optical heart sensor can also use infrared light. This mode is what Apple Watch uses when it measures your heart rate in the background, and for heart rate notifications. Apple Watch uses green LED lights to measure your heart rate during workouts and Breathe sessions, and to calculate walking average and Heart Rate Variability (HRV)."

215. Upon information and belief, the Apple Watch Series 3 and later devices generate a trigger signal, wherein generating said trigger signal is responsive to at least one of: a comparison of processing characteristics to a predetermined threshold, a physiological event, or signal quality characteristics of signals received from the detector, and in response to receiving the trigger signal, operating the patient monitor according to a second control protocol

different from the first control protocol, wherein said operating includes activating a second control protocol light source in accordance with the second control protocol, the second control protocol light source including one or more of the plurality of light sources, and when operating the patient monitor according to the second control protocol, calculating the measurement values of the pulse rate, the measurement values responsive to light from the second control protocol light source, detected by the detector after attenuation by the body tissue of the patient using the patient monitor, wherein said operating of the patient monitor according to the first control protocol operates the first control protocol light source according to a first duty cycle and said operating of the patient monitor according to the second control protocol operates the second control protocol light source according to a second duty cycle, wherein power consumption of the first control protocol light source according to the first duty cycle is different than power consumption of the second control protocol light source according to the second duty cycle. Upon information and belief, relevant technology in the Apple Watch Series 3 and later devices is described in International Application Publication WO 2018/226305 (the '305 publication), for example, at paragraphs [0055]-[0061].

216. Upon information and belief, Defendant has knowledge of Masimo's patents, including the '776 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs. Masimo filed a provisional patent application that led to the '776 patent on July 2, 2001. The '776 patent issued on June 4, 2013, while O'Reilly and Lamego were with Masimo and/or Cercacor. Defendant had knowledge of the '776 patent no later than the filing of the original Complaint.

217. Upon information and belief, Defendant has actively induced others to infringe the '776 patent by marketing and selling the above Apple Watch Series 3 and later devices, knowing and intending that such systems

-78-

would be used by customers and end users in a manner that infringes the '776 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 3 and later devices be used to infringe the '776 patent. Defendant's acts constitute infringement of the '776 patent in violation of 35 U.S.C. § 271(b).

218. Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '776 patent. By way of example only, upon information and belief, Defendant actively induces direct infringement of the '776 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 3 and later devices. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

219. Upon information and belief, Defendant's acts constitute contributory infringement of the '776 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 3 and later devices that constitute material parts of the invention of the asserted claims of the '776 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '776 patent.

220. Defendant's infringement of the '776 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '776 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

221.  Because of Defendant's infringement of the '776 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

222.  Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XX.  THIRTEENTH CAUSE OF ACTION
## (TRADE SECRET MISAPPROPRIATION UNDER CALIFORNIA'S UNIFORM TRADE SECRET ACT)

223.  Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

224.  This is a cause of action for Misappropriation of Trade Secrets under California's Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 *et seq*., based upon Defendant's and its employees' wrongful and improper acquisition, use, and disclosure of confidential and proprietary trade secret information of Plaintiffs.

225.  Plaintiffs own the Confidential Information.  Plaintiffs' Confidential Information is currently or was, at least at the time of Defendant's and its employees' misappropriation, not generally known to the public or to other persons who can obtain economic value from its disclosure or use.  All individuals with access to Plaintiffs' Confidential Information were instructed to keep it confidential, and they were subject to obligations to keep Plaintiffs' Confidential Information secret.  For example, Plaintiffs marked documents confidential, and instructed those individuals with access to the information to treat it as confidential, restricted access to the information, and required individuals and companies to enter into confidentiality agreements with Plaintiffs in order to receive Plaintiffs' Confidential Information.

226. Plaintiffs' Confidential Information derives independent economic value, actual and potential, because it is, or was at the time of Defendant's and its employees' misappropriation, not generally known to the public or to other persons who can obtain economic value from its disclosure or use. The actual and potential independent economic value of Plaintiffs' Confidential Information is derived from not being generally known because it gives or gave Plaintiffs an actual and potential business advantage over others who do not know the information and who could obtain economic value from its disclosure or use. If others obtained access to Plaintiffs' Confidential Information, they could use the information to deprive Plaintiffs of the business advantage it has over others, as well as to themselves obtain a business advantage over others.

227. Plaintiffs made reasonable efforts under the circumstances to keep Plaintiffs' Confidential Information from becoming generally known. For example, Plaintiffs' efforts included marking documents confidential, instructing individuals with access to the information to treat it as confidential, restricting access to the information, and requiring individuals and companies to enter into confidentiality agreements with Plaintiffs in order to receive Plaintiffs' Confidential Information. Accordingly, Plaintiffs' Confidential Information constitutes a "trade secret" pursuant to Cal. Civ. Code § 3426.1.

228. Plaintiffs are informed and believe, and thereon allege, that Defendant misappropriated Plaintiffs' Confidential Information by acquisition at least from Plaintiffs' former employees who left Plaintiffs to work for Defendant. For example, upon information and belief, O'Reilly and Lamego disclosed Plaintiffs' Confidential Information, without Plaintiffs' consent, to Defendant. At the time of disclosure, O'Reilly and Lamego knew, or had reason to know, that their knowledge of Plaintiffs' Confidential Information was acquired by an employer-employee relationship, fiduciary relationship, and employment agreements, which created a duty for them to keep Plaintiffs' Confidential

Information secret.  O'Reilly and Lamego also knew, or had reason to know, that disclosing Plaintiffs' Confidential Information to Defendant constituted a breach of those obligations.

229.  At the time of acquisition, Defendant also knew, or had reason to know, that its employees obtained Plaintiffs' Confidential Information pursuant to a duty or obligation to keep Plaintiffs' Confidential Information secret.  This duty or obligation arose from an employer-employee relationship, fiduciary relationship, and employment agreements.  For example, among other things, Defendant knew O'Reilly was the Chief Medical Officer at Masimo.  Defendant knew O'Reilly was in charge of Masimo's data collection efforts at hospitals and was involved in strategic plans for the company.  Defendant also knew Lamego was the Chief Technical Officer of Cercacor and a Research Scientist at Masimo.  Defendant knew Lamego and O'Reilly were each under a duty to maintain the secrecy of the information they obtained from Plaintiffs.  Defendant knew Plaintiffs considered the information confidential by virtue of its prior relationship with Plaintiffs.  Defendant had also received a letter dated January 24, 2014, from Plaintiffs explaining that Lamego possessed Plaintiffs' Confidential Information, asking Defendant not to use such information, and attaching a copy of Lamego's Employee Confidentiality Agreement with Cercacor.  The Employee Confidentiality Agreement stated, among other things, "[a]fter my employment with [Cercacor] has terminated, I will not disclose or make use of any Confidential Information for any purpose, either on my own or on behalf of another business."  Lamego also worked at Apple for less than one year, but quickly disclosed information to Apple that took many years to develop at Plaintiffs.  Apple knew or at least should have known that Lamego could not develop the detailed trade secrets described herein in such a short amount of time.  On information and belief, Apple targeted and recruited Plaintiffs' employees,

including O'Reilly and Lamego, because of their knowledge of Plaintiffs' Confidential Information.

230. Nevertheless, on information and belief, Defendant induced its employees, including Lamego and O'Reilly, to use and/or disclose Plaintiffs' Confidential Information and the employees used and/or disclosed Plaintiffs' Confidential Information for the benefit of Defendant while employed by Defendant. Defendant met with Plaintiffs because Defendant wanted Plaintiffs' technology and wanted to integrate it into Defendant's products. After learning more about the capability of Plaintiffs' technology at the meetings, Defendant began systematically hiring Plaintiffs' employees, including Masimo's Chief Medical Officer, Michael O'Reilly, and many others. Apple's Chief Executive Officer, Tim Cook, interviewed O'Reilly. Tim Cook has publicly stated that he sees healthcare as central to Apple's future. Defendant hired O'Reilly to oversee Apple's strategic objective in healthcare and gave him the title of Apple's Vice President of Medical Technology.

231. ███████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

After Defendant hired Lamego, Plaintiffs informed Apple by letter that Lamego possessed Plaintiffs' Confidential Information and asked Apple to respect Plaintiffs' Confidential Information. Defendant ignored these warnings and sought out and obtained extensive patent disclosures from Lamego in the short time he worked at Apple and selectively requested non-publication of those applications containing Plaintiffs' Confidential Information. ███████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

████████████████████████████ Apple had Lamego work on the Apple Watch project and tasked him with producing key intellectual property related to bio-sensing, defining required resources for current and future bio-sensing functionalities, proposing and reviewing hardware and algorithm architectures, and advising Apple's team regarding bio-sensing functionalities.

232.    Apple provided substantial financial incentives, which had the effect of enticing O'Reilly, Lamego, and others to use and/or disclose Plaintiffs' Confidential Information to help Apple in its strategic objective in healthcare. O'Reilly later informed Plaintiffs that, although he viewed Masimo as his family, Apple had offered him so much money that he simply could not refuse. Defendant knew or should have known that those incentives would cause O'Reilly, Lamego, and others to use and disclosure of Plaintiffs' Confidential Information.  Apple thereby induced Plaintiffs' former employees to use and disclose Plaintiffs' Confidential Information while employed by Apple and for Apple's benefit.  Thus, Defendant acquired Plaintiffs' Confidential Information through the improper means of its employees breaching a duty to maintain secrecy owed to Plaintiffs, as well as inducing its employees to breach a duty to maintain secrecy owed to Plaintiffs.

233.    On information and belief, Defendant and its employees used and disclosed Plaintiffs' Confidential Information it obtained from Plaintiffs and their former employees without Plaintiffs' express or implied consent.  Defendant and its employees used and disclosed Plaintiffs' Confidential Information at least by incorporating it into Defendant's products, by filing patent applications containing Plaintiffs' Confidential Information, and using Plaintiffs' business and sales strategies without Plaintiffs' express or implied consent, as discussed in more detail in paragraphs 234-256 below.

████████████████████████████████████

████████████████████████████████████████



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28 Apple had

1  Lamego work on the Apple Watch project and tasked him with producing key
2  intellectual property related to bio-sensing, defining required resources for current
3  and future bio-sensing functionalities, proposing and reviewing hardware and
4  algorithm architectures, and advising Apple's team regarding bio-sensing
5  functionalities.



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Apple had Lamego work on the Apple Watch project and tasked him with producing key intellectual property related to bio-sensing, defining required resources for current and future bio-sensing functionalities, proposing and reviewing hardware and algorithm architectures, and advising Apple's team regarding bio-sensing functionalities.





244. Apple had Lamego work on the Apple Watch project and tasked him with producing key intellectual property related to bio-sensing, defining required resources for current and future bio-sensing functionalities, proposing and reviewing hardware and algorithm architectures, and advising Apple's team regarding bio-sensing functionalities.





247.

Apple's Chief Executive Officer, Tim Cook, interviewed O'Reilly. Tim Cook has publicly stated that he sees healthcare as central to Apple's future. Defendant hired O'Reilly to oversee Apple's strategic objective in healthcare and gave him the title of Apple's Vice President of Medical Technology. O'Reilly represents Apple before the FDA and hospitals about Apple's healthcare projects, including the Apple Watch.







Apple's Chief Executive Officer, Tim Cook, interviewed O'Reilly. Tim Cook has publicly stated that he sees healthcare as central to Apple's future. Apple hired O'Reilly to oversee Apple's strategic objective in healthcare and gave him the title of Apple's Vice President of Medical Technology. O'Reilly represents Apple before the FDA and hospitals about Apple's healthcare projects, including the Apple Watch.



256. 

Apple had Lamego work on the Apple Watch project and tasked him with producing key intellectual property related to bio-sensing, defining required resources for current and future bio-sensing functionalities, proposing and reviewing hardware and algorithm architectures, and advising Apple's team regarding bio-sensing functionalities.

257. As discussed above, Defendant knew or had reason to know that its knowledge of Plaintiffs' Confidential Information came from Plaintiffs, that its employees' knowledge of Plaintiffs' Confidential Information came from Plaintiffs, and that its employees had previously acquired Plaintiffs' Confidential Information by virtue of employer-employee and fiduciary relationships and employment agreements, all of which created a duty to keep Plaintiffs' Confidential Information secret. Thus, Apple is directly liable for its use and disclosure of Plaintiffs' Confidential Information.

258. Upon information and belief, Plaintiffs' former employees misappropriated Plaintiffs' Confidential Information by use and disclosure. ■

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████

259. Lamego and O'Reilly used and disclosed Plaintiffs' Confidential Information without Plaintiffs' consent.  At the time of the use and disclosure, Lamego and O'Reilly knew, or had reason to know, that their knowledge of Plaintiffs' Confidential Information was acquired by an employer-employee relationship, fiduciary relationship, and employment agreements, which created a duty for them to keep Plaintiffs' Confidential Information secret.  Lamego and O'Reilly also knew, or had reason to know, that using and disclosing Plaintiffs' Confidential Information to Defendant constituted a breach of those obligations. Accordingly, Lamego and O'Reilly each misappropriated Plaintiffs' Confidential Information through use and disclosure while employed by Apple.

260.  Upon information and belief, Defendant is liable for its employees' use and disclosure of Plaintiffs' Confidential Information under the doctrine of respondeat superior because its employees acted within the scope of their employment, for the benefit of Defendant, and in a manner that was generally

foreseeable as part of their duties. For example, Defendant hired O'Reilly and assigned him to help develop Defendant's relationships with clinicians and strategic plans for clinical monitoring. Apple's Chief Executive Officer, Tim Cook, interviewed O'Reilly. Defendant hired O'Reilly to oversee Apple's strategic objective in healthcare and gave him the title of Apple's Vice President of Medical Technology. In this position, O'Reilly inquired whether Cercacor was for sale. When O'Reilly was informed that Cercacor was not for sale, Defendant recruited Cercacor's Chief Technical Officer, Marcelo Lamego. Defendant assigned Lamego to help develop Defendant's non-invasive monitoring technology, quickly obtained patent disclosures from him, and then applied for numerous patents listing Lamego as an inventor. █████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████ Apple had Lamego work on the Apple Watch project and tasked him with producing key intellectual property related to bio-sensing, defining required resources for current and future bio-sensing functionalities, proposing and reviewing hardware and algorithm architectures, and advising Apple's team regarding bio-sensing functionalities. Because Plaintiffs' have leading technology, Apple provided substantial financial incentives to entice O'Reilly, Lamego, and others to help Apple in its strategic objective in healthcare, expecting them to use the specialized knowledge obtained from Plaintiffs. O'Reilly later informed Plaintiffs that, although he viewed Masimo as his family, Apple had offered him so much money that he simply could not refuse. Defendant knew or should have known that those incentives, as well as the expectations that they had specialized knowledge from Plaintiffs, would cause

O'Reilly, Lamego, and others to use and disclosure of Plaintiffs' Confidential Information.

261. Accordingly, the former employees used and disclosed Plaintiffs' Confidential Information within the scope of their employment for Defendant and for the benefit of Defendant. As discussed above, the former employees knew or had reason to know that their knowledge of Plaintiffs' Confidential Information was acquired under circumstances giving rise to a duty to maintain its secrecy and limit its use. O'Reilly's actions were an outgrowth of his employment and inherent in the working environment because Defendant assigned O'Reilly to develop Defendant's relationships with clinicians and strategic plans for clinical monitoring. Lamego's actions were an outgrowth of his employment and inherent in the working environment because Defendant assigned Lamego to help develop Defendant's non-invasive monitoring technology and provide patent disclosures. O'Reilly and Lamego's actions were at least typical or broadly incidental to Defendant's business of developing non-invasive monitoring technology, filing patents on such technology, developing relationships with clinicians, and developing strategic plans for clinical monitoring. O'Reilly and Lamego's actions were at least generally foreseeable as part of their duties to develop non-invasive monitoring technology, provide patent disclosures, develop relationships with clinicians, and develop strategic plans for clinical monitoring. As a result, Defendant is liable for its employees' actions under the doctrine of respondeat superior.

262. Plaintiffs had no way of knowing, or learning, of Defendant's and its employees' improper acquisition, use, or disclosure prior to January 10, 2017. Defendant did not publish Plaintiffs' Confidential Information in patent applications until after January 10, 2017, and the first product at issue was not announced until 2018. Additionally, based at least on Plaintiffs' conversations with Lamego, Plaintiffs' letter to Apple, and Plaintiffs' confidentiality

-101-

agreement with Apple, Plaintiffs had no reason to suspect or believe that Defendant had ignored Plaintiffs' letter and improperly acquired, used, and disclosed Plaintiffs' Confidential Information until after Plaintiffs discovered patent applications published after January 10, 2017, and accused products announced in 2018. In September 2020, Apple announced partnerships with three of the health care systems that Plaintiffs were cultivating and targeting for research collaborations on patient health parameter measurements.

263. Defendant and the former employees also led Plaintiffs to believe they intended to respect Plaintiffs' intellectual property rights and concealed Defendant's and its employees' acquisition, use, and disclosure of Plaintiffs' Confidential Information. After O'Reilly left Masimo, he assured Plaintiffs that he and Apple were not and would not be competing against Plaintiffs. Similarly, when Lamego left Cercacor, he assured Plaintiffs that he would not violate his agreements with Plaintiffs and volunteered that he would not work on technology similar to Plaintiffs' technology. Plaintiffs notified Defendant that Lamego possessed the Confidential Information on January 24, 2014. Defendant never informed Plaintiffs that Lamego or O'Reilly had used or disclosed the Confidential Information. Defendant also requested non-publication of patent applications, which prevented Plaintiffs from learning of the contents of those applications until much later. For example, Defendant requested non-publication of the '268 Application (which issued as the '754 Patent), the '422 Application (which issued as the '997 Patent), and the '664 Application (which issued as the '095 Patent). On information and belief, Defendant requested non-publication of those applications to prevent Plaintiffs from learning those applications contained Plaintiffs' Confidential Information, and from learning the Defendant had acquired, used and disclosed Plaintiffs' Confidential Information. On information and belief, Defendant does not normally request

non-publication of patent applications and, instead, allows the vast majority of its patent applications to publish in the ordinary course.

264. Plaintiffs were harmed by Defendant's and its employees' acquisition, use, and disclosure of Plaintiffs' Confidential Information, and Defendant's and its employees' actions were substantial factors in causing Plaintiffs' harm. As a direct and proximate result of Defendant's and its employees' willful, improper, and unlawful acquisition, use, and disclosure of Plaintiffs' trade secrets, Plaintiffs have suffered, and will continue to suffer, great harm and damage. Plaintiffs will continue to be irreparably damaged unless Defendant is enjoined from further use and disclosure of Plaintiffs' Confidential Information.

265. Defendant and its employees were unjustly enriched by Defendant's acquisition, use, and disclosure of Plaintiffs' Confidential Information, and Defendant's and its employees' actions were substantial factors in causing Defendant to be unjustly enriched. Defendant and its employees were unjustly enriched because its misappropriation of Plaintiffs' Confidential Information caused Defendant and its employees to receive a benefit that they otherwise would not have achieved.

266. If neither damages nor unjust enrichment caused by Defendant's and its employees' misappropriation of Plaintiffs' Confidential Information is provable at trial, Plaintiffs are entitled to a reasonable royalty for the period of time that Defendant's and its employees use of Plaintiffs' Confidential Information could have been prohibited.

267. The aforementioned acts of Defendant and its employees wrongfully misappropriating Plaintiffs' trade secrets were, and continue to be, willful and malicious, warranting an award of reasonable attorneys' fees, as provided by Cal. Civ. Code § 3426.4, and exemplary damages, as provided by Cal. Civ. Code §§ 3294 and 3426.3(c).

# XXI.  FOURTEENTH CAUSE OF ACTION

# (CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 10,078,052)

268.  Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

269.  Lamego is a named inventor of U.S. Patent 10,078,052 presently recorded as owned by Apple.

270.  The '052 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees.  For example, Claim 1 of the '052 Patent recites an electronic device comprising a housing defining an aperture; an optical sensing system comprising a light emitter for emitting light through the aperture, the light emitter positioned adjacent the aperture; and a light detector for obtaining a first portion of the light after the first portion of the light reflects from an object; and a reflector disposed about the aperture and adapted to reflect a second portion of the light back into the object after the second portion of the light reflects from the object.  Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab.  Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '052 Patent, and should have been named as an inventor on the '052 Patent.

