# EXHIBIT 1

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 2

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 3

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**[MARSHALL / TEXARKANA] DIVISION**

| | | |
|---|---|---|
| [PLAINTIFF][, et al.,] | § § | |
| v. | § § § | Case No. [2 / 5]:00-CV-000-[JRG / RSP / JBB] |
| [DEFENDANT][, et al.] | § | |

**SAMPLE DOCKET CONTROL ORDER FOR PATENT CASES**
**ASSIGNED TO JUDGE RODNEY GILSTRAP,**
**JUDGE ROY PAYNE AND JUDGE BOONE BAXTER**

In accordance with the scheduling conference held in this case, it is hereby **ORDERED**

that the following schedule of deadlines is in effect until further order of this Court:

| | |
|---|---|
| Date Provided by the Court | *Jury Selection – 9:00 a.m. in [**Marshall / Texarkana**], Texas |
| 7 days before Jury Selection | *Defendant to disclose final invalidity theories, final prior art references/combinations, and final equitable defenses.[1] |
| 10 days before Jury Selection | *Plaintiff to disclose final election of Asserted Claims.[2] |
| 4 Weeks Before Jury Selection | * If a juror questionnaire is to be used, an editable (in Microsoft Word format) questionnaire shall be jointly submitted to the Deputy Clerk in Charge by this date.[3] |
| 5 Weeks Before Jury Selection | *Pretrial Conference – _____ [a.m. / p.m.] in [**Marshall / Texarkana**], **Texas** before [Judge Rodney Gilstrap / Judge Roy Payne / Judge Boone Baxter] |

---

[1] The proposed DCO shall include this specific deadline. The deadline shall read, "7 days before Jury Selection," and shall not include a specific date.

[2] Given the Court's past experiences with litigants dropping claims and defenses during or on the eve of trial, the Court is of the opinion that these additional deadlines are necessary. The proposed DCO shall include this specific deadline. The deadline shall read, "10 days before Jury Selection," and shall not include a specific date.

[3] The Parties are referred to the Court's Standing Order Regarding Use of Juror Questionnaires in Advance of *Voir Dire.*

| 6 Weeks Before Jury Selection | *Notify Court of Agreements Reached During Meet and Confer<br><br>The parties are ordered to meet and confer on any outstanding objections or motions *in limine*.  The parties shall advise the Court of any agreements reached no later than 1:00 p.m. three (3) business days before the pretrial conference. |
|---|---|
| 6 Weeks Before Jury Selection | *File Joint Pretrial Order, Joint Proposed Jury Instructions, Joint Proposed Verdict Form, Responses to Motions *in Limine*, Updated Exhibit Lists, Updated Witness Lists, and Updated Deposition Designations |
| 7 Weeks Before Jury Selection | *File Notice of Request for Daily Transcript or Real Time Reporting.<br><br>If a daily transcript or real time reporting of court proceedings is requested for trial, the party or parties making said request shall file a notice with the Court and e-mail the Court Reporter, Shawn McRoberts, at shawn_mcroberts@txed.uscourts.gov. |
| 8 Weeks Before Jury Selection | File Motions *in Limine*<br><br>The parties shall limit their motions *in limine* to issues that if improperly introduced at trial would be so prejudicial that the Court could not alleviate the prejudice by giving appropriate instructions to the jury. |
| 8 Weeks Before Jury Selection | Serve Objections to Rebuttal Pretrial Disclosures |
| 9 Weeks Before Jury Selection | Serve Objections to Pretrial Disclosures; and Serve Rebuttal Pretrial Disclosures |
| 11 Weeks Before Jury Selection | Serve Pretrial Disclosures (Witness List, Deposition Designations, and Exhibit List) by the Party with the Burden of Proof |
| 12 Weeks Before Jury Selection | *Response to Dispositive Motions (including *Daubert* Motions). Responses to dispositive motions that were filed <u>prior</u> to the dispositive motion deadline, including *Daubert* Motions, shall be due in accordance with Local Rule CV-7(e), not to exceed the deadline as set forth in this Docket Control Order.[4] Motions for Summary Judgment shall comply with Local Rule CV-56. |

---

[4] The parties are directed to Local Rule CV-7(d), which provides in part that "[a] party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion."

