# EXHIBITS 1-3 REDACTED IN ENTIRETY

# Exhibit 4

## IN THE U.S. DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLE INC., <br><br> *Plaintiff*, <br><br> v. <br><br> MASIMO CORPORATION and <br> SOUND UNITED, LLC, <br><br> *Defendants*. | C.A. No. 22-1377-MN-JLH <br><br> **JURY TRIAL DEMANDED** |
| MASIMO CORPORATION, <br><br> *Counter-Claimant*, <br><br> v. <br><br> APPLE INC. <br><br> *Counter-Defendant*. | |
| APPLE INC., <br><br> *Plaintiff*, <br><br> v. <br><br> MASIMO CORPORATION and <br> SOUND UNITED, LLC, <br><br> *Defendants*. | C.A. No. 22-1378-MN-JLH <br><br> **JURY TRIAL DEMANDED** |
| MASIMO CORPORATION and <br> CERCACOR LABORATORIES, INC., <br><br> *Counter-Claimants*, <br><br> v. <br><br> APPLE INC. <br><br> *Counter-Defendant*. | |

**DEFENDANTS MASIMO CORPORATION AND SOUND UNITED, LLC'S SECOND
SET OF REQUESTS FOR PRODUCTION TO APPLE INC. (50-165)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants Masimo Corporation and Sound United, LLC, and Counterclaimant Cercacor Laboratories, Inc. ("Cercacor") (collectively "Masimo") hereby request Plaintiff Apple Inc. ("Plaintiff") respond to the following requests for production of documents and things, separately and fully, in writing, and produce the documents and things identified below for inspection and copying at the offices of Knobbe, Martens, Olson & Bear, LLP, located at 2040 Main Street, Fourteenth Floor, Irvine, California 92614 within thirty (30) days of service thereof.  These requests are deemed continuing in nature, requiring amended or supplemental answers as necessary.

## **DEFINITIONS**

Unless the context indicates otherwise, the following words and phrases are defined and used herein as follows:

1.      "Apple Watch" means the product or products You make, have made, offer to sell, offered to sell, sell, or sold, under the designation or tradename "Apple Watch,"  including but not limited to Apple Watch (first generation), Apple Watch Series 0, Apple Watch Series 1, Apple Watch Series 2, Apple Watch Series 3, Apple Watch Series 4, Apple Watch Series 5, Apple Watch Series 6, Apple Watch Series 7, Apple Watch Series 8, Apple Watch Ultra, and Apple Watch SE.

2.      "Apple Asserted Patents" shall mean U.S. Patent Nos. 10,076,257 (the "'257 Patent"), 10,627,783 (the "'783 Patent"), 10,942,491 (the "'491 Patent"), 10,987,054 (the "'054 Patent"), 11,106,352 (the "'352 Patent"), 11,474,483 (the "'483 Patent"), D883,279 (the "'D279 Patent"), D947,842 (the "'D842 Patent"), D962,936 (the "'D936 Patent"), D735,131 (the "'D131 Patent"), any additional patents that You may assert in *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1377 (D. Del.) or *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1378 (D. Del.) against Masimo.

3.      "Apple Fraudulently Obtained Patents" shall mean U.S. Patent Nos. D883,279 (the "'D279 Patent"), D947,842 (the "'D842 Patent"), D962,936 (the "'D936 Patent"), 10,627,783 (the "'783 Patent"), 10,942,491 (the "'491 Patent"), 11,474,483 (the "'483 Patent"), and any additional patents that You may assert in *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1377 (D. Del.) or *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1378 (D. Del.) against Masimo and that Masimo may allege were fraudulently procured.

4.      "Masimo Asserted Patents" shall mean U.S. Patent Nos. 10,687,743 (the "'743 Patent"), 10,722,159 (the "'159 Patent"), 8,190,223 (the "'223 Patent"), 10,736,507 (the "'507 Patent"), and 10,984,911 (the "'911 Patent").

5.      "Accused Features" means features, technologies, or components of the Apple Watch and features, technologies, or components that interact with the Apple Watch that are accused of infringing the Masimo Asserted Patents.

6.      The term "concerning" means evidencing, comprising, constituting, reflecting, respecting, relating to, stating, describing, recording, noting, embodying, containing, mentioning, studying, analyzing, discussing or evaluating.

7.      The terms "relating to," "related to" or "relate to" mean concerning, referring to, describing, evidencing, comprising, constituting, supporting, or tending to negate.

8.      The term "document" shall be construed to include all writings and graphics of any sort whatsoever, together with any data stored in electronic or any other form, including, but not limited to, books, records, microfilm, tape or video recordings, emails, voice mails, handwritten notes, phone messages, pictures, and all copies of such documents except those that are identical in every respect to the original document.

9.      The term "communication" shall mean the transmittal of information regardless of the manner in which the communication(s) took place, including but not limited to, face-to-face conversations, correspondence, electronic or computer mail, telephone calls, facsimile communications, or telegrams.

10.     The term "thing" shall mean all tangible objects of any type, composition, construction, or nature.

11.     "Apple," "You" and "your" means Apple Inc. and any present or former officer, director, employee, agent, attorney, or other representative acting for or on behalf of Apple, Inc.

12.     "Masimo" means Masimo Corporation and its divisions, departments, parents, subsidiaries, affiliates or predecessors.

13.     "Sound United" means Sound United, LLC and its divisions, departments, parents, subsidiaries, affiliates or predecessors.

14.     Apple's "Developer Agreement" means the Apple Developer Program License Agreement to distribute apps to iOS users in the App Store.

15.     The term "including" shall be construed broadly, as "including but not limited to" or "including without limitation."

16.     The term "prior art" encompasses, by way of example and without limitation, the subject matter described in each and every subdivision of 35 U.S.C. §§ 102 and 103.

17.     The term "person" means any natural person or any legal entity, including without limitation any business or governmental entity or association.

18.     The term "prosecute" means to prosecute the indicated patent or patent application in the United States Patent and Trademark Office or any foreign patent office.

19.     "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope, and the use of the singular form of any word includes the plural and vice versa; "any" and "all" mean one or more.

20.     The singular form of any noun or pronoun used herein includes within its meaning the plural form thereof and vice versa; the neuter, masculine or feminine form of any pronoun used herein includes within its meaning the neuter, masculine and feminine forms; and the use herein of any tense of any verb includes within its meaning all other tenses of the verb. In every such instance, the specific request shall be construed in the broadest sense so as to call for the most complete and inclusive answer.

21.     "All" shall be construed as all and each, and "each" shall be construed as all and each.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 50:**

All documents, communications, and things comparing the Apple Watch to other watches, including but not limited to, the Masimo W1 or Masimo Freedom.

**REQUEST FOR PRODUCTION NO. 51:**

All documents, communications, and things comparing the marketing, sale, distribution, consumers, prices, demand curves, or marketing approaches of Apple Watch to the marketing, sale, distribution, consumers, prices, demand curves, or marketing approaches of other watches, including but not limited to, the Masimo W1 or Masimo Freedom.

**REQUEST FOR PRODUCTION NO. 52:**

All documents, communications, and things referring or relating to non-Apple watches

that can measure oxygen saturation, take an ECG, or detect arrhythmias, or to any other potential alternative to the Apple Watch.

**REQUEST FOR PRODUCTION NO. 53:**

All documents, communications, and things referring or relating to the interchangeability or cross-elasticity of demand between Apple Watches and other products.

