# EXHIBIT 1

Trials@uspto.gov                                          Paper 9
571-272-7822                              Date: September 27, 2023

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————

MASIMO CORPORATION,
Petitioner,

v.

APPLE INC.,
Patent Owner.

————————

IPR2023-00774
Patent D883,279 S

————————

Before JOSIAH C. COCKS, SCOTT A. DANIELS, and
ROBERT L. KINDER *Administrative Patent Judges.*

COCKS, *Administrative Patent Judge.*

DECISION
Denying Institution of *Inter Partes* Review
*35 U.S.C. § 314*

IPR2023-00774
Patent D883,279 S

## I.  INTRODUCTION

Petitioner, Masimo Corporation ("Petitioner"), filed a Petition (Paper 1, "Pet.") requesting *inter partes* review of U.S. Patent No. D883,279 S ("the '279 patent," Ex. 1001).  Patent Owner, Apple Inc. ("Patent Owner") filed a Preliminary Response (Paper 8, "Prelim. Resp.")  We have authority under 35 U.S.C. § 314, which provides that *inter partes* review may not be instituted unless the information presented in the Petition shows that "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."  35 U.S.C. § 314(a); *see also* 37 C.F.R § 42.4(a) ("The Board institutes the trial on behalf of the Director.").

Having considered the arguments and evidence presented in the Petition, for the reasons discussed below, we do not institute an *inter partes* review.

### A.   Real Parties-In-Interest

Petitioner identifies itself, Masimo Corporation, as the only real party-in-interest.  Pet. 4.  Patent Owner identifies itself, Apple Inc., as the only real party-in-interest.  Paper 3, 1.

### B.   Related Matters

The parties identify *Apple Inc. v. Masimo Corporation and Sound United, LLC*, No. 1:22-cv-01377-MN (D. Del.)  Pet. 4; Paper 3, 1.

IPR2023-00774
Patent D883,279 S

### C.  The '279 Patent and Claim

In an *inter partes* review requested in a petition filed on or after
November 13, 2018, we apply the same claim construction standard used in
district courts, namely that articulated in *Phillips v. AWH Corp.*, 415 F.3d
1303 (Fed. Cir. 2005) (en banc). *See* 37 C.F.R. § 42.100(b) (2019).  With
regard to design patents, it is well-settled that a design is represented better
by an illustration than a description.  *Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665, 679 (Fed. Cir. 2008) (en banc) (citing *Dobson v. Dornan*, 118
U.S. 10, 14 (1886)).  Although preferably a design patent claim is not
construed by providing a detailed verbal description, it may be "helpful to
point out . . . various features of the claimed design as they relate to the . . .
prior art." *Id.* at 679–80; *cf. High Point Design LLC v. Buyers Direct, Inc.*,
730 F.3d 1301, 1314–15 (Fed. Cir. 2013) (remanding to the district court, in
part, for a "verbal description of the claimed design to evoke a visual image
consonant with that design").

The '279 patent is titled "Electronic Device."  Ex. 1001, code (54).
The claim recites "[t]he ornamental design for an electronic device, as
shown and described."  *Id.* at code (57).  The '279 patent includes nine
drawings.  Those drawings depict various bottom, top, front, rear, left side,
and right side views of an electronic device.  *Id.*  Additionally, the
'279 patent states "[t]he broken lines in the figures show portions of the
electronic device and environment that form no part of the claimed design."
*Id.*

3

IPR2023-00774
Patent D883,279 S

Figures 2, 4, 5, and 6 of the '279 patent are reproduced below:



The drawings above show "a bottom rear perspective view" (Figure 2) of an electronic device, "a rear view" (Figure 4), "a left side view" (Figure 5), and "a right side view" (Figure 6). *Id.* at code (57). *Id.* at code 57. We

4

IPR2023-00774
Patent D883,279 S

are mindful that, given the presence of multiple broken lines representing

non-claimed aspects of the design, it is challenging to discern what does

form part of the claimed design from the reproduced drawings of the '279

patent.  We evaluate the claim further below in the context of the parties'

respective positions on claim construction.

### 1.  Petitioner's Proposed Claim Construction

Petitioner proposes the following by way of claim construction of the

'279 patent:



FIG. 2                              FIG. 5

Pet. 12.

The figures above depict Figures 2 and 5 of the '279 patent with "arc-

shaped portions" (gray) of the electronic device surrounding a circular array

of rectangles (blue) that is positioned around concentric circles (orange) all

under a convex protrusion including convex surface (red).  *Id.* at 11–12.

Petitioner provides an additional segmented and annotated version of

Figure 2 showing what Petitioner additionally highlights as a claimed aspect

5

IPR2023-00774
Patent D883,279 S

the "convex protrusion." *Id.* at 12–13.  That additional segmented Figure 2
is reproduced below:



**FIG. 2**

Pet. 13.

According to Petitioner, the portion of Figure 2 reproduced above
shows that "[t]he claimed protrusion also includes a vertical edge (pink) and
chamfered edge (green) between the convex surface and the back of the
device." *Id.* at 12.

Moreover, as a part of its position on claim construction, Petitioner
contends that the '279 patent "includes numerous design elements that are
functional and should thus be 'factored out' of the Challenged Claim's
scope."  Pet. 16 (citing *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288,
1293-94 (Fed. Cir. 2010)).  Petitioner proceeds to assess the functionality of
what it characterizes as: (1) "[t]he design of the claimed convex protrusion,

IPR2023-00774
Patent D883,279 S

which includes the convex surface, chamfered edge, and vertical edge," (*id.* at 17–23); (2) the "arrangement" of the "arc-shaped portions" (*id.* at 23–29); (3) the "arrangement of the claimed "rectangles,' (*id.* at 29–32); (4) the "concentric circles," (*id.* at 32–34); "[t]he overall circular shape of the claimed sensor design" (*id.* at 34–35). In our view, Petitioner regards essentially the entirety of the claimed design of the '279 as being "dictated by function" such that there is seemingly no portion of the '279 patent that should be afforded the ornamentation protection offered by a design patent. Pet. 17–35. In attempting to make its case in that regard, Petitioner likens the '279 patent design to a commercial product, e.g., the "Apple Watch Series 4" said to be covered by the '279 patent, and proceeds to discuss proposed functional aspects of that product. *Id.*

Petitioner also, at times, makes reference to two utility patents, Patent No. 10,627,157 ("the '157 patent") (Ex. 1024) and U.S. Patent 10,627,783 ("the '783 patent") (Ex. 1025) said to be associated with the design of the "Apple Watch Series 4," and discusses proposed functional aspects disclosed in those patents. *See, e.g.*, *id.* at 24–32.

### 2. *Patent Owner's Proposed Claim Construction*

For its part, Patent Owner offers the following annotated (colorized) figures showing what we understand to be Patent Owner's claim construction:

7

IPR2023-00774
Patent D883,279 S



FIG. 4                                    FIG. 2

**EX2001, ¶20 ((EX1001, Figs. 2 and 4 (annotated)).**

Prelim. Resp. 6.

The annotated figures above depict Figures 2 and 4 of the '279 patent
emphasizing the features of the claimed design using four colors (blue, red,
green, and gold).  *See id.* at 5–6.  In particular, Patent Owner describes the
following:

> [T]he claimed design includes a protruding circular element with
> a beveled edge protruding outward from an outermost
> continuous circle (blue).  *Id.*  An outer circular shape is formed
> by thin, elongated arches positioned within the outermost
> continuous circle (red).  *Id.*  The inner edges of the arches are
> raised relative to the outermost continuous circle, resulting in the
> appearance that the arches protrude upward from the outermost
> continuous circle. Moving toward the center of the concentric
> circular arrangement, spaced apart from the outer circular shape,
> an inner circular shape is formed by an arrangement of multiple
> elongated four-sided shapes (green). *Id.* The inner circular shape
> is smaller in diameter than the outer circular shape.  *Id.*  The
> design also includes a central round shape [gold], spaced apart
> from and positioned within the inner circle shape. The design has

8

IPR2023-00774
Patent D883,279 S

> a domed appearance that appears to protrude out from the surrounding surface of the electronic device (e.g., the plane of the outermost continuous circle).

*Id.* at 5.

Patent Owner contends that that Petitioner's proposed construction ignores certain prominent features, as follows:

> 1) the outermost continuous circle, 2) the unified circular appearance provided by the arches, 3) the distance between the inner edges of the arches and the outermost continuous circle that is relatively small and complementary to the proportions of other features, and 4) the elongated four-sided shapes arranged to complement the curvature of the outermost continuous circle and the arch-shaped portions. Each of these features contribute to the unique, concentric circular overall appearance, and are significant to the ordinary designer.

*Id.* at 10 (citing Ex. 2001 ¶ 29).

Patent Owner also disputes Petitioner's view that aspects of the '279 patent's design should be "factored out" as being functional. Prelim. Resp. 11. For instance, Patent Owner contends the following:

> In an attempt to map the '279 patent's unique design to the prior art, Masimo relies on a construction that improperly "factored out" meaningful aspects of the design. Even if particular aspects of the design are associated with a functional purpose, they have ornamental contributions that cannot be excluded from the claimed design. Masimo's proposal is based on legal error. Additionally, Masimo improperly imports purported functionality from a commercial embodiment, ignoring that such functionality is not required or mentioned by the '279 patent, and ignoring the numerous alternative designs that can achieve the same or similar functionality.

*Id.*

Patent Owner proceeds to express at length its view as to why Petitioner's position discounting the design of the '279 patent as solely

IPR2023-00774
Patent D883,279 S

functional is incorrect, and that the '279 patent includes a claimed design with ornamental contributions.  Prelim. Resp. 11–20.

### 3.  Discussion

#### a)  The Issue of Functional Elements in the '279 Patent

We turn first to the matter of Petitioner's proposed "factor[ing] out" of aspects of the claimed design under the guise of functionality.  As Petitioner observes, the Court of Appeals for the Federal Circuit has identified multiple factors that may be considered in assessing the functionality of a claimed design.  Pet. 11 (citing *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1329–30 (Fed. Cir. 2015); *Sport Dimension, Inc. v. Coleman Co., Inc.*, 820 F.3d 1316, 1322 (Fed. Cir. 2016)).  One central consideration is the "availability of alternative designs [, which is] an important—if not dispositive—factor in evaluating the legal functionality of a claimed design."  *Ethicon*, 796 F.3d at 1329–30.

As Patent Owner points out (*see, e.g.*, Prelim. Resp. 16–20), the record before us is replete with various designs for the back or rear portions of various electronic devices, such as watches.  For instance, Patent Owner directs attention to Exhibits 2003 and 2004 showing designs for an "Aries AW80 watch" and a "P11 Plus watch."  *Id.* at 16–18 (citing Ex. 2003, 1, 5–6, 11, 13–16; Ex. 2004, 1–3; Ex. 2001 ¶¶ 30–34).

10

IPR2023-00774
Patent D883,279 S

Depictions of images from Exhibits 2003 and 2004 are reproduced below:



Ex. 2003, 7 (above left); Ex. 2004, 3 (above right).[1]

The images reproduced above show, in-part, the rear face of the two types of watches noted above.  The apparent electrode geometries and arrangements shown are, in our view, clearly distinct from the claimed design of the '279 patent.   We, thus, agree with Patent Owner, and its declarant, Mr. Lance Gordon Rake, for essentially all the reasons offered, that there is a different overall appearance as between the rear faces reproduced above and the design of the '279 patent.  *See* Prelim. Resp. 16–18; Ex. 2001 ¶¶ 30–34.  Comparing the Aries AW80 and the P11 Plus watches with the claimed design strongly indicates that these are alternative electrode arrangements and designs.

---

[1] The identified page numbering for these two exhibits is that appearing at the bottom right corner of each exhibit.

IPR2023-00774
Patent D883,279 S

Additionally, as also noted by Patent Owner and Mr. Rake (*see* Prelim. Resp. 18–20; Ex. 2001 ¶¶ 39–42), the '157 patent identified by Petitioner as being associated with the '279 patent (*see* Pet. 20–21, 24–27), includes various examples or embodiments of an electronic watch.  Two of those examples from the '157 patent are reproduced below:



Figures 2C and 3 reproduced above each show an example of "an electronic watch that incorporates a set of electrodes."  Ex. 1024, 2:34–37. We agree with Patent Owner and Mr. Rake that the appearance of the "single rear-facing electrode (Fig. 2C)" and the "half-circle and circular electrodes (Fig. 3) are alternative designs presenting a visual appearance that is different or distinct from the '279 patent design.  *See* Prelim. Resp. 18–20; Ex. 2001 ¶¶ 36–40.

That the record amply demonstrates that there are multiple alternative designs for the rear face or surface of an electronic device that present a distinct visual appearance is, in our view, significant in undermining Petitioner's assertion that the '279 patent design should be regarded largely, if not entirely, as including elements that are purely functional.

