**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| APPLE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-1377-MN-JLH |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| MASIMO CORPORATION and SOUND UNITED, LLC, | ) ) | **PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |
| MASIMO CORPORATION, | ) | |
| | ) | |
| Counter-Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |
| APPLE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-1378-MN-JLH |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| MASIMO CORPORATION and SOUND UNITED, LLC, | ) ) | **PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |
| MASIMO CORPORATION and CERCACOR LABORATORIES, INC., | ) ) | |
| | ) | |
| Counter-Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**PLAINTIFF AND COUNTERCLAIM-DEFENDANT APPLE INC.'S
<u>OBJECTIONS TO THE OCTOBER 24, 2023, REPORT AND RECOMMENDATION</u>**

OF COUNSEL:

John M. Desmarais
Jordan N. Malz
Cosmin Maier
Kerri-Ann Limbeek
Jeffrey Scott Seddon, II
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400

Peter C. Magic
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: (415) 573-1900

Jennifer Milici
Leon B. Greenfield
Dominic Vote
WILMER CUTLER PICKERING HALE
  AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel: (202) 663-6000

Mark A. Ford
WILMER CUTLER PICKERING HALE
  AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6423

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Plaintiff/Counter-Defendant Apple Inc.*

Dated: November 7, 2023
11151976 / 12209.00051

Public Version Dated: November 17, 2023

**TABLE OF CONTENTS**

I.    Masimo's Inequitable Conduct Claims And Defenses Fail As A Matter Of Law .................. 2

II.   Masimo's Infringement And Leveraging Theories Fail As A Matter Of Law......................... 5

III.  The Court Should Not Allow These Legally Invalid Theories To Proceed ............................ 8

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
   343 F. Supp. 3d 94 (E.D.N.Y. 2018) ........................................................................................9

*Aspen Skiing Co. v. Aspen Highlands Skiing*,
   472 U.S. 585 (1985) ..................................................................................................................7

*Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*,
   973 P.2d 527 (Cal. 1999) ..........................................................................................................8

*Chavez v. Whirlpool*,
   93 Cal. App. 4th 363 (2001) .....................................................................................................8

*Eatoni Ergonomics v. Research In Motion*,
   486 F. App'x 186 (2d Cir. 2012) .............................................................................................10

*Eatoni Ergonomics v. Research In Motion*,
   826 F. Supp. 2d 705 (S.D.N.Y. 2011) ......................................................................................6

*EMC Corp. v. Pure Storage, Inc.*,
   2014 WL 5795557 (D. Del. Nov. 5, 2014) ..............................................................................3

*Epic Games, Inc. v. Apple*,
   67 F.4th 946 (9th Cir. 2023) .....................................................................................................8

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009) ........................................................................................2, 3, 4

*New York v. Facebook*,
   549 F. Supp. 3d 6 (D.D.C. 2021) .......................................................................................7, 10

*In re Google Digit. Advert. Antitrust Litig.*,
   627 F. Supp. 3d 346 (S.D.N.Y. 2022) ......................................................................................9

*Hicks v. PGA Tour*,
   897 F.3d 1109 (9th Cir. 2018) ..................................................................................................7

*Host Int'l v. MarketPlace*,
   32 F.4th 242 (3d Cir. 2022) ......................................................................................................6

*IBM v. Priceline Grp.*,
   2017 WL 1349175 (D. Del. Apr. 10, 2017) .........................................................................8, 9

*Intergraph v. Intel*,
   195 F.3d 1346 (Fed. Cir. 1999)..............................................................................................9

*loanDepot.com v. CrossCountry Mortg.*,
   399 F. Supp. 3d 226 (D.N.J. 2019) ........................................................................................8

*In re M&T Bank ERISA Litig.*,
   2018 WL 4334807 (W.D.N.Y. Sept. 11, 2018) .....................................................................9

