# EXHIBIT 3

1

```
1              IN THE UNITED STATES DISTRICT COURT
2              IN AND FOR THE DISTRICT OF DELAWARE
3
4    APPLE INC.,                    )
     -----------------Plaintiff,    ) Case No.
5         vs.                       ) 22-CV-1377-MN-
6                                   ) JLH
     MASIMO CORP., et al.,          ) 22-CV-1378-MN-
7                                   ) JLH
8    -------------------Defendants.)
9            TRANSCRIPT OF MOTION HEARING
10
11          MOTION HEARING had before the Honorable
12   Jennifer L. Hall, U.S.M.J., in Courtroom 2B on
13   the 15th of June, 2023.
14
15                    APPEARANCES
16       POTTER ANDERSON & CORROON LLP
         BY:  DAVID MOORE, ESQ.
17             BINDU PALAPURA, ESQ.
18                    -and-
19       DESMARAIS LLP
         BY:  KERRI-ANN LIMBECK, ESQ.
20             JORDAN MALZ, ESQ.
               JAMIE KRINGSTEIN, ESQ.
21                    -and-
22       WILMERHALE
23       BY:  JENNIFER MILICI, ESQ.
              MARK FORD, ESQ.
24
25                         Counsel for Plaintiff
```

2

```
1    (Appearances continued.)
2
3        PHILLIPS MCLAUGHLIN & HALL P.A.
             BY:  JOHN PHILLIPS, ESQ.
4
                      -and-
5
         KNOBBE MARTENS
6            BY:  ADAM POWELL, ESQ.
                  STEVE LARSON, EQ.
                  BRIAN HORNE, ESQ.
7
                         Counsel for Defendants
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

3

```
1             THE COURT:  So we're here today to
2    hear motions in two cases.  One is Apple versus
3    Masimo and Sound United, and that's
4    22-CV-1377-JLH.  And the other is also Apple
10:04AM 5    versus Masimo and Sound United.  That's
6    22-1378.
7             Let's have appearances starting with
8    Plaintiff.
9             MR. MOORE:  Good morning, Your Honor.
10:04AM 10   David Moore from Potter Anderson on behalf of
11   Apple.  I'm joined by my partner Bindu
12   Palapura.  We're joined by our co-counsel from
13   Desmarais Kerri-Ann Limbeck, Jordan Malz, and
14   Jamie Kringstein.  And from WilmerHale we're
10:04AM 15   joined by Jannifer Milici and Mark Ford.  And
16   from Apple, Natalie Poe and Megan
17   Thomas-Kennedy.
18            THE COURT:  Hello.  Good morning,
19   everyone.
10:04AM 20            MR. PHILLIPS:  Good morning, Your
21   Honor.  Jack Phillips of Phillips, McLaughlin,
22   and Hall.  With me in the courtroom are Steve
23   Larson, Brian Horne, and Adam Powell from
24   Knobbe Martens.
10:05AM 25            THE COURT:  Good morning, everyone.
```

4

```
1    It's my understanding that we have four motions
2    pending, but we're only going to hear two of
3    them today.  And we've given each side
4    15 minutes.
10:05AM 5             These are Plaintiff's motions, actually,
6    so we'll hear from Plaintiff first.
7             MS. LIMBECK:  Good morning, Your
8    Honor.  Kerri-Ann Limbeck on behalf of Apple.
9    I'll be addressing inequitable conduct and my
10:05AM 10   co-counsel will address antitrust and false
11   advertising.
12            Masimo asserts inequitable conduct in
13   both of these cases not against any counsel
14   that actually prosecuted the asserted patents.
10:06AM 15   Instead, they assert it against a mishmash of
16   Apple as a whole, its chief of IP, unnamed
17   others at Apple, and in the Design case only --
18   all 21 named inventors collectively.  Those
19   allegations cannot meet the heightened pleading
10:06AM 20   standard under Rule 9(b).
21            So starting with Apple's chief IP
22   counsel, Jeffrey Meyers, Masimo did not and
23   cannot plead that he even had a duty of
24   disclosure in either the utility patents or the
10:06AM 25   design patents because they did not plead that
```

5

1  he's an inventor, that he's the attorney or
2  agent that prosecuted or prepared the
3  applications, or that he was substantively
4  involved in prosecution.  In the Utility case,
10:06AM 5  its only allegation is that Mr. Meyers was an
6  attorney of record for prosecution.  Masimo
7  pleads no facts and cites nothing in support of
8  that bare allegation.  In fact, it's false.
9  Mr. Meyer's name doesn't appear in the
10:07AM 10 prosecutions.
11        In the Design case, Masimo pleads even
12  less.  Its only conclusory allegation is that
13  Mr. Meyers had a duty to disclose, but Masimo
14  did not plead that he was substantively
10:07AM 15 involved in prosecution to give rise to that
16  duty.
17        So additionally, Masimo did not and
18  cannot plausibly plead in either case that
19  Mr. Meyers had the requisite knowledge and
10:07AM 20 specific intent.  In both cases, Masimo fails
21  to allege any facts from this Court could
22  reasonably infer that Mr. Meyers actually knew
23  of any of the references that they identified
24  as being allegedly withheld from the Patent
10:07AM 25 Office, let alone that Mr. Meyers knew of the

6

1  specific technical disclosures within those
2  references and deliberately withheld them with
3  specific intent to deceive the Patent Office.
4  The only conduct that Masimo actually
10:08AM 5  attributes to Mr. Meyers in its pleading is
6  that Mr. Meyers and others at Apple hired
7  different law firms to do different things, to
8  prosecute design patents, utility patents, and
9  handle IPRs.  That is not sufficient to
10:08AM 10 plausibly plead that Mr. Meyers deliberately
11  compartmentalized these particular prosecutions
12  with intent to deceive the Patent Office, and
13  that's why Masimo cannot cite a single case in
14  support of that entirely novel theory.  So
10:08AM 15 Masimo's allegations against Mr. Meyers fail
16  for those reasons.
17        Now, in the Design case specifically,
18  Masimo has this additional allegation that the
19  entire group of all 21 design inventors
10:08AM 20 collectively committed inequitable conduct.
21  Those allegations fail too because Masimo
22  doesn't even allege that a single named
23  inventor knew of any of the references that it
24  cites that were supposedly withheld during
10:09AM 25 prosecution, let alone that every single

7

1  inventor knew of those references, knew of the
2  specific disclosures within the references, and
3  withheld them with an intent to deceive.  The
4  only allegation against the Design inventors
10:09AM 5  specifically is that, on information and
6  belief, they knew the claimed designs were
7  functional and not ornamental as a result of
8  the exposure to the development process.
9  Basically, because they're inventors, they were
10:09AM 10 exposed to the development; therefore, they
11  must have known these patents were invalid for
12  functionality.
13        THE COURT:  Can I ask -- and I
14  probably won't be able to articulate this very
10:09AM 15 well, but maybe you'll catch my drift.
16        I understand that the Federal Circuit
17  caselaw is very clear that you need to identify
18  individuals that are substantively involved and
19  you need to satisfy Rule 9(b).  Arguably -- or
10:10AM 20 maybe not arguably.  It was clear it was doing
21  that because it was trying to curb the amount
22  of inequitable conduct claims that made it past
23  the pleading stage.
24        But is there something inherently wrong
10:10AM 25 with the idea of the inequitable conduct claim

8

1  that they're trying to put forward, which is
2  that if you've got a big company where there's
3  somebody in charge, and we want to get both
4  design patent claims and utility patent
10:10AM 5  claims -- this is what they're saying.  I get
6  it you disagree -- on the same aspects of an
7  invention and there's a person up there that
8  says, okay, you guys are going to be the
9  inventors on this one, and you guys are going
10:10AM 10 to be the inventors on this one.  The inventors
11  might not really know anything about why
12  they're listed on one or the other patent.  Can
13  that never be inequitable conduct, or is it
14  just not inequitable conduct here for some
10:11AM 15 reason?
16        MS. LIMBECK:  It's not inequitable
17  conduct here because as you mention, the
18  Federal Circuit under the *Exergen* standard
19  requires that you actually allege that there's
10:11AM 20 some specific individual that knew -- that had
21  a duty to disclose sure in these prosecutions
22  and actually knew of some invalidating
23  reference that was withheld.
24        THE COURT:  Let me just ask.  You say
10:11AM 25 it's not here, but it looks to me like you're

9

1 also saying it could also be inequitable
2 conduct if the person in charge doesn't have a
3 duty of disclosure under the PTO rules.
4         MS. LIMBECK: Yes, Your Honor, I
5 think that's true because when you just are
6 pleading -- it basically amounts to a pleading
7 against Apple as a company as a whole, which is
8 exactly what the Federal Circuit has said
9 cannot meet the pleading standard. If you're
10 just going to pick a name at the top of the
11 legal department for Apple, that's basically
12 the same thing as just accusing Apple in
13 general without actually pleading any
14 particular facts tying Mr. Meyers to these
15 particular prosecutions and even saying that
16 he's the one that hired these different law
17 firms. Apple has thousands of prosecutions
18 every year. Of course they have multiple law
19 firms. That's standard practice. That's not
20 inequitable conduct.
21         Unless you have any other questions, Your
22 Honor.
23         THE COURT: No, that's it. Thank you
24 very much.
25         MS. LIMBECK: Thank you.

10

1         MS. MILICI: Good morning, Your
2 Honor. Jennifer Milici from WilmerHale.
3         Your Honor, as we explained in our brief,
4 Masimo's antitrust claims fail at every turn.
5 Masimo's counterclaims are a mishmash of
6 conflicting allegations that Apple stole the
7 intellectual property of Masimo and others,
8 sought confidential information from App Store
9 Developers, and yet then flooded the market
10 with somehow inferior products that somehow
11 hurts the health watch market.
12         Taking the actual allegations as true for
13 the purpose of the motion, these allegations
14 cannot add up to an antitrust violation. We've
15 listed three independent grounds on which the
16 claim should be dismissed. I'm happy to start
17 wherever you like or answer questions.
18         THE COURT: Well, agree with you that
19 there's a kitchen sink. But that's not
20 surprising, given that courts look very
21 carefully at antitrust allegations, and you
22 want to get in everything you can get and don't
23 want it to be dismissed.
24         What about the Walker process? You
25 agree it doesn't say the Walker process. Why

11

1 don't you focus on that.
2         MS. MILICI: Your Honor, we agree
3 that it does not state a Walker process claim.
4 As my co-counsel just explained, the
5 inequitable conduct allegations fail. But even
6 if you look at antitrust injury -- and just in
7 general, Masimo has failed to allege an
8 antitrust injury and certainly hasn't put
9 forward any other theories. It doesn't even
10 try.
11         But as to its Walker process allegations,
12 its argument appears to be that if Apple were
13 to succeed on a fraudulently obtained patent,
14 then at that point they would be excluded.
15 This is an impossibility. If Apple were to
16 succeed in excluding Masimo, it would be
17 because it asserted a valid patent that's
18 uninfringed. There's no way the outcome of
19 this litigation can be that Masimo is illegally
20 included.
21         I want to factually distinguish this case
22 from something like *TransWeb*. In *TransWeb*, you
23 had a plaintiff who alleged that because it was
24 unable to meet the costs of litigation, it had
25 to sell part of its business at a fire sale

12

1 price. It lost customers. You saw in that
2 case that a jury awarded lost profits from an
3 injury that happened because of the pendency of
4 the litigation itself. The Court did talk
5 about whether attorney's fees can be antitrust
6 damages, but it did so in the context of the
7 case where antitrust injury and liability had
8 been established and were not contested. Those
9 were not contested on appeal.
10         If we look at Masimo's allegations here,
11 not only do they fail to allege that the cost
12 of litigation is going to somehow impair their
13 ability to compete, they allege the opposite.
14 In paragraph 21 of their complaint, they
15 affirmatively allege that they have the
16 resources to litigate this case, so this is
17 nothing like the situation in *TransWeb* where
18 the litigation itself is going to cause harm.
19         THE COURT: Let me make sure I
20 understand. Your view is -- let me ask it this
21 way. You're seeking an injunction; right?
22         MS. MILICI: Yes Your Honor.
23         THE COURT: So if you won, they would
24 be enjoined; right?
25         MS. MILICI: Yes, Your Honor.

13

1          THE COURT:  We're going to take this
2      real slow because it's still early for me and
3      the caffeine hasn't kicked in yet.  So their
4      choice is either be enjoined from selling or
10:16AM 5   defend the litigation; right?
6          MS. MILICI:  Your Honor, I understand
7      that that's how *TransWeb* set it up.  I do want
8      to point out that they are not challenging all
9      of the patents that are being asserted by Apple
10:16AM 10  in this case, and that's just another
11     distinguishing feature.
12         THE COURT:  Got it.  Okay.  I
13     understand.
14         MS. MILICI:  So -- and, Your Honor, I
10:16AM 15  think that this came up in another case before
16     Your Honor, the *NRT* case.  And again, we see
17     the distinguishing features there in a case
18     like *NRT* or *Bard* that they cite.  You have a
19     plaintiff that was alleging that the litigation
10:16AM 20  itself caused harm to competition, not just if
21     the plaintiff had been successful in asserting
22     a fraudulently obtained patent.
23         I would also say that if you read
24     *TransWeb* in the way that Masimo suggests, I
10:17AM 25  think it runs directly into Third Circuit

14

1      precedent.  You see the Third Circuit in cases
2      like *Host International* which says that
3      speculative harms are not sufficient to state
4      an antitrust injury.  It can't be a speculative
10:17AM 5   harm, can't be a potential harm.  You have to
6      show facts that show actual injury.
7          And the injury Masimo is complaining of
8      is not just speculative.  It's impossible.
9      There's no way that Apple can succeed on a
10:17AM 10  preliminary injunction if the patents were
11     actually fraudulently obtained because they are
12     able to raise that defense in this case.
13         THE COURT:  I need to make a note.
14     Hold on one sec.
10:17AM 15      Okay.  Go ahead.
16         MS. MILICI:  Thank you, Your Honor.
17         And to be clear, as far as antitrust
18     injury goes, that's the only argument that they
19     make.  They do not make any -- have any factual
10:18AM 20  allegations supporting an antitrust injury from
21     any of the other conduct that they allege.
22     They are not alleging that there's some portion
23     of the market that's been -- that they're
24     foreclosed from.  It's not like a location
10:18AM 25  where they say they have access to some retail

15

1      channel.  They're really alleging injury to
2      itself as a business, which there's plenty of
3      caselaw that says that's not sufficient.  Even
4      a plaintiff that's been harmed has to allege a
10:18AM 5   wider impact of the allegation, and the other
6      claims in the complaint other are conclusory.
7          THE COURT:  Understood.
8          MS. MILICI:  I'm happy to talk about
9      the anticompetitive conduct on this.
10:18AM 10      THE COURT:  Why don't you hit those.
11     We talked about the Walker process where the
12     conduct is sued.
13         MS. MILICI:  We talked about the
14     Walker process.  In addition, Masimo alleges
10:18AM 15  that Apple infringes intellectual property.  We
16     cited caselaw from across the country showing
17     that infringement of intellectual property
18     cannot be a basis for an antitrust claim.  If
19     you look at cases like *Philadelphia Taxi* which
10:19AM 20  wasn't dealing with intellectual property, but
21     it really states the proposition clearly that
22     conduct that brings more competitors to market
23     can't be exclusionary conduct.  In that case,
24     it was even people who entered the market
10:19AM 25  illegally through illegal conduct.  That's

16

1      still pro competitive.  It brings competitors
2      to the market.  It can't be a basis for the
3      antitrust claim.
4          Moving on to the allegations, Masimo
10:19AM 5   alleges that there's a monopoly leveraging.  As
6      Your Honor stated in *Simon and Simon*, monopoly
7      leveraging is not a standalone claim.  You need
8      to allege unlawful conduct, and Masimo hasn't
9      done that.  In its opposition brief, it
10:19AM 10  references seeking confidential information as
11     if that's an unlawful act.  Of course, Apple,
12     like everybody else, has the right to choose
13     who they will deal with and on what terms, and
14     Masimo points to no caselaw saying that
10:20AM 15  somebody is unable to ask for information.
16         I think if you look really closely at the
17     actual paragraphs in the complaint on this,
18     they don't ever allege that they gave any
19     confidential information to Apple or that Apple
10:20AM 20  did anything with that confidential
21     information.  It's just this kind of
22     theoretical proposition that they could have
23     given information to Apple or somebody else
24     might have and Apple might have misused that,
10:20AM 25  but that's not in his complaint.

