# IN THE U.S. DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLE INC., *Plaintiff*, v. MASIMO CORPORATION and SOUND UNITED, LLC, *Defendants*. | C.A. No. 22-1377-MN-JLH **JURY TRIAL DEMANDED** **REDACTED - PUBLIC VERSION** |
| MASIMO CORPORATION, *Counter-Claimant,* v. APPLE INC. *Counter-Defendant.* | |
| APPLE INC., *Plaintiff*, v. MASIMO CORPORATION and SOUND UNITED, LLC, *Defendants*. | C.A. No. 22-1378-MN-JLH **JURY TRIAL DEMANDED** **REDACTED - PUBLIC VERSION** |
| MASIMO CORPORATION and CERCACOR LABORATORIES, INC., *Counter-Claimants,* v. APPLE INC. *Counter-Defendant.* | |

**DEFENDANTS MASIMO CORPORATION AND SOUND UNITED, LLC'S OPPOSITION TO APPLE INC.'S OBJECTIONS TO THE OCTOBER 24, 2023, REPORT AND RECOMMENDATION**

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................ 1 | |
| II. | MASIMO PLAUSIBLY ALLEGES INEQUITABLE CONDUCT AGAINST MYERS ............................................................................................ 2 | |
| III. | MASIMO STATES ANTITRUST AND UNFAIR COMPETITION CLAIMS ................................................................................ 6 | |
| | A. | Masimo States Valid Predatory Infringement and Monopoly Leveraging Theories ................................................................ 6 |
| | B. | Judge Hall Correctly Denied Apple's Motion to Dismiss Based on the Existence of Valid Theories of Anticompetitive Conduct ........................................................................ 9 |

## TABLE OF AUTHORITIES

*3Shape Trios A/S v. Align Tech., Inc.*,
    2019 WL 3824209 (D. Del. Aug. 15, 2019) .................................................................9, 10

*Avid Identification Sys., Inc. v. Crystal Imp. Corp.*,
    603 F.3d 967 (Fed. Cir. 2010) ............................................................................................3

*EMC Corp. v. Pure Strategies, Inc.*,
    2014 WL 5795557 (D. Del. Nov. 5, 2014) ........................................................................2

*Epic Games, Inc. v. Apple Inc.*,
    559 F. Supp. 3d 898 (N.D. Cal. 2021) ...............................................................................8

*Epic Games, Inc. v. Apple Inc.*,
    67 F.4th 946 (9th Cir. 2023) ...........................................................................................8, 9

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009) ..........................................................................................2

*Honeywell Int'l Inc. v. Maltseff*,
    2014 WL 3360334 (W.D. Wash. July 9, 2014) ..................................................................3

*IBM v. Priceline Grp. Inc.*,
    2017 WL 1349175 (D. Del. Apr. 10, 2017) .....................................................................10

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
    343 F. Supp. 3d 94 (E.D.N.Y. 2018) ................................................................................10

*Le v. Zuffa, LLC*,
    216 F. Supp. 3d 1154 (D. Nev. 2016) ................................................................................9

*LePage's Inc. v. 3M*,
    324 F.3d 141 (3d Cir. 2003) ...............................................................................................6

*loanDepot.com v. CrossCountry Mortg., Inc.*,
    399 F. Supp. 3d 226 (D.N.J. 2019) ..................................................................................10

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*,
    331 F.3d 406 (3d Cir. 2003) ...............................................................................................5

*NRT Tech. Corp. v. Everi Holdings Inc.*,
    2020 WL 5742792 (D. Del. Sept. 25, 2020) ......................................................................5

*Polara Eng'g, Inc. v. Campbell Co.*,
    2014 WL 12584441 (C.D. Cal. Nov. 4, 2014) ...................................................................3

*Retractable Technologies, Inc. v. Beckton Dickinson & Co.*,
    842 F.3d 883 (5th Cir. 2016) ..................................................................................................7

*Rochester Drug Co-op., Inc. v. Braintree Lab'ys*,
    712 F. Supp. 2d 308 (D. Del. 2010) ........................................................................................9

