IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| APPLE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1377 (JLH) |
| | ) | |
| MASIMO CORPORATION and SOUND UNITED, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| MASIMO CORPORATION, | ) | |
| | ) | |
| Counter-Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |
| APPLE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1378 (JLH) |
| | ) | |
| MASIMO CORPORATION and SOUND UNITED, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| MASIMO CORPORATION and CERCACOR LABORATORIES, INC., | ) | |
| | ) | |
| Counter-Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**MEMORANDUM OPINION**

David E. Moore, Bindu A. Palapura, Andrew M. Moshos, POTTER ANDERSON & CORROON LLP, Wilmington, DE; John M. Desmarais, Jordan N. Malz, Cosmin Maier, Kerri-Ann Limbeek, Jeffrey Scott Seddon, II, DESMARAIS LLP, New York, NY; Peter C. Magic, DESMARAIS LLP, San Francisco, CA; Jennifer Milici, Dominic Vote, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C.; Mark A. Ford, WILMER CUTLER PICKERING HALE AND DORR LLP, Boston, MA — Attorneys for Plaintiff

John C. Phillips, Jr., Megan C. Haney, PHILLIPS MCLAUGHLIN & HALL, P.A., Wilmington, DE; Joseph R. Re, Stephen C. Jensen, Stephen W. Larson, Benjamin A. Katzenellenbogen, Edward M. Cannon, Brian C. Claassen, Jared C. Bunker, Mark Lezama, Kendall M. Loebbaka, Douglas B. Wentzel, KNOBBE, MARTENS, OLSON & BEAR, LLP, Irvine, CA; Brian Horne, KNOBBE, MARTENS, OLSON & BEAR, LLP, Los Angeles, CA; Adam Powell, Daniel P. Hughes, KNOBBE, MARTENS, OLSON & BEAR, LLP, San Diego, CA; Carol M. Pitzel Cruz, KNOBBE, MARTENS, OLSON & BEAR, LLP, Seattle, WA  — Attorneys for Defendants

Wilmington, Delaware
October 7, 2024

**JENNIFER L. HALL, U.S. DISTRICT JUDGE**

In these related cases, Plaintiff Apple, Inc. alleges that certain smartwatches marketed by Defendants Masimo Corp. and Sound United, LLC., infringe Apple's utility and design patents. Masimo[1] asserts a litany of defenses and counterclaims, including its own patent infringement claims as well as antitrust and false advertising claims, among others.

The parties have filed numerous summary judgment and Daubert motions. This opinion addresses Apple's Motion for Summary Judgment on Defendants' Inequitable Conduct Counterclaims (C.A. No. 22-1377, D.I. 453; C.A. No. 22-1378, D.I. 485). The Motion will be GRANTED.

**I.     BACKGROUND**

In C.A. No. 22-1377, Apple asserts the following design patents against Masimo: U.S. Patent Nos. D883,279 (the "D'279 patent"), D947,842 (the "D'842 patent"), D962,936 (the "D'936 patent"), and D735,131 (the "D'131 patent") (collectively, the "Asserted Design Patents"). As relevant here, Apple alleges that the electrode design of the back of Masimo's original "W1" electronic watch, the redesigned electrode design of the back of the Masimo W1 watch, and the original design of the W1 charger infringe the Asserted Design Patents. Masimo asserts a number of affirmative defenses including unenforceability due to inequitable conduct, and counterclaims seeking declaratory judgments that its products do not infringe the Asserted Design Patents and that the Asserted Design Patents are invalid and unenforceable. (C.A. No. 22-1377, D.I. 138, 151.)

In C.A. No. 22-1378, Apple asserts the following utility patents against Masimo: U.S. Patent Nos. 10,627,783 (the "'783 patent"), 10,942,491 (the "'491 patent"), 10,987,054 (the "'054 patent"), 11,106,352 (the "'352 patent"), and 11,474,483 (the "'483 patent") (collectively, the

---

[1] For simplicity, the Court refers to Defendants Masimo Corporation and Sound United LLC, as well as Counter-claimant Cercacor Laboratories, Inc., collectively as "Masimo."

