**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| APPLE INC., | |
| *Plaintiff*, | |
| v. | C.A. No. 22-1377-JLH |
|  | C.A. No. 22-1378-JLH |
| MASIMO CORPORATION and SOUND UNITED, LLC, | |
| *Defendants*. | |

**[PROPOSED¹] FINAL JURY INSTRUCTIONS**

---

¹ <<APL: Blue text >> in chevrons identifies Apple's proposed language.
 {{MAS: Green text }} in curly brackets identifies Masimo's and Sound United's proposed language.

1

## 1. General Instructions

### 1.1. Introduction

[Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.  Each of you has been provided a copy of these instructions.  You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that apply in every civil case.  Then I will explain some rules that you must use in evaluating particular testimony and evidence.  Then I will explain the positions of the parties and the law you will apply in this case.  And last, I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the questions that you must answer to decide this case.][2]

---

[2] JLH-Arendi, at 1.1; see also JLH-Cap-XX at 1.1.

**1.2. Jurors' Duties**

[You have two main duties as jurors.  The first is to decide what the facts are from the evidence that you saw and heard in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.  You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue.  It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.][3]

---

[3] JLH-Arendi, at 1.2; see also JLH-Cap-XX at 1.2; 3d Cir.  Model, 3.1.

### 1.3. Evidence Defined

[You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.  The evidence in this case includes only what the witnesses said while they were testifying under oath, including deposition testimony that has been played by video or read to you, the exhibits that I allowed into evidence, and any facts the parties agreed to by stipulation.  During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence.  You will have these admitted exhibits in the jury room for your deliberations.

Certain models, reproductions, charts, summaries, and graphics have been used to illustrate certain evidence and testimony from witnesses.  You may have heard these models, reproductions, charts, summaries, or the like, referred to as "demonstratives" during the trial.  Unless I have specifically admitted them into evidence, these demonstratives are not themselves evidence, even if they refer to, identify, or summarize evidence.  You will not have these demonstratives in the jury room.  Rather, it is the underlying testimony of the witness that you heard and the exhibits cited in the demonstratives that are the evidence in this case.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts.  Their questions and objections are not evidence.  My legal rulings are not evidence.  You should not be influenced by a lawyer's objection or by my ruling on that objection.  Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And, sometimes I may have ordered you to disregard things that you saw or heard, or that I struck from the record.  You must completely ignore all of these things.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.  Make your decision based only on the evidence, as I have defined it here, and nothing else.][4]

---

[4] JLH-Arendi at Instruction 1.3; see also JLH-CapXX at Instruction 2.1; 3d Cir.  Model, 1.5, 2.8.

**1.4. Direct and Circumstantial Evidence**

[During the preliminary instructions, I told you about "direct evidence" and "circumstantial evidence." I will now remind you what each means.  Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is proof of a fact or facts from which you may infer or conclude that other facts do or do not exist.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence.  The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.][5]

---

[5] JLH-Arendi at Instruction 1.4; see also JLH-CapXX at Instruction 2.2; 3d Cir.  Model, 1.6.

### 1.5. Consideration of Evidence

[You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.] [6]

---

[6] JLH-Arendi at Instruction 1.5; see also JLH-CapXX at Instruction 1.5.

### 1.6. Evidence With Redacted Material

[You will note that there are black or white markings or redactions on certain exhibits. Irrelevant information has been removed from those documents. You are not to speculate about what that irrelevant information is. Do not consider it in any way. The Court has removed irrelevant material to ensure the evidence is presented in a fair manner.

You are not to engage in any guesswork or speculation about what has been excluded from your view. You are to decide the facts only from evidence which is before you.][7]

---

[7] Mass Model.

**1.7. Statements of Counsel**

[A further word about statements of counsel and arguments of counsel. The attorneys' statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented.

If you remember the evidence differently from the way it was described by the attorneys, you should rely on your own recollection.] [8]

---

[8] JLH-Arendi at Instruction 1.6.

**1.8. Credibility of Witnesses**

[You are the sole judges of each witness's credibility.  You may believe everything a witness says, or part of it, or none of it.  In deciding what to believe, you may consider a number of factors, including each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's motives, biases, prejudices, or interests; the witnesses' manner or demeanor on the witness stand; and any other factors that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at the trial in person or by deposition testimony played by video or read to you.  You have the right to distrust such witness's testimony and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.  Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.] [9]

---

[9] JLH-Arendi at Instruction 1.7; see also JLH-CapXX at Instructions 4 & 5; 3d Cir.  Model, 1.7.

**1.9. Expert Witnesses**

[When knowledge of subject matter requiring special skill or knowledge in some science, profession, or business that is not common to the average person might be helpful to the jury, a person who has special training or experience in that field — he or she is called an expert witness — is permitted to state his or her opinion on those matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon his or her testimony.][10]

[In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.  Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.  You are free to accept or reject the testimony of experts, just as with any other witness.  [11]]

---

[10] JLH-CapXX at Instruction 6; see also JLH-Arendi at Instruction 1.8.
[11] JLH-Arendi at Instruction 1.8.

## 1.10.        Prior Testimony

[During the trial, certain testimony was presented to you by the playing of video excerpts or read into evidence from a deposition or other proceeding.  The prior testimony may have been edited or cut to exclude irrelevant testimony as the parties have only a limited amount of time to present you with evidence.  You should not attribute any significance to the fact that the testimony may appear to have been edited.

Prior testimony that is given under oath is entitled to the same consideration you would give it had the witnesses personally appeared in court.] [12]

---

[12] JLH-Arendi at Instruction 1.9 (modified); see also JLH-CapXX at Instruction 7 (modified).

**1.11.     Use of Notes**

[You may use notes taken during the trial to assist your memory.  Remember that your notes are for your personal use.  They may not be given or read to anyone else.  Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors.  Your notes are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Some testimony that is considered unimportant at the time presented and, thus, not written down, may take on greater importance later in the trial considering all the evidence presented.  Your notes are valuable only to refresh your memory.  Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.] [13]

---

[13] JLH-CapXX at Instruction 3; see also JLH-Arendi at Instruction 1.11.

### 1.12.    Burdens of Proof

[In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used.  The first is called "preponderance of the evidence." The second is called "clear and convincing evidence." I told you about these two standards of proof during my preliminary instructions to you and I will now remind you what they mean.

Plaintiff Apple asserts that Defendant Masimo and Sound United infringe certain United States patents.  Plaintiff Apple also asserts that Masimo's and Sound United's infringement is willful.[14] Plaintiff Apple has the burden of proving infringement and willfulness by a "preponderance of the evidence." That means Plaintiff Apple has to prove to you, in light of all the evidence, that what it claims is more likely true than not.  To say it differently, if you were to put the evidence of Plaintiff Apple and the evidence of Defendants Masimo and Sound United on opposite sides of a scale, the evidence supporting Plaintiff Apple's claims would have to make the scales tip somewhat on its side in each instance.  If the scale should remain equal or tip somewhat in favor of Defendants Masimo and Sound United, you must find in favor of Masimo and Sound United.

Defendants Masimo and Sound United deny Apple's allegations and further contends that certain asserted claims of Apple's patents are invalid.  A party challenging the validity of a patent – in this instance, Defendants Masimo and Sound United – has the burden to prove that certain asserted claims are invalid by "clear and convincing evidence." Clear and convincing evidence means evidence that it is highly probable that a fact is true.  Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

---

[14] Masimo preserves its objection that willfulness should not go to the jury.

You may have heard of the "beyond a reasonable doubt" burden of proof from criminal cases. That requirement is the highest burden of proof.  It does not apply to civil cases like this one and, therefore, you should put it out of your mind.] [15]

---

[15] JLH-Arendi at Instruction 1.12 (Modified); see also JLH-CapXX at Instruction 9.

## 2. The Parties and Their Contentions

### 2.1. The Parties

[I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict.

As I have previously told you, the plaintiff in this case is Apple Inc.  We have referred to the plaintiff as Apple.  The defendants in this case are Masimo Corporation and Sound United, LLC.  We may refer to the defendants as Masimo and Sound United, for short.

In this case, Plaintiff Apple alleges infringement of ten United States patents.  There are two different types of patents in this case: design patents and utility patents.  I explained the difference between these two types of patents in my preliminary instructions, and I will remind you later in these instructions.

Plaintiff Apple alleges that Defendants Masimo and Sound United have infringed the following design patent claims:

- The claim of U.S. Patent No. D883,279 (the "D'279 Patent")
- The claim of U.S. Patent No. D947,842 (the "D'842 Patent") and
- The claim of U.S. Patent No. D735,131 (the "D'131 Patent")

You may have heard these patents referred to as the "Asserted Design Patents."  Plaintiff Apple alleges that Defendants Masimo and Sound United have infringed the following utility patent claims:

- Claim 16 of U.S. Patent No. 10,627,783 (the "783 Patent")
- Claim 1 of U.S. Patent No. 10,987,054 (the "054 Patent" ) and
- Claim 13 of U.S. Patent No. 11,474,483 (the "483 Patent).

You may have heard these patents referred to as the "Asserted Utility Patents."  And you may have heard these claims of the Asserted Design and Utility Patents referred to as the "Asserted Claims."  <<APL: Plaintiff Apple also contends Defendants Masimo's and Sound United's infringement was willful.  >>  Defendants Masimo and Sound United deny that they have infringed the Asserted Claims of these patents and contend that certain asserted claims are invalid.] [16]

---

[16] JLH-Arendi at Instruction 2.1; see also JLH-CapXX at Instruction 8.

### 2.2. Summary of the Issues

You must decide the issues in this case according to the instructions that I give you:

1. Whether Plaintiff Apple has proved by a preponderance of the evidence that Defendants infringe one or more of the Asserted Claims;

2. Whether Defendants have proven by clear and convincing evidence that one or more of the Asserted Claims are invalid;

3. If you decide that any of the Asserted Claims are infringed and not invalid, you will then need to decide whether Apple has proven by a preponderance of the evidence that Masimo's infringement is willful; and

4. <<APL: If you decide that any of the Asserted Claims are infringed and not invalid, you will need to decide whether Apple has proven by a preponderance of the evidence that damages should be awarded to compensate it for Masimo's and Sound United's infringement. >>] [17]

{{MAS: With respect to remedy, Apple is claiming at most $250.[18]

---

[17] JLH-Arendi at Instruction 2.2 (Modified); see also JLH-CapXX at Instruction 8. Masimo's instruction and description is out of place in the summary of the issues and inappropriately slanted toward Masimo. Apple's proposal properly instructs the jury as to the issue in a neutral tone. The amount of damages (which Apple agrees is $250) is addressed below.