271.  In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

272.  Those assignments vested in Masimo all legal and equitable title to all patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '052 Patent and

-104-

Masimo has standing to seek correction of inventorship to perfect Masimo's ownership interest in the '052 Patent.

273.   In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  Accordingly, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '052 Patent from, or jointly conceived such subject matter with, Masimo employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '052 Patent and has standing to seek correction of inventorship to perfect Cercacor's ownership interest in the '052 Patent.

274.   Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiffs seek an order directing the U.S. Patent and Trademark Office to correct the inventorship of the '052 Patent by adding inventor Diab as a named inventor.

## XXII.  FIFTEENTH CAUSE OF ACTION
## (CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 10,247,670)

275.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

276.   Lamego is a named inventor of U.S. Patent 10,247,670 presently recorded as owned by Apple.

277.   The '670 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees.  For example, Claim 1 of the '670 Patent recites an electronic device comprising a housing with a surface; a reflective layer that is formed on the surface, wherein the reflective layer has first and second openings; a light emitter that emits light

through the first opening; and a light detector that receives the light emitted by the light emitter through the second opening. Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab. Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '670 Patent, and should have been named as an inventor on the '670 Patent.

278. In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

279. Those assignments vested in Masimo all legal and equitable title to all patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '670 Patent and Masimo has standing to seek correction of inventorship to perfect Masimo's ownership interest in the '670 Patent.

280. In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter. An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3). Accordingly, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '670 Patent from, or jointly conceived such subject matter with, Masimo employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '670 Patent and has standing to seek correction of inventorship to perfect Cercacor's ownership interest in the '670 Patent.

281.   Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiffs seek an order directing the U.S. Patent and Trademark Office to correct the inventorship of the '670 Patent by adding inventor Diab as a named inventors.

## XXIII.  SIXTEENTH CAUSE OF ACTION
### (CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 9,952,095)

282.  Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

283.  Lamego is a named inventor of U.S. Patent 9,952,095 presently recorded as owned by Apple.

284.   The '095 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees.  For example, Claim 1 of the '095 Patent recites an electronic device comprising a housing comprising a surface adapted to be positioned proximate a measurement site of a subject; a biometric sensor positioned at least partially within the surface and comprising: a plurality of light sources for emitting light toward the measurement site at a selected modulation frequency; and an optical sensor for obtaining light exiting the measurement site; and an input amplifier coupled to the output of the biometric sensor and disposed within the housing; a high pass filter coupled to an output of the input amplifier and disposed within the housing, the high pass filter having a cutoff frequency above that of a periodic biometric property of the measurement site; an output amplifier coupled to an output of the high pass filter and disposed within the housing; and an analog to digital converter coupled to an output of the output amplifier and disposed within the housing.  Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab.  Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '095 Patent, and should have been named as an inventor on the '095 Patent.

285.   In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

286.   Those assignments vested in Masimo all legal and equitable title to all patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '095 Patent and Masimo has standing to seek correction of inventorship to perfect Masimo's ownership interest in the '095 Patent.

287.   In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  Accordingly, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '095 Patent from, or jointly conceived such subject matter with, Masimo employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '095 Patent and has standing to seek correction of inventorship to perfect Cercacor's ownership interest in the '095 Patent.

288.   Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiffs seek an order directing the U.S. Patent and Trademark Office to correct the inventorship of the '095 Patent by adding inventor Diab as a named inventor.

## XXIV. SEVENTEENTH CAUSE OF ACTION
## (CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 10,219,754)

289. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

290. Lamego is a named inventor of U.S. Patent 10,219,754 presently recorded as owned by Apple.

291. The '754 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees. For example, Claim 1 of the '754 Patent recites a method for estimating physiological parameters when modulated light from a first light source and a second light source is emitted toward a body part of a user, the method comprising determining a first multiplier value by: turning on the first light source; generating a first initial signal in response to capturing a first light sample corresponding to the first light source; demodulating the first initial signal to produce first initial demodulated signals; filtering and decimating the first initial demodulated signals; and determining the first multiplier value based on the filtered and decimated first initial demodulated signals; determining a second multiplier value by: turning on the second light source; generating a second initial signal in response to capturing a second light sample corresponding to the second light source; demodulating the second initial signal to produce second initial demodulated signals; filtering and decimating the second initial demodulated signals; and determining the second multiplier value based on the filtered and decimated second initial demodulated signals; capturing multiple light samples while the first light source and the second light source are turned on to emit modulated light toward the body part of the user and converting the multiple light samples into a captured signal; demodulating the captured signal to produce multiple demodulated signals; performing a first decimation stage by: low pass filtering each demodulated signal; and decimating each

-109-

demodulated signal; performing a second decimation stage after the first decimation stage by: low pass filtering each demodulated signal; and decimating each demodulated signal; demultiplexing each demodulated signal after the second decimation stage to produce a first signal associated with the first light source and a second signal associated with the second light source; multiplying the first signal by the first multiplier value using a first multiplier circuit to obtain a first conditioned signal; multiplying the second signal by the second multiplier value using a second multiplier circuit to obtain a second conditioned signal; and analyzing the first conditioned signal and the second conditioned signal to estimate the physiological parameter of the user. Lamego obtained this subject matter from discussions with, or jointly conceived it with, Al-Ali, Diab, and Weber. Accordingly, Al-Ali, Diab, and Weber are joint inventors of any patentable subject matter claimed in the '754 Patent, and should have been named as inventors on the '754 Patent.

292. In written assignments, Lamego, as well as Al-Ali, Diab, and Weber, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

293. Those assignments vested in Masimo all legal and equitable title to all patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '754 Patent and Masimo has standing to seek correction of inventorship to perfect Masimo's ownership interest in the '754 Patent.

294. In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent

applications claiming such subject matter. An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3). Accordingly, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '754 Patent from, or jointly conceived such subject matter with, Masimo employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '754 Patent and has standing to seek correction of inventorship to perfect Cercacor's ownership interest in the '754 Patent.

295. Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiffs seek an order directing the U.S. Patent and Trademark Office to correct the inventorship of the '754 Patent by adding inventors Al-Ali, Diab, and Weber as named inventors.

## XXV. EIGHTEENTH CAUSE OF ACTION
## (CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 9,723,997)

296. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

297. Lamego is a named inventor of U.S. Patent 9,723,997 presently recorded as owned by Apple.

298. The '997 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Cercacor employees. For example, Claim 20 of the '997 Patent recites a method for using a mobile personal computing device to obtain health data, comprising using a camera and a proximity sensor to emit light into a body part of a user touching a surface of the mobile personal computing device; using at least two of the camera, an ambient light sensor, or the proximity sensor to receive at least part of the emitted light reflected by the body part of the user and generate sensor data; and computing health data of the user, utilizing the processing unit, using at least the sensor data regarding the received light. Lamego obtained this subject matter from

-111-

discussions with, or jointly conceived it with, Greg Olsen. Accordingly, Olsen is a joint inventor of any patentable subject matter claimed in the '997 Patent, and should have been named as an inventor on the '997 Patent.

299. In written assignments, Lamego, as well as Olsen, agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter. An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).

300. Those assignments vested in Cercacor all legal and equitable title to all patents and patent applications reciting inventions made during their employment, such that Cercacor is at least a joint owner of the '997 Patent and Cercacor has standing to seek correction of inventorship to perfect Cercacor's ownership interest in the '997 Patent.

301. In at least one written assignment, Lamego agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Masimo, including ownership of all patents and patent applications claiming such subject matter. Accordingly, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '997 Patent from, or jointly conceived such subject matter with, Masimo employees while Lamego was an employee of Masimo, Masimo would be a joint owner of the '997 Patent and has standing to seek correction of inventorship to perfect Masimo's ownership interest in the '997 Patent.

302. Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiffs seek an order directing the U.S. Patent and Trademark Office to correct the inventorship of the '997 Patent by adding inventor Olsen as a named inventor.

# XXVI.  NINETEENTH CAUSE OF ACTION
## (CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 10,524,671)

303.  Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

304.  Lamego is a named inventor of U.S. Patent 10,524,671 presently recorded as owned by Apple.

305.  The '671 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees.  For example, Claim 1 of the '671 Patent recites a wearable device, comprising a first light source; a second light source, the second light source operating at a different wavelength than the first light source; at least one light receiver; and a processing unit communicably coupled to the first light source, the second light source, and the at least one light receiver; wherein the processing unit is configured to: use the first light source and the second light source to emit light into a body part of a user; and dependent on the light emitted by the first light source and received by the at least one light receiver, compute a pulse rate of the user using the light emitted by the second light source and received by the at least one light receiver.  Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab.  Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '671 Patent, and should have been named as an inventor on the '671 Patent.

306.  In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

307.  Those assignments vested in Masimo all legal and equitable title to all patents and patent applications reciting inventions made during their

-113-

employment, such that Masimo is at least a joint owner of the '671 Patent and Masimo has standing to seek correction of inventorship to perfect Masimo's ownership interest in the '671 Patent.

308.  In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  Accordingly, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '671 Patent from, or jointly conceived such subject matter with, Masimo employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '671 Patent and has standing to seek correction of inventorship to perfect Cercacor's ownership interest in the '671 Patent.

309.  Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiffs seek an order directing the U.S. Patent and Trademark Office to correct the inventorship of the '671 Patent by adding inventor Diab as a named inventor.

## XXVII.  TWENTIETH CAUSE OF ACTION
## (DECLARATORY JUDGMENT OF OWNERSHIP OF
## U.S. PATENT NO. 10,078,052)

310.  Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

311.  U.S. Patent 10,078,052 is recorded as owned by Apple.

312.  The '052 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees.  For example, Claim 1 of the '052 Patent recites an electronic device comprising a housing defining an aperture; an optical sensing system comprising a light emitter for

-114-

emitting light through the aperture, the light emitter positioned adjacent the aperture; and a light detector for obtaining a first portion of the light after the first portion of the light reflects from an object; and a reflector disposed about the aperture and adapted to reflect a second portion of the light back into the object after the second portion of the light reflects from the object.  Lamego obtained this subject matter from discussions with, or jointly conceived it with Diab.  Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '052 Patent, and should have been named as an inventor on the '052 Patent

313.   Lamego and Diab made any inventive contributions to at least Claim 1 while they were employees of Masimo.

314.   In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

315.   Those assignments vested in Masimo all legal and equitable title to patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '052 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '052 Patent, including foreign counterparts.

316.   In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  That assignment vested in Cercacor all legal and equitable title to patents

-115-

and patent applications reciting inventions made during his employment, such that, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '052 Patent from, or jointly conceived such subject matter with, Cercacor employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '052 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '052 Patent, including foreign counterparts.

317. Based on the forgoing, Plaintiffs seek declaratory relief under at least 28 U.S.C. §§ 2201 & 2202, as well as applicable state contract law and federal patent law, declaring that Masimo is at least a joint owner of the '052 Patent (or, to the extent it is determined that Masimo employees invented all of the patentable subject matter claimed in the '052 Patent, that Masimo is the exclusive owner), and, in the alternative, that Cercacor is a joint owner of the '052 Patent. Plaintiffs also seek an order from the Court directing the Patent Office to amend the Patent Office records to reflect the ownership interest of Masimo and/or Cercacor.

## XXVIII. TWENTY-FIRST CAUSE OF ACTION
## (DECLARATORY JUDGMENT OF OWNERSHIP OF
## U.S. PATENT NO. 10,247,670)

318. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

319. U.S. Patent 10,247,670 is recorded as owned by Apple.

320. The '670 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees. For example, Claim 1 of the '670 Patent recites an electronic device comprising a housing with a surface; a reflective layer that is formed on the surface, wherein the reflective layer has first and second openings; a light emitter that emits light through the first opening; and a light detector that receives the light emitted by

-116-

the light emitter through the second opening. Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab. Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '670 Patent, and should have been named as an inventor on the '670 Patent.

321. Lamego and Diab made any inventive contributions to at least Claim 1 while they were employees of Masimo.

322. In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

323. Those assignments vested in Masimo all legal and equitable title to patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '670 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '670 Patent, including foreign counterparts.

324. In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter. An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3). That assignment vested in Cercacor all legal and equitable title to patents and patent applications reciting inventions made during his employment, such that, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '670 Patent from, or jointly conceived such subject matter with, Cercacor employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '670 Patent and all applications, patents,

continuations, divisionals, and reissues that claim priority to the '670 Patent, including foreign counterparts.

325. Based on the forgoing, Plaintiffs seek declaratory relief under at least 28 U.S.C. §§ 2201 & 2202, as well as applicable state contract law and federal patent law, declaring that Masimo is at least a joint owner of the '670 Patent (or, to the extent it is determined that Masimo employees invented all of the patentable subject matter claimed in the '670 Patent, that Masimo is the exclusive owner), and, in the alternative, that Cercacor is a joint owner of the '670 Patent. Plaintiffs also seek an order from the Court directing the Patent Office to amend the Patent Office records to reflect the ownership interest of Masimo and/or Cercacor.

## XXIX. TWENTY-SECOND CAUSE OF ACTION
## (DECLARATORY JUDGMENT OF OWNERSHIP OF
## U.S. PATENT NO. 9,952,095)

326. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

327. U.S. Patent 9,952,095 is recorded as owned by Apple.

328. The '095 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees. For example, Claim 1 of the '095 Patent recites an electronic device comprising a housing comprising a surface adapted to be positioned proximate a measurement site of a subject; a biometric sensor positioned at least partially within the surface and comprising: a plurality of light sources for emitting light toward the measurement site at a selected modulation frequency; and an optical sensor for obtaining light exiting the measurement site; and an input amplifier coupled to the output of the biometric sensor and disposed within the housing; a high pass filter coupled to an output of the input amplifier and disposed within the housing, the high pass filter having a cutoff frequency above that of a periodic

-118-

biometric property of the measurement site; an output amplifier coupled to an output of the high pass filter and disposed within the housing; and an analog to digital converter coupled to an output of the output amplifier and disposed within the housing. Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab. Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '095 Patent, and should have been named as an inventor on the '095 Patent.

329. Lamego and Diab made any inventive contributions to at least Claim 1 while they were employees of Masimo.

330. In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

331. Those assignments vested in Masimo all legal and equitable title to patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '095 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '095 Patent, including foreign counterparts.

332. In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter. An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3). That assignment vested in Cercacor all legal and equitable title to patents and patent applications reciting inventions made during his employment, such that, to the extent the evidence establishes that Lamego obtained patentable

-119-

subject matter claimed in the '095 Patent from, or jointly conceived such subject matter with, Cercacor employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '095 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '095 Patent, including foreign counterparts.

333.   Based on the forgoing, Plaintiffs seek declaratory relief under at least 28 U.S.C. §§ 2201 & 2202, as well as applicable state contract law and federal patent law, declaring that Masimo is at least a joint owner of the '095 Patent (or, to the extent it is determined that Masimo employees invented all of the patentable subject matter claimed in the '095 Patent, that Masimo is the exclusive owner), and, in the alternative, that Cercacor is a joint owner of the '095 Patent.  Plaintiffs also seek an order from the Court directing the Patent Office to amend the Patent Office records to reflect the ownership interest of Masimo and/or Cercacor.

### XXX.  TWENTY-THIRD CAUSE OF ACTION
### (DECLARATORY JUDGMENT OF OWNERSHIP OF
### U.S. PATENT NO. 10,219,754)

334.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

335.   U.S. Patent 10,219,754 is recorded as owned by Apple.

336.   The '754 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees.  For example, Claim 1 of the '754 Patent recites a method for estimating physiological parameters when modulated light from a first light source and a second light source is emitted toward a body part of a user, the method comprising determining a first multiplier value by: turning on the first light source; generating a first initial signal in response to capturing a first light sample corresponding to the first light source; demodulating the first initial signal to

-120-

produce first initial demodulated signals; filtering and decimating the first initial demodulated signals; and determining the first multiplier value based on the filtered and decimated first initial demodulated signals; determining a second multiplier value by: turning on the second light source; generating a second initial signal in response to capturing a second light sample corresponding to the second light source; demodulating the second initial signal to produce second initial demodulated signals; filtering and decimating the second initial demodulated signals; and determining the second multiplier value based on the filtered and decimated second initial demodulated signals; capturing multiple light samples while the first light source and the second light source are turned on to emit modulated light toward the body part of the user and converting the multiple light samples into a captured signal; demodulating the captured signal to produce multiple demodulated signals; performing a first decimation stage by: low pass filtering each demodulated signal; and decimating each demodulated signal; performing a second decimation stage after the first decimation stage by: low pass filtering each demodulated signal; and decimating each demodulated signal; demultiplexing each demodulated signal after the second decimation stage to produce a first signal associated with the first light source and a second signal associated with the second light source; multiplying the first signal by the first multiplier value using a first multiplier circuit to obtain a first conditioned signal; multiplying the second signal by the second multiplier value using a second multiplier circuit to obtain a second conditioned signal; and analyzing the first conditioned signal and the second conditioned signal to estimate the physiological parameter of the user. Lamego obtained this subject matter from discussions with, or jointly conceived it with, Al-Ali, Diab, and Weber. Accordingly, Al-Ali, Diab, and Weber are joint inventors of any patentable subject matter claimed in the '754 Patent, and should have been named as inventors on the '754 Patent.

337. Lamego, Al-Ali, Diab, and Weber made any inventive contributions to at least Claim 1 while they were employees of Masimo.

338. In written assignments, Lamego, Al-Ali, Diab, and Weber, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

339. Those assignments vested in Masimo all legal and equitable title to patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '754 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '754 Patent, including foreign counterparts.

340. In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter. An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3). That assignment vested in Cercacor all legal and equitable title to patents and patent applications reciting inventions made during his employment, such that, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '754 Patent from, or jointly conceived such subject matter with, Cercacor employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '754 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '754 Patent, including foreign counterparts.

341. Based on the forgoing, Plaintiffs seek declaratory relief under at least 28 U.S.C. §§ 2201 & 2202, as well as applicable state contract law and

-122-

federal patent law, declaring that Masimo is at least a joint owner of the '754 Patent (or, to the extent it is determined that Masimo employees invented all of the patentable subject matter claimed in the '754 Patent, that Masimo is the exclusive owner), and, in the alternative, that Cercacor is a joint owner of the '754 Patent. Plaintiffs also seek an order from the Court directing the Patent Office to amend the Patent Office records to reflect the ownership interest of Masimo and/or Cercacor.

## XXXI. TWENTY-FOURTH CAUSE OF ACTION
## (DECLARATORY JUDGMENT OF OWNERSHIP OF
## U.S. PATENT NO. 9,723,997)

342. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

343. U.S. Patent 9,723,997 is recorded as owned by Apple.

344. The '997 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Cercacor employees. For example, Claim 20 of the '997 Patent recites a method for using a mobile personal computing device to obtain health data, comprising using a camera and a proximity sensor to emit light into a body part of a user touching a surface of the mobile personal computing device; using at least two of the camera, an ambient light sensor, or the proximity sensor to receive at least part of the emitted light reflected by the body part of the user and generate sensor data; and computing health data of the user, utilizing the processing unit, using at least the sensor data regarding the received light. Lamego obtained this subject matter from discussions with, or jointly conceived it with, Greg Olsen. Accordingly, Olsen is a joint inventor of any patentable subject matter claimed in the '997 Patent, and should have been named as an inventor on the '997 Patent.

345. Lamego and Olsen made any inventive contributions to at least Claim 20 while they were employees of Cercacor.

-123-

346.   In written assignments, Lamego, as well as Olsen, agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).

347.   Those assignments vested in Cercacor all legal and equitable title to patents and patent applications reciting inventions made during their employment, such that Cercacor is at least a joint owner of the '997 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '997 Patent, including foreign counterparts.