| 14 Weeks Before Jury Selection | *File Motions to Strike Expert Testimony (including *Daubert* Motions)<br><br>No motion to strike expert testimony (including a *Daubert* motion) may be filed after this date without leave of the Court. |
|---|---|
| 14 Weeks Before Jury Selection | *File Dispositive Motions<br><br>No dispositive motion may be filed after this date without leave of the Court.<br><br>Motions shall comply with Local Rule CV-56 and Local Rule CV-7. Motions to extend page limits will only be granted in exceptional circumstances. Exceptional circumstances require more than agreement among the parties. |
| 15 Weeks Before Jury Selection | Deadline to Complete Expert Discovery |
| 17 Weeks Before Jury Selection | Serve Disclosures for Rebuttal Expert Witnesses |
| 20 Weeks Before Jury Selection | Deadline to Complete Fact Discovery and File Motions to Compel Discovery |
| 20 Weeks Before Jury Selection | Serve Disclosures for Expert Witnesses by the Party with the Burden of Proof |
| 3 Weeks After Claim Construction Hearing | Comply with P.R. 3-7 (Opinion of Counsel Defenses) |
| Date Provided by the Court | *Claim Construction Hearing – _____ [a.m. / p.m.] in [**Marshall / Texarkana], Texas** before [Judge Rodney Gilstrap / Judge Roy Payne / Judge Boone Baxter] |
| 2 Weeks Before Claim Construction Hearing | *Comply with P.R. 4-5(d) (Joint Claim Construction Chart) |
| 3 Weeks Before Claim Construction Hearing | *Comply with P.R. 4-5(c) (Reply Claim Construction Brief) |
| 4 Weeks Before Claim Construction Hearing | Comply with P.R. 4-5(b) (Responsive Claim Construction Brief) |

If the deadline under Local Rule CV 7(e) exceeds the deadline for Response to Dispositive Motions, the deadline for Response to Dispositive Motions controls.

| 6 Weeks Before Claim Construction Hearing | Comply with P.R. 4-5(a) (Opening Claim Construction Brief) and Submit Technical Tutorials (if any)<br><br>Good cause must be shown to submit technical tutorials after the deadline to comply with P.R. 4-5(a). |
|---|---|
| 6 Weeks Before Claim Construction Hearing | Deadline to Substantially Complete Document Production and Exchange Privilege Logs<br><br>Counsel are expected to make good faith efforts to produce all required documents as soon as they are available and not wait until the substantial completion deadline. |
| 8 Weeks Before Claim Construction Hearing | Comply with P.R. 4-4 (Deadline to Complete Claim Construction Discovery) |
| 9 Weeks Before Claim Construction Hearing | File Response to Amended Pleadings |
| 11 Weeks Before Claim Construction Hearing | *File Amended Pleadings<br><br>It is not necessary to seek leave of Court to amend pleadings prior to this deadline unless the amendment seeks to assert additional patents. |
| 12 Weeks Before Claim Construction Hearing | Comply with P.R. 4-3 (Joint Claim Construction Statement) |
| 15 Weeks Before Claim Construction Hearing | Comply with P.R. 4-2 (Exchange Preliminary Claim Constructions) |
| 18 Weeks Before Claim Construction Hearing | Comply with P.R. 4-1 (Exchange Proposed Claim Terms) |
| 6 Weeks After Scheduling Conference | Comply with Standing Order Regarding Subject-Matter Eligibility Contentions[5] |
| 6 Weeks After Scheduling Conference | Comply with P.R. 3-3 & 3-4 (Invalidity Contentions) |

---

[5] http://www.txed.uscourts.gov/sites/default/files/judgeFiles/EDTX%20Standing%20Order%20Re%20Subject%20Matter%20Eligibility%20Contentions%20.pdf   [https://perma.cc/RQN2-YU5P]

| 3 Weeks After Scheduling Conference | *File Proposed Protective Order and Comply with Paragraphs 1 & 3 of the Discovery Order (Initial and Additional Disclosures)<br><br>The Proposed Protective Order shall be filed as a separate motion with the caption indicating whether or not the proposed order is opposed in any part. |
|---|---|
| 2 Weeks After Scheduling Conference | *File Proposed Docket Control Order and Proposed Discovery Order<br><br>The Proposed Docket Control Order and Proposed Discovery Order shall be filed as separate motions with the caption indicating whether or not the proposed order is opposed in any part. |
| 1 Week After Scheduling Conference | Join Additional Parties |
| 2 Weeks Before Scheduling Conference | Comply with P.R. 3-1 & 3-2 (Infringement Contentions) |

**(\*) indicates a deadline that cannot be changed without an acceptable showing of good cause.  Good cause is not shown merely by indicating that the parties agree that the deadline should be changed.**

## ADDITIONAL REQUIREMENTS

**Mediation:** While certain cases may benefit from mediation, such may not be appropriate for every case. The Court finds that the Parties are best suited to evaluate whether mediation will benefit the case after the issuance of the Court's claim construction order. Accordingly, the Court **ORDERS** the Parties to file a Joint Notice indicating whether the case should be referred for mediation **within fourteen days of the issuance of the Court's claim construction order**. As a part of such Joint Notice, the Parties should indicate whether they have a mutually agreeable mediator for the Court to consider. If the Parties disagree about whether mediation is appropriate, the Parties should set forth a brief statement of their competing positions in the Joint Notice.