**REQUEST FOR PRODUCTION NO. 54:**

All documents, communications, and things referring or relating to any definition, description, or analysis of the product market(s), product submarket(s), or geographic market(s) in which You compete for the sale of Apple Watches, including marketing studies, analyses, or market reports (internal to Apple or from a third party) that refer to Apple Watch.

**REQUEST FOR PRODUCTION NO. 55:**

All documents, communications, and things referring or relating to competition between Apple Watch and other watches, including but not limited to, the Masimo W1 or Masimo Freedom.

**REQUEST FOR PRODUCTION NO. 56:**

All documents, communications, and things referring or relating to competitive conditions for any market in which You contend the Apple Watch competes, including (a) market shares of competing products; (b) trends in pricing; (c) the maturity or lack of maturity of the industries for such products; (d) supply and/or demand; (e) price elasticity; (f) cross-elasticity; (g) the presence or absence of product substitutes; (h) product fungibility or interchangeability; and (i) industry concentration or consolidation.

**REQUEST FOR PRODUCTION NO. 57:**

All documents, communications, and things referring or relating to the buying patterns or

behavior of consumers of Apple Watch inside the U.S. as compared to the buying patterns or behavior of consumers of Apple Watch outside the U.S.

**REQUEST FOR PRODUCTION NO. 58:**

All documents, communications, and things comparing versions of Apple Watch sold inside the U.S. to versions of Apple Watch sold outside the U.S.

**REQUEST FOR PRODUCTION NO. 59:**

All documents, communications, and things referring or relating to differences in the regulatory requirements that apply to the Apple Watch in the U.S. as compared to regulatory requirements that apply to the Apple Watch outside the U.S.

**REQUEST FOR PRODUCTION NO. 60:**

Documents sufficient to show the differences between the versions of Apple Watch sold inside the U.S. and the versions of Apple Watch sold outside the U.S.

**REQUEST FOR PRODUCTION NO. 61:**

Documents sufficient to show the differences between the Apple App Store inside the U.S. and the Apple App Store outside the U.S.

**REQUEST FOR PRODUCTION NO. 62:**

All documents, communications, and things referring or relating to any definition, description, or analysis of the market(s) for app stores or app distribution, including marketing studies, analyses, or market reports (internal to Apple or from a third party) that refer to app stores or app distribution.

**REQUEST FOR PRODUCTION NO. 63:**

All documents, communications, and things referring or relating to Apple's control of iOS app distribution.

**REQUEST FOR PRODUCTION NO. 64:**

All documents, communications, and things referring or relating to the ability of Apple users to switch to products or services from other companies, including but not limited to the ease or difficulty with which consumers can switch between Android and Apple devices.

**REQUEST FOR PRODUCTION NO. 65:**

All documents, communications, and things comparing the marketing, sale, or distribution of iOS apps to the marketing, sale, or distribution of apps used on other operating systems.

**REQUEST FOR PRODUCTION NO. 66:**

All documents, communications, and things referring or relating to the market shares and/or projected market shares of the Apple Watch from 2018 to present.

**REQUEST FOR PRODUCTION NO. 67:**

All documents, communications, and things referring or relating to Apple as a market leader and/or as having a dominant or strong position in connection with sale of Apple Watch, including documents referring or relating to the Apple Watch as a leading, prominent, or dominant watch.

**REQUEST FOR PRODUCTION NO. 68:**

All documents, communications, and things referring or relating to the costs or barriers of introducing new, updated, or modified Apple Watches or products that compete with Apple Watches, including, for example, regulatory hurdles, contracts, intellectual property, costs, specialized technical and medical knowhow, developing distribution channels, customer loyalty, brand recognition, and interface with smartphones and smartphone apps.

**REQUEST FOR PRODUCTION NO. 69:**

All documents, communications, and things referring or relating to Apple monopolizing or attempting to monopolize any market in which Apple Watch competes, including documents that support or refute your contention that You have not monopolized or attempted to monopolize any market in which Apple Watch competes.

**REQUEST FOR PRODUCTION NO. 70:**

All documents, communications, and things referring or relating to any business justification or pro-competitive benefit Apple asserts in defending against Masimo's antitrust claims.

**REQUEST FOR PRODUCTION NO. 71:**

All documents, communications, and things referring or relating to the impact Masimo's products may have on the price, quality, availability, or market-wide output of products in any market in which Apple Watch competes.

**REQUEST FOR PRODUCTION NO. 72:**

For the period from January 1, 2018 to present, documents sufficient to show for each of your Apple Watches on a transactional basis (or the most granular level at which such information is stored):

a. The net price charged;

b. Gross revenue and net revenue, by customer and product, listing the amount of all deductions required to reconcile gross and net revenues;

c. Total quantity of units sold and the total quantity sold, net of any returns by customer;

d. Total quantity of units produced;

e. Marginal cost of production;

f. Cost of goods sold on a per product basis, including but not limited to: (i) direct labor and

material costs, (ii) indirect labor and material costs, (iii) manufacturing overhead costs,

(iv) standard costs and any associated variances, (v) actual total costs and variances from

standard costs, (vi) gross profit, gross margins, or standard margins on a per product

basis, and (vii) all costs other than manufacturing costs, on a per product basis, including

but not limited to: (A) commissions and other selling expenses, (B) general and

administrative expenses, (C) engineering, research, and development expenses, and (D)

net income or net profit before taxes on a per product basis;

g. Marketing and sales expenses;

h. Advertising and promotional expenses;

i. Commission and selling expenses;

j. General and administrative expenses;

k. All costs other than standard costs;

l. Actual total cost;

m. Average variable cost;

n. Total gross profits or losses;

o. Average sales price;

p. Sales volume;

q. Total net profit;

r. Profit margin; and

s. Earnings before interest, taxes, depreciation, and amortization.

## **REQUEST FOR PRODUCTION NO. 73:**

All documents, communications, and things referring or relating to Apple's basis for the

following statements in its opening brief in support of its motion for an expedited trial in *Apple*

*Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1377, D.I. 45 (D. Del. Feb. 3, 2023).

   a.   "[I]n the latter half of 2023, [Masimo] intends to sell W1 and other smart watches that Masimo has suggested will use W1's infringing design through Sound United's distribution channels—including through retailers that sell Apple Watch, like Best Buy and Amazon. [Citations.] Masimo's competing sales in those retailers will irreparably harm Apple . . . ." *Id.* at 7-8.

   b.   "In the latter half of 2023, . . . Apple Watch and W1 will be in direct competition at the same retailers . . . ." *Id.* at 8.

   c.   "'[T]he ready availability of W1 . . . creates a disincentive for consumers to buy the authentic Apple Watch,' leading to irreparable losses by Apple." *Id.* at 9.

**REQUEST FOR PRODUCTION NO. 74:**

All documents, communications, and things referring to Apple's strategies, plans and/or policies relating to intellectual property, including maintaining exclusivity rather than licensing the Apple Asserted Patents, Apple's assertion of patents or other intellectual property against others, and Apple's response to assertions of patents or other intellectual property.

**REQUEST FOR PRODUCTION NO. 75:**

All documents, communications, and things referring to, relating to, or comprising any cease-and-desist letters sent by You or your legal counsel to third parties asserting or referring to any of the Apple Asserted Patents.

**REQUEST FOR PRODUCTION NO. 76:**

All documents, communications, and things referring or relating to Apple's process for approving apps for Apple's App Store.