IPR2023-00774
Patent D883,279 S

Furthermore, we share Patent Owner's view that Petitioner's reliance on the assessment of a commercial product that may be covered by the '279 patent, e.g., the Apple Watch Series 4, based on functionality disclosed as to that product's wireless charging, is problematic.  As Patent Owner notes, "nothing in the '279 patent tethers the claimed ornamental shapes to wireless charge components, or any other particular charging component" (*see* Prelim. Resp. 15), yet it is features pertaining to wireless charging that underscore the bulk of Petitioner's position on functional elements.  *See, e.g.*, Pet. 16–35.  There is considerable tension in Petitioner's assessment that leans on the functionality of the features of a commercial product rather than evaluation based on the claimed design of the '279 patent.  *See Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1455 (Fed. Cir. 1997) ("the court cannot use the limitations of the commercial embodiment of the underlying article of manufacture to impose limitations on the scope of the design patent.")

Further still, we observe that even if some individual elements of the '279 patent may have some functional purpose, Petitioner's piecemeal assessment of potentially functional aspects of individual elements of the design does not, in our view, adequately account for the requirement to evaluate the "overall appearance" of a design, i.e., "the claimed design viewed in its entirety."  *See Ethicon,* 796 F.3d at 1329 ("[w]e have also instructed that the overall appearance of the article—the claimed design viewed in its entirety—is the basis of the relevant inquiry, not the functionality of elements of the claimed design viewed in isolation"); *see also Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1321 (Fed. Cir. 2016) ("While we agreed that certain elements of the device were functional,

IPR2023-00774
Patent D883,279 S

their functionality did not preclude those elements from having protectable ornamentation")

Accordingly, we have considered Petitioner's argument pertaining to potential functionality of aspects of the '279 patent's claimed design. We, however, decline to "factor out," in the manner proposed by Petitioner, elements of the '279 design that contribute to the overall appearance of that design.

### b) *Claim Construction of the '279 Patent*

In our view, despite the use of different coloring and highlighting, the parties present respective constructions of the '279 patent that seem quite similar. In that regard, although we take note of Patent Owner's view that Petitioner's construction fails to account for four particular aspects of the claimed design, we find questionable several matters as to that view. *See* Prelim. Resp. 10. In particular, with respect to the elements identified as "2), "3)", and "4),"[2] we do not agree with Patent Owner, as we think both constructions account in similar fashion for those aspects. With respect to item "1)," i.e., "the outermost continuous circle" (*id.* at 10), we agree with

---

[2] Although reproduce above § I.C.2, we reproduce those identified elements again here:

> 2) the unified circular appearance provided by the arches, 3) the distance between the inner edges of the arches and the outermost continuous circle that is relatively small and complementary to the proportions of other features, and 4) the elongated four-sided shapes arranged to complement the curvature of the outermost continuous circle and the arch-shaped portions.

Prelim. Resp. 10.

IPR2023-00774
Patent D883,279 S

Patent Owner that the claimed design includes such a feature.  We note that there is some potential ambiguity in Petitioner's construction as to that feature of an outermost continuous circle as between the three colorized figures reproduced on pages 12 and 13 of the Petition (and also reproduced above in § I.C.1).  It would seem, however, that the colorized figure on page 13 of the Petition appears to suggest an outer circle in identifying the "Chamfered Edge" and the "Vertical Edge" as claimed features.  *See* Pet. 12.

Because we think that the "outermost continuous circle" is a claimed feature of the '279 patent, we adopt the claim construction that is advanced by Patent Owner as clearly noting the presence of such a feature.  *See, e.g.*, *supra* § I.C.2.  We note, however that the outcome of this proceeding would ultimately be the same even were we to adopt Petitioner's claim construction.  That is so because (1) Petitioner's construction also appears to recognize the outermost continuous circle, and (2) for reasons that are discussed at length below, we conclude that Patent Owner has identified sufficient deficiencies in Petitioner's proposed grounds that preclude institution irrespective of any claim construction.

## D.  Evidence

Petitioner relies on the following references:

| Name | Reference | Exhibit(s) |
|------|-----------|------------|
| Paulke | PCT Application Publication No. WO 2017/165532 A1 published Sept. 28, 2017 | 1006 |
| Yuen | U.S. Patent Application Publication No. 2019/00196411 A1 published June 27, 2019 | 1007 |
| Fong | U.S. Design Patent No. D827,831 S issued Sep. 4, 2018 | 1008 |
| Bushnell | U.S. Patent Application Publication No. 2017/0086743 A1 published Mar. 20, 2017 | 1009 |

IPR2023-00774
Patent D883,279 S

| Name | Reference | Exhibit(s) |
|------|-----------|------------|
| Chung | U.S. Patent Application Publication No. 2019/0324593 A1 published Oct. 24, 2019 | 1010 |
| Mendelson | U.S. Patent No. 6,801,799 B2 issued Oct. 5, 2004 | 1011 |

In support of its arguments, Petitioner also relies on the Declarations of Joel Delman (Ex. 1003) and R. James Duckworth, Ph.D. (Ex. 1014). In opposing the Petition, Patent Owner relies on the Declaration of Lance Gordon Rake (Ex. 2001).

### E.  Proposed Grounds of Unpatentability

Petitioner asserts the following grounds of unpatentability:

| Claims Challenged | 35 U.S.C. § | Reference(s)/Basis |
|-------------------|-------------|---------------------|
| 1 | 103[3] | Paulke, Mendelson, Bushnell, Chung |
| 1 | 103 | Yuen, Mendelson, Bushnell, Chung |
| 1 | 103 | Fong, Mendelson, Bushnell, Chung |

## II.  ANALYSIS

### A.  Principles of Law

"In addressing a claim of obviousness in a design patent, the ultimate inquiry is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved." *Apple, Inc. v. Samsung Elec. Co.*, 678 F.3d 1314, 1329 (Fed. Cir. 2012) (internal quotation

---

[3] The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284, 287–88 (2011), amended 35 U.S.C. § 103 effective on March 16, 2013.  Neither party argues, at least at this stage of the proceeding, that the outcome of this case would differ based on applying the pre-AIA or post-AIA versions of this law.

16

IPR2023-00774
Patent D883,279 S

and citations omitted); *see also High Point Design*, 730 F.3d at 1313 ("The use of an 'ordinary observer' standard to assess the potential obviousness of a design patent runs contrary to the precedent of this court and our predecessor court, under which the obviousness of a design patent must, instead, be assessed from the viewpoint of an ordinary designer."). This obviousness analysis generally involves two steps: first, "one must find a single reference, a something in existence, the design characteristics of which are basically the same as the claimed design"; second, "[o]nce this primary reference is found, other references may be used to modify it to create a design that has the same overall visual appearance as the claimed design." *High Point Design*, 730 F.3d at 1311 (internal quotation and citations omitted).

In performing the first step, we must "(1) discern the correct visual impression created by the patented design as a whole; and (2) determine whether there is a single reference that creates basically the same visual impression." *Id.* at 1312 (internal quotation and citations omitted). In the second step, the primary reference may be modified by secondary references "to create a design that has the same overall visual appearance as the claimed design." *Id.* at 1311 (internal quotation and citations omitted). However, the "secondary references may only be used to modify the primary reference if they are 'so related [to the primary reference] that the appearance of certain ornamental features in one would suggest the application of those features to the other.'" *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996) (quoting *In re Borden*, 90 F.3d 1570, 1575 (Fed. Cir. 1996)).

17

IPR2023-00774
Patent D883,279 S

When evaluating prior art references for purposes of determining patentability of ornamental designs, the focus must be on actual appearances and specific design characteristics rather than design concepts. *In re Harvey*, 12 F.3d 1061, 1064 (Fed. Cir. 1993); *see also Apple, Inc. v. Samsung Elec. Co.*, 678 F.3d at 1332 ("Rather than looking to the 'general concept' of a tablet, the district court should have focused on the distinctive 'visual appearances' of the reference and the claimed design.").

We analyze the asserted grounds with the above-noted principles in mind.

### B. The Designer of Ordinary Skill

In connection with the designer of ordinary skill, Petitioner contends the following:

> For purposes of this Petition, a designer of ordinary skill in the art related to the D'279 Patent ("DOSA") would have had an undergraduate or graduate degree in industrial/product design, along with at least two years of relevant work experience in the field of industrial/product design of portable electronic devices. EX1003 ¶26. A DOSA would not need to be familiar with electrical, biomedical, or other advanced technical concepts employed by such devices. *Id.* ¶27. Rather, the DOSA would consult or collaborate with a person of ordinary skill in the art ("POSITA") regarding concepts outside of the DOSA's expertise. *Id.* Here, a POSITA would have had at least a Bachelor or Master of Science degree in electrical or biomedical engineering, or a comparable engineering discipline, in combination with at least two years of related work experience involving wearable devices for noninvasively measuring health parameters. EX1014 ¶28.

Pet. 35.

18

IPR2023-00774
Patent D883,279 S

Patent Owner contends the following: "[f]or the purposes of this case, a Designer of Ordinary Skill in the Art ('DOSA') would have a degree in Industrial Design or Mechanical Engineering, and at least two years of professional experience creating Industrial Designs of consumer products." Prelim. Resp. 3 (citing Ex. 2001 ¶ 19).

In assessing the parties' views as to level of skill of a designer of ordinary skill in the art, we conclude that they are effectively the same. Indeed, the parties do not identify any material difference between the parties' proposed assessment. Nevertheless, for clarity and completeness, we adopt Petitioner's proposed assessment. We note, however, that were we to adopt Patent Owner's assessment, the outcome of this Decision would be the same.

## C. Proposed Obviousness Ground of Unpatentability Based on Paulke, Mendelson, Bushnell, and Chung

Petitioner contends that the claimed design of the '279 patent would have been obvious in view of Paulke, Mendelson, Bushnell, and Chung. Pet. 47–76.

### 1. Overview of Paulke

Paulke is titled "Biosensor Module for Band Attachment." Ex. 1006, code (54). Paulke's Abstract is reproduced below:

IPR2023-00774
Patent D883,279 S

A biosensor module is provided for detecting one or more biosignals at a wearer's ventral wrist. The module includes a housing having a wrist-facing inner surface and a non-wrist-facing outer surface, both formed of an insulative material, housing one or more processing units between the inner and outer surfaces; and one or more biosensors protruding from the wrist-facing inner surface and electronically coupled to the one or more processing units within the housing. An assembly is also provided, including a support member including a portion configured to receive a wrist band; and a biosensor module including a housing having a wrist-facing inner surface and a non-wrist-facing outer surface, the housing being curved in the wrist-facing direction and housing one or more processing units between the inner and outer surfaces, and one or more biosensors protruding from the wrist-facing inner surface and electronically coupled to the one or more processing units.

*Id.* at code (57).

Paulke's Figures 1F and 1G are reproduced below:



FIG. 1F

FIG. 1G

20

IPR2023-00774
Patent D883,279 S

Figures 1F and 1G above "illustrate an exemplary biosensor module in accordance with some embodiments." *Id.* at 3:28–29.

### 2. Overview of Mendelson

Mendelson is titled "Pulse Oximeter and Method of Operation." Ex. 1011, code (54). Mendelson's Abstract is reproduced below:

> A sensor for use in an optical measurement device and a method for non-invasive measurement of a blood parameter. The sensor includes sensor housing, a source of radiation coupled to the housing, and a detector assembly coupled to the housing. The source of radiation is adapted to emit radiation at predetermined frequencies. The detector assembly is adapted to detect reflected radiation at least one predetermined frequency and to generate respective signals. The signals are used to determine the parameter of the blood.

*Id.* at code (57).

Mendelson's Figure 7 is reproduced below:



*Figure 7*

21

IPR2023-00774
Patent D883,279 S

Figure 7 above shows an "optical sensor" according to Mendelson's invention. *Id.* at 8:37–38. Sensor 10 includes light sources 12a, 12b, 12c and an array of detectors (photodiodes) including "'far' detector 16" and "'near' detector 18" in concentric rings. *Id.* at 9:22–34.

### 3. Overview of Bushnell

Bushnell is titled "Sensing Contact Force Related to User Wearing an Electronic Device." Ex. 1009, code (54). Bushnell's Abstract is reproduced below:

> A wearable electronic device includes a body, a housing component, a band operable to attach the body to a body part of a user, and a force sensor coupled to the housing component. The force sensor is operable to produce a force signal based on a force exerted between the body part of the user and the housing component. A processing unit of the wearable electronic device receives the force signal from the force sensor and determines the force exerted on the housing component based thereon. The processing unit may use that force to determine a tightness of the band, determine health information for the user, adjust determined force exerted on a cover glass, and/or to perform various other actions.

*Id.* at code (57).

IPR2023-00774
Patent D883,279 S

Bushnell's 1A and 2B are reproduced below:



*FIG. 1A*                    *FIG. 2A*

Figure 1A above shows a wearable electronic device.  *Id.* ¶ 21.
Figure 2A above shows a cross-sectional view of a wearable electronic
device.  *Id.* ¶ 23.  Wearable electronic device 100 includes main body 101,
housing component 104, and sensor windows 105.  *Id.* ¶¶ 37–38.

*4.   Overview of Chung*

Chung is titled "Electronic Device Including Optical Sensor Using
Fresnel Lens."  Ex. 1010, code (54).