*Masimo v. Tyco Health Care Grp., L.P.*,
   2004 WL 7094930 (C.D. Cal. May 28, 2004) ...................................................................5, 6

*Pacific Bell Tel. v. linkLine Commc'ns*,
   555 U.S. 438 (2009)............................................................................................................6, 7

*Philadelphia Taxi Ass'n v. Uber Techs.*,
   886 F.3d 332 (3d Cir. 2018)................................................................................................5, 6

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   2009 WL 2016436 (D. Del. July 9, 2009) ..............................................................................6

*Premier Comp Sols. LLC v. UPMC*,
   377 F. Supp. 3d 506 (W.D. Pa. 2019)...................................................................................10

*Retractable Techs. v. Becton Dickinson & Co.*,
   842 F.3d 883 (5th Cir. 2016) ...............................................................................................5, 8

*Rolite Inc. v. Wheelabrator Env't Sys.*,
   958 F. Supp. 992 (E.D. Pa. 1997) ..........................................................................................9

*In re Sensipar Antitrust Litig.*,
   2020 WL 7022364 (D. Del. Nov. 30, 2020) ..........................................................................9

*Thomson Reuters Enter. Ctr. GmbH v. ROSS Intel. Inc.*,
   2022 WL 1224903 (D. Del. Apr. 26, 2022)............................................................................9

*Verizon Commc'ns v. Law Offs. of Curtis V. Trinko*,
   540 U.S. 398 (2004)...........................................................................................................7, 8

Apple objects to just two portions of Judge Hall's Report and Recommendation. *See* C.A. No. 22-1377, D.I. 377; C.A. No. 22-1378, D.I. 393; Decl. of D. Moore dated November 7, 2023 ("Moore Decl."), Ex. 1 ("R&R Tr."). The Court should reject that recommendation in part and (1) dismiss Masimo's inequitable conduct counterclaims and strike its affirmative defenses premised on the supposed knowledge and actions of Apple's Chief IP Counsel, Jeffrey Myers and (2) dismiss Masimo's antitrust and California UCL claims insofar as they are premised on patent infringement and monopoly leveraging theories of anticompetitive conduct. Allowing these non-viable claims to proceed will serve only to needlessly complicate the case and burden both the parties and the Court. The Court's review is *de novo*. *See* 28 U.S.C. § 636(b)(1).

*First*, in finding that Masimo's allegations of inequitable conduct against Mr. Myers met the heightened pleading standard under Rule 9(b), the Report relied upon the allegation that "Mr. Myers and others at Apple" hired multiple law firms for different proceedings and prosecutions. But a company's use of multiple law firms is not improper, let alone sufficient to plausibly allege (1) that Mr. Myers had a duty of disclosure to the Patent Office in the prosecutions of the patents at issue or (2) that Mr. Myers had knowledge of the information that Masimo alleges was withheld during those prosecutions and compartmentalized it with specific intent to deceive the Patent Office. Allowing the inequitable conduct allegations against Mr. Myers, as a stand in for Apple as a whole, to proceed without any specific underlying facts would eviscerate the heighted pleading standard laid out by the Federal Circuit and open the floodgates for inequitable conduct to be pled against any lawyer at a company who has responsibility over an intellectual property department.

*Second*, the Report erred by not dismissing Masimo's so-called "monopoly leveraging" and "predatory infringement" theories of exclusionary conduct. Controlling caselaw stresses that conduct that increases output cannot support an antitrust claim. Applying that rationale, courts

agree that infringement does not cause the type of injury that the antitrust laws reach. Masimo's "monopoly leveraging" theory also fails, as the antitrust laws do not impose a duty to deal except in narrow circumstances concededly not present here. Judge Hall did not disagree on either point. In fact, she expressly "question[ed]" the viability of these standalone theories of anticompetitive conduct. R&R Tr. 19:16-20:2. She stopped short of declaring them legally invalid solely because she "concluded that Masimo adequately states a claim under a Walker Process theory." *Id.* 20:3-6. Apple respectfully submits that Masimo's claims should be dismissed to the extent they rely on these non-viable theories. Courts routinely put an end to invalid theories at the motion-to-dismiss stage, no matter how they happen to be pled. Such theories should not survive—and here lead to costly expert discovery and motions practice on otherwise irrelevant issues—simply because they were bundled together with entirely different theories in a single count in the complaint.