17

1           In addition, either, the harm they're
2    conclusorily asserting from that is that
3    somehow it might stop somebody from wanting to
4    invest or innovate, but they don't allege
5    anything Apple did caused them to stop
6    investing.  In fact, they alleged exactly the
7    opposite, that they're investing like
8    gangbusters and ready to go.  So they pled
9    themselves out of court on each of these
10   issues.
11          Finally, on false advertising, courts
12   apply a very high standard to antitrust claims
13   based on false advertising.  Otherwise, the
14   courts would be chock full of people
15   complaining that its competitors -- that they're
16   don't like their competitors' ads and they're
17   entitled to treble damages.  And they don't
18   come close to meeting the standard for an
19   antitrust claim based on false advertising.
20   Again, for the same reasons.  They are not
21   alleging they were foreclosed from the market
22   as a result of it.  They're not alleging
23   they're unable to compete.  They're not
24   alleging they're unable to contradict those
25   statements.  If anything, the allegations shows

18

1    they're plenty able to fund studies that they
2    claim disprove Apple's advertising and put it
3    out in the world.  For both antitrust injury
4    and antitrust conduct, these are separate bases
5    on which the claims should be assessed.
6           I'm happy to move on to the market
7    definition or move on to false advertising
8    and --
9           THE COURT:  Why don't you move on to
10   false advertising.
11          MS. MILICI:  Thank you, Your Honor.
12          So for the false advertising claim,
13   there's, again, like, a fundamental mismatch
14   between what they're saying Apple said is false
15   and why they say it's false.  So there's a
16   mismatch between the facts that they say the
17   statements are false and the statements
18   themselves, and I can talk about that in a
19   second.
20          In addition, they have again failed to
21   allege any proximate cause between what's the
22   injury to Masimo from these ads and what are
23   the steps in between.  Just to illustrate that
24   point, if you look at their allegations about
25   what it is Apple said and you look at it on the

19

1    blood oxygen feature, they have three
2    paragraphs in their counterclaims that describe
3    a 2020 launch, and there's a video of that
4    launch.  That video is available on YouTube.
5    They also allege that there have been articles
6    that came out since then that they say the
7    blood oxygen feature doesn't work unless you
8    use it right.  That's what those articles say.
9           Even if you were to take the articles to
10   mean what Masimo says they do, their product
11   didn't come out until the end of 2022.  I think
12   their theory is that people who were looking
13   for the blood oxygen monitors at the end of
14   2022 are going to go to YouTube, pull up the
15   video, watch the first 15 minutes of it in
16   which there's general discussion about blood
17   oxygen monitoring, and no statements made --
18   but then they're going to take a misimpression
19   from that about Apple and then not read
20   anything else and then not buy the W1 instead.
21          And I think they have not alleged those
22   chains, the steps of the chain of causation,
23   which as we see in the case, like *Lexmark*, but
24   also *Mispresto*, you need to allege in order to
25   plead a false advertising claim.  Just saying

20

1    they said this thing years ago and I lost
2    sales, it's not enough.  There has to be some
3    plausible allegation of the steps in the
4    causation there.
5           When we look at the particular
6    statements, I just rewatched that video this
7    morning.  It does not say what Masimo claims
8    its study proves is false.  It's statements
9    about the Apple watch generally, statements
10   about what blood oxygen is, what blood oxygen
11   measurements are used for, and statements that
12   you can measure your blood oxygen with the
13   Apple watch.  There's no statement in that
14   video or any of the other ads that they are
15   citing that says that this is -- that this is
16   the same.  It's suitable to replace a
17   hospital-grade monitor.  That's just not in
18   these statements.
19          And I think when you look at that, it's
20   clear that there's just a mismatch between what
21   they're doing -- and I'm going to leave aside,
22   of course, we have very serious criticisms of
23   the study that Masimo did -- and -- but we'll
24   stay in the four corners of the complaint for
25   this argument.

21

1    I would say the same thing on the IRN
2    features where, again, the statements that
3    they're referring to in their counterclaims say
4    that the Apple Watch will check for irregular
5    rhythms and irregular rhythms may be suggestive
6    of A-fib.  That's the statement.
7        And then they cite to a Mayo Clinic study
8    that said not everybody who mentioned the Apple
9    Watch when they presented to the ER had a
10   clinically actionable diagnosis when they leave
11   there.  I think when you read the study,
12   limitations of the study, that suggests it
13   can't be read the way Masimo wants to.  Even if
14   you were to accept their representation of it,
15   there's no statement where Apple ever said if
16   you get this notice, it means that when you get
17   to the ER that you will at that point have a
18   diagnosis that's going to be caught.  Again,
19   it's a mismatch between what they say are false
20   statements and the facts that they say prove
21   that they are false.
22       So, Your Honor, I'm happy to answer any
23   questions on any of these things.
24       THE COURT:  No, that was very
25   helpful.  Thank you very much.  I appreciate

22

1    it.
2        MS. MILICI:  Thank you.
3        THE COURT:  Let's hear from the other
4    side.  We gave Apple a little extra time.
5    You're welcome to have the extra time as well
6    if you need it.
7        MR. POWELL:  Thank you.  My name is
8    Adam Powell for counter-claimant Masimo, and
9    I'll start with the inequitable conduct claims.
10       And I want to start where counsel
11   started, which is this idea of who conducted or
12   who was responsible for the inequitable
13   conduct.  There's a lot of discussion of a
14   mismash, where there have supposedly some
15   allegations that are unclear as to whether
16   they're directed at Mr. Meyers or the named
17   inventors or Apple as a whole, and I think
18   that's wrong.
19       If you look as to each individual person,
20   I'll give you some examples, is that Mr. Meyers
21   is one of the individuals responsible for,
22   again, like you said, selecting which firm is
23   responsible for each aspect.  And Masimo has
24   alleged that Mr. Meyers withheld information
25   and concealed information, took affirmative

23

1    steps to prevent the disclosure of material
2    information to the Patent Office.
3        Now, we have separately alleged that
4    Apple did not disclose the information to the
5    Patent Office.  Those allegations about Apple
6    as a whole are really important for the --
7    but -- for materiality because if Mr. Meyers
8    concealed the information but someone else
9    disclosed it, Apple may say it's not material.
10   That's why we say nobody disclosed it from
11   Apple and then we say Mr. Meyers specifically
12   concealed it and he intended to deceive the
13   Patent Office.
14       The same is true for the named design
15   inventors.  The allegation isn't directed to
16   them collectively.  We used a defined term to
17   save space.  It could have been separate
18   paragraphs for each individual person.  The
19   idea also isn't that these named design
20   inventors, just by virtue of the fact they
21   developed the material, they must know it's
22   functional.  That's not the allegation.  The
23   allegation is they worked with the engineers
24   who do know the functional aspect of the
25   design.  They were aware of the functional

24

1    aspect because of the way they worked with the
2    engineers that developed the functional aspect.
3    Again, that --
4        I just don't think there's any mishmash.
5    The complaint is very specific and deliberate
6    as to who did each thing, and if you look at
7    Meyers alone, we pleaded everything we need to
8    plead, that he had knowledge of this functional
9    aspect, that he had knowledge of the withheld
10   art, and that he deliberately concealed that
11   information from the Patent Office.
12       Now, Apple also argues that this is a
13   novel theory, that the idea of selecting two
14   different law firms, one law firm to prosecute
15   design patents, a different one to prosecute
16   utility patents, a third one to assert some of
17   those same patents against Masimo in IPRs
18   they're saying is a novel theory, and nothing
19   supports that.  They've not cited any caselaw
20   dismissing the allegation from a complaint.
21       And I think that's what's important here,
22   is that the Patent Office is specific that you
23   don't have to allege someone actually signed a
24   paper and submitted it to the Patent Office.
25   The allegation is that the person has to be

25

1  substantively involved in the prosecution, and
2  one way you can be substantively involved is
3  deliberately picking who to prosecute the
4  patents so that you can keep information away
10:30AM 5  from the Patent Office.
6       And as Your Honor pointed out, it's sort
7  of fundamentally unfair to say, well, he
8  deliberately chose different people to
9  prosecute these applications, and he did so for
10:30AM 10  the specific purpose of withholding it from the
11  Patent Office so that Apple could obtain
12  patents that he knew were invalid and then to
13  say he didn't actually sign the paper itself so
14  therefore you're off the hook.  There's no
10:30AM 15  caselaw that supports that.  It's not supported
16  by the regulations that state who has a duty to
17  disclose.  And the allegation that, hey, this
18  is commonplace and Apple does it all the time,
19  look, that may or may not be true.  That is a
10:30AM 20  factual dispute, though.  It can't be resolved
21  in the pleadings.
22       Our allegations are very specific.  They
23  must be accepted as true and all inferences
24  have to be in our favor at this stage, and we
10:31AM 25  can see what discovery will yield and whether

26

1  we can ultimately prove our claims of
2  Mr. Meyers' intent.
3       So I also wanted to talk about this idea
4  that Mr. Meyers, they said, is false.  His name
10:31AM 5  never appears in the prosecution history.  This
6  was in our opposition.  His name is on the
7  customer list; right?  That's the issue is,
8  there's a -- I'm sorry.  Not customer list.  A
9  customer number; right?  That's the customer
10:31AM 10  number of everybody that has power of attorney
11  in that particular application, and we dealt
12  with that in our opposition.
13       And Apple responded with this case in
14  their reply, *Digital Ally*, and they said that
10:31AM 15  *Digital Ally* held a customer number in no way
16  indicates any role or responsibility in
17  prosecution.  That's incorrect.
18       If you look at this *Digital Ally* case,
19  there's a couple problems with it.  Number one,
10:31AM 20  it was not addressing inequitable conduct or
21  the standards at the pleading stage.  What it
22  was addressing is whether a prosecution bar
23  should apply far and wide.  And Apple didn't
24  quote the holding of the case.  They quoted a
10:32AM 25  declaration from the plaintiff in that case

27

1  that stated that "this customer number listing
2  for a Reese includes all practitioners in the
3  firm who are licensed to practice before the
4  USPTO but in no way indicates any role or
10:32AM 5  responsibility for prosecution on behalf of
6  that client."  It was a specific factual
7  allegation made by one of the parties in that
8  case.  It was not Court holding that a customer
9  number in no way indicates role in prosecution.
10:32AM 10       I'll move on briefly to the false
11  advertising.  My colleague will be addressing
12  the antitrust allegations include those
13  allegations that they relate to false
14  advertising, but on the merits of the false
10:32AM 15  advertising claim, we also have this argument
16  that there's a mismatch between the facts and
17  the proximate cause and what actually happened
18  here and what the allegation -- or what the
19  video says.
10:33AM 20       Counsel indicated that they reviewed the
21  video and it doesn't actually support an
22  argument that Apple is advertising blood oxygen
23  as clinically acceptable.  The issue there is
24  our complaint is very specific that -- and I'll
10:33AM 25  quote it.  This is paragraph 143 states that

28

1  "Apple falsely and continually associates the
2  Apple Watch's pulse oximetry feature with
3  medical use and reliable measurements."  We
4  then go on to have six paragraphs explaining
10:33AM 5  and quoting from all of the different
6  advertisements.  It's --
7       The argument is, well, we never actually
8  said it's clinically acceptable.  No, what you
9  did is you had a whole bunch of advertisements
10:34AM 10  that created that impression to the consumer,
11  and that's a false and misleading impression
12  because even Apple is not arguing that its
13  blood oxygen is actually accurate.  The reality
14  is the studies and various different
10:34AM 15  third-party --
16       (Loud noise in the courtroom.)
17       THE COURT:  Is everyone all right?
18       MR. PHILLIPS:  Knocking them over.
19       MR. POWELL:  What's in the complaint
10:34AM 20  is we have studies referenced, we have
21  statements from third parties all indicating
22  that the blood oxygen feature is not reliable.
23  And in fact, some of those third parties came
24  out and said, look, Apple is misleading
10:34AM 25  consumers.  We have that in our complaint where

29

1  the third parties say Apple is convincing
2  customers to use this in a way that's
3  inappropriate, and they have this sort of
4  fine-print disclaimer and they think that
10:34AM 5  immunizes them.  But the reality is people are
6  going to use this thing for medical purposes
7  when they have no justification for doing so.
8      Again, this is all pleaded in the
9  complaint beginning at paragraph 143.  The
10:35AM 10  allegations are very specific.  And really all
11  I'm hearing from counsel is disagreeing about
12  the facts, and those facts, again, that's a
13  question for another day.  At this point, they
14  need to be accepted as true.
10:35AM 15      And just very briefly on IRN, the
16  irregular rhythm notification.  This is the
17  same argument, is that, well, customer, Apple
18  says it may be indicative of a problem.  The
19  reality is 90 percent of people that went to
10:35AM 20  the hospital didn't have any new actionable
21  issue.  Now, Apple says it's actually
22  60 percent of them because some of them had an
23  existing problem; right?  Well, you've still
24  got 40 percent false positive.  About half of
10:35AM 25  the people that appear in the hospital don't

30

1  need help, and that's the problem, is Apple is
2  advertising the Apple watch as getting you help
3  when you need it.  That's the quote.  "When you
4  need it."  About half of the people at least,
10:36AM 5  even reading the article the way Apple wants to
6  read it, which would be improper at this stage,
7  about half of the people don't need help.
8      So the reality is, again, we have very
9  specific allegations.  This is a factual
10:36AM 10  dispute on the false advertising material.  The
11  allegations need to be accepted and taken all
12  inferences in our favor at this point.
13      So the only thing I'll add is, of course,
14  if there's some reason, some deficiency, of
10:36AM 15  course, there's more allegations that could be
16  added if we needed to amend, and I don't think
17  Apple is seriously asking for dismissal with
18  prejudice.  It was mentioned one time in a
19  conclusion, so there's really no support or
10:36AM 20  argument for that.
21      With that, unless you have any further
22  questions.
23      THE COURT:  No, thank you.
24      MR. POWELL:  Thank you.
10:36AM 25      MR. LARSON:  Good morning, Your Honor

31

1  Steven Larson for counter-claimant Masimo
2  before the Court.  I'll address the antitrust
3  issues.  I didn't hear argument about the
4  market power and definitions.  I'll skip those
10:37AM 5  unless the Court has any questions.
6      THE COURT:  No questions.
7      MR. LARSON:  I'll start where counsel
8  started with Walker process, and counsel argued
9  that our theory runs squarely into the Third
10:37AM 10  Circuit precedent.  The *TransWeb* is the Federal
11  Circuit's leading Walker process case.  It was
12  an appeal from the District of Delaware
13  applying Third Circuit precedent.  We also
14  cited the *Garden* case which a District of
10:37AM 15  Delaware case that denied summary judgment of
16  Walker process claims where the only allegation
17  of injury was attorney's fees and also there
18  was lost opportunities that were investment
19  opportunities that were alleged.  That was all.
10:37AM 20      In this case, we allege, certainly,
21  attorney's fees.  We also allege lost
22  opportunities, lost investments or lost
23  business opportunities, harm to our business
24  reputation.  And we explain, similar to what
10:38AM 25  *TransWeb* calls for, why Apple's conduct,

32

1  Apple's assertion of fraudulent patents, if
2  successful, would harm competition.  You saw in
3  *TransWeb* a really beautiful explanation on why
4  you focus on the harm to competition that would
10:38AM 5  result in the scheme is successful.  The
6  Federal Circuit explained the focus is on the
7  competition reducing act is filing a lawsuit
8  asserting fraudulent acts.
9      In its reply, Apple pointed to the *Otsuka*
10:38AM 10  case to argue what the Federal Circuit said
11  attorney's fees are not antitrust injuries,
12  that was really not what it meant.  It was
13  really just talking about damages, not
14  antitrust injury, and the *Otsuka* case is a
10:38AM 15  decision from the District of New Jersey.  But
16  this Court, in *Azurity* -- that's 2023 Westlaw
17  157732 -- rejected that interpretation from the
18  *Otsuka* case and said no, the *TransWeb* case
19  means what it says.  Attorney's fees spent in
10:39AM 20  response to a lawsuit asserting fraudulent
21  patents are antitrust injury.
22      THE COURT:  What's the case you just
23  mentioned?
24      MR. LARSON:  *Azurity*.  It's 2023
10:39AM 25  Westlaw 15732.  So that's three Delaware cases

33

1  supporting our view of *TransWeb* and how it
2  should apply here.