*Simon & Simon, PC v. Align Tech., Inc.*,
    2020 WL 1975139 (D. Del. Apr. 24, 2020) ............................................................................7

*Stiles v. Wal-Mart Stores, Inc.*,
    2019 WL 1429651 (E.D. Cal. Mar. 29, 2019) ....................................................................7, 9

*U.S. v. American Tobacco Co.*,
    221 U.S. 106 (1911) ................................................................................................................6

**Rules and Regulations**

Fed. R. Civ. P. 9(b) ........................................................................................................................5

37 C.F.R. § 1.56(c) ........................................................................................................................3

**Other Authorities**

Phillip Areeda, Antitrust Law (5th ed. 2022) ................................................................................7

## I. INTRODUCTION

Apple's objections to Judge Hall's R&R, even if sustained, (1) will not resolve any of Masimo's antitrust claims and (2) will not eliminate inequitable conduct from the case.[1] Apple challenges only specific theories, arguing that allowing those theories to "proceed will serve only to needlessly complicate the case and burden both the parties and the Court." Obj. at 1. But the fact-discovery cutoff was weeks ago, and opening expert reports are due in 24 hours. Judge Hall has also invested substantial time and resources resolving numerous discovery disputes. Apple's objections are thus wasteful. They also improperly ask the Court to scrutinize particular antitrust allegations divorced from the broader context of Apple's overall anticompetitive scheme. Masimo has developed a detailed record of factual and expert testimony supporting its claims and defenses. The Court should address the particular issues Apple raises, if at all, at summary judgment.

Apple also identifies no error in the R&R. First, Masimo plausibly alleged Jeffrey Myers engaged in inequitable conduct. Masimo alleged in detail Myers' duty of disclosure, knowledge of withheld information, and deliberate scheme to withhold information from the Patent Office. Masimo also explained how Myers executed a scheme to compartmentalize information amongst different groups at Apple and different outside law firms so each could avoid submitting information to the Patent Office. That is more than sufficient to survive a motion to dismiss.

Second, contrary to Apple's argument, Masimo's monopoly leveraging and predatory infringement theories are not precluded by "controlling case law," nor was Apple able to establish that "courts agree" with Apple's arguments. Masimo cited case law supporting its theories, and

---

[1] Apple does not challenge Masimo's inequitable conduct allegations and defenses based on fraud by Apple's inventors, which independently support Masimo's *Walker Process* antitrust and unfair competition claims. Apple also does not challenge Masimo's allegation that Apple has engaged in anticompetitive conduct through its false advertising, which also independently supports Masimo's antitrust and unfair competition claims.

Apple had no persuasive answer to that precedent. Rather than challenge Masimo's detailed allegations and theories, Apple advocated bright-line rules that patent infringement can never be anticompetitive regardless of the facts. Apple's argument defied Third Circuit precedent, which has repeatedly rejected such rules. Moreover, Masimo's theories should be evaluated in the context of Apple's conduct as a whole based on a complete factual record and with the assistance of expert testimony. The Court should overrule Apple's objections.

## II. MASIMO PLAUSIBLY ALLEGES INEQUITABLE CONDUCT AGAINST MYERS

Apple does not dispute Masimo satisfied the "what, when, where, and how" of *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009). Apple challenges only the "who" requirement. Obj. at 2. But Apple does not dispute that Masimo identified the "who" as Jeffrey Myers. Instead, Apple argues Masimo did not plausibly allege (1) Myers owed a duty of disclosure and (2) Myers knew of the withheld information. *Id.* Apple is wrong on both points.