"Asserted Utility Patents"). Masimo asserts a number of affirmative defenses and counterclaims, including counterclaims seeking declaratory judgments that its products do not infringe the Asserted Utility Patents and that the Asserted Utility Patents are invalid and unenforceable. (C.A. No. 22-1378, D.I. 132, 146.) Masimo also asserts additional counterclaims, including antitrust, false advertising, deceptive practices, and patent infringement claims.

After holding a case management conference and receiving briefing from the parties, the Court ordered that Apple's utility and design patent infringement claims, Masimo's invalidity and unenforceability defenses and counterclaims pertaining to Apple's patents, and the fraud-on-the-patent-office element of Masimo's *Walker Process* counterclaim will be tried during a 5-day jury trial beginning October 21, 2024.[2] (C.A. No. 22-1377, D.I. 649, 652 (transcript); C.A. No. 22-1378, D.I. 671.) The remaining claims will be tried later.

## II.  LEGAL STANDARDS

### A.  Summary Judgment

A party may move for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is only genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Rather, "the judge must ask himself . . . whether a fair-minded jury could return a

---

[2] The Court reasoned that Masimo's inequitable conduct claims need be tried to the jury in order to preserve the Seventh Amendment right to a jury trial on Masimo's *Walker Process* antitrust claim, which is based on the same allegations. (*See* C.A. No. 22-1377, D.I. 649, 652.)

verdict for the [claimant] on the evidence presented" in view of the substantive evidentiary burden that applies in the case. *Anderson*, 477 U.S. at 252.

In other words, if the burden of proof that applies to the claim is "clear and convincing," the summary judgment question is whether the evidence of record, viewed in the light most favorable to the claimant, could support a reasonable jury finding that the claimant proved its case by clear and convincing evidence, or whether it cannot. *Id.* at 254. "[W]here a non-moving party fails sufficiently to establish the existence of an essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (citing *Lauren W. v. DeFlaminis*, 480 F.3d 259, 266 (3d Cir. 2007)).

### B. Inequitable Conduct

To establish inequitable conduct on the basis that material information was withheld from the PTO, the accused infringer must prove by clear and convincing evidence that a person with a duty of candor to the PTO knew of information material to patentability and deliberately withheld it from the PTO with the specific intent to deceive. *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) ("In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant *made a deliberate decision* to withhold [] *known* material [information]." (citation omitted)). "Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Id.* "Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Id.* "However, to meet the clear and convincing evidence standard, the specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence." *Id.* 1290–91 ("[W]hen there are

5

multiple reasonable inferences that may be drawn, intent to deceive cannot be found." (citations omitted)).

In view of the substantive evidentiary burden that applies to assertions of inequitable conduct, the question on summary judgment is this: could a reasonable factfinder conclude that the single most reasonable inference is that the applicants deliberately withheld material information from the PTO with the specific intent to deceive?

## III. DISCUSSION

Masimo's proffered theories of inequitable conduct have morphed over time, but it now asserts inequitable conduct only as to the Asserted Design Patents, and only on the following theories: (1) that an Apple in-house patent agent and the named inventors of the Asserted Design Patents "knowingly withheld from the PTO . . . the names of the engineers who were actual inventors"; and (2) that those same individuals knowingly withheld "the functional nature of the claimed designs." (C.A. No. 22-1377, D.I. 521 at 2.)

Apple says the Court should grant summary judgment because Masimo cannot establish a triable issue as to either theory. I agree.

At the outset, there are certain fundamental flaws with Masimo's theories. For one, Masimo heavily relies on evidence showing that Apple engineers (unsurprisingly) contributed to the functions of the Apple Watch, almost as if the mere fact that elements of the watch are functional means that Apple would not have obtained the design patents if those engineers' contributions were disclosed to the PTO. But that is not the law. A "claimed design [is] not invalid as functional simply because the 'primary features' of the design [can] perform functions." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1329 (Fed. Cir. 2015). "An article's function 'must not be confused with the functionality of the *design* of the article.'" *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363, 1380 (Fed. Cir.