[18] During the pretrial conference, the Court asked Apple if it would "ask for monetary relief beyond the minimum of $250 in any witness or argument." Pretrial Hr'g at 43:2-4. When questioned by the Court, Apple confirmed at the pretrial conference that it was "asking for 250 for the design patents under the design statute and 250 on the utility patents under [Section] 284. We are only going to ask for one 250, but it's two separate reasons." *Id.* at 43:5-9. The Court then confirmed that Apple is not going to ask the jury to "give what's right." *Id.* at 43:10-17. *See id.* at 6:13-17 ("THE COURT: And just to make sure that we're all clear, that's the damages claim is for a total of $250 across all seven [now six] patents in total? MR. DESMARAIS: Yes. The point of this case, Your Honor, is as you see in the first paragraph of the pretrial order, after the trial, we want a willfulness finding from the jury. After the trial, we would like to file with

In this case, Apple is claiming at most $250.[19]   If you find infringement by Masimo of any of Apple's Design Patents, you should award Apple $250.  If you find infringement by Masimo of any of Apple's Utility Patents, you may, but are not required to, award Apple $250 in damages if you find Apple proved those damages by a preponderance of the evidence.[20] }}

---

Your Honor an injunction here, so that is the ultimate purpose for the trial. It's not for money. It's to get Masimo to stop copying our products."). *See also* Oct. 21, 2024 Trial Tr. 213:21-125 (MR. DESMARAIS'S OPENING STATEMENT:  "And let me be right up front with that. We're not asking for a lot of money in this case. . . . It's a couple hundred bucks is all we're asking for. We're not looking for money from Masimo."); Oct. 22, 2024 Hr'g Tr. at 618:14-15 ("THE COURT:  Damages experts?  MR. DESMARAIS:  No . . ..").

[19] During the pretrial conference, the Court asked Apple if it would "ask for monetary relief beyond the minimum of $250 in any witness or argument."  Pretrial Hr'g at 43:2-4.  When questioned by the Court, Apple confirmed at the pretrial conference that it was "asking for 250 for the design patents under the design statute and 250 on the utility patents under [Section] 284. We are only going to ask for one 250, but it's two separate reasons."  *Id.* at 43:5-9.  The Court then confirmed that Apple is not going to ask the jury to "give what's right."  *Id.* at 43:10-17. *See id.* at 6:13-17 ("THE COURT:  And just to make sure that we're all clear, that's the damages claim is for a total of $250 across all seven [now six] patents in total? MR. DESMARAIS:  Yes. The point of this case, Your Honor, is as you see in the first paragraph of the pretrial order, after the trial, we want a willfulness finding from the jury. After the trial, we would like to file with Your Honor an injunction here, so that is the ultimate purpose for the trial. It's not for money. It's to get Masimo to stop copying our products.").  *See also* Oct. 21, 2024 Trial Tr. 213:21-125 (MR. DESMARAIS'S OPENING STATEMENT:  "And let me be right up front with that. We're not asking for a lot of money in this case. . . . It's a couple hundred bucks is all we're asking for. We're not looking for money from Masimo."); Oct. 22, 2024 Hr'g Tr. at 618:14-15 ("THE COURT:  Damages experts?  MR. DESMARAIS:  No . . ..").

[20] {{MAS: In meet and confers, Apple agreed that if the jury awards $250 twice (once for Design Patents and once for Utility Patents), the Court would award only $250.  Masimo is not making the instruction on Utility Patent damages conditional on no award of the statutory minimum for Design Patent infringement based on that agreement.  Masimo reserves all rights to argue that none of the issues should have been tried to a jury. }}

**3.  The Patent Laws**

**3.1. The Patent Laws**

[At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case.  I will now give you more detailed instructions about the patent laws that specifically relate to this case.  If you would like to review my instructions at any time during your deliberations, you will have your copy available to you in the jury room.] [21]

---

[21] JLH-Arendi at Instruction 3.1; see also JLH-CapXX at Instruction 8.

### 3.2. Design and Utility Patents

[This case involves disputes relating to United States utility and design patents.  Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain again what patents are and how they are obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called the "Patent Office" or "PTO").  There are two basic types of patents in the United States: utility patents and design patents.  In general terms, a "utility patent" protects the way a thing is used and works.  It also protects a method or process of making or doing something.  On the other hand a "design patent" protects the way a thing looks.  A design patent is directed to the ornamental design for an article of manufacture.[22] {{MAS: ornamental aspects of a design for an article of manufacture and does not extend to broader general design concepts[23] or to any functional elements of the design.[24] }}[25]  "Ornamental design" means the shape of the design, and/or the surface decoration on the design.

---

[22] Preliminary Jury Instruction 3.

[23] *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015) ("The scope of that claim, however, **must be limited to the ornamental aspects of the design**, and **does not extend to 'the broader general design concept**.'" (emphases added) (quoting *OddzOn Prods., Inc. v. Just Toys, Inc*., 122 F.3d 1396, 1405 (Fed. Cir. 1997))).

[24] *Richardson v. Stanley Works, Inc.*, 597 F. 3d 1288, 1293 (Fed. Cir.2010) ("when the design also contains ornamental aspects, it is entitled to a design patent whose scope is limited to those aspects alone and **does not extend to any functional elements of the claimed article**." (emphasis added)); *see also Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016) ("the scope of a design patent claim 'must be limited to the ornamental aspects of the design'" and "'the scope of the claim must be construed in order to identify the non-functional aspects of the design'" (quoting *Ethicon* and *OddzOn*).

[25] 35 U.S.C. § 171(a) ("Whoever invents any new, original and **ornamental design for an article of manufacture** may obtain a patent therefor . . ."); *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1321 (Fed. Cir. 2016) ("In *OddzOn, Richardson*, and *Ethicon*, we construed design patent claims so as to assist a finder of fact in distinguishing between functional and ornamental features. **But in no case did we entirely eliminate a structural element from the claimed ornamental design, even though that element also served a functional purpose.**").

A valid United States patent, whether design or utility, gives the patent owner the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States or from importing it into the United States without the patent holder's permission, starting on the date the patent issues and lasting until the patent expires.  A violation of the patent owner's rights is called "infringement."

A patent includes what is called a "specification."  For a utility patent, the specification is a written description of the invention telling what the invention is, how it works, how to make it, and how to use it so others skilled in the field will know how to make or use it.  In a utility patent, the specification concludes with one or more written "claims."  The claims are numbered sentences at the end of the utility patent that define the boundaries of the utility patent's protection and give notice to the public of those boundaries.

For a design patent, the specification contains one or more drawings of the design as well as a description of the drawings, and all of that serves as a single claim.  The "claim" for design patents generally refers to the drawings and how they are described.][26]

{{MAS:  In addition, with respect to design patents, the Patent Office allows the filing of high-resolution drawings.[27]

Although a patent granted by the Patent Office is presumed to be valid, the fact that the Patent Office grants a patent does not always mean that the invention or design claimed in the patent, in fact, deserves the protection of a patent.  For example, the Patent Office may not have had

---

[26] Apple-2018 at Instruction 17, (Vol.  5 at 1216:16-1218:2); *see also* Dynamite-2023 at 903:17-907:5; ProSlide-2023 at Instruction 1; Panasonic-2022 at Instruction 3; TopLighting-2019 at Instruction 11.
[27] Panasonic-2022 at Instruction 3.

available to it all the information that will be presented to you.  A person accused of infringement has the right to argue here in federal court that the patent is invalid because it does not meet the requirements for a patent.[28] }} <<APL: No instruction.>>

---

[28] Panasonic-2022 at Instruction 3; ProSlide-2023 at Instruction 1; Kitsch-2023 at Instruction 6; IPO-2010 at Instruction 1.1.

### 3.3. Design Patent Claims

#### 3.3.1.  Design Patent Claims Generally

Before you decide whether the Apple's Asserted Design Patents are infringed or invalid, you will have to understand the design patent claims.[29]

It is my job as a judge to interpret for you what is claimed by the patents.  You must accept my interpretations as correct.  My interpretations should not be taken as an indication that I have an opinion one way or another regarding the issues of infringement and invalidity.  The decisions regarding infringement and invalidity are yours to make.

Unlike utility patents, a design patent can only have one claim.  That claim covers all the figures in the patent.  It is permissible to illustrate more than one embodiment of a design in a single design patent application.[30]  Each design patent contains multiple drawings to illustrate the claimed design.  The scope of the claim encompasses the design's visual appearance as a whole. It does not cover a general design concept, and is not limited to isolated features of the drawings. A design patent claim may cover the design of an entire thing, or "article"; or it may cover the design of a portion of an article.[31]

<<APL: [The various features of the overall ornamental appearance of the design may perform a function – that is the nature of an article of manufacture for which a design patent has been

---

[29] JLH-Arendi at 3.2 (modified).
[30] TopLighting-2019 at Instruction 15; *accord* Smartrend-2023 at 648:7-12; IPO-2010 at Instruction 5.
[31] TopLighting-2019 at Instruction 15; *accord* Smartrend-2023 at 648:7-12; IPO-2010 at Instruction 5.

granted.  Functional features are part of the claimed design based on how they contribute to the overall visual appearance.][32]

<<APL: Each design patent is directed to a particular "article of manufacture," which is listed in the title of the design patent.  In this case, Apple's D'131 Patent is a design patent for a "charger," and each of the D'279 and D'842 Patents are design patents for an "electronic device."  The claims are generally directed to the ornamental design for the article at issue, "as shown and described."[33]  The scope of a design patent claim is not limited by features and functions of the Plaintiff's commercial product, even if that product uses the design protected by the design patent.][34]>>  {{MAS: Apple's proposed language should not be included.  }}

{{MAS: [The scope of the claim of a design patent covers the purely ornamental features of the design and the ornamental aspects of the functional features of the design.  Features that are determined to be functional are not included within the scope of the claim.][35] }}

---

[32] TopLighting-2019 at Instruction 15; *accord* Smartrend-2023 at 648:7-12.

[33] JLH-Arendi at 3.2 (modified), *see also* Del-Gavrieli at Instruction 3.6 (Modified); *accord Egyptian Goddess, Inc.  v.  Swisa, Inc.*, 543 F.3d 665, 678 (Fed.  Cir.  2008) (*en banc*); *also* Smartrend-2023 at 648:19-650:23); ProSlide-2023 at Instructions 30 & 31; Dynamite-2023 at 916:17-918:21; Panasonic-2022 at Instructions 22–24; TopLighting-2019 at Instruction No.  18; Nordock-2013 at pp.  31-32; Apple-2012 at Instruction No.  46 (4009:18-4012:9).

[34] Berry Sterling Corp v.  Pescor Plastics, Inc., 122 F.3d 1452 (Fed.  Cir.  1997) ("Thus, we vacate and remand because the court cannot use the limitations of the commercial embodiment of the underlying article of manufacture to impose limitations on the scope of the design patent."); *Sport Dimension, Inc.  v.  Coleman Co.*, 820 F.3d 1316 (Fed.  Cir.  2016) ("In *OddzOn*, *Richardson*, and *Ethicon*, we construed design patent claims so as to assist a finder of fact in distinguishing between functional and ornamental features.  *But in no case did we entirely eliminate a structural element from the claimed ornamental design, even though that element also served a functional purpose.*").