348.   In at least one written assignment, Lamego agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.  That assignment vested in Masimo all legal and equitable title to patents and patent applications reciting inventions made during his employment, such that, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '997 Patent from, or jointly conceived such subject matter with, Masimo employees while Lamego was an employee of Masimo, Masimo would be a joint owner of the '997 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '997 Patent, including foreign counterparts.

349.   Based on the forgoing, Plaintiffs seek declaratory relief under at least 28 U.S.C. §§ 2201 & 2202, as well as applicable state contract law and federal patent law, declaring that Cercacor is at least a joint owner of the '997 Patent (or, to the extent it is determined that Cercacor employees invented all of the patentable subject matter claimed in the '997 Patent, that Cercacor is the

exclusive owner), and, in the alternative, that Masimo is a joint owner of the '997 Patent. Plaintiffs also seek an order from the Court directing the Patent Office to amend the Patent Office records to reflect the ownership interest of Cercacor and/or Masimo.

## XXXII.  TWENTY-FIVE CAUSE OF ACTION
## (DECLARATORY JUDGMENT OF OWNERSHIP OF
## U.S. PATENT NO. 10,524,671)

350. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

351. U.S. Patent 10,524,671 is recorded as owned by Apple.

352. The '671 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees. For example, Claim 1 of the '671 Patent recites a wearable device, comprising a first light source; a second light source, the second light source operating at a different wavelength than the first light source; at least one light receiver; and a processing unit communicably coupled to the first light source, the second light source, and the at least one light receiver; wherein the processing unit is configured to: use the first light source and the second light source to emit light into a body part of a user; and dependent on the light emitted by the first light source and received by the at least one light receiver, compute a pulse rate of the user using the light emitted by the second light source and received by the at least one light receiver. Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab. Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '671 Patent, and should have been named as an inventor on the '671 Patent.

353. Lamego and Diab made any inventive contributions to at least Claim 1 while they were employees of Masimo.

354.  In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

355.  Those assignments vested in Masimo all legal and equitable title to patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '671 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '671 Patent, including foreign counterparts.

356.  In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  That assignment vested in Cercacor all legal and equitable title to patents and patent applications reciting inventions made during his employment, such that, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '671 Patent from, or jointly conceived such subject matter with, Cercacor employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '671 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '671 Patent, including foreign counterparts.

357.  Based on the forgoing, Plaintiffs seek declaratory relief under at least 28 U.S.C. §§ 2201 & 2202, as well as applicable state contract law and federal patent law, declaring that Masimo is at least a joint owner of the '671 Patent (or, to the extent it is determined that Masimo employees invented all of

the patentable subject matter claimed in the '671 Patent, that Masimo is the exclusive owner), and, in the alternative, that Cercacor is a joint owner of the '671 Patent. Plaintiffs also seek an order from the Court directing the Patent Office to amend the Patent Office records to reflect the ownership interest of Masimo and/or Cercacor.

## XXXIII. TWENTY-SIXTH CAUSE OF ACTION
## (DECLARATORY JUDGMENT OF OWNERSHIP OF
## U.S. PATENT APPLICATION NO. 15/960,507)

358. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

359. U.S. Patent Application 15/960,507 is recorded as owned by Apple.

360. Any inventive contribution that Lamego could have made to the alleged invention of the subject matter claimed in the '507 application was made while he was a Masimo employee during 2000-2001 and 2003-2006, or a Cercacor employee during 2006-2014. This includes, for example, Claim 21 of the '507 Application, which recites "a biometric sensor within a housing of a wearable electronic device, the biometric sensor comprising: an emitter for transmitting modulated light toward a measurement site of a subject through a first aperture in the housing; an optical sensor for receiving modulated light through a second aperture in the housing, the modulated light at least partially exiting the measurement site; a high pass filter to receive an output of the optical sensor, the high pass filter having a cutoff frequency above a frequency of a periodic optical property of the measurement site; and an analog to digital converter to receive an output of the high pass filter."

361. In written assignments, Lamego agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their

employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

362.    Those assignments vested in Masimo all legal and equitable title to patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '507 Application and all applications, patents, continuations, divisionals, and reissues that claim priority to the '507 Application, including foreign counterparts.

363.    In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  That assignment vested in Cercacor all legal and equitable title to patents and patent applications reciting inventions made during his employment, such that, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '507 Application from, or jointly conceived such subject matter with, Cercacor employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '507 Application and all applications, patents, continuations, divisionals, and reissues that claim priority to the '507 Application, including foreign counterparts.

364.    Based on the forgoing, Plaintiffs seek declaratory relief under at least 28 U.S.C. §§ 2201 & 2202, as well as applicable state contract law and federal patent law, declaring that Masimo is at least a joint owner of the '507 Application (or, to the extent it is determined that Masimo employees invented all of the patentable subject matter claimed in the '507 Application, that Masimo is the exclusive owner), and, in the alternative, that Cercacor is a joint owner of the '507 Application.  Plaintiffs also seek an order from the Court directing the

-128-

Patent Office to amend the Patent Office records to reflect the ownership interest of Masimo and/or Cercacor.

### XXXIV.  TWENTY-SEVENTH CAUSE OF ACTION
### (DECLARATORY JUDGMENT OF OWNERSHIP OF
### U.S. PATENT APPLICATION NO. 16/700,710)

365.  Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

366.  U.S. Patent Application 16/700,710 is recorded as owned by Apple.

367.  Any inventive contribution that Lamego could have made to the alleged invention of the subject matter claimed in the '710 application was made while he was a Masimo employee during 2000-2001 and 2003-2006, or a Cercacor employee during 2006-2014.  This includes, for example, Claim 15 of the '710 Application, which recites "a wearable device, comprising: a first light source that operates at a first wavelength; a second light source that operates at a second wavelength; at least one light receiver; and a processing unit that is configured to, upon detection of an object using light of the first wavelength received by the at least one light receiver, use light of the second wavelength received by the at least one light receiver to determine health data for a user."

368.  In written assignments, Lamego agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

369.  Those assignments vested in Masimo all legal and equitable title to patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '710 Application and all applications, patents, continuations, divisionals, and reissues that claim priority to the ' 710 Application, including foreign counterparts.

-129-

370.    In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  That assignment vested in Cercacor all legal and equitable title to patents and patent applications reciting inventions made during his employment, such that, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '710 Application from, or jointly conceived such subject matter with, Cercacor employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '710 Application and all applications, patents, continuations, divisionals, and reissues that claim priority to the '710 Application, including foreign counterparts.

371.    Based on the forgoing, Plaintiffs seek declaratory relief under at least 28 U.S.C. §§ 2201 & 2202, as well as applicable state contract law and federal patent law, declaring that Masimo is at least a joint owner of the '710 Application (or, to the extent it is determined that Masimo employees invented all of the patentable subject matter claimed in the '710 Application, that Masimo is the exclusive owner), and, in the alternative, that Cercacor is a joint owner of the '710 Application.  Plaintiffs also seek an order from the Court directing the Patent Office to amend the Patent Office records to reflect the ownership interest of Masimo and/or Cercacor.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment in their favor against Defendant for the following relief:

A.      Pursuant to 35 U.S.C. § 271, a determination that Defendant and its officers, agents, servants, employees, attorneys and all others in active concert

and/or participation with them have infringed each of the '265, '628, '553, '554, '564, '765, '194, '195, '366, '994, '703, and '776 patents through the manufacture, use, importation, offer for sale, and/or sale of infringing products and/or any of the other acts prohibited by 35 U.S.C. § 271;

B.   Pursuant to 35 U.S.C. § 283, an injunction enjoining Defendant and its officers, agents, servants, employees, attorneys and all others in active concert and/or participation with them from infringing the '265, '628, '553, '554, '564, '765, '194, '195, '366, '994, '703, and '776 patents through the manufacture, use, importation, offer for sale, and/or sale of infringing products and/or any of the other acts prohibited by 35 U.S.C. § 271, including preliminary and permanent injunctive relief;

C.   Pursuant to 35 U.S.C. § 284, an award compensating Masimo for Defendant's infringement of the '265, '628, '553, '554, '564, '765, '194, '195, '366, '994, '703, and '776 patents through payment of not less than a reasonable royalty on Defendant's sales of infringing products;

D.   Pursuant to 35 U.S.C. § 284, an award increasing damages up to three times the amount found or assessed by the jury for Defendant's infringement of each of the '265, '628, '553, '554, '564, '765, '194, '195, '366, '994, '703, and '776 patents in view of the willful and deliberate nature of the infringement;

E.   Pursuant to 35 U.S.C. § 285, a finding that this is an exceptional case, and an award of reasonable attorneys' fees and non-taxable costs;

F.   An assessment of prejudgment and post-judgment interest and costs against Defendant, together with an award of such interest and costs, pursuant to 35 U.S.C. § 284;

G.   That Defendant be adjudged to have misappropriated Plaintiffs' trade secrets in violation of the California Uniform Trade Secrets Act, Cal. Civ. Code

§ 3426 *et seq.*, and that Defendant's acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

H. That Defendant be adjudged to have been unjustly enriched;

I. That Plaintiffs be awarded damages for actual losses, unjust enrichment, and/or a reasonable royalty pursuant to Cal. Civ. Code § 3426.3.

J. That Defendant, its agents, servants, employees, and attorneys, and all those persons in active concert or participation with Defendant, be forthwith temporarily, preliminarily, and thereafter permanently required to return all of Plaintiffs' trade secrets and confidential information and enjoined from further using and disclosing to any third parties any of Plaintiffs' trade secrets and confidential information;

K. That Defendant be enjoined from selling or offering to sell any product, including Defendant's Apple Watch Series 4 and later devices, that includes or uses any of Plaintiffs' trade secrets;

L. That Defendant be directed to file with this Court and to serve on Plaintiffs within thirty (30) days after the service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

M. That Defendant be required to account to Plaintiffs for any and all gains, profits, and advantages derived by it, and all damages sustained by Plaintiffs, by reason of Defendant's acts complained herein;

N. That Plaintiffs be awarded exemplary damages and reasonable attorneys' fees pursuant to Cal. Civ. Code § 3426.3(c) and 3426.4;

O. That the U.S. Patent and Trademark Office be directed to correct the inventorship of the '052, '670, '095, '754, '671, and '997 patents to add the correct inventors;

P. An order imposing a constructive trust for the benefit of Plaintiffs over: (1) any trade secrets Defendants obtained from Plaintiffs; (2) any profits,

revenues, or other benefits obtained by Defendants as a result of any disclosure or use of trade secrets obtained from Plaintiffs; and (3) the Lamego Patents and the Lamego Patent Applications;

Q.     That Plaintiffs be declared exclusive owners, or at least joint owners, of the patents and patent applications that are based on Plaintiffs' developments, including the '052, '670, '095, '754, '671, and '997 patents, and the '507 and '710 applications, and all applications, patents, continuations, divisionals, and reissues that claim priority to those patents and that patent application, including foreign counterparts;

R.     An award of taxable costs; and

S.     That this Court award such other and further relief as this Court may deem just.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: February 5, 2021      By: */s/ Adam B. Powell*

Joseph R. Re
Stephen C. Jensen
Perry D. Oldham
Stephen W. Larson
Adam B. Powell

Attorneys for Plaintiffs,
Masimo Corporation and
Cercacor Laboratories, Inc.

-133-

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: February 5, 2021     By: */s/ Adam B. Powell*

Joseph R. Re
Stephen C. Jensen
Perry D. Oldham
Stephen W. Larson
Adam B. Powell

Attorneys for Plaintiffs,
Masimo Corporation and
Cercacor Laboratories, Inc.

34315472

# EXHIBIT 1

**U.S. Patent No. 10,258,265**

| U.S. Patent No. 10,258,265 Claim 1 | Description of Accused Products |
|---|---|
| 1. A noninvasive optical physiological measurement device adapted to be worn by a wearer, the noninvasive optical physiological measurement device providing an indication of a physiological parameter of the wearer comprising: | The Apple Watch Series 4 and later devices are noninvasive optical physiological measurement devices adapted to be worn by a wearer, and provide an indication of a physiological parameter as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The emitters and detectors are used to monitor physiological parameters, such as pulse rate.  *See* https://support.apple.com/en-us/HT204666. |
| a plurality of emitters of different wavelengths; | The Apple Watch Series 4 and later devices include a plurality of emitters of different wavelengths.  The Apple Watch Series 4 and later devices include green and infrared LEDs as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |

| U.S. Patent No. 10,258,265 Claim 1 | Description of Accused Products |
|---|---|
| a housing having a surface and a circular wall protruding from the surface; | The Apple Watch Series 4 and later devices include a housing having a surface and a circular wall protruding from the surface.  Fig. 4C of Apple's U.S. Patent Application Publication 2019/0072912 (the '912 publication) is illustrative of the Apple Watch Series 4 and later devices. The Apple Watch Series 4 and later devices have, for example, a circular wall arranged on substrate:  FIG. 4C |

| U.S. Patent No. 10,258,265 Claim 1 | Description of Accused Products |
|---|---|
| at least four detectors arranged on the surface and spaced apart from each other, the at least four detectors configured to output one or more signals responsive to light from the one or more light emitters attenuated by body tissue, the one or more signals indicative of a physiological parameter of the wearer; and | The Apple Watch Series 4 and later devices include at least four detectors arranged on the surface and spaced apart from each other, the at least four detectors configured to output one or more signals responsive to light from the one or more light emitters attenuated by body tissue, the one or more signals indicative of a physiological parameter of the wearer.  The Apple Watch Series 4 and later devices include eight photodiode sensors as found on the Apple website at https://support.apple.com/en-us/HT204666:  The Apple Watches Series 4 and later devices are worn on the wrist such that the detectors are configured to detect light that has passed through tissue and is indicative of a physiological parameter of the wearer: The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate. https://support.apple.com/en-us/HT204666. |

| U.S. Patent No. 10,258,265 Claim 1 | Description of Accused Products |
|---|---|
| a light permeable cover arranged above at least a portion of the housing, the light permeable cover comprising a protrusion arranged to cover the at least four detectors. | The Apple Watch Series 4 and later devices include a light permeable cover arranged above at least a portion of the housing, the light permeable cover comprising a protrusion arranged to cover the at least four detectors.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of the Apple Watch Series 4 and later devices.  The Apple Watch Series 4 and later devices have, for example, a dome-shaped carrier having a surface that protrudes from the back of the watch. The dome-shaped carrier is arranged above at least a portion of the housing and is arranged to cover the at least four detectors:<br><br><br>FIG. 4A          FIG. 4C |

**U.S. Patent No. 10,292,628**

| U.S. Patent No. 10,292,628 Claim 1 | Description of Accused Products |
|---|---|
| 1. A noninvasive optical physiological sensor comprising: | The Apple Watch Series 4 and later devices are noninvasive optical physiological sensors.<br><br>The Apple Watch Series 4 and later devices include a plurality of emitters of different wavelengths (for example, green and infrared LEDs) and at least four detectors (for example, photodiode sensors) spaced apart from each other as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The emitters and detectors are used to monitor physiological parameters, such as pulse rate. *See* https://support.apple.com/en-us/HT204666. |

5

| U.S. Patent No. 10,292,628 Claim 1 | Description of Accused Products |
|---|---|
| a plurality of emitters configured to emit light into tissue of a user; | The Apple Watch Series 4 and later devices include a plurality of emitters configured to emit light into tissue of a user. The Apple Watch Series 4 and later devices include green and infrared LEDs as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The Apple Watches Series 4 and later devices are worn on the wrist such that the detectors are configured to detect light that has passed through tissue and is indicative of a physiological parameter of the wearer:<br><br>The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate.<br><br>https://support.apple.com/en-us/HT204666. |

| U.S. Patent No. 10,292,628 Claim 1 | Description of Accused Products |
|---|---|
| a plurality of detectors configured to detect light that has been attenuated by tissue of the user, wherein the plurality of detectors comprise at least four detectors; | The Apple Watch Series 4 and later devices include a plurality of detectors configured to detect light that has been attenuated by tissue of the user, wherein the plurality of detectors comprise at least four detectors. The Apple Watch Series 4 and later devices include photodiode sensors as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The Apple Watches Series 4 and later devices are worn on the wrist such that the detectors are configured to detect light that has passed through tissue and is indicative of a physiological parameter of the wearer:<br><br>The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate.<br><br>https://support.apple.com/en-us/HT204666. |

| U.S. Patent No. 10,292,628 Claim 1 | Description of Accused Products |
|---|---|
| a housing configured to house at least the plurality of detectors; and | The Apple Watch Series 4 and later devices include a housing configured to house at least the plurality of detectors. Fig. 4C of Apple's U.S. Patent Application Publication 2019/0072912 (the '912 publication), shows, for example, such housing:  FIG. 4C |

| U.S. Patent No. 10,292,628 Claim 1 | Description of Accused Products |
|---|---|
| a light permeable cover configured to be located between tissue of the user and the plurality of detectors when the noninvasive optical physiological sensor is worn by the user, wherein the cover comprises an outwardly protruding convex surface configured to cause tissue of the user to conform to at least a portion of the outwardly protruding convex surface when the noninvasive optical physiological sensor is worn by the user and during operation of the noninvasive optical physiological sensor, and wherein the plurality of detectors are configured to receive light passed through the outwardly protruding convex surface after attenuation by tissue of the user. | The Apple Watch Series 4 and later devices include a light permeable cover configured to be located between tissue of the user and the plurality of detectors when the noninvasive optical physiological sensor is worn by the user, wherein the cover comprises an outwardly protruding convex surface configured to cause tissue of the user to conform to at least a portion of the outwardly protruding convex surface when the noninvasive optical physiological sensor is worn by the user and during operation of the noninvasive optical physiological sensor, and wherein the plurality of detectors are configured to receive light passed through the outwardly protruding convex surface after attenuation by tissue of the user.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such a cover in the Apple Watch Series 4 and later devices:<br><br><br>FIG. 4A          FIG. 4C |

**U.S. Patent No. 10,588,553**

| U.S. Patent No. 10,588,553 Claim 1 | Description of Accused Products |
|---|---|
| A noninvasive optical physiological sensor comprising: | The Apple Watch Series 4 and 5 devices are noninvasive optical physiological sensors as found on the Apple website at https://support.apple.com/en-us/HT204666:<br> |

| U.S. Patent No. 10,588,553 Claim 1 | Description of Accused Products |
|---|---|
| a plurality of emitters configured to emit light into tissue of a user; | The Apple Watch Series 4 and 5 devices include a plurality of emitters configured to emit light into tissue of a user. The Apple Watch Series 4 and 5 devices include green and infrared LEDs as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |
| at least four detectors, wherein at least one of the at least four detectors is configured to detect light that has been attenuated by tissue of the user, and wherein the at least four detectors are arranged on a substrate; | The Apple Watch Series 4 and 5 devices include at least four detectors, wherein at least one of the at least four detectors is configured to detect light that has been attenuated by tissue of the user, and wherein the at least four detectors are arranged on a substrate. The Apple Watch Series 4 and 5 devices include eight photodiode sensors on a substrate, as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The Apple Watches Series 4 and 5 devices are worn on the wrist such that the detectors are configured to detect light that has passed through tissue: |

| U.S. Patent No. 10,588,553 Claim 1 | Description of Accused Products |
|---|---|
| | The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate.<br><br>https://support.apple.com/en-us/HT204666. |
| a wall configured to circumscribe at least the at least four detectors; and | The Apple Watch Series 4 and 5 devices include a wall configured to circumscribe at least the at least four detectors.  Fig. 4C of Apple's U.S. Patent Application Publication 2019/0072912 (the '912 publication) is illustrative of the Apple Watch Series 4 and later devices.  The Apple Watch Series 4 and later devices have, for example, wall circumscribing photodiode sensors arranged on a substrate:<br><br><br>*FIG. 4C* |

| U.S. Patent No. 10,588,553 Claim 1 | Description of Accused Products |
|---|---|
| a cover configured to be located between tissue of the user and the at least four detectors when the noninvasive optical physiological sensor is worn by the user, wherein the cover comprises a single protruding convex surface operable to conform tissue of the user to at least a portion of the single protruding convex surface when the noninvasive optical physiological sensor is worn by the user, and wherein the wall operably connects to the substrate and the cover. | The Apple Watch Series 4 and later devices include a cover configured to be located between tissue of the user and the at least four detectors when the noninvasive optical physiological sensor is worn by the user, wherein the cover comprises a single protruding convex surface operable to conform tissue of the user to at least a portion of the single protruding convex surface when the noninvasive optical physiological sensor is worn by the user, and wherein the wall operably connects to the substrate and the cover.<br><br>The dome-shaped carrier in Figs. 4A and 4C of Apple's '912 publication is illustrative of the Apple Watch Series 4 and later devices.  The dome-shaped carrier has a surface that protrudes from the back of the watch, is located between tissue of the user and the at least four detectors when the noninvasive optical physiological sensor is worn by the user, and comprises a single protruding convex surface operable to conform tissue of the user to at least a portion of the single protruding convex surface when the noninvasive optical physiological sensor is worn by the user, wherein the wall operably connects to the substrate and the cover:<br><br><br>FIG. 4A                    FIG. 4C |