**Summary Judgment Motions, Motions to Strike Expert Testimony, and _Daubert_ Motions:** For each motion, the moving party shall provide the Court with two (2) hard copies of the completed briefing (opening motion, response, reply, and if applicable, sur-reply), excluding exhibits, in D-three-ring binders, appropriately tabbed.  All documents shall be single-sided and must include the CM/ECF header.  These copies shall be delivered to the Court within three (3) business days after briefing has completed.  For expert-related motions, complete digital copies of the relevant expert report(s) and accompanying exhibits shall be submitted on a single flash drive to the Court.  Complete digital copies of the expert report(s) shall be delivered to the Court no later than the dispositive motion deadline.

**Indefiniteness:**  In lieu of early motions for summary judgment, the parties are directed to include any arguments related to the issue of indefiniteness in their _Markman_ briefing, subject to the local rules' normal page limits.

**Lead Counsel:**  The Parties are directed to Local Rule CV-11(a)(1), which provides that "[o]n the first appearance through counsel, each party shall designate a lead attorney on the pleadings or otherwise."  Additionally, once designated, a party's lead attorney may only be changed by the filing of a Motion to Change Lead Counsel and thereafter obtaining from the Court an Order granting leave to designate different lead counsel.  The true lead counsel should be designated early and should not expect to parachute in as lead once the case has been largely developed.

**Motions for Continuance:** The following will not warrant a continuance nor justify a failure to comply with the discovery deadline:

(a)     The fact that there are motions for summary judgment or motions to dismiss pending;

(b)     The fact that one or more of the attorneys is set for trial in another court on the same day, unless the other setting was made prior to the date of this order or was made as a special provision for the parties in the other case;

(c)     The failure to complete discovery prior to trial, unless the parties can demonstrate that it was impossible to complete discovery despite their good faith effort to do so.

**Amendments to the Docket Control Order ("DCO"):**  Any motion to alter any date on the DCO shall take the form of a motion to amend the DCO.  The motion to amend the DCO shall include a proposed order that lists all of the remaining dates in one column (as above) and the proposed changes to each date in an additional adjacent column (if there is no change for a date the proposed date column should remain blank or indicate that it is unchanged).  In other words, the DCO in the proposed order should be complete such that one can clearly see all the remaining deadlines and the changes, if any, to those deadlines, rather than needing to also refer to an earlier version of the DCO.

**Proposed DCO:**  The Parties' Proposed DCO should also follow the format described above under "Amendments to the Docket Control Order ('DCO')."

**Joint Pretrial Order:** In the contentions of the Parties included in the Joint Pretrial Order, the Plaintiff shall specify all allegedly infringed claims that will be asserted at trial. The Plaintiff shall also specify the nature of each theory of infringement, including under which subsections of 35 U.S.C. § 271 it alleges infringement, and whether the Plaintiff alleges divided infringement or infringement under the doctrine of equivalents. Each Defendant shall indicate the nature of each theory of invalidity, including invalidity for anticipation, obviousness, subject-matter eligibility, written description, enablement, or any other basis for invalidity. The Defendant shall also specify each prior art reference or combination of references upon which the Defendant shall rely at trial, with respect to each theory of invalidity. The contentions of the Parties may not be amended, supplemented, or dropped without leave of the Court based upon a showing of good cause. The Parties in a case which has been consolidated for pre-trial purposes and which is moving towards a separate trial on the merits (subsequent to pre-trial) shall file, as an exhibit to the parties' Joint Pretrial Order, a list identifying all docket entries from the lead case that relate to the applicable member case.

- 6 -

**Trial:**  All parties must appear in person at trial. All non-individual (including but not limited to corporate) parties must appear at trial through the presence in person of a designated representative. Once they have appeared, any representative of a non-individual party shall not be replaced or substituted without express leave of Court.