**REQUEST FOR PRODUCTION NO. 77:**

All documents, communications, and things referring or relating to Articles 9.3 or 14.4 of Apple's Developer Agreement as referenced in the Counterclaims, including internal and external communications regarding those provisions.

**REQUEST FOR PRODUCTION NO. 78:**

All documents, communications, and things referring or relating to instances where Apple invoked, enforced, or attempted to enforce Article 9.3 or 14.4 of Apple's Developer Agreement as referenced in the Counterclaims, in connection with any app or proposed app.

**REQUEST FOR PRODUCTION NO. 79:**

All documents, communications, and things referring or relating to new or updated Masimo or Cercacor iOS apps (including for Masimo SafetyNet, Masimo W1, or Cercacor Ember), including Apple's review, evaluation, and decision to approve or reject such apps or updates.

**REQUEST FOR PRODUCTION NO. 80:**

All documents, communications, and things referring or relating to Masimo's FDA strategies and/or interactions with the FDA.

**REQUEST FOR PRODUCTION NO. 81:**

All documents, communications, and things referring or relating to Apple's App Store Review Guideline 1.4.1, as referenced in the Counterclaims.

**REQUEST FOR PRODUCTION NO. 82:**

All documents, communications, and things referring or relating to Apple using information submitted during the iOS app approval process for competitive purposes, including for development of Apple apps or products.

**REQUEST FOR PRODUCTION NO. 83:**

All documents or communications referencing, relating to, or discussing the practice of efficient infringement or the practice of infringing or misappropriating intellectual property, even after being informed of such improper conduct, because it is more advantageous to do so than pay to lawfully use or develop the intellectual property.

**REQUEST FOR PRODUCTION NO. 84:**

All communications with third parties relating to allegations that Apple unlawfully acquired or used intellectual property.

**REQUEST FOR PRODUCTION NO. 85:**

All documents, communications, and things referring or relating to any decision or consideration by Apple whether to consider, respect or disregard intellectual property rights.

**REQUEST FOR PRODUCTION NO. 86:**

All documents, communications, and things referring or relating to the quote "good artists copy, great artists steal," Apple's use of pirate imagery and flags, the quote "it's better to be a pirate than join the navy," or Apple's practice of taking something from someone else and making it your own, as explained by Bud Tribble (*see* https://www.cnet.com/tech/tech-industry/what-steve-jobs-really-meant-when-he-said-good-artists-copy-great-artists-steal/).

**REQUEST FOR PRODUCTION NO. 87:**

All documents, communications, and things referring or relating to the practice of "Sherlocking" or meeting with another company and then Apple deciding to implement an idea or technology from the other company without permission.

**REQUEST FOR PRODUCTION NO. 88:**

Communications between Tim Cook and Bruce Sewell related to *U.S. v. Apple Inc., et*

*al.*, No. 1:12-cv-02826-DLC (S.D.N.Y), as referenced in the video available at https://www.youtube.com/watch?v=-wuf3KI76Ds&t=2s, including communications related to the following:

    a.  Sewell explaining that case was an example of Apple making a conscious and deliberate choice to use the legal system to gain a "competitive advantage" over others by "sailing as close to the wind" as possible because capturing ebook sales was "so important" to Apple;

    b.  Sewell stating Apple "ended up being sued by the government and ended up having to pay a large fine;"

    c.  Sewell stating that Apple's CEO, Tim Cook, did not discipline him for his role in allowing Apple to engage in anticompetitive conduct;

    d.  Cook applauding Sewell;

    e.  Cook stating to Sewell, "that's the right choice;" and

    f.  Cook telling Sewell "don't let that scare you, I don't want you to stop pushing the envelope."

**REQUEST FOR PRODUCTION NO. 89:**

    All documents, communications, and things referring or relating to AliveCor, Omni MedSci and/or Valencell's allegations that Apple misappropriated their intellectual property and/or improperly acquired their technologies, including all communications and interactions with these companies relating to such allegations.

**REQUEST FOR PRODUCTION NO. 90:**

    All documents, communications, and things referring or relating to Apple's litigations with AliveCor, Omni MedSci, and Valencell, including discovery responses, deposition and trial

testimony of Apple witnesses, unsealed trial exhibits, sealed Apple trial exhibits, and documents produced by Apple.

**REQUEST FOR PRODUCTION NO. 91:**

All documents, communications, and things referring or relating to any possible, alleged, or actual violations of U.S. federal, state, or foreign antitrust laws, competition laws, anti-bribery laws, or any similar laws, rules, or regulations by Apple or any current or former officer, director, employee, or agent of Apple, including any documents produced or provided to any governmental entity in connection with an investigation of a violation or alleged violation of the same laws, rules, or regulations.

**REQUEST FOR PRODUCTION NO. 92:**

All documents, communications, and things referring or relating to Apple's decision to assert the Apple Fraudulently Obtained Patents, including Apple's decision to assert the Apple Fraudulently Obtained Patents against Masimo.

**REQUEST FOR PRODUCTION NO. 93:**

All documents, communications, and things referring or relating to the performance of Blood Oxygen, ECG, or Irregular Rhythm Notification features of Apple Watch Series 4 and later.

**REQUEST FOR PRODUCTION NO. 94:**

All documents, communications, and things referring or relating to the performance of the Blood Oxygen feature of the Apple Watch at different altitudes.

**REQUEST FOR PRODUCTION NO. 95:**

All marketing studies, marketing surveys, consumer studies, and consumer surveys referring or relating to the Blood Oxygen, ECG, or Irregular Rhythm Notification features of

Apple Watch Series 4 and later.

**REQUEST FOR PRODUCTION NO. 96:**

All consumer studies and surveys related to the consumer demand for, consumer use, and consumer response to the Apple Watch.

**REQUEST FOR PRODUCTION NO. 97:**

All buyer survey presentations or other summaries of buyer surveys related to Apple Watch Series 4 and later.

**REQUEST FOR PRODUCTION NO. 98:**

All Pepper Data Reports related to Apple Watch Series 4 and later.

**REQUEST FOR PRODUCTION NO. 99:**

All documents, communications, and things identifying or discussing the features of Apple Watch that drive customer demand for Apple Watch Series 4 and later.

**REQUEST FOR PRODUCTION NO. 100:**

Documents sufficient to identify all advertising and marketing campaigns promoting the Blood Oxygen, ECG, or Irregular Rhythm Notification features of Apple Watch.

**REQUEST FOR PRODUCTION NO. 101:**

All documents, communications, and things, analyzing or referring to the impact, analytics, results, or effectiveness of Apple's advertising or marketing campaigns promoting the Blood Oxygen, ECG, or Irregular Rhythm Notification features of Apple Watch.

**REQUEST FOR PRODUCTION NO. 102:**

All documents, communications, and things referring or relating to customer complaints, criticisms, or customer feedback related to the Apple Watch, including without limitation with respect to the quality, performance, accuracy, cost, safety, utility, Blood Oxygen feature, ECG

feature, or Irregular Rhythm Notification feature.

**REQUEST FOR PRODUCTION NO. 103:**

       All documents, communications, and things evaluating, assessing, or reporting consumer sentiment for or against the Blood Oxygen, ECG, or Irregular Rhythm Notification features of Apple Watch.