IPR2023-00774
Patent D883,279 S

Chung's Fig. 7 is reproduced below:



Figure 7 above "is a diagram of a layout of an optical sensor including one light emitting unit and a plurality of light receiving units." *Id.* ¶ 17.

### 5. *Discussion—Paulke, Mendelson, Bushnell, and Chung Based Ground*

Petitioner urges that Paulke is a proper primary, or *Rosen*,[4] reference because "it is a single prior art reference with basically the same design characteristic as the claimed design." Pet. 41 (citing Ex. 1006, Figs. 1–2; Ex. 1003 ¶¶ 58–65).

Patent Owner disagrees. In that regard, Patent Owner contends that Petitioner has not shown that Paulke is a proper *Rosen* reference because there are multiple apparent differences between Paulke and the claimed

---

[4] In the context of design patent law, a proper primary, or *Rosen*, reference is "something in existence, the design characteristics of which are basically the same as the claimed design." *In re Rosen*, 673 F.2d 388, 391 (CCPA 1982).

IPR2023-00774
Patent D883,279 S

design such that Paulke is not a "single reference that creates basically the same visual impression." Prelim. Resp. 15 (citing *Levitation Arts, Inc. v. Flyte LLC*, PGR2018-00073, Paper 14, 16–22 (PTAB, Jan. 17, 2019); *Dorman Products Inc. v. PACCAR Inc.*, IPR2014-00542, Paper 10 at 5 (PTAB Sept. 5, 2014); *In re Harvey*, 12 F.3d 1061, 1063 (Fed. Cir. 1993). We reproduce below Figure 4 of the '279 patent (left) alongside Paulke's Figure 1G (right):



FIG. 4                          FIG. 1G

The figures above show views of the rear or bottom face of each of the electronic device of the '279 patent and the Paulke's biosensor. Ex. 1001, code (57); Ex. 1006, 14:25. At the outset, it is notable that while the claimed design of the '279 patent includes multiple (eight) inner rectangles arranged in a circular shape, Paulke's figures, as evidenced by Figure 1G, are entirely devoid of any corresponding features. Petitioner attempts to account, in some fashion, for rectangle components in focusing

25

IPR2023-00774
Patent D883,279 S

on Paulke's Figure 2A, which appears to show an exploded view of a singular rectangular photodiode structure that is within an inner portion of Paulke's biosensor.  *See* Pet. 54–56; Ex. 1006, Fig. 2A.

    We agree with Patent Owner that Paulke, when properly viewed as a complete article embodying the design, including the external elements, does not depict such a rectangle as being visible with any external components. *See* Prelim. Resp. 22; *see also id.* at 26 ("[t]he purported, even if present, would have been *hidden behind* Paulke's depicted openings through sensor 124" (citing Ex. 2001 ¶¶ 54, 55)).  Petitioner proceeds, however, to extrapolate from that apparent inner rectangular structure so as to create an altered version of Paulke's Figure 1G that is said be "Composite with FIG. 2A."  Pet. 55.  We find Petitioner's approach in that regard as unavailing in establishing in Paulke any semblance of a visual impression of a rectangle appearing in conjunction, for instance, with Paulke's Figure 1G.  To that end, we agree with Patent Owner that Petitioner does not "explain[] why a DOSA would have understood Paulke to have an appearance of a rectangular shape that deviates from Paulke's illustrated appearance." Prelim. Resp. 28.  Additionally, and significantly, the presence of any interior circular arrangement of rectangular shaped objects is entirely absent from Paulke.

    Furthermore, it is apparent that Paulke lacks depiction of any structure or component that is analogous to the claimed "convex protrusion," as characterized by Petitioner (*see* Pet. 11), in the '279 patent that lies over the other claimed components.

    Further still, although both figures include a central portion with arc-shaped portions, there is some significant differences in the appearance of

26

IPR2023-00774
Patent D883,279 S

those portions.  For instance, as noted by Patent Owner (*see, e.g.*, Prelim. Resp. 30–33) the arc-shaped portions of the '279 patent design are thinner than those of Paulke's Figure 1G, and the spacing of the arc-shaped portions in the '279 patent is noticeably smaller than in Paulke.  That enlarged spacing in Paulke eliminates any appearance of an outer continuous circle formed by the outer ring of the arc-shaped portions, which is present in the design of the '279 patent.  In that respect, we find credible Patent Owner's argument that "Paulke's features provide an appearance of two separate, opposed shapes that differs prominently from the '279 patent's arches that evoke an overall concentric circle appearance."  Prelim. Resp. 31 (citing Ex. 2001 ¶¶ 64).  Additionally, the orientation of the arc-shaped portions in Paulke is rotated 90 degrees from that of the '279 patent.[5]

In our view, the above-noted differences in overall appearance as between Paulke and the '279 patent convey that Paulke is not "basically the same" as the claimed design of the '279 patent so as to be regarded as a proper *Rosen* reference.  *See In re Rosen*, 673 F.2d at 391.

Nevertheless, even were we to assume that Paulke is a proper *Rosen* reference, for the reasons discussed below, we do not find persuasive that a designer of ordinary skill in the art would have made Petitioner's proposed modifications to Paulke's biosensor module, so as to arrive at the design of the '279 patent.

Petitioner relies on each of Mendelson's Figure 7 and Chung's Figure 7 as the basis for importing an arrangement of rectangles onto Paulsen's biosensor.  Petitioner takes the position that Mendelson, Bushnell,

_____

[5] We are mindful, however, that both parties analyze Paulke's Figure 1G in a rotated configuration. *See, e.g.*, Pet. 48; Prelim. Resp. 38.

IPR2023-00774
Patent D883,279 S

and Chung are "so related" to Paulke so as to constitute proper secondary references. *See, e.g.*, Pet. 59, 61. In that regard, Petitioner contends that Mendelson and Chung "disclose suitable sensors for Paulke's design" and "Paulke suggests replacing its central circular biosensor with a suitable oxygen saturation sensor." *Id.* at 60. Petitioner also contends that Bushnell discloses "a suitable design for Paulke's device." *Id.* at 62.

Patent Owner disagrees with Petitioner that Mendelson and Chung are proper secondary references and also contends that Petitioner's reliance on a combination of Paulke, Mendelson, Bushnell, and Chung does not focus on ornamental features or aspects of the references and instead impermissibly delves into reasons for combining the teachings based on uses of Mendelson's sensor. Prelim. Resp. 41–42. In particular, with respect to Mendelson and Chung, Patent Owner argues the following:

> Masimo relies on Paulke's central circular biosensor 120 and Mendelson's and Chung's circularly-shaped sensors as evidence that Mendelson and Chung are "so related" to Paulke's design. Pet., 60("Mendelson and Chung are so related to Paulke ***because they disclose suitable sensors*** for Paulke's design" and "Paulke expressly suggests combining its sensor design with a suitable PPG sensor."). In doing so, Masimo improperly focuses on Mendelson's ***use*** as a sensor rather than the visual ***appearance*** of Mendelson and Paulke. *In re Sung Nam Cho*, 813 F.2d 378, 382 (Fed. Cir. 1987) (reversing Board's obviousness determination that analyzed design patent "as if it were the subject of an application for a utility patent") ("[a]lthough it may have been obvious, from a utility stand point, to place cylindrical depressions in crown type caps and to include flaps in the depressions, it does not follow that Cho's design was obvious"); *Termax*, IPR2022-00106, Paper 7 at 29.

*Id.* at 42.

28

IPR2023-00774
Patent D883,279 S

We find persuasive Patent Owner's arguments, and the authority underlying those arguments, in casting doubt as to the propriety of the reasoning for combining Mendelson and Chung with Paulsen that are divorced from consideration of ornamental or visual appearance.

Furthermore, Petitioner seemingly acknowledges that there are at least some differences as between the '279 design and Paulke's figures with respect to the "spacing, shape, size, or dimensions of the arc-shaped portions of Paulke . . . and the claimed design" but concludes that such differences between the design of Paulke and the claimed design would have been "a routine change" to a designer of ordinary skill in the art. *Id.* at 73–74 (citing Ex. 1006, 15:22–23; Ex. 1003 ¶ 78). According to Petitioner, a designer of ordinary skill in the art would have been motivated to make various modifications to Paulke's biosensor module, for instance: (1) "to extend the ends of [Paulke's] arc-shaped electrodes closer together to maximize the arc-shaped electrodes' surface area for contacting the user's skin in use"; (2) ensure that Paulke's electrodes "were shaped to avoid interference between the charging coils of the device and its charger; and (3) to make Paulke's arc-shaped electrodes include certain "chamfered edges" as in the '279 patent because such edges were a known design for "providing improved user comfort." Pet. 74 (citing various portions of Exs. 1006, 1024, 1044; Ex. 1003 ¶ 88; Ex. 1014 ¶¶ 88, 90).

As Patent Owner notes, essentially all of the multiple modifications to Paulke proposed by Petitioner are based on "purported utility considerations" rather than being based on ornamental design. *See* Prelim. Resp. 48. We agree with Patent Owner that such rationales for altering the appearance of Paulke's biosensor module are in tension with principles

29

IPR2023-00774
Patent D883,279 S

underscoring design patent law, in that, when assessing obviousness of a claimed design, "the focus must be on appearances and not uses." *See id.* at 47 (quoting *In re Harvey*, 12 F.3d 1061, 1064 (Fed. Cir. 1993)).  Moreover, we simply find unpersuasive Petitioner's view as to the types and forms of modifications of Paulke's biosensor module appearance that would emerge to a designer of ordinary skill in the art.  We reproduce below Petitioner's illustrations of what is proposes as "Modified" versions of Paulke's figures:



Pet. 75.

The images above represent Petitioner's proposed creation of a biosensor module appearance based on modification to Paulke.  *See id.* at 52. In our view, Petitioner simply does not adequately explain how the above images would have been revealed to a designer of ordinary skill in the art in modifying figures shown in Paulke.  The above images appear, to us, as a matter of hindsight, to be manufactured to simulate the appearance of the claimed design of the '279 patent rather than adhering to a design that would have been conveyed to a designer of ordinary skill in the art based on modification to Paulke's biosensor module.  We note, in particular, that the

IPR2023-00774
Patent D883,279 S

proposed central, circular array of rectangles does not appear to be derived from visual aspects of any of Paulke, Mendelson, Chung, or Bushnell, as the illustrated number of rectangles, and their overall appearance, are different than then any depiction in either reference. Moreover, Petitioner's created images still do not account for the appearance of a continuous outer circle, as the images clearly show substantial gaps, on each side, between the upper and lower arc-shaped portions.

Accordingly, having considered Petitioner's proposed ground of based on Paulke (and the proffered supporting evidence), we conclude that it is inadequate to establish a reasonable likelihood of demonstrating the unpatentability of the claimed design of the '279 patent.

### D. Proposed Grounds of Unpatentability Based on Yuen, Mendelson, Chung, and Bushnell

Petitioner contends that the claimed design of the '279 patent would have been obvious in view of Yuen, Mendelson, Chung, and Bushnell. Pet. 77–95.

### 1. Overview of Yuen

Yuen is titled "Smartwatch Assemblies Having Electrocardiogram Sensors Photoplethysmography Sensors and Blood Pressure Monitors and Related Methods." Ex. 1007, code (54). Yuen's Abstract is reproduced below:

> A smartwatch assembly including an outer frame portion and an insert portion removably insertable into the outer frame portion. The insert portion may include a casing, a controller disposed within the casing, an electrocardiogram sensor operably coupled to the controller, the electrocardiogram sensor having at least two electrodes configured to be placed in contact with a user's skin, a

31

IPR2023-00774
Patent D883,279 S

> photoplethysmography sensor operably coupled to the controller
> and oriented to face the user's skin, and a display operably
> coupled to the controller and configured to show data related to
> measurements taken by the electrocardiogram sensor and the
> photoplethysmography sensor. The photoplethysmography
> sensor may detect trigger events in a heart function of the user,
> and, in response to the detection of a trigger event, the
> electrocardiogram sensor may initiate an electrocardiogram
> measurement of the user.

*Id.* at code (57).

Yuen's Figures 1B (partial) and 3A are reproduced below:



FIG. 3A

The partial Figure 1B above shows a "back perspective view" of a

smartwatch assembly. *Id.* ¶ 9.[6]  Figure 3A reproduced above on the right

---

[6] In a similar manner as presented in the Petition (*see, e.g.*, Pet. 57), Yuen's
Figure 1B is reproduced so as to focus on the appearance of watch body 102
and omits further depiction of first and second watch band portions 104 and
106 (reference characters not present in the reproduced portion of Yuen's
Figure 1B).

32

IPR2023-00774
Patent D883,279 S

shows a "perspective view of insert portion of a smartwatch assembly" of Yuen. *Id.* ¶ 11.  As shown and numbered in Figure 3A, and as shown (but not numbered in Fig. 1B), Yuen's smartwatch assembly includes two electrodes 130, 132, each with a "general half-moon shape." *Id.* ¶ 35.