I.      **Masimo's Inequitable Conduct Claims And Defenses Fail As A Matter Of Law**

To plead inequitable conduct with the requisite "particularity" under Rule 9(b) and survive a motion to dismiss, a pleading must recite facts reasonably suggesting that a ***specific individual*** with a ***duty of disclosure to PTO*** both ***knew of invalidating information that was withheld*** from the PTO and ***withheld that information with a specific intent to deceive the PTO***. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009). The Report erred in finding that Masimo plausibly pled that Mr. Myers had (1) a duty of disclosure to the Patent Office in prosecution of the patents at issue; or (2) knowledge of the information that it alleges was withheld in those prosecutions and compartmentalized it with specific intent to deceive the Patent Office.

*First,* the Report erred in finding that Masimo plausibly pled that Mr. Myers owed a duty of disclosure to the Patent Office based on his "substantive involvement" in prosecuting the patents at issue. In support of its finding that that Mr. Myers owed a duty of disclosure to the Patent Office in prosecution of the patents at issue, the Report relied upon two factual allegations: (1) that Mr.

2

Myers and others at Apple hired outside law firms for the prosecutions; and (2) that Mr. Myers "is listed, along with many others, under Apple's PTO customer number as a practitioner with power of attorney for Apple" (a fact that was not even pled in Masimo's pleadings). *See* R&R Tr. 12:8-13:18, 14:17-25. Even accepted as true, those facts are insufficient to show a duty of disclosure. *See, e.g.*, *EMC Corp. v. Pure Storage, Inc.*, 2014 WL 5795557, at *2 (D. Del. Nov. 5, 2014) ("Without more, there is no reason to infer that the lawyers, simply listed as power of attorney along with five others, were substantively involved in prosecuting the [] patent."); Moore Decl. Ex. 2 at 12-16; -1377; D.I. 381 (finding PTO customer number insufficient to show duty of disclosure and therefore denying discovery on inequitable conduct theory absent showing of "substantive involvement in prosecution").

***Second***, the Report erred in finding that Masimo plausibly pled that Mr. Myers had knowledge of any of the information that it alleges was withheld in those prosecutions. With respect to the prosecutions of the design patents at issue, the Report does not address any factual allegations that would support a reasonable inference that Mr. Myer knew of the two references that Masimo alleges were withheld during prosecution. *See* R&R Tr. 12:3-13:18. Indeed, Masimo provides no such particularized facts in support of its wholly conclusory allegation that "Mr. Myers ***and others at Apple*** had knowledge of the '282 Application and the '912 Publication prior to and during prosecution[.]" 1377 D.I. 31 at 14.[1] With respect to the utility patent prosecutions at issue, the Report accepts as true that Mr. Myers was "involved in IPR proceedings wherein Apple asserted the undisclosed prior art references," but Masimo's only allegation regarding any such involvement was that Mr. Myers "signed the power of attorney authorizing [***outside counsel***] to represent Apple in the [IPRs]." R&R Tr. 15:1-10; 1378 D.I. 15 ¶ 128. Those conclusory

---

[1] Emphasis added throughout, unless otherwise noted.

3

allegations without specific underlying facts are insufficient. *Exergen*, 575 F.3d at 1330.