3      Our allegations are very similar.  We
4  explain in our complaint that what Apple is
10:39AM 5  trying to do here, again, they're pretty open
6  about it.  They filed this lawsuit, and they
7  sought expedited discovery because they might
8  seek a preliminary injunction.  They sought to
9  expedite the schedule because of potential harm
10:39AM 10  they think will result to the market shares and
11  our product competing.  They alleged in the
12  complaint that -- eventually what they argued
13  is our product is so powerful that it could
14  reach potentially 100 percent of the market.
10:39AM 15      And this is exactly what a Walker process
16  case is about, a party that asserts fraudulent
17  patents to stop competitors who actually have
18  the possibility of opening up competition,
19  displacing their market position, displacing
10:40AM 20  their monopoly power.  So I think we clearly
21  have an antitrust injury for the Walker
22  process.  That's straightforward.  If we manage
23  this injury of Walker process, we have standing
24  for all the theories.
10:40AM 25      Apple said we don't explain our antitrust

34

1  injuries for the other theories.  That's not
2  true.  In our brief, we pointed to paragraphs
3  where we explained why those other theories
4  aren't competition.  There wasn't much argument
10:40AM 5  about that in the brief, but I can go into more
6  detail on those.
7      If you have antitrust injury on on
8  theory, at that point you need to look at the
9  overall anti-competitive scheme, which we do.
10:40AM 10  And Apple argues you can't add lawful conduct
11  and lawful conduct to come up with an
12  anticompetitive scheme, but clearly asserting a
13  fraudulent patent is anti-competitive, and if
14  that is accepted, then you look at the overall
10:40AM 15  scheme.
16      I'll move on now to predatory
17  infringement and, essentially, the arguments in
18  the briefs was essentially there should be a
19  bright-line rule that patent infringement can
10:41AM 20  never be anticompetitive, and we show there is
21  no bright-line rule like that for the Federal
22  Circuit, and that makes a lot of the sense.
23  And we cited the *Styles* case that said, well,
24  it was part of an overall scheme of conduct in
10:41AM 25  that case.  The Court allows the allegations to

35

1  go forward, including allegations of
2  intellectual property theft, and that was in
3  California.
4      And we think it really makes sense here,
10:41AM 5  and we explain in great detail in our complaint
6  that Apple has a practice.  Apple calls it
7  efficient infringement.  We would call it
8  predatory infringement, which is Apple
9  identifies a market, identifies a technology
10:41AM 10  leader, purports to meet with the technology
11  leader, but ends up taking their technology and
12  eventually displaces the technology leader and
13  does so through, first of all, imperfect theft.
14  In other words, instead of lawfully working
10:41AM 15  with the technology leader, takes the
16  technology in a way that implements it
17  imperfectly, which spoils the market, which
18  harms the market.  If Masimo is coming out with
19  its watch now without Apple already being out
10:42AM 20  there with a pulse oximetry feature that
21  doesn't work well, I think the market would be
22  in a much better position to receive our
23  product.  And instead what you see is a
24  combination of conduct of Apple pulling out all
10:42AM 25  the stops, essentially, to try to stop us in

36

1  our tracks, stop the new product that Apple
2  recognizes is so powerful that it might
3  substantially erode Apple's market share.
4      It does that through, first of all,
10:42AM 5  taking our technology and imperfectly
6  implementing it which spoils the market,
7  engaging in false advertisement which hides the
8  fact of the flaws in its own technology, which
9  is even worse because once consumers experience
10:42AM 10  that -- they expect Apple -- if anybody is
11  going to have a product that works well, it's
12  going to be Apple.  They see pulse oximetry
13  doesn't work well, and that harms the market,
14  hurts us.
10:42AM 15      Also, as we're about to launch our
16  product, Apple exploits its power over IOS apps
17  to prevent our competing health app from being
18  able to be approved and does it through
19  affirmative conduct, not just failure to deal,
10:43AM 20  lack of deal, does it through, essentially,
21  trying to acquire confidential information
22  under false pretenses, is our allegation.  And
23  in that case, we cited the *Ally* court case
24  where the court denied a motion to dismiss
10:43AM 25  where the allegation was Apple was using its

37

1   power over IOS apps to harm the competing app,
2   to prevent that competing app --
3      In our case, not only do they harm our
4   competing app, but they harmed our actual
5   competing product in the nascent health watch
6   market just as it was being where released,
7   basically making it a worse product.  It is not
8   something that's just happened to Masimo.  It
9   happened to many companies.  It happened to
10   Alive Core.  This harm to composition is not
11   just harm to us, and I think if you look at the
12   overall scheme, it would make sense that we
13   would allege all these allegations as Apple
14   pulling all the stops out to try to stop us in
15   our tracks to try to stop us from releaseing
16   our product.
17      Going to monopoly leveraging, as we said,
18   we allege affirmative misconduct.  It's not
19   simply a lack of a duty to deal.  We point out
20   that Apple uses the developer agreement,
21   section 9.23, where Apple says we can use
22   whatever confidential information you give us
23   for any purpose and uses its power over IOS
24   apps to try to obtain confidential information
25   through that process.  And again, it's not just

38

1   harm to Masimo.  Apple has done this to other
2   companies, including Alive Core.
3      False advertising, as I mentioned, this
4   is part of the overall scheme where Apple tries
5   to hide the fraud in the imperfectly acquired
6   technology.  Apple again -- the pattern here is
7   you don't really see them squarely addressing
8   our allegations, at least in the briefing.  To
9   show whether or not plausible, Apple argues
10   bright-line rules.  They say you have to show
11   that it's clearly false, but we cited caselaw
12   including the pages -- including the pages that
13   explains it doesn't have to be clearly false.
14   It could be false or misleading.  It doesn't
15   have to be knowing.
16      And Apple also argues, well, you have to
17   show that you couldn't correct the false
18   advertising, but Apple cites cases where for,
19   example, the defendant sends a mailer to
20   hospitals that had some statements that were
21   arguably not true, and the Court said, well,
22   the plaintiff could easily send the same mailer
23   and correct those statements.  In our case, you
24   have Apple, largest company in the world,
25   basically a household name.  I read a report

39

1   that it spent probably $12 billion in
2   advertising in 2020, which is probably more
3   than Masimo's revenue, and the idea that
4   Masimo, which is still relatively unknown in
5   the consumer market, is going to put out an
6   advertising campaign that undoes the harm in
7   the public when it perceives Apple as a company
8   that's always going to have the best products,
9   the harm from that false advertising just
10   doesn't make a lot of sense.
11      In fact, in our complaint, we point out
12   there's an article in the *Washington Post* and
13   *Verge* that point out the flaws in Apple's
14   technology but that hasn't corrected the
15   problem.
16      We think to the extent the allegations
17   are required on that, we can provide it, but we
18   think what we have a sufficient, and the pages
19   confirm false advertising.  Our allegations are
20   plausible, and I think they should go foward.
21      I just make a brief note on fair
22   competition, which is that we point out that
23   even if the conduct that's pointed to doesn't
24   rise to the level of violating the Sherman Act,
25   it would still be an incipient violation under

40

1   California's unfair competition law, and we
2   pointed to the *Epic* case from the Northern
3   District of California.  I want to point out
4   since then the Ninth Circuit affirmed that case
5   and affirmed that under California law, even if
6   conduct doesn't quite rise to the level of
7   violating the Sherman Act, there can still be
8   an incipient violation.  And of course, we
9   think we more than satisfy showing that Apple
10   violated the Sherman Act.
11      If you think about it, incipient
12   violation, when you have a company like Masimo
13   on the cusp of providing that product, this
14   amazing product that would actually displace
15   Apple's dominant position, open up the market,
16   bring competition, reduce prices, provide more
17   choices, and Apple engages in all this conduct
18   to stop us in our tracks, we certainly think
19   that shows at least an incipient violation.
20      Unless Your Honor has questions, I think
21   that's all.
22      THE COURT:  Very good.  Thank you
23   very much.  We'll just give you a couple
24   minutes to make a reply.
25      MS. MILICI:  Thank you.  I appreciate

41

1 the opportunity.  There are a couple things
2 that counsel said that I really want to respond
3 to.
4         One is this idea that if they make it a
5 Walker process claim that means that they have
6 standing to seek broad discovery into anything
7 Apple has ever done.  That is not what the
8 caselaw says.  The caselaw is clear that they
9 have to state -- they have to plausibly allege
10 claims in order to have standing to bring those
11 claims.
12         THE COURT:  Let me just ask that
13 because this is always tricky for us.  So they
14 have a count that says attempted
15 monopolization, and they alleged a lot of
16 conduct in there.  And I heard them say -- I'm
17 thinking out loud here, just so you know -- I
18 heard them say as long as we allege one type of
19 anticompetitive conduct, we could move forward
20 with the claim.  You would agree if that was
21 right, they could move forward with the claim.
22 You're just saying they can't move forward with
23 discovery about other types of anticompetitive
24 conduct and conduct that independently states
25 the antitrust claim?

42

1         MS. MILICI:  I think there's
2 authority dealing with this both ways.  From
3 the District of Delaware, there's the *Thompson*
4 *Reuters* case where the court -- there was one
5 Section 2 claim with two different forms of
6 conduct and the the court dismissed the Section
7 2 claim based on one kind of conduct.  And it's
8 clear when you read the counterclaims, they're
9 saying each of these are independent claims.  I
10 as well as collective claims, so I think they
11 should be viewed individually.
12         There's a decision from Judge Boseberg in
13 DC in the Section 2 claim where he said this
14 theory is not viable because it's part of a
15 single claim.  I'm not going to dismiss the
16 claim, but you're not going to get discovery on
17 the non-viable theory because that would be an
18 absurd result.  That would mean every time
19 somebody has one theory and they have one
20 exclusionary contract theory that means that
21 they can just say anything and get discovery on
22 it, and that's just not the law.  And I would
23 point the Court to cases like *New York v.*
24 *Facebook* which really lays out why this is and
25 explains that, basically, otherwise nonviable

43

1 claims about unilateral refusals to deal would
2 be -- would have to go to discovery and would
3 be the subject of litigation and *Trinko* and
4 other case law explains why that shouldn't be.
5 This is unilateral conduct we're talking about,
6 and as you recognize in *Simon* and other cases,
7 there's a chilling effect if we allow claims
8 that don't have a plausible antitrust theory to
9 go forward because they happen to be thrown it.
10 And it encourages plaintiffs to throw in
11 everything they think of no matter how
12 plausible so that they can impose incredible
13 discovery allegations on the defendant.
14         THE COURT:  Understood.  And again,
15 I'm thinking out loud here.  I think what's
16 challenging for the Court in this particular
17 case given these particular parties and their
18 history of litigation against each other,
19 arguments about burdens of discovery are maybe
20 taken with a degree of skepticism, and I
21 don't -- but I get it.  I get what you're
22 saying.
23         MS. MILICI:  If I could just respond
24 to that point because I think we've been
25 engaging in discovery.  They served discovery

44

1 requests.  Some of the requests are asking for
2 things like, basically, every app store review
3 that Apple has ever done based on the thinnest
4 of allegations.  That hasn't been the subject
5 of discovery in any litigation between the
6 parties.  That's brand new litigation, brand
7 new discovery and not suggested by any of the
8 allegations in the complaint.
9         I will also say that counsel got up here
10 and talked about this supposed theory they
11 steal trade secrets.  That's being litigated in
12 the Central District of California.  That
13 cannot be relitigated here.  The Central
14 District of California case, when it has a
15 decision, it will be res ajudicata.  It's not
16 an antitrust injury anyway, but certainly they
17 don't get a second bite of the apple.  Judgment
18 as a matter of law was granted against them in
19 some of the claims by Judge Tilghman, and
20 jurors voted six to one among them on the
21 others until a mistrial was declared.  Those
22 issues are going to be decided there.  They're
23 not antitrust issues to begin with, but they
24 certainly don't get to come here and repackage
25 then them as antitrust violations and get a

45

1    different result than they got the first time.
2         THE COURT:  I understand.
3         MS. MILICI:  Just to make a couple
4    arguments on that.  I was surprised to hear
5    Apple stand here and talk about how Apple
6    prevented them from releasing an app.  Those
7    apps are available.  It's not true that Apple
8    prevented them from releasing them.  It's not
9    true that they gave Apple any confidential
10   information.  So they'll ask for allegations
11   that when you look at what they wrote down,
12   don't make any sense, and they have not
13   provided -- they have not identified any
14   unlawful conduct.
15        THE COURT:  Maybe one way to address
16   that concern that you have -- and I'm not
17   making any rulings today, so don't feel like
18   you need to jump up.  But that I say, okay, to
19   the extent there are some disputes about
20   discovery where they want every App Store
21   review -- I'm going to handle discovery for
22   this case -- you come back to me, and I say,
23   look, that's not going to happen or I say,
24   look, you've already got a bunch of discovery.
25   If you think that the trade secret

46

1    misappropriation stuff is relevant, maybe it
2    is, and maybe it isn't, but you've already got
3    the discovery.  Do you understand what I'm
4    saying?  Could we deal with some of that that
5    way?
6         MS. MILICI:  Your Honor, they haven't
7    satisfied *Twombly* on the App Store allegations,
8    and the entire point of *Twombly* is that you
9    shouldn't go forward with antitrust discovery
10   unless you can meet the pleading requirements,
11   and for these App Store allegations, as Your
12   Honor said in *Simon and Simon*, companies have
13   the ability to choose who they will deal with
14   and on what terms, and they have not alleged
15   anything, any unlawful conduct -- first of all,
16   they did claim that as to the scheme -- on page
17   nine of their brief, they say they're not
18   bringing that claim, and they have not
19   identified any unlawful conduct.  They don't
20   cite a single case saying that a company can't
21   ask for information from people who it deals
22   with.  I think they have to meet the pleading
23   requirements of this claim before they can seek
24   discovery.  I think that's a fundamental
25   principle.

47

1         THE COURT:  Okay.  I understand your
2    point.  Thank you.
3         MS. MILICI:  And just -- I didn't
4    hear them anywhere say anything about proximate
5    cause for -- on these advertisements.  Like, at
6    the end of the day, there is no link between
7    the advertisements that they say are false and
8    any harm to them, and that's the point that we
9    were making, Your Honor.
10        THE COURT:  All right.  Thank you.
11        MS. LIMBECK:  Your Honor, if I could
12   address a couple of the points they made on
13   inequitable conduct.
14        They made this argument that Mr. Meyers
15   was substantively involved in the prosecution
16   of the applications because he was listed among
17   50 or 100 attorneys under Apple's customer
18   number for those applications.  But first of
19   all, that is not anywhere in their pleading.
20   They did not actually allege that he's listed
21   on the customer number or has power of
22   attorney.
23        Second of all, even if they had alleged
24   that, that is not enough to show substantive
25   involvement.  This district -- we cited a case

48

1    from Judge Andrews where he dismissed
2    inequitable conduct allegations for two
3    attorneys for failure to disclose, failure to
4    show duty of disclosure because they were just
5    listed as power of attorney with five other
6    attorneys and they weren't substantively
7    involved in the prosecution.
8         And the Federal Circuit told us what
9    "substantive involvement" means.  It means
10   involvement with the content of the
11   applications, and they have not alleged that
12   Mr. Meyers had any involvement with these
13   particular applications at all.
14        And the other thing they say is, well,
15   Mr. Meyers and others at Apple generally hire
16   multiple law firms.  Again, that does not show
17   that Mr. Meyers himself specifically was
18   substantively involved in any of the
19   applications.  It shows the opposite.  Outside
20   counsel prosecuted these applications, not
21   Mr. Meyers, the chief of IP at Apple.
22        And then with respect to their other
23   points, they keep saying we've made these
24   allegations and you should take them as true.
25   But that does not meet the heightened pleading

49

1 standard for inequitable conduct.  They
2 actually need to plead particular facts that
3 identify a specific individual and particular
4 facts from which you can reasonably infer that
10:57AM 5 that particular individual had knowledge of
6 specific references that were withheld, and
7 they have not done that here for Mr. Meyers,
8 and they haven't done it for all 21 of the
9 design inventors.
10:57AM 10     In fact, they admit the only allegation
11 they have against the design inventors is that
12 they were involved in development.  If that
13 were enough for inequitable conduct, every
14 single defendant that pleads invalidity could
10:57AM 15 also plead on information and belief the
16 inventors must have known the patent was
17 invalid for this reason or that reason;
18 therefore, we have an inequitable conduct claim
19 against the inventors.  That would eviscerate
10:57AM 20 the heightened pleading standard, and Your
21 Honor should not allow that sort of an argument
22 here.