With respect to Myers' duty of disclosure, Apple cites a single case to argue that "without more" being an attorney of record is insufficient to show substantive involvement. Obj. at 3 (citing *EMC Corp. v. Pure Strategies, Inc.*, 2014 WL 5795557 (D. Del. Nov. 5, 2014)). But the plaintiff in *EMC* did not "offer[] any factual allegation" beyond two attorneys being listed as having power of attorney. *EMC*, 2014 WL 5795557 at *2. Masimo alleged the "more" that was missing in *EMC Corp.* For example, Masimo alleged Myers (1) is Apple's Chief IP Counsel, (2) is an attorney of record both for Apple asserted patents and withheld Apple prior art, (3) signed the power of attorney in the relevant inter partes review ("IPR") proceedings, (4) knew of the key references Apple asserted against Masimo and AliveCor during the IPR proceedings, (5) knew Apple's own patent applications showed the designs claimed in the asserted design patents were functional and non-ornamental, (6) knew inventorship on the asserted design patents was incorrect, (7) deliberately withheld those references and facts during prosecution, and (8) orchestrated a scheme

-2-

to "compartmentalize[] information" so outside counsel "would not disclose but-for material information" to the PTO. Case 22-1378 D.I. 132 ("CC") ¶¶ 83, 87-91, 94-97, 104-05, 107, 109, 111-14, 125-26, 134-35, 142, 150-52, 160-61.[2,3]

Contrary to Apple's assertion, depending on the circumstances, "appearance on a customer number may nonetheless be one indication of substantive involvement." *Honeywell Int'l Inc. v. Maltseff*, 2014 WL 3360334, at *2 (W.D. Wash. July 9, 2014) (denying summary judgment). Having the power to withhold or disclose prior art also constitutes "substantive involvement" under 37 C.F.R. § 1.56(c). Employees responsible for overseeing IP matters may also be substantively involved. *See, e.g.*, *Polara Eng'g, Inc. v. Campbell Co.*, 2014 WL 12584441, at *2 (C.D. Cal. Nov. 4, 2014) (alleging president "supervised the patent application" sufficiently pleaded "who" element); *Avid Identification Sys., Inc. v. Crystal Imp. Corp.*, 603 F.3d 967 (Fed. Cir. 2010) (president "involved in all aspects of the company's operation" was "substantively" involved). Masimo cited these cases in prior briefing. Apple's objection ignores them entirely.

**Second,** Apple claims that Masimo did not provide enough detail regarding Myers' knowledge of material information. Obj. at 3-4. Not so. For the design patents, Masimo alleged Myers knew (1) the claimed designs resulted from the development of functional aspects of the Apple Watch, (2) those functional aspects were invented by Apple's engineering team not the named design inventors, and (3) utility patent documents like the '912 Publication and the '211

---

[2] Docket entries cited without a case number are from Case 22-1378. Masimo's amended pleadings in Case 22-1377 are at D.I. 138 and include allegations materially identical to those cited here. Sound United's pleadings are likewise materially identical. 22-1377 D.I. 151; 22-1378 D.I. 146.

[3] Apple argues the R&R's reference to a "customer number" is improper. Obj. at 3. The issue arose because Apple contradicted the pleadings by arguing Masimo's attorney-of-record allegation was "false." D.I. 40 at 17. Masimo explained that its allegation was true because Myers was associated with a PTO customer number associated with the application. D.I. 68 at 18-19; *see* 37 C.F.R. § 1.32 (PTO customer number identifies practitioners with "power of attorney").

-3-

patent (on which Myers is listed as attorney of record) disclosed that the claimed designs were functional and non-ornamental.  *E.g.*, CC ¶¶ 83, 88-109, 114-35.  Masimo alleged Myers knew of this information by virtue of his position at Apple and his supervisory role in patent prosecution.  *E.g.*, *id.* ¶¶ 83, 107 (alleging Myers was involved in selecting outside prosecution counsel and was attorney of record); *see also, e.g.*, *id.* ¶ 150 (alleging Myers was Apple's "Chief IP Counsel").

For the utility patents, Masimo alleges that Myers knew of the specific handful of references that Apple asserted against Masimo and AliveCor in IPR proceedings by virtue of his involvement in those proceedings.  *E.g.*, *id.* ¶¶ 150, 160-61.  For example, Myers knew that Apple asserted Kotanagi as the basis for numerous grounds in six different IPRs.  *Id.* ¶ 149.  Masimo alleges Myers was aware of "its applicability as a prior art reference," but still withheld Kotanagi and its family member, Tanagi, during prosecution.  *Id*. ¶¶ 148-50; *see also id*. ¶¶ 152-61 (similar allegations regarding Shmueli).  Masimo provided more than sufficient detail at the pleading stage.