6

2023) (quoting *Hupp v. Siroflex of America, Inc.*, 122 F.3d 1456, 1460 (Fed. Cir. 1997)). "[T]he fact that the article of manufacture serves a function is a prerequisite of design patentability, not a defeat thereof." *Hupp*, 122 F.3d at 1460. "The elements of the design may indeed serve a utilitarian purpose, but it is the ornamental aspect that is the basis of the design patent." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) (citation omitted); *see also Ethicon*, 796 F.3d at 1333 (explaining that, where "individual elements of the claimed design [have] functional purposes," the claim is "limited to the ornamental aspects of these functional elements").

Accordingly, the question is not whether the named inventors and the patent attorney knew that the omitted engineers contributed to the design of the Apple Watch; it is whether they knew that the omitted engineers contributed to the *ornamental* aspects of the design. *Cf. Ethicon*, 796 F.3d 1334 ("Thus, although the Design Patents do not protect the general design concept of an open trigger, torque knob, and activation button in a particular configuration, they nevertheless have some scope—the particular ornamental designs of those underlying elements."). Evidence that Apple engineers contributed to the watch's functional elements is not conclusive as to whether Apple engineers contributed to the ornamental aspects of the design.

Second, and relatedly, Masimo points to any mention of the word "design" in the record as if it necessarily refers to the legal concept of a patented ornamental design. For instance, Masimo points to a PowerPoint presentation created by Apple engineers and shared with some of the inventors of the Asserted Design Patents that describes the engineers' suggested optical sensor "design" and details the engineering basis for the suggested "design." (*See generally*, C.A. No. 22-1377, D.I. 528, Ex. D.) Masimo contends that this is evidence that the engineers contributed to the "design" and therefore should have been named as inventors of the Asserted Design Patents.

7

But the presentation discusses *functional* aspects of the "design" of the Apple Watch optical sensor and is not conclusive as to whether the Apple engineers contributed to the *ornamental* aspects of the Asserted Design Patents.

With this in mind, the Court turns to assess Masimo's current theories of inequitable conduct.

### Theory 1(a): The named inventors withheld from the PTO the names of the engineers who were actual inventors.

Masimo alleges that the inventors listed on the Asserted Design Patents committed inequitable conduct by knowingly withholding from the PTO the fact that Apple engineers contributed to the claimed designs and therefore should have been named as inventors on the Apple Asserted Design Patents.  For purposes of the argument only, I'll assume that the allegedly withheld information was material and not duplicative of information already before the PTO. Masimo has nevertheless failed to point to evidence that would allow a reasonable factfinder to conclude that the named inventors knew that the engineers should have been named or that a specific intent to deceive on the part of the named inventors is the single most reasonable inference.

In support of its motion for summary judgment, Apple cites the following evidence:

- Deposition testimony of the named inventors stating that each named inventor participated in contributing to the entire ornamental design. (C.A. No. 22-1377, D.I. No. 477, Ex. 9 at 9–10; Ex. 13 at 32:20–34:16, 37:5–40:1; Ex. 14 at 28:3–29:5, 30:13–31:11, 33:21–34:9; Ex. 15 at 10:2–22; Ex. 16 at 19:11–20:20; Ex. 17 at 25:6–26:10, 30:2–19; Ex. 18 at 29:16–31:18.)

- Deposition testimony of the named inventors stating that the named inventors defined the exterior of the Apple Watch, including the size, shape, spacing, arrangement, and form of the components. (*Id.*, Ex. 13 at 96:3–17, 112:13–115:8;

8

Ex. 14 at 142:2–16, 160:22–162:20, 241:3–7; Ex. 16 at 133:21–135:9; Ex. 17 at 86:14–88:5; Ex. 18 at 64:9–22; Ex. 19 at 15:9–22, 102:17–21; Ex. 20 at 42:2–8; Ex. 21 at 44:1–6.)

- Deposition testimony from the Apple engineers that Masimo alleges contributed to the Asserted Design Patents, stating that the engineers did not conceive of the ornamental design of the Apple Watch. (*Id.*, Ex. 19 at 15:9–22, 102:17–21; Ex. 20 at 42:2–8; Ex. 21 at 44:1–6; Ex. 22 at 174:8–15, 186:9–16, 119:9– 19, 122:1–7; Ex. 29 at 48:11–19; Ex. 151 at 134:14–21; Ex. 152 at 52:8–11; Ex. 153 at 33:16–34:2.)