[35] Del-Shure at Instruction C.1.; *Ethicon Endo-Surgery, Inc. v. Covidien, Inc*., 796 F.3d 1312, 1333 (Fed.  Cir.  2015) ("The scope of that claim, however, *must be limited to the ornamental aspects of the design*, and *does not extend to 'the broader general design concept*.'" (emphases added) (quoting *OddzOn Prods., Inc.  v.  Just Toys, Inc*., 122 F.3d 1396, 1405 (Fed.  Cir.  1997))); *Richardson v.  Stanley Works, Inc.*, 597 F.  3d 1288, 1293 (Fed. Cir.2010) ("when the design also

### 3.3.2.   Design Patent Claim Constructions

In this case, I have interpreted the claims of the Asserted Design Patents as follows:

| Patent | Claim Construction |
|---|---|
| D'279 | The ornamental design for an electronic device, as shown in Figures 1–9 of the D'279 patent.<br><br>The broken lines in the figures show portions of the electronic device and environment that form no part of the claimed design. The oblique line shading shows a transparent, translucent and highly polished or reflective surface.<br><br><<APL:  Masimo's additions should not be included.>><br><br>{{ **MAS:**<br><br>During the course of obtaining the patent, Apple made the following representations to the Patent Office: *To be inserted by the Court according to evidence at trial.*<br><br>The presence of the following features is functional:  *To be inserted by the Court according to evidence at trial.*<br><br>You may still consider these functional aspects as part of the design to the extent that they contribute to the overall ornamentation of the design. }} |

---

contains ornamental aspects, it is entitled to a design patent whose scope is limited to those aspects alone and ***does not extend to any functional elements of the claimed article*.**" (emphasis added)); *see also Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed.  Cir.  2016) ("the scope of a design patent claim 'must be limited to the ornamental aspects of the design'" and "'the scope of the claim must be construed in order to identify the non-functional aspects of the design'" (quoting *Ethicon* and *OddzOn*).

| Patent | Claim Construction |
|---|---|
| D'842 | The ornamental design for an electronic device, as shown in Figures 1–9 of the D'842 patent.<br><br>The broken lines in the figures show portions of the electronic device and environment that form no part of the claimed design.<br><br><<APL:  Masimo's additions should not be included.>><br><br>{{ **MAS:**<br><br>During the course of obtaining the patent, Apple made the following representations to the Patent Office: *To be inserted by the Court according to evidence at trial.*<br><br>The presence of the following features is functional:  *To be inserted by the Court according to evidence at trial.*<br><br>You may still consider these functional aspects as part of the design to the extent that they contribute to the overall ornamentation of the design. }} |
| D'131 | The ornamental design for a charger, as shown in Figures 1–11 of the D'131 patent.<br><br>The broken lines in the figures show portions of the charger and environment that form no part of the claimed design.  The shade lines in the figures show contour and not surface ornamentation.<br><br><<APL:  Masimo's additions should not be included.>><br><br>{{ **MAS:**<br><br>During the course of obtaining the patent, Apple made the following representations to the Patent Office: *To be inserted by the Court according to evidence at trial.* }} |

You must accept my description of the drawings as being correct. It is your job to take these descriptions and apply them to the issues that you are deciding, including the issues of infringement and validity.][36]

<< APL: At the close of evidence, Apple may seek a curative instruction regarding the argument to the jury that Apple's experts' application of the Court's claim constructions from the *Markman* order was incorrect or improper. >>

---

[36] JLH-Arendi at 3.2.

**3.4. Utility Patent Claims**

[In order to understand the utility patent issues in this case, I will now explain the role of utility patent claims.

A utility patent may have more than one claim.  [The claims of a utility patent are the numbered sentences at the end of the patent.  The claims are important because it is the words of the claims that define what a utility patent covers.  The figures and text in the rest of the utility patent provide a description and examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the utility patent's coverage.  Therefore, what a utility patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each utility claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.  The first step is to understand the meaning of the words used in the utility patent claim.

A utility claim sets forth, in words, a set of requirements.  Each utility claim sets forth its requirements in a single sentence.  A utility claim may be narrower or broader than another utility claim by setting forth more or fewer requirements.  The requirements of a utility claim are often referred to as "claim elements" or "claim limitations." The coverage of a utility patent is assessed claim-by-claim.

Generally, when a thing (such as a product) meets all of the requirements recited in a utility claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.  In other words, a utility patent claim covers a product where each of the claim elements or limitations is present in that product.  If a product is missing even one limitation or element of a claim, the product is not covered by that utility claim.

29

This case involves two types of utility patent claims: independent claims and dependent claims. An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. For example, claim 10 of the '483 patent is an independent claim.

In contrast, claim 13 of the '483 Patent is a "dependent claim." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers. A product that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

It is my job as the judge, through the "claim construction" process, to define the terms of claims of the utility patents and, if necessary, to instruct you on the meaning. If I have supplied a description or "construction" to a utility patent claim, it is your role to apply that definition as part of considering the scope of the claim.

In this case, I have interpreted the claims of the Asserted Utility Patents as follows:

| Term | Claim Construction |
|---|---|
| "biosensor module"<br><br>('783 patent, claim 16 (which depends from claim 15); '483 patent, claim 13 (which depends from claim 10)) | Module that includes one or more components that detects and/or measures a physiological condition or property |

| "transparent"<br><br>('054 patent, claim 1; '483 patent, claim 13 (which depends from claim 10)) | Plain and ordinary meaning |
|---|---|
| "formed from a transparent [material/substrate]"<br><br>('054 patent, claim 1) | Plain and ordinary meaning |
| "carrier member"<br><br>('054 patent, claim 1) | Structure on which electrodes are positioned |

You must accept my definition of these words as being correct.  It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

For any words in any claim for which I have not provided you with a definition, you should apply their plain and ordinary meaning as understood by a person with ordinary skill in the relevant field of technology at the time of the invention claimed by that patent.  The meanings of the words of the patent claims must be the same when deciding both the issues of infringement and validity.

You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity.  These issues are yours to decide.

The beginning portion of a claim, also known as the preamble, often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed.  This is true

even if the accused product contains additional elements, in other words more than what the

claim requires.][37]

---

[37] JLH-Arendi at Instruction 3.2; see also JLH-CapXX at Instructions 10.1–3.

## 4. Infringement

### 4.1. Infringement Generally

[I will now instruct you as to the rules you must follow when deciding whether Plaintiff Apple has proven that Masimo and Sound United have infringed the Asserted Patents.

Any person or business entity who makes, uses, sells, offers for sale, or imports something covered by a patent without the patent owner's permission, in the United States and during the term of the patent, infringes the patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another.

Apple asserts that Masimo and Sound United infringe the Asserted Claims by making, using, selling, offering for sale, and/or importing the following products:

1. Masimo W1 – (a) Original Design and (b) Wave Design

2. Masimo Freedom – (a) Original Design and (b) Wave Design

3. Masimo Health Module – (a) Original Design and (b) Wave Design

4. Masimo Original Charger

You may have heard these products referred to as the "Accused Products." To prove infringement, Apple must prove the requirements of infringement are met by a preponderance of the evidence.][38]

[Having one's own patent is not a defense to {{MAS: literal }} <<APL: [Masimo's proposed language should not be included.] >> infringement of another's patent. Accordingly, whether Defendants Masimo and Sound United have patents and whether any of these patents cover the

---

[38] JLH-CapXX at Instruction 11; JLH-Arendi at Instruction 3.3.

Accused Products should not be considered in your determination of whether the Accused

Products {{MAS: literally }} <<APL: [Masimo's proposed language should not be included.] >>

infringe Apple's patents.][39]

---

[39] JLH-SightSciences at Instruction 3.

## 4.2. Infringement – Design Patents

I will now instruct you on the rules for deciding whether Plaintiff Apple has proven infringement of its Asserted Design Patents.

[The test for infringement of a design patent is whether an ordinary observer familiar with the prior art <<APL: and giving the attention a purchaser usually gives [40] >> {{MAS: Apple's proposed language should not be included.}} would find the claimed design and the accused products to be substantially the same.

The ordinary observer is the actual purchaser of the products embodying the patented and accused designs.

Two designs are substantially the same if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the resemblance between the two designs is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.  You do not need, however, to find that any purchasers actually were deceived or confused by the appearance of the accused products.  The correct comparison for the accused products is to the overall ornamental appearance of the claimed design, rather than to individual "elements" in isolation. The claimed design must be viewed as a whole, not as a "checklist" of "elements." [41].  You

---

[40] Del-Gavrieli at Instruction 3.6 (Modified); *accord Egyptian Goddess, Inc.  v.  Swisa, Inc.*, 543 F.3d 665, 678 (Fed.  Cir.  2008) (*en banc*); *also* Smartrend-2023 at 648:19-650:23); ProSlide-2023 at Instructions 30 & 31; Dynamite-2023 at 916:17-918:21; Panasonic-2022 at Instructions 22–24; TopLighting-2019 at Instruction No.  18; Nordock-2013 at pp.  31-32; Apple-2012 at Instruction No.  46 (4009:18-4012:9).

[41] Del-Gavrieli at Instruction 3.6 (Modified); *accord Egyptian Goddess, Inc.  v.  Swisa, Inc.*, 543 F.3d 665, 678 (Fed.  Cir.  2008) (*en banc*); *also* Smartrend-2023 at 648:19-650:23); ProSlide-2023 at Instructions 30 & 31; Dynamite-2023 at 916:17-918:21; Panasonic-2022 at Instructions 22–24; TopLighting-2019 at Instruction No.  18; Nordock-2013 at pp.  31-32; Apple-2012 at Instruction No.  46 (4009:18-4012:9).

35

should consider any perceived similarities or differences between the patented and accused designs.  << A design patent covers the claimed design, as well as colorable imitations of the claimed design.[42] >>  {{MAS: Apple's proposed language should not be included.}}.  Minor differences should not prevent a finding of infringement.

{{MAS: Your comparison must be based on the ornamental features, such as shape, configuration, surface ornamentation, and relative size, but not the mere presence of a functional feature.[43]}}  <<APL:  No additional instruction.>>

<<APL: If you find by a preponderance of the evidence that the ordinary observer would consider the overall ornamental appearance of the accused products to be substantially the same as the overall ornamental appearance of the claimed design, and that the accused products were made, used, sold, offered for sale, or imported within the United States, you must find that the accused products infringed the claimed design.  [44]>> {{MAS: Apple's proposed language should not be included.  }}

This determination of whether a claimed design and an accused product are substantially the same will benefit from comparing the design of each one with prior art.  Prior art refers to designs that existed before the patented designs.  You must familiarize yourself with the prior art admitted at trial in making your determination of whether there has been direct infringement.  You may find the following guidelines helpful to your analysis:

---

[42] 35 U.S.C.  § 289.