13

**U.S. Patent No. 10,588,554**

| U.S. Patent No. 10,588,554 Claim 20 | Description of Accused Products |
|---|---|
| A physiological measurement system comprising: | The Apple Watch Series 4 and later devices in combination with iPhone devices are physiological measurement systems.<br><br>The Apple Watch Series 4 and later devices as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |

| U.S. Patent No. 10,588,554 Claim 20 | Description of Accused Products |
|---|---|
| a physiological sensor device comprising: | The Apple Watch Series 4 and later devices are physiological sensor devices.<br><br>The Apple Watch Series 4 and later devices include a plurality of emitters of different wavelengths (for example, green and infrared LEDs) and at least four detectors (for example, photodiode sensors) spaced apart from each other as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The emitters and detectors are used to monitor physiological parameters, such as pulse rate. *See* https://support.apple.com/en-us/HT204666. |
| a plurality of emitters configured to emit light into tissue of a user; | The Apple Watch Series 4 and later devices include a plurality of emitters configured to emit light into tissue of a user. The Apple Watch Series 4 and later devices include green and infrared LEDs as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |

| U.S. Patent No. 10,588,554 Claim 20 | Description of Accused Products |
|---|---|
| at least four detectors, wherein each of the at least four detectors has a corresponding window that allows light to pass through to the detector; | The Apple Watch Series 4 and later devices include at least four detectors, wherein each of the at least four detectors has a corresponding window that allows light to pass through to the detector. The Apple Watch Series 4 and later devices include eight photodiode sensors with corresponding windows that allow light to pass through to the detector, as found on the Apple website at https://support.apple.com/en-us/HT204666:  The Apple Watches Series 4 and later devices are worn on the wrist such that the detectors are configured to detect light that has passed through tissue: The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate. https://support.apple.com/en-us/HT204666. |

| U.S. Patent No. 10,588,554 Claim 20 | Description of Accused Products |
|---|---|
| a wall that surrounds at least the at least four detectors; and | The Apple Watch Series 4 and later devices include a wall that surrounds at least the at least four detectors. Fig. 4C of Apple's U.S. Patent Application Publication 2019/0072912 (the '912 publication) is illustrative of the Apple Watch Series 4 and later devices. The Apple Watch Series 4 and later devices have, for example, a wall surrounding photodiode sensors arranged on substrate: |



FIG. 4C

| U.S. Patent No. 10,588,554 Claim 20 | Description of Accused Products |
|---|---|
| a cover comprising a single protruding convex surface, wherein the single protruding convex surface is configured to be located between tissue of the user and the at least four detectors when the physiological sensor device is worn by the user, wherein at least a portion of the single protruding convex surface is sufficiently rigid to cause tissue of the user to conform to at least a portion of a shape of the single protruding convex surface when the physiological sensor device is worn by the user, and wherein the cover operably connects to the wall; and | The Apple Watch Series 4 and later devices include a cover comprising a single protruding convex surface, wherein the single protruding convex surface is configured to be located between tissue of the user and the at least four detectors when the physiological sensor device is worn by the user, wherein at least a portion of the single protruding convex surface is sufficiently rigid to cause tissue of the user to conform to at least a portion of a shape of the single protruding convex surface when the physiological sensor device is worn by the user, and wherein the cover operably connects to the wall; and.

The Apple Watch Series 4 and later devices include a dome-shaped carrier having a surface that protrudes from the back of the watch. The dome-shaped carrier is located between tissue of the user and the at least four detectors when the noninvasive optical physiological sensor is worn by the user, and comprises a single protruding convex surface operable to conform tissue of the user to at least a portion of the single protruding convex surface when the noninvasive optical physiological sensor is worn by the user, and wherein the wall operably connects to the substrate and the cover. Figs. 4A and 4C of Apple's '912 publication are illustrative of the dome-shaped cover in the Apple Watch Series 4 and later devices:



FIG. 4A                FIG. 4C |

| U.S. Patent No. 10,588,554 Claim 20 | Description of Accused Products |
|---|---|
| a handheld computing device in wireless communication with the physiological sensor device. | The Apple Watch Series 4 and later devices are physiological sensor devices that communicate wirelessly with handheld computing devices.<br><br>The Apple Watch Series 4 and later devices communicate wirelessly with Apple iOS devices as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The Apple Watch Series 4 and later devices communicate wirelessly with Apple iOS devices as described on the Apple website at https://support.apple.com/en-us/HT204505:<br><br>To set up and use your Apple Watch, you need an iPhone with the latest version of iOS.<br><br>watchOS 6 is compatible with Apple Watch Series 1 and later. Upgrading to watchOS 6 requires an iPhone 6s or later running iOS 13 or later.<br><br>You also need to make sure that your iPhone has Bluetooth turned on, and that it's connected to Wi-Fi or a cellular network.<br><br>If you already set up your Apple Watch but want to use it with a different iPhone, you can transfer your Apple Watch and its content to your new iPhone. |

**U.S. Patent No. 10,624,564**

| U.S. Patent No. 10,624,564 Claim 1 | Description of Accused Products |
|---|---|
| 1. A user-worn physiological measurement device comprising: | The Apple Watch Series 4 and later devices are user-worn physiological measurement devices as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br> |
| one or more emitters configured to emit light into tissue of a user; | The Apple Watch Series 4 and later devices include one or more emitters configured to emit light into tissue of a user as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br> |
| at least four detectors arranged on a substrate; | The Apple Watch Series 4 and later devices include at least four detectors arranged on a substrate as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,624,564 Claim 1 | Description of Accused Products |
|---|---|
| |  |
| a cover comprising a protruding convex surface, wherein the protruding convex surface extends over all of the at least four detectors arranged on the substrate, wherein at least a portion of the protruding convex surface is rigid; | The Apple Watch Series 4 and later devices include a rigid protruding convex surface that extends over all of the at least four detectors arranged on the substrate.

Figs. 4A and 4C of Apple's '912 publication are illustrative of such a cover in the Apple Watch Series 4 and later devices:

FIG. 4A          FIG. 4C |
| one or more processors configured to: | The Apple Watch Series 4 and later devices include one or more processors as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,624,564 Claim 1 | Description of Accused Products |
|---|---|
| |  |
| receive one or more signals from at least one of the at least four detectors, the one or more signals responsive to at least a physiological parameter of the user; and | The Apple Watch Series 4 and later devices receive one or more signals from at least one of the at least four detectors, the one or more signals responsive to at least a physiological parameter of the user as shown on the Apple website at https://support.apple.com/en-us/HT204666: |
| process the one or more signals to determine measurements of the physiological parameter; | The Apple Watch Series 4 and later devices process the one or more signals to determine measurements of the physiological parameter as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,624,564 Claim 1 | Description of Accused Products |
|---|---|
| |  |
| a network interface configured to communicate with a mobile phone; | The Apple Watch Series 4 and later devices include a network interface configured to communicate with a mobile phone as shown on the Apple website at https://support.apple.com/en-us/HT204666: |
| a touch-screen display configured to provide a user interface, wherein: | The Apple Watch Series 4 and later devices include a touch-screen display configured to provide a user interface as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,624,564 Claim 1 | Description of Accused Products |
|---|---|
| |  |
| the user interface is configured to display indicia responsive to the measurements of the physiological parameter, and | The Apple Watch Series 4 and later devices include a user interface configured to display indicia responsive to the measurements of the physiological parameter as shown on the Apple website at https://support.apple.com/en-us/HT204666: |
| an orientation of the user interface is configurable responsive to a user input; | The Apple Watch Series 4 and later devices have an orientation of the user interface that is configurable responsive to a user input as shown on the Apple website at https://support.apple.com/guide/watch/change-language-orientation-apple-watch-apd0bf18f46b/watchos. |

| U.S. Patent No. 10,624,564 Claim 1 | Description of Accused Products |
|---|---|
| a wall that surrounds at least the at least four detectors, wherein the wall operably connects to the substrate and the cover; | The Apple Watch Series 4 and later devices include a wall that surrounds at least the at least four detectors and operably connects to the substrate and the cover.<br><br>Fig. 4C of Apple's U.S. Patent Application Publication 2019/0072912 (the '912 publication) is illustrative of the Apple Watch Series 4 and later devices. The Apple Watch Series 4 and later devices have, for example, such a wall:<br><br><br><br>FIG. 4C |
| a storage device configured to at least temporarily store at least the measurements of the physiological parameter; and | The Apple Watch Series 4 and later devices include a storage device configured to at least temporarily store at least the measurements of the physiological parameter as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,624,564<br>Claim 1 | Description of Accused Products |
|---|---|
| |  |
| a strap configured to position the physiological measurement device on the user. | The Apple Watch Series 4 and later devices include a strap configured to position the physiological measurement device on the user as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

**U.S. Patent No. 10,631,765**

| U.S. Patent No. 10,631,765 Claim 1 | Description of Accused Products |
|---|---|
| 1. A physiological measurement system comprising: | The Apple Watch Series 4 and later devices in combination with iPhone devices are physiological measurement systems.<br><br>The Apple Watch Series 4 and later devices include a plurality of emitters of different wavelengths (for example, green and infrared LEDs) and at least four detectors (for example, photodiode sensors) spaced apart from each other as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The emitters and detectors are used to monitor physiological parameters, such as pulse rate. *See* https://support.apple.com/en-us/HT204666. |
| a physiological sensor device comprising: | The Apple Watch Series 4 and later devices are physiological sensor devices as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,631,765 Claim 1 | Description of Accused Products |
|---|---|
| |  The emitters and detectors are used to monitor physiological parameters, such as pulse rate. *See* https://support.apple.com/en-us/HT204666. |
| one or more emitters configured to emit light into tissue of a user; | The Apple Watch Series 4 and later devices include one or more emitters configured to emit light into tissue of a user as shown on the Apple website at https://support.apple.com/en-us/HT204666:  The emitters and detectors are used to monitor physiological parameters, such as pulse rate. *See* https://support.apple.com/en-us/HT204666. |
| at least four detectors, wherein each of the at least four detectors has a corresponding window that | The Apple Watch Series 4 and later devices include at least four detectors with a corresponding window that allows light to pass through to the detector. The Apple Watch Series 4 and later devices include a plurality of emitters of different wavelengths (for example, green and infrared |

| U.S. Patent No. 10,631,765 Claim 1 | Description of Accused Products |
|---|---|
| allows light to pass through to the detector; | LEDs) and at least four detectors (for example, photodiode sensors) spaced apart from each other as shown on the Apple website at https://support.apple.com/en-us/HT204666:  The emitters and detectors are used to monitor physiological parameters, such as pulse rate.  *See* https://support.apple.com/en-us/HT204666.<br><br>*See also* apertures 230 described in US20190090806A1, including Fig. 2. |
| a wall that surrounds at least the at least four detectors; and | The Apple Watch Series 4 and later devices include a wall that surrounds at least the at least four detectors. |

| U.S. Patent No. 10,631,765 Claim 1 | Description of Accused Products |
|---|---|
| | Fig. 4C of Apple's U.S. Patent Application Publication 2019/0072912 (the '912 publication) is illustrative of the Apple Watch Series 4 and later devices. The Apple Watch Series 4 and later devices have, for example, such a wall:  FIG. 4C |
| a cover comprising a protruding convex surface, wherein the protruding convex surface is above all of the at least four detectors, wherein at least a portion of the protruding convex surface is rigid, and wherein the cover operably connects to the wall; and | The Apple Watch Series 4 and later devices include a rigid protruding convex surface that is above all of the at least four detectors and operably connects to the wall. |

| U.S. Patent No. 10,631,765 Claim 1 | Description of Accused Products |
|---|---|
| | Figs. 4A and 4C of Apple's '912 publication are illustrative of such a cover in the Apple Watch Series 4 and later devices:<br><br><br><br>FIG. 4A    FIG. 4C |
| a handheld computing device in wireless communication with the physiological sensor device, wherein the handheld computing device comprises: | The Apple iPhone devices are in wireless communication with the physiological sensor device as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |
| one or more processors configured to wirelessly receive one or more signals from the physiological sensor device, the one or more signals responsive to | The Apple iPhone devices include one or more processors configured to wirelessly receive one or more signals from the physiological sensor device, the one or more signals responsive to at least a physiological parameter of the user as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,631,765 Claim 1 | Description of Accused Products |
|---|---|
| at least a physiological parameter of the user; |  |
| a touch-screen display configured to provide a user interface, wherein: | The iPhone devices include a touch-screen display configured to provide a user interface as shown on the Apple website at https://support.apple.com/en-us/HT204666: |
| the user interface is configured to display indicia responsive to measurements of the physiological parameter, and | The Apple iPhone devices include a user interface configured to display indicia responsive to measurements of the physiological parameter as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,631,765<br>Claim 1 | Description of Accused Products |
|---|---|
| |  |
| an orientation of the user interface is configurable responsive to a user input; and | The Apple iPhone devices have an orientation of the user interface that is configurable responsive to a user input as shown on the Apple website at https://support.apple.com/en-us/HT204547, https://support.apple.com/guide/watch/change-language-orientation-apple-watch-apd0bf18f46b/watchos. |
| a storage device configured to at least temporarily store at least the measurements of the physiological parameter. | The Apple iPhone devices include a storage device configured to at least temporarily store at least the measurements of the physiological parameter as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

U.S. Patent No. 10,702,194

| U.S. Patent No. 10,702,194 Claim 1 | Description of Accused Products |
|---|---|
| 1. A physiological measurement system comprising: | The Apple Watch Series 4 and later devices are physiological measurement systems as shown on the Apple website at https://support.apple.com/en-us/HT204666:  |
| a physiological sensor device comprising: | The Apple Watch Series 4 and later devices are physiological sensor devices as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,702,194 Claim 1 | Description of Accused Products |
|---|---|
| one or more emitters configured to emit light into tissue of a user; | The Apple Watch Series 4 and later devices include one or more emitters configured to emit light into tissue of a user as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |
| a first set of photodiodes, wherein: | The Apple Watch Series 4 and later devices include a first set of photodiodes as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |
| the first set of photodiodes comprises at least four photodiodes, | The Apple Watch Series 4 and later devices include the first set of photodiodes comprises at least four photodiodes as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,702,194 Claim 1 | Description of Accused Products |
|---|---|
| |  |
| the photodiodes of the first set of photodiodes are connected to one another in parallel to provide a first signal stream, and | Upon information and belief, the Apple Watch Series 4 and later devices include a first set of photodiodes connected to one another in parallel to provide a first signal stream as shown on the Apple website at https://support.apple.com/en-us/HT204666: |
| each of the photodiodes of the first set of photodiodes has a corresponding window that allows light to pass through to the photodiode; | The Apple Watch Series 4 and later devices are configured so that each of the photodiodes of the first set of photodiodes has a corresponding window that allows light to pass through to the photodiode as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,702,194 Claim 1 | Description of Accused Products |
|---|---|
| |  See also apertures 230 described in US20190090806A1, including Fig. 2. |
| a second set of photodiodes, wherein: | The Apple Watch Series 4 and later devices include a second set of photodiodes as shown on the Apple website at https://support.apple.com/en-us/HT204666:  |
| the second set of photodiodes comprises at least four photodiodes, | The Apple Watch Series 4 and later devices include a second set of photodiodes that comprises four photodiodes as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,702,194 Claim 1 | Description of Accused Products |
|---|---|
| |  |
| the photodiodes of the second set of photodiodes are connected to one another in parallel to provide a second signal stream, and | Upon information and belief, the Apple Watch Series 4 and later devices include photodiodes connected to one another in parallel to provide a second signal stream as shown on the Apple website at https://support.apple.com/en-us/HT204666: |
| each of the photodiodes of the second set of photodiodes has a corresponding window that allows light to pass through to the photodiode; | The Apple Watch Series 4 and later devices are configured so that each of the photodiodes of the second set of photodiodes has a corresponding window that allows light to pass through to the photodiode as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

38

| U.S. Patent No. 10,702,194 Claim 1 | Description of Accused Products |
|---|---|
| |  See also apertures 230 described in US20190090806A1, including Fig. 2. |

| U.S. Patent No. 10,702,194 Claim 1 | Description of Accused Products |
|---|---|
| a wall that surrounds at least the first and second sets of photodiodes; and | The Apple Watch Series 4 and later devices include a wall that surrounds at least the first and second sets of photodiodes.<br><br>Fig. 4C of Apple's U.S. Patent Application Publication 2019/0072912 (the '912 publication) is illustrative of the Apple Watch Series 4 and later devices. The Apple Watch Series 4 and later devices have, for example, such a wall:<br><br><br>FIG. 4C |

| U.S. Patent No. 10,702,194 Claim 1 | Description of Accused Products |
|---|---|
| a cover comprising a protruding convex surface, wherein the protruding convex surface is above all of the photodiodes of the first and second sets of photodiodes, wherein at least a portion of the protruding convex surface is rigid, and wherein the cover is above the wall; and | The Apple Watch Series 4 and later devices include a rigid protruding convex surface that is above all of the photodiodes of the first and second sets of photodiodes and the wall.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such a cover in the Apple Watch Series 4 and later devices:<br><br><br>FIG. 4A          FIG. 4C |
| a handheld computing device in wireless communication with the physiological sensor device, wherein the handheld computing device comprises: | The Apple iPhone devices are in wireless communication with the physiological sensor device as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |
| one or more processors configured to wirelessly receive one or more signals from the physiological | The Apple iPhone devices include one or more processors configured to wirelessly receive one or more signals from the physiological sensor device, the one or more signals responsive to at least a physiological |

| U.S. Patent No. 10,702,194 Claim 1 | Description of Accused Products |
|---|---|
| sensor device, the one or more signals responsive to at least a physiological parameter of the user; | parameter of the user as shown on the Apple website at https://support.apple.com/en-us/HT204666:  |
| a touch-screen display configured to provide a user interface, wherein: | The Apple iPhone devices include a touch-screen display configured to provide a user interface as shown on the Apple website at https://support.apple.com/en-us/HT204666:  |
| the user interface is configured to display indicia responsive to measurements of the physiological parameter, and | The Apple iPhone devices include a user interface configured to display indicia responsive to measurements of the physiological parameter as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,702,194 Claim 1 | Description of Accused Products |
|---|---|
| |  |
| an orientation of the user interface is configurable responsive to a user input; and | The Apple iPhone devices have an orientation of the user interface that is configurable responsive to a user input as shown on the Apple website at https://support.apple.com/en-us/HT204547, https://support.apple.com/guide/watch/change-language-orientation-apple-watch-apd0bf18f46b/watchos. |
| a storage device configured to at least temporarily store at least the measurements of the physiological parameter. | The Apple iPhone devices include a storage device configured to at least temporarily store at least the measurements of the physiological parameter as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