# EXHIBIT 5

# EXHIBIT L

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

APPLE INC.,

        *Plaintiff,*

    v.

MASIMO CORPORATION and
SOUND UNITED, LLC,

        *Defendants.*

Civil Action No. 1:22-cv-01377-MN

**JURY TRIAL DEMANDED**

## DECLARATION OF PETER RUSSELL-CLARKE IN SUPPORT OF APPLE INC.'S
## MOTION FOR AN EXPEDITED TRIAL

I, Peter Russell-Clarke, declare as follows:

1.    I am over 18 years of age and competent to make this declaration. I am employed as an Industrial Design Director at Apple Inc. ("Apple"). I have been employed by Apple since 2006.

2.    I provide this declaration in support of Apple's Motion For An Expedited Trial filed in the above-captioned case. The statements in this declaration are based upon my personal knowledge. If called to testify as a witness in this matter, I could and would testify competently and truthfully to each of the statements in this declaration under oath.

3.    Apple released Apple Watch in 2015 as one of the earliest full-featured smart watches. Apple has continued to invest in Apple Watch, releasing a new generation or "Series" annually.

1

4.     Apple is a design-driven company, and Apple Watch is no exception. Apple
Watch's aesthetic design—including the design of its back crystal[1]—was and remains a key part
of its development and identity.

5.     Apple invested significant amounts of time, money, and effort in Apple Watch's
industrial design. Apple designers worked extensively to create a watch that was not only a
piece of technology, but also a product that consumers would want to buy, wear, and visually
appreciate as a beautiful and thoughtfully designed watch.

6.     Apple Watch's industrial design was created by a team of industrial designers,
including myself, who had worked together for several years, including on multiple other Apple
products such as iPhones and Mac computers. Through that work, the team had developed not
only a shared enthusiasm for creating beautiful products, but also its own Apple design language.
The team utilized those shared experiences and—inspired by the art of traditional
watchmaking—sat down around the "kitchen table" of the studio to start designing Apple Watch.
That lead to Apple's innovation in the industrial design of the back of Apple Watch—in
particular, its back crystal.

7.     In traditional luxury watchmaking, watches will often include a fully or partially
transparent back so that the consumer can see portions of the high-quality internal mechanisms,
such as gears and the materials from which they are crafted. That is, the back is part of the
watch's overall visual appeal. As an homage to such classic luxury watches, Apple's design
team took special care to make the back of Apple Watch—which houses its sensors (electrodes,
LEDs, and photodiodes) and other components—aesthetically delightful. The team put great
effort into creating a beautiful "identity" for Apple Watch's sensors. The electrodes' layout was

---

[1] Throughout this declaration, I refer to everything visible through Apple Watch's rear transparent dome, and the
dome itself, as the "back crystal."

2

carefully considered, and beautifully frames the central portion of the back design. The team also put extensive effort to make the "identity" of the remaining sensors—although the sensors themselves are somewhat camouflaged—just as striking as the rest of the watch. For example, the team included small, carefully designed windows in the dome that allow light to pass through to the sensing mechanisms in a visually appealing way. As a whole, the back design provides an aesthetically pleasing hint as to the mechanisms lying within Apple Watch, to indicate its quality, precision, and beauty.

8.     After many iterations and models with tiny, incremental differences, the design team finalized the back crystal design of Apple Watch, as shown in the Series 4 Apple Watch example below:



3



9.      Although Apple implemented some changes as Apple Watch progressed through the various Series, the design process and care for aesthetics remained the same, as did the domed back crystal and inclusion of a thoughtful sensor design.

10.      The specific design of Apple's Watch's back crystal was not necessitated by function. If a product works perfectly, but is aesthetically unappealing, it is unlikely to be a successful product. So in accordance with Apple's design-forward values, Apple Watch was created with aesthetics at the forefront.

11.      For example, although the watch needed to be large enough to fit certain components and the function-driven engineering team prioritized contact between the watch's back surface and the wearer's wrist, the design team prioritized its domed back crystal proposal to create a watch with a thin body and a beautiful rear window into the rest of the aesthetically

4

pleasing back design. So the design team worked with the engineering team to make the design-driven domed back crystal feasible.

12.     Similarly, the design under the transparent dome was not dictated by exact requirements for the dimensions or spacing. Instead, the design and engineering teams worked together to meet the design team's aesthetic expectations and plans.

13.     There are countless ways to design the back of a smart watch. Apple created its own, beautiful way.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January **12**, 2023 in **CUPERTINO, CALIFORNIA, USA**.

Peter Russell-Clarke