**REQUEST FOR PRODUCTION NO. 104:**

       All documents, communications, and things referring or relating to any of the following, including Apple's planning, drafting, and approval thereof:

   a.   the September 2020 Apple Event, including portions of the event related to health features such as Blood Oxygen, ECG, or Irregular Rhythm Notification;

   b.   the September 2021 Apple Event, including portions of the event related to health features such as Blood Oxygen, ECG, or Irregular Rhythm Notification;

   c.   the September 2022 Apple Event, including portions of the event related to health features such as Blood Oxygen, ECG, or Irregular Rhythm Notification;

   d.   the statement on Apple's website that "[t]he remarkable sensor and app in Apple Watch Series 6 allow you to take on-demand readings of your blood oxygen as well as background readings, day and night;"

   e.   the Apple advertisement entitled "It Already Does That;"

   f.   the statement in Apple's advertising that "[t]he future of health is on your wrist;"

   g.   the Hello Sunshine advertisement that Apple released in July 2021 showing a woman measuring her blood oxygen saturation while hiking "to the top of a giant mountain;"

   h.   the Apple healthcare website;

   i.   the statement on the Apple healthcare website that the irregular rhythm notification

occasionally checks for signs of irregular rhythms that may be suggestive of atrial

fibrillation (AFib);

j.   the statement by Apple that, "With the ECG app, patients who experience symptoms such

as rapid or skipped heartbeat, or receive the irregular rhythm notification, can capture an

ECG and record their symptoms;"

k.   the statement by Jeff Williams when unveiling the Apple Watch Series 4 with ECG that it

"is the intelligent guardian for your health;" and

l.   the statement by Tim Cook that the Apple Watch "monitors your health and gets help

when you need it."

**REQUEST FOR PRODUCTION NO. 105:**

All documents, communications, and things referring or relating to Apple's strategic

plans for 2018 to present regarding health features of Apple Watch, including any documents

presented to Apple's board of directors and any documents comprising such strategic plans.

**REQUEST FOR PRODUCTION NO. 106:**

All documents, communications, and things referring or relating to the quality or

performance of Masimo's products or technologies, including any documents referring or

relating to Masimo's reputation.

**REQUEST FOR PRODUCTION NO. 107:**

All documents, communications, and things referring or relating to the pricing of each

version of Apple Watch Series 4 and later, including for example, price lists, documents showing

any benchmarks considered in pricing, consumer studies, documents concerning any discounts or

rebates such as volume-based discounts or rebates, and documents concerning the differences in

price between each version of Apple Watch.

**REQUEST FOR PRODUCTION NO. 108:**

All documents, communications, and things referring or relating to prices, product quality or performance, or innovation in any market in which Apple Watch competes.

**REQUEST FOR PRODUCTION NO. 109:**

All documents, communications, and things, including meeting minutes and agendas, referring or relating to meetings of your board of directors and each committee or subcommittee thereof related to pricing, sales, supply, demand, costs, licensing, marketing, revenues, or profits of Apple Watch.

**REQUEST FOR PRODUCTION NO. 110:**

All documents, communications, and things referring or relating to your projected and actual revenues, profits, and losses for the sale of Apple Watches from 2018 to 2024.

**REQUEST FOR PRODUCTION NO. 111:**

All documents, communications, and things referring or relating to any actual, planned, or proposed increases in the price of Apple Watches, including reports and analyses of customer reactions, lost sales, or the effect of the price increase on sales, profits, or margins.

**REQUEST FOR PRODUCTION NO. 112:**

All documents, communications, and things referring to both Apple Watch and Apple's "ecosystem" of interconnected products.

**REQUEST FOR PRODUCTION NO. 113:**

All documents, communications, and things referring or relating to Apple's strategy to build and maintain users in Apple's ecosystem.

**REQUEST FOR PRODUCTION NO. 114:**

All documents, communications, and things referring or relating to Apple's strategy

-19-

regarding functionality, compatibility, or interoperability of products within Apple's ecosystem,
including documents referring or relating to limiting functionality, compatibility, or
interoperability to Apple-approved apps and products.

**REQUEST FOR PRODUCTION NO. 115:**

All documents, communications, and things referring or relating to any alleged legitimate
business interests or procompetitive benefits that You contend justify Apple's conduct.

**REQUEST FOR PRODUCTION NO. 116:**

All documents, communications, and things You shared with any expert in connection
with the above-captioned cases.

**REQUEST FOR PRODUCTION NO. 117:**

All documents, communications, and things referring or relating to the declaration of
James Malackowski dated January 30, 2023, in support of Apple's motion for an expedited trial
in *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1377, D.I. 46, Ex. O (D.
Del. Feb. 3, 2023), including all documents, facts and data shared with or considered by James
Malackowski.

**REQUEST FOR PRODUCTION NO. 118:**

All documents, communications, and things referring or relating to any communications,
including phone calls, emails, letters, text messages, chats, electronic messages, and in-person
conversations between any of Your employees, directors, attorneys, or other representatives, on
the one hand, and any employee, director, attorney, owner, partner, or other representative of
Politan Capital Management, on the other hand, relating to Masimo, Sound United, or Cercacor.

**REQUEST FOR PRODUCTION NO. 119:**

All documents, communications, and things referring to, relating to, or identifying any

acceptable available noninfringing substitutes for the Accused Features of the Apple Watch, including but not limited to any design-arounds available to Apple and any available third-party products.

**REQUEST FOR PRODUCTION NO. 120:**

All documents, communications, and things referring or relating to Apple's investigation, consideration, or evaluation of any third-party component, product, or technology that Apple contends is an acceptable available noninfringing substitute for the Accused Features on the Apple Watch.

**REQUEST FOR PRODUCTION NO. 121:**

All communications with any third-party offering a component, product, or technology that Apple contends is an acceptable available noninfringing substitute for the Accused Features on the Apple Watch.

**REQUEST FOR PRODUCTION NO. 122:**

All documents, communications, and things referring or relating to Apple's requirements for working with third-party component suppliers for the Apple Watch.

**REQUEST FOR PRODUCTION NO. 123:**

All Engineering Requirement Specification Agreements with third-party component suppliers for Apple Watch.

**REQUEST FOR PRODUCTION NO. 124:**

All documents, communications, and things referring or relating to Apple's system, rules, or methods for selecting third-party component suppliers for Apple Watch, including but not limited to any Supplier Plan of Record documents.

**REQUEST FOR PRODUCTION NO. 125:**

All documents, communications, and things referring or relating to Apple's policy or preference for having at least two sources for third-party component suppliers for the Apple Watch.

**REQUEST FOR PRODUCTION NO. 126:**

All documents, communications, and things referring any situation when Apple made an exception to Apple's policy or preference for having at least two sources for third-party component suppliers for the Apple Watch.

**REQUEST FOR PRODUCTION NO. 127:**

All documents, communications, and things referring or relating to Apple's policies, rules, or requirements for third-party component suppliers for Apple Watch.

**REQUEST FOR PRODUCTION NO. 128:**

All documents, communications, and things referring or relating to Apple making exceptions to its Apple's policies, rules, or requirements for third-party component suppliers for Apple Watch.

**REQUEST FOR PRODUCTION NO. 129:**

All documents, communications, and things referring or relating to Apple's supply chain management policies or requirements for third-party component suppliers for Apple Watch.

**REQUEST FOR PRODUCTION NO. 130:**

All documents, communications, and things referring or relating to market growth opportunities for wearables with noninvasive blood oxygen measurements.

**REQUEST FOR PRODUCTION NO. 131:**

All documents, communications, and things referring or relating to growing Apple's market share for wearables by incorporating non-continuous or continuous noninvasive blood

oxygen measurements.