2.   *Discussion—Yuen, Mendelson, Bushnell, and Chung Based Ground*

As with Paulke, Petitioner contends that Yuen is a proper primary or *Rosen* reference because "its design characteristics are basically the same as the claimed design" and that "any differences between Yuen and the D'279 Patent do not change the design' overall visual similarity." Pet. 66–67 (citing Ex. 1007, Figs. 1, 3–4, Ex. 1003 ¶¶ 80–93).

Patent Owner has a different view and contends that Yuen is not a proper *Rosen* reference.  Prelim. Resp. 26.

We reproduce Figure 4 of the '279 patent alongside a portion of Yuen's Figure 1B:

IPR2023-00774
Patent D883,279 S



FIG. 4

The figures above show views of the rear or back face of each of the electronic device of the '279 patent and the sensor arrangement on Yuen's smartwatch.  Ex. 1001, code (57); Ex. 1007 ¶ 13.  We are mindful of Petitioner's contention that a "primary reference and claimed design can have differences because, if they had to be identical, 'no obviousness analysis would be required." Pet. 36 (quoting *MRC Innovations, Inc. v. Hunter Mfg.*, 747 F.3d 1326, 1332–33 (Fed. Cir. 2014).  Yet, here the differences in appearance as between the claimed design and that of Yuen's smartwatch are not minor in character but are, in our view, substantial.

To that end, we agree with Patent Owner that "the inner circular shape formed by four-sided shapes is central to the concentric circle overall appearance of the claimed design" and that "any similar aspect is entirely lacking from Yuen."  Prelim. Resp. 50.  In conjunction with that agreement, we share Patent Owner's puzzlement (*see, e.g.*, *id.* at 52–54) as to the basis for Petitioner's version of Yuen's Figure 4 designated "Composite" that

34

IPR2023-00774
Patent D883,279 S

depicts a single blue interior square seemingly without adequate foundation in Yuen's disclosure. *See* Pet 84. Nevertheless, irrespective of that "Composite" figure, in our view, the lack of an analogous circular array of square shaped interior components in Yuen is a substantial distinction in visual appearance as compared to the claimed design. We note, as does Patent Owner, that to recreate the '279 patent design, including a circular array of rectangles, the Petition "relies on layers of modification that significantly change Yuen's appearance." *See* Prelim. Resp. 50.

We further agree with Patent Owner's characterization of Yuen's design as presenting "asymmetrical and squarish shapes opposed shapes that provide a markedly different overall appearance from the '279 patent's outer circular shape." Prelim. Resp. 50–51. Indeed, we note that Petitioner, itself, acknowledges that Yuen's sensor has an "asymmetrically located" sensor. *See* Pet. 91. As compared with the symmetrical appearance of the arch-shaped features of the '279 patent, Yuen's asymmetrical appearance creates visual distinction.

We also agree with Patent Owner that Yuen's "opposed shapes" on the back of its smartwatch are not "arch-shaped" as in the claimed design, and instead "have a square, off-center cut-out." Prelim. Resp. 56–57. We further agree that they "are meaningfully wider than the arches of the claimed design," with "ends [that] are separated by a relatively large gap. *Id.* Additionally, Yuen's opposed shapes appear thicker than the arch-shaped portions of the '279 patent and such thickness is not uniform over the extent of the shapes. We find credible Patent Owner's arguments, and the testimony of its declarant, Mr. Rake, that Yuen's design does not convey to a designer of ordinary skill the appearance of concentric circles with a

IPR2023-00774
Patent D883,279 S

"outermost continuous circle" that is presented by the '279 patent design. *See, e.g.*, *id.* at 59–62; Ex. 2001 ¶¶ 20–27, 99–102, 107–110.

Further still, we agree with Patent Owner that Yuen lacks disclosure of convex protrusion or "domed appearance" overlaying other components as in the claimed design of the '279 patent. *See id.* at 57–59.

In sum, we agree with Patent Owner and Mr. Rake that the rear of Yuen's smartwatch presents a configuration of opposed shapes that are asymmetric with squarish ends of non-uniform thickness, and convey a different visual appearance than the arch-shaped (or arc-shaped) portions that present symmetric concentric circles in the '279 patent. Because those respective shapes are different in position, shape, size and relationship, we conclude that they are not reasonably viewed as having a similar overall appearance. As a result, we conclude that the design are visually dissimilar such that Yuen is not "basically the same" as the claimed design of the '279 patent so as to be regarded as a proper *Rosen* reference. *See In re Rosen*, 673 F.2d at 391.

Nevertheless, here too, even were we to assume that Yuen is a proper *Rosen* reference, for the reasons discussed below, we do find persuasive that a designer of ordinary skill in the art would have made Petitioner's proposed modifications to Yuen's smartwatch, so as to arrive at the design of the '279 patent.

Petitioner contends that a designer of ordinary skill in the art would have been motivated to combine various aspects of Mendelson's sensor, Chung's sensor, and Bushnell's electronic device with the sensor arrangement of Yuen's smartwatch to allegedly arrive at the design pf the '279 patent. *See* Pet. 86–95. According to Petitioner, Mendelson, Chung,

IPR2023-00774
Patent D883,279 S

and Bushnell are each "so related" to Yuen so as to constitute proper secondary references. *See, e.g., id.* at 86, 88. Petitioner proceeds to select various aspects of each of Mendelson, Bushnell, and Chung and amalgamates those various aspects with Yuen to purportedly arrive at the design of the '279 patent. *See id.* at 86–95

Patent Owner disagrees that Mendelson, Bushnell, and Chung are considered proper secondary references and disputes a designer of ordinary skill would have found the claimed design of the '279 patent based on a combination of Yuen, Mendelson, Bushnell, and Chung. *See* Prelim. Resp. 63–68. In effect, Patent Owner is of the view that all of the references generally lack similar visual elements. *See id.*

Figures on which Petitioner relies from each of Yuen, Mendelson, Chung, and Bushnell are reproduced below:



Yuen's Figure 1B above (partial) (left) shows a "back perspective view" of a smartwatch assembly. Ex. 1007 ¶ 9. Mendelson's Figure 7 above (mid-left) shows an "optical sensor" according to Mendelson's invention. Ex. 1011, 8:37–38. Bushnell's Figure 1A above (mid-right) shows a wearable electronic device. Ex. 1009 ¶ 21. Chung's Figure 7 above

IPR2023-00774
Patent D883,279 S

(right) "is a diagram of a layout of an optical sensor including one light emitting unit and a plurality of light receiving units."  Ex. 1010 ¶ 17.

We agree with Patent Owner that as is evident from the figures above, there are marked differences in visual appearance as between the assemblies of the four references.  To that end, given the visual dissimilarity between Mendelson's, Bushnell's, and Chung's sensors with Yuen's sensor, it is difficult to conclude that those secondary references are "so related" such their ornamental features would suggest application of those features to Yuen. *See Durling*, 101 F.3d at 103.  Moreover, Petitioner's piecemeal selection of various components and aspects to somehow construct an amalgamation of those teachings that is said to arrive at the '279 patent design is tenuous.  We reproduce below images created by Petitioner:



Pet. 93–94.

According to Petitioner, the images above provide the visual appearance of a sensor that allegedly results from the teachings of Yuen

IPR2023-00774
Patent D883,279 S

when combined with the secondary references of Mendelson and Bushnell. *Id.* The stark visual distinction of Petitioner's created image and the appearance of any assembly or sensor of Yuen, Mendelson, Bushnell, and Chung is notable. In our view, Petitioner's created images simply are not adequately tethered to what a designer of ordinary skill in the art would reasonably have taken from the combined teachings of those references and thus are an improper hindsight creation. As was the case with the Paulke ground discussed above, neither Petitioner, nor its declarants (Exs. 1003, 1014), adequately explains that the above-created images result from the combined teachings of the references instead of merely being an illustration that mimics the design characteristics of the '279 patent. We again note that the proposed central, circular array of rectangles does not appear to be derived from visual aspects of any of Yuen, Mendelson, Bushnell, or Chung as the illustrated number of rectangles, and their overall appearance, are different than then any depictions in any of those references. Moreover, here too, Petitioner's created images still do not account for the appearance of a continuous outer circle, as the image clearly shows substantial gaps, on each side, between the upper and lower arc-shaped portions.

Accordingly, we have considered the Petition and its accompanying evidence in connection with the ground based on Yuen (including Petitioner's declarant testimony (Exs. 1003, 1014)) alongside Patent Owner's arguments and evidence. On this record, we find more credible Patent Owner's view (and its declarant (Ex. 2001)) that the Petition does not establishing a reasonable likelihood of showing that the design of the '279 patent is unpatentable based on the teachings of Yuen, Mendelson, and Bushnell.

39

IPR2023-00774
Patent D883,279 S

### E.  Proposed Grounds of Unpatentability Based on Fong, Mendelson, Bushnell, and Chung

Petitioner contends that the claimed design of the '279 patent would have been obvious in view of Fong, Mendelson, Bushnell, and Chung. Pet. 95–113.

### 1.  Overview of Fong

Fong is titled "Health Monitoring Wrist Wearable."  Ex. 1008, code (54).  Fond claims "the ornamental design of a health monitoring wrist wearable."  *Id.* at code (57).  Fong's Figures 2 and 5 are reproduced below:



IPR2023-00774
Patent D883,279 S

Figure 2 above shows a left perspective view of a health monitoring wrist wearable. *Id.* Figure 5 shows a left side elevation view of a health monitoring wrist wearable. *Id.*

### 2. Discussion—Fong, Mendelson, Bushnell, and Chung Based Ground

Petitioner contends that Fong is a proper primary or *Rosen* reference because, in Petitioner's view, "its design characteristics are basically the same as the claimed design." *Id.* at 95.

Patent Owner opposes Petitioner's contention urging, in part, that Fong has a "vastly" or "markedly different overall appearance" as compared to the claimed design. Prelim. Resp. 71–72. Patent Owner also contends that Petitioner fails to address "prominent differences between the claimed design and Fong." *Id.* at 72.

We reproduce Figure 4 of the '279 patent alongside Figure 4 of Fong:

IPR2023-00774
Patent D883,279 S



FIG. 4

FIG. 4

Figure 4 of the '279 patent above (left) show a rear view of an electronic device. Ex. 1001, code (57). Figure 4 of Fong (right) shows a "rear elevation view" of a health monitoring wrist wearable. Ex. 1008, code (57). We agree with Patent Owner that where the claimed design includes "an inner circular shape formed by the arrangement of multiple elongated four-sided shapes," while Fong, instead, includes "circle shapes positioned around a central square in a diamond arrangement." Prelim. Resp. 72–74. Those respective figures include design characteristics that appear to lack visual similarity.

We further find persuasive Patent Owner's view that, although both figures show what appear to be upper and lower opposed arc-shaped (or arch-shaped) portions, there is visual disparity as between those portions. *See* Prelim. Resp. 73. In particular, we agree that "Fong depicts wide, opposed shapes . . . separated from one another at the ends by a significant gap that provides an appearance of opposed, divided shapes." *Id.* at 74

42

IPR2023-00774
Patent D883,279 S

(citing Ex. 2001 ¶ 128–129). Fong also includes two circular elements positioned between end each of the opposed shapes. We also agree that "Fong's opposed shapes spaced apart from one another not only by a large space, but by additional elements interposed in this space that are significant to Fong's different appearance." *Id.*

Furthermore, we agree with Patent Owner that Fong lacks the visual impression of inner and outer concentric circles with an "outermost continuous circle" as is present in the '279 patent design. *Id.* at 80–82. Also, we discern that there is visual distinction in thickness, size and spacing of the Fong's opposed shapes as compared with the arc-shaped portion in the '279 patent. We additionally agree that "Fong's profile . . . lacks a domed appearance or continuous beveled edge protruding outward from the outermost continuous circle." *Id.* at 71; *see id.* at 78–80.

As a result, we share Patent Owner's view that Fong does not create "basically the same visual impression" and does not reasonably constitute a proper primary or *Rosen* reference. *See id.* at 79 (quoting *High Point Design*, 730 F.3d at 1314).

In any event, even assuming that Fong is a proper *Rosen* reference, we are not persuaded that the series of modifications that Petitioner proposes to Fong based, in-part, on Mendelson, Bushnell, and Chung (*see* Pet. 105–112) are what would have been taught to a designer of ordinary skill in the art. Based on figures shown in each of Fong, Mendelson, Bushnell, and Chug Petitioner contends that a designer of ordinary skill in the art would have derived the following images:

43

IPR2023-00774
Patent D883,279 S



Pet. 112

        According to Petitioner, upon combining Fong, Mendelson, Bushnell,
and Chung a sensor appearing as the images above is created that allegedly
has "the same overall visual appearance as the claimed design" of the '279
patent. *Id.*  Yet, we are simply unpersuaded that the images above would be
conveyed to a designer of ordinary skill in the art based on an amalgamation
of Yuen, Mendelson, Bushnell, and Chung.

         For instance, Petitioner does not explain persuasively why the
proposed central, circular array of rectangles emerges but does not appear to
be derived from visual aspects of any of Yuen, Mendelson, Bushnell, or
Chung.  In that regard, the illustrated number of rectangles, and their overall
appearance, are notably different than any structures depicted in any of those
references and thus are an improperly manufactured hindsight creation.