Masimo's accusations against Apple's most senior IP counsel are not based on any link tying Mr. Myers to the specific prosecutions at issue or to the references that were allegedly withheld, but rather treat Mr. Myers as a proxy for Apple as a whole. The Federal Circuit in *Exergen* squarely rejected such allegations against a company as a whole: because "the pleading refers generally to '***Exergen, its agents and/or attorneys***,' but fails to name the ***specific individual associated with the filing or prosecution of the application*** issuing as the '685 patent, who both knew of the material information and deliberately withheld or misrepresented it[, t]he pleading thus fails to identify the 'who' of the material omissions and misrepresentation." 575 F.3d at 1329 (citing 37 C.F.R. § 1.56(a); *id.* at § 1.56(c); Manual of Patent Examining Procedures ("MPEP") § 2001.01 (8th ed., rev. 2, May 2004). Allegations "that 'Exergen was aware' of the '808 and '998 patents in general, and that Exergen had become aware of them during prosecution of Exergen's own prior applications ... provide[d] no factual basis to infer that ***any specific individual, who owed a duty of disclosure in prosecuting the '685 patent***, ***knew of the specific information in the '808 and '998 patents*** that is alleged to be material to the claims." *Id.* at 1330.

Masimo should not be allowed to circumvent *Exergen's* holding by merely naming a senior attorney as a proxy for the company. Allowing Masimo's inequitable conduct counterclaims and affirmative defense against Mr. Myers to proceed without any specific factual allegations about (1) his involvement in the prosecutions at issue or (2) his knowledge of the allegedly withheld references would eviscerate the heightened pleading standard laid out by the Federal Circuit. Indeed, it would open the floodgates for inequitable conduct claims in virtually every case with a large company plaintiff by finding a duty of disclosure to the Patent Office, and an inference of knowledge of the particulars of prior art references, based on one's position of authority in a

4

company rather than substantive involvement in prosecution. And it would provide a roadmap for claimants to harass any senior IP attorney or executive as a stand in for the company on threadbare conspiracy theories without any factual basis tying that individual to the alleged misconduct.

Accordingly, Masimo's inequitable conduct counterclaim and affirmative defense in C.A. No. 1:22-cv-1378-MN-JLH should be dismissed and stricken in their entirety, as Masimo's only theory of inequitable conduct relates to Mr. Myers. In C.A. No. 1:22-cv-1377-MN-JLH, in which Masimo also alleges inequitable conduct by all of the named inventors, its inequitable conduct counterclaim should be dismissed and its affirmative defense stricken as they relate to Mr. Myers.

## II. Masimo's Infringement And Leveraging Theories Fail As A Matter Of Law

While Judge Hall did not reach the issue, she correctly suggested that Masimo's patent infringement and monopoly leveraging theories of anticompetitive conduct fail as a matter of law.

**Sherman Act: Predatory Infringement.** Masimo's attempt to state an antitrust claim with infringement allegations fails. Alleged conduct that increases the number of competitors cannot support antitrust liability. *See Philadelphia Taxi Ass'n v. Uber Techs.*, 886 F.3d 332, 344 (3d Cir. 2018) ("Uber's entry into the Philadelphia market, regardless of its legality, increased the number of vehicles-for-hire available to consumers and product differentiation in the market, thereby increasing competition."). Courts have thus recognized that "patent infringement cannot serve as a basis for imposing antitrust liability" because it "causes competing products to enter the market, and thereby increases competition." *Retractable Techs. v. Becton Dickinson & Co.*, 842 F.3d 883, 893 (5th Cir. 2016); *see also* Phillip Areeda & Herbert Hovenkamp, Antitrust Law ¶ 782a3 (5th ed. 2022) ("Areeda") (this holding is "[c]learly … correct"). "Masimo has not cited … any case where patent infringement has been considered anticompetitive conduct" because "as a matter of law such acts do not amount to anticompetitive conduct." *Masimo v. Tyco Health Care Grp., L.P.*, 2004 WL 7094930, at *2 (C.D. Cal. May 28, 2004). Moreover, "the patent laws

5

themselves contain remedial provisions," and antitrust plaintiffs should not receive double recovery. Areeda ¶ 782a3; *see also Masimo*, 2004 WL 7094930, at *2 (finding "no authority to support allowing … the same conduct … in the patent case to serve as the basis of an antitrust claim.").