23     So they can move forward with their
24 invalidity arguments.  We disagree with them,
10:58AM 25 obviously, but they cannot just rely on their

50

1 own invalidity contentions to then argue that
2 someone specific actually committed some sort
3 of misconduct that would rise to the heightened
4 pleading standard for inequitable conduct here.
10:58AM 5     THE COURT:  All right.  Thank you
6 very much.
7     If you feel like you need to respond, you
8 can because we did give them some extra time,
9 but there's no requirement.
10:58AM 10     MR. LARSON:  First of all, I really
11 disagree with how you characterize our
12 discovery.  We didn't serve any requests
13 remotely like that that I recall.  And as Your
14 Honor pointed out, that can be handled on
15 discovery to the extent the requests are too
16 broad.
17     Second, on particular theories of
18 antitrust, I don't think this is a good forum
19 to decide the economics of our theories because
10:58AM 20 Apple primarily argues bright-line rules.  We
21 argued about the bright-line rules.  We think
22 to the extent particular theories are going to
23 be addressed, they should be addressed with
24 expert testimony on the economics, if anything
10:59AM 25 in summary judgment, and you should look at the

51

1 conduct as a whole, which will be developed at
2 that time.
3     And third, Apple mentioned that it
4 approved our health app, but that was after we
10:59AM 5 filed a lawsuit, and we mentioned and show in
6 our complaint a repeated pattern, and certainly
7 the fact the Apple eventually allowed the app
8 doesn't undo the harm at the critical moment of
9 our launch, and certainly doesn't undo the harm
10:59AM 10 to competition as a whole.
11     THE COURT:  Just to make sure I
12 understand, sorry, there was a delay in Apple
13 approving on the App Store, but the app is
14 approved now?
10:59AM 15     MR. LARSON:  The app is approved now,
16 but the only thing I would say in our complaint
17 is not just that there was a delay or they
18 refused to approve it, it's a pattern we see
19 where they're seeking confidential information
10:59AM 20 from it, and they use Section 9.3 of the
21 agreement that we discussed in our complaint,
22 which says they can use whatever confidential
23 information they get for whatever purpose.  And
24 you see a pattern of trying to get the
10:59AM 25 confidential information.  They're directly

52

1 competing with the Health Watch product.
2     THE COURT:  I understand we're going
3 outside the pleadings now, but I'm trying to
4 understand what's going on here.  You didn't
11:00AM 5 give them the confidential information?
6     MR. LARSON:  We did.  We resisted
7 giving them confidential information.
8     THE COURT:  They had it from the
9 other case; right?
11:00AM 10     MR. LARSON:  Depending on what
11 confidential information -- we were very
12 careful about making sure Apple itself did not
13 have it.  And like I said, this is not just us.
14 It's also Alive Core.  In that case, Alive
11:00AM 15 Core -- Apple was not allowed at all, so
16 there's a pattern here.  We think, certainly,
17 it's a part of the overall scheme and part of
18 the overall conduct that we think would be
19 relevant here in providing analysis of
11:00AM 20     THE COURT:  You all reminded me that
21 I've written a lot about antitrust cases, but
22 I'm still newer to this than I know a lot of
23 you are.  Because this is an attempted
24 monopolization claim, is it relevant to intent
11:00AM 25 even though it didn't cause any harm?

53

1    MR. LARSON: First of all, it would
2  be relevant to intent, absolutely. Intent is
3  also shown by conduct in antitrust cases, but
4  certainly actual intent, evidence taken during
5  discovery, the actions they engaged in to try
6  to block us would absolutely be relevant.
7    To clarify, we are also asserting
8  monopolization. Both monopolization and
9  alternative attempt at monopolization, the
10  theory being that even if they don't have
11  market share now for us to assert that they're
12  trying to maintain or bolster the monopoly
13  power, the conduct is such that there's a
14  dangerous probability that if the scheme were
15  successful, they would attain that monopoly
16  power, that market share.
17    THE COURT: Right. But for the
18  Walker process, that can only be attempted.
19    MR. LARSON: In the *Garden* case it
20  was both monopolization and attempted
21  monopolization. And in *TransWeb*, it was
22  attempted monopolization, which may be what
23  Your Honor is thinking of. And certainly the
24  theory the harm that will result if the scheme
25  is successful is particularly powerful in the

54

1  attempt -- as to the attempted claim, but we
2  think it's equally applicable to a
3  monopolization claim because really the
4  difference is for attempt, you're looking at
5  the dangerous probability the scheme will
6  result in obtaining monopoly power. For
7  monopolization, you're pointing to the same
8  conduct but the theory is the conduct will help
9  maintain the monopoly power as opposed to lose
10  it or bolster it. They're pled in the
11  alternative.
12    THE COURT: Monopoly maintenance.
13  Thank you.
14    So we went a little longer today than we
15  allotted, but that's okay because I always
16  enjoy hearing from my learned friends in the
17  antitrust bar, so here's what I'll say. We
18  took a lot of time before the hearing today to
19  try to be repaired for today's hearing, and we
20  heard the argument today. We're going to go
21  back and look at some of the cases that you all
22  referred us to, but I do want to get you an
23  answer on this, both because it's fresh in my
24  mind and I also know that discovery is ongoing
25  and on a short schedule. I'm just not going to

55

1  be ready to do that for you today, and Monday
2  is a new federal holiday.
3    So what I'd like to do is have you back
4  on the phone for me on Tuesday, and that way I
5  can just read my report and recommendation, and
6  we'll have the court reporter take it down to
7  make a record of it. So we'll put on order on
8  the docket today. I think we'll try to do it
9  probably mid to late morning, but we'll just
10  give you the court's dial-in number. If we
11  could have one attorney for each side to dial
12  in to receive the ruling, that would be
13  sufficient.
14    I think that concludes everything. I
15  know we've got a couple outstanding matters
16  that have come in on the docket with respect to
17  the discovery or protective order dispute or
18  stipulation. We'll get to that as soon as we
19  can. As you all, I'm sure, are aware, it's a
20  constant barrage that comes in, so we try to
21  triage as much as we can.
22    All right. We'll be in recess. Thank
23  you.
24
25

56

1    C E R T I F I C A T E

2  STATE OF DELAWARE        )
                            ) ss:
3  COUNTY OF NEW CASTLE     )

4    I, Deanna L. Warner, a Certified
5  Shorthand Reporter, do hereby certify that as
6  such Certified Shorthand Reporter, I was
7  present at and reported in Stenotype shorthand
8  the above and foregoing proceedings in Case
9  Number 22-CV-1377-MN-JLH, *APPLE INC. Vs. MASIMO
10  CORP., et al.*, heard on June 15, 2023.
11    I further certify that a transcript of
12  my shorthand notes was typed and that the
13  foregoing transcript, consisting of 56
14  typewritten pages, is a true copy of said
15  MOTION HEARING.
16    SIGNED, OFFICIALLY SEALED, and FILED
17  with the Clerk of the District Court, NEW
18  CASTLE County, Delaware, this 16th day of June,
19  2023.
20
21    _____
        Deanna L. Warner, CSR, #1687
22    Speedbudget Enterprises, LLC
23
24
25

# #

**#1687** [1] - 56:20

# $

**$12** [1] - 38:24

# 1

**100** [2] - 33:12, 47:15
**143** [2] - 27:23, 29:7
**15** [3] - 4:4, 19:14, 56:10
**15732** [1] - 32:23
**157732** [1] - 32:15
**15th** [1] - 1:13

# 2

**2** [3] - 42:3, 42:5, 42:11
**2020** [2] - 19:2, 38:25
**2022** [2] - 19:10, 19:13
**2023** [4] - 1:13, 32:14, 32:22, 56:10
**21** [4] - 4:18, 6:19, 12:13, 49:6
**22-1378** [1] - 3:6
**22-CV-1377-JLH** [1] - 3:4
**22-CV-1377-MN** [1] - 1:5
**22-CV-1377-MN-JLH** [1] - 56:9
**22-CV-1378-MN** [1] - 1:7
**2B** [1] - 1:12

# 4

**40** [1] - 29:22

# 5

**50** [1] - 47:15
**56** [1] - 56:13

# 6

**60** [1] - 29:20

# 9

**9(b)** [2] - 4:20, 7:19
**9.23** [1] - 37:19
**9.3** [1] - 51:18
**90** [1] - 29:17

# A

**A-fib** [1] - 21:5
**ability** [2] - 12:12, 46:11
**able** [4] - 7:14, 14:11, 17:25, 36:16
**absolutely** [2] - 52:25, 53:4
**absurd** [1] - 42:16
**accept** [1] - 21:13
**acceptable** [2] - 27:21, 28:6
**accepted** [4] - 25:21, 29:12, 30:9, 34:12
**access** [1] - 14:24
**accurate** [1] - 28:11
**accusing** [1] - 9:12
**acquire** [1] - 36:19
**acquired** [1] - 38:3
**act** [4] - 16:10, 32:5, 39:22, 40:8
**Act** [1] - 40:5
**actionable** [2] - 21:9, 29:18
**actions** [1] - 53:3
**acts** [1] - 32:6
**actual** [5] - 10:12, 14:5, 16:16, 37:2, 53:2
**ADAM** [1] - 2:5
**Adam** [2] - 3:23, 22:7
**add** [3] - 10:14, 30:11, 34:8
**added** [1] - 30:14
**addition** [3] - 15:13, 16:25, 18:19
**additional** [1] - 6:18
**additionally** [1] - 5:17
**address** [4] - 4:10, 30:25, 45:13, 47:10
**addressed** [2] - 50:21
**addressing** [5] - 4:9, 26:18, 26:20, 27:9, 38:5
**admit** [1] - 49:8
**ads** [3] - 17:15, 18:21, 20:13
**advertisement** [1] - 36:5
**advertisements** [4] -

28:4, 28:7, 47:3, 47:5
**advertising** [21] - 4:11, 17:10, 17:12, 17:18, 18:1, 18:6, 18:9, 18:11, 19:24, 27:9, 27:12, 27:13, 27:20, 29:25, 30:8, 38:1, 38:16, 38:25, 39:4, 39:7, 39:17
**affirmatively** [1] - 12:14
**affirmed** [2] - 40:2, 40:3
**agent** [1] - 5:2
**ago** [1] - 19:25
**agree** [4] - 10:18, 10:25, 11:2, 41:18
**agreement** [2] - 37:18, 51:19
**ahead** [1] - 14:14
**ajudicata** [1] - 44:13
**al** [2] - 1:7, 56:10
**Alive** [4] - 37:8, 37:25, 52:12
**allegation** [19] - 5:5, 5:8, 5:12, 6:18, 7:4, 15:4, 20:2, 23:13, 23:20, 23:21, 24:18, 24:23, 25:15, 27:5, 27:16, 31:14, 36:20, 36:23, 49:8
**allegations** [38] - 4:19, 6:15, 6:21, 10:6, 10:12, 10:13, 10:21, 11:5, 11:10, 12:9, 14:19, 16:3, 17:24, 18:23, 22:14, 23:4, 25:20, 27:10, 27:11, 29:8, 30:7, 30:9, 30:13, 33:1, 34:23, 34:24, 37:11, 38:6, 39:14, 39:17, 43:11, 44:2, 44:4, 45:8, 46:5, 46:9, 47:25, 48:22
**allege** [22] - 5:21, 6:22, 8:19, 12:10, 12:12, 12:14, 14:20, 15:3, 16:7, 16:17, 17:3, 18:20, 19:4, 19:23, 24:21, 31:18, 31:19, 37:11, 37:16, 41:7, 41:16, 47:18
**alleged** [11] - 11:22, 17:5, 19:20, 22:23, 23:2, 31:17, 33:9, 41:13, 46:12, 47:21, 48:9
**allegedly** [1] - 5:24

**alleges** [2] - 15:13, 16:4
**alleging** [6] - 13:18, 14:21, 14:25, 17:20, 17:21, 17:23
**allotted** [1] - 54:13
**allow** [2] - 43:5, 49:19
**allowed** [1] - 51:5, 52:13
**allows** [1] - 34:23
**Ally** [4] - 26:12, 26:13, 26:16, 36:21
**alone** [3] - 5:25, 6:25, 24:5
**alternative** [2] - 53:7, 54:9
**amazing** [1] - 40:12
**amend** [1] - 30:14
**amount** [1] - 7:21
**amounts** [1] - 9:6
**analysis** [1] - 52:17
**AND** [1] - 1:2
**Anderson** [1] - 3:10
**ANDERSON** [1] - 1:16
**Andrews** [1] - 47:24
**Ann** [2] - 3:13, 4:8
**ANN** [1] - 1:19
**answer** [3] - 10:17, 21:21, 54:21
**anti** [2] - 34:7, 34:11
**anti-competitive** [1] - 34:7, 34:11
**anticompetitive** [5] - 15:8, 34:10, 34:18, 41:17, 41:21
**antitrust** [35] - 4:10, 10:4, 10:14, 10:21, 11:6, 11:7, 12:4, 12:6, 14:3, 14:16, 14:19, 15:17, 16:2, 17:11, 17:18, 18:2, 18:3, 27:10, 30:25, 32:9, 32:12, 32:19, 33:19, 33:23, 34:5, 41:23, 43:6, 44:14, 44:21, 44:23, 46:7, 50:16, 52:19, 53:1, 54:15
**anyway** [1] - 44:14
**app** [15] - 10:8, 36:15, 36:24, 36:25, 37:2, 43:25, 45:4, 45:18, 46:5, 46:9, 51:2, 51:5, 51:11, 51:13
**appeal** [2] - 12:8, 31:10
**appear** [2] - 5:9, 29:23
**APPEARANCES** [1] - 1:15
**appearances** [2] - 2:1,

3:7