Rather than address Masimo's allegations, Apple incorrectly claims Masimo is treating "Myers as a proxy for Apple as a whole."  Obj. at 4.  As explained above (and detailed in lengthier briefing to Judge Hall), Masimo included specific allegations directed at Myers himself.  CC ¶¶ 83, 87-91, 94-97, 104-05, 107, 109, 111-14, 125-26, 134-35, 142, 150-52, 160-61 (Myers was an attorney of record, had a duty to disclose material information, knew of but withheld references and other material information, and knowingly misrepresented inventorship; Myers compartmentalized material information to avoid its disclosure by selecting different outside counsel for Apple's related design patent applications, utility patent applications, and IPRs).

Apple also claims allowing Masimo's allegations to proceed would "open the floodgates for inequitable conduct claims in virtually every case" involving a large company.  Obj. at 4.  Nothing supports Apple's hyperbole.  Masimo included detailed allegations unlikely to be present

-4-

in other cases. Masimo specifically tied Myers to the utility patents at issue, design patents at issue, and IPRs at issue. *E.g.*, CC ¶¶ 88, 90-91, 96-97, 107, 109, 125-26, 134-35, 150. Masimo also alleged Myers orchestrated a scheme to compartmentalize information so that the people directly responsible for each patent would not submit relevant information to the PTO. *Id.* ¶¶ 83, 148-51, 158-61. Masimo alleged these facts specifically for Myers based on his role in the specific patents at issue, his involvement in the specific IPRs at issue, and his position at Apple, which allows him to compartmentalize information between different groups and law firms. Nothing suggests such facts would be present in "virtually every case."[4]

Apple's argument also misapplies Rule 9(b). As relevant here, Rule 9(b) requires particularity as to "the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Masimo complied by specifying exactly who committed the fraud and what acts constituted the fraud. In contrast to the circumstances constituting fraud, "intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*; *cf. NRT Tech. Corp. v. Everi Holdings Inc.*, 2020 WL 5742792, at *4 (D. Del. Sept. 25, 2020) ("Given the allegations of Cucinotta and Maskatiya's knowledge, position, and motive, however, the Amended Complaint sufficiently alleges intent to deceive the Patent Office."). Moreover, even for allegations to which Rule 9(b) applies, Masimo need not prove its case at the pleading stage. "The purpose of Rule 9(b) is to provide notice, not to test the factual allegations of the claim." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 n.2 (3d Cir. 2003). Masimo's pleading is more than sufficient.

---

[4] Apple incorrectly argues Masimo's allegations in the -1378 case relate solely to Myers. Obj. at 5. During discovery, Apple argued another in-house lawyer ▮▮▮▮ was responsible for those patents. Ex. A at 42. Thus, Masimo amended its interrogatory responses to name ▮▮▮▮ Ex. B at 57. Apple cannot object to Masimo updating its allegations in an interrogatory response because Apple has not filed its answer or counterclaims but is still pursuing its own inequitable conduct allegations presented ***solely*** in interrogatory responses. Thus, Masimo's allegations as to ▮▮▮▮ survive even if the Court sustains Apple's objection.

### III. MASIMO STATES ANTITRUST AND UNFAIR COMPETITION CLAIMS

**A.      Masimo States Valid Predatory Infringement and Monopoly Leveraging Theories**

Apple argues Judge Hall did not rule on the viability of Masimo's predatory infringement and monopoly leveraging theories, but Judge Hall recommended denying Apple's motion to dismiss in its entirety. That Judge Hall had "questions" about these theories is hardly surprising. As Masimo explained, Apple's motion was not "a good forum to decide the economics of our theories because Apple primarily argues bright-line rules." Ex. 3 at 50:18-20. Masimo argued the theories "should be addressed with expert testimony on the economics," and the Court should examine "the conduct as a whole, which will be developed at that time." *Id.* at 50:21-51:2.