- Deposition testimony of the named inventors stating that the named inventors believed that the designs protected by the Asserted Design Patents were ornamental. (*Id.*, Ex. 13 at 91:1–22; Ex. 14 at 86:13–87:5; Ex. 15 at 30:12–22; Ex. 16 at 24:5–22, 26:10–21; Ex. 17 at 111:19–114:3; Ex. 18 at 60:15–61:22.)

Masimo points to the following evidence in support of its argument that there are genuine disputes of material fact as to knowledge and intent:

- Documents evidencing that Apple engineers contributed to the number, spacing, and arrangement of LEDs, photodiodes, Frensel lens, and apertures for the photodiodes and lens. The "wheel" optical sensor "design" Apple ultimately selected was spearheaded by Apple engineers. (C.A. No. 22-1377, D.I. 528, Ex. D at 390; Ex. E at 465; Ex. S, 155:10–157:6; Ex. F at 883–891; Ex. Y.)

- Documents showing that in March 2017, the Apple engineers presented their proposed optical sensor "design" to a few named inventors. The engineering and design teams continued to collaborate thereafter. (*Id.*, Ex. F; Ex. D; Ex. U; Ex. V; Ex. W; Ex. X; Ex. Z; Ex. AA.)

- Documents and testimony showing that Apple engineers "designed" the ECG electrodes and shared a "Design Cheat Sheet" showing the engineering parameters of the "design" with some of the named inventors. (*Id.*, Ex. G 44:9–10, 44:19–45:1; Ex. H at 152, 155, 168.)

- In November 2018, Apple filed the application leading to the '157 utility patent, which claims arc-shaped electrodes and shows the optical sensor "design" developed by Apple engineers. (*Id.*, Ex. I, cl. 9, 15, Fig. 4.)

- Deposition testimony of named inventor Evans Hankey. Hankey explained that "during inventorship—during the patent process, inventorship is discussed with design, engineering, and Apple legal." (*Id.*, Ex. M at 86–87.) Hankey clarified that this process would occur "under a host of patents," and that "the process is usually product related, whatever product we're working on at that time from a very product standpoint." (*Id.* at 87–88). When asked whether Hankey "recall[ed] generally being involved in a process by which it was determined among or across multiple groups what aspects of the Apple Watch Series 4 should be included in utility patent applications and which aspects should be included in design patent applications," Hankey answered, "I will say generally that is part of the process." (*Id.* at 89–90.) Hankey confirmed that the inventorship determination with respect to the Apple Watch Series 4 followed this typical process but could not recall any specific inventorship meetings regarding the Apple Watch Series 4. (*Id.* at 88–90.)

- Deposition testimony of named inventor Rico Zorkendorfer. Zorkendorfer stated that design and function are related, and that functional considerations can influence designs. (*Id.*, Ex. L at 16–18.) He explained that "the design team was

10

in charge of the overall design and idea and concept of a product and work with the engineering team in trying to implement, as best as possible, the visions and the ideas that came out of the design team." (*Id.* at 61.)  With respect to particular elements of the Apple Watch, Zorkendorfer clarified that "[e]very aspect of the watch that can be considered as part of the design of the overall feel and look of the watch is something that's very strongly guided by the design team.  So when you ask me about the specific surface area of something that is visible, again, would have been done in colla — collaborations with the engineering side; but typically, this is a — a design feature that gets signed off by the designers." (*Id.* at 64.)  He explained that with respect to, for example, the surface of the electrodes, the engineering team would give the design team a range of possible surface areas and the design team would choose the most compelling design option that met the functional requirements. (*Id.* at 65–66.)