[44]  Del-Gavrieli at Instruction 3.6 (Modified); *accord Egyptian Goddess, Inc.  v.  Swisa, Inc.*, 543 F.3d 665, 678 (Fed.  Cir.  2008) (*en banc*); *also* Smartrend-2023 at 648:19-650:23); ProSlide-2023 at Instructions 30 & 31; Dynamite-2023 at 916:17-918:21; Panasonic-2022 at Instructions 22–24; TopLighting-2019 at Instruction No.  18; Nordock-2013 at pp.  31-32; Apple-2012 at Instruction No.  46 (4009:18-4012:9).

1. If the accused design includes a feature of the claimed design that departs conspicuously from the prior art, you may find that feature important in analyzing whether the overall ornamental appearance of the accused and claimed designs are substantially the same to the ordinary observer.

2. When the claimed design is visually close to prior art designs, small differences between the accused design and the claimed design may be important in analyzing whether the overall ornamental appearances of the accused and claimed designs are substantially the same to the ordinary observer.

3. [If the accused design is visually closer to the claimed design than it is to the closest prior art, you may find this comparison important in analyzing whether the overall ornamental appearances of the accused and claimed designs are substantially the same to the ordinary observer.]

4. The placement and ornamentation of a logo may alter the overall design.  However, the use of a mark or logo to identify the source of an otherwise infringing design will not avoid infringement.

5. You should not consider the size of the accused products if the asserted design patent does not specify the size of the design. [45]

While these guidelines may be helpful, the test for infringement remains whether the overall ornamental appearances of the accused design and the claimed design are substantially the same to the ordinary observer, giving such attention as a purchaser usually gives {{MAS: and are such

---

[45] Del-Shure at Instruction 4; Del-Gavrieli at Instruction 3.6; Apple-2012 at Instruction 46.

as to deceive the ordinary observer, inducing him to purchase one supposing it to be the other }}

<<APL: Masimo's additional instruction should not be included.>>.

Whether the Defendants Masimo and Sound United knew the products infringed or even knew of Apple's design patents does not matter in determining infringement.][46]

In addition, you have heard evidence about certain Apple products, namely Apple Watch.  If you determine that any of Apple's products are substantially the same as an Apple patent design, and that a particular Apple Watch has no significant distinctions with a claimed design, then it is permissible to also compare  the claimed aspects of that Apple product to the accused products. This may facilitate your determination of whether the accused products infringe the Apple patent design. [47]  However, your infringement determination must not rely on any similarities or differences between the accused product and aspects of the patent owner's commercial product that are not claimed in the design patent.  Your decision must ultimately be based on a comparison between the claimed design and the accused design.[48]If you determine that a particular Apple Watch does not embody a patented design, you may not compare that particular Apple Watch to the accused devices.[49]

---

[46] Del-Gavrieli at Instruction 3.6 (Modified); *accord Egyptian Goddess, Inc.  v.  Swisa, Inc.*, 543 F.3d 665, 678 (Fed.  Cir.  2008) (*en banc*) (*also* Smartrend-2023 at 648:19-650:23); ProSlide-2023 at Instructions 30 & 31; Dynamite-2023 at 916:17-918:21; Panasonic-2022 at Instructions 22–24; TopLighting-2019 at Instruction No.  18; Nordock-2013 at pp.  31-32; Apple-2012 at Instruction No.  46 (4009:18-4012:9).

[47] Del-Gavrieli at Instruction 3.8 (Modified); *accord* Nordock-2013 at p.  33; Apple-2012 at Instruction No.  46 (4012:10-22).

[48] *Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193 (Fed. Cir. 1995);  *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985 (Fed. Cir. 1995);  *Unique Functional Prods., Inc. v. Mastercraft Boat Co., Inc.*, 82 F. App'x 683 (Fed. Cir. 2003);  *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir. 2020).

[49] Del-Gavrieli at Instruction 3.8 (Modified); *accord* Nordock-2013 at p.  33; Apple-2012 at Instruction No.  46 (4012:10-22).

**4.3. Infringement – Utility Patents Generally**

[I will now instruct you on the rules for deciding whether Plaintiff Apple has proven infringement of its Asserted Utility Patents.

In this case, Apple asserts that Masimo and Sound United have infringed each Asserted Utility Patent.  Defendants Masimo and Sound United would be liable for infringing a utility patent if you find that Apple has proven that it is more likely than not that Defendants Masimo and Sound United have made, used, offered to sell, or sold a product or device covered by a claim in the patent.

You have heard evidence about both Apple's commercial products and Masimo's and Sound United's accused products.  However, in deciding the issue of infringement of a utility patent, you may not compare Masimo's and Sound United's accused products to Apple's commercial products.  Rather, in making your decision regarding infringement of a utility patent, you must compare each of Masimo's and Sound United's accused products to each asserted utility patent claim.[50]

You must determine, separately for each asserted claim, whether there is infringement.  However, if you find that an independent claim is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim.  On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product meets additional requirements of any claims that depend from the independent claim,

---

[50] AIPLA-2024 at Instruction 3.0.

and thus, whether those claims have also been infringed.  A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.][51]

There are two types of utility patent infringements at issue: one is called "literal infringement" and the other is called infringement under the "Doctrine of Equivalents."  I will now instruct you on the rules for each, beginning with literal infringement.

---

[51] JLH-CapXX at Instruction 11.2; *see also* JLH-Arendi at Instruction 3.4.

### 4.4. Infringement – Literal Infringement of Utility Patents

[To determine literal infringement of a utility patent, you must compare each of Defendants Masimo's and Sound United's accused products with each claim that Apple asserts is infringed, using my instructions as to the meaning of the patent claims, to determine whether that product satisfies each and every element or limitation of the claim. A utility patent claim is literally infringed only if a particular accused product meets each of the limitations of the asserted claim. If no product meets the elements recited in a claim, Defendants Masimo and Sound United do not literally infringe that claim. The relevant comparison for infringement of a utility claim is between Defendants Masimo's and Sound United's products and Apple's patent claims.][52]

---

[52] JLH-CapXX at Instruction 11.2; *see also* JLH-Arendi at Instruction 3.4.

**4.5. Infringement – Doctrine of Equivalents for Utility Patents**

I will now explain utility patent infringement under the Doctrine of Equivalents. If any elements in an Asserted Claim are not "literally" present in the Accused Product according to my previous instruction, there may still be infringement if the Accused Product has an equivalent for each of the missing claim elements. This is called infringement under the Doctrine of Equivalents.

{{MAS: Under the doctrine of equivalents, the product can infringe an asserted patent claim if it includes components that are equivalent to those elements of the claim that are not literally present in the product. If the product is missing a component and also does not have an equivalent component to that component of the asserted patent claim, the product cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual element of the asserted patent claim that is not literally present in the product and decide whether the product has an equivalent component to each such missing individual claim element.[53] }}

[One way of showing that something is an equivalent of an element of a patent claim is to demonstrate that it is only insubstantially different from the claimed element. Another way of showing that something is an equivalent of an element of a patent claim is to demonstrate that it performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed element.][54]

<<APL: In making your decision under the doctrine of equivalents, you must look at each individual element of the asserted patent claim that is not literally present in the Accused Product

---

[53] AIPLA-2024 at Instruction 3.7.
[54] AIPLA-2024 at Instruction 3.7.

42

and decide whether the Accused Product has an equivalent to each such missing individual claim element.  Said differently, to prove infringement, Apple must prove by a preponderance of the evidence that each element of the Asserted Claim is present in the Accused Product, either literally or as an equivalent. [55]>>

{{MAS: An accused device that literally meets the claim elements nevertheless does not infringe if the accused device is so far changed in principle from the patented device that it performs the same or a similar function in a substantially different way.][56]

[In deciding whether a claim element and a component are equivalents, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the component with the claimed element.  However, known interchangeability between the claim element and the component of the product is not necessary to find infringement under the doctrine of equivalents.][57]  }}

Plaintiff Apple has the burden of proof, on all issues of infringement, by a "preponderance of the evidence."

---

[55] AIPLA-2024 at Instruction 3.7 (modified).
[56] Del-Steuben at Instruction 4; *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608-609 (1950).
[57] AIPLA-2024 at Instruction 3.7.

**4.6. Willfulness**

<<APL: In this case, Apple argues that Defendants Masimo and Sound United willfully infringed the Asserted Patents, both prior to the filing of this lawsuit on October 20, 2022 and at all times after.

[Apple asserts that Masimo and Sound United infringed the Asserted Patents, and further, that Masimo and Sound United infringed willfully.  If you find that Masimo or Sound United infringed one or more claims of the Asserted Patents, then you must also determine whether or not such infringement was willful.  To show that infringement was willful, Apple must establish that it is more likely than not that Masimo or Sound United knew of the Asserted Patents at the time of the alleged infringement and also that Masimo or Sound United engaged in deliberate or intentional infringement.

To decide whether Masimo or Sound United acted willfully, you should consider all of the facts and assess Masimo's or Sound United's knowledge at the time of the challenged conduct.  Facts that may be considered include, but are not limited to:

1. Whether or not Masimo or Sound United acted consistently with the standards of behavior for its industry;

2. Whether or not Masimo or Sound United intentionally copied a product of Apple that is covered by one of Apple's asserted patents;

3. Whether or not Masimo or Sound United reasonably believed it did not infringe or that the patent was invalid;

4. Whether or not Masimo or Sound United made a good-faith effort to avoid infringing the Patent by, for example, attempting to design around the Patent; and

5.  Whether or not Masimo or Sound United tried to cover up its infringement.

If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement.  I will take willfulness into account later.][58] >>

{{MAS: [If you find that it is more likely than not that Masimo or Sound United infringed a valid claim of any of Apple's patents, either literally or under the doctrine of equivalents, then you must also determine whether or not Masimo's or Sound United's infringement was willful.

To show that Masimo's or Sound United's infringement was willful, Apple must prove by a preponderance of the evidence that Masimo or Sound United knew of Apple's patent and intentionally infringed at least one asserted claim of the patent.  You may consider whether Masimo's or Sound United's behavior was deliberate or intentional.  However, you may not find that Masimo's or Sound United's infringement was willful merely because Masimo or Sound United knew about the patent, without deliberate or intentional infringement.  In determining whether Apple has proven that Masimo's or Sound United's infringement was willful, you must consider all of the circumstances and assess Masimo's or Sound United's knowledge at the time the challenged conduct occurred.][59]}}

---

[58] JLH-Arendi at Instruction 3.5; *accord* Dynamite-2023 at 919:4-920:10.
[59] AIPLA-2024 at Instruction 11.0.