U.S. Patent No. 10,702,195

| U.S. Patent No. 10,702,195 Claim 1 | Description of Accused Products |
|---|---|
| 1. A user-worn physiological measurement device that defines a plurality of optical paths, the physiological measurement device comprising: | The Apple Watch Series 4 and later devices are user-worn physiological measurement devices that define a plurality of optical paths as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |
| one or more emitters configured to emit light into tissue of a user; | The Apple Watch Series 4 and later devices include one or more emitters configured to emit light into tissue of a user as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,702,195 Claim 1 | Description of Accused Products |
|---|---|
| a first set of photodiodes positioned on a first surface and surrounded by a wall that is operably connected to the first surface, wherein: | The Apple Watch Series 4 and later devices include a first set of photodiodes positioned on a first surface and surrounded by a wall that is operably connected to the first surface.<br><br>Fig. 4C of Apple's U.S. Patent Application Publication 2019/0072912 (the '912 publication) is illustrative of the Apple Watch Series 4 and later devices. The Apple Watch Series 4 and later devices have, for example, such a wall:<br><br><br><br>*FIG. 4C* |
| the first set of photodiodes comprises at least four photodiodes, and | The Apple Watch Series 4 and later devices include a first set of photodiodes comprising at least four photodiodes as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,702,195 Claim 1 | Description of Accused Products |
|---|---|
| |  |
| the photodiodes of the first set of photodiodes are connected to one another in parallel to provide a first signal stream; | Upon information and belief, the Apple Watch Series 4 and later devices include photodiodes connected to one another in parallel to provide a first signal stream.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such photodiodes in the Apple Watch Series 4 and later devices: |

| U.S. Patent No. 10,702,195 Claim 1 | Description of Accused Products |
|---|---|
| a second set of photodiodes positioned on the first surface and surrounded by the wall, wherein: | The Apple Watch Series 4 and later devices include a second set of photodiodes positioned on the first surface and surrounded by the wall.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such photodiodes in the Apple Watch Series 4 and later devices:<br><br><br>FIG. 4A    FIG. 4C |
| the second set of photodiodes comprises at least four photodiodes, and | The Apple Watch Series 4 and later devices include a second set of photodiodes that comprises four photodiodes as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |

| U.S. Patent No. 10,702,195<br>Claim 1 | Description of Accused Products |
|---|---|
| the photodiodes of the second set of photodiodes are connected to one another in parallel to provide a second signal stream; and | Upon information and belief, the Apple Watch Series 4 and later devices include photodiodes of the second set of photodiodes connected to one another in parallel to provide a second signal stream.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such photodiodes in the Apple Watch Series 4 and later devices:<br><br><br>FIG. 4A          FIG. 4C |

| U.S. Patent No. 10,702,195 Claim 1 | Description of Accused Products |
|---|---|
| a cover located above the wall and comprising a single protruding convex surface configured to be located between tissue of the user and the first and second sets of photodiodes when the physiological measurement device is worn by the user, | The Apple Watch Series 4 and later devices include a cover located above the wall and comprising a single protruding convex surface configured to be located between tissue of the user and the first and second sets of photodiodes when the physiological measurement device is worn by the user.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such a cover in the Apple Watch Series 4 and later devices:<br><br><br>FIG. 4A    FIG. 4C |
| wherein the physiological measurement device provides a plurality of optical paths, wherein each of the optical paths: | The Apple Watch Series 4 and later devices provide a plurality of optical paths as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |

| U.S. Patent No. 10,702,195 Claim 1 | Description of Accused Products |
|---|---|
| exits an emitter of the one or more emitters, | The Apple Watch Series 4 and later devices include an optical path that exits an emitter of the one or more emitters as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |
| passes through tissue of the user, | The Apple Watch Series 4 and later devices include optical paths that pass through tissue of the user as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,702,195 Claim 1 | Description of Accused Products |
|---|---|
| passes through the single protruding convex surface, and | The Apple Watch Series 4 and later devices include optical paths that pass through the single protruding convex surface.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such a path in the Apple Watch Series 4 and later devices:<br><br><br>FIG. 4A    FIG. 4C |

| U.S. Patent No. 10,702,195 Claim 1 | Description of Accused Products |
|---|---|
| arrives at a corresponding photodiode of the at least one of the first or second sets of photodiodes, the corresponding photodiode configured to receive light emitted by the emitter after traversal by the light of a corresponding optical path of the plurality of optical paths and after attenuation of the light by tissue of the user. | The Apple Watch Series 4 and later devices provide an optical path that arrives at a corresponding photodiode of the at least one of the first or second sets of photodiodes, the corresponding photodiode configured to receive light emitted by the emitter after traversal by the light of a corresponding optical path of the plurality of optical paths and after attenuation of the light by tissue of the user.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such a path in the Apple Watch Series 4 and later devices:<br><br><br>FIG. 4A    FIG. 4C |

U.S. Patent No. 10,709,366

| U.S. Patent No. 10,709,366 Claim 1 | Description of Accused Products |
|---|---|
| 1. A noninvasive physiological parameter measurement device adapted to be worn by a wearer, the noninvasive physiological parameter measurement device comprising: | The Apple Watch Series 4 and later devices are noninvasive physiological parameter measurement devices adapted to be worn by a wearer as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |
| one or more light emitters; | The Apple Watch Series 4 and later devices include one or more light emitters as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,709,366 Claim 1 | Description of Accused Products |
|---|---|
| a substrate having a surface; | The Apple Watch Series 4 and later devices include a substrate having a surface.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such substrate in the Apple Watch Series 4 and later devices:<br><br><br><br>FIG. 4A          FIG. 4C |
| a first set of photodiodes arranged on the surface and spaced apart from each other, wherein: | The Apple Watch Series 4 and later devices include a first set of photodiodes arranged on the surface and spaced apart from each other.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such photodiodes in the Apple Watch Series 4 and later devices:<br><br><br><br>FIG. 4A          FIG. 4C |

| U.S. Patent No. 10,709,366 Claim 1 | Description of Accused Products |
|---|---|
| the first set of photodiodes comprises at least four photodiodes, and the photodiodes of the first set of photodiodes are connected to one another in parallel to provide a first signal stream responsive to light from at least one of the one or more light emitters attenuated by body tissue; | Upon information and belief, the Apple Watch Series 4 and later devices include the first set of photodiodes comprises at least four photodiodes, and the photodiodes of the first set of photodiodes are connected to one another in parallel to provide a first signal stream responsive to light from at least one of the one or more light emitters attenuated by body tissue.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such photodiodes in the Apple Watch Series 4 and later devices:<br><br><br>FIG. 4A    FIG. 4C |

| U.S. Patent No. 10,709,366 Claim 1 | Description of Accused Products |
|---|---|
| a second set of photodiodes arranged on the surface and spaced apart from each other, wherein: | The Apple Watch Series 4 and later devices include a second set of photodiodes arranged on the surface and spaced apart from each other.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such photodiodes in the Apple Watch Series 4 and later devices:<br><br><br><br>FIG. 4A                 FIG. 4C |

| U.S. Patent No. 10,709,366 Claim 1 | Description of Accused Products |
|---|---|
| the second set of photodiodes comprises at least four photodiodes, the photodiodes of the second set of photodiodes are connected to one another in parallel to provide a second signal stream responsive to light from at least one of the one or more light emitters attenuated by body tissue, and | Upon information and belief, the Apple Watch Series 4 and later devices include a second set of photodiodes that comprise at least four photodiodes, the photodiodes of the second set of photodiodes are connected to one another in parallel to provide a second signal stream responsive to light from at least one of the one or more light emitters attenuated by body tissue.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such photodiodes in the Apple Watch Series 4 and later devices:<br><br><br>FIG. 4A          FIG. 4C |
| at least one of the first signal stream or the second signal stream includes information usable to determine a physiological parameter of a wearer of the noninvasive physiological parameter measurement device; | The Apple Watch Series 4 and later devices are configured to provide at least one of a first signal stream or a second signal stream that includes information usable to determine a physiological parameter of a wearer of the noninvasive physiological parameter measurement device as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |

57

| U.S. Patent No. 10,709,366 Claim 1 | Description of Accused Products |
|---|---|
| | |
| a wall extending from the surface and configured to surround at least the first and second sets of photodiodes; and | The Apple Watch Series 4 and later devices include a wall extending from the surface and configured to surround at least the first and second sets of photodiodes.<br><br>Fig. 4C of Apple's U.S. Patent Application Publication 2019/0072912 (the '912 publication) is illustrative of the Apple Watch Series 4 and later devices. The Apple Watch Series 4 and later devices have, for example, such a wall:<br><br><br><br>FIG. 4C |

| U.S. Patent No. 10,709,366 Claim 1 | Description of Accused Products |
|---|---|
| a cover arranged to cover at least a portion of the surface of the substrate, wherein the cover comprises a protrusion that extends over all of the photodiodes of the first and second sets of photodiodes arranged on the surface, and wherein the cover is further configured to cover the wall. | The Apple Watch Series 4 and later devices include a protrusion that extends over all of the photodiodes of the first and second sets of photodiodes arranged on the surface and the wall.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such a cover in the Apple Watch Series 4 and later devices:<br><br>FIG. 4A   FIG. 4C |

U.S. Patent No. 6,771,994

| U.S. Patent No. 6,771,994 Claim 15 | Description of Accused Products |
|---|---|
| 15. A sensor which generates at least first and second intensity signals from a light-sensitive detector which detects light of at least first and second wavelengths transmitted through body tissue carrying pulsing blood; the sensor comprising: | The Apple Watch Series 4 and later devices are sensors that generate at least first and second intensity signals from a light-sensitive detector which detects light of at least first and second wavelengths transmitted through body tissue carrying pulsing blood.<br><br>The Apple Watch Series 4 and later devices include a plurality of emitters of different wavelengths (for example, green and infrared LEDs) and at least four detectors (for example, photodiode sensors) as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The emitters and detectors are used to monitor physiological parameters, such as pulse rate. *See* https://support.apple.com/en-us/HT204666. |

| U.S. Patent No. 6,771,994 Claim 15 | Description of Accused Products |
|---|---|
| at least one light emission device; | The Apple Watch Series 4 and later devices include at least one light emission device.  The Apple Watch Series 4 and later devices include green and infrared LEDs as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The Apple Watches Series 4 and later devices are worn on the wrist such that the detectors are configured to detect light that has passed through tissue and is indicative of a physiological parameter of the wearer:<br><br>The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate.<br><br>https://support.apple.com/en-us/HT204666. |

| U.S. Patent No. 6,771,994 Claim 15 | Description of Accused Products |
|---|---|
| a light sensitive detector; and | The Apple Watch Series 4 and later devices include a light sensitive detector.  The Apple Watch Series 4 and later devices include eight photodiode sensors as found on the Apple website at https://support.apple.com/en-us/HT204666: <br><br>  <br><br> The Apple Watches Series 4 and later devices are worn on the wrist such that the detectors are configured to detect light that has passed through tissue and is indicative of a physiological parameter of the wearer: <br><br> The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate. <br><br> https://support.apple.com/en-us/HT204666. |
| a plurality of louvers positioned over the light sensitive detector to accept light from the at least one light emission device originating from a general direction of the at least one light emission device and then transmitting through | The Apple Watch Series 4 and later devices include a plurality of louvers positioned over the light sensitive detector to accept light from the at least one light emission device originating from a general direction of the at least one light emission device and then transmitting through body tissue carrying pulsing blood, wherein the louvers accept the light when the sensor is properly applied to tissue of a patient.  Fig. 7 of Apple's U.S. Patent Application Publication 2019/0090806 (the '806 publication) is illustrative of the Apple Watch Series 4 and later devices. The Apple Watch Series 4 and later devices have, for example, a |

| U.S. Patent No. 6,771,994 Claim 15 | Description of Accused Products |
|---|---|
| body tissue carrying pulsing blood, wherein the louvers accept the light when the sensor is properly applied to tissue of a patient. | plurality of louvers positioned over the light sensitive detector to accept light from the at least one light emission device originating from a general direction of the at least one light emission device and then transmitting through body tissue carrying pulsing blood: <br>FIG. 7 |
| a light block forming an enclosing wall between the light emission source and the plurality of detectors, the light block defining the circular portion of the tissue measurement site, the light emission source arranged proximate a first side of the enclosing wall and the plurality of detectors arranged proximate a second side of the enclosing wall, the first side being different than the second side, | The Apple Watch Series 4 and later devices include a light block forming an enclosing wall between the light emission source and the plurality of detectors, the light block defining the circular portion of the tissue measurement site, the light emission source arranged proximate a first side of the enclosing wall and the plurality of detectors arranged proximate a second side of the enclosing wall, the first side being different than the second side. Fig. 4C of Apple's U.S. Patent Application Publication 2019/0072912 (the '912 publication) is illustrative of the Apple Watch Series 4 and later devices. The Apple Watch Series 4 and later devices have, for example, a wall with LEDs arranged in the interior of the enclosing wall and photodiode sensors arranged on the exterior of the enclosing wall: <br>FIG. 4C |

63

| U.S. Patent No. 6,771,994 Claim 15 | Description of Accused Products |
|---|---|
| wherein the enclosing wall prevents at least a portion of light emitted from the light emission source from being detected by the plurality of detectors without attenuation by the tissue, and wherein the plurality of detectors are arranged in an array having a spatial configuration corresponding to the circular portion of the tissue measurement site. | The Apple Watch Series 4 and later devices have an enclosing wall that prevents at least a portion of light emitted from the light emission source from being detected by the plurality of detectors without attenuation by the tissue, and wherein the plurality of detectors are arranged in an array having a spatial configuration corresponding to the circular portion of the tissue measurement site. Fig. 4C of Apple's U.S. Patent Application Publication 2019/0072912 (the '912 publication) is illustrative of the Apple Watch Series 4 and later devices. The Apple Watch Series 4 and later devices have, for example, a wall with LEDs arranged in the interior of the enclosing wall and photodiode sensors arranged on the exterior of the circular enclosing wall:  FIG. 4C |

U.S. Patent No. 8,457,703

| U.S. Patent No. 8,457,703 Claim 1 | Description of Accused Products |
|---|---|
| 1. A method of managing power consumption during continuous patient monitoring by adjusting behavior of a patient monitor, the method comprising: | The Apple Watch Series 3 and later devices manage power consumption during continuous patient monitoring by adjusting behavior of a patient monitor.<br><br>The Apple Watch Series 3 and later devices include a plurality of emitters of different wavelengths (for example, green and infrared LEDs) and detectors (for example, photodiode sensors) as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The emitters and detectors are used to monitor physiological parameters, such as pulse rate. *See* https://support.apple.com/en-us/HT204666. |

| U.S. Patent No. 8,457,703<br>Claim 1 | Description of Accused Products |
|---|---|
| driving one or more light sources configured to emit light into tissue of a monitored patient; | The Apple Watch Series 3 and later devices drive one or more light sources configured to emit light into tissue of a monitored patient. The Apple Watch Series 3 and later devices include green and infrared LEDs as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The Apple Watches Series 3 and later devices are worn on the wrist such that the detectors are configured to detect light that has passed through tissue and is indicative of a physiological parameter of the wearer:<br><br>The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate.<br><br>The optical heart sensor can also use infrared light. This mode is what Apple Watch uses when it measures your heart rate in the background, and for heart rate notifications. Apple Watch uses green LED lights to measure your heart rate during workouts and Breathe sessions, and to calculate walking average and Heart Rate Variability (HRV).<br><br>https://support.apple.com/en-us/HT204666. |

| U.S. Patent No. 8,457,703 Claim 1 | Description of Accused Products |
|---|---|
| receiving one or more signals from one or more detectors configured to detect said light after attenuation by said tissue; | The Apple Watch Series 3 and later devices receive one or more signals from one or more detectors configured to detect said light after attenuation by said tissue. The Apple Watch Series 3 and later devices include eight photodiode sensors as found on the Apple website at https://support.apple.com/en-us/HT204666: |

*(figure labels: Photodiode sensors; Digital Crown electrode; Back crystal electrode; Green LEDs; Infrared LED)*

The Apple Watches Series 3 and later devices are worn on the wrist such that the detectors are configured to detect light that has passed through tissue and is indicative of a physiological parameter of the wearer:

The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate.

The optical heart sensor can also use infrared light. This mode is what Apple Watch uses when it measures your heart rate in the background, and for heart rate notifications. Apple Watch uses green LED lights to measure your heart rate during workouts and Breathe sessions, and to calculate walking average and Heart Rate Variability (HRV).

https://support.apple.com/en-us/HT204666.

| U.S. Patent No. 8,457,703 Claim 1 | Description of Accused Products |
|---|---|
| continuously operating a patient monitor at a lower power consumption level to determine measurement values for one or more physiological parameters of a patient; | The Apple Watch Series 3 and later devices continuously operate a patient monitor at a lower power consumption level to determine measurement values for one or more physiological parameters of a patient.<br><br>The Apple Watches Series 3 and later devices transmit recorded data to the Health App on iOS devices. Upon information and belief, the pulse rate determination, the types of LEDs used to determine pulse rate, and the operation of the LEDs varies with pulse rate activity and heart rate context (e.g., background, sedentary, streaming, etc.), as described in International Application Publication WO 2018/226305 (the '305 publication), for example, at paragraphs [0055]-[0061].<br><br>*See also* https://developer.apple.com/documentation/healthkit/hkquantitytypeidentifier/1615138-heartrate. |
| comparing processing characteristics to a predetermined threshold; and | Upon information and belief, the Apple Watches Series 3 and later devices compare processing characteristics to a predetermined threshold.<br><br>The Apple Watches Series 3 and later devices transmit recorded data to the Health App on iOS devices. Upon information and belief, the pulse rate determination, the types of LEDs used to determine pulse rate, and the operation of the LEDs varies with pulse rate activity and heart rate context (e.g., background, sedentary, streaming, etc.).<br><br>*See also* https://developer.apple.com/documentation/healthkit/hkquantitytypeidentifier/1615138-heartrate. |
| when said processing characteristics pass said threshold, transitioning to continuously operating said patient monitor at a higher power consumption level, wherein said continuously operating at said lower power consumption level comprises reducing activation of an attached sensor, said sensor positioning said light sources and said detectors proximate said tissue. | Upon information and belief, the Apple Watches Series 3 and later devices transition to continuously operating said patient monitor at a higher power consumption level.<br><br>Upon information and belief, the Apple Watches Series 3 and later devices continuously operating at said lower power consumption level corresponds with reducing activation of an attached sensor, said sensor positioning said light sources and said detectors proximate said tissue.<br><br>The Apple Watches Series 3 and later devices transmit recorded data to the Health App on iOS devices. Upon information and belief, the pulse rate determination, the types of LEDs used to determine pulse rate, and the operation of the LEDs varies with pulse rate activity and heart rate context (e.g., background, sedentary, streaming, etc.), as described in International Application Publication WO 2018/226305 (the '305 publication), for example, at paragraphs [0055]-[0061].<br><br>*See also* https://developer.apple.com/documentation/healthkit/hkquantitytypeidentifier/1615138-heartrate. |