**REQUEST FOR PRODUCTION NO. 132:**

All documents, communications, and things referring or relating to Apple's analysis of subscription health or wellness services or applications related to noninvasive blood oxygen measurements or other noninvasive health monitoring features.

**REQUEST FOR PRODUCTION NO. 133:**

Documents sufficient to show (on a monthly basis) all revenue sources, costs, and profits from 2018 to present for all services that are associated, are convoyed with, or are functionally related to the Apple Watch, including but not limited to Apple Store applications that are associated with the Apple Watch.

**REQUEST FOR PRODUCTION NO. 134:**

Documents sufficient to show (on a monthly basis) Apple's revenue, costs, and profits from 2018 to present for any services related to noninvasive blood oxygen measurements or other noninvasive health monitoring features.

**REQUEST FOR PRODUCTION NO. 135:**

Apple's Line of Business Reports for the Apple Watch from 2018 to present.

**REQUEST FOR PRODUCTION NO. 136:**

Apple's Line of Business Reports for the Apple business segment related to services, applications, or Apple's App Store from 2018 to present.

**REQUEST FOR PRODUCTION NO. 137:**

All documents, communications, and things referring or relating to how sales of the Apple Watch impact or influence Apple's revenue, cost, or profits from the App Store.

**REQUEST FOR PRODUCTION NO. 138:**

All documents, communications, and things referring or relating to how sales of the Apple Watch impact or influence Apple iPhone sales.

**REQUEST FOR PRODUCTION NO. 139:**

All documents, communications, and things referring to, relating to, or showing the marking of any products with the patent numbers of any of the Apple Asserted Patents, including marking found on products, packaging, or a posting on the internet.

**REQUEST FOR PRODUCTION NO. 140:**

All documents, communications, and things referring or relating to the value of the technology or features in each claim in the Apple Asserted Patents that you contend Masimo infringed.

**REQUEST FOR PRODUCTION NO. 141:**

All documents, communications, and things referring or relating to the value of the technology or features in each claim in the Masimo Asserted Patents.

**REQUEST FOR PRODUCTION NO. 142:**

All documents, communications, and things referring or relating to any assignment, license agreement, covenant not to sue, or other transfer or retention of rights, either to or from Apple, concerning patient monitoring, pulse rate, pulse oximetry, or non-invasive physiological measurements, including, but not limited to, drafts thereof or any inquiries or negotiations concerning the same.

**REQUEST FOR PRODUCTION NO. 143:**

All documents, communications, and things referring or relating to any assignment, license agreement, covenant not to sue, or other transfer or retention of rights for the Apple Asserted Patents.

**REQUEST FOR PRODUCTION NO. 144:**

All documents, communications, and things referring or relating to any assignment, license agreement, covenant not to sue, or other transfer or retention of rights that may be relevant to the determination of reasonable royalties, if infringement of one or more of the Masimo Asserted Patents or Apple Asserted Patents is found.

**REQUEST FOR PRODUCTION NO. 145:**

All documents, communications, and things referring or relating to the determination of reasonable royalties, if infringement of one or more of the Masimo Asserted Patents or Apple Asserted Patents is found, including but not limited to all documents relating to each of the factors identified in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

**REQUEST FOR PRODUCTION NO. 146:**

All documents, communications, and things referring or relating to any alleged harm or injury You contend You have suffered as a result of Masimo's alleged infringement of the Apple Asserted Patents.

**REQUEST FOR PRODUCTION NO. 147:**

All documents, communications, and things referring or relating to whether Masimo is or is not entitled to lost profits and the amount of those lost profits, if infringement of one or more of the Masimo Asserted Patents is found.

**REQUEST FOR PRODUCTION NO. 148:**

All documents, communications, and things referring or relating to whether Apple is or is not entitled to lost profits and the amount of those lost profits, if infringement of one or more of the Apple Asserted Patents is found.

**REQUEST FOR PRODUCTION NO. 149:**

All documents, communications, and things that support or rebut any assertion that Masimo or Apple is entitled to enhanced damages under 35 U.S.C. § 284.

**REQUEST FOR PRODUCTION NO. 150:**

All documents, communications, and things that support or rebut any assertion that Masimo or Apple is entitled to attorneys' fees under 35 U.S.C. § 285.

**REQUEST FOR PRODUCTION NO. 151:**

All documents, communications, and things referring or relating to any licensing practices or policies of the industry and market that may be relevant to the Masimo Asserted Patents or Apple Asserted Patents.

**REQUEST FOR PRODUCTION NO. 152:**

All year-end financial statements and/or annual reports from Apple from 2018 to the present.

**REQUEST FOR PRODUCTION NO. 153:**

Documents sufficient to show Apple's bill of materials for each component in each version of the Apple Watch from 2018 to present.

**REQUEST FOR PRODUCTION NO. 154:**

All documents, communications, and things referring or relating to the advantages or disadvantages of the technology claimed or disclosed in the Masimo Asserted Patents or Apple Asserted Patents over competing technologies.

**REQUEST FOR PRODUCTION NO. 155:**

All documents, communications, and things referring or relating to forecasts or projections regarding sales, revenue, expenses, and/or profit associated with changes between the

Apple Watch Series 6 and the Apple Watch Series 7.

**REQUEST FOR PRODUCTION NO. 156:**

All documents, communications, and things referring or relating to forecasts or projections regarding sales, revenue, expenses, and/or profit associated with changes between the Apple Watch Series 6 and the Apple Watch Series SE.

**REQUEST FOR PRODUCTION NO. 157:**

All documents, communications, and things referring or relating to forecasts or projections regarding sales, revenue, expenses, and/or profit associated with changes between the Apple Watch Series 7 and the Apple Watch Series SE.

**REQUEST FOR PRODUCTION NO. 158:**

All documents, communications, and things referring or relating to forecasts or projections regarding sales, revenue, expenses, and/or profit associated with changes between the Apple Watch Series 7 and the Apple Watch Series 8.

**REQUEST FOR PRODUCTION NO. 159:**

All documents, communications, and things referring or relating to forecasts or projections regarding sales, revenue, expenses, and/or profit associated with changes between the Apple Watch Series 7 and the Apple Watch Series Ultra.

**REQUEST FOR PRODUCTION NO. 160:**

All documents, communications, and things referring or relating to forecasts or projections regarding sales, revenue, expenses, and/or profit associated with changes between the Apple Watch Series 8 and the Apple Watch Series Ultra.

**REQUEST FOR PRODUCTION NO. 161:**

All documents, communications, and things referring or relating to forecasts or

projections regarding sales, revenue, expenses, and/or profit associated with changes between the Apple Watch Series 8 and the Apple Watch Series SE (2nd generation).

**REQUEST FOR PRODUCTION NO. 162:**

All documents, communications, and things referring or relating to forecasts or projections regarding sales, revenue, expenses, and/or profit associated with changes between the Apple Watch Series Ultra and the Apple Watch Series SE (2nd generation).

**REQUEST FOR PRODUCTION NO. 163:**

All documents, communications, and things referring or relating to, or otherwise evidencing, valuations of any physiological monitoring technology or intellectual property relating to physiological monitoring technology.

**REQUEST FOR PRODUCTION NO. 164:**

All documents, communications, and things referring or relating to forecasts, projections, or strategic evaluations regarding Apple's consideration of a purchase, acquisition, or license of technology from any company concerning physiological monitoring.