        Petitioner additionally provides little in the way of persuasive
reasoning as to why the modified arc-shaped portions as they appear in the
image above emerge from any combination of Fong, Mendelson, and

IPR2023-00774
Patent D883,279 S

Bushnell. Moreover, in a familiar refrain, Petitioner's created images again do not account for the appearance of a continuous outer circle, as the image clearly shows substantial gaps accommodating interstitial circular elements, on each side, between the upper and lower arc-shaped portions.

Accordingly, having considered Petitioner's proposed ground based on Fong and Bushnell (and the supporting evidence), we conclude that it is inadequate to establish a reasonable likelihood of demonstrating the unpatentability of the claimed design of the '279 patent.

### III.   CONCLUSION

For the reasons set forth above, we conclude that Petitioner has not shown a reasonable likelihood that it would prevail with respect to the claimed design of the '279 patent.

### IV.   ORDER

It is

ORDERED that Petitioner's request for an *inter partes* review of the claim of the '279 patent is *denied* and no trial is instituted.

IPR2023-00774
Patent D883,279 S

PETITIONER:

Douglas Wentzel
Jarom Kesler
Brian Claassen
KNOBBE, MARTENS, OLSON & BEAR, LLP
2dxw@knobbe.com
2jzk@knobbe.com
2bcc@knobbe.com

PATENT OWNER:

W. Karl Renner
Craig Deutsch
Kiersten Batzli
Roberto Devoto
Grace Kim
Andrew Patrick
FISH & RICHARDSON P.C.
axf-ptab@fr.com
deutsch@fr.com
batzli@fr.com
devoto@fr.com
gkim@fr.com
patrick@fr.com

# EXHIBIT 2

Trials@uspto.gov                                                                    Paper 9
571-272-7822                                                    Date: September 27, 2023


UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

MASIMO CORPORATION,
Petitioner,

v.

APPLE INC.,
Patent Owner.

_____

IPR2023-00702
Patent D947,842 S


_____


Before KEN B. BARRETT, JOSIAH C. COCKS, and
ROBERT L. KINDER, *Administrative Patent Judges.*

COCKS, *Administrative Patent Judge.*


DECISION
Denying Institution of *Inter Partes* Review
*35 U.S.C. § 314*

IPR2023-00702
Patent D947,842 S

## I. INTRODUCTION

Petitioner, Masimo Corporation ("Petitioner"), filed a Petition (Paper 1, "Pet.") requesting *inter partes* review of U.S. Patent No. D947,842 S ("the '842 patent," Ex. 1001). Patent Owner, Apple Inc. ("Patent Owner") filed a Preliminary Response (Paper 8, "Prelim. Resp."). We have authority under 35 U.S.C. § 314, which provides that *inter partes* review may not be instituted unless the information presented in the Petition shows that "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a); *see also* 37 C.F.R § 42.4(a) ("The Board institutes the trial on behalf of the Director.").

Having considered the arguments and evidence presented in the Petition, for the reasons discussed below, we do not institute an *inter partes* review.

### A. Real Parties-In-Interest

Petitioner identifies itself, Masimo Corporation, as the only real party-in-interest. Pet. 4. Patent Owner identifies itself, Apple Inc., as the only real party-in-interest. Paper 4, 1.

### B. Related Matters

The parties identify *Apple Inc. v. Masimo Corporation and Sound United, LLC*, Case No. 1:22-cv-01377-MN (D. Del.) Pet. 5; Paper 4, 1.

### C. The '842 Patent and Claim

In an *inter partes* review requested in a petition filed on or after November 13, 2018, we apply the same claim construction standard used in

2

IPR2023-00702
Patent D947,842 S

district courts, namely that articulated in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). *See* 37 C.F.R. § 42.100(b) (2019).  With regard to design patents, it is well-settled that a design is represented better by an illustration than a description.  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc) (citing *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)).  Although preferably a design patent claim is not construed by providing a detailed verbal description, it may be "helpful to point out . . . various features of the claimed design as they relate to the . . . prior art."  *Id.* at 679–80; *cf. High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1314–15 (Fed. Cir. 2013) (remanding to the district court, in part, for a "verbal description of the claimed design to evoke a visual image consonant with that design").

The '842 patent is titled "Electronic Device."  Ex. 1001, code (54).  The claim recites "[t]he ornamental design for an electronic device, as shown and described."  *Id.* at code (57).  The '842 patent includes nine drawings.  Those drawings depict various bottom, top, front, rear, left side, and right side views of an electronic device.  *Id.*  Additionally, the '842 patent states "[t]he broken lines in the figures show portions of the electronic device and environment that form no part of the claimed design."  *Id.*

IPR2023-00702
Patent D947,842 S

Figures 2, 4, 5, and 6 of the '842 patent are reproduced below:



The drawings above show "a bottom rear perspective view" (Figure 2) of an electronic device, "a rear view" (Figure 4),  "a left side view"

4

IPR2023-00702
Patent D947,842 S

(Figure 5), and "a right side view" (Figure 6). *Id.* at code (57). We are mindful that, given the presence of multiple broken lines representing non-claimed aspects of the design, it is challenging to discern what does form part of the claimed design from the reproduced drawings of the '842 patent. We evaluate the claim further below in the context of the parties' respective positions on claim construction.

### 1. Petitioner's Proposed Claim Construction

Petitioner proposes the following by way of claim construction of the '842 patent:



FIG. 2                                    FIG. 5

Pet. 12.

The figures above depict Figures 2 and 5 of the '842 patent with "arc-shaped portions" (gray) of the electronic device surrounding a circular array of rectangles (blue). *Id.* at 11. Of note is the understanding that, in Petitioner's view, the two arc-shaped portions each include a "sidewall," but

5

IPR2023-00702
Patent D947,842 S

no part of those sidewalls' design is claimed. *Id.* at 13. Additionally, we understand Petitioner's view to be that there is no claimed portion of the design within the space or gap that appears between the two arc-shaped portions. *See id.* at 12–13.

Moreover, as a part of its position on claim construction, Petitioner contends that the '842 patent "includes numerous design elements that are functional and should thus be 'factored out' of the Challenged Claim's scope." Pet. 16 (citing *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293-94 (Fed. Cir. 2010)). Petitioner assesses the functionality of what it characterizes as: (1) "convex curvature" of the "arc-shaped portions" (*id.* at 16–23); (2) the "arrangement" of the "arc-shaped portions" (*id.* at 23–30); (3) the "arrangement of the claimed "rectangles'; (*id.* at 30–33); and (4) "[t]he overall circular shape of the claimed sensor design" (*id.* at 33–34). In our view, Petitioner regards essentially the entirety of the claimed design of the '842 as being "dictated by the function" such that there is seemingly no portion of the '842 patent that should be afforded the ornamentation protection offered by a design patent. Pet. 14–34. In attempting to make its case in that regard, Petitioner likens the '842 patent design to a commercial product, *e.g.*, the "Apple Watch Series 4" said to be covered by the '842 patent, and proceeds to discuss proposed functional aspects of that product. *Id.*

Petitioner also, at times, makes reference to two utility patents, U.S. Patent No. 10,627,157 ("the '157 patent") (Ex. 1024) and U.S. Patent No. 10,627,783 ("the '783 patent") (Ex. 1025) said to be associated with the design of the "Apple Watch Series 4," and discusses proposed functional aspects disclosed in those patents. *See, e.g.*, *id.* at 20–27.

IPR2023-00702
Patent D947,842 S

### 2. *Patent Owner's Proposed Claim Construction*

For its part, Patent Owner offers the following annotated (colorized) figures showing what we understand to be Patent Owner's claim construction:



**EX2001, ¶20 ((EX1001, Figs. 2 and 4 (annotated)).**

Prelim. Resp. 6.

The annotated figures depict Figures 2 and 4 of the '842 patent emphasizing that the figures show two arc shapes with an "outer circular shape" shown in blue, and portions interior to that circular shape shown in red and yellow. *See id.* at 5–6. Patent Owner characterizes the outer circular shape (in blue) as an "outermost continuous circle." *Id.* at 5. More particularly, Patent Owner sets forth that "[t]he physical position of the arc shapes, and their elongate proportions compared to the diameter of the outermost continuous circle, suggests a unified continuous circle, despite the arc shapes not touching each other." *Id.* at 9.

7

IPR2023-00702
Patent D947,842 S

Patent Owner contends that Petitioner's proposed construction ignores certain prominent features, as follows: "1) the outermost continuous circle, 2) the unified circular appearance provided by the arches, 3) the distance between the inner edges of the arcs and the outermost continuous circle that is relatively small and complementary to the proportions of the other features; and (4) the elongated four-sided shapes arranged to complement the curvature of the outermost continuous circle and the arch-shaped portions." *Id.* at 10.  Patent Owner also submits that "[e]ach of these features contribute to the unique concentric circular overall appearance, and are significant to the ordinary designer." *Id.* (citing Ex. 2001 ¶ 28).

Patent Owner also disputes Petitioner's view that aspects of the '842 patent's design should be "factored out" as being functional.  Prelim. Resp. 11.  For instance, Patent Owner contends the following:

> In an attempt to map the '842 patent's unique design to the prior art, Masimo relies on a construction that improperly "factored out" meaningful aspects of the design. Even if particular aspects of the design are associated with a functional purpose, they have ornamental contributions that cannot be excluded from the claimed design. Masimo's proposal is based on legal error. Additionally, Masimo improperly imports purported functionality from a commercial embodiment, ignoring that such functionality is not required or mentioned by the '842 patent, and ignoring the numerous alternative designs that can achieve the same or similar functionality.

*Id.*

Patent Owner proceeds to express at length its view as to why Petitioner's position discounting the design of the '842 patent as solely functional is incorrect, and that the '842 patent includes a claimed design with ornamental contributions.  Prelim. Resp. 11–19.

IPR2023-00702
Patent D947,842 S

### 3.   Discussion

#### a)   The Issue of Functional Elements in the '842 Patent

We turn first to the matter of Petitioner's proposed "factor[ing] out" of aspects of the claimed design under the guise of functionality.  As Petitioner observes, the Court of Appeals for the Federal Circuit has identified multiple factors that may be considered in assessing the functionality of a claimed design.  Pet. 11 (citing *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1329–30 (Fed. Cir. 2015); *Sport Dimension, Inc. v. Coleman Co., Inc.*, 820 F.3d 1316, 1322 (Fed. Cir. 2016)).  One central consideration is the "availability of alternative designs [, which is] an important—if not dispositive—factor in evaluating the legal functionality of a claimed design." *Ethicon*, 796 F.3d at 1329–30.

As Patent Owner points out (*see, e.g.*, Prelim. Resp. 15–19), the record before us is replete with various designs for the back or rear portions of various electronic devices, such as watches.  For instance, Patent Owner directs attention to Exhibits 2003 and 2004 showing designs for an "Aries AW80 watch" and a "P11 Plus watch." *Id.* at 15–17 (citing Ex. 2003, 1, 5–6, 11, 13–16; Ex. 2004, 1–3; Ex. 2001 ¶¶ 31–32).

IPR2023-00702
Patent D947,842 S

Depictions of images from Exhibits 2003 and 2004 are reproduced below:



Ex. 2003, 7 (above left); Ex. 2004, 3 (above right).[1]

The images reproduced above show, in-part, the rear face of the two types of watches noted above. The apparent electrode geometries and arrangements shown are, in our view, clearly distinct from the claimed design of the '842 patent. We, thus, agree with Patent Owner, and its declarant, Mr. Lance Gordon Rake, for essentially all the reasons offered, that there is a different overall appearance as between the rear faces reproduced above and the design of the '842 patent. *See* Prelim. Resp. 16–17; Ex. 2001 ¶¶ 25–30. Comparing the Aries AW80 and the P11 Plus watches with the claimed design strongly indicates that these are alternative electrode arrangements and designs.

Additionally, as also noted by Patent Owner and Mr. Rake (*see* Prelim. Resp. 17–18; Ex. 2001 ¶¶ 35–37), the '157 patent identified by

---

[1] The identified page numbering for these two exhibits is that appearing at the bottom right corner of each exhibit.

IPR2023-00702
Patent D947,842 S

Petitioner as being associated with the '842 patent (*see* Pet. 20–21, 24–27) includes various examples or embodiments of an electronic watch. Two of those examples from the '157 patent are reproduced below:



Figures 2C and 3 reproduced above each show an example of "an electronic watch that incorporates a set of electrodes." Ex. 1024, 2:34–37. We agree with Patent Owner and Mr. Rake that the appearance of the "single rear-facing electrode (Fig. 2C)" and the "half-circle and circular electrodes (Fig. 3)" are alternative designs presenting a visual appearance that is different or distinct from the '842 patent design. *See* Prelim. Resp. 17–18; Ex. 2001 ¶¶ 35–37.

That the record amply demonstrates that there are multiple alternative designs for the rear face or surface of an electronic device that present a distinct visual appearance is, in our view, significant in undermining Petitioner's assertion that the '842 patent design should be regarded largely, if not entirely, as including elements that are purely functional.