Separately, even if alleged infringement could *ever* be anticompetitive conduct, Masimo "has not plausibly alleged that [any] purported infringement imposed substantial costs or barriers to entry." *Eatoni Ergonomics v. Research In Motion*, 826 F. Supp. 2d 705, 709 (S.D.N.Y. 2011). To the contrary, Masimo alleges that the purported infringement has led Apple to "flood the market" with new products—conduct that by definition *increases* output and consumer choice. *See Phila. Taxi*, 886 F.3d at 344. As a matter of law, such conduct cannot support an antitrust claim.

Allowing the infringement theory to proceed will waste time and resources. It will require costly expert discovery and related motions practice regarding who owned intellectual property that is not otherwise at issue in this case, whether Apple infringed that intellectual property, and the effect of any purported infringement on competition. The parties will also be forced to brief claim splitting and issue preclusion on summary judgment, as Masimo asserted nearly identical claims involving the same intellectual property in the Central District of California, where the case is set for a second jury trial in 2024. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2009 WL 2016436, at *3 (D. Del. July 9, 2009) (describing impermissible claim splitting doctrine). All in service of a facially futile claim. This theory should instead be dismissed now.

**Sherman Act: Monopoly Leveraging.** Masimo's theory that Apple unlawfully conditioned its access to the App Store on providing allegedly confidential information also fails. "[B]usinesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." *Pacific Bell Tel. v. linkLine Commc'ns*, 555 U.S. 438, 448 (2009); *see also Host Int'l v. MarketPlace,* 32 F.4th 242, 250 (3d Cir. 2022). This rule protecting

6

companies' freedom to deal with others on their own terms incentivizes innovation and ensures courts do not act as central planners or compel cooperation that might facilitate collusion. *See New York v. Facebook*, 549 F. Supp. 3d 6, 47 (D.D.C. 2021), *aff'd*, 66 F.4th 288 (D.C. Cir. 2023).

There is just one exception to the rule that firms have "no duty to deal under terms and conditions that … rivals find commercially advantageous." *linkLine*, 555 U.S. at 450. That exception applies only when a firm terminates a prior "course of dealing with its rivals" and so "forsake[s] short-term profits." *Verizon Commc'ns v. Law Offs. of Curtis V. Trinko*, 540 U.S. 398, 409 (2004) (discussing *Aspen Skiing Co. v. Aspen Highlands Skiing*, 472 U.S. 585 (1985)). Masimo alleged no such facts and disclaimed reliance on *Aspen Skiing*. *See* C.A. No. 22-1378 D.I. 68 at 9. That concession is fatal, as the Supreme Court has held that expanding *Aspen Skiing* would "chill the very conduct the antitrust laws are designed to protect." *Trinko*, 540 U.S. at 414.

Independently fatal to this theory, Masimo has conceded that the companion app for its "health watch" is available on the App Store and that it was not forced to disclose any confidential information as a condition of access. *See* Moore Decl. Ex. 3 at 51:11-52:19; R&R Tr. 19:20-23.

Allowing this theory to proceed would also require costly expert discovery, as well as summary judgment briefing and related motions practice regarding topics entirely unrelated to any potentially cognizable claim—including the complex question of the viability of the separate alleged App Store market. This legally invalid theory should likewise be dismissed now.

**California UCL.** Masimo's predatory infringement and monopoly leveraging allegations also cannot support liability under the California UCL. Courts regularly dismiss UCL claims when the conduct alleged does not amount to an antitrust violation. *See Hicks v. PGA Tour*, 897 F.3d 1109, 1124 (9th Cir. 2018). Moreover, even an "incipient" violation of the antitrust laws that might support a UCL claim requires conduct that "violates the policy or spirit of" the antitrust laws

7

and "significantly threatens or harms competition." *Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999). Thus, "when a federal antitrust claim" is foreclosed by "a categorical legal bar, the conduct underlying the antitrust claim cannot be deemed unfair pursuant to the UCL." *Epic Games, Inc. v. Apple*, 67 F.4th 946, 1001 (9th Cir. 2023).