**apple** [2] - 38:4, 44:15
**APPLE** [2] - 1:3, 56:9
**Apple** [95] - 3:2, 3:4, 3:11, 3:16, 4:8, 4:16, 4:17, 6:6, 9:7, 9:11, 9:12, 9:17, 10:6, 11:11, 11:14, 13:8, 14:8, 15:14, 16:10, 16:18, 16:22, 16:23, 17:4, 18:13, 18:24, 19:18, 20:8, 20:12, 21:3, 21:7, 21:14, 22:3, 22:16, 23:3, 23:4, 23:8, 23:9, 24:10, 25:9, 25:16, 26:11, 26:21, 27:20, 27:24, 27:25, 28:10, 28:22, 28:24, 29:15, 29:19, 29:24, 29:25, 30:3, 30:15, 32:7, 33:2, 33:23, 34:8, 35:4, 35:6, 35:17, 35:22, 35:24, 36:8, 36:10, 36:14, 36:23, 37:11, 37:18, 37:19, 37:24, 38:2, 38:7, 38:14, 38:16, 38:22, 39:5, 40:7, 40:15, 41:5, 44:1, 45:3, 45:5, 45:7, 48:13, 48:19, 50:18, 51:1, 51:5, 51:10, 52:10, 52:13
**Apple's** [8] - 4:21, 18:1, 31:23, 31:24, 36:1, 39:11, 40:13, 47:15
**applicable** [1] - 53:25
**application** [1] - 26:9
**applications** [8] - 5:3, 25:7, 47:14, 47:16, 48:9, 48:11, 48:17, 48:18
**apply** [3] - 17:11, 26:21, 32:25
**applying** [1] - 31:11
**appreciate** [2] - 21:24, 40:23
**approve** [1] - 51:16
**approved** [4] - 36:16, 51:2, 51:12, 51:13
**approving** [1] - 51:11
**apps** [4] - 36:14, 36:24, 37:22, 45:5
**arguably** [3] - 7:19, 7:20, 38:19
**argue** [2] - 32:8, 49:24
**argued** [3] - 31:6, 33:10, 50:19

**argues** [5] - 24:10, 34:8, 38:7, 38:14, 50:18
**arguing** [1] - 28:10
**argument** [13] - 11:11, 14:17, 20:24, 27:13, 27:20, 28:5, 29:15, 30:18, 31:1, 34:2, 47:12, 49:19, 54:18
**arguments** [4] - 34:15, 43:17, 45:2, 49:22
**art** [1] - 24:8
**article** [2] - 30:3, 39:10
**articles** [3] - 19:4, 19:7, 19:8
**articulate** [1] - 7:14
**aside** [1] - 20:20
**aspect** [5] - 22:22, 23:22, 23:24, 23:25, 24:7
**aspects** [1] - 8:6
**assert** [3] - 4:15, 24:14, 53:9
**asserted** [3] - 4:14, 11:16, 13:8
**asserting** [6] - 13:20, 17:1, 32:6, 32:18, 34:10, 53:5
**assertion** [1] - 31:24
**asserts** [2] - 4:12, 33:14
**assessed** [1] - 18:4
**associates** [1] - 27:24
**attain** [1] - 53:13
**attempt** [3] - 53:7, 53:24, 54:2
**attempted** [6] - 41:12, 52:21, 53:16, 53:18, 53:20, 53:24
**attorney** [6] - 5:1, 5:6, 26:8, 47:20, 48:3, 55:9
**attorney's** [5] - 12:4, 31:15, 31:19, 32:9, 32:17
**attorneys** [2] - 47:15, 48:1, 48:4
**attributes** [1] - 6:5
**authority** [1] - 41:25
**available** [2] - 19:3, 45:5
**awarded** [1] - 12:1
**aware** [2] - 23:23, 55:17
**Azurity** [2] - 32:14, 32:22

## B

**bar** [2] - 26:20, 54:15
**bard** [1] - 13:17
**bare** [1] - 5:8
**barrage** [1] - 55:18
**based** [4] - 17:12, 17:18, 42:5, 44:1
**bases** [1] - 18:3
**basis** [2] - 15:17, 16:1
**beautiful** [1] - 32:1
**begin** [1] - 44:21
**beginning** [1] - 29:7
**behalf** [3] - 3:10, 4:8, 27:3
**belief** [2] - 7:6, 49:13
**best** [1] - 39:6
**better** [1] - 35:20
**between** [9] - 18:13, 18:15, 18:20, 18:22, 20:19, 21:18, 27:14, 44:3, 47:4
**big** [1] - 8:2
**billion** [1] - 38:24
**Bindu** [1] - 3:11
**BINDU** [1] - 1:17
**bite** [1] - 44:15
**block** [1] - 53:4
**blood** [10] - 18:25, 19:6, 19:12, 19:15, 20:9, 20:11, 27:20, 28:11, 28:20
**bolster** [2] - 53:10, 54:8
**Boseberg** [1] - 42:10
**brand** [1] - 44:4
**Brian** [1] - 3:23
**BRIAN** [1] - 2:6
**brief** [6] - 10:3, 16:8, 33:25, 34:3, 39:19, 46:15
**briefing** [1] - 38:6
**briefly** [2] - 27:8, 29:13
**briefs** [1] - 34:16
**bright** [5] - 34:17, 34:19, 38:8, 50:18, 50:19
**bright-line** [5] - 34:17, 34:19, 38:8, 50:18, 50:19
**bring** [2] - 40:14, 41:8
**bringing** [1] - 46:16
**brings** [2] - 15:21, 15:25
**broad** [2] - 41:4, 50:14
**bunch** [2] - 28:7, 45:22
**burdens** [1] - 43:17

**business** [4] - 11:24, 15:1, 31:21
**buy** [1] - 19:19
**BY** [2] - 1:16, 1:23

## C

**caffeine** [1] - 13:2
**California** [5] - 35:1, 40:1, 40:3, 44:10, 44:12
**California 's** [1] - 39:24
**campaign** [1] - 39:4
**cannot** [9] - 4:19, 4:23, 5:18, 6:13, 9:9, 10:14, 15:17, 44:11, 49:23
**careful** [1] - 52:10
**carefully** [1] - 10:21
**case** [50] - 4:17, 5:4, 5:11, 5:18, 6:13, 6:17, 11:20, 12:1, 12:6, 12:15, 13:9, 13:14, 13:15, 13:16, 14:11, 15:22, 19:22, 26:11, 26:16, 26:22, 26:23, 27:6, 31:9, 31:12, 31:13, 31:18, 32:8, 32:12, 32:16, 32:20, 33:14, 34:21, 34:23, 36:21, 37:1, 38:21, 39:25, 40:2, 42:2, 43:2, 43:15, 44:12, 45:20, 46:18, 47:23, 52:7, 52:12, 53:17
**Case** [2] - 1:5, 56:8
**caselaw** [7] - 7:17, 15:2, 15:15, 16:13, 24:17, 25:13, 38:9, 41:6
**cases** [12] - 3:2, 4:13, 5:20, 13:25, 15:18, 32:23, 38:16, 42:21, 43:4, 52:19, 53:1, 54:19
**CASTLE** [1] - 56:3
**catch** [1] - 7:15
**caught** [1] - 21:17
**causation** [2] - 19:21, 20:3
**caused** [2] - 13:19, 17:4
**central** [2] - 44:10, 44:11
**certainly** [10] - 11:8, 31:18, 40:16, 44:14, 44:22, 51:4, 51:7, 52:14, 53:2, 53:21

**Certified** [2] - 56:4, 56:6
**certify** [2] - 56:5, 56:11
**chain** [1] - 19:21
**chains** [1] - 19:21
**challenging** [2] - 13:7, 43:14
**channel** [1] - 14:25
**characterize** [1] - 50:9
**charge** [2] - 8:3, 9:2
**check** [1] - 21:3
**chief** [3] - 4:16, 4:21, 48:19
**chilling** [1] - 43:5
**chock** [1] - 17:13
**choice** [1] - 13:3
**choices** [1] - 40:15
**choose** [2] - 16:11, 46:11
**chose** [1] - 25:6
**Circuit** [7] - 7:16, 8:18, 9:8, 32:4, 32:8, 34:20, 48:6
**circuit** [5] - 13:24, 13:25, 31:8, 31:11, 40:2
**Circuit's** [1] - 31:9
**cite** [4] - 6:13, 13:17, 21:6, 46:18
**cited** [7] - 15:15, 24:17, 31:12, 34:21, 36:21, 38:9, 47:23
**cites** [5] - 5:7, 6:24, 38:16
**citing** [1] - 20:14
**claim** [27] - 7:25, 10:16, 11:3, 15:17, 16:2, 16:6, 17:18, 18:1, 18:11, 19:24, 27:13, 41:3, 41:18, 41:19, 41:23, 42:3, 42:5, 42:11, 42:13, 42:14, 46:14, 46:16, 46:21, 49:16, 52:22, 53:24, 54:1
**claimant** [2] - 22:7, 30:24
**claimed** [1] - 7:6
**claims** [18] - 7:22, 8:4, 8:5, 10:4, 15:5, 17:11, 18:4, 20:6, 22:8, 25:24, 31:14, 41:8, 41:9, 42:7, 42:8, 42:24, 43:5, 44:17
**clarify** [1] - 53:5
**clear** [6] - 7:17, 7:20, 14:16, 20:19, 41:6, 42:6

**clearly** [5] - 15:20, 33:18, 34:10, 38:9, 38:11
**Clerk** [1] - 56:17
**client** [1] - 27:4
**clinic** [1] - 21:6
**clinically** [3] - 21:9, 27:21, 28:6
**close** [1] - 17:17
**closely** [1] - 16:15
**co** [3] - 3:12, 4:10, 11:4
**co-counsel** [3] - 3:12, 4:10, 11:4
**colleague** [1] - 27:9
**collective** [1] - 42:8
**collectively** [3] - 4:18, 6:20, 23:14
**combination** [1] - 35:22
**coming** [1] - 35:16
**committed** [2] - 6:20, 49:25
**commonplace** [1] - 25:16
**companies** [3] - 37:7, 37:25, 46:10
**company** [6] - 8:2, 9:7, 38:22, 39:5, 40:10, 46:18
**compartmentalized** [1] - 6:11
**compete** [2] - 12:12, 17:22
**competing** [7] - 33:9, 36:15, 36:24, 36:25, 37:2, 37:3, 51:24
**competition** [10] - 13:19, 31:25, 32:2, 32:5, 33:16, 34:2, 39:20, 39:24, 40:14, 51:8
**competitive** [3] - 15:25, 34:7, 34:11
**competitors** [4] - 15:21, 15:25, 17:14, 33:15
**competitors '** [1] - 17:15
**complaining** [2] - 14:6, 17:14
**complaint** [19] - 12:13, 15:5, 16:16, 16:24, 20:23, 24:3, 24:18, 27:22, 28:17, 28:23, 29:7, 33:2, 33:10, 35:3, 39:9, 44:6, 51:4, 51:14, 51:19
**composition** [1] - 37:8
**concealed** [4] - 22:24,

23:6, 23:10, 24:8
**concern** [1] - 45:14
**concludes** [1] - 55:12
**conclusion** [1] - 30:17
**conclusorily** [1] - 17:1
**conclusory** [2] - 5:12, 15:5
**conduct** [54] - 4:9, 4:12, 6:4, 6:20, 7:22, 7:25, 8:13, 8:14, 8:17, 9:1, 9:20, 11:5, 14:20, 15:8, 15:11, 15:21, 15:22, 15:24, 16:7, 18:3, 22:8, 22:12, 26:18, 31:23, 34:8, 34:9, 34:22, 35:22, 36:17, 39:21, 40:4, 40:15, 41:14, 41:17, 41:22, 42:4, 42:5, 43:3, 45:12, 46:13, 46:17, 47:11, 47:25, 48:24, 49:11, 49:16, 50:2, 50:24, 52:16, 53:1, 53:11, 54:6
**conducted** [1] - 22:10
**confidential** [14] - 10:8, 16:9, 16:18, 16:19, 36:19, 37:20, 37:22, 45:7, 51:17, 51:20, 51:23, 52:3, 52:5, 52:9
**confirm** [1] - 39:17
**conflicting** [1] - 10:6
**consisting** [1] - 56:13
**constant** [1] - 55:18
**consumer** [2] - 28:8, 39:3
**consumers** [2] - 28:23, 36:7
**content** [1] - 48:8
**contentions** [1] - 49:24
**contested** [2] - 12:7, 12:8
**context** [1] - 12:5
**continually** [1] - 27:24
**continued** [1] - 2:1
**contract** [1] - 42:18
**contradict** [1] - 17:23
**convincing** [1] - 28:24
**copy** [1] - 56:14
**core** [2] - 52:12, 52:13
**Core** [2] - 37:8, 37:25
**corners** [1] - 20:23
**CORP** [2] - 1:7, 56:10
**correct** [2] - 38:15, 38:21
**corrected** [1] - 39:12
**CORROON** [1] - 1:16

**cost** [1] - 12:10
**costs** [1] - 11:23
**Counsel** [1] - 2:7
**counsel** [24] - 1:24, 3:12, 4:10, 4:13, 4:22, 11:4, 22:9, 27:18, 29:9, 31:5, 31:6, 40:25, 44:7, 48:18
**count** [1] - 41:12
**counter** [2] - 22:7, 30:24
**counter-claimant** [2] - 22:7, 30:24
**counterclaims** [4] - 10:5, 19:1, 21:2, 42:6
**country** [1] - 15:15
**COUNTY** [2] - 56:3, 56:17
**County** [1] - 56:18
**couple** [6] - 26:17, 40:21, 40:24, 45:1, 47:10, 55:13
**course** [6] - 9:18, 16:10, 20:21, 30:11, 30:13, 40:6
**Court** [9] - 5:21, 12:3, 27:6, 30:25, 31:3, 38:19, 42:21, 43:14, 56:17
**court** [8] - 17:8, 32:14, 34:23, 36:21, 36:22, 42:2, 42:4, 55:4
**COURT** [36] - 1:1, 3:1, 3:18, 3:25, 7:13, 8:24, 9:23, 10:18, 12:18, 12:22, 12:25, 13:11, 14:12, 15:6, 15:9, 18:8, 21:23, 22:2, 28:15, 30:21, 31:4, 32:20, 40:20, 41:10, 43:12, 44:25, 45:13, 46:24, 47:8, 50:3, 51:9, 51:25, 52:6, 52:18, 53:15, 54:10
**court's** [1] - 55:8
**courtroom** [2] - 3:22, 56:18
**Courtroom** [1] - 1:12
**courts** [3] - 10:20, 17:10, 17:13
**created** [1] - 28:8
**critical** [1] - 51:6
**criticisms** [1] - 20:21
**CSR** [1] - 56:20
**curb** [1] - 7:21
**cusp** [1] - 40:11
**customer** [10] - 26:5,

26:6, 26:7, 26:13, 26:24, 27:6, 29:15, 47:15, 47:19