**Sherman Act: Predatory infringement**. Apple cites cases outside this circuit to advocate a bright-line rule that patent infringement can never be anticompetitive. Obj. at 5 (citing *Retractable*). Apple identifies no such rule in the Third Circuit. The Third Circuit has correctly observed that "'[a]nticompetitive conduct' can come in too many different forms, and is too dependent upon context, for any court or commentator ever to have enumerated all the varieties." *LePage's Inc. v. 3M*, 324 F.3d 141, 152 (3d Cir. 2003) (quotation omitted). Anticompetitive conduct is "every conceivable act which could possibly come within the spirit or purpose of the prohibitions of the law, without regard to the garb in which such acts were clothed." *U.S. v. American Tobacco Co.*, 221 U.S. 106, 181 (1911). Masimo's pleading explains in detail why Apple's widely recognized practice of predatory infringement harms competition, including smaller competitors. CC ¶¶ 61-66, 238. Masimo explains how Apple uses this practice to capture markets and destroy competitors. *Id.* ¶¶ 44-51. ███████████████████████████████████████████████████████████████ Apple should not be permitted to evade Masimo's important challenge based on an out-of-circuit bright-line rule that differs from the law here.

Apple's primary case, *Retractable Technologies, Inc. v. Beckton Dickinson & Co.*, 842 F.3d 883, 893 (5th Cir. 2016), reasoned that patent infringement "by definition" causes "competing products to enter the market, and thereby increases competition." Apple mirrors such reasoning by claiming its predatory infringement necessarily "increases output." Obj. at 6. Such reasoning ignores that one can sell products ***without*** infringing by, for example, negotiating a license.

Apple is also incorrect that "Masimo has not cited any case where patent infringement has been considered anticompetitive conduct," *id*. at 5 (internal quotation and ellipsis omitted). Masimo cited *Stiles v. Wal-Mart Stores, Inc.*, 2019 WL 1429651, at *3 (E.D. Cal. Mar. 29, 2019), which distinguished *Retractable* and held that patent infringement can be anticompetitive where, like here, it is part of a scheme to "push Plaintiff out of the" market. *Id.* at *3; CC ¶ 230. None of Apple's cases address allegations like Masimo's allegations here. *See* Obj. at 5-6.

Apple claims patent infringement cannot be anticompetitive because the patent laws contain their own remedial provisions. But the same is true for false advertising and other tortious conduct that can also be anticompetitive. "[T]he existence of a tort remedy does not necessarily obviate an antitrust concern, for the public interest in competition is not necessarily vindicated by private tort remedies." Phillip Areeda, Antitrust Law ¶ 782a (5th ed. 2022). Apple's arguments that Masimo's theory will require litigation of "who owned intellectual property" is unsupported, unexplained, and does not address whether Masimo states valid claims. Apple never raised this issue in its interrogatory responses providing its contentions. Ex. C at 13-14.

**Sherman Act: Monopoly Leveraging**. Apple does not dispute that monopoly leveraging is a valid theory of anticompetitive conduct. *See Simon & Simon, PC v. Align Tech., Inc.*, 2020 WL 1975139, at *9 (D. Del. Apr. 24, 2020) (collecting cases). Apple likewise does not dispute that Masimo alleges facts that support such a theory. *See* CC ¶¶ 71-74, 228, 263. Masimo explains

how Apple exploits anticompetitive provisions in its agreements and Apple's control of iOS app distribution to obtain confidential information from competitors that Apple then uses to unfairly compete. *Id*. ¶¶ 71-74. Masimo further explains how Apple has exploited its control over iOS app distribution to hinder Masimo many times, most recently hindering the performance of the product most likely to provide a competitive check against Apple in the health watch market: Masimo's competing W1 watch. *Id.* ¶¶ 74, 228. Apple did so at a critical time—just as Masimo was launching the product. *Id.* ¶¶ 43, 74, 228. Apple thus leveraged its monopoly power over app distribution to harm competition in the separate market for health watches. *Id*. ¶¶ 67-74, 228, 263.