On this record, no reasonable factfinder could find by clear and convincing evidence that the named inventors of the Asserted Design Patents knew about and withheld the fact of the engineers' inventorship with the intent to deceive.  For one thing, even the Apple engineers that Masimo alleges should have been named as inventors did not believe they should have been named as inventors.  *Cf. Pro-Mold and Tool Co., Inc. v. Great Lakes Plastics, Inc.,* 75 F.3d 1568, 1576 (Fed. Cir. 1996) ("When an alleged omitted co-inventor does not claim to be such, it can hardly be inequitable conduct not to identify that person to the PTO as an inventor."); *see also Skillz Platform Inc. v. Aviagames Inc.,* No. 21-2436, 2023 WL 6542147, at *6–7 (N.D. Cal. Oct. 6, 2023) (citing *Therasense,* 649 F.3d at 1290); *ChriMar Sys. Inc. v. Cisco Sys., Inc.,* No. 13-1300, 2019 WL 8333452, at *12–13 (N.D. Cal. Dec. 17, 2019) (granting summary judgment of no inequitable

11

conduct on omitted inventor theory because there was no evidence that the allegedly omitted inventor believed that he should have been named an inventor and therefore intent to deceive could not be established); *Fuma Int'l LLC v. R.J. Reynolds Vapor Co.*, No. 19-260, 2019 WL 3066404, at *3 (M.D.N.C. July 12, 2019) (granting motion to dismiss inequitable conduct claim based on allegedly withheld inventorship because "the allegations in the counterclaim indicate that Mr. Conley omitted Dr. Tomsik as an inventor based on Dr. Tomsik's own belief that he was not an original inventor and should not be listed"); *Mformation Techs., Inc. v. Research in Motion Ltd.*, 830 F. Supp. 2d 815, 829–30 (N.D. Cal. 2011) (same).

What's more, Masimo has pointed to insufficient evidence for a reasonable factfinder to conclude that the named inventors even knew of the allegedly material fact that the omitted engineers contributed to the ornamental aspects of the design. Again, all of the named inventors and engineers that were deposed in this case consistently testified that they did not believe that the engineers contributed to the ornamental aspects of the design. No fair-minded factfinder could look at the evidence presented by Masimo and conclude that the single most reasonable inference is that the named inventors knew about the allegedly withheld fact and withheld it with a specific intent to deceive.

> **Theory 2(a):** **The named inventors withheld from the PTO "the functional nature of the claimed designs" and references "that they knew showed the claimed designs' functional nature."**

Masimo next alleges that the inventors of the Asserted Design Patents committed inequitable conduct by "([i]) failing to disclose the functional nature of the claimed designs and ([ii]) failing to disclose references, such as the '157 patent and related applications . . . that they knew showed the claimed designs' functional nature." (C.A. No. 22-1377, D.I. 521 at 12.) The first part of that theory—that the named inventors knew that the claimed designs were functional

12

in nature and withheld that information from the PTO with the intent to deceive—is fundamentally the same as Masimo's prior theory. Masimo cites no additional evidence, and my conclusion is the same: no reasonable factfinder could look at the evidence and conclude that the single most reasonable inference is that the named inventors on the Apple design team knew that the designs were functional and withheld that fact from the PTO with a specific intent to deceive.

Masimo fares no better with the second part of its theory. In addition to the evidentiary deficiencies already explained, there is insufficient evidence that the named inventors even knew of the '157 patent and the related applications. On this record, no reasonable factfinder could conclude that the single most reasonable inference is that the named inventors withheld references from the PTO with a specific intent to deceive.

### Theory 1(b): Apple's in-house patent attorney withheld from the PTO the names of the engineers who were actual inventors.

Masimo alleges that the in-house patent agent overseeing the applications for the Asserted Design Patents ("Patent Attorney") knew that Apple engineers contributed to the claimed designs and should have been named as inventors on the Asserted Design Patents, but he withheld that information with the specific intent to deceive the PTO.