## 5. Invalidity

### 5.1. Invalidity Generally

[I will now instruct you on the rules you must follow in deciding whether or not Defendants Masimo and Sound United have proven that certain Asserted Claims are invalid.

Patent invalidity is a defense to patent infringement. The issuance of a patent by the Patent Office provides a presumption that the patent is valid. A party challenging the validity of a patent—in this instance, Defendants Masimo and Sound United —has the burden to prove that the asserted claims are invalid by clear and convincing evidence. Clear and convincing evidence means evidence that it is highly probable that a fact is true. Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

Defendants Masimo's and Sound United's contentions include:

- That the Asserted Claims of the '783, '483, and '054 Utility Patents are invalid because they are obvious in view of prior art.
- That the D'279 and D'842 Design Patents are invalid because they are obvious in view of prior art.
- That the D'279 and D'842 Design Patents are invalid because the claimed designs are not ornamental.
- That the D'842 Design Patent is invalid because it is indefinite.

In this case, you have the ultimate responsibility for deciding whether the claims of the patent are valid or invalid. In making your determination, you must consider the claims individually, as you did when you considered whether each claim was infringed or not. If clear and convincing evidence demonstrates that an Asserted Claim fails to meet any requirement of the patent laws, then that claim is invalid.][60]

---

[60] JLH-Arendi at Instruction 4.1; *see also* JLH-CapXX at Instruction 13.

46

**5.2. Invalidity – Person/Designer of Ordinary Skill In The Art**

[The question of invalidity of a patent claim is determined from the perspective of a person who has ordinary skill in the field of the invention at the time of the invention.  You must determine the level of ordinary skill in the field of the invention.

For a utility patent, this hypothetical person is called a "Person of Ordinary Skill in the Art."  In deciding what the level of ordinary skill is, you should consider all the evidence introduced at trial, including but not limited to:

1.  The levels of education and experience of the inventors and other persons actively working in the field;

2.  The types of problems encountered in the field;

3.  Prior art solutions to those problems;

4.  Rapidity with which innovations are made; and

5.  The sophistication of the technology.][61]

For a design patent, this hypothetical person is called a "Designer of Ordinary Skill."  [A designer of ordinary skill is a designer with ordinary capability who designs things of the type to which the design patent pertains.][62]

---

[61] JLH-Arendi at Instruction 4.1; *see also* JLH-CapXX at Instruction 13.
[62] *LKQ* at 1299.

**5.3. Prior Art**

[Under the patent laws, a person is granted a patent only if the invention claimed in the patent is new and not obvious in light of what came before.  Prior art is the legal term used to describe what others had done in the field before the invention was made.  It is not necessary that the prior art has been available to every member of the public, but it must have been available, without restriction, to that segment of the public most likely to avail itself of the prior art's contents.] [63]

Prior art includes any of the following items received into evidence during trial:

1. anything that was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public anywhere in the world before the effective filing date of the Asserted Claims of the patent; and

2. anything that was described in a patent, or in an application for patent published or deemed published, in which the patent or application names another inventor and was filed before the effective filing date of the Asserted Claims of the patent.] [64]

---

[63] JLH-CapXX at Instruction 13.2.
[64] AIPLA-2024 at Instruction 5.0.2.

### 5.3.1.   Prior Art Based on Filing, Publication, or Issuance Dates

<<APL: No instruction.  >>

{{MAS: In deciding anticipation and obviousness, you are to consider the following items received into evidence during the trial which <<APL: Masimo and Sound United contend [65]>> are prior art to the specific patents as I will now indicate.[66]  The parties and witnesses generally referred to each of the reference by the short name.

**For the '483 Patent, the following references are prior art:**

- **Lapetina** refers to U.S.  Patent No.  9,583,256, entitled "THREE-DIMENSIONAL WIRELESS CHARGING COIL," which was filed on June 13, 2014 and published on December 17, 2015.

- **Coppola** refers to International Patent Application Publication No.  WO 2015/150199, entitled "SYSTEM AND METHOD FOR DETECTING VARIATION OF HEART RATE OF A USER," which has an effective filing date of April 2, 2014 and was published on October 8, 2015.

**For the '054 Patent, the following references are prior art:**

- **Hu** refers to Chinese Utility Patent No.  205041396, entitled "Smart Watch," which was filed on August 19, 2015 and published on February 24, 2016.

---

[65] No instruction, or if any instruction on factual contentions of alleged prior art is given, Apple proposes "Masimo and Sound United contend."  Further, if any instruction on factual contentions of alleged prior art is given, it should not characterize any of the alleged prior art as being "disputed" or "undisputed."  (See 5.3.2 below).
[66] AIPLA-2024 at Instruction 6.

- **Lee** refers to U.S. Patent Application Publication No. 2015/0135310, entitled "PERSISTENT AUTHENTICATION USING SENSORS OF A USER-WEARABLE DEVICE," which was filed on October 2, 2014 and published on May 14, 2015.

- **Rothkopf** refers to U.S. Patent Application Publication No. 2016/0058375, entitled "WEARABLE ELECTRONIC DEVICE," which was filed on September 1, 2015 and published on March 3, 2016.

**For the '783 Patent, the following references are prior art:**

- **Lapetina** refers to U.S. Patent No. 9,583,256, entitled "THREE-DIMENSIONAL WIRELESS CHARGING COIL," which was filed on June 13, 2014 and published on December 17, 2015.

**For the D'279 and D'842 Patents, the following references are prior art:**

- **Paulke** refers to PCT Application Publication No. WO 2017/165532, entitled "BIOSENSOR MODULE FOR BAND ATTACHMENT," which published on September 28, 2017.

- **Chung** refers to U.S. Patent Application Publication No. 2019/0324593, entitled "ELECTRONIC DEVICE INCLUDING OPTICAL SENSOR USING FRESNEL LENS," which claims priority to Korean Patent Application Serial No. 10-2018-0038206, which was filed on April 2, 2018.

### 5.3.2   Disputed Prior Art

<<APL: No instruction.[67]>>

{{MAS: [Apple disputes that some additional Masimo and Sound United references and devices are prior art.  For those references and devices, you must determine what is the prior art that may be considered in determining whether the claims are invalid.][68]

[For the '483 patent, Masimo and Sound United contend that the **Lee** reference previously identified as prior art to the '054 patent is also prior art to the '483 patent.  Masimo and Sound United rely on the filing date of Lee's provisional application.  Lee is prior art to the '483 patent if Lee's provisional application describes the subject matter from Lee upon which Masimo and Sound United rely to show obviousness.][69]

Apple contends that Lee is not prior art because Lee's provisional application does not describe a third electrode positioned on the side of the watch.  If you determine that Lee's provisional application describes a third electrode positioned on the side of the watch, then Lee is prior art.

**Public Use or Sale of Physical Devices**

[Prior art may include items that were publicly known, used, sold, or offered for sale that disclose the claimed invention or elements of the claimed invention.  For each of the asserted patents, Masimo and Sound United contend that certain physical devices introduced at trial are

---

[67] No instruction, or if any instruction on factual contentions of alleged prior art is given, Apple proposes that it should not characterize any of the alleged prior art as being "disputed" or "undisputed."

[68] AIPLA-2024 at Instruction 6.

[69] 35 U.S.C. § 102(d).

prior art because the devices were publicly known, used, sold, or offered for sale before the relevant date for the patent.][70]

I will now identify the names of the devices Masimo and Sound United contend are prior art against each patent, the exhibit numbers of physical samples or photographs of the devices that were introduced into evidence at trial, and the relevant date for each patent.

### For the '783 Patent

Masimo and Sound United contend that the following physical devices were publicly known, used, sold, or offered for sale before September 2, 2014, which is the relevant date for the '783 patent:

- **Mio Fuse** (physical sample DTX P-0221)

- **Fossil Abacus** (physical samples DTX P-0222 and DTX P-0253)

---

[70] JLH-Arendi at Instruction 4.3.

### 5.3.2.  Prior Art Not Considered by The Patent Office

<<APL: No instruction.  >>

{{MAS: Where Masimo and Sound United are relying on prior art that was not considered by the Patent Office during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the Patent Office did consider.  If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity. [71] }}

---

[71] FCBA-2020 at Instruction 4.3c(ii).

**5.4. Invalidity – Obviousness Generally**

I will now explain the [basic rules for determining obviousness of both design and utility patents.][72]

[As I explained previously, under the patent laws a person is granted a patent only if the invention claimed in the patent is both new and not obvious in light of what came before.  Even though an invention has not been identically disclosed or described before it was made by an inventor, to be patentable, the invention must also not have been obvious to a person of ordinary skill in the art at the time the invention was made.  Obviousness may be proven by considering more than one item of prior art.  In this case, Masimo and Sound United contend that all the asserted claims of the Asserted Patents are obvious over specific combinations of the prior art and the knowledge of a person of skill in the art.

{{MAS: To disclose all or part of the invention, the prior art does not have to use the same words as the claim.  The claim requirements may either be disclosed expressly or inherently—that is, necessarily implied.}}  <<APL:  No additional instruction.>>

Masimo and Sound United must prove by clear and convincing evidence that the asserted claims of Asserted Patents would have been obvious to a person of ordinary skill in the art at the time the invention was made.  The issue is not whether the asserted claims would have been obvious to you as a layperson, to me as the judge, or to a genius in the relevant field, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.

---

[72] *LKQ* at 1295 ("Ultimately, we agree with our precedent holding that '[i]nvalidity based on obviousness of a patented design is determined [based] on factual criteria similar to those that have been developed as analytical tools for reviewing the validity of a utility patent under § 103, that is, on application of the *Graham* factors.'").

In determining whether an asserted claim would have been obvious, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the asserted patents.  You should not use the asserted patent as a road map for selecting and combining items of prior art.  You must put yourself in the place of a person of ordinary skill in the art at the time the invention was made.

In determining whether an asserted claim would have been obvious, you must consider:

(1) the scope and content of the prior art;

(2) the level of ordinary skill in the art as of the time of the invention;

(3) the differences, if any, between the claimed invention and the prior art; and

(4) additional objective considerations, if any, that indicated that the invention was obvious or not obvious.] [73]

---

[73] JLH-CapXX at Instruction 13.3.

**5.5. Invalidity – Obviousness (Utility Patents)**

Masimo and Sound United contend that each of Apple's Asserted Utility Patents is obvious in view of the prior art.  For Masimo and Sound United to prevail on this defense, Masimo and Sound United are required to persuade you by clear and convincing evidence.

<<APL: To determine the scope and content of the prior art, you must determine what prior art is in the same field of endeavor, or is reasonably pertinent to the particular problems the inventors faced. [74]>>  {{MAS: Apple's proposed language should not be included.[75] }}  The person of ordinary skill in the art is presumed to be aware of all << APL: the pertinent [76]>> prior art.