U.S. Patent No. 10,433,776

| U.S. Patent No. 10,433,776<br>Claim 1 | Description of Accused Products |
| --- | --- |
| 1. A method of operating a patient monitor configured to monitor at least a pulse rate of a patient by processing signals responsive to light attenuated by body tissue, the method comprising: | The Apple Watch Series 3 and later devices monitor at least a pulse rate of a patient by processing signals responsive to light attenuated by body tissue.<br><br>The Apple Watch Series 3 and later devices include a plurality of emitters of different wavelengths (for example, green and infrared LEDs) and detectors (for example, photodiode sensors) as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The emitters and detectors are used to monitor physiological parameters, such as pulse rate. *See* https://support.apple.com/en-us/HT204666 |
| operating the patient monitor according to a first control protocol, wherein said operating includes activating a first control protocol light source in accordance with the first control protocol, the first control protocol light source including one or more of a plurality of light sources; | The Apple Watch Series 3 and later devices operate according to a first control protocol, wherein said operating includes activating a first control protocol light source in accordance with the first control protocol, the first control protocol light source including one or more of a plurality of light sources.<br><br>The Apple Watches Series 3 and later devices transmit recorded data to the Health App on iOS devices. Upon information and belief, the pulse rate determination, the types of LEDs used to determine pulse rate, and the operation of the LEDs varies with pulse rate activity and heart rate context (e.g., background, sedentary, streaming, etc.), as described in International Application Publication WO 2018/226305 (the '305 publication), for example, at paragraphs [0055]-[0061].<br><br>*See also* https://developer.apple.com/documentation/healthkit/hkquantitytypeidentifier/1615138-heartrate. |

| U.S. Patent No. 10,433,776 Claim 1 | Description of Accused Products |
|---|---|
| when operating according to the first control protocol, calculating, by the patient monitor, measurement values of the pulse rate, the measurement values responsive to light from the first control protocol light source, detected by a detector of an optical sensor after attenuation by body tissue of the patient using the patient monitor; | The Apple Watch Series 3 and later devices calculate measurement values of the pulse rate, the measurement values responsive to light from the first control protocol light source, detected by a detector of an optical sensor after attenuation by body tissue of the patient using the patient monitor:<br><br>The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate.<br><br>The optical heart sensor can also use infrared light. This mode is what Apple Watch uses when it measures your heart rate in the background, and for heart rate notifications. Apple Watch uses green LED lights to measure your heart rate during workouts and Breathe sessions, and to calculate walking average and Heart Rate Variability (HRV).<br><br>https://support.apple.com/en-us/HT204666. |
| generating a trigger signal, wherein generating said trigger signal is responsive to at least one of: a comparison of processing characteristics to a predetermined threshold, a physiological event, or signal quality characteristics of signals received from the detector; | The Apple Watch Series 3 and later devices generate a trigger signal, wherein generating said trigger signal is responsive to at least one of: a comparison of processing characteristics to a predetermined threshold, a physiological event, or signal quality characteristics of signals received from the detector.<br><br>The Apple Watches Series 3 and later devices transmit recorded data to the Health App on iOS devices.  Upon information and belief, the pulse rate determination, the types of LEDs used to determine pulse rate, and the operation of the LEDs varies with pulse rate activity and heart rate context (e.g., background, sedentary, streaming, etc.), as described in International Application Publication WO 2018/226305 (the '305 publication), for example, at paragraphs [0055]-[0061].<br><br>*See also* https://developer.apple.com/documentation/healthkit/hkquantitytypeidentifier/1615138-heartrate. |

| U.S. Patent No. 10,433,776<br>Claim 1 | Description of Accused Products |
|---|---|
| in response to receiving the trigger signal, operating the patient monitor according to a second control protocol different from the first control protocol, wherein said operating includes activating a second control protocol light source in accordance with the second control protocol, the second control protocol light source including one or more of the plurality of light sources; and | The Apple Watch Series 3 and later devices in response to receiving the trigger signal, operate according to a second control protocol different from the first control protocol, wherein said operating includes activating a second control protocol light source in accordance with the second control protocol, the second control protocol light source including one or more of the plurality of light sources.<br><br>The Apple Watches Series 3 and later devices transmit recorded data to the Health App on iOS devices. Upon information and belief, the pulse rate determination, the types of LEDs used to determine pulse rate, and the operation of the LEDs varies with pulse rate activity and heart rate context (e.g., background, sedentary, streaming, etc.), as described in International Application Publication WO 2018/226305 (the '305 publication), for example, at paragraphs [0055]-[0061].<br><br>*See also* https://developer.apple.com/documentation/healthkit/hkquantitytypeidentifier/1615138-heartrate. |
| when operating the patient monitor according to the second control protocol, calculating the measurement values of the pulse rate, the measurement values responsive to light from the second control protocol light source, detected by the detector after attenuation by the body tissue of the patient using the patient monitor, | The Apple Watch Series 3 and later devices, when operating according to the second control protocol, calculate the measurement values of the pulse rate, the measurement values responsive to light from the second control protocol light source, detected by the detector after attenuation by the body tissue of the patient using the patient monitor:<br><br>The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate.<br><br>The optical heart sensor can also use infrared light. This mode is what Apple Watch uses when it measures your heart rate in the background, and for heart rate notifications. Apple Watch uses green LED lights to measure your heart rate during workouts and Breathe sessions, and to calculate walking average and Heart Rate Variability (HRV).<br><br>https://support.apple.com/en-us/HT204666. |

| U.S. Patent No. 10,433,776 Claim 1 | Description of Accused Products |
|---|---|
| | The Apple Watches Series 3 and later devices transmit recorded data to the Health App on iOS devices. Upon information and belief, the pulse rate determination, the types of LEDs used to determine pulse rate, and the operation of the LEDs varies with pulse rate activity and heart rate context (e.g., background, sedentary, streaming, etc.). <br><br> *See also* https://developer.apple.com/documentation/healthkit/ hkquantitytypeidentifier/1615138-heartrate. |
| wherein said operating of the patient monitor according to the first control protocol operates the first control protocol light source according to a first duty cycle and said operating of the patient monitor according to the second control protocol operates the second control protocol light source according to a second duty cycle, wherein power consumption of the first control protocol light source according to the first duty cycle is different than power consumption of the second control protocol light source according to the second duty cycle. | The Apple Watch Series 3 and later devices operates the first control protocol light source according to a first duty cycle and operates the second control protocol light source according to a second duty cycle, wherein power consumption of the first control protocol light source according to the first duty cycle is different than power consumption of the second control protocol light source according to the second duty cycle. <br><br> The Apple Watches Series 3 and later devices transmit recorded data to the Health App on iOS devices. Upon information and belief, the pulse rate determination, the types of LEDs used to determine pulse rate, and the operation of the LEDs varies with pulse rate activity and heart rate context (e.g., background, sedentary, streaming, etc.), as described in International Application Publication WO 2018/226305 (the '305 publication), for example, at paragraphs [0055]-[0061]. <br><br> *See also* https://developer.apple.com/documentation/healthkit/ hkquantitytypeidentifier/1615138-heartrate. |

# Exhibit 2

1  Hon. Andrew J. Guilford (Ret.)
   Judicate West
2  1851 East First Street
   Suite 1600
3  Santa Ana, CA 92705
   Phone: (714) 834-1340
4
5  Special Master

6                  IN THE UNITED STATES DISTRICT COURT

7                FOR THE CENTRAL DISTRICT OF CALIFORNIA

8                          SOUTHERN DIVISION

9

10  MASIMO CORPORATION, a Delaware          )
    Corporation; and CERCACOR              )  Case No. SACV 20-00048 JVS (JDEx)
11  LABORATORIES, INC., a Delaware         )
    Corporation,                          )  (JW Reference No.: A279845)
12                                         )
                 Plaintiffs,              )
13                                         )  **ORDER NO. 6 OF SPECIAL MASTER ON TWO**
         vs.                              )  **DISCOVERY MOTIONS**
14                                         )
15  APPLE INC., a California corporation,  )
                                           )
16               Defendant.               )
                                           )
17  ─────────────────────────────────────)

28

a

21

22    THUS IT IS ORDERED.

23

Dated:  March 17, 2022

24    _____
      Hon. Andrew J. Guilford (Ret.)
25    Special Master

26

27

28

8

**JUDICATE WEST**
Alternative Dispute Resolution

1851 E. First Street
Suite 1600
Santa Ana, CA 92705
Phone: (714) 834-1340
Fax: (714) 834-1344

*Results Beyond Dispute*℠

*www.judicatewest.com*

**PROOF OF SERVICE**

**Masimo Corporation, et al. vs. Apple, Inc.**
**A279845**

I, the undersigned, an employee of Judicate West, located at 1851 E. First Street, Suite 1600, Santa Ana, CA 92705 declare under penalty of perjury that I am over the age of eighteen (18) and not a party to this matter or proceeding.

On March 17, 2022, I served the foregoing documents, described as:

**ORDER NO. 6 OF SPECIAL MASTER ON TWO DISCOVERY MOTIONS**

to the following parties:

**SEE ATTACHED MAILING LIST**

**(X) BY E-MAIL** I caused the above-referenced document to be transmitted via electronic mail (e-mail) to the parties as listed on this Proof of Service

**( ) BY ELECTRONIC FILING** I caused such document to be sent via electronic service by submitting an electronic version of the document(s) to One Legal, LLC, through the user interface at www.onelegal.com.

**( ) BY FASCIMILE** I caused the above-referenced document to be transmitted via facsimile to the parties as listed on this Proof of Service. The document was transmitted by facsimile transmission and the transmission was reported as complete and without error.

**( ) BY PERSONAL SERVICE** I personally delivered the documents to the persons at the address (es): by leaving the documents at the person (s) office, in an envelope or package clearly labeled to identify the person(s) being served, with a receptionist or an individual in charge of the office.

**( ) BY UNITED STATES PARCEL SERVICE** I am readily familiar with the business' practice for collection and processing of correspondence and mailing with the United States Postal Service; such correspondence would be deposited with the United States Postal Service the same day of deposit with postage thereon fully prepaid at Santa Ana, California in the ordinary course of business

**( ) STATE** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**( ) FEDERAL** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **March 17, 2022,** at Santa Ana, California

<u>Heidi Adams</u>
Judicate West

Downtown Los Angeles Office • 601 S. Figueroa St., Suite 3400 • Los  Angeles, CA 90017 • (213) 223-1 113 • Fax (213) 223-1 114
Sacramento Office • 980 9™ Street, Suite 2200 • Sacramento, CA  95814 • (916) 394-8490 • Fax (916) 394-8495
San Diego Office • 402 West Broadway, Suite 2400 • San Diego, CA  92101 • (619) 814-1966 • Fax (619) 814-1967
San Francisco Office • 100 Pine St., Suite 1950 • San Francisco, CA  94111 • (415) 266-1242 • Fax (415) 266-1243
West Los Angeles Office • 11601 Wilshire Blvd., Suite 2040 • Los  Angeles, CA 90025 • (310) 442-2100 • Fax (310) 442-2125



**Santa Ana Office**
1851 East First Street
Suite 1600
Santa Ana, CA 92705
Phone: (714) 834-1340
Fax: (714) 834-1344

**www.judicatewest.com**

# Case Contact List

as of Thursday, March 17, 2022

**JW Case #: A279845**

## Case Caption: Masimo Corporation, et al. vs. Apple, Inc.

Daniel P. Hughes, Esq.
Knobbe, Martens, Olson & Bear, LLP
12790 El Camino Real
San Diego, CA 92130
Phone: (858) 707-4000   Fax: (858) 707-4001
Email: daniel.hughes@knobbe.com
Representing Masimo Corporation; Cercacor Laboratories, Inc.

Joseph F. Jennings, Esq.
Knobbe, Martens, Olson & Bear, LLP
2040 Main St.
14th Floor
Irvine, CA 92614
Phone: (949) 760-0404   Fax: (949) 760-9502
Email: joe.jennings@knobbe.com
Representing Masimo Corporation; Cercacor Laboratories, Inc.

Stephen C. Jensen, Esq.
Knobbe, Martens, Olson & Bear, LLP
2040 Main St.
14th Floor
Irvine, CA 92614
Phone: (949) 760-0404   Fax: (949) 760-9502
Email: steve.jensen@knobbe.com
Representing Masimo Corporation; Cercacor Laboratories, Inc.

Mark D. Kachner, Esq.
Knobbe, Martens, Olson & Bear, LLP
2040 Main St.
14th Floor
Irvine, CA 92614
Phone: (949) 760-0404   Fax: (949) 760-9502
Email: mark.kachner@knobbe.com
Representing Masimo Corporation; Cercacor Laboratories, Inc.

Benjamin A. Katzenellenbogen, Esq.
Knobbe, Martens, Olson & Bear, LLP
2040 Main St.
14th Floor
Irvine, CA 92614
Phone: (949) 760-0404   Fax: (949) 760-9502
Email: ben.katzenellenbogen@knobbe.com
Representing Masimo Corporation; Cercacor Laboratories, Inc.

Downtown Los Angeles Office ● 601 S. Figueroa Street Suite 4000 ● Los Angeles, CA 90017 ● (213) 223-1113 ● Fax (213) 223-1114
San Diego Office ● 402 W. Broadway Suite 2400 ● San Diego, CA 92101 ● (619) 814-1966 ● Fax (619) 814-1967
San Francisco Office ● 100 Pine Street Suite 1950 ● San Francisco, CA 94111 ● (415) 266-1242 ● Fax (415) 266-1243
West Los Angeles Office ● 11601 Wilshire Blvd Suite 2040 ● Los Angeles, CA 90025 ● (310) 442-2100 ● Fax (310) 442-2125
Sacramento Office ● 980 9th Street Suite 2200 ● Sacramento, CA 95814 ● (916) 394-8490 ● Fax (916) 394-8495



**Santa Ana Office**
1851 East First Street
Suite 1600
Santa Ana, CA 92705
Phone: (714) 834-1340
Fax: (714) 834-1344

**www.judicatewest.com**

Stephen W. Larson, Esq.
Knobbe, Martens, Olson & Bear, LLP
2040 Main St.
14th Floor
Irvine, CA 92614
Phone: (949) 760-0404   Fax: (949) 760-9502
Email: stephen.larson@knobbe.com
Representing Masimo Corporation; Cercacor Laboratories, Inc.


Perry D. Oldham, Esq.
Knobbe, Martens, Olson & Bear, LLP
2040 Main St.
14th Floor
Irvine, CA 92614
Phone: (949) 760-0404   Fax: (949) 760-9502
Email: perry.oldman@kmob.com
Representing Masimo Corporation; Cercacor Laboratories, Inc.


Adam B. Powell, Esq.
Knobbe, Martens, Olson & Bear, LLP
12790 El Camino Real
San Diego, CA 92130
Phone: (858) 707-4000   Fax: (858) 707-4001
Email: adam.powell@knobbe.com
Representing Masimo Corporation; Cercacor Laboratories, Inc.


Joseph R. Re, Esq.
Knobbe, Martens, Olson & Bear, LLP
2040 Main St.
14th Floor
Irvine, CA 92614
Phone: (949) 760-0404   Fax: (949) 760-9502
Email: jre@kmob.com
Representing Masimo Corporation; Cercacor Laboratories, Inc.


Ryan J. Moran, Esq.
Apple, Inc.
1 Infinite Loop
MS 169-2NYJ
Cupertino, CA 95014
Phone: (408) 974-0756   Fax:
Email: rmoran@apple.com
Representing Apple, Inc.


Natalie Pous, Esq.
Apple, Inc.
1 Infinite Loop
MS 169-2NYJ
Cupertino, CA 95014
Phone: (408) 974-0756   Fax:
Email: npous@apple.com
Representing Apple, Inc.

Downtown Los Angeles Office ● 601 S. Figueroa Street Suite 4000 ● Los Angeles, CA 90017 ● (213) 223-1113 ● Fax (213) 223-1114
San Diego Office ● 402 W. Broadway Suite 2400 ● San Diego, CA 92101 ● (619) 814-1966 ● Fax (619) 814-1967
San Francisco Office ● 100 Pine Street Suite 1950 ● San Francisco, CA 94111 ● (415) 266-1242 ● Fax (415) 266-1243
West Los Angeles Office ● 11601 Wilshire Blvd Suite 2040 ● Los Angeles, CA 90025 ● (310) 442-2100 ● Fax (310) 442-2125
Sacramento Office ● 980 9th Street Suite 2200 ● Sacramento, CA 95814 ● (916) 394-8490 ● Fax (916) 394-8495



**Santa Ana Office**
1851 East First Street
Suite 1600
Santa Ana, CA 92705
Phone: (714) 834-1340
Fax: (714) 834-1344

**www.judicatewest.com**

Brian K. Andrea, Esq.
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Ave. N.W.
Washington, D.C. 20036
Phone: (202) 955-8500   Fax: (202) 530-4238
Email: bandrea@gibsondunn.com
Representing Apple, Inc.


Brian M. Buroker, Esq.
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Ave. N.W.
Washington, D.C. 20036
Phone: (202) 955-8500   Fax: (202) 530-4238
Email: bburoker@gibsondunn.com
Representing Apple, Inc.


Angelique Kaounis, Esq.
Gibson, Dunn & Crutcher, LLP
2029 Century Park E.
Suite 4000
Los Angeles, CA 90067
Phone: (310) 552-8500   Fax:
Email: akaounis@gibsondunn.com
Representing Apple, Inc.


Joshua H. Lerner, Esq.
Gibson, Dunn & Crutcher, LLP
555 Mission St.
Suite 3000
San Francisco, CA 94105
Phone: (415) 393-8200   Fax: (415) 393-8306
Email: jlerner@gibsondunn.com
Representing Apple, Inc.


Jason C. Lo, Esq.
Gibson, Dunn & Crutcher, LLP
333 S. Grand Ave.
49th Floor
Los Angeles, CA 90071
Phone: (213) 229-7000   Fax: (213) 229-6635
Email: jlo@gibsondunn.com
Representing Apple, Inc.


H. Mark Lyon, Esq.
Gibson, Dunn & Crutcher, LLP
1881 Page Mill Rd.
Palo Alto, CA 94304
Phone: (650) 849-5300   Fax: (650) 849-5333
Email: mlyon@gibsondunn.com
Representing Apple, Inc.

Downtown Los Angeles Office ● 601 S. Figueroa Street Suite 4000 ● Los Angeles, CA 90017 ● (213) 223-1113 ● Fax (213) 223-1114
San Diego Office ● 402 W. Broadway Suite 2400 ● San Diego, CA 92101 ● (619) 814-1966 ● Fax (619) 814-1967
San Francisco Office ● 100 Pine Street Suite 1950 ● San Francisco, CA 94111 ● (415) 266-1242 ● Fax (415) 266-1243
West Los Angeles Office ● 11601 Wilshire Blvd Suite 2040 ● Los Angeles, CA 90025 ● (310) 442-2100 ● Fax (310) 442-2125
Sacramento Office ● 980 9th Street Suite 2200 ● Sacramento, CA 95814 ● (916) 394-8490 ● Fax (916) 394-8495



**JUDICATE WEST**
Alternative Dispute Resolution

*Results Beyond Dispute℠*

**Santa Ana Office**
1851 East First Street
Suite 1600
Santa Ana, CA 92705
Phone: (714) 834-1340
Fax: (714) 834-1344

**www.judicatewest.com**

Brian Rosenthal, Esq.
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Ave. N.W.
Washington, D.C. 20036
Phone: (202) 955-8500   Fax: (202) 530-4238
Email: barosenthal@gibsondunn.com
Representing Apple, Inc.


Ilissa S. Samplin, Esq.
Gibson, Dunn & Crutcher, LLP
333 S. Grand Ave.
49th Floor
Los Angeles, CA 90071
Phone: (213) 229-7000   Fax: (213) 229-6635
Email: isamplin@gibsondunn.com
Representing Apple, Inc.


Kenneth G. Parker, Esq.
Haynes Boone, LLP
600 Anton Blvd.
Suite 700
Costa Mesa, CA 92626
Phone: (949) 202-3000   Fax: (949) 202-3114
Email: ken.parker@haynesboone.com
Representing Apple, Inc.


Marc R. Lewis, Esq.
Lewis & Llewellyn, LLP
601 Montgomery St.
Suite 2000
San Francisco, CA 94111
Phone: (415) 800-0590   Fax: (415) 390-2127
Email: mlewis@lewisllewellyn.com
Representing Apple, Inc.


Tobias G. Snyder, Esq.
Lewis & Llewellyn, LLP
601 Montgomery St.
Suite 2000
San Francisco, CA 94111
Phone: (415) 800-0590   Fax: (415) 390-2127
Email: tsnyder@lewisllewellyn.com
Representing Apple, Inc.


Mark D. Selwyn, Esq.
Wilmer Cutler Pickering Hale & Dorr, LLP
2600 El Camino Real
Suite 400
Palo Alto, CA 94306
Phone: (650) 858-6031   Fax:
Email: mark.selwyn@wilmerhale.com
Representing Apple, Inc.