**REQUEST FOR PRODUCTION NO. 165:**

All documents, communications, and things referring or relating to forecasts or projections regarding sales, revenue, expenses, and/or profit associated with including pulse oximetry in any Apple Watch.

Respectfully submitted,

May 23, 2023

PHILLIPS MCLAUGHLIN & HALL, P.A.

*Of Counsel:*

By: */s/ John C. Phillips, Jr.*
     John C. Phillips, Jr. (No. 110)
     Megan C. Haney (No. 5016)
     1200 North Broom Street
     Wilmington, DE 19806
     (302) 655-4200 Telephone
     (302) 655-4210 Fax
     jcp@pmhdelaw.com
     mch@pmhdelaw.com

Joseph R. Re
Stephen C. Jensen
Stephen W. Larson
Perry D. Oldham
Benjamin A. Katzenellenbogen
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA  92614
(949) 760-0404 Telephone
(949) 760-9502 Facsimile
joe.re@knobbe.com

*Counsel for Defendants*
*Masimo Corporation and Sound United, LLC*

Brian Horne
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450 Telephone
(310) 551-3458 Facsimile
brian.horne@knobbe.com

Adam Powell
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
(858) 707-4000 Telephone
(858) 707-4001 Facsimile
adam.powell@knobbe.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2023, a true and correct copy of the foregoing document was served on the following counsel of record at the addresses and in the manner indicated:

*VIA ELECTRONIC MAIL:*

| | |
|---|---|
| David E. Moore<br>Bindu A. Palapura<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>Wilmington, DE 19801<br>dmoore@potteranderson.com<br>bpalapura@potteranderson.com | John M. Desmarais<br>Kerri-Ann Limbeek<br>Cosmin Maier<br>Jordan N. Malz<br>Benjamin N. Luehrs<br>Joze Welsh<br>Jamie L. Kringstein<br>DESMARAIS LLP<br>230 Park Avenue<br>New York, NY 10169<br>jdesmarais@desmaraisllp.com<br>klimbeek@desmaraisllp.com<br>cmaier@desmaraisllp.com<br>jmalz@desmaraisllp.com<br>bluehrs@desmaraisllp.com<br>jwelsh@desmaraisllp.com<br>jkringstein@desmaraisllp.com |
| Peter C. Magic<br>DESMARAIS LLP<br>101 California Street<br>San Francisco, CA 94111<br>pmagic@desmaraisllp.com | Jennifer Milici<br>Dominic Vote<br>Leon B. Greenfield<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>1875 Pennsylvania Avenue, NW<br>Washington DC 20006<br>jennifer.milici@wilmerhale.com<br>dominic.vote@wilmerhale.com<br>leon.greenfield@wilmerhale.com |
| Mark A. Ford<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>60 State Street<br>Boston, MA 02109<br>mark.ford@wilmerhale.com | |

May 23, 2023

/s/ Megan C. Haney
Megan C. Haney

-1-

# Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLE INC., | |
| *Plaintiff,* | C.A. No. 22-1377-MN-JLH |
| v. | |
| MASIMO CORPORATION and SOUND UNITED, LLC, | **JURY TRIAL DEMANDED** |
| *Defendants.* | |
| MASIMO CORPORATION, | |
| *Counter-Claimant,* | |
| v. | |
| APPLE INC. | |
| *Counter-Defendant.* | |
| APPLE INC., | |
| *Plaintiff,* | C.A. No. 22-1378-MN-JLH |
| v. | |
| MASIMO CORPORATION and SOUND UNITED, LLC, | **JURY TRIAL DEMANDED** |
| *Defendants.* | |
| MASIMO CORPORATION and CERCACOR LABORATORIES, INC., | |
| *Counter-Claimants,* | |
| v. | |
| APPLE INC. | |
| *Counter-Defendant.* | |

**MASIMO CORPORATION, SOUND UNITED, LLC, AND CERCACOR LABS., INC.'S EIGHTH SET OF REQUESTS FOR PRODUCTION TO APPLE INC. (267-321)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants Masimo

Corporation and Sound United, LLC ("Sound United"), and Counterclaimants Masimo

Corporation and Cercacor Laboratories, Inc. ("Cercacor") (collectively, "Masimo") hereby request that Plaintiff Apple Inc. ("Plaintiff" or "Apple") respond to the following requests for production of documents and things, separately and fully, in writing, and produce the documents and things identified below for inspection and copying at the offices of Knobbe, Martens, Olson & Bear, LLP, located at 2040 Main Street, Fourteenth Floor, Irvine, California 92614.  These requests are deemed continuing in nature, requiring amended or supplemental answers as necessary.

### DEFINITIONS

Unless the context indicates otherwise, the following words and phrases are defined and used herein as follows:

1.      "Apple Asserted Patents" shall mean U.S. Patent Nos. 10,076,257 (the "'257 Patent"), 10,627,783 (the "'783 Patent"), 10,942,491 (the "'491 Patent"), 10,987,054 (the "'054 Patent"), 11,106,352 (the "'352 Patent"), 11,474,483 (the "'483 Patent"), D883,279 (the "D279 Patent"), D947,842 (the "'D842 Patent"), D962,936 (the "'D936 Patent"), D735,131 (the "'D131 Patent"), and any additional patents that You may assert in *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1377 (D. Del.) or *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 22-1378 (D. Del.) against Masimo.

2.      "Apple IPR Proceedings" means any *inter partes* review proceedings concerning the Apple Asserted Patents.

3.      "Masimo Asserted Patents" shall mean U.S. Patent Nos. 10,687,743 (the "'743 Patent"), 10,722,159 (the "'159 Patent"), 8,190,223 (the "'223 Patent"), 10,736,507 (the "'507 Patent"), and 10,984,911 (the "'911 Patent").

4.      "Related Publications" shall mean any patent in the same patent family as any of the Masimo Asserted Patents, including any patent in the priority chain of the Masimo Asserted

-2-

Patents, all patent applications related to the Masimo Asserted Patents, and any patents in the same family as any of the Masimo Asserted Patents, including any patent application in the priority chain of the Masimo Asserted Patents.

5.      The term "concerning" means evidencing, comprising, constituting, reflecting, respecting, relating to, stating, describing, recording, noting, embodying, containing, mentioning, studying, analyzing, discussing, or evaluating.

6.      The terms "relating to," "related to" or "relate to" mean concerning, referring to, describing, evidencing, comprising, constituting, supporting, or tending to negate.

7.      The term "document" shall be construed to include all writings and graphics of any sort whatsoever, together with any data stored in electronic or any other form, including, but not limited to, books, records, microfilm, tape or video recordings, emails, voicemails, handwritten notes, phone messages, pictures, and all copies of such documents except those that are identical in every respect to the original document.

8.      "Apple," "You," and "your" mean Apple Inc. and any present or former officer, director, employee, agent, attorney, or other representative acting for or on behalf of Apple Inc.

9.      "Masimo" means Masimo Corporation and its divisions, departments, parents, subsidiaries, affiliates or predecessors.

10.      "Sound United" means Sound United, LLC and its divisions, departments, parents, subsidiaries, affiliates or predecessors.

11.      "Cercacor" means Cercacor Laboratories, Inc. and its divisions, departments, parents, subsidiaries, affiliates or predecessors.

12.      "Accused Apple Watches" shall mean the Apple Watch Series 6, 7, 8, Ultra, and any other Apple Watch capable of measuring blood oxygen.

13.     "Relevant Technologies" means oxygen saturation, ECG, and heart sensing technologies.