Furthermore, we share Patent Owner's view that Petitioner's reliance on the assessment of a commercial product that may be covered by the '842 patent, e.g., the Apple Watch Series 4, based on functionality disclosed as to

11

IPR2023-00702
Patent D947,842 S

that product's wireless charging, is problematic.  As Patent Owner notes, "nothing in the '842 patent tethers the claimed ornamental shapes to wireless charge components, or any other particular charging component" (*see* Prelim. Resp. 14–15), yet it is features pertaining to wireless charging that underscore the bulk of Petitioner's position on functional elements.  *See, e.g.*, Pet. 16–24.  There is considerable tension in Petitioner's assessment that leans on the functionality of the features of a commercial product rather than evaluation based on the claimed design of the '842 patent.  *See Berry Sterling Corp. v. Pescor Plastics, Inc.,* 122 F.3d 1452, 1455 (Fed. Cir. 1997) ("[T]he court cannot use the limitations of the commercial embodiment of the underlying article of manufacture to impose limitations on the scope of the design patent.")

Further still, we observe that even if some individual elements of the '842 patent may have some functional purpose, Petitioner's piecemeal assessment of potentially functional aspects of individual elements of the design does not, in our view, adequately account for the requirement to evaluate the "overall appearance" of a design, i.e., "the claimed design viewed in its entirety."  *See Ethicon,* 796 F.3d at 1329 ("[w]e have also instructed that the overall appearance of the article—the claimed design viewed in its entirety—is the basis of the relevant inquiry, not the functionality of elements of the claimed design viewed in isolation"); *see also Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1321 (Fed. Cir. 2016) ("While we agreed that certain elements of the device were functional, their functionality did not preclude those elements from having protectable ornamentation.")

IPR2023-00702
Patent D947,842 S

Accordingly, we have considered Petitioner's argument pertaining to potential functionality of aspects of the '842 patent's claimed design. We, however, decline to "factor out," in the manner proposed by Petitioner, elements of the '279 design that contribute to the overall appearance of that design.

b) *Claim Construction of the '842 Patent*

The parties present some level of similarity in their respective constructions of the '842 patent, e.g., that the claimed design incorporates two arc-shaped portions residing on a rear face of an electronic device and a central circular array of rectangles. We discern, however, that one point of disagreement centers on the proposed presence of an "outermost continuous circle" as is advanced by Patent Owner. *See* Prelim. Resp. 5. Careful review of the figures of the '842 patent, particularly Figure 4, does appear to bear out the conclusion that the arc-shaped portions do incorporate a continuous circle as urged by Patent Owner.[2] Additionally, we question Petitioner's assertions that the "sidewall" of the arc-shaped portions does not appear to be a claimed feature. Petitioner's own claim construction reproduced above suggests that, with respect to the arc-shaped portions said

---

[2] We note that Patent Owner makes reference to Exhibit 2002 as constituting "supplemental drawings filed with the USPTO on December 14, 2021." Prelim. Resp. 5 n.1. As the '842 patent issued on April 5, 2022, it is not apparent why the supplemental drawings do not appear in the patent. We note that the supplemental drawings, specifically Figure 4 (*see* Ex. 2002, 4), are clearer in showing that the noted design includes an outermost continuous circle. Regardless, we conclude that it is also sufficiently apparent that the drawings of the '842 patent, e.g., Figure 4, show such an outermost continuous circle.

13

IPR2023-00702
Patent D947,842 S

by Petitioner to be part of the '842 patent claim and shown in gray (*see* Pet.

11), there is gray shading of the sidewalls of the arc-shaped portions.

Accordingly, we adopt the claim construction that is advanced by

Patent Owner as better supported by the '842 patent. *See, e.g., supra*

§ I.C.2. We note, however, that even if we were to adopt Petitioner's claim

construction, the ultimate outcome of this proceeding would be the same.

That is so because, for reasons discussed below, we conclude that Patent

Owner has identified sufficient deficiencies in Petitioner's proposed grounds

that preclude institution of *inter partes* review irrespective of any claim

construction.

### D.  Evidence

Petitioner relies on the following references:

| Name | Reference | Exhibit(s) |
|------|-----------|------------|
| Paulke | PCT Application Publication No. WO 2017/165532 A1 published Sept. 28, 2017 | 1006 |
| Yuen | U.S. Patent Application Publication No. 2019/00196411 A1 published June 27, 2019 | 1007 |
| Fong | U.S. Design Patent No. D827,831 S issued Sep. 4, 2018 | 1008 |
| Bushnell | U.S. Patent Application Publication No. 2017/0086743 A1 published Mar. 20, 2017 | 1009 |
| Mendelson | U.S. Patent No. 6,801,799 B2 issued Oct. 5, 2004 | 1011 |

In support of its arguments, Petitioner also relies on the Declarations

of Joel Delman (Ex. 1003) and R. James Duckworth, Ph.D. (Ex. 1014). In

opposing the Petition, Patent Owner relies on the Declaration of Lance

Gordon Rake (Ex. 2001).

IPR2023-00702
Patent D947,842 S

### E. Proposed Grounds of Unpatentability

Petitioner asserts the following grounds of unpatentability:

| Claims Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 1 | 103[3] | Paulke, Mendelson |
| 1 | 103 | Yuen, Mendelson, Bushnell |
| 1 | 103 | Fong, Mendelson, Bushnell |

## II. ANALYSIS

### A. Principles of Law

"In addressing a claim of obviousness in a design patent, the ultimate inquiry is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved." *Apple, Inc. v. Samsung Elec. Co.*, 678 F.3d 1314, 1329 (Fed. Cir. 2012) (internal quotation and citations omitted); *see also High Point Design*, 730 F.3d at 1313 ("The use of an 'ordinary observer' standard to assess the potential obviousness of a design patent runs contrary to the precedent of this court and our predecessor court, under which the obviousness of a design patent must, instead, be assessed from the viewpoint of an ordinary designer."). This obviousness analysis generally involves two steps: first, "one must find a single reference, a something in existence, the design characteristics of which are basically the same as the claimed design"; second, "once this

---

[3] The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284, 287–88 (2011), amended 35 U.S.C. § 103 effective on March 16, 2013. Neither party argues, at least at this stage of the proceeding, that the outcome of this case would differ based on applying the pre-AIA or post-AIA versions of this law.

IPR2023-00702
Patent D947,842 S

primary reference is found, other references may be used to modify it to create a design that has the same overall visual appearance as the claimed design." *High Point Design*, 730 F.3d at 1311 (internal quotation and citations omitted).

In performing the first step, we must "(1) discern the correct visual impression created by the patented design as a whole; and (2) determine whether there is a single reference that creates basically the same visual impression." *Id.* at 1312 (internal quotation and citations omitted). In the second step, the primary reference may be modified by secondary references "to create a design that has the same overall visual appearance as the claimed design." *Id.* at 1311 (internal quotation and citations omitted). However, the "secondary references may only be used to modify the primary reference if they are 'so related [to the primary reference] that the appearance of certain ornamental features in one would suggest the application of those features to the other.'" *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996) (quoting *In re Borden*, 90 F.3d 1570, 1575 (Fed. Cir. 1996)).

When evaluating prior art references for purposes of determining patentability of ornamental designs, the focus must be on actual appearances and specific design characteristics rather than design concepts. *In re Harvey*, 12 F.3d 1061, 1064 (Fed. Cir. 1993); *see also Apple, Inc. v. Samsung Elec. Co.*, 678 F.3d at 1332 ("Rather than looking to the 'general concept' of a tablet, the district court should have focused on the distinctive 'visual appearances' of the reference and the claimed design.").

We analyze the asserted grounds with the above-noted principles in mind.

16

IPR2023-00702
Patent D947,842 S

## B. *The Designer of Ordinary Skill*

In connection with the designer of ordinary skill, Petitioner contends the following:

> For purposes of this Petition, a designer of ordinary skill in the art related to the D'842 Patent ("DOSA") would have had an undergraduate or graduate degree in industrial/product design, along with at least two years of relevant work experience in the field of industrial/product design of portable electronic devices. EX1003 ¶26. A DOSA would not need to be familiar with electrical, biomedical, or other advanced technical concepts employed by such devices. *Id.* ¶27. Rather, the DOSA would consult or collaborate with a person of ordinary skill in the art ("POSITA") regarding concepts outside of the DOSA's expertise. *Id.* Here, a POSITA would have had at least a Bachelor or Master of Science degree in electrical or biomedical engineering, or a comparable engineering discipline, in combination with at least two years of related work experience involving wearable devices for noninvasively measuring health parameters. EX1014 ¶28.

Pet. 35.

Patent Owner contends the following: "[f]or the purposes of this case, a Designer of Ordinary Skill in the Art ('DOSA') would have a degree in Industrial Design or Mechanical Engineering, and at least two years of professional experience creating Industrial Designs of consumer products." Prelim. Resp. 3 (citing Ex. 2001 ¶ 19).

In assessing the parties' views as to level of skill of a designer of ordinary skill in the art, we conclude that they are effectively the same. Indeed, the parties do not identify any material difference between the parties' proposed assessments. Nevertheless, for clarity and completeness, we adopt Petitioner's proposed assessment. We note, however, that even if

IPR2023-00702
Patent D947,842 S

we were to adopt Patent Owner's assessment, the outcome of this Decision would be the same.

### C. Proposed Obviousness Ground of Unpatentability Based on Paulke and Mendelson

Petitioner contends that the claimed design of the '842 patent would have been obvious in view of Paulke and Mendelson.  Pet. 44–66.

### 1. Overview of Paulke

Paulke is titled "Biosensor Module for Band Attachment."  Ex. 1006, code (54).  Paulke's Abstract is reproduced below:

> A biosensor module is provided for detecting one or more biosignals at a wearer's ventral wrist. The module includes a housing having a wrist-facing inner surface and a non-wrist facing outer surface, both formed of an insulative material, housing one or more processing units between the inner and outer surfaces; and one or more biosensors protruding from the wrist-facing inner surface and electronically coupled to the one or more processing units within the housing. An assembly is also provided, including a support member including a portion configured to receive a wrist band; and a biosensor module including a housing having a wrist-facing inner surface and a non-wrist-facing outer surface, the housing being curved in the wrist-facing direction and housing one or more processing units between the inner and outer surfaces, and one or more biosensors protruding from the wrist-facing inner surface and electronically coupled to the one or more processing units.

*Id.* at code (57).

IPR2023-00702
Patent D947,842 S

Paulke's Figures 1F and 1G are reproduced below:



FIG. 1F

FIG. 1G

Figures 1F and 1G above "illustrate an exemplary biosensor module in accordance with some embodiments." *Id.* at 3:28–29.

### 2. Overview of Mendelson

Mendelson is titled "Pulse Oximeter and Method of Operation." Ex. 1011, code (54). Mendelson's Abstract is reproduced below:

> A sensor for use in an optical measurement device and a method for non-invasive measurement of a blood parameter. The sensor includes sensor housing, a source of radiation coupled to the housing, and a detector assembly coupled to the housing. The source of radiation is adapted to emit radiation at predetermined frequencies. The detector assembly is adapted to detect reflected radiation at least one predetermined frequency and to generate respective signals. The signals are used to determine the parameter of the blood.

*Id.* at code (57).

19

IPR2023-00702
Patent D947,842 S

Mendelson's Figure 7 is reproduced below:



Figure 7

Figure 7 above shows an "optical sensor" according to Mendelson's invention. *Id.* at 8:37–38. Sensor 10 includes light sources 12a, 12b, 12c and an array of detectors (photodiodes) including "'far' detector 16" and "'near' detector 18" in concentric rings. *Id.* at 9:22–34.

### 3. Discussion—Paulke and Mendelson Based Ground

Petitioner urges that Paulke is a proper primary, or *Rosen*,[4] reference because "it is a single prior art reference with basically the same design characteristic as the claimed design." Pet. 41 (citing Ex. 1006, Figs. 1–2; Ex. 1003 ¶¶ 58–71).

---

[4] In the context of design patent law, a proper primary, or *Rosen*, reference is "something in existence, the design characteristics of which are basically the same as the claimed design." *In re Rosen*, 673 F.2d 388, 391 (CCPA 1982).

IPR2023-00702
Patent D947,842 S

Patent Owner disagrees.  In that regard, Patent Owner contends that Petitioner has not shown that Paulke is a proper *Rosen* reference because there are multiple apparent differences between Paulke and the claimed design such that Paulke is not a "single reference that creates basically the same visual impression."  Prelim. Resp. 22 (citing *Levitation Arts, Inc. v. Flyte LLC*, PGR2018-00073, Paper 14, 16–22 (PTAB, Jan. 17, 2019); *Dorman Products Inc. v. PACCAR Inc.*, IPR2014-00542, Paper 10, 5 (PTAB Sept. 5, 2014); *In re Harvey*, 12 F.3d 1061, 1063 (Fed. Cir. 1993).  We reproduce below Figure 4 of the '842 patent (left) alongside Paulke's Figure 1G (right):



FIG. 4    FIG. 1G

The figures above show views of the rear or bottom face of each of the electronic device of the '842 patent and the Paulke's biosensor.  Ex. 1001, code (57); Ex. 1006, 14:25.  At the outset, it is notable that while the claimed design of the '842 patent includes multiple (eight) inner rectangles

IPR2023-00702
Patent D947,842 S

arranged in a circular shape, Paulke's figures, as evidenced by Figure 1G, are entirely devoid of any corresponding features. Petitioner attempts to account, in some fashion, for a rectangle component in focusing on Paulke's Figure 2A, which appears to show a singular rectangular photodiode structure that is within an inner portion of Paulke's biosensor. *See* Pet. 52–53; Ex. 1006, Fig. 2A.