Courts have held that both patent infringement and refusals to deal (outside of *Aspen Skiing*) are categorically not actionable under the antitrust laws. *See, e.g.*, *Retractable*, 842 F.3d at 893; *Trinko*, 540 U.S. at 414. This "conduct that the courts have determined to be permissible … cannot be deemed 'unfair' under the unfair competition law," whether as an incipient antitrust violation or otherwise. *Chavez v. Whirlpool*, 93 Cal. App. 4th 363, 375 (2001). Moreover, even incipient antitrust violations still require harm to competition. *Cel-Tech*, 973 P.2d at 544. The only alleged harm from the purported infringement is *increased* output. And the purported monopoly leveraging has not harmed competition, as Masimo concedes its app is on the App Store.

### III. The Court Should Not Allow These Legally Invalid Theories To Proceed

Judge Hall did not rule on the viability of these theories of purportedly anticompetitive conduct because she held that the antitrust and California UCL counts survived with respect to the Walker Process theory. R&R Tr. 20:3-6. But there is no legal basis to "permit a single viable theory to 'carry' otherwise wholly deficient theories of liability through to the summary judgment stage." *IBM v. Priceline Grp.*, 2017 WL 1349175, at *7 (D. Del. Apr. 10, 2017). "Courts in this circuit have routinely dismissed sub-theories contained within a claim while allowing other sub-theories to survive" because they "do not agree that bundling of good and bad claims should shield inadequate allegations from scrutiny." *loanDepot.com v. CrossCountry Mortg.*, 399 F. Supp. 3d 226, 235 (D.N.J. 2019). Doing otherwise would give "defendants a perverse incentive to lump together every possible disparate theory … into one unwieldy counterclaim, in the hopes that a single theory with wings would carry other theories past the Rule 12(b)(6) stage, when in fact those

other theories should never have gotten off the ground." *IBM*, 2017 WL 1349175, at *7.

As to inequitable conduct, numerous courts "have in fact dismissed portions of inequitable conduct counterclaims, or stricken portions of affirmative defenses based on inequitable conduct, while allowing other portions of the claim/defense to survive." *Id.* Similarly, courts routinely hold that only "a portion of Plaintiffs' Section 2 claims survive the motions to dismiss" where some allegedly anticompetitive acts cannot support a monopolization claim. *In re Sensipar Antitrust Litig.*, 2020 WL 7022364, at *3-*4 (D. Del. Nov. 30, 2020); *see also Thomson Reuters Enter. Ctr. GmbH v. ROSS Intel. Inc.*, 2022 WL 1224903 (D. Del. Apr. 26, 2022) (dismissing sham litigation but not tying); *Rolite Inc. v. Wheelabrator Env't Sys.*, 958 F. Supp. 992 (E.D. Pa. 1997) (dismissing leveraging but not *Walker Process*); *In re Google Digit. Advert. Antitrust Litig.*, 627 F. Supp. 3d 346, 381-402 (S.D.N.Y. 2022) (dismissing Section 2 claim to the extent it relied on conduct that was held not to be anticompetitive at the motion to dismiss stage).

Courts have reached similar results by recognizing that freestanding legal theories are themselves "claims" subject to dismissal even when brought in a single count. "[A] plaintiff bringing multiple claims under one legal cause of action cannot simply collapse all of his distinct claims into one central 'count,' thereby proofing his complaint from a partial motion to dismiss." *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 343 F. Supp. 3d 94, 100 (E.D.N.Y. 2018); *see also In re M&T Bank ERISA Litig.*, 2018 WL 4334807, at *4 n.7 (W.D.N.Y. Sept. 11, 2018).