**customers** [2] - 11:25, 28:25

# D

**damages** [3] - 12:5, 17:16, 32:11
**dangerous** [2] - 53:12, 54:3
**DATE** [1] - 56:18
**DAVID** [1] - 1:16
**David** [1] - 3:10
**DC** [1] - 42:11
**deal** [7] - 16:12, 36:17, 36:18, 37:17, 42:24, 46:2, 46:11
**dealing** [2] - 15:19, 41:25
**deals** [1] - 46:19
**dealt** [1] - 26:9
**Deanna** [2] - 56:4, 56:20
**deceive** [4] - 6:3, 6:12, 7:3, 23:11
**decide** [1] - 50:17
**decided** [1] - 44:20
**decision** [3] - 32:13, 42:10, 44:13
**declaration** [1] - 26:23
**declared** [1] - 44:19
**defend** [1] - 13:4
**defendant** [3] - 38:17, 43:11, 49:12
**Defendants** [2] - 1:8, 2:7
**defense** [1] - 14:11
**deficiency** [1] - 30:12
**defined** [1] - 23:14
**definition** [1] - 18:6
**definitions** [1] - 31:2
**degree** [1] - 43:18
**DELAWARE** [2] - 1:2, 56:2
**Delaware** [5] - 31:10, 31:13, 32:23, 42:1, 56:18
**delay** [2] - 51:10, 51:15
**deliberate** [1] - 24:3
**deliberately** [5] - 6:2, 6:10, 24:8, 25:1, 25:6
**denied** [2] - 31:13, 36:22
**department** [1] - 9:11
**describe** [1] - 19:1

**design** [14] - 4:17, 4:25, 5:11, 6:8, 6:17, 6:19, 7:4, 8:4, 23:12, 23:17, 23:23, 24:13, 49:7, 49:9
**designs** [1] - 7:6
**Desmarais** [1] - 3:13
**DESMARAIS** [1] - 1:19
**detail** [2] - 34:4, 35:3
**developed** [2] - 23:19, 23:25, 50:24
**developer** [1] - 37:18
**developers** [1] - 10:9
**development** [3] - 7:8, 7:10, 49:10
**diagnosis** [2] - 21:9, 21:17
**dial** [2] - 55:8, 55:9
**dial-in** [1] - 55:8
**difference** [1] - 54:2
**different** [10] - 6:7, 9:16, 24:12, 24:13, 25:6, 28:3, 28:12, 42:3, 44:24
**Digital** [3] - 26:12, 26:13, 26:16
**directed** [2] - 22:15, 23:13
**directly** [2] - 13:24, 51:23
**disagree** [3] - 8:6, 49:22, 50:9
**disagreeing** [1] - 29:9
**disclaimer** [1] - 29:2
**disclose** [6] - 5:13, 8:21, 9:3, 23:3, 25:15, 48:1
**disclosed** [2] - 23:7, 23:9
**disclosure** [3] - 4:24, 22:25, 48:2
**disclosures** [2] - 6:1, 7:2
**discovery** [24] - 25:23, 33:5, 41:4, 41:21, 42:14, 42:19, 42:25, 43:11, 43:17, 43:23, 44:3, 44:5, 45:18, 45:19, 45:22, 46:1, 46:7, 46:22, 50:10, 50:13, 53:3, 54:22, 55:15
**discussed** [1] - 51:19
**discussion** [2] - 19:15, 22:12
**dismiss** [2] - 36:22, 42:13
**dismissal** [1] - 30:15
**dismissed** [4] - 10:16, 10:23, 42:4, 47:24

**dismissing** [1] - 24:18
**displace** [1] - 40:12
**displaces** [1] - 35:10
**displacing** [2] - 33:17
**disprove** [1] - 18:1
**dispute** [3] - 25:18, 30:8, 55:15
**disputes** [1] - 45:17
**distinguish** [1] - 11:20
**distinguishing** [2] - 13:10, 13:16
**District** [2] - 44:10, 56:17
**DISTRICT** [2] - 1:1, 1:2
**district** [7] - 31:10, 31:12, 32:13, 40:1, 42:1, 44:12, 47:23
**docket** [2] - 55:6, 55:14
**dominant** [1] - 40:13
**done** [6] - 16:8, 37:24, 41:5, 44:1, 49:5, 49:6
**down** [2] - 45:9, 55:4
**drift** [1] - 7:15
**during** [2] - 6:24, 53:2
**duty** [8] - 4:23, 5:13, 5:16, 8:21, 9:2, 25:14, 37:17, 48:2

# E

**early** [1] - 13:1
**easily** [1] - 38:20
**economics** [2] - 50:17, 50:22
**effect** [1] - 43:5
**efficient** [1] - 35:5
**either** [4] - 4:24, 5:18, 13:3, 16:25
**encourages** [1] - 43:8
**end** [3] - 19:10, 19:12, 47:4
**ends** [1] - 35:9
**engaged** [1] - 53:3
**engages** [1] - 40:15
**engaging** [2] - 36:5, 43:23
**engineers** [2] - 23:21, 23:25
**enjoined** [2] - 12:23, 13:3
**enjoy** [1] - 54:14
**entered** [1] - 15:23
**Enterprises** [1] - 56:21
**entire** [2] - 6:19, 46:6
**entirely** [1] - 6:14
**entitled** [1] - 17:16

**Epic** [1] - 39:25
**EQ** [1] - 2:6
**equally** [1] - 53:25
**ER** [2] - 21:8, 21:16
**erode** [1] - 36:1
**ESQ** [10] - 1:16, 1:17, 1:19, 1:20, 1:20, 1:23, 1:23, 2:3, 2:5, 2:6
**essentially** [4] - 34:15, 34:16, 35:23, 36:18
**established** [1] - 12:7
**et** [2] - 1:7, 56:10
**eventually** [3] - 33:10, 35:10, 51:5
**evidence** [1] - 53:2
**eviscerate** [1] - 49:17
**exactly** [3] - 9:8, 17:5, 33:13
**example** [1] - 38:17
**examples** [1] - 22:19
**excluded** [1] - 11:13
**excluding** [1] - 11:15
**exclusionary** [2] - 15:22, 42:18
**Exergen** [1] - 8:18
**existing** [1] - 29:21
**expect** [1] - 36:8
**expedite** [1] - 33:7
**expedited** [1] - 33:5
**experience** [1] - 36:7
**expert** [1] - 50:22
**explain** [4] - 31:22, 33:2, 33:23, 35:3
**explained** [4] - 10:3, 11:4, 32:4, 34:1
**explaining** [1] - 28:2
**explains** [3] - 38:11, 42:23, 43:2
**explanation** [1] - 32:1
**exploits** [1] - 36:14
**exposed** [1] - 7:10
**exposure** [1] - 7:8
**extent** [4] - 39:14, 45:17, 50:13, 50:20
**extra** [3] - 22:3, 22:4, 50:6

### F

**Facebook** [1] - 42:22
**fact** [8] - 5:8, 17:5, 23:18, 28:21, 36:6, 39:9, 49:8, 51:5
**facts** [11] - 5:7, 5:21, 9:14, 14:5, 18:15, 21:19, 27:14, 29:10, 48:25, 49:2
**factual** [4] - 14:18,

25:18, 27:4, 30:7
**factually** [1] - 11:20
**fail** [5] - 6:15, 6:21, 10:4, 11:5, 12:10
**failed** [2] - 11:7, 18:19
**fails** [1] - 5:20
**failure** [3] - 36:17, 48:1
**fair** [1] - 39:19
**false** [32] - 4:10, 5:8, 17:10, 17:12, 17:18, 18:6, 18:9, 18:11, 18:13, 18:14, 18:16, 19:24, 20:7, 21:18, 21:20, 26:2, 27:8, 27:11, 27:12, 28:9, 29:22, 30:8, 36:5, 36:20, 38:1, 38:9, 38:11, 38:12, 38:15, 39:7, 39:17, 47:5
**falsely** [1] - 27:24
**far** [2] - 14:16, 26:21
**favor** [2] - 25:22, 30:10
**feature** [6] - 13:10, 18:25, 19:6, 27:25, 28:20, 35:18
**features** [2] - 13:16, 21:1
**Federal** [7] - 7:16, 8:18, 9:8, 31:8, 32:4, 32:8, 48:6
**federal** [2] - 34:19, 54:25
**fees** [5] - 12:4, 31:15, 31:19, 32:9, 32:17
**fib** [1] - 21:5
**FILE** [1] - 56:18
**filed** [2] - 33:4, 51:3
**FILED** [1] - 56:16
**filing** [1] - 32:5
**finally** [1] - 17:10
**fine** [1] - 29:2
**fine-print** [1] - 29:2
**fire** [1] - 11:24
**firm** [3] - 22:21, 24:12, 27:1
**firms** [5] - 6:7, 9:17, 9:19, 24:12, 48:14
**first** [8] - 4:6, 19:14, 35:11, 36:2, 44:24, 46:13, 47:16, 50:8, 52:24
**five** [1] - 48:3
**flaws** [2] - 36:6, 39:11
**flooded** [1] - 10:9
**focus** [3] - 11:1, 32:2, 32:4
**FOR** [1] - 1:2
**ford** [1] - 3:15

**FORD** [1] - 1:23
**foreclosed** [2] - 14:23, 17:20
**foregoing** [2] - 56:8, 56:13
**forms** [1] - 42:3
**forum** [1] - 50:16
**forward** [8] - 8:1, 34:24, 41:17, 41:19, 41:20, 43:7, 46:7, 49:21
**four** [2] - 4:1, 20:23
**foward** [1] - 39:18
**fraud** [1] - 38:3
**fraudulent** [5] - 31:24, 32:6, 32:18, 33:14, 34:11
**fraudulently** [3] - 11:12, 13:21, 14:10
**fresh** [1] - 54:21
**friends** [1] - 54:14
**full** [1] - 17:13
**functional** [7] - 7:7, 23:20, 23:22, 23:23, 23:25, 24:6
**functionality** [1] - 7:12
**fund** [1] - 17:25
**fundamental** [2] - 18:12, 46:22
**fundamentally** [1] - 25:5

### G

**gangbusters** [1] - 17:7
**Garden** [1] - 53:17
**garden** [1] - 31:12
**general** [3] - 9:13, 11:7, 19:15
**generally** [2] - 20:8, 48:13
**given** [4] - 4:3, 10:20, 16:22, 43:15
**grade** [1] - 20:16
**granted** [1] - 44:16
**great** [1] - 35:3
**grounds** [1] - 10:15
**group** [1] - 6:19
**guys** [2] - 8:8, 8:9

### H

**half** [3] - 29:22, 30:2, 30:5
**Hall** [1] - 1:12
**hall** [1] - 3:22
**HALL** [1] - 2:2

**handle** [2] - 6:9, 45:19
**handled** [1] - 50:12
**happy** [4] - 10:16, 15:7, 18:5, 21:21
**harm** [12] - 12:17, 13:19, 14:4, 16:25, 31:21, 31:25, 32:2, 33:7, 36:24, 37:1, 37:8, 37:9, 37:24, 39:4, 39:7, 47:6, 51:6, 51:7, 52:23, 53:22
**harmed** [2] - 15:3, 37:2
**harms** [3] - 14:2, 35:16, 36:11
**health** [5] - 10:11, 36:15, 37:3, 51:2, 51:24
**hear** [7] - 3:2, 4:2, 4:6, 22:2, 31:1, 45:2, 47:2
**heard** [4] - 41:14, 41:16, 54:18, 56:10
**HEARING** [3] - 1:9, 1:11, 56:15
**hearing** [4] - 29:9, 54:14, 54:16, 54:17
**heightened** [4] - 4:19, 48:23, 49:18, 50:1
**held** [1] - 26:13
**hello** [1] - 3:18
**help** [4] - 29:24, 29:25, 30:5, 54:6
**helpful** [1] - 21:24
**hereby** [1] - 56:5
**hide** [1] - 38:3
**hides** [1] - 36:5
**high** [1] - 17:11
**himself** [1] - 48:15
**hire** [1] - 48:13
**hired** [2] - 6:6, 9:16
**history** [2] - 26:3, 43:16
**hit** [1] - 15:9
**hold** [1] - 14:13
**holding** [2] - 26:22, 27:6
**holiday** [1] - 54:25
**Honor** [27] - 3:9, 3:21, 4:8, 9:4, 9:22, 10:2, 10:3, 11:2, 12:21, 12:24, 13:5, 13:13, 13:15, 14:15, 16:5, 18:10, 21:21, 25:4, 30:23, 40:18, 46:4, 46:10, 47:7, 47:9, 49:19, 50:12, 53:21
**Honorable** [1] - 1:11
**hook** [1] - 25:12

**Horne** [1] - 3:23
**HORNE** [1] - 2:6
**hospital** [3] - 20:16, 29:18, 29:23
**hospital-grade** [1] - 20:16
**hospitals** [1] - 38:18
**host** [1] - 14:1
**household** [1] - 38:23
**hurts** [2] - 10:11, 36:12

### I

**idea** [7] - 7:25, 22:10, 23:17, 24:11, 26:1, 39:1, 41:2
**identified** [3] - 5:23, 45:11, 46:17
**identifies** [1] - 35:7
**identify** [2] - 7:17, 49:1
**illegal** [1] - 15:24
**illegally** [2] - 11:18, 15:24
**illustrate** [1] - 18:22
**immunizes** [1] - 29:3
**impact** [1] - 15:4
**impair** [1] - 12:11
**imperfect** [1] - 35:11
**imperfectly** [3] - 35:15, 36:3, 38:3
**implementing** [1] - 36:4
**implements** [1] - 35:14
**important** [2] - 23:5, 24:19
**impose** [1] - 43:10
**impossibility** [1] - 11:14
**impossible** [1] - 14:7
**impression** [2] - 28:8, 28:9
**improper** [1] - 30:4
**IN** [2] - 1:1, 1:2
**inappropriate** [1] - 29:1
**INC** [2] - 1:3, 56:9
**incipient** [4] - 39:23, 40:6, 40:9, 40:17
**include** [1] - 27:10
**included** [1] - 11:19
**includes** [1] - 26:25
**including** [3] - 34:24, 37:25, 38:10
**incorrect** [1] - 26:15
**incredible** [1] - 43:10
**independent** [2] -

10:15, 42:7
**independently** [1] -
41:22
**indicated** [1] - 27:18
**indicates** [3] - 26:14,
27:2, 27:7
**indicating** [1] - 28:19
**indicative** [1] - 29:16
**individual** [5] - 8:20,
22:18, 23:16, 49:1,
49:3
**individually** [1] - 42:9
**individuals** [2] - 7:18,
22:20
**inequitable** [20] - 4:9,
4:12, 6:20, 7:22,
7:25, 8:13, 8:14,
8:16, 9:1, 9:20, 11:5,
22:8, 22:11, 26:18,
47:11, 47:25, 48:24,
49:11, 49:16, 50:2
**infer** [2] - 5:22, 49:2
**inferences** [2] - 25:21,
30:10
**inferior** [1] - 10:10
**information** [26] - 7:5,
10:8, 16:9, 16:14,
16:18, 16:20, 16:22,
22:23, 22:24, 23:1,
23:3, 23:7, 24:9,
25:2, 36:19, 37:20,
37:22, 45:8, 46:19,
49:13, 51:17, 51:21,
51:23, 52:3, 52:5,
52:9
**infringement** [5] -
15:16, 34:15, 34:17,
35:5, 35:6
**infringes** [1] - 15:14
**inherently** [1] - 7:24
**injunction** [3] - 12:20,
14:9, 33:6
**injuries** [2] - 32:9,
33:24
**injury** [19] - 11:6, 11:8,
12:2, 12:6, 14:3,
14:5, 14:6, 14:17,
14:19, 14:25, 18:2,
18:21, 31:15, 32:12,
32:19, 33:19, 33:21,
34:5, 44:14
**innovate** [1] - 17:3
**instead** [4] - 4:15,
19:19, 35:12, 35:21
**intellectual** [5] - 10:7,
15:14, 15:16, 15:19,
34:25
**intended** [1] - 23:11
**intent** [9] - 5:20, 6:3,
6:12, 7:3, 25:25,

52:22, 52:25, 53:2
**international** [1] -
14:1
**interpretation** [1] -
32:15
**invalid** [3] - 7:11,
25:10, 49:15
**invalidating** [1] - 8:22
**invalidity** [3] - 49:12,
49:22, 49:24
**invention** [1] - 8:7
**inventor** [3] - 5:1,
6:23, 7:1
**inventors** [14] - 4:18,
6:19, 7:4, 7:9, 8:9,
8:10, 22:16, 23:13,
23:18, 49:7, 49:9,
49:14, 49:17
**invest** [1] - 17:3
**investing** [2] - 17:5,
17:6
**investment** [1] - 31:16
**investments** [1] -
31:20
**involved** [9] - 5:4,
5:15, 7:18, 24:24,
24:25, 47:13, 48:5,
48:16, 49:10
**involvement** [4] -
47:23, 48:7, 48:8,
48:10
**IOS** [3] - 36:14, 36:24,
37:21
**IP** [3] - 4:16, 4:21,
48:19
**IPRs** [2] - 6:9, 24:15
**IRN** [2] - 20:25, 29:13
**irregular** [3] - 21:3,
21:4, 29:14
**issue** [3] - 26:5, 27:21,
29:19
**issues** [4] - 17:9, 31:1,
44:20, 44:21
**itself** [6] - 12:3, 12:17,
13:19, 15:1, 25:11,
52:10

## J

**Jack** [1] - 3:21
**JAMIE** [1] - 1:20
**Jamie** [1] - 3:14
**Jannifer** [1] - 3:15
**Jeffrey** [1] - 4:22
**Jennifer** [2] - 1:12,
10:2
**JENNIFER** [1] - 1:23
**Jersey** [1] - 32:13
**JLH** [2] - 1:6, 1:7

**JOHN** [1] - 2:3
**joined** [3] - 3:11, 3:12,
3:15
**JORDAN** [1] - 1:20
**Jordan** [1] - 3:13
**judge** [1] - 42:10
**Judge** [2] - 44:17,
47:24
**judgment** [3] - 31:13,
44:15, 50:23
**jump** [1] - 45:16
**June** [2] - 1:13, 56:10
**jurors** [1] - 44:18
**jury** [1] - 12:1
**justification** [1] - 29:5

## K

**keep** [2] - 25:2, 48:21
**Kennedy** [1] - 3:17
**KERRI** [1] - 1:19
**Kerri** [2] - 3:13, 4:8
**KERRI-ANN** [1] - 1:19
**Kerri-Ann** [2] - 3:13,
4:8