Apple does not challenge the economic logic of Masimo's allegations. Nor does Apple dispute that Masimo's allegations plausibly allege a valid ***monopoly leveraging*** claim. Instead, Apple mischaracterizes Masimo's claims as alleging Apple had a "duty to deal" with a competitor. Obj. at 6-7 (citing *Aspen Skiing* and *Trinko*). But Masimo challenges Apple's affirmative misconduct—including affirmative attempts to obtain competitive confidential information under false pretenses—not a mere refusal to deal. *See, e.g.*, CC ¶¶ 70-74. Apple also argues that Masimo never shared confidential information with Apple. Obj. at 7. However, the confidentiality and value of the information Masimo was forced to share is a disputed issue. Moreover, that Apple eventually made the app available *after* Masimo filed this lawsuit does not undo the harm to Masimo during the critical time when that product was being launched.

**California Unfair Competition.** Apple's motion to dismiss argued that Masimo's UCL claim should rise and fall with Masimo's antitrust claims, ignoring that Masimo separately alleged that Apple's conduct constitutes an incipient violation of the antitrust laws. *Compare* CC ¶ 306 (alleging incipient violation) *with Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 1055-56 (N.D. Cal. 2021), *aff'd in relevant part*, 67 F.4th 946, 999-1003 (9th Cir. 2023) (incipient violation

held sufficient to violate UCL). Apple argues Masimo's UCL claim is barred because it is purportedly foreclosed by "a categorical legal bar," *Epic Games, Inc. v. Apple*, 67 F.4th 946, 1001 (9th Cir. 2023). But Apple identifies no such "categorical legal bar" to Masimo's theories. Apple does not dispute monopoly leveraging is a valid theory and Masimo has identified case law holding that patent infringement can be anticompetitive. *See Stiles,* 2019 WL 1429651, at *3.

**B.      Judge Hall Correctly Denied Apple's Motion to Dismiss Based on the Existence of Valid Theories of Anticompetitive Conduct**

Apple does not dispute that, regardless of the two specific theories Apple now attacks, Masimo states valid antitrust and unfair competition claims. Apple nonetheless asks this Court to pick apart and scrutinize those theories even though they are intertwined in Masimo's pleading. Such an approach is improper. *See Le v. Zuffa, LLC*, 216 F. Supp. 3d 1154, 1168 (D. Nev. 2016) ("'[I]t would not be proper to focus on specific individual acts of an accused monopolist while refusing to consider their overall combined effect.'"); *Stiles*, 2019 WL 1429651, at *3 (considering patent infringement as part of overall scheme to "push Plaintiff out of the" market). Courts consider overall schemes if at least **part** of the overall scheme is independently actionable. *See, e.g.*, *Rochester Drug Co-op., Inc. v. Braintree Lab'ys*, 712 F. Supp. 2d 308, 318-19 (D. Del. 2010) (plaintiffs sufficiently alleged overall scheme that included sham litigation).

Here, Judge Hall found that Masimo properly stated antitrust claims based, at least, on Apple's assertion of fraudulent patents. Ex. 3 at 18:24-19:15. Apple does not object to that ruling. Having made that ruling, Judge Hall was not required to scrutinize in detail each additional theory of anticompetitive conduct. *See 3Shape Trios A/S v. Align Tech., Inc.*, 2019 WL 3824209, at *10-*12 (D. Del. Aug. 15, 2019) (collecting precedent to explain plaintiff should "plead **at least one instance** of conduct not otherwise insulated from antitrust scrutiny").