In support of its motion for summary judgment, Apple points to Patent Attorney's deposition testimony. He testified that he was responsible for conducting the legal determination of who to name as an inventor on the Asserted Design Patents. (C.A. No. 22-1377, D.I. 477, Ex. 23 at 50–51.) He explained that the process of determining who should be named as an inventor on a design patent begins with a meeting with the Industrial Design team, in which the ID team and Patent Attorney come up with a tentative initial list of inventors. (*Id.* at 57, 76–77.) Patent Attorney and the ID team then investigate whether anyone should be added to or removed from the list, discuss their findings, and generate a final list of inventors. (*Id.*) In generating the list,

13

Patent Attorney and the ID team list persons who "have materially contributed to the claims shown in the drawings." (*Id.* at 77.) During that process, Patent Attorney investigates any information suggesting that persons outside of the ID team may have contributed to the claimed designs, and if so, adds that person to the list. (*Id.* at 86–90.) In determining whether to file a design patent application, Patent Attorney also evaluates whether elements of a potential design claim are functional, including by evaluating relevant information, such as, for example, prototypes and alternative designs. (*Id.* at 91–92.) He testified that the inventorship determination for the Asserted Design Patents followed this process. (*Id.* at 57.) He further testified that each of the named inventors materially contributed to the claim of each Asserted Design Patent. (*Id.* at 73, 140–41.)

Masimo points to the Hankey testimony discussed above in support of its contention that there is a genuine dispute of material fact as to whether Patent Attorney believed that Apple engineers contributed to the ornamental aspects of the claimed designs and should have been named as inventors. Masimo also contends that a factfinder can infer an intent to deceive because Patent Attorney could not identify the specific contributions that each named inventor made to the claimed designs, and his testimony was inconsistent as to whether he decided who to name as inventors or whether he instead deferred to the ID team's suggestions. (C.A. No. 22-1377, D.I. 521 at 10–11.) But his inability to identify the specific contributions that individual named inventors made to the Asserted Design Patents does not lead to a reasonable inference that Patent Attorney knew that other Apple employees also contributed to the asserted designs. Patent Attorney's testimony at times may have been less than pellucid.[3] But no reasonable juror, on this

---

[3] The Federal Circuit has recognized that determining "legal inventorship" is "difficult[]." *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1352 (Fed. Cir. 1998).

record, could find that the single most reasonable inference is that Patent Attorney knew that Apple engineers should have been named as inventors on the Asserted Design Patents and withheld that information with the specific intent to deceive the PTO.

### Theory 2(b):  Apple's in-house patent attorney withheld the functional nature of the claimed designs and utility patent references

Nor may Masimo proceed to trial on its theory that Patent Attorney withheld information relating to the functional nature of the Asserted Design Patents.  Patent Attorney testified that he was not aware of the '157 patent and related utility applications during the prosecution of the Asserted Design Patents.  (C.A. No. 22-1377, D.I. 477, Ex. 23 at 147.)  He also explained that his "role is design patents and I manage these design patents internally at Apple." (*Id.* at 23.)  Masimo cites no additional probative evidence not already discussed.  On this record, no reasonable factfinder could find that the single most reasonable inference is that Patent Attorney knew about information relating to the functionality of the designs and deliberately withheld it with a specific intent to deceive the PTO.

IV.     **CONCLUSION**

The Court has not weighed the evidence. Rather, it has determined that a reasonable factfinder could not conclude that Masimo has shown specific intent to deceive by clear and convincing evidence. *Anderson*, 477 U.S. at 252. Apple's Motion for Summary Judgment on Defendants' Inequitable Conduct Counterclaims (C.A. No. 22-1377, D.I. 453; C.A. No. 22-1378, D.I. 485) will be granted.[4]  A separate Order will be entered.

---

[4] The Court understood there to be no dispute that, if Masimo's inequitable conduct defense failed to survive summary judgment, its *Walker Process* allegations would also fail. (*See* C.A. No. 22-1377, D.I. 652.) Indeed, in response to Apple's argument that the Court should grant it summary judgment on Masimo's *Walker Process* claim "because there was no inequitable conduct" (C.A. No. 22-1377, D.I. 472 at 4), Masimo's sole response was this: there was inequitable conduct. (C.A. No. 22-1377, D.I. 521 at 25 ("Apple argues the *Walker Process* claims fails [sic] if Masimo's inequitable conduct claims fail. Mot. at 26. Masimo responded to those arguments above. *See supra* Section II [Masimo's inequitable conduct argument].").)  The Court therefore understands that there is no need to try to the jury the fraud-on-the-patent-office element of Masimo's *Walker Process* claim at the upcoming trial.