I have already instructed you on how you are to determine the level of ordinary skill in the art. Once you have made that determination, you are to apply it in your determination of whether the Asserted Utility Claims would have been obvious.

The next factor that you must consider is the differences between the prior art and the asserted claims.  Importantly, a claim is not proved obvious merely by demonstrating that each of the claim requirements was independently known in the prior art.  Most, if not all, inventions rely on building blocks of prior art, and claimed discoveries almost of necessity will likely be combinations of what is already known.  Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art to combine the known elements in the way the asserted claims do.  The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of any problem or need to be addressed, market demand, or common sense.  If you find that a reason

---

[74] JLH-CapXX at Instruction 13.3 (modified); Accord JLH-Arendi at Instruction 4.5 (modified).
[75] JLH-Arendi at Instruction 4.5.
[76] JLH-CapXX at Instruction 13.3 (modified); Accord JLH-Arendi at Instruction 4.5 (modified).

existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, and there would have been a reasonable expectation of success for doing so, this evidence would make it more likely that the claimed invention was obvious.

In arriving at your decision on the issue of whether the asserted claims would have been obvious to a person of ordinary skill in the art, you may consider such factors as:

1. Whether the asserted claims were merely the predictable result of using prior art elements according to their known functions;

2. Whether the asserted claims provide an obvious solution to a known problem in the relevant field;

3. Whether the prior art teaches or suggests the desirability of combining elements in the asserted claims;

4. Whether the prior art teaches away from combining elements in the asserted claims; and

5. Whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions.] [77]

The final factor you must consider are "objective indicia of nonobviousness." I will instruct you on how to consider "objective indicia of nonobviousness" later in these instructions.

---

[77] JLH-CapXX at Instruction 13.3; Accord JLH-Arendi at Instruction 4.5.

### 5.6. Invalidity – Obviousness (Design Patents)

<< APL: Masimo and Sound United contend that Apple's D'279 and D'842 Design Patents are obvious in view of the prior art.  For Masimo and Sound United to prevail on this defense, Masimo and Sound United are required to persuade you by clear and convincing evidence.

[In considering the scope and content of the prior art, Masimo and Sound United are first required to identify a "primary reference."  The primary reference must be something in existence that is visually similar to the claimed design—not merely something that might be brought into existence by selecting individual features from prior art and combining them.  The primary reference will typically be in the same field of endeavor as the claimed ornamental design's article of manufacture, but it need not be, so long as it is analogous art.] [78]

[Where a primary reference alone does not render the claimed design obvious, secondary references may be considered.  The primary and secondary references must both be analogous art to the patented design.

[In considering the differences between the prior art and the claimed designs, the appropriate comparison is to the overall ornamental appearance and visual impression of the claimed design – not individual features in isolation.  Keep in mind that nearly all inventions—including

---

[78] *LKQ* at 1296 ("In applying Graham factor one, the scope and content of the prior art, a primary reference must be identified.  Identifying a primary reference protects against hindsight because 'almost every new design is made up of elements which, individually, are old somewhere in the prior art.' As noted above, this primary reference need not be 'basically the same' as the claimed design.  Rather, the primary reference need only be 'something in existence—not ... something that might be brought into existence by selecting individual features from prior art and combining them, particularly where combining them would require modification of every individual feature.' The primary reference will likely be the closest prior art, i.e., the prior art design that is most visually similar to the claimed design.  .  .  .  The primary reference will typically be in the same field of endeavor as the claimed ornamental design's article of manufacture, but it need not be, so long as it is analogous art.").

designs—may rely on what came before as building blocks.  The fact that individual elements of the claimed design were independently and separately known in the prior art does not necessarily mean the invented design was obvious.  It is not proper to use the claimed design as a roadmap to assemble different features from the prior art, as this impermissibly relies on hindsight.  If the combined references suggest only components of the claimed design, but not its overall ornamental appearance, the claimed design is non-obvious.  As further explained below, it is your job, as the jury, to consider whether a reason existed at the time of the invention that would have prompted a designer of ordinary skill in the art to combine the known elements in the same way the asserted claims do, without relying on hindsight.] [79]

[I have already instructed you on how you are to determine the level of ordinary skill in the art. Once you have made that determination, you are to apply it in your determination of whether the Asserted Design Claims would have been obvious.][80]

Finally, Masimo is required to prove that a designer of ordinary skill would have been motivated to combine the designs of the primary reference with the secondary reference in a way that results in the same design as the Asserted Claim.  The motivation to combine these references need not come from the references themselves, but there must be a reason, supported by the trial evidence (without hindsight) that an ordinary designer in the field of the article of manufacture would have modified the primary reference with the feature(s) from the secondary reference(s) to create the same overall ornamental appearance as the claimed design.] [81]

---

[79] *Id.*
[80] JLH-CapXX at Instruction 13.3; Accord JLH-Arendi at Instruction 4.5.
[81] *LKQ* at 1299-1300 ("Where a primary reference alone does not render the claimed design obvious, secondary references may be considered.  The primary and secondary references need not be "so related" such that features in one would suggest application of those features in the

The final factor you must consider are any "objective indicia of nonobviousness," and I will now instruct you on how to consider them.>>

{{MAS: Obviousness may be shown by considering one or more items of prior art in combination.

You are to apply the four factors described above in Final Instruction 5.5 for each obviousness argument presented by Masimo and Sound United.

In applying the first factor (the scope and content of the prior art), you are to consider what Masimo and Sound United has identified as a primary reference.[82]  The primary reference need only be something in existence.[83]  The primary reference will likely be the prior art design that is most visually similar to the claimed design.[84]  The more visually similar the primary reference design is to the claimed design, the stronger the obviousness argument.[85]  The primary reference will typically be in the same field of endeavor as the claimed ornamental design's article of manufacture, but it need not be, so long as it is analogous art.[86]  It is often the case that the

---

other but they must both be analogous art to the patented design.  Consistent with *KSR*, the motivation to combine these references need not come from the references themselves.  But there must be some record-supported reason (without hindsight) that an ordinary designer in the field of the article of manufacture would have modified the primary reference with the feature(s) from the secondary reference(s) to create the same overall appearance as the claimed design.").

[82] *LKQ* at 1298 ("In applying *Graham* factor one, the scope and content of the prior art, a primary reference must be identified.").

[83] *Id.* ("the primary reference need only be 'something in existence'").

[84] *Id.* ("The primary reference will likely be the closest prior art, i.e., the prior art design that is most visually similar to the claimed design.").

[85] *Id.* ("The more visually similar the primary reference design is to the claimed design, the better positioned the patent challenger will be to prove its § 103 case.").

[86] *Id.* ("The primary reference will typically be in the same field of endeavor as the claimed ornamental design's article of manufacture, but it need not be, so long as it is analogous art.").

primary reference alone does not render the claimed design obvious, and you may consider design elements from secondary prior art references as discussed below.] [87]

[In applying the second factor (determining the differences between the prior art and the claimed designs),[88] you are to compare the visual appearance of the claimed design with prior art designs from the perspective of an ordinary designer in the field of the article of manufacture.[89] ]

[In applying the third factor (resolving the level of ordinary skill in the pertinent art),[90] you are to determine the level of ordinary skill of an ordinary designer in the field to which the claimed design pertains in accordance with the instructions I provided above.[91] ]

In applying the fourth factor (the obviousness or nonobviousness of the claimed design),[92] you are to determine whether an ordinary designer in the field to which the claimed design pertains would have been motivated to modify the prior art design, or combine the primary reference with

---

[87] *Id.* ("It is often the case that the primary reference alone does not render the claimed design obvious, and design elements from secondary prior art references may be considered as discussed below.").

[88] *Id.* ("After considering the scope and content of the prior art, we turn to *Graham* factor two: determining the differences between the prior art designs and the design claim at issue.").

[89] *Id.* ("in addressing the differences between the claimed design and prior art designs for validity purposes, we compare the visual appearance of the claimed design with prior art designs, albeit from the perspective of an ordinary designer in the field of the article of manufacture").

[90] *Id.* at 1298-99 ("Under *Graham* factor three, 'the level of ordinary skill in the pertinent art [must be] resolved.'" (modification in original) (quoting *Graham*, 383 U.S. at 17)).

[91] *Id.* at 1299 ("This requirement comes directly from § 103, which provides that a claimed invention is unpatentable if it 'would have been obvious before the effective filing date of the claimed invention to a person of ordinary skill in the art to which the claimed invention pertains.' (quoting 35 U.S.C. § 103)).

[92] *Id.* ("After ascertaining the knowledge of an ordinary designer in the relevant field, the scope and content of the prior art, and the differences between the prior art and the claimed design, the obviousness or nonobviousness of the claimed design is evaluated.").

the secondary reference or references, to create the same overall visual appearance as the claimed design.[93]

[Where a primary reference alone does not render the claimed design obvious, secondary references may be considered.[94]  The primary and secondary references need not be so related such that features in one would suggest application of those features in the other, but they must both be analogous art to the patented design.[95] ]

[The motivation to combine these references need not come from the references themselves, but there must be a reason, supported by the trial evidence (without hindsight) that an ordinary designer in the field of the article of manufacture would have modified the primary reference with the feature(s) from the secondary reference(s) to create the same overall ornamental appearance as the claimed design.[96]  Factors that may provide a motivation to combine include an ordinarily skilled designer's experience and creativity, as well as market demands, industry customs, and ornamental features that are commonplace in the relevant field.[97] ]

---

[93] *Id.* ("We have previously described this inquiry as whether an ordinary designer in the field to which the claimed design pertains would have been motivated to modify the prior art design 'to create the same overall visual appearance as the claimed design.'" (quoting *Campbell Soup, Co. v. Gamon Plus, Inc.*, 10 F.4th 1268, 1275 (Fed. Cir. 2021)).

[94] *Id.* ("Where a primary reference alone does not render the claimed design obvious, secondary references may be considered.").

[95] *Id.* ("The primary and secondary references need not be 'so related' such that features in one would suggest application of those features in the other but they must both be analogous art to the patented design.")..

[96] *Id.* ("Consistent with *KSR*, the motivation to combine these references need not come from the references themselves.  But there must be some record-supported reason (without hindsight) that an ordinary designer in the field of the article of manufacture would have modified the primary reference with the feature(s) from the secondary reference(s) to create the same overall appearance as the claimed design." (citations omitted)).

[97] *Id.* at 1299-1300 ("factors to consider including 'ordinarily skilled designer's experience, creativity,' as well as 'what market demands and industry customs exist' in the relevant field and, 'which ornamental features are commonplace in the relevant field'").

The final factor you must consider are any "objective indicia of obviousness or nonobviousness," and I will now instruct you on how to consider them.[98]  }}

---

[98] *Id*. ("Consistent with *Graham*, the obviousness inquiry for design patents still requires assessment of secondary considerations as indicia of obviousness or nonobviousness, when evidence of such considerations is presented.").