Downtown Los Angeles Office ● 601 S. Figueroa Street Suite 4000 ● Los Angeles, CA 90017 ● (213) 223-1113 ● Fax (213) 223-1114
San Diego Office ● 402 W. Broadway Suite 2400 ● San Diego, CA 92101 ● (619) 814-1966 ● Fax (619) 814-1967
San Francisco Office ● 100 Pine Street Suite 1950 ● San Francisco, CA 94111 ● (415) 266-1242 ● Fax (415) 266-1243
West Los Angeles Office ● 11601 Wilshire Blvd Suite 2040 ● Los Angeles, CA 90025 ● (310) 442-2100 ● Fax (310) 442-2125
Sacramento Office ● 980 9th Street Suite 2200 ● Sacramento, CA 95814 ● (916) 394-8490 ● Fax (916) 394-8495

# Exhibit 3

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone:  (949)-760-0404 Facsimile:  (949)-760-9502

Adam B. Powell (Bar No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
Telephone: (858) 707-4000 Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
Masimo Corporation and Cercacor Laboratories, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION,<br>a Delaware corporation; and<br>CERCACOR LABORATORIES, INC.,<br>a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>Hon. James V. Selna<br>Magistrate Judge John D. Early<br><br>**PLAINTIFFS' DEPOSITION OF DEFENDANT UNDER FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)** |

-1-

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

-4-

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

-8-

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

*28*

-14-

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

*28*

-17-

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## PROOF OF SERVICE

I am a citizen of the United States of America and I am employed in San Diego, California.  I am over the age of 18 and not a party to the within action.

On May 3, 2022, I served the within **PLAINTIFFS' DEPOSITION OF DEFENDANT UNDER FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)** on the parties or their counsel shown at the email addresses below:

Apple-Masimo@gibsondunn.com

whapple-masimoservicelist@wilmerhale.com

Joshua H. Lerner
JLerner@gibsondunn.com

H. Mark Lyon,
MLyon@gibsondunn.com

Brian M. Buroker
BBuroker@gibsondunn.com

Brian K. Andrea
BAndrea@gibsondunn.com

Brian A. Rosenthal
BRosenthal@gibsondunn.com

Ilissa Samplin
ISamplin@gibsondunn.com

Angelique Kaounis
AKaounis@gibsondunn.com

Jason C. Lo
jlo@gibsondunn.com

Marc R. Lewis
mlewis@lewisllewellyn.com

Mark D. Selwyn
Mark.selwyn@wilmerhale.com

Derek Gosma
Derek.gosma@wilmerhale.com

Amy K. Wigmore
amy.wigmore@wilmerhale.com

Tobias George Snyder
tsnyder@lewisllewellyn.com

Nora Q. E. Passamaneck
nora.passamaneck@wilmerhale.com

Sarah R. Frazier
sarah.frazier@wilmerhale.com

Kenneth G. Parker
ken.parker@haynesboone.com

Jason T. Lao
Jason.lao@haynesboone.com

I certify and declare under penalty of perjury under the laws of the State of California that I am a member of the bar of this Court, and that the forgoing is true and correct.

Executed on May 3, 2022, at Encinitas, California.

/s/ Adam B. Powell
Adam Powell

35206161

-1-

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

# Exhibit 4

8/5/2022          Masimo Corporation, et al. v. Apple, Inc.          Jackie Harlow 30(b)(6)
Highly Confidential - Attorneys' Eyes Only

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

MASIMO CORPORATION,              )
a Delaware corporation; and    )
CERCACOR LABORATORIES, INC ,   )
a Delaware corporation,         )
                                )
       Plaintiffs,              )
                                )
v                               )   Case No
                                ) 8:20-cv-00048
APPLE INC , a California        )   JVS-JDE
corporation,                    )
                                )
       Defendant                )
_____)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
30(b)(6) Videotaped Deposition of
APPLE, INC ,
by and through their corporate representative
JACKIE HARLOW
Conducted Remotely via Zoom
Friday August 5, 2022
10:03 a m MDT

Reported by Lisa A Knight, RDR, CRR, RSA

DIGITAL EVIDENCE GROUP
1730 M Street, NW, Suite 812
Washington, D C 20036
(202) 232-0646

Page 2

1        Pursuant to Notice, the 30(b)(6)
2   videotaped deposition of APPLE, INC.,
3   by and through their corporate representative
4   JACKIE HARLOW, was conducted remotely via
5   Zoom on behalf of the Plaintiffs, at
6   10:03 a m. MDT, on Friday, August 5, 2022,
7   reported stenographically by Lisa A. Knight,
8   Realtime Diplomate Reporter, Certified
9   Realtime Reporter, and Realtime Systems
10  Administrator.
11
12
13
14
15
16
17
18
19
20
21
22

Page 3

1     A P P E A R A N C E S
2       (All appearing remotely)
3
4   COUNSEL FOR THE PLAINTIFFS
        KNOBBE, MARTENS, OLSON & BEAR, LLP
5   BY:  MARK KACHNER, ESQUIRE
        mark.kachner@knobbe.com
6       1925 Century Park East
        Suite 600
7       Los Angeles, California 90067
        310.551.3450
8   BY:  MATTHEW PHAM, ESQUIRE
        matthew.pham@knobbe.com
9       2040 Main Street
        14th Floor
10      Irvine, California 92614
11      949.760.0404
12
13  COUNSEL FOR THE DEFENDANT AND THE WITNESS:
        WILMER CUTLER PICKERING HALE AND
14      DORR, LLP
15  BY:  SARAH R. FRAZIER, ESQUIRE
        sarah.frazier@wilmerhale.com
16      60 State Street
        Boston, Massachusetts 02109
17      617.526.6000
18
19  ALSO PRESENT:
20      NATALIE POUS, ESQUIRE - Apple Inc.
21      DANIEL HOLMSTOCK, Videographer
22

Page 4

1        I N D E X
2        JACKIE HARLOW
3        AUGUST 5, 2022
4   EXAMINATION OF JACKIE HARLOW:
5      BY MR. KACHNER              8
6      BY MS. FRAZIER            139
7
8      DEPOSITION EXHIBITS
9        JACKIE HARLOW
10       AUGUST 5, 2022
11  NUMBER    DESCRIPTION         PAGE
12  Harlow 286   LinkedIn Profile of     8
             Jackie Harlow, No Bates
13  Harlow 287   Defendant Apple Inc.'s  64
             Fourth Supplemental
14           Objections and Responses
             to Plaintiffs Masimo
15           Corporation and Cercacor
             Laboratories, Inc.'s
16           Fifth Set of
             Interrogatories to
17           Defendant Apple Inc.
             (No. 22), No Bates
18  Harlow 288   Photograph, No Bates    80
19  Harlow 289   Photograph, No Bates    83
20  Harlow 290   Photograph, No Bates    90
21
22

1 (Pages 1 to 4)

8/5/2022                    Masimo Corporation, et al. v. Apple, Inc.        Jackie Harlow 30(b)(6)
                            Highly Confidential - Attorneys' Eyes Only

28 (Pages 109 to 112)



29 (Pages 113 to 116)

8/5/2022                    Masimo Corporation, et al. v. Apple, Inc.        Jackie Harlow 30(b)(6)
                            Highly Confidential - Attorneys' Eyes Only

Masimo Corporation, et al. v. Apple, Inc.
Highly Confidential - Attorneys' Eyes Only

8/5/2022                 Masimo Corporation, et al. v. Apple, Inc.        Jackie Harlow 30(b)(6)
                         Highly Confidential - Attorneys' Eyes Only



8/5/2022      Masimo Corporation, et al. v. Apple, Inc.      Jackie Harlow 30(b)(6)

Highly Confidential - Attorneys' Eyes Only

33 (Pages 129 to 132)

8/5/2022                    Masimo Corporation, et al. v. Apple, Inc.          Jackie Harlow 30(b)(6)
                                 Highly Confidential - Attorneys' Eyes Only



34 (Pages 133 to 136)



8/5/2022  Masimo Corporation, et al. v. Apple, Inc.  Jackie Harlow 30(b)(6)
Highly Confidential - Attorneys' Eyes Only

## Page 141

1    CERTIFICATE
2    I, LISA A. KNIGHT, Registered
Diplomate Reporter and Certified Realtime
3    Reporter, do hereby certify that prior to the
commencement of the examination, JACKIE
4    HARLOW was duly sworn by me to testify to the
truth, the whole truth, and nothing but the
5    truth.
6        I DO FURTHER CERTIFY that the
foregoing is a verbatim transcript of the
7    testimony as taken stenographically by and
before me at the time, place, and on the date
8    hereinbefore set forth, to the best of my
ability, and that reading and signing was not
9    requested.
10       I DO FURTHER CERTIFY that I am
neither a relative nor employee nor attorney
11   nor counsel of any of the parties to this
action, and that I am neither a relative nor
12   employee of such attorney or counsel, and
that I am not financially interested in the
13   action.
14
15   _____
16   LISA A. KNIGHT
17   NCRA Registered Diplomate Reporter
18   NCRA Certified Realtime Reporter
19   NCRA Certified LiveNote Reporter
20   NCRA Realtime Systems Administrator
21   Dated:  August 12, 2022
22

## Page 142

1    Jackie Harlow 30(b)(6), c/o
WILMER CUTLER PICKERING HALE AND DORR, LLP
2    60 State Street
Boston, Massachusetts 02109
3
Case: Masimo Corporation, et al. v. Apple, Inc.
4    Date of deposition: August 5, 2022
Deponent: Jackie Harlow 30(b)(6)
5
6    Please be advised that the transcript in the above
referenced matter is now complete and ready for signature.
7    The deponent may come to this office to sign the transcript,
8    a copy may be purchased for the witness to review and sign,
9    or the deponent and/or counsel may waive the option of
10   signing. Please advise us of the option selected.
11   Please forward the errata sheet and the original signed
12   signature page to counsel noticing the deposition, noting the
13   applicable time period allowed for such by the governing
14   Rules of Procedure. If you have any questions, please do
15   not hesitate to call our office at (202)-232-0646.
16
17
18   Sincerely,
19   Digital Evidence Group
20   Copyright 2022 Digital Evidence Group
21   Copying is forbidden, including electronically, absent
22   express written consent.

## Page 143

1    Digital Evidence Group, L.L.C.
1730 M Street, NW, Suite 812
2    Washington, D.C. 20036
(202) 232-0646
3
4    SIGNATURE PAGE
Case: Masimo Corporation, et al. v. Apple, Inc.
5    Witness Name: Jackie Harlow 30(b)(6)
Deposition Date: August 5, 2022
6
7    I do hereby acknowledge that I have read
and examined the foregoing pages
8    of the transcript of my deposition and that:
9    (Check appropriate box):
( ) The same is a true, correct and
10   complete transcription of the answers given by
me to the questions therein recorded.
11   ( ) Except for the changes noted in the
attached Errata Sheet, the same is a true,
12   correct and complete transcription of the
13   answers given by me to the questions therein
14   recorded.
15
16   _____   _____
17   DATE            WITNESS SIGNATURE
18
19
20
21   _____   _____
22   DATE            NOTARY

## Page 144

1    Digital Evidence Group, LLC
2    1730 M Street, NW, Suite 812
3    Washington, D.C.  20036
4    (202)232-0646
5
6        ERRATA SHEET
7
8    Case: Masimo Corporation, et al. v. Apple, Inc.
9    Witness Name: Jackie Harlow 30(b)(6)
10   Deposition Date: August 5, 2022
11   Page No.   Line No.    Change
12
13
14
15
16
17
18
19
20
21   _____   _____
22   Signature                 Date

36 (Pages 141 to 144)

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| APPLE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-1377-MN-JLH |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| MASIMO CORPORATION and | ) | |
| SOUND UNITED, LLC, | ) | **CONFIDENTIAL –** |
| | ) | **ATTORNEYS' EYES ONLY** |
| Defendants. | ) | |
| MASIMO CORPORATION and | ) | |
| SOUND UNITED, LLC, | ) | |
| | ) | |
| Counter-Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |
| APPLE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-1378-MN-JLH |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| MASIMO CORPORATION and | ) | |
| SOUND UNITED, LLC, | ) | **CONFIDENTIAL –** |
| | ) | **ATTORNEYS' EYES ONLY** |
| Defendants. | ) | |
| MASIMO CORPORATION, | ) | |
| CERCACOR LABORATORIES, INC., and | ) | |
| SOUND UNITED, LLC, | ) | |
| | ) | |
| Counter-Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**DECLARATION OF MARK A. FORD IN SUPPORT OF APPLE'S LETTER TO THE**
**HONORABLE JENNIFER L. HALL FROM DAVID E. MOORE**

I, Mark A. Ford, declare as follows:





3



I declare under penalty of perjury under the laws of the United States of America that this Declaration is true and correct.

Executed this 26th day of July 2023.

By:     /s/ *Mark A. Ford*

Mark A. Ford

# EXHIBIT 1

CONFIDENTIAL – ATTORNEYS' EYES ONLY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| APPLE INC., <br><br> *Plaintiff,* <br><br> v. <br><br> MASIMO CORPORATION and <br> SOUND UNITED, LLC, <br><br> *Defendants.* | C.A. No. 22-1378-MN-JLH <br><br> **JURY TRIAL DEMANDED** |
| MASIMO CORPORATION and <br> CERCACOR LABORATORIES, INC., <br><br> *Counter-Claimants,* <br><br> v. <br><br> APPLE INC. <br><br> *Counter-Defendant.* | |

**DEFENDANT MASIMO CORPORATION'S RESPONSES AND OBJECTIONS TO
APPLE INC.'S SECOND SET OF INTERROGATORIES (4-14)**



-1-

CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



# EXHIBIT 2

CONFIDENTIAL – ATTORNEYS' EYES ONLY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLE INC.,<br><br>      *Plaintiff*,<br><br>      v.<br><br>MASIMO CORPORATION and<br>SOUND UNITED, LLC,<br><br>      *Defendants*. | C.A. No. 22-1377-MN-JLH<br>C.A. No. 22-1378-MN-JLH<br><br>**JURY TRIAL DEMANDED**<br><br>**CONFIDENTIAL –<br>ATTORNEYS' EYES ONLY** |
| MASIMO CORPORATION and<br>CERCACOR LABORATORIES, INC.,<br><br>      *Counter-Claimants*,<br><br>      v.<br><br>APPLE INC.<br><br>      *Counter-Defendant*. | |

**PLAINTIFF APPLE INC.'S OBJECTIONS & RESPONSES TO DEFENDANTS' AND COUNTERCLAIMANTS' THIRD SET OF INTERROGATORIES (NOS. 19-23)**



**CONFIDENTIAL – ATTORNEYS' EYES ONLY**



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



**CONFIDENTIAL – ATTORNEYS' EYES ONLY**



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



**CONFIDENTIAL – ATTORNEYS' EYES ONLY**



CONFIDENTIAL – ATTORNEYS' EYES ONLY



**CONFIDENTIAL – ATTORNEYS' EYES ONLY**



**CONFIDENTIAL – ATTORNEYS' EYES ONLY**



**CONFIDENTIAL – ATTORNEYS' EYES ONLY**



CONFIDENTIAL – ATTORNEYS' EYES ONLY



**CONFIDENTIAL – ATTORNEYS' EYES ONLY**



CONFIDENTIAL – ATTORNEYS' EYES ONLY



# EXHIBIT 3



CONFIDENTIAL

# EXHIBIT 4

## WILMERHALE

July 21, 2023

**Mark A. Ford**

+1 617 526 6423 (t)
+1 617 526 5000 (f)
mark.ford@wilmerhale.com

**By E-mail**

Justin J. Gillett
Knobbe, Martens, Olson & Bear, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Justin.Gillett@knobbe.com

Re:  *Apple v. Masimo*, Civ. A. No. 22-1377, 22-1378 (D. Del.)

Dear Justin:

I write in response to your July 17th letter and the meet-and-confer with your colleagues on July 19, 2023.  The purpose of this letter is to memorialize where the parties stand on certain issues discussed, and to determine whether we are at impasse on others.

I understand that with respect to Masimo's responses to Interrogatory Nos. 5, 7, and 10, Masimo's answers provide a complete statement of responsive information it has based on its inquiry to date, and that Masimo is not withholding any responsive contentions, evidence, or factual bases.  While this leads us to question the basis for Masimo making these assertions in the first place, we agree there is no more to do in terms of these interrogatory responses as this point.  We agreed that both sides will abide by their obligations under Fed. R. Civ. P. 26(e) to supplement these and similar interrogatory responses as responsive information becomes available during discovery and through further investigation.

With respect to Interrogatory No. 4, however, Masimo ***currently has*** further responsive information concerning its claimed litigation cost damages, so there is no basis to delay supplementation.  Furthermore, those litigation cost calculations are based entirely on business records, and not any expert analysis.  I understand that Masimo will produce records showing the amounts of litigation fees and costs it maintains it incurred as a result of Apple's assertion of the *Walker-Process*-challenged patents and Masimo's *inter partes* review petitions.  We request that Masimo do so by **August 10, 2023** and supplement its response to Interrogatory No. 4 with at least the production number of the relevant documents, so that we have that information before depositions begin.

In addition, you indicated during the meet-and-confer that you would consider (1) whether Masimo was going to provide similar information for costs incurred as a result of the Politan Litigation, and (2) whether Masimo would provide a detailed summary of its methodology for determining litigation costs associated with the defense of the *Walker-Process*-challenged patents (including how attorneys and staff are instructed to allocate their work to the billing code associated with your treble damages claims).  Please let us know by **Monday, July 24, 2023** whether you will

WILMERHALE

Justin J. Gillett
July 21, 2023
Page 2

agree to supplement with this information and whether you will provide that supplementation by **August 10, 2023**.

With respect to Interrogatory No. 12, our prior letter identified deficiencies in your initial response, and requested that Masimo supplement by "(1) identifying and describing all evidence in its possession showing that it lost sales as a result of the challenged advertising, including the evidence that formed Masimo's good faith basis to bring the claim; and (2) detail, quantify, and explain all sales and marketing expenditures Masimo incurred that it would not have incurred but for the challenged advertising." You responded in your July 17th letter that Masimo would supplement its response to Interrogatory No. 12, but Masimo would not commit during our meet-and-confer whether it would supplement with the information specifically requested in my letter and quoted above. It is unclear why Masimo refuses to be transparent about what it is agreeing to do. If there is a dispute about the scope of the supplement Apple requested in our July 11th letter, we should discuss, negotiate, and potentially present it to Judge Hall for resolution. As a result, unless you inform us otherwise by **Monday, July 24, 2023**, we will assume you are undertaking a good-faith, reasonably diligent effort to supplement with information responsive to what we requested in our July 11th letter and reserve all rights if Masimo does not do so.

Finally, your July 17th letter's discussion of Interrogatory No. 6 and our meet-and-confer left us with even more serious questions concerning the propriety of Masimo's continued pursuit of its monopoly leveraging theory. As you know, Masimo alleged that Apple "leveraged its power over iOS app distribution in an attempt to obtain confidential information from Masimo." (D.I. 132 at ¶ 72). Interrogatory No. 6 asked Masimo to "[i]dentify and describe in detail each and every piece of 'confidential information' Masimo or Cercacor allegedly provided Apple" as a result of this alleged "leverage." Your response described *every* piece of information Masimo or Cercacor conveyed to Apple over the course of the relevant App Store reviews. Some, if not all, of that information is readily available online, and it was at the time it was provided to Apple. For example, the first piece of information you claim was conveyed to Apple in your response—that the Radius PPG was 510(k) cleared (Response at 13)—was something Masimo publicly announced in a press release the year before.[1] While your response then goes on to explain how "Masimo's product and FDA strategies" are information Masimo maintains as confidential, *id.* at 18, your response never states whether Masimo claims it provided Apple confidential information, what specific information is confidential, and how that specific information was kept confidential. We learned on the meet-and-confer yesterday that this obfuscation is intentional, because Masimo refuses to state, one way or another, whether any information provided to Apple was confidential. You now maintain that Masimo's monopoly leveraging claim does not turn on whether any

---

[1] Masimo Press Release (May 16, 2019) ("Masimo announced today FDA 510(k) clearance of Radius PPG."), https://investor.masimo.com/news/news-details/2019/Masimo-Announces-FDA-Clearance-of-Radius-PPGsupsup-the-First-Tetherless-SETsupsup-Pulse-Oximetry-Sensor-Solution/default.aspx

WILMERHALE

Justin J. Gillett
July 21, 2023
Page 3

confidential information was provided at all to Apple.  But regardless of how Masimo now describes its claim, the interrogatory requested that Masimo identify the precise pieces of "confidential information" provided to Apple.  Frankly, only a minimal amount of information was provided to Apple (as your response shows), and it has been months and in some cases years since that information was sent.  If Masimo remains unable to say one way or the other that the precise information provided was something it maintains as a confidential business secret, that itself speaks volumes.