14.     The "Apple E-Book Price-Fixing Case" means *U.S. v. Apple Inc., et al.*, No. 1:12-cv-02826-DLC (S.D.N.Y).

15.     "Litigation" means the above captioned Case No. 1377, Case No. 1378, or both.

16.     "The term "including" shall be construed broadly, as "including but not limited to" or "including without limitation."

17.     "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope, and the use of the singular form of any word includes the plural and vice versa; "any" and "all" mean one or more.

18.     The singular form of any noun or pronoun used herein includes within its meaning the plural form thereof and vice versa; the neuter, masculine or feminine form of any pronoun used herein includes within its meaning the neuter, masculine and feminine forms; and the use herein of any tense of any verb includes within its meaning all other tenses of the verb. In every such instance, the specific request shall be construed in the broadest sense so as to call for the most complete and inclusive answer.

19.     "All" shall be construed as all and each, and "each" shall be construed as all and each.

## REQUESTS FOR PRODUCTION

## REQUEST FOR PRODUCTION NO. 267:

Documents discussing the market(s) in which Apple Watch Series 4 or later watches are sold and/or compete.

**REQUEST FOR PRODUCTION NO. 268:**

Documents discussing the market(s) that include the sale or distribution of Apps for Apple iPhone or Apple Watch.

**REQUEST FOR PRODUCTION NO. 269:**

Internal Apple discussions and analyses that compare, contrast, or otherwise reference (a) the costs to develop or license technology and (b) the costs to defend against intellectual property allegations, including the costs to settle such allegations or pay judgments associated with such allegations.

**REQUEST FOR PRODUCTION NO. 270:**

Internal Apple discussions and analyses concerning any reason, rationale, or explanation as to why Apple rejected apps relating to Relevant Technologies, including unofficial and internal reasons, rationales, or explanations.

**REQUEST FOR PRODUCTION NO. 271:**

Internal Apple discussions and analyses concerning any reason, rationale, or explanation as to why Apple rejected Masimo or Cercacor apps, including unofficial and internal reasons, rationales, or explanations.

**REQUEST FOR PRODUCTION NO. 272:**

Documents regarding how Apple used, discussed, analyzed, or otherwise considered each piece of information that Masimo identified in response to Apple's Interrogatory Nos. 6 and 41, including all supplemental responses.

**REQUEST FOR PRODUCTION NO. 273:**

Documents sufficient to show how Apple used, discussed, analyzed, or otherwise considered each piece of information that Masimo identified in response to Apple's Interrogatory Nos. 6 and 41, including all supplemental responses.

**REQUEST FOR PRODUCTION NO. 274:**

Communications between any of Your employees, directors, attorneys, or Representatives, on the one hand, and any employee, director, attorney, owner, Representative, or partner of a company that manufacturers watches (including health watches, smart watches, or standard watches), on the other hand, relating to Masimo Corporation, Sound United, LLC, or Cercacor Laboratories, Inc.

**REQUEST FOR PRODUCTION NO. 275:**

Documents regarding Apple's knowledge of the Masimo Asserted Patents or Related Publications.

**REQUEST FOR PRODUCTION NO. 276:**

Documents sufficient to show whether or not Apple was aware of any of the Masimo Asserted Patents or Related Publications prior to the filing of this Action.

**REQUEST FOR PRODUCTION NO. 277:**

Documents sufficient to show when and how Apple first became aware of any of the Masimo Asserted Patents or Related Publications

**REQUEST FOR PRODUCTION NO. 278:**

Documents sufficient to show the identity of the Person(s) at Apple who first became aware of any of the Masimo Asserted Patents or Related Publications.

**REQUEST FOR PRODUCTION NO. 279:**

Documents sufficient to show any Actions taken by Apple in response to gaining awareness of any of the Masimo Asserted Patents or Related Publications, including any analysis or attempts to modify any Apple Watch, or design around the Masimo Asserted Patents or Related Publication to avoid infringement.

**REQUEST FOR PRODUCTION NO. 280:**

Documents that support, refute, or concern Your allegation that Defendants willfully infringed the Apple Asserted Patents.

**REQUEST FOR PRODUCTION NO. 281:**

Documents regarding all future versions of the Apple Watch that Apple may release during the pendency of this litigation.

**REQUEST FOR PRODUCTION NO. 282:**

Documents regarding any proposed or potential changes to health sensors and the back of the Apple Watch, including the reason or rationale for such change(s) and the date when Apple expects to release such change(s).

**REQUEST FOR PRODUCTION NO. 283:**

Documents sufficient to show the Apple patent applications on which Jeff Myers has been given power of attorney and/or that list a customer number that includes Jeff Myers.

**REQUEST FOR PRODUCTION NO. 284:**

Documents sufficient to show, on a monthly basis, the attorney's fees and costs that You incurred in connection with this lawsuit and the Apple IPR Proceedings.

**REQUEST FOR PRODUCTION NO. 285:**

Documents sufficient to show, on a monthly basis, the attorney's fees and costs that You have incurred in connection with the portions of this lawsuit and the Apple IPR Proceedings that relate to the patents Masimo accused of fraud.

**REQUEST FOR PRODUCTION NO. 286:**

For the period from January 1, 2018 to present, documents sufficient to show for each of your Apple Watches on a transactional basis (or the most granular level at which such information is stored) advertising and promotional expenses.

**REQUEST FOR PRODUCTION NO. 287:**

Documents sufficient to show Apple's expenses related to the creation and dissemination of the September 12, 2020 Apple Event referenced in ¶¶ 166-168 of Masimo's First Amended Counterclaims.

**REQUEST FOR PRODUCTION NO. 288:**

Documents referring or relating to Apple's return on investment for the September 12, 2020 Apple Event referenced in ¶¶ 166-168 of Masimo's First Amended Counterclaims.

**REQUEST FOR PRODUCTION NO. 289:**

Documents sufficient to show Apple's expenses related to the creation and dissemination of the "It Already Does That" advertisement referenced in ¶ 169 of Masimo's First Amended Counterclaims.

**REQUEST FOR PRODUCTION NO. 290:**

Documents referring or relating to Apple's return on investment for the "It Already Does That" advertisement referenced in ¶ 169 of Masimo's First Amended Counterclaims.

**REQUEST FOR PRODUCTION NO. 291:**

Documents sufficient to show Apple's expenses related to the creation and dissemination of the "Hello Sunshine" advertisement referenced in ¶ 170 of Masimo's First Amended Counterclaims.

**REQUEST FOR PRODUCTION NO. 292:**

Documents referring or relating to Apple's return on investment for the "Hello Sunshine" advertisement referenced in ¶ 170 of Masimo's First Amended Counterclaims.

**REQUEST FOR PRODUCTION NO. 293:**

Documents sufficient to show Apple's expenses related to the creation and dissemination of Apple's website https://www.apple.com/apple-watch-series-6.

**REQUEST FOR PRODUCTION NO. 294:**

Documents referring or relating to Apple's return on investment for the website https://www.apple.com/apple-watch-series-6.

**REQUEST FOR PRODUCTION NO. 295:**

Documents sufficient to show Apple's expenses related to the creation and dissemination of Apple's website https://www.apple.com/apple-watch-series-7.

**REQUEST FOR PRODUCTION NO. 296:**

Documents referring or relating to Apple's return on investment for the website https://www.apple.com/apple-watch-series-7.

**REQUEST FOR PRODUCTION NO. 297:**

Documents sufficient to show Apple's expenses related to the creation and dissemination of Apple's website https://www.apple.com/apple-watch-series-8.