We agree with Patent Owner that Paulke, when properly viewed as a complete article embodying the design, including the external elements, does not depict such a rectangle as being visible with any external components. *See* Prelim. Resp. 22; *see also id.* at 26–27 ("[t]he purported photodiode, even if present, would have been **hidden behind** Paulke's depicted openings through sensor 124" (citing Ex. 2001 ¶¶ 54–55)). Petitioner proceeds, however, to extrapolate from that apparent interior rectangular structure an altered version of Paulke's Figure 1G that is said be "Composite with FIG. 2A." Pet. 55. We find Petitioner's approach in that regard as unavailing in establishing in Paulke any semblance of a visual impression of a rectangle appearing in conjunction, for instance, with Paulke's Figure 1G. In that regard, we agree with Patent Owner that Petitioner does not "explain[] why a DOSA would have understood Paulke to have an appearance of a rectangular shape that deviates from Paulke's illustrated appearance." Prelim. Resp. 28. Moreover, and significantly, the presence of any interior circular arrangement of rectangular shaped objects is entirely absent from Paulke.

Furthermore, although both figures include a central portion with arc-shaped portions, there are some significant differences in the appearance of those portions. For instance, as noted by Patent Owner (*see, e.g.*, Prelim.

IPR2023-00702
Patent D947,842 S

Resp. 30–33), the arc-shaped portions of the '842 patent design are thinner than those of Paulke's Figure 1G, and the spacing of the arc-shaped portions in the '842 patent is noticeably smaller than in Paulke. That enlarged spacing in Paulke eliminates any appearance of an outer continuous circle formed by the outer ring of the arc-shaped portions, which is present in the '842 patent design. In that respect, we find credible Patent Owner's argument that "the Paulke opposed shapes have the appearance of two separate features rather than the '842 patent's unified circular appearance of arches." Prelim. Resp. 32 (citing Ex. 2001 ¶¶ 63–65). Additionally, the orientation of the arc-shaped portions in Paulke is rotated 90 degrees from that of the '842 patent.[5]

In our view, Patent Owner credibly argues that the above-noted differences establish sufficient visual dissimilarities to remove Paulke from being considered a proper *Rosen* reference.

Nevertheless, even were we to assume that Paulke is a proper *Rosen* reference, for the reasons discussed below, we do not find persuasive that a designer of ordinary skill in the art would have made Petitioner's proposed modifications to Paulke's biosensor module, so as to arrive at the design of the '842 patent.

Petitioner relies on Mendelson's Figure 7 as the basis for importing an arrangement of rectangles onto Paulsen's biosensor. Petitioner takes the position that Mendelson is "so related" to Paulke so as to constitute proper secondary references. *See, e.g.*, Pet. 57–59. The apparent basis for that position is such statements as Mendelson "discloses a suitable sensor for

---

[5] We are mindful, however, that both parties analyze Paulke's Figure 1G in a rotated configuration. *See, e.g.*, Pet. 48; Prelim. Resp. 36.

IPR2023-00702
Patent D947,842 S

Paulke's design" and "Paulke expressly suggests replacing its central circular biosensor with a suitable oxygen saturation sensor." *Id.* Patent Owner disagrees with Petitioner and contends that Petitioner's reliance on a combination of Paulke and Mendelson does not focus on ornamental features or aspects of the references and instead impermissibly delves into reasons for combining the teachings based on uses of Mendelson's sensor. Prelim. Resp. 38–39. In particular, Patent Owner argues the following:

> Masimo relies on Paulke's central circular biosensor 120 and Mendelson's circularly-shaped sensor as evidence that Mendelson is "so related" to Paulke's design. Pet., 57-58 ("Mendelson is so related to Paulke ***because it discloses a suitable sensor*** for Paulke's design" and "Paulke suggests replacing its central circular biosensor with a suitable oxygen saturation sensor."). In doing so, Masimo improperly focuses on Mendelson's ***use*** as a sensor rather than the visual ***appearance*** of Mendelson and Paulke. *In re Sung Nam Cho*, 813 F.2d 378, 382 (Fed. Cir. 1987) (reversing Board's obviousness determination that analyzed design patent "as if it were the subject of an application for a utility patent") ("[a]lthough it may have been obvious, from a utility stand point, to place cylindrical depressions in crown type caps and to include flaps in the depressions, it does not follow that Cho's design was obvious"); *Termax*, IPR2022-00106, Paper 7 at 29.

*Id.*

We find persuasive Patent Owner's arguments, and the authority underlying those arguments, as casting doubt on the propriety of the reasons for combining Mendelson with Paulsen, which are divorced from consideration of ornamental or visual appearance.

Furthermore, Petitioner seemingly acknowledges that there are at least some differences with respect to the "spacing, shape, size, or dimensions of the arc-shaped portions of Paulke . . . and the claimed design," but concludes

24

IPR2023-00702
Patent D947,842 S

that such differences between the design of Paulke and the claimed design would have been "a routine change" to a designer of ordinary skill in the art. Pet. 63–64 (citing Ex. 1006, 15:22–23; Ex. 1003 ¶ 78). According to Petitioner, a designer of ordinary skill in the art would have been motivated to make various modifications to Paulke's biosensor module, for instance: (1) "to extend the ends of [Paulke's] arc-shaped electrodes closer together to maximize the arc-shaped electrodes' surface area for contacting the user's skin in use"; (2) ensure that Paulke's electrodes "were shaped to avoid interference between the charging coils of the device and its charger; and (3) to make Paulke's arc-shaped electrodes include certain "chamfered and vertical edges" as in the '842 patent because such edges were a known design for "providing improved user comfort." *Id.* at 64 (citing various portions of Exs. 1006, 1024, 1044; Ex. 1003 ¶ 78; Ex. 1014 ¶¶ 82, 84).

As Patent Owner notes, essentially all of the multiple modifications to Paulke proposed by Petitioner are based on "purported utility considerations" rather than being based on ornamental design. *See* Prelim. Resp. 44–45. We agree with Patent Owner that such rationales for altering the appearance of Paulke's biosensor module are in tension with principles underscoring design patent law, in that, when assessing obviousness of a claimed design, "the focus must be on appearances and not uses." *See id.* (quoting *In re Harvey*, 12 F.3d 1061, 1064 (Fed. Cir. 1993)). Moreover, we simply find unpersuasive Petitioner's view as to the types and forms of modifications of Paulke's biosensor module appearance that would emerge to a designer of ordinary skill in the art.

IPR2023-00702
Patent D947,842 S

We reproduce below Petitioner's illustrations of what it proposes as "Modified" versions of Paulke's figures:



Pet. 65.

The images above represent Petitioner's proposed creation of a biosensor module appearance based on modification to Paulke. *See id.* at 52. In our view, Petitioner simply does not adequately explain how the above images would have been revealed to a designer of ordinary skill in the art in modifying the figures shown in Paulke. The above images appear, to us, as a matter of hindsight, to be manufactured to simulate the appearance of the claimed design of the '842 patent rather than adhering to a design that would have been conveyed to a designer of ordinary skill in the art based on modification to Paulke's biosensor module. We note, in particular, that the proposed central, circular array of rectangles does not appear to be derived from visual aspects of either Paulke or Mendelson, as the illustrated number of rectangles, and their overall appearance, are different than then any depiction in either reference. Moreover, Petitioner's created images still do not account for the appearance of a continuous outer circle, as the images

IPR2023-00702
Patent D947,842 S

clearly show substantial gaps, on each side, between the upper and lower arc-shaped portions.

Accordingly, having considered Petitioner's proposed ground of based on Paulke (and the proffered supporting evidence), we conclude that it is inadequate to establish a reasonable likelihood of demonstrating the unpatentability of the claimed design of the '842 patent.

### D.   Proposed Grounds of Unpatentability Based on Yuen, Mendelson, and Bushnell

Petitioner contends that the claimed design of the '842 patent would have been obvious in view of Yuen, Mendelson, and Bushnell.  Pet. 66–87.

### 1.   Overview of Yuen

Yuen is titled "Smartwatch Assemblies Having Electrocardiogram Sensors Photoplethysmography Sensors and Blood Pressure Monitors and Related Methods."  Ex. 1007, code (54).  Yuen's Abstract is reproduced below:

> A smartwatch assembly including an outer frame portion and an insert portion removably insertable into the outer frame portion. The insert portion may include a casing, a controller disposed within the casing, an electrocardiogram sensor operably coupled to the controller, the electrocardiogram sensor having at least two electrodes configured to be placed in contact with a user's skin, a photoplethysmography sensor operably coupled to the controller and oriented to face the user's skin, and a display operably coupled to the controller and configured to show data related to measurements taken by the electrocardiogram sensor and the photoplethysmography sensor. The photoplethysmography sensor may detect trigger events in a heart function of the user, and, in response to the detection of a trigger event, the electrocardiogram sensor may initiate an electrocardiogram measurement of the user.

IPR2023-00702
Patent D947,842 S

*Id.* at code (57).

Yuen's Figures 1B (partial) and 3A are reproduced below:



The partial Figure 1B above shows a "back perspective view" of a smartwatch assembly. *Id.* ¶ 9.[6]  Figure 3A reproduced above on the right shows a "perspective view of insert portion of a smartwatch assembly" of Yuen. *Id.* ¶ 11.  As shown and numbered in Figure 3A, and as shown (but not numbered in Fig. 1B), Yuen's smartwatch assembly includes two electrodes 130, 132, each with a "general half-moon shape." *Id.* ¶ 35.

---

[6] In a similar manner as presented in the Petition (*see, e.g.*, Pet. 57), Yuen's Figure 1B is reproduced so as to focus on the appearance of watch body 102 and omits further depiction of first and second watch band portions 104 and 106 (reference characters not present in the reproduced portion of Yuen's Figure 1B).

28

IPR2023-00702
Patent D947,842 S

### 2. *Overview of Bushnell*

Bushnell is titled "Sensing Contact Force Related to User Wearing an Electronic Device." Ex. 1009, code (54). Bushnell's Abstract is reproduced below:

A wearable electronic device includes a body, a housing component, a band operable to attach the body to a body part of a user, and a force sensor coupled to the housing component. The force sensor is operable to produce a force signal based on a force exerted between the body part of the user and the housing component. A processing unit of the wearable electronic device receives the force signal from the force sensor and determines the force exerted on the housing component based thereon. The processing unit may use that force to determine a tightness of the band, determine health information for the user, adjust determined force exerted on a cover glass, and/or to perform various other actions.

*Id.* at code (57).

Bushnell's Figures 1A and 2A are reproduced below:



*FIG. 1A*                    *FIG. 2A*

Figure 1A above shows a wearable electronic device. *Id.* ¶ 21.

Figure 2A above shows a cross-sectional view of a wearable electronic

IPR2023-00702
Patent D947,842 S

device.  *Id.* ¶ 23.   Wearable electronic device 100 includes main body 101,
housing component 104, and sensor windows 105.  *Id.* ¶¶ 37–38.

### 3.   *Discussion—Yuen, Mendelson, and Bushnell Based Ground*

As with Paulke, Petitioner contends that Yuen is a proper primary or
*Rosen* reference because "its design characteristics are basically the same as
the claimed design" and that "any differences between Yuen and the D'842
Patent do not change the design' overall visual similarity." *Id.* at 66–67
(citing Ex. 1007, Figs. 1, 3–4, Ex. 1003 ¶¶ 80–93).  Patent Owner has a
different view and contends that Yuen is not a proper *Rosen* reference.
Prelim. Resp. 26.

We reproduce Figure 4 of the '842 patent alongside a portion of
Yuen's Figure 1B:



FIG. 4

30

IPR2023-00702
Patent D947,842 S

The figures above show views of the rear or back face of each of the electronic device of the '842 patent (let) and the sensor arrangement on Yuen's smartwatch (right). Ex. 1001, code (57); Ex. 1007 ¶ 13.  We are mindful of Petitioner's contention that a "primary reference and [the] claimed design can have differences because, if they had to be identical, 'no obviousness analysis would be required.'"  Pet. 44–45 (quoting *MRC Innovations, Inc. v. Hunter Mfg.*, 747 F.3d 1326, 1332–33 (Fed. Cir. 2014). Yet, here the differences in appearance as between the claimed design and that of Yuen's smartwatch are not minor in character but are, in our view, substantial.