There is no reason to leave Masimo's freestanding, non-viable theories in the case. Plaintiffs certainly cannot save them by asserting that they relate to a purported overarching anticompetitive scheme. "Each legal theory must be examined for its sufficiency and applicability, on the entirety of the relevant facts," *Intergraph v. Intel*, 195 F.3d 1346, 1366-1367 (Fed. Cir. 1999), and any alleged misconduct that is "not independently anti-competitive" is "not cumulatively

9

anticompetitive either," *Eatoni Ergonomics v. Research In Motion*, 486 F. App'x 186, 191 (2d Cir. 2012). It would otherwise "be far too easy for plaintiffs to advance their otherwise nonviable claims against unilateral refusals to deal … by simply repackaging such refusals as part of a larger scheme." *Facebook*, 549 F. Supp. 3d at 47-48. "That result is avoided by holding that lawful unilateral refusals to deal cannot be combined with other conduct … into an overall scheme of monopoly acquisition or maintenance that can be separately challenged. If a unilateral refusal (or refusals) is to be part of such larger scheme, it must in itself be unlawful." *Id.* at 48.

Nor can Plaintiffs save those theories by arguing that the allegations supporting those legally invalid claims are also relevant to whether Apple had the specific intent required for its attempted monopolization claim. Some potential overlap in the factual allegations that might support both legally valid and invalid theories is no basis to allow the invalid legal theories to proceed. In any event, those factual allegations are irrelevant. The specific intent for attempted monopolization is "the intention to prevail *by improper means*." Areeda § 805b1. The question is not whether Apple intended to outperform Masimo. All competitors intend to outperform their rivals. *See Premier Comp Sols. LLC v. UPMC*, 377 F. Supp. 3d 506, 525 (W.D. Pa. 2019) ("a mere intention to prevail over rivals or improve market position" does not "show a 'specific intent to monopolize'"). The question is whether Apple specifically intended to outperform Masimo *using anticompetitive means*—i.e., by enforcing invalid patents or making false statements. Apple's unrelated, non-exclusionary conduct is irrelevant and should no longer be part of this case.

Rather than require costly expert discovery and motions practice in service of non-viable claims, the Court should (1) dismiss Masimo's inequitable conduct counterclaims and strike its affirmative defenses premised on the knowledge and actions of Jeffrey Myers and (2) dismiss its antitrust and California UCL claims premised on patent infringement and monopoly leveraging.

|  |  |
|---|---|
| OF COUNSEL: | Respectfully submitted,<br><br>POTTER ANDERSON & CORROON LLP |
| John M. Desmarais<br>Jordan N. Malz<br>Cosmin Maier<br>Kerri-Ann Limbeek<br>Jeffrey Scott Seddon, II<br>DESMARAIS LLP<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 351-3400 | By: */s/ David E. Moore*<br>    David E. Moore (#3983)<br>    Bindu A. Palapura (#5370)<br>    Andrew L. Brown (#6766)<br>    Hercules Plaza, 6th Floor<br>    1313 N. Market Street<br>    Wilmington, DE 19801<br>    Tel: (302) 984-6000<br>    dmoore@potteranderson.com<br>    bpalapura@potteranderson.com<br>    abrown@potteranderson.com |
| Peter C. Magic<br>DESMARAIS LLP<br>101 California Street<br>San Francisco, CA 94111<br>Tel: (415) 573-1900 | *Attorneys for Plaintiff/Counter-Defendant Apple Inc.* |

Jennifer Milici
Leon B. Greenfield
Dominic Vote
WILMER CUTLER PICKERING HALE
  AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel: (202) 663-6000

Mark A. Ford
WILMER CUTLER PICKERING HALE
  AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6423

Dated: November 7, 2023
11151976 / 12209.00051

 Public Version Dated: November 17, 2023