**kicked** [1] - 13:2
**kind** [2] - 16:20, 42:5
**kitchen** [1] - 10:19
**KNOBBE** [2] - 2:5
**Knobbe** [1] - 3:24
**knocking** [1] - 28:16
**knowing** [1] - 38:13
**knowledge** [4] - 5:19,
24:6, 24:7, 49:3
**known** [2] - 7:11,
49:14
**KRINGSTEIN** [1] -
1:20
**Kringstein** [1] - 3:14

## L

**lack** [2] - 36:18, 37:17
**largest** [1] - 38:22
**Larson** [3] - 3:23,
30:24
**LARSON** [10] - 2:6,
30:23, 31:5, 32:22,
50:8, 51:13, 52:4,
52:8, 52:24, 53:17
**late** [1] - 55:7
**launch** [4] - 19:2,
19:3, 36:13, 51:7
**law** [11] - 6:7, 9:16,
9:18, 24:12, 39:24,
40:3, 42:20, 43:2,
44:16, 48:14
**lawful** [2] - 34:8, 34:9

**lawfully** [1] - 35:12
**lawsuit** [4] - 32:5,
32:18, 33:4, 51:3
**lays** [1] - 42:22
**leader** [4] - 35:8, 35:9,
35:10, 35:13
**leading** [1] - 31:9
**learned** [1] - 54:14
**least** [3] - 30:2, 38:6,
40:17
**leave** [2] - 20:20, 21:9
**legal** [1] - 9:11
**less** [1] - 5:12
**level** [2] - 39:22, 40:4
**leveraging** [3] - 16:4,
16:6, 37:15
**lexmark** [1] - 19:22
**liability** [1] - 12:6
**licensed** [1] - 27:1
**LIMBECK** [6] - 1:19,
4:7, 8:16, 9:4, 9:25,
47:9
**Limbeck** [2] - 3:13,
4:8
**limitations** [1] - 21:11
**line** [5] - 34:17, 34:19,
38:8, 50:18, 50:19
**link** [1] - 47:4
**list** [2] - 26:5, 26:6
**listed** [5] - 8:12, 10:15,
47:14, 47:18, 48:3
**listing** [1] - 26:24
**litigate** [1] - 12:15
**litigated** [1] - 44:9
**litigation** [11] - 11:18,
11:23, 12:3, 12:11,
12:17, 13:4, 13:18,
43:1, 43:16, 44:3,
44:4
**LLC** [1] - 56:21
**LLP** [2] - 1:16, 1:19
**location** [1] - 14:23
**look** [22] - 10:20, 11:6,
12:9, 15:18, 16:15,
18:23, 18:24, 20:4,
20:18, 22:18, 24:4,
25:17, 26:16, 28:22,
34:6, 34:12, 37:9,
45:9, 45:21, 45:22,
50:23, 54:19
**looking** [2] - 19:11,
54:2
**looks** [1] - 8:25
**lose** [1] - 54:7
**lost** [7] - 11:25, 12:1,
19:25, 31:16, 31:19,
31:20
**loud** [2] - 41:15, 43:13
**Loud** [1] - 28:14

## M

**mailer** [2] - 38:17,
38:20
**maintain** [2] - 53:10,
54:7
**maintenance** [1] -
54:10
**MALZ** [1] - 1:20
**Malz** [1] - 3:13
**manage** [1] - 33:20
**MARK** [1] - 1:23
**mark** [1] - 3:15
**market** [24] - 10:9,
10:11, 14:22, 15:21,
15:23, 16:1, 17:20,
18:5, 31:2, 33:8,
33:12, 33:17, 35:7,
35:15, 35:16, 35:19,
36:1, 36:4, 36:11,
37:4, 39:3, 40:13,
53:9, 53:14
**MARTENS** [1] - 2:5
**Martens** [1] - 3:24
**MASIMO** [1] - 1:7,
56:9
**Masimo** [37] - 3:3, 3:5,
4:12, 4:22, 5:6, 5:11,
5:13, 5:17, 5:20, 6:4,
6:13, 6:18, 6:21,
10:7, 11:7, 11:15,
11:18, 13:23, 14:6,
15:13, 16:3, 16:7,
16:13, 18:21, 19:9,
20:6, 20:22, 21:12,
22:7, 22:22, 24:15,
30:24, 35:16, 37:6,
37:24, 39:2, 40:10
**Masimo's** [5] - 6:15,
10:4, 10:5, 12:9,
39:1
**material** [4] - 22:25,
23:8, 23:19, 30:8
**materiality** [1] - 23:6
**matter** [2] - 43:9,
44:16
**matters** [1] - 55:13
**Mayo** [1] - 21:6
**McLaughlin** [1] - 3:21
**MCLAUGHLIN** [1] -
2:2
**mean** [2] - 19:9, 42:16
**means** [6] - 21:15,
32:17, 41:3, 42:18,
48:7
**meant** [1] - 32:10
**measure** [1] - 20:11
**measurements** [2] -
20:10, 28:1

medical [2] - 28:1, 29:4
meet [7] - 4:19, 9:9, 11:23, 35:8, 46:8, 46:20, 48:23
meeting [1] - 17:17
Megan [1] - 3:16
mention [1] - 8:17
mentioned [6] - 21:7, 30:16, 32:21, 38:1, 51:1, 51:3
merits [1] - 27:12
Meyer's [1] - 5:9
Meyers [24] - 4:22, 5:5, 5:13, 5:19, 5:22, 5:25, 6:5, 6:6, 6:10, 6:15, 9:14, 22:15, 22:19, 22:23, 23:6, 23:10, 24:5, 26:2, 47:12, 48:10, 48:13, 48:15, 48:19, 49:5
Meyers' [1] - 25:25
mid [1] - 55:7
might [6] - 8:11, 16:23, 17:2, 33:5, 35:25
Milici [2] - 3:15, 10:2
MILICI [18] - 1:23, 10:1, 11:2, 12:21, 12:24, 13:5, 13:13, 14:15, 15:7, 15:12, 18:10, 22:1, 40:23, 41:24, 43:21, 45:1, 46:4, 47:1
mind [1] - 54:22
minutes [3] - 4:4, 19:14, 40:22
misappropriation [1] - 45:24
misconduct [2] - 37:16, 50:1
mishmash [4] - 4:15, 10:5, 22:13, 24:2
misimpression [1] - 19:17
misleading [3] - 28:9, 28:22, 38:12
mismatch [5] - 18:12, 18:15, 20:19, 21:18, 27:14
Mispresto [1] - 19:23
mistrial [1] - 44:19
misused [1] - 16:23
moment [1] - 51:6
Monday [1] - 54:24
monitor [1] - 20:16
monitoring [1] - 19:16
monitors [1] - 19:12
monopolization [10] - 41:13, 52:22, 53:6,

53:7, 53:18, 53:19, 53:20, 54:1, 54:5
monopoly [9] - 16:4, 16:5, 33:18, 37:15, 53:10, 53:13, 54:4, 54:7, 54:10
MOORE [2] - 1:16, 3:9
Moore [1] - 3:10
morning [9] - 3:9, 3:18, 3:20, 3:25, 4:7, 10:1, 20:6, 30:23, 55:7
motion [2] - 10:13, 36:22
MOTION [3] - 1:9, 1:11, 56:15
motions [3] - 3:2, 4:1, 4:5
move [9] - 18:5, 18:6, 18:8, 27:8, 34:14, 41:17, 41:19, 41:20, 49:21
moving [1] - 16:3
MR [15] - 3:9, 3:20, 22:6, 28:16, 28:17, 30:22, 30:23, 31:5, 32:22, 50:8, 51:13, 52:4, 52:8, 52:24, 53:17
MS [22] - 4:7, 8:16, 9:4, 9:25, 10:1, 11:2, 12:21, 12:24, 13:5, 13:13, 14:15, 15:7, 15:12, 18:10, 22:1, 40:23, 41:24, 43:21, 45:1, 46:4, 47:1, 47:9
multiple [2] - 9:18, 48:14
must [4] - 7:11, 23:19, 25:21, 49:14

**N**

name [6] - 5:9, 9:10, 22:6, 26:2, 26:4, 38:23
named [5] - 4:18, 6:22, 22:15, 23:12, 23:17
nascent [1] - 37:3
Natalie [1] - 3:16
need [17] - 7:17, 7:19, 14:12, 16:6, 19:23, 22:5, 24:5, 29:12, 29:24, 30:1, 30:2, 30:5, 30:9, 34:6, 45:16, 48:25, 50:5
needed [1] - 30:14

never [4] - 8:13, 26:3, 28:5, 34:18
NEW [1] - 56:3
new [5] - 29:18, 35:24, 44:4, 44:5, 54:25
New [2] - 32:13, 42:21
newer [1] - 52:20
nine [1] - 46:15
Ninth [1] - 40:2
nobody [1] - 23:9
noise [1] - 28:14
non [1] - 42:15
non-viable [1] - 42:15
nonviable [1] - 42:23
northern [1] - 39:25
note [2] - 14:12, 39:19
notes [1] - 56:12
nothing [5] - 5:7, 12:16, 24:16
notice [1] - 21:15
notification [1] - 29:14
novel [3] - 6:14, 24:11, 24:16
NRT [2] - 13:15, 13:17
number [9] - 26:7, 26:8, 26:13, 26:17, 26:24, 27:7, 47:16, 47:19, 55:8
Number [1] - 56:9

**O**

obtain [2] - 25:9, 37:22
obtained [3] - 11:12, 13:21, 14:10
obtaining [1] - 54:4
obviously [1] - 49:23
OF [4] - 1:2, 1:9, 56:2, 56:3
Office [11] - 5:25, 6:3, 6:12, 23:1, 23:4, 23:11, 24:9, 24:22, 24:22, 25:3, 25:9
OFFICIALLY [1] - 56:16
once [1] - 36:7
one [23] - 3:2, 8:9, 8:10, 8:12, 9:16, 14:13, 22:20, 24:12, 24:13, 24:14, 24:25, 26:17, 27:5, 30:16, 41:2, 41:16, 42:2, 42:5, 42:17, 44:18, 45:13, 55:9
ongoing [1] - 54:22
open [3] - 33:3, 40:13
opening [1] - 33:16
opportunities [4] -

31:16, 31:17, 31:20, 31:21
opportunity [1] - 40:24
opposed [1] - 54:7
opposite [3] - 12:12, 17:6, 48:17
opposition [3] - 16:8, 26:4, 26:10
order [4] - 19:23, 41:8, 55:5, 55:15
ornamental [1] - 7:7
otherwise [2] - 17:12, 42:23
Otsuka [3] - 32:7, 32:12, 32:16
outcome [1] - 11:17
outside [1] - 48:17, 52:1
outstanding [1] - 55:13
overall [7] - 34:7, 34:12, 34:22, 37:10, 38:2, 52:15, 52:16
own [2] - 36:6, 49:24
oximetry [2] - 27:25, 35:18, 36:10
oxygen [10] - 18:25, 19:6, 19:12, 19:16, 20:9, 20:11, 27:20, 28:11, 28:20

**P**

P.A [1] - 2:2
page [1] - 46:14
pages [4] - 38:10, 39:16, 56:14
PALAPURA [1] - 1:17
Palapura [1] - 3:12
paper [2] - 24:22, 25:11
paragraph [2] - 12:13, 27:23, 29:7
paragraphs [5] - 16:16, 19:1, 23:16, 28:2, 33:25
part [6] - 11:24, 34:22, 38:2, 42:12, 52:15
particular [13] - 6:11, 9:14, 9:15, 20:4, 26:9, 43:14, 43:15, 48:11, 48:25, 49:1, 49:3, 50:15, 50:20
particularly [1] - 53:23
parties [6] - 27:5, 28:19, 28:21, 28:24, 43:15, 44:4
partner [1] - 3:11

party [2] - 28:13, 33:14
past [1] - 7:22
Patent [7] - 5:24, 6:3, 6:12, 23:1, 23:4, 23:11, 24:9, 24:20, 24:22, 25:3, 25:9
patent [9] - 8:4, 8:12, 11:12, 11:16, 13:21, 34:11, 34:17, 49:14
patents [16] - 4:14, 4:24, 4:25, 6:8, 7:11, 13:8, 14:9, 24:13, 24:14, 24:15, 25:2, 25:10, 31:24, 32:19, 33:15
pattern [5] - 38:4, 51:4, 51:16, 51:22, 52:14
pendency [1] - 12:2
pending [1] - 4:2
people [10] - 15:23, 17:13, 19:11, 25:6, 29:3, 29:17, 29:23, 30:2, 30:5, 46:19
perceives [1] - 39:5
percent [4] - 29:17, 29:20, 29:22, 33:12
person [5] - 8:7, 9:2, 22:18, 23:16, 24:23
Philadelphia [1] - 15:18
Phillips [2] - 3:21
PHILLIPS [2] - 2:2, 2:3, 3:20, 28:16
phone [1] - 55:2
pick [1] - 9:10
picking [1] - 25:1
plaintiff [7] - 4:6, 11:22, 13:18, 13:20, 15:3, 26:23, 38:20
Plaintiff [3] - 1:4, 1:24, 3:8
plaintiff's [1] - 4:5
plaintiffs [1] - 43:8
plausible [5] - 20:2, 38:7, 39:18, 43:6, 43:10
plausibly [3] - 5:18, 6:10, 41:7
plead [9] - 4:23, 4:25, 5:14, 5:18, 6:10, 19:24, 24:6, 48:25, 49:13
pleaded [2] - 24:5, 29:6
pleading [14] - 4:19, 6:5, 7:23, 9:6, 9:9, 9:13, 26:19, 46:8, 46:20, 47:17, 48:23,

49:18, 50:2
**pleadings** [2] - 25:19, 52:1
**pleads** [3] - 5:7, 5:11, 49:12
**pled** [2] - 17:7, 54:8
**plenty** [2] - 15:1, 17:25
**Poe** [1] - 3:16
**point** [17] - 11:13, 13:7, 18:23, 21:16, 29:11, 30:10, 34:6, 37:17, 39:9, 39:11, 39:20, 40:1, 42:21, 43:22, 46:6, 46:25, 47:6
**pointed** [6] - 25:4, 32:7, 33:25, 39:21, 39:25, 50:12
**pointing** [1] - 54:5
**points** [3] - 16:13, 47:10, 48:21
**portion** [1] - 14:21
**position** [3] - 33:17, 35:20, 40:13
**positive** [1] - 29:22
**possibility** [1] - 33:16
**Post** [1] - 39:10
**potential** [2] - 14:4, 33:7
**potentially** [1] - 33:12
**Potter** [1] - 3:10
**POTTER** [1] - 1:16
**Powell** [2] - 3:23, 22:7
**POWELL** [4] - 2:5, 22:6, 28:17, 30:22
**power** [12] - 26:8, 31:2, 33:18, 36:14, 36:24, 37:21, 47:19, 48:3, 53:11, 53:14, 54:4, 54:7
**powerful** [3] - 33:11, 35:25, 53:23
**practice** [3] - 9:19, 27:1, 35:4
**practitioners** [1] - 26:25
**precedent** [3] - 13:25, 31:8, 31:11
**predatory** [2] - 34:14, 35:6
**prejudice** [1] - 30:16
**preliminary** [2] - 14:9, 33:6
**prepared** [1] - 5:2
**present** [1] - 56:7
**presented** [1] - 21:8
**pretenses** [1] - 36:20
**pretty** [1] - 33:3
**prevent** [3] - 22:25, 36:15, 36:25

**prevented** [2] - 45:4, 45:6
**price** [1] - 11:25
**prices** [1] - 40:14
**primarily** [1] - 50:18
**principle** [1] - 46:23
**print** [1] - 29:2
**pro** [1] - 15:25
**probability** [2] - 53:12, 54:3
**problem** [4] - 29:16, 29:21, 29:24, 39:13
**problems** [1] - 26:17
**proceedings** [1] - 56:8
**process** [6] - 7:8, 10:24, 10:25, 11:3, 11:10, 15:10, 15:13, 31:6, 31:9, 31:14, 33:13, 33:20, 33:21, 37:23, 41:3, 53:16
**product** [13] - 19:9, 33:9, 33:11, 35:21, 35:24, 36:9, 36:14, 37:3, 37:5, 37:14, 40:11, 40:12, 51:24
**products** [2] - 10:10, 39:6
**profits** [1] - 12:1
**property** [5] - 10:7, 15:14, 15:16, 15:19, 34:25
**proposition** [2] - 15:20, 16:21
**prosecute** [5] - 6:8, 24:12, 24:13, 25:1, 25:7
**prosecuted** [3] - 4:14, 5:2, 48:18
**prosecution** [12] - 5:4, 5:6, 5:15, 6:25, 24:24, 26:3, 26:15, 26:20, 27:3, 27:7, 47:13, 48:5
**prosecutions** [5] - 5:10, 6:11, 8:21, 9:15, 9:17
**protective** [1] - 55:15
**prove** [2] - 21:19, 25:24
**proves** [1] - 20:7
**provide** [2] - 39:15, 40:14
**provided** [1] - 45:11
**providing** [2] - 40:11, 52:17
**proximate** [3] - 18:20, 27:15, 47:2
**PTO** [1] - 9:3
**public** [1] - 39:5
**pull** [1] - 19:13

**pulling** [2] - 35:22, 37:12
**pulse** [3] - 27:25, 35:18, 36:10
**purports** [1] - 35:8
**purpose** [4] - 10:13, 25:8, 37:21, 51:21
**purposes** [1] - 29:4
**put** [4] - 8:1, 18:1, 39:3, 55:5

### Q

**questions** [7] - 9:21, 10:17, 21:22, 30:20, 31:3, 31:4, 40:18
**quite** [1] - 40:4
**quote** [3] - 26:22, 27:23, 30:1
**quoted** [1] - 26:22
**quoting** [1] - 