None of Apple's cases support a different approach. Obj. at 8-10. Apple's first two cases

are not antitrust cases and involved very different facts. *See IBM v. Priceline Grp. Inc.*, 2017 WL 1349175, at *7 (D. Del. Apr. 10, 2017) (refusing to allow one inequitable conduct theory that failed to comply with Rule 9 merely because a different theory did comply with Rule 9); *loanDepot.com v. CrossCountry Mortg., Inc.*, 399 F. Supp. 3d 226, 235 (D.N.J. 2019) (rejecting argument that the court was unable to dismiss some but not all tortious interference theories). Apple also cites cases where there was **no** valid theory of anticompetitive conduct. *See, e.g.*, Obj. at 9-10 (citing *Intergraph* and *Eatoni*). The *3Shape Trios* decision explains why such cases **support** "requiring plaintiffs to plead **at least one** instance of [unlawful anticompetitive] conduct." 2019 WL 3824209, at *12 (distinguishing *Eatoni* and explaining that multiple types of **lawful** conduct cannot be combined to create unlawful anticompetitive conduct).

Apple also cites cases from outside of this Circuit to argue one cannot collapse distinct claims into a "single count" to avoid scrutiny on a motion to dismiss. Obj. at 9 (citing *In re Am. Express* and *In re M&T*). But Apple's cases refer to the grouping together of "different sets of facts," *In re Am. Express*, 343 F. Supp. 3d at 100. Here, Masimo's counterclaims allege the opposite, explaining how Apple's actions **collectively** harm competition and Masimo. CC ¶¶ 226, 236-37, 240. None of Apple's remaining cases (*Sensipar*, *Thomson Reuters*, *Rolite*, *Google*) show Judge Hall was required to scrutinize in detail and explain the validity of every allegation of anticompetitive conduct. *See* Obj. at 9. Masimo's allegations and Apple's arguments should be examined on the complete record of facts and expert testimony the parties have already developed.

Accordingly, Masimo respectfully requests that the Court overrule Apple's Objections.[5]

---

[5] Especially given the significant factual record in this case, Masimo could add substantial allegations in any amended pleading. The Court has never dismissed any of Masimo's claims, so Masimo has not amended in response to such an order. *See* D.I. 130 (order granting motion to amend to add new theory). And Apple has not argued that any dismissal should be with prejudice. Thus, any dismissal should be with leave to amend.

|  |  |
|---|---|
|  | Respectfully submitted, |
| November 21, 2023 | PHILLIPS MCLAUGHLIN & HALL, P.A. |
| Of Counsel: |  |
|  | By: /s/ *John C. Phillips, Jr.* |
| Joseph R. Re | John C. Phillips, Jr. (No. 110) |
| Stephen C. Jensen | Megan C. Haney (No. 5016) |
| Stephen W. Larson | 1200 North Broom Street |
| Benjamin A. Katzenellenbogen | Wilmington, DE 19806 |
| Edward M. Cannon | (302) 655-4200 Telephone |
| Brian C. Claassen | (302) 655-4210 Fax |
| Jared C. Bunker | jcp@pmhdelaw.com |
| Mark Lezama | mch@pmhdelaw.com |
| Kendall M. Loebbaka |  |
| Douglas B. Wentzel | *Counsel for Defendants* |
| Knobbe, Martens, Olson & Bear, LLP | *Masimo Corporation and Sound United, LLC* |

2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404 Telephone
(949) 760-9502 Facsimile
joe.re@knobbe.com
steve.jensen@knobbe.com
stephen.larson@knobbe.com
ben.katzenellenbogen@knobbe.com
ted.cannon@knobbe.com
brian.claassen@knobbe.com
jared.bunker@knobbe.com
mark.lezama@knobbe.com
kendall.loebbaka@knobbe.com
douglas.wentzel@knobbe.com

Brian Horne
Knobbe, Martens, Olson & Bear, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450 Telephone
(310) 551-3458 Facsimile
brian.horne@knobbe.com

Adam Powell
Daniel P. Hughes
Knobbe, Martens, Olson & Bear, LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
(858) 707-4000 Telephone
(858) 707-4001 Facsimile

adam.powell@knobbe.com
Daniel.hughes@knobbe.com

Carol M. Pitzel Cruz
Knobbe, Martens, Olson & Bear, LLP
925 4th Ave., #2500
Seattle, WA 98104
206-405-2000 Telephone
206-405-2001 Facsimile
carol.pitzelcruz@knobbe.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2023, a true and correct copy of the foregoing document was served on the following counsel of record at the addresses and in the manner indicated:

***VIA ELECTRONIC MAIL:***

| | |
|---|---|
| David E. Moore<br>Bindu A. Palapura<br>Andrew L. Brown<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>Wilmington, DE 19801<br>dmoore@potteranderson.com<br>bpalapura@potteranderson.com<br>abrown@potteranderson.com | John M. Desmarais<br>Kerri-Ann Limbeek<br>Cosmin Maier<br>Jordan N. Malz<br>Benjamin N. Luehrs<br>Joze Welsh<br>Jamie L. Kringstein<br>Jennifer M. Przybylski<br>Carson Olsheski<br>Jeffrey Scott Seddon, II<br>Amy I. Wann<br>Raymond N. Habbaz<br>Lee Matalon<br>Taeg Sang Cho<br>Eli Balsam<br>Patrick Reilly<br>Marie Weisfeiler<br>Ryan G. Thorne<br>Paul A. Bondor<br>Desmarais LLP<br>230 Park Avenue, 26th Floor<br>New York, NY 10169<br>jdesmarais@desmaraisllp.com<br>klimbeek@desmaraisllp.com<br>cmaier@desmaraisllp.com<br>jmalz@desmaraisllp.com<br>bluehrs@desmaraisllp.com<br>jwelsh@desmaraisllp.com<br>jkringstein@desmaraisllp.com<br>jprzybylski@desmaraisllp.com<br>colsheski@desmaraisllp.com<br>jseddon@desmaraisllp.com<br>awann@desmaraisllp.com<br>rhabbaz@desmaraisllp.com<br>lmatalon@desmaraisllp.com<br>tcho@desmaraisllp.com |

| | |
|---|---|
| | ebalsam@desmaraisllp.com<br>preilly@desmaraisllp.com<br>mweisfeiler@desmaraisllp.com<br>rthorne@desmaraisllp.com<br>pbondor@desmaraisllp.com |
| Peter C. Magic<br>Kyle Curry<br>Maria Tartakovsky<br>DESMARAIS LLP<br>101 California Street<br>San Francisco, CA 94111<br>pmagic@desmaraisllp.com<br>kcurry@desmaraisllp.com<br>mtartakovsky@desmaraisllp.com | Jennifer Milici<br>Dominic Vote<br>Leon B. Greenfield<br>Heath Brooks<br>John O'Toole<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>2100 Pennsylvania Avenue NW<br>Washington, DC 20037<br>jennifer.milici@wilmerhale.com<br>dominic.vote@wilmerhale.com<br>leon.greenfield@wilmerhale.com<br>heath.brooks@wilmerhale.com<br>john.otoole@wilmerhale.com |
| Mark A. Ford<br>Vinita Ferrera<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>60 State Street<br>Boston, MA 02109<br>mark.ford@wilmerhale.com<br>vinita.ferrera@wilmerhale.com | David J. Cho<br>David J. Shaw<br>Desmarais LLP<br>1899 Pennsylvania Avenue NW, Suite 400<br>Washington, DC 20006<br>dcho@desmaraisllp.com<br>dshaw@desmaraisllp.com |
| Lydia Turnage<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>7 World Trade Center<br>250 Greenwich Street<br>New York, NY 10007<br>lydia.turnage@wilmerhale.com | Lauren Ige<br>Cristina Salcedo<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>250 South Grand Avenue, Suite 2400<br>Los Angeles, CA 90071<br>lauren.ige@wilmerhale.com<br>cristina.salcedo@wilmerhale.com |
| Bethany Stevens<br>Hannah Cannom<br>Walker Stevens Cannom LLP<br>500 Molino Street, Suite 118<br>Los Angeles, CA 90013<br>bstevens@wscllp.com<br>hcannom@wscllp.com | |
| IPservice@potteranderson.com | AppleMasimoService@desmaraisllp.com |
| whmasimoantitrustservice@wilmerhale.com | |

November 21, 2023

           */s/ Megan C. Haney*
           Megan C. Haney (#5016)