### 5.7. Invalidity – Objective Indicia of Non-Obviousness

<<APL: [In arriving at your decision on the issue of whether any asserted claims would have been obvious to a person of ordinary skill in the art, you must consider any "objective indicia of nonobviousness," that may have existed at the time of the invention and afterwards that suggest that the asserted claims were not obvious.  Such objective indicia may include:

1.  the commercial success of the claimed invention;

2.  industry praise for the claimed invention; and

3.  copying by others

These factors should be considered along with all the other evidence in the case in determining whether the asserted claims would have been obvious.  In considering this kind of evidence, you should consider whether the objective consideration was attributable to the features of the asserted claims as opposed to features already found in the prior art.][99] >>

{{MAS:

[Before deciding the issue of obviousness for each claimed invention, you must also consider certain factors, which may help to determine whether the invention would have been obvious.  No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole.  Certain of these factors include:

1.  Were products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?

---

[99] JLH-CapXX at Instruction 13.3.

2.  Did others in the field, or Masimo or Sound United, praise the claimed invention or express surprise at the making of the claimed invention?

3.  Did others (non-parties to this case) copy the claimed invention?

Answering all, or some, of these questions "yes" may suggest that the claim was not obvious. These factors are relevant only if there is a connection, or nexus, between the factor and the invention covered by the patent claim.  Even if you conclude that some of the above factors have been established, those factors should be considered along with all the other evidence in the case in determining whether Masimo and Sound United have proven that the claimed invention would have been obvious.][100] }}

---

[100] AIPLA-2024 at Instruction 7.4.; AIPLA-2024 at Instruction 7.4 (practice note and guidance to "provide only those instructions that are relevant in the case and properly supported by admitted evidence").

### 5.8. Invalidity – Lack of Ornamentality (Design Patents)

Masimo and Sound United contend that the D'279 and D'842 Design Patents are invalid because they lack ornamentality.  <<APL: To prevail on this defense, Masimo is required to prove by clear and convincing evidence that the Asserted Design Patents are not ornamental.  >> {{MAS: Apple's proposed language should not be included.  }}

Design patents protect the ornamental appearance of a utilitarian article of manufacture.  [But if a particular design is essential to the use of an article, it cannot be the subject of a design patent.][101]  [If Masimo and Sound United prove by clear and convincing evidence that the overall appearance of the patented design is dictated <<APL: by function, the patent is invalid because the design is not "ornamental." [102] >>  {{MAS: by the use or purpose of the article, or the design is primarily functional rather than ornamental the patent is invalid.[103]}}]

It should be kept in mind that all design patents must be for articles of manufacture, which by definition, are things that have inherent functional characteristics.  It is normal and expected that an article embodying a claimed design performs some sort of function – that does not disqualify the article's design for design patent protection.  <<APL: An important, if not dispositive, factor is whether those general functional characteristics can only be embodied by the claimed design, or whether they can be embodied by other designs such that the claimed design is not the only way to perform those general functions.  Thus, the existence of alternate designs that perform

---

[101] *Ethicon Endo-Surgery, Inc.  v.  Covidien, Inc*., 796 F.3d 1312, 1328 (Fed.  Cir.  2015).

[102]  *Id.*; *Sport Dimension, Inc.  v.  Coleman Co.*, 820 F.3d 1316, 1320 (Fed.  Cir.  2016).

[103]  *Ethicon*, 796 F.3d at 1328 ("We have found designs to be essential to the use of an article *when the claimed design is 'dictated by' the use or purpose* of the article. *Design patents on such primarily functional rather than ornamental designs are invalid*." (emphases added) (citations omitted)).

substantially the same function may be strong evidence that the design at issue is not dictated solely by function. [104] >>  {{MAS: Apple's proposed language should not be included. }}

[In determining whether a claimed design lacks ornamentality, the function of the article itself must not be confused with functionality of the design of the article.][105]  [When there are several other designs that achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose.][106] [However, this may not be true if the other designs adversely affect the utility of the article.][107]  <<APL: When considering the factor of alternative designs, Masimo and Sound United, as the parties challenging validity, have the burden to prove by clear and convincing evidence that no designs other than those claimed in the design patents allow the underlying article to perform its intended function. [108]>> {{MAS: Apple's proposed language should not be included. }}

[When considering whether the designs claimed in the Asserted Design Patents are primarily dictated by function, you should also consider:

(1) Whether the protected design represents the best design;

(2) Whether alternative designs would adversely affect the utility of the specified article;

(3) Whether there are any <<APL: concomitant utility patents [109]>> {{MAS: utility patents directed to the same or similar designs }}

(4) Whether advertising touts particular features of the design as having specific utility; and

---

[104] *Ethicon*, 796 F.3d at 1328; *Sport Dimension, ,* 820 F.3d at 1320.
[105] *Ethicon*, 796 F.3d at 1328 (quoting Hupp v. Siroflex of Am., Inc., 122 F.3d 1456, 1460 (Fed.Cir.1997)).
[106] Apple-2012 at Instruction 52; Nordock-2013 at p. 34.
[107] Apple-2012 at Instruction 52; Nordock-2013 at p. 34.
[108] *Ethicon*, 796 F.3d at 1328; *Hupp*, 122 F.3d 1456, 1460 (Fed.Cir.1997)
[109] Dynamite-2023 at 907:21-908:24; *accord* Panasonic-2022 at Instruction No. 27; TopLighting-2019 at Instruction 21; Nordock-2013 at pp. 34-35.

(5) Whether there are any elements in the design or an overall ornamental appearance clearly

not dictated by function.] [110]

[Additionally, it should also be kept in mind that the claimed design need not be aesthetically

pleasing to be valid. In other words, an absence of artistic merit does not mean that the design is

not patentable.] [111]

---

[110] Dynamite-2023 at 907:21-908:24; *accord* Panasonic-2022 at Instruction No. 27; TopLighting-2019 at Instruction 21; Nordock-2013 at pp. 34-35; Apple-2012 at Instruction No. 52 (4019:16-4020:21).

[111] Dynamite-2023 at 907:21-908:24; *accord* Panasonic-2022 at Instruction No. 27; TopLighting-2019 at Instruction 21; Nordock-2013 at pp. 34-35.

### 5.9 Invalidity – Indefiniteness (Design Patents)

[The patent laws have requirements for the way patents are written.]

<<APL: [ A design patent must be sufficiently clear to inform, with reasonably certainty, a designer of ordinary skill in the art what the claim looks like.  A designer would look to the perspective of the ordinary observer when considering design patents.  A design patent is indefinite if a designer of ordinary skill, viewing the design as would an ordinary observer, would not understand the scope of the design with reasonable certainty based on the claim and visual disclosure.] >>[112]

{{MAS: The standard for indefiniteness is connected to the standard for infringement in that both are evaluated from the perspective of the same ordinary observer.  A design patent is invalid if an ordinary observer would not understand the scope of the design with reasonable certainty based on the claim and visual disclosure.[113] }}

If clear and convincing evidence shows that a patent claim does not meet this requirement, then the claim is said to be "indefinite," and the claim is invalid.][114]

[The amount of detail required for a claim to be sufficiently clear depends on the particular invention, the prior art, and the description of the invention contained in the patent.] [115]  [A

---

[112] *In re Maatita*, 900 F.3d 1369, 1377 (Fed. Cir. 2018).

[113] "[T]he standard for indefiniteness is connected to the standard for infringement," and "one skilled in the art would look to *the perspective of the ordinary observer* since that is the perspective from which infringement is judged."  *In re Maatita*, 900 F.3d 1369, 1376 (Fed. Cir. 2018).  A design patent is indefinite "if one skilled in the art, *viewing the design as would an ordinary observer*, would not understand the scope of the design with reasonable certainty based on the claim and visual disclosure."  *Id.* at 1377.

[114] Del-Shure at Instruction 5; *accord In re Maatita*, 900 F.3d 1369, 1375-76 (Fed. Cir. 2018); JLH-CapXX at Instruction 13.6; Panasonic-2022 at Instruction 29; Ford-2018 at Instruction 1.
[115] JLH-CapXX at Instruction 13.6; *accord In re Maatita*, 900 F.3d 1369, 1375-76 (Fed. Cir. 2018); JLH-CapXX at Instruction 13.6; Panasonic-2022 at Instruction 29; Ford-2018 at Instruction 1.

design patent claim may be considered indefinite if it includes multiple internally inconsistent drawings. But errors and inconsistencies between drawings do not necessarily mean the claim is indefinite if they do not preclude an ordinary designer's overall understanding of the design as a whole or if they do not prevent an average designer from understanding how to make it.][116] So long as the scope of the invention is clear with reasonable certainty to an ordinary observer, a design patent can disclose multiple embodiments within its single claim and can use multiple drawings to do so. [Simply because the drawings may not be precise does automatically mean the claim is indefinite.  There is a presumption of validity and the fact that the examiner issues the patent implies that the examiner did not consider the drawings unclear.][117]

---

[116] Del-Shure at Instruction 5; *accord In re Maatita*, 900 F.3d 1369, 1375-76 (Fed. Cir. 2018); JLH-CapXX at Instruction 13.6; Panasonic-2022 at Instruction 29; Ford-2018 at Instruction 1.
[117] Panasonic-2022 at Instruction 29; Ford-2018 at Instruction 1.

**6.   {{MAS: Remedy}} <<APL: Damages >>**
   **6.1. <<APL:  Damages Generally >> {{MAS: Remedy Generally}}**

{{MAS: In this case, Apple is claiming at most $250.[118]   If you find infringement by Masimo of any of Apple's Design Patents, you should award Apple $250.

If you find infringement by Masimo of any of Apple's Utility Patents, you may, but are not required to, award Apple $250 in damages if you find Apple proved those damages by a preponderance of the evidence. }}

<<APL:[119] If you find that Defendants have infringed any Asserted Claim of the Asserted Patents, and the claim is not invalid, you must consider whether to award Apple damages for the

---

[118] During the pretrial conference, the Court asked Apple if it would "ask for monetary relief beyond the minimum of $250 in any witness or argument."  Pretrial Hr'g at 43:2-4.  When questioned by the Court, Apple confirmed at the pretrial conference that it was "asking for 250 for the design patents under the design statute and 250 on the utility patents under [Section] 284. We are only going to ask for one 250, but it's two separate reasons." *Id.* at 43:5-9.  The Court then confirmed that Apple is not going to ask the jury to "give what's right." *Id.* at 43:10-17. *See id.* at 6:13-17 ("THE COURT:  And just to make sure that we're all clear, that's the damages claim is for a total of $250 across all seven [now six] patents in total? MR. DESMARAIS:  Yes. The point of this case, Your Honor, is as you see in the first paragraph of the pretrial order, after the trial, we want a willfulness finding from the jury. After the trial, we would like to file with Your Honor an injunction here, so that is the ultimate purpose for the trial. It's not for money. It's to get Masimo to stop copying our products."). *See also* Oct. 21, 2024 Trial Tr. 213:21-125 (MR. DESMARAIS'S OPENING STATEMENT:  "And let me be right up front with that. We're not asking for a lot of money in this case. . . . It's a couple hundred bucks is all we're asking for. We're not looking for money from Masimo."); Oct. 22, 2024 Hr'g Tr. at 618:14-15 ("THE COURT:  Damages experts?  MR. DESMARAIS:  No . . ..").