Especially because Masimo is pressing for a massive volume of discovery based on these questionable allegations, we ask that by **Friday, July 28, 2023,** Masimo supplement its response to Interrogatory No. 6 by (1) quoting any statements made by Masimo or Cercacor to Apple in the context of SafetyNet, Ember, or Masimo Health review that Masimo maintains constitutes confidential business information, and (2) describing with particularly any document Masimo provided Apple that Masimo contends constitutes confidential information.  If Masimo does not contend that any information provided to Apple over the course of these three reviews was confidential, it should state so clearly.  If Masimo will not agree to make this supplement, we intend to bring this issue before Judge Hall immediately.  Accordingly, please let us know by close of business **Monday, July 24, 2023** whether Masimo will agree to provide this supplement. Otherwise, Apple will move to compel.

Best regards,

*/s/ Mark A. Ford*

Mark A. Ford

# EXHIBIT 5

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main St., 14th Fl., Irvine, CA 92614
**T** (949) 760-0404

Justin Gillett
Justin.Gillett@knobbe.com

July 17, 2023

**VIA EMAIL**

Mark Ford
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109

Re:      *Apple v. Masimo*, Civil Action No. 22-1377; 22-1378

Dear Mark:

I write in response to your July 11, 2023, letter regarding Apple's second set of interrogatories (nos. 4-14).  We are available to confer on Wednesday, July 19 at 10:00 a.m. or 2:00 p.m. Pacific.

# Knobbe Martens



# Knobbe Martens

Mark Ford
Page 3



Best regards,

Justin J. Gillett

# EXHIBIT E

WILMERHALE

July 12, 2023

**Mark A. Ford**

+1 617 526 6423 (t)
+1 617 526 5000 (f)
mark.ford@wilmerhale.com

**By E-mail**

Justin J. Gillett
Knobbe, Martens, Olson & Bear, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Justin.Gillett@knobbe.com

Re:  *Apple v. Masimo*, Civ. A. No. 22-1377, 22-1378 (D. Del.)

Dear Justin:

I write in response to your July 8th letter to correct and clarify mischaracterizations made about Apple's position with respect to several of Masimo's requests for production ("RFPs"), and to address various omissions as well.  I also outline proposed compromises that we can discuss during our scheduled meet-and-confer later today.  Finally, I address Masimo's position regarding certain RFPs that Apple has served.

## I.  Apple's Positions Regarding Masimo RFPs

### A.  Discovery Concerning Masimo's Monopoly Leveraging (App Store) Theories And "Predatory Infringement"

While Judge Hall recommended denial of Apple's motion to dismiss, she held only that Masimo's *Walker Process* theory was viable.  She expressly "questioned" the viability of Masimo's monopoly leveraging and "predatory infringement" theories of antitrust liability, and specifically indicated that she would permit discovery only if it were proportional to a "viable" theory.  For that reason, Apple will maintain that the Court should not compel discovery on these theories, let alone the sweeping, overly broad, and unduly burdensome discovery Masimo seeks.

Your letter also ignores the many other bases we articulated for resisting discovery on these topics – not least of which is Masimo's own admission that Apple did not, in fact, refuse the Masimo Health App.  While we question the propriety of Masimo continuing to press a knowingly false "refusal to deal" claim, we certainly do not believe the claim warrants boundless discovery into Apple's App Store business.  Moreover, Masimo's requests relating to the invalid theories are so broad as to seek discovery into alleged injuries to third parties, who are not even participants in the so-called "health watch market," and into ***any claim*** by ***any party*** that Apple has infringed or otherwise misappropriated technologies.  Masimo has no standing to litigate such claims even if they were based on legitimate antitrust theories.

WILMERHALE

Justin J. Gillett
July 12, 2023
Page 2

Next, Judge Hall never "observed" that the requests at issue were relevant to Apple's "predatory intent" for purposes of Masimo's attempted monopolization claim.  She simply asked a question during the hearing on the motion to dismiss.  It is inappropriate for Masimo to infer any sort of holding about the scope of discovery from that question into Judge Hall's subsequent R&R.  Nevertheless, I responded to this argument during the meet-and-confer, and we are prepared to address it before Judge Hall.

Similarly, the argument that Masimo's sweeping discovery into "predatory" infringement is somehow relevant to whether Apple willfully infringed the Masimo patents at issue, let alone proportional to the issues in this case, is meritless, especially given the cross-use of C.D. Cal. discovery.  Apple has not refused to produce documents regarding Apple's culture and practices regarding respect for IP rights generally.  Instead, Apple is refusing to produce irrelevant documents regarding communications with third parties (e.g., RFPs 84, 89-90), specific decisions regarding irrelevant third-party IP (e.g., RFP 85), and additional documents regarding issues that have been thoroughly explored in the C.D. Cal. case (e.g., RFPs 86-87).

Accordingly, we stand on our objections to RFPs 62-63, 83-90.  For the same reasons, Apple declines to make any production in response to RFP 80 (concerning Masimo's FDA strategies), which you explained is also directed to Masimo's monopoly leveraging claim.  In addition, based on Masimo's admission that it did not provide any confidential information to Apple as part of the App Store review, RFP 80 constitutes an improper fishing expedition.

With respect to RFPs 76-79 and 81-82, for which Apple initially offered to produce a narrow scope of documents pertaining to the review of the Masimo and Cercacor apps mentioned in the Counterclaims, Apple will follow through on its agreement to produce this narrow scope without prejudice to its position that the requested discovery is not relevant to any viable theory.  Apple has not "withdrawn" any prior agreement to produce documents.

### B.      Geographic Scope

We confirm that –for purposes of this litigation–Apple will not contest that the relevant geographic market is the United States.  As a result, Masimo agreed it will not pursue RFPs 57-61 and accepts the narrowing of the geographic scope for RFPs 53, 66-69, and 71 to the United States.

### C.      Patent-Related Discovery Requests

With respect to RFPs 74-75 (Apple's IP policies and enforcement) and RFP 92 (documents relating to Apple's decision to assert the *Walker Process*-challenged patents), Apple agrees to conduct a reasonably diligent search for non-privileged responsive documents within its possession, custody, and control.

WILMERHALE

Justin J. Gillett
July 12, 2023
Page 3

### D.      "Ecosystem" Discovery

With respect to RFPs 112-114, Apple is willing to undertake a reasonably diligent search for documents that discuss whether and how any so-called "ecosystem" of Apple products relates to the Apple Watch.  Indeed, as indicated in Apple's objections and responses, such documents would already be covered by other requests to which Apple has agreed to produce documents, including, for instance, RFPs 51, 56, 99, and 105.  Masimo's requests for all documents related to any "ecosystem" on any Apple users and product lines – including products not at issue in this case – are overbroad, unduly burdensome, and not proportional.

### E.      Duplicative Discovery

As explained on our call, Apple qualifies that Masimo's discovery requests should not be "duplicative of discovery subject to the parties' cross-use agreement and the Court's oral order regarding permissible cross use" in three ways.

First, Apple reserves the right to de-dupe documents against those already produced.  Masimo wants to ensure that documents are only deduped if the metadata (including custodian data) are identical, and Apple is investigating the implications of that demand.

Second, to the extent that Apple has already completed a reasonably diligent search for a category of documents for a case subject to cross-use, it is unduly burdensome to require Apple to engage in the same search.  This does not mean Apple refuses to update production categories where it has agreed to do so through its RFP responses.

Third, with respect to Masimo's claims that Apple engaged in so-called "Sherlocking" and "efficient infringement," discovery into those issues is complete by virtue of what was done in the C.D. Cal. litigation.  Anything more would be unnecessarily cumulative.  For the reasons discussed above, however, Apple believes these topics are irrelevant to any viable theory in this case.

## II.      Masimo's Positions Regarding Apple RFPs

### A.      Litigation Cost Discovery

We understand Masimo intends only to produce a spreadsheet of costs it unilaterally deems to be a result of Apple's assertion of the *Walker Process*-challenged patents, without any description of the work performed or any discovery into Masimo's various fee arrangements.  Masimo claims it has established a billing code associated with the defense of those *Walker Process*-challenged patents and related IPR claims, but Masimo's proposal provides Apple's attorneys and experts no basis by which to challenge Masimo's asserted calculation of antitrust damages.  Nor would Masimo's proposal provide any basis to segregate the alleged costs among the *Walker Process*-challenged patents, as would be necessary, for instance, if Masimo's claims are rejected in part.

WilmerHale

Justin J. Gillett
July 12, 2023
Page 4

Despite this, we understand Masimo intends to seek those costs as treble damages, and also contends that those costs resulted in other consequential harms to the company, including impairing its ability to compete.

We do not believe it is appropriate for Masimo to put its litigation costs at issue and simultaneously selectively withhold all ordinary course documents that would permit Apple to test Masimo's claimed costs through fact and expert discovery.  Accordingly, unless Masimo offers additional discovery, Apple intends to move to compel production of documents in response to RFPs 61-62, 64-65, and 77-78.

In addition, Apple maintains that documents responsive to RFP 76 are necessary to test any claim regarding the financial impact of those alleged litigation costs.  Please confirm that Masimo will produce the requested financials.

### B.      Documents Concerning Sound United Acquisition

Masimo indicated that it may be willing to produce documents concerning the Sound United acquisition that relate to the transaction's impact on sales of Masimo Watch Products, market share for Masimo Watch Products, and Masimo's goals and strategies concerning Masimo Watch Products.  Subject to Masimo's confirmation, that would resolve Apple's inquiries regarding RFP 88.

### C.      Documents Concerning Customer/Distributor Relationships

Masimo took the position that documents concerning sales strategies and plans with respect to specific customers and distributors would not fall within the scope of RFP 89, which seeks all documents concerning relationships with those customers or distributors.  Putting that dispute aside, such documents fall within the scope of RFP 80 (all documents concerning sales plans and strategies for any Masimo Watch Product), and Masimo has agreed to produce all documents responsive to RFP 80 that it locates through its reasonably diligent search.

## III.     Issues Concerning Both Parties' Productions

### A.      Sales Data

As to Masimo RFP 72 and Apple RFP 67, the parties have agreed to continue negotiating an appropriate scope for a reciprocal sales data exchange.

WILMERHALE

Justin J. Gillett
July 12, 2023
Page 5

### B.      Expert Disclosures

With respect to Masimo RFP 116, Apple maintains that the appropriate scope of reciprocal expert discovery—in terms of what is disclosed and when—should be governed by Fed. R. Civ. P. 26(b)(4)(C).  We await your response.

### C.      Temporal Limitations

As you previously observed, Apple proposed that document discovery on Masimo's antitrust claims reach back two years before the filing of the complaint (i.e., to December 12, 2020) with the exception of certain specified topics that Apple agreed to search back to January 1, 2020.  Your July 8, 2023, letter proposes that the relevant time period for seven of your RFPs (64-65, 77-79, and 81-82) reach back four years before the filing of the action.  We are confused why you would apply this date range to those requests, and suggest we continue discussing a reciprocal date range for antitrust and false advertising discovery during our scheduled meet-and-confer on July 12, 2023.

### D.      Politan-Related Documents

Masimo's request for discovery into communications between Apple and Politan is an improper use of discovery in this case to serve Masimo's management's interest in an ongoing dispute against Politan.  Further, the meet-and-confer revealed that Masimo has no valid grounds to believe there were any such communications.  Without suggesting that any such documents existed, Apple offered in response to Interrogatory No. 16 a compromise that it would search custodial ESI.  We continue to think that compromise is reasonable.

Masimo, however, has since put the Politan litigation squarely at issue in this case, claiming that the litigation itself, and the costs incurred as a result, were somehow caused by Apple's assertion of the *Walker Process*-challenged patents.  This assertion has forced Apple to serve on Masimo discovery relating to that litigation.  *See* RFPs 127-128, 213-218.  Accordingly, if Masimo agrees to search for and produce documents responsive to those requests, Apple will agree to undertake a reasonably diligent search for any documents or communications responsive to RFP 118.  We can discuss this compromise further during our July 12, 2023 meet-and-confer.

### E.      Reasonably Diligent Email Search

Both parties must undertake a reasonably diligent search for responsive documents.  For non-email, that includes searching central files and databases that are likely to contain responsive materials.  It also involves collecting documents from individual custodians.  With respect to email, however, Apple maintains that a reasonably diligent search is a review of email pulled based on the parties' custodian and search term negotiations.  The parties have agreed to 20 email custodians

WILMERHALE

Justin J. Gillett
July 12, 2023
Page 6

and 20 search strings.  It is unduly burdensome to also require custodians to search through their
own emails for responsive materials.

### F.     Clarification On Parties' Agreements to Produce

We confirm that where Apple set forth a category of documents that it would produce in response
to an RFP, it intends to produce all documents falling within that category that it identifies based
on a reasonably diligent search.  It will not "filter out" any responsive documents within those
categories that Apple deems irrelevant.  To the extent Apple learns that a category of documents
implicates an unduly burdensome scope of irrelevant materials, we will raise that issue with
Masimo.  We likewise understand that where Masimo agrees to produce non-privileged responsive
documents, it intends to produce all documents falling within the full scope of the request that it
locates after a reasonably diligent search, and Masimo too will not "filter out" any materials it
deems irrelevant or otherwise narrow the scope of the production.

### G.     Vagueness Objections

With respect to Masimo RFPs 53 (documents related to interchangeability) and 57 (documents
relating to Apple Watch's position in the marketplace), Apple objected on vagueness grounds and
offered a more defined scope.  With respect to Apple RFP 74, Masimo claims that it will not search
for documents "referring to any factors impacting or potentially impacting actual or forecasted
sales volume, revenue, and/or profits of any Masimo Watch Product," even after we clarified that
Apple is seeking documents that specifically discuss things as potentially impacting the demand
for or price of the Masimo Watch Products.  We suggest that, rather than burden Judge Hall with
these disputes, both parties undertake a good faith search for documents responsive to these issues,
including by running proposed search terms that may return such documents.

Best regards,

*/s/ Mark A. Ford*

# EXHIBIT F

| From: | Jared Bunker |
|---|---|
| To: | Jordan Malz |
| Cc: | Jared Bunker |
| Subject: | [Ext] RE: Apple v. Masimo (C.A. Nos. 1377/1378) - ESI Stipulation |
| Date: | Wednesday, July 26, 2023 11:34:09 AM |

**\*\*EXTERNAL EMAIL\*\* This email originated from outside the company. Do not click on any link unless you recognize the sender and have confidence the content is safe.**

Jordan

Further regarding the email requests, we did some preliminary searching on Term Nos. 3, 6, 9-12, and 18 and have identified other issues.

- Term No. 6: "watch" is returning too many false positives ("watch" as a verb and not a noun)

- Term No. 9: This search is returning nearly 300K hits (and we still need to run on a few more custodians, so the total number is higher) that are nearly all related to irrelevant products; the hits that relate to the watch also include STK and were covered by other searches

- Term No. 10: The following terms are returning too many false positives: google, monitor*, series, share (as a verb and not as a noun), watch (as a verb and not as a noun), smart*

- Term No. 11:

  o The following terms are returning too many false positives: share (as a verb and not as a noun), stock (referring to inventory and not to the equity), change

  o MASI is also returning many false positives because, for example, each press release and many articles mention MASI and have nothing to do with the MASI stock

- Term No. 12: our search tools cannot search for a term with a wildcard at the front and the back of a term or numbers – it keeps timing out and crashing

Please let me know when you can discuss the email search requests.

Sincerely,
Jared

**Jared Bunker**
Partner

949-721-2957 **Direct**

**Knobbe Martens**

**From:** Jordan Malz <JMalz@desmaraisllp.com>
**Sent:** Sunday, July 23, 2023 6:39 PM
**To:** Jared Bunker <Jared.Bunker@knobbe.com>

**Subject:** Re: Apple v. Masimo (C.A. Nos. 1377/1378) - ESI Stipulation

Thanks Jared, I've relayed your comments to the relevant folks on my team and will be looking into this tomorrow.

Jordan

Jordan N. Malz
Desmarais LLP
230 Park Avenue
New York, NY  10169
(212) 351-5497

---

**From:** Jared Bunker <Jared.Bunker@knobbe.com>
**Sent:** Saturday, July 22, 2023 11:08 AM
**To:** Jordan Malz <JMalz@desmaraisllp.com>
**Cc:** Jared Bunker <Jared.Bunker@knobbe.com>
**Subject:** [Ext] RE: Apple v. Masimo (C.A. Nos. 1377/1378) - ESI Stipulation

**\*\*EXTERNAL EMAIL\*\* This email originated from outside the company. Do not click on any link unless you recognize the sender and have confidence the content is safe.**

---

Jordan,

If you think an informal call would be helpful, please let me know your availability on Monday.

To help make the call more productive, here are my thoughts on Apple's revised list:

- We are probably okay with Term Nos. 3, 6, 9-12, and 18 and could start doing preliminary searches on them.
- Term No. 1

  - The time frame seems very unreasonable.
  - Messrs. Al-Ali, Kiani, Diab, Olsen, and Smith are on a lot of patents that have nothing to do with our case, so "al-ali," "alali," "kiani," "diab," "Olsen," "smith" seem unreasonable. Plus, Messrs. Kiani and Al-Ali are custodians, so their names are not limiting for their custodial emails.

- Term No. 2

  - The time frame seems very unreasonable.

- Term No. 4

  - The time frame seems very unreasonable.

- Mr. Kiani is a custodian, so "joe" and "kiani" are not limiting for his custodial emails.

- Term No. 5

  - "freedom" appears in both the primary and secondary terms and would not be limiting.

- Term No. 7

  - Mr. Kiani is a custodian, so "joe" and "kiani" are not limiting for his custodial emails.

- Term No. 8

  - Messrs. Kiani and Al-Ali are custodians, so "al-ali," "alali," and "kiani" are not limiting for their custodial emails.

- Term Nos. 13-17

  - These are non-starters. They don't seem to have any reasonable focus toward our case.

Sincerely,
Jared

**Jared Bunker**
Partner
949-721-2957 **Direct**
**Knobbe Martens**

---

**From:** Jordan Malz <JMalz@desmaraisllp.com>
**Sent:** Friday, July 21, 2023 2:55 PM
**To:** Jared Bunker <Jared.Bunker@knobbe.com>
**Cc:** Jack Phillips <JCP@pmhdelaw.com>; Knobbe.MasimoDE <Knobbe.MasimoDE@knobbe.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Greenfield, Leon <Leon.Greenfield@wilmerhale.com>; Milici, Jennifer <Jennifer.Milici@wilmerhale.com>; Megan C. Haney <mch@pmhdelaw.com>; Vote, Dominic <Dominic.Vote@wilmerhale.com>; Ford, Mark <Mark.Ford@wilmerhale.com>; Apple Masimo Service <AppleMasimoService@desmaraisllp.com>; Moore, David E. <dmoore@potteranderson.com>
**Subject:** RE: Apple v. Masimo (C.A. Nos. 1377/1378) - ESI Stipulation


Jared,

Attached are Apple's revised e-mail requests.  Apple's revised e-mail requests reflect compromises in an effort to reach a consensual resolution regarding these matters.  Apple reserves the right to revert back to its July 13 e-mail requests should the parties not be able to reach a consensual resolution.

On our July 19 meet-and-confer, you stated that you would investigate whether Stephen Jensen (1)

was ever a Senior Vice President or General Counsel for Masimo and (2) ever had a Masimo, Cercacor, or Sound United e-mail address.  You also stated that Mr. Jensen is not currently a member of Cercacor's board and that, to the extent Mr. Jensen's biography on the Knobbe Martens website indicates otherwise, that the website is inaccurate.  Please kindly provide an update and confirmations regarding these matters.

Finally, I would be happy to have informal calls with you at your convenience if there is anything you would like to discuss prior to a follow-up meet-and-confer.  I very much would like to narrow any remaining issues as much as possible, and a few informal back-and-forths might help facilitate that outcome.

Best,
Jordan

Jordan N. Malz
Desmarais LLP
230 Park Avenue
New York, NY  10169
(212) 351-5497

# EXHIBIT G