**REQUEST FOR PRODUCTION NO. 298:**

Documents referring or relating to Apple's return on investment for the website https://www.apple.com/apple-watch-series-8.

**REQUEST FOR PRODUCTION NO. 299:**

Documents sufficient to show Apple's expenses related to the creation and dissemination of Apple's website https://apps.apple.com/us/app/blood-oxygen/id1505627452.

**REQUEST FOR PRODUCTION NO. 300:**

Documents referring or relating to Apple's return on investment for the website https://apps.apple.com/us/app/blood-oxygen/id1505627452.

**REQUEST FOR PRODUCTION NO. 301:**

Documents sufficient to show Apple's expenses related to the creation and dissemination of the September 2021 Apple Event referenced in ¶ 170 of Masimo's First Amended Counterclaims.

**REQUEST FOR PRODUCTION NO. 302:**

Documents referring or relating to Apple's return on investment for the September 2021 Apple Event referenced in ¶ 170 of Masimo's First Amended Counterclaims.

**REQUEST FOR PRODUCTION NO. 303:**

Documents sufficient to show Apple's expenses related to the creation and dissemination of the September 2022 Apple Event referenced in ¶ 171 of Masimo's First Amended Counterclaims.

**REQUEST FOR PRODUCTION NO. 304:**

Documents referring or relating to Apple's return on investment for the September 2022 Apple Event referenced in ¶ 171 of Masimo's First Amended Counterclaims.

**REQUEST FOR PRODUCTION NO. 305:**

Documents sufficient to show Apple's expenses related to the creation and dissemination of Dr. Desai's promotion of medical uses of pulse oximetry in the Apple Watch referenced in ¶ 172 of Masimo's First Amended Counterclaims.

**REQUEST FOR PRODUCTION NO. 306:**

Documents referring or relating to Apple's return on investment for Dr. Desai's promotion of medical uses of pulse oximetry in the Apple Watch referenced in ¶ 172 of Masimo's First Amended Counterclaims.

**REQUEST FOR PRODUCTION NO. 307:**

Documents sufficient to show Apple's expenses related to the creation and dissemination of the website https://www.apple.com/newsroom/2022/06/watchos-9-delivers-new-ways-to-stay-connected-active-and-healthy/.

**REQUEST FOR PRODUCTION NO. 308:**

Documents referring or relating to Apple's return on investment for the website https://www.apple.com/newsroom/2022/06/watchos-9-delivers-new-ways-to-stay-connected-active-and-healthy/.

**REQUEST FOR PRODUCTION NO. 309:**

Surveys asking respondents to rank the importance of features in Apple Watch.

**REQUEST FOR PRODUCTION NO. 310:**

Surveys asking respondents what brand they owned before purchasing an Apple Watch.

**REQUEST FOR PRODUCTION NO. 311:**

Surveys asking respondents why they switched to an Apple Watch.

**REQUEST FOR PRODUCTION NO. 312:**

Surveys asking respondents what brand they switched to after owning Apple Watch.

**REQUEST FOR PRODUCTION NO. 313:**

Surveys asking respondents why they switched from Apple Watch to a different brand.

**REQUEST FOR PRODUCTION NO. 314:**

Apple documents identifying current or potential competitors to Apple Watch.

**REQUEST FOR PRODUCTION NO. 315:**

Apple documents discussing features available on third-party watch products.

**REQUEST FOR PRODUCTION NO. 316:**

Apple documents discussing competition with Masimo.

**REQUEST FOR PRODUCTION NO. 317:**

Apple documents discussing sales strategy or selling points for Apple Watch.

**REQUEST FOR PRODUCTION NO. 318:**

Apple documents comparing Apple Watch to the Masimo W1.

**REQUEST FOR PRODUCTION NO. 319:**

Comments from Apple customers or potential customers referring to any of the Apple statements Masimo identified in response to Apple's Interrogatory No. 11.

**REQUEST FOR PRODUCTION NO. 320:**

Comments from doctors or other medical professionals referring to any of the Apple statements Masimo identified in response to Apple's Interrogatory No. 11.

**REQUEST FOR PRODUCTION NO. 321:**

For each Apple statement Masimo identified in response to Apple's Interrogatory No. 11, documents showing each time the statement was made, including the date(s) of the statement and

the manner in which the statement was communicated or published (including the identification of any online or print publication).

Respectfully submitted,

August 22, 2023

PHILLIPS MCLAUGHLIN & HALL, P.A.

By: *John C. Phillips, Jr.*
    John C. Phillips, Jr. (No. 110)
    Megan C. Haney (No. 5016)
    1200 North Broom Street
    Wilmington, DE 19806
    (302) 655-4200 Telephone
    (302) 655-4210 Fax
    jcp@pmhdelaw.com
    mch@pmhdelaw.com

*Of Counsel:*

Joseph R. Re
Stephen C. Jensen
Stephen W. Larson
Benjamin A. Katzenellenbogen
Jared C. Bunker
Kendall M. Loebbaka
Douglas B. Wentzel
Knobbe, Martens, Olson & Bear, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404 Telephone
(949) 760-9502 Facsimile
joe.re@knobbe.com
steve.jensen@knobbe.com
stephen.larson@knobbe.com
ben.katzenellenbogen@knobbe.com
jared.bunker@knobbe.com
kendall.loebbaka@knobbe.com
douglas.wentzel@knobbe.com

*Counsel for Defendants Masimo Corporation and Sound United, LLC and Counterclaimants Masimo Corporation and Cercacor Laboratories, Inc.*

Brian Horne
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450 Telephone
(310) 551-3458 Facsimile
brian.horne@knobbe.com

Adam Powell
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
(858) 707-4000 Telephone
(858) 707-4001 Facsimile
adam.powell@knobbe.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2023, a true and correct copy of the foregoing document

was served on the following counsel of record at the addresses and in the manner indicated:

*VIA ELECTRONIC MAIL:*

| | |
|---|---|
| David E. Moore<br>Bindu A. Palapura<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>Wilmington, DE 19801<br>dmoore@potteranderson.com<br>bpalapura@potteranderson.com | John M. Desmarais<br>Kerri-Ann Limbeek<br>Cosmin Maier<br>Jordan N. Malz<br>Benjamin N. Luehrs<br>Joze Welsh<br>Jamie L. Kringstein<br>DESMARAIS LLP<br>230 Park Avenue<br>New York, NY 10169<br>jdesmarais@desmaraisllp.com<br>klimbeek@desmaraisllp.com<br>cmaier@desmaraisllp.com<br>jmalz@desmaraisllp.com<br>bluehrs@desmaraisllp.com<br>jwelsh@desmaraisllp.com<br>jkringstein@desmaraisllp.com |
| Peter C. Magic<br>DESMARAIS LLP<br>101 California Street<br>San Francisco, CA 94111<br>pmagic@desmaraisllp.com | Jennifer Milici<br>Dominic Vote<br>Leon B. Greenfield<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>1875 Pennsylvania Avenue, NW<br>Washington DC 20006<br>jennifer.milici@wilmerhale.com<br>dominic.vote@wilmerhale.com<br>leon.greenfield@wilmerhale.com |
| Mark A. Ford<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>60 State Street<br>Boston, MA 02109<br>mark.ford@wilmerhale.com | |

August 22, 2023

/s/ John C. Phillips, Jr.
John C. Phillips, Jr.

-1-