To that end, we agree with Patent Owner that "the inner circular shape formed by four-sided shapes is central to the concentric circle overall appearance of the claimed design" and that "any similar aspect is entirely lacking from Yuen."  Prelim. Resp. 46.  In conjunction with that agreement, we share Patent Owner's puzzlement (*see, e.g., id.* at 49–51) as to the basis for Petitioner's version of Yuen's Figure 4 "Composite" that depicts a single blue interior square seemingly without adequate foundation in Yuen's disclosure.  *See* Pet 73.  Nevertheless, in our view, irrespective of Petitioner's "Composite" figure, the lack of an analogous circular array of square shaped interior components in Yuen is a substantial distinction in visual appearance as compared to the claimed design.  We note, as does Patent Owner, that to recreate the '842 patent design, including a circular array of rectangles, the Petition "relies on layers of modification that significantly change Yuen's appearance."  *See* Prelim. Resp. 46.

We further agree with Patent Owner's characterization of Yuen's design as presenting "asymmetrical and squarish shapes opposed shapes that

IPR2023-00702
Patent D947,842 S

provide a markedly different overall appearance from the '842 patent's outer circular shape." Prelim. Resp. 47–48. Indeed, we note that Petitioner, itself, acknowledges that Yuen's sensor has an "asymmetrically located" sensor. *See* Pet. 53. As compared with the symmetrical appearance of the arch-shaped features of the '842 patent, Yuen's asymmetrical appearance creates visual distinction.

We also agree with Patent Owner that Yuen's "opposed shapes" on the back of its smartwatch are not "arch-shaped" as in the claimed design, and instead "have a square, off-center cut-out." Prelim. Resp. 53–54. We also agree that they "are meaningfully wider than the claimed design's elongated thin arch elements," with "ends [that] are separated by a relatively large gap. *Id.* Additionally, Yuen's opposed shapes appear thicker than the arch-shaped portions of the '842 patent and such thickness is not uniform over the extent of the shapes. We find credible Patent Owner's arguments, and the testimony of its declarant, Mr. Rake, that Yuen's design does not convey to a designer of ordinary skill the appearance of concentric circles with a "continuous outer circular shape" that is presented by the '842 patent design. *See, e.g., id.* at 55–59; Ex. 2001 ¶¶ 99–103.

In sum, we agree with Patent Owner and Mr. Rake that the rear of Yuen's smartwatch presents a configuration of opposed shapes that are asymmetric with squarish ends of non-uniform thickness, and convey a different visual appearance than the arch-shaped (or arc-shaped) portions that present symmetric concentric circles in the '842 patent. Because those respective shapes are different in position, shape, size and relationship, we conclude that they are not reasonably viewed as having a similar overall appearance. As a result, we conclude that the design are visual dissimilar

IPR2023-00702
Patent D947,842 S

such that Yuen is not "basically the same" as the claimed design of the '842 patent so as to be regarded as a proper *Rosen* reference. *See In re Rosen*, 673 F.2d at 391.

Nevertheless, here too, even were we to assume that Yuen is a proper *Rosen* reference, for the reasons discussed below, we do not find persuasive that a designer of ordinary skill in the art would have made Petitioner's proposed modifications to Yuen's smartwatch, so as to arrive at the design of the '842 patent.

Petitioner contends that a designer of ordinary skill in the art would have been motivated to combine various aspects of Mendelson's sensor and Bushnell's electronic device with the sensor arrangement of Yuen's smartwatch to allegedly arrive at the design pf the '842 patent. *See* Pet. 60–75. According to Petitioner, Mendelson and Bushnell are each "so related" to Yuen so as to constitute proper secondary references. *See, e.g.*, Pet. 74, 78. Petitioner proceeds to select various aspects of each of Mendelson and Bushnell and amalgamates those various aspects to purportedly arrive at the design of the '842 patent.

Patent Owner disagrees that Mendelson and Bushnell are considered proper secondary references and disputes a designer of ordinary skill would have found the claimed design of the '842 patent based on a combination of Yuen, Mendelson, and Bushnell. *See* Prelim. Resp. 60–66. For instance, in connection with Mendelson, Patent Owner contends that Mendelson and Yuen "have virtually no overlap in appearance." *Id.* at 60. With respect to Bushnell, Patent Owner also contends that the reference lacks various "visual elements" present in Yuen. *Id.* at 63.

IPR2023-00702
Patent D947,842 S

Figures on which Petitioner relies from each of Yuen, Mendelson, and Bushnell are reproduced below:



Yuen's Figure 1B (partial) above shows a "back perspective view" of a smartwatch assembly. Ex. 1007 ¶ 9. Mendelson's Figure 7 above shows an "optical sensor" according to Mendelson's invention. Ex. 1011, 8:37–38. Bushnell's Figure 1A above shows a wearable electronic device. Ex. 1009 ¶ 21.

We agree with Patent Owner that as is evident from the figures above, there are marked differences in visual appearance as between the assemblies of the three references. To that end, given the visual dissimilarity between Mendelson and Bushnell's sensors with Yuen's sensor, it is difficult to conclude that those secondary references are "so related" such that their ornamental features would suggest application of those features to Yuen. *See Durling*, 101 F.3d at 103. Moreover, Petitioner's piecemeal selection of various components and aspects to somehow construct an amalgamation of

34

IPR2023-00702
Patent D947,842 S

those teachings that is said to arrive at the '842 patent design is tenuous.  We reproduce below images created by Petitioner:



Pet. 86–87.

According to Petitioner, the images above provide the visual appearance of a sensor that allegedly results from the teachings of Yuen when combined with the secondary references of Mendelson and Bushnell. *Id.*  The stark visual distinction of Petitioner's created image and the appearance of any assembly or sensor of Yuen, Mendelson, and Bushnell is notable.  In our view, Petitioner's created images simply are not adequately tethered to what a designer of ordinary skill would reasonably have taken from the combined teachings of those references and, thus, are an improper hindsight creation.  As was the case with the Paulke ground discussed above, neither Petitioner, nor its declarants (Exs. 1003, 1014), adequately explains that the above-created image results from the combined teachings of the references instead of merely being an illustration that mimics the design

IPR2023-00702
Patent D947,842 S

characteristics of the '842 patent. We again note that the proposed central, circular array of rectangles does not appear to be derived from visual aspects of any of Yuen, Mendelson, or Bushnell as the illustrated number of rectangles, and their overall appearance, are different than then any depictions in any of those references. Moreover, here too, Petitioner's created images still do not account for the appearance of a continuous outer circle, as the image clearly shows substantial gaps, on each side, between the upper and lower arc-shaped portions.

Accordingly, we have considered the Petition and its accompanying evidence in connection with the ground based on Yuen (including Petitioner's declarant testimony (Exs. 1003, 1014)) alongside Patent Owner's arguments and evidence. On this record, we find more credible Patent Owner's view (and its declarant (Ex. 2001)) that the Petition does not adequately account for the design of the '842 patent based on the teachings of Yuen, Mendelson, and Bushnell. We conclude that the ground based on Yuen is inadequate to establish a reasonable likelihood of demonstrating the unpatentability of the claimed design of the '842 patent.

### E. Proposed Grounds of Unpatentability Based on Fong, Mendelson, and Bushnell

Petitioner contends that the claimed design of the '842 patent would have been obvious in view of Fong, Mendelson, and Bushnell. Pet. 87–104.

### 1. Overview of Fong

Fong is titled "Health Monitoring Wrist Wearable." Ex. 1008, code (54). Fond claims "the ornamental design of a health monitoring wrist wearable." *Id.* at code (57). Fong's Figures 2 and 5 are reproduced below:

IPR2023-00702
Patent D947,842 S



Figure 2 above shows a left perspective view of a health monitoring wrist wearable. *Id.* Figure 5 shows a left side elevation view of a health monitoring wrist wearable. *Id.*

### 2. Discussion—Fong, Mendelson, and Bushnell Based Ground

Petitioner contends that Fong is a proper primary or *Rosen* reference because, in Petitioner's view, "its design characteristics are basically the same as the claimed design." *Id.* at 87.

Patent Owner opposes Petitioner's contention urging, in part, that Fong has a "vastly" or "markedly different overall appearance" as compared to the claimed design. Prelim. Resp. 69–70. Patent Owner also contends

IPR2023-00702
Patent D947,842 S

that Petitioner fails to address "prominent differences between the claimed design and Fong." *Id.* at 70.

We reproduce Figure 4 of the '842 patent alongside Figure 4 of Fong:



Figure 4 of the '842 patent above (left) shows a rear view of an electronic device. Ex. 1001, code (57). Figure 4 of Fong (right) shows a "rear elevation view" of a health monitoring wrist wearable. Ex. 1008, code (57). We agree with Patent Owner that where the claimed design includes "an inner circular shape formed by the arrangement of multiple elongated four-sided shapes," Fong, instead, includes a "central rectangle shape and a circular array of four circles." Prelim. Resp. 70–72. Those respective figures include design characteristics that appear to lack visual similarity. As a result, we conclude that Petitioner does not adequately explain the basis

IPR2023-00702
Patent D947,842 S

for the statement that "Fong and the claimed design include one or more central rectangles with the same basic design characteristics." Pet. 95.

We further find persuasive Patent Owner's view that, although both figures show what appear to be upper and lower opposed arc-shaped (or arch-shaped) portions, there is visual disparity as between those portions. *See* Prelim. Resp. 73–74. In particular, we agree that "Fong depicts wide, opposed shapes . . . separated from one another at the ends by a significant gap that provides an appearance of opposed, divided shapes." *Id.* at 74 (citing Ex. 2001 ¶ 122–125). Fong also includes two circular elements positioned between end each of the opposed shapes. We also agree that "Fong's opposed shapes spaced apart from one another not only by a large space, but by additional elements interposed in this space that are significant to Fong's different appearance." *Id.* at 75.

Furthermore, we agree with Patent Owner that Fong lacks the visual impression of inner and outer concentric circles with an outer "continuous circle" as is present in the '842 patent design. *Id.* at 43–44. Also, we discern that there is visual distinction in thickness, size and spacing of Fong's opposed shapes as compared with the arc-shaped portion in the '842 patent. As a result, we share Patent Owner's view that Fong does not create "basically the same visual impression" and does not reasonably constitute a proper primary or *Rosen* reference. *See id.* at 79 (quoting *High Point Design*, 730 F.3d at 1314).

In any event, even assuming that Fong is a proper *Rosen* reference, we are not persuaded that the series of modifications that Petitioner proposes to Fong based, in-part, on Mendelson and Bushnell (*see* Pet. 97–100) are what

39

IPR2023-00702
Patent D947,842 S

would have been taught to a designer of ordinary skill in the art.  We
reproduce below Fong's Figure 4 and Bushnell's Figure 1A:



Figure 4 of Fong above shows a "rear elevation view" of a health
monitoring wrist wearable.  Ex. 1008, code (57).  Bushnell's Figure 1A
above shows a wearable electronic device.  Ex. 1009 ¶ 21.  Based in part on
the above figures, Petitioner contends that a designer of ordinary skill in the
art would have derived the following images:

IPR2023-00702
Patent D947,842 S



Pet. 103.

According to Petitioner, upon combining Fong and Bushnell a sensor appearing as the images above is created that allegedly has "the same overall visual appearance as the claimed design" of the '842 patent. *Id.* Yet, Petitioner does not explain persuasively why the proposed central, circular array of rectangles emerges but does not appear to be derived from visual aspects of any of Yuen, Mendelson, or Bushnell. In that regard, the illustrated number of rectangles, and their overall appearance, are notably different than any structures depicted in any of those references and, thus, an improperly manufactured hindsight creation.

Petitioner additionally provides little in the way of persuasive reasoning as to why the modified arc-shaped portions as they appear in the image above emerge from any combination of Fong, Mendelson, and Bushnell. Moreover, in a familiar refrain, Petitioner's created images again do not account for the appearance of a continuous outer circle, as the image

IPR2023-00702
Patent D947,842 S

clearly shows substantial gaps accommodating interstitial circular elements, on each side, between the upper and lower arc-shaped portions.

Accordingly, having considered Petitioner's proposed ground based on Fong and Bushnell (and the supporting evidence), we conclude that it is inadequate to establish a reasonable likelihood of demonstrating the unpatentability of the claimed design of the '842 patent.

## III.   CONCLUSION

For the reasons set forth above, we conclude that Petitioner has not shown a reasonable likelihood that it would prevail with respect to the claimed design of the '842 patent.

## IV.   ORDER

It is

ORDERED that Petitioner's request for an *inter partes* review of the claim of the '842 patent is *denied* and no trial is instituted.

IPR2023-00702
Patent D947,842 S

PETITIONER:

Douglas Wentzel
Brian Claassen
Jarom Kesler
KNOBBE, MARTENS, OLSON & BEAR, LLP
2dxw@knobbe.com
2bcc@knobbe.com
2jzk@knobbe.com

PATENT OWNER:

W. Karl Renner
Roberto Devoto
Craig Deutsch
Grace Kim
Andrew Patrick
FISH & RICHARDSON P.C.
axf-ptab@fr.com
devoto@fr.com
deutsch@fr.com
gkim@fr.com
patrick@fr.com

43