28:3

### R

**raise** [1] - 14:11
**reach** [1] - 33:12
**read** [8] - 13:22, 19:18, 21:10, 21:12, 30:4, 38:23, 42:6, 55:3
**reading** [1] - 30:3
**ready** [2] - 17:7, 54:24
**real** [1] - 13:1
**reality** [4] - 28:11, 29:3, 29:17, 30:6
**really** [16] - 8:11, 14:25, 15:20, 16:15, 23:5, 29:8, 30:17, 32:1, 32:10, 32:11, 35:2, 38:5, 40:25, 42:22, 50:8, 54:1
**reason** [4] - 8:15, 30:12, 49:15
**reasonably** [2] - 5:22, 49:2
**reasons** [2] - 6:16, 17:19
**receive** [2] - 35:20, 55:10
**recess** [1] - 55:20
**recognize** [1] - 43:4
**recognizes** [1] - 35:25
**recommendation** [1] - 55:3
**record** [2] - 5:6, 55:5
**reduce** [1] - 40:14
**reducing** [1] - 32:5
**Reese** [1] - 26:25

**reference** [1] - 8:23
**referenced** [1] - 28:18
**references** [7] - 5:23, 6:2, 6:23, 7:1, 7:2, 16:9, 49:4
**referred** [1] - 54:20
**referring** [1] - 21:2
**refusals** [1] - 42:24
**refused** [1] - 51:16
**regulations** [1] - 25:14
**rejected** [1] - 32:15
**relate** [1] - 27:11
**relative** [1] - 52:22
**relatively** [1] - 39:2
**released** [1] - 37:4
**releaseing** [1] - 37:13
**releasing** [2] - 45:4, 45:6
**relevant** [4] - 45:24, 52:17, 52:25, 53:4
**reliable** [2] - 28:1, 28:20
**relitigated** [1] - 44:11
**rely** [1] - 49:23
**reminded** [1] - 52:18
**remotely** [1] - 50:11
**repackage** [1] - 44:22
**repaired** [1] - 54:17
**repeated** [1] - 51:4
**replace** [1] - 20:15
**reply** [3] - 26:12, 32:7, 40:22
**report** [2] - 38:23, 55:3
**reported** [1] - 56:7
**reporter** [1] - 55:4
**Reporter** [2] - 56:5, 56:6
**representation** [1] - 21:13
**reputation** [1] - 31:22
**requests** [4] - 43:24, 50:10, 50:13
**required** [1] - 39:15
**requirement** [1] - 50:7
**requirements** [2] - 46:8, 46:21
**requires** [1] - 8:19
**requisite** [1] - 5:19
**res** [1] - 44:13
**resisted** [1] - 52:4
**resolved** [1] - 25:18
**resources** [1] - 12:15
**respect** [2] - 48:20, 55:14
**respond** [2] - 40:25, 43:21, 50:5
**responded** [1] - 26:11
**response** [1] - 32:18
**responsibility** [2] -

26:14, 27:3
**responsible** [3] - 22:11, 22:20, 22:22
**result** [8] - 7:7, 17:21, 32:3, 33:8, 42:16, 44:24, 53:22, 54:4
**retail** [1] - 14:24
**Reuters** [1] - 42:2
**revenue** [1] - 39:1
**review** [2] - 43:25, 45:19
**reviewed** [1] - 27:18
**rewatched** [1] - 20:5
**rhythm** [1] - 29:14
**rhythms** [1] - 21:4
**rise** [4] - 5:15, 39:22, 40:4, 50:1
**role** [2] - 26:14, 27:2, 27:7
**Rule** [2] - 4:20, 7:19
**rule** [2] - 34:17, 34:19
**rules** [4] - 9:3, 38:8, 50:18, 50:19
**ruling** [1] - 55:10
**rulings** [1] - 45:15
**runs** [2] - 13:24, 31:7

### S

**sale** [1] - 11:24
**sales** [1] - 20:1
**satisfied** [1] - 46:5
**satisfy** [2] - 7:19, 40:7
**save** [1] - 23:15
**saw** [2] - 11:25, 31:25
**schedule** [2] - 33:7, 54:23
**scheme** [12] - 32:3, 34:7, 34:10, 34:13, 34:22, 37:10, 38:2, 46:14, 52:15, 53:12, 53:22, 54:3
**SEALED** [1] - 56:16
**sec** [1] - 14:13
**second** [4] - 18:18, 44:15, 47:21, 50:15
**secret** [1] - 45:23
**secrets** [1] - 44:9
**Section** [2] - 42:3, 51:18
**section** [3] - 37:19, 42:4, 42:11
**see** [9] - 13:15, 13:25, 19:22, 25:23, 35:21, 36:10, 38:5, 51:16, 51:22
**seek** [3] - 33:6, 41:4, 46:21
**seeking** [3] - 12:20,

16:9, 51:17
**selecting** [2] - 22:21, 24:11
**sell** [1] - 11:24
**selling** [1] - 13:3
**send** [1] - 38:20
**sends** [1] - 38:17
**sense** [5] - 34:20, 35:2, 37:10, 39:8, 45:10
**separate** [2] - 18:3, 23:15
**separately** [1] - 23:2
**serious** [1] - 20:21
**seriously** [1] - 30:15
**serve** [1] - 50:10
**served** [1] - 43:23
**set** [1] - 13:6
**share** [3] - 36:1, 53:9, 53:14
**shares** [1] - 33:8
**Sherman** [3] - 39:22, 40:5, 40:8
**short** [1] - 54:23
**Shorthand** [2] - 56:5, 56:6
**shorthand** [2] - 56:7, 56:12
**show** [10] - 14:5, 34:18, 38:7, 38:8, 38:15, 47:22, 48:2, 48:14, 51:3
**showing** [2] - 15:15, 40:7
**shown** [1] - 53:1
**shows** [3] - 17:24, 40:17, 48:17
**side** [3] - 4:3, 22:3, 55:9
**sign** [1] - 25:11
**SIGNED** [1] - 56:16
**signed** [1] - 24:21
**similar** [2] - 31:22, 33:1
**Simon** [5] - 16:5, 43:4, 46:10
**simply** [1] - 37:17
**single** [6] - 6:13, 6:22, 6:25, 42:13, 46:18, 49:12
**sink** [1] - 10:19
**situation** [1] - 12:16
**six** [2] - 28:2, 44:18
**skepticism** [1] - 43:18
**skip** [1] - 31:2
**slow** [1] - 13:1
**someone** [3] - 23:7, 24:21, 49:25
**soon** [1] - 55:16
**sorry** [2] - 26:6, 51:10

**sort** [4] - 25:4, 29:1, 49:19, 49:25
**sought** [3] - 10:8, 33:5, 33:6
**Sound** [2] - 3:3, 3:5
**space** [1] - 23:15
**specific** [16] - 5:20, 6:1, 6:3, 7:2, 8:20, 24:3, 24:20, 25:8, 25:20, 27:4, 27:22, 29:8, 30:7, 49:1, 49:4, 49:25
**specifically** [4] - 6:17, 7:5, 23:10, 48:15
**speculative** [3] - 14:2, 14:3, 14:7
**Speedbudget** [1] - 56:21
**spent** [2] - 32:17, 38:24
**spoils** [2] - 35:15, 36:4
**squarely** [2] - 31:7, 38:5
**ss** [1] - 56:2
**stage** [4] - 7:23, 25:22, 26:19, 30:4
**stand** [1] - 45:3
**standalone** [1] - 16:6
**standard** [9] - 4:20, 8:18, 9:9, 9:19, 17:11, 17:17, 48:24, 49:18, 50:2
**standards** [1] - 26:19
**standing** [3] - 33:21, 41:4, 41:8
**start** [4] - 10:16, 22:8, 22:9, 31:5
**started** [2] - 22:10, 31:6
**starting** [2] - 3:7, 4:21
**STATE** [1] - 56:2
**state** [4] - 11:3, 14:2, 25:14, 41:7
**statement** [3] - 20:12, 21:5, 21:14
**statements** [14] - 17:24, 18:16, 19:16, 20:5, 20:7, 20:8, 20:10, 20:17, 21:1, 21:19, 28:19, 38:18, 38:21
**STATES** [1] - 1:1
**states** [3] - 15:20, 27:23, 41:22
**stay** [1] - 20:23
**steal** [1] - 44:9
**Stenotype** [1] - 56:7
**steps** [4] - 18:22, 19:21, 20:2, 22:25
**Steve** [1] - 3:22

**STEVE** [1] - 2:6
**Steven** [1] - 30:24
**still** [7] - 13:1, 15:25, 29:21, 39:2, 39:23, 40:5, 52:20
**stipulation** [1] - 55:16
**stole** [1] - 10:6
**stop** [8] - 17:2, 17:4, 33:15, 35:23, 35:24, 37:12, 37:13, 40:16
**stops** [2] - 35:23, 37:12
**Store** [1] - 10:8
**store** [5] - 43:25, 45:18, 46:5, 46:9, 51:11
**straightforward** [1] - 33:20
**studies** [3] - 17:25, 28:12, 28:18
**study** [5] - 20:7, 20:22, 21:6, 21:10, 21:11
**stuff** [1] - 45:24
**styles** [1] - 34:21
**subject** [2] - 43:1, 44:2
**submitted** [1] - 24:22
**substantially** [1] - 36:1
**substantive** [2] - 47:22, 48:7
**substantively** [8] - 5:3, 5:14, 7:18, 24:24, 24:25, 47:13, 48:4, 48:16
**succeed** [3] - 11:12, 11:15, 14:8
**successful** [5] - 13:20, 31:25, 32:3, 53:13, 53:23
**sued** [1] - 15:11
**sufficient** [5] - 6:9, 14:2, 15:2, 39:16, 55:11
**suggest** [1] - 21:11
**suggested** [1] - 44:5
**suggestive** [1] - 21:4
**suggests** [1] - 13:23
**suitable** [1] - 20:15
**summary** [2] - 31:13, 50:23
**support** [4] - 5:7, 6:14, 27:19, 30:17
**supported** [1] - 25:13
**supporting** [2] - 14:19, 32:24
**supports** [2] - 24:17, 25:13
**supposed** [1] - 44:8
**supposedly** [2] - 6:24,

22:13
**surprised** [1] - 45:2
**surprising** [1] - 10:20

# T

**Taxi** [1] - 15:18
**technical** [1] - 6:1
**technology** [10] - 35:7, 35:8, 35:9, 35:10, 35:13, 35:14, 36:3, 36:6, 38:4, 39:12
**term** [1] - 23:14
**terms** [2] - 16:12, 46:12
**testimony** [1] - 50:22
**THE** [37] - 1:1, 1:2, 3:1, 3:18, 3:25, 7:13, 8:24, 9:23, 10:18, 12:18, 12:22, 12:25, 13:11, 14:12, 15:6, 15:9, 18:8, 21:23, 22:2, 28:15, 30:21, 31:4, 32:20, 40:20, 41:10, 43:12, 44:25, 45:13, 46:24, 47:8, 50:3, 51:9, 51:25, 52:6, 52:18, 53:15, 54:10
**theft** [2] - 34:25, 35:11
**themselves** [2] - 17:8, 18:17
**theoretical** [1] - 16:21
**theories** [7] - 11:8, 33:22, 33:24, 34:1, 50:15, 50:17, 50:20
**theory** [15] - 6:14, 19:11, 24:11, 24:16, 31:7, 34:6, 42:12, 42:15, 42:17, 42:18, 43:6, 44:8, 53:8, 53:22, 54:6
**therefore** [3] - 7:10, 25:12, 49:16
**they've** [1] - 24:17
**thinking** [3] - 41:15, 43:13, 53:21
**thinnest** [1] - 44:1
**third** [10] - 13:24, 13:25, 24:14, 28:13, 28:19, 28:21, 28:24, 31:7, 31:11, 51:1
**third-party** [1] - 28:13
**Thomas** [1] - 3:17
**Thomas-Kennedy** [1] - 3:17
**Thompson** [1] - 42:1
**thousands** [1] - 9:17

**three** [3] - 10:15, 18:25, 32:23
**throw** [1] - 43:8
**thrown** [1] - 43:7
**Tilghman** [1] - 44:17
**today** [8] - 3:1, 4:3, 45:15, 54:12, 54:16, 54:18, 54:24, 55:6
**today's** [1] - 54:17
**took** [2] - 22:24, 54:16
**top** [1] - 9:10
**tracks** [3] - 35:24, 37:13, 40:16
**trade** [2] - 44:9, 45:23
**TRANSCRIPT** [1] - 1:9
**transcript** [2] - 56:11, 56:13
**TransWeb** [11] - 11:21, 12:16, 13:6, 13:23, 31:8, 31:23, 32:1, 32:16, 32:24, 53:19
**treble** [1] - 17:16
**triage** [1] - 55:19
**tricky** [1] - 41:11
**tries** [1] - 38:2
**Trinko** [1] - 43:1
**true** [12] - 9:5, 10:12, 23:12, 25:17, 25:21, 29:12, 33:25, 38:19, 45:5, 45:7, 48:22, 56:14
**try** [9] - 11:9, 35:23, 37:12, 37:13, 37:22, 53:3, 54:17, 55:6, 55:18
**trying** [7] - 7:21, 8:1, 33:3, 36:19, 51:22, 52:1, 53:10
**Tuesday** [1] - 55:2
**turn** [1] - 10:4
**two** [5] - 3:2, 4:2, 24:11, 42:3, 47:25
**Twombly** [2] - 46:5, 46:6
**tying** [1] - 9:14
**type** [1] - 41:16
**typed** [1] - 56:12
**types** [1] - 41:21
**typewritten** [1] - 56:14

# U

**U.S.M.J** [1] - 1:12
**ultimately** [1] - 25:24
**unable** [4] - 11:23, 16:14, 17:22, 17:23
**unclear** [1] - 22:14
**under** [7] - 4:20, 8:18,

9:3, 36:20, 39:23, 40:3, 47:15
**understood** [2] - 15:6, 43:12
**undo** [2] - 51:6, 51:7
**undoes** [1] - 39:4
**unfair** [2] - 25:5, 39:24
**unilateral** [2] - 42:24, 43:3
**uninfringed** [1] - 11:17
**UNITED** [1] - 1:1
**united** [2] - 3:3, 3:5
**unknown** [1] - 39:2
**unlawful** [5] - 16:7, 16:10, 45:12, 46:13, 46:17
**unless** [6] - 9:21, 19:6, 30:19, 31:3, 40:18, 46:8
**unnamed** [1] - 4:16
**up** [11] - 8:7, 10:14, 13:6, 13:14, 19:13, 33:16, 34:9, 35:9, 40:13, 44:7, 45:16
**uses** [2] - 37:18, 37:21
**USPTO** [1] - 27:2
**utility** [5] - 4:24, 5:4, 6:8, 8:4, 24:14

## V

**valid** [1] - 11:16
**various** [1] - 28:12
**Verge** [1] - 39:11
**versus** [2] - 3:2, 3:5
**viable** [2] - 42:12, 42:15
**video** [7] - 19:2, 19:3, 19:14, 20:5, 20:13, 27:17, 27:19
**view** [2] - 12:19, 32:24
**viewed** [1] - 42:9
**violated** [1] - 40:8
**violating** [2] - 39:22, 40:5
**violation** [5] - 10:14, 39:23, 40:6, 40:10, 40:17
**violations** [1] - 44:23
**virtue** [1] - 23:18
**voted** [1] - 44:18
**vs** [2] - 1:5, 56:9

## W

**W1** [1] - 19:19
**walker** [7] - 10:24,

10:25, 11:10, 15:10, 15:13, 31:9, 31:14
**Walker** [7] - 11:3, 31:6, 33:13, 33:19, 33:21, 41:3, 53:16
**wants** [2] - 21:12, 30:3
**Warner** [1] - 56:20
**warner** [1] - 56:4
**Washington** [1] - 39:10
**watch** [10] - 10:11, 19:14, 20:8, 20:12, 21:3, 21:8, 29:25, 35:17, 37:3, 51:24
**watch's** [1] - 27:25
**ways** [1] - 41:25
**welcome** [1] - 22:4
**Westlaw** [2] - 32:14, 32:23
**white** [1] - 6:13
**whole** [7] - 4:16, 9:7, 22:16, 23:5, 28:7, 50:24, 51:8
**wide** [1] - 26:21
**wider** [1] - 15:4
**WILMERHALE** [1] - 1:22
**WilmerHale** [2] - 3:14, 10:2
**withheld** [8] - 5:24, 6:2, 6:24, 7:3, 8:23, 22:23, 24:7, 49:4
**withholding** [1] - 25:8
**won** [1] - 12:22
**words** [1] - 35:12
**works** [1] - 36:9
**world** [2] - 18:2, 38:22
**worse** [2] - 36:7, 37:5
**written** [1] - 52:19
**wrote** [1] - 45:9

## Y

**year** [1] - 9:18
**years** [1] - 19:25
**yield** [1] - 25:23
**York** [1] - 42:21
**YouTube** [2] - 19:3, 19:13