[119] Apple's proposed language is neutral, based on existing instructions, and accurately reflects the burdens at issue as well as the specific allegations at issue.  Masimo's language omits the burden of proof, the accused products, the scope of damages at issue, is not neutral in tone, and adds an improper conditional ordering to the evaluation of damages for the Asserted Utility Patents that is not supported by law.

infringement.  By instructing you on damages, I am not suggesting which party should win this case, on any issue.

Apple accuses the following of Defendants' products of infringement:][120] W1 Original Design, W1 Redesign, Freedom Original Design, Freedom Redesign, and Masimo Charger.  In this trial, Apple is seeking damages for past infringement only.

There are different types of damages available for patent infringement.  One measure of damages is "compensatory" damages, which are available for utility patents and design patents.  The law also provides an additional remedy, statutory damages, for infringement of design patents only.  I will now instruct you on each measure of damages.  >>

---

[120] JLH-Arendi [Modified] at Instruction 5.1.

**6.2.** << Statutory Damages for Design Patents >> {{MAS: Statutory Remedy for Design Patents}}

<<APL:  In this case, Apple is seeking statutory damages for Defendants' past infringement of its Asserted Design Patents.  If you find infringement of Apple's Asserted Design Patents by the Masimo Defendants and do not find Apple's Asserted Design Patents are invalid, you shall award Apple $250, the minimum damages contemplated by statute for infringing a design patent. [121]

>>

{{MAS:  No additional instruction needed.

MAS ALTERNATIVE:  If you find infringement by Masimo of any of Apple's Design Patents, you should award Apple $250.}}

---

[121] 35 U.S.C. § 289.

**6.3. Utility Patent Damages**

{{MAS:  No additional instruction needed.

MAS ALTERNATIVE:  If you find infringement by Masimo of any of Apple's Utility Patents, you may, but are not required to, award Apple $250 in damages if you find Apple proved those damages by a preponderance of the evidence.[122] }}[123]

<<APL: In this case, Apple is seeking compensatory damages for Defendants' past infringement of its Asserted Utility Patents.  Apple has the burden to prove the amount of damages by a preponderance of the evidence.  If you find infringement by the Masimo Defendants of Apple's Asserted Utility Patents, you may, but are not required to, award Apple $250 in damages. >>[124]

---

[122] {{MAS: In meet and confers, Apple agreed that if the jury awards $250 twice (once for Design Patents and once for Utility Patents), the Court would award only $250.  Masimo is not making the instruction on Utility Patent damages conditional on no award of the statutory minimum for Design Patent infringement based on that agreement.  Masimo reserves all rights to argue that none of the issues should have been tried to a jury. }}

[123] <<APL: If the jury awards $250 twice, the Court can resolve the issue after the jury verdict by awarding Apple judgement of only $250.  *See, e.g.*, *Bowers v. Baystate Techs*, 320 F.3d 1317, 1327 (Fed. Cir. 2003).  Whether the award falls under 35 U.S.C. § 289 may depend on the circumstances. >>

[124] JLH Arendi [Modified] at Instruction 5.2

## 7.  Deliberation and Verdict

### 7.1. Concluding Remarks

[I have completed my instructions on the law.  All the instructions I gave you previously about the rules for deliberations still apply, and you will have a copy of them with you.

I will remind you that, once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, have your foreperson sign and date the note, and then give it to the jury officer.  The officer will give it to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson.

One more thing about messages.  Do not ever write down or tell anyone outside of the jury how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.][125]

---

[125] JLH-CapXX at Instruction 15.1.

## 7.2. Unanimous verdict

[Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment.  Each of you must decide the case for yourself but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A verdict form has been prepared for you.  The verdict form asks you a series of questions about the parties' contentions.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form.  You will then return to the courtroom and your foreperson will give your verdict.  Unless you are directed otherwise in the verdict form, you must answer all the questions posed, and you all must agree on each answer.][126]

---

[126] JLH-CapXX at Instruction 15.1.

**7.3. Duty to deliberate**

[Now that all the evidence is in and the arguments are completed, you are free to talk about the case with each other in the jury room.  In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right, and your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that—your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So, you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.][127]

---

[127] JLH-CapXX at Instruction 15.1.

77

**7.4. Social Media**

[During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, iPad, blackberry, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, social media, or website such as Facebook, LinkedIn, YouTube, Instagram, WeChat, WhatsApp, SnapChat, TikTok, or X (formerly known as Twitter) to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.  In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

Of course, you may examine the various devices entered into evidence in this case—just as you may examine other evidence from this case.  But you should not use those devices to perform Internet research about this case or to communicate with anyone outside the jury room.][128]

---

[128] JLH-Arendi at Instruction 6.4.

**7.5. Court has no opinion**

[Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.  You may now retire and begin your deliberations.][129]

---

[129] JLH-CapXX at Instruction 16.

## Source List and Abbreviations

- **JLH-CapXX** = *Cap-XX, Ltd. v. Maxwell Techs., Inc.*, CA No. 19-1733-JLH, D.I. 314 (D. Del. Dec. 15, 2023) (Hall, J.)
- **JLH-Arendi** = *Arendi S.A.R.L. v. Google LLC*, CA No. 13-919-JLH, D.I. 528 (D. Del. May 2, 2023) (Hall, J.)
- **Del-Gavrieli** = *Gavrieli Brands v. Soto Massini*, CA No. 18-462-MN, D.I. 141 (D. Del. May 13, 2020) (Noreika, J.)
- **Del-Shure** = *Shure v. ClearOne*, CA No. 19-1343-RGA-CJB, D.I. 644 (D. Del. Oct. 15, 2020) (Andrews, J.)
- **Del-Steuben** = *Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, CA No. 1:19-cv-02181-CFV-CJB, D.I. 784 (D. Del. Nov. 18, 2021) (Connolly, J.)
- **Smartrend-2023** = *Smartrend Inc. v. Opti-Luxx*, No. 1:22-cv-00915-HYJ, DI 104 (W.D. Mich. Nov. 29, 2023)
- **ProSlide-2023** = *ProSlide Tech. Inc. v. WhiteWater W. Indus., Ltd.*, No. 6:20-cv-02189, DI 499 (M.D. Fla. Nov. 9, 2023)
- **Dynamite-2023** = *Dynamite Mktg., Inc. v. The WowLine, Inc.*, No. 19 CV 3067 (GRB), DI 155 (E.D.N.Y. Sept. 14, 2023)
- **Panasonic-2022** = *Panasonic Holdings Corp. v. Getac Tech. Corp.*, No. SA CV 19-01118-DOC, DI 385 (C.D. Cal. June 8, 2022)
- **TopLighting-2019** = *Top Lighting Corp. v. Linco, Inc.*, No. EDCV 15-1589 JVS, DI 231 (C.D. Cal. May 31, 2019)
- **Ford-2018** = *Ford Glob. Techs. LLC v. New World Int'l, Inc.*, No. 3:17-cv-cv-3201-N, DI 345 (N.D. Tex. Nov. 16, 2018)
- **Apple-2018** = *Apple Inc. v. Samsung Electronics Inc.*, No. 5:11-cv-01846, DI 3815 (N.D. Cal. May 29, 2018)
- **Apple-2013** = *Apple Inc. v. Samsung Electronics Inc.*, No. 5:11-cv-01846, DI 2843 (N.D. Cal. December 3, 2013)
- **Nordock-2013** = *Nordock Inc. v. Systems Inc.*, No. 2:11-cv-00118, DI 166 (E.D. Wis. Mar 27, 2013)
- **Apple-2012 =** *Apple Inc. v. Samsung Electronics Inc.*, No. 5:11-cv-01846, DI 1997 (N.D. Cal. Sept. 24, 2012)
- **AIPLA-2024** = AIPLA Model Patent Jury Instructions (2024)
- **FCBA-2016** = Federal Circuit Bar Association Model Jury Instructions (2016)
- **FCBA-2020** = Federal Circuit Bar Association Model Jury Instructions (2020)
- **IPO-2010** = *IPO Model Design Patent Jury Instructions* (2010), available at https://ipo.org/index.php/member_articles/model-design-patent-jury-instructions/
- **3d Cir. Model** = Third Circuit Model Civil Jury Instructions (2024), available at https://www.ca3.uscourts.gov/sites/ca3/files/chapters%201_2_3_%20for%20posting%20after%20June%202024%20meeting.pdf

- **Kitsch-2023** = *Kitsch LLC v. Deejayzoo, LLC*, No. 2:19-cv-02556, DI 338 (C.D. Cal. June 9, 2023)
- 35 U.S.C. § 102(d)
- *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608-609 (1950)
- *LKQ Corp. v. GM Glob. Tech. Ops. LLC*, 102 F.4th 1280 (Fed. Cir. 2024) (en banc)
- *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312 (Fed. Cir. 2015)
- *Therasense Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc)
- *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011)
- *Richardson v. Stanley Works, Inc.*, 597 F. 3d 1288 (Fed. Cir. 2010)
- *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F. 3d 1295 (Fed. Cir. 2016)
- *Berry Sterling Corp. v. Pescor Plastics Inc.*, 122 F.3d 1452 (Fed. Cir. 1997)
- *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316 (Fed. Cir. 2016)
- *U. Colo Found. v. Am Cyanamid Corp.*, 342 F.3d 1298, 1308 (Fed. Cir. 2003)
- *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965)
- -1378 Dkt. No. 294 = Joint Claim Construction Brief for Apple Asserted Patents, dated August 31, 2023.
- D'131 POPR = Patent Owner's Preliminary Response in IPR2023-00831 for D735,131, dated August 24, 2023.
- D'131 IPR decision = USPTO's decision denying institution in IPR2023-00831 for D735,131, dated November 21, 2023.
- D'279 POPR = Patent Owner's Preliminary Response in IPR2023-00774 for D883,279, dated July 12, 2023.
- D'842 POPR = Patent Owner's Preliminary Response in IPR2023-00702 for D947,842, dated June 29, 2023.
- D'936 POPR = Patent Owner's Preliminary Response in IPR2023-00728 for D962,936, dated June 21, 2023.
- **Mass Model** = Massachusetts Criminal Model Jury Instruction 3.570 for "Evidence with Redacted Material," available at https://www.mass.gov/doc/3570-evidence-with-redacted-material/download