Read in Open Court 10/25/24 (initials)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLE INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>MASIMO CORPORATION and SOUND UNITED, LLC,<br><br>*Defendants*. | C.A. No. 22-1377-JLH<br>C.A. No. 22-1378-JLH |

**FINAL JURY INSTRUCTIONS**

## 1. General Instructions

### 1.1. Introduction

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

**1.2. Jurors' Duties**

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

**1.3. Evidence Defined**

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way. The evidence in this case includes only what the witnesses said while they were testifying under oath, including deposition testimony that has been played by video or read to you, the exhibits that I allowed into evidence, and any facts the parties agreed to by stipulation. During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations.

Certain models, reproductions, charts, summaries, and graphics have been used to illustrate certain evidence and testimony from witnesses. You may have heard these models, reproductions, charts, summaries, or the like, referred to as "demonstratives" during the trial. Unless I have specifically admitted them into evidence, these demonstratives are not themselves evidence, even if they refer to, identify, or summarize evidence. You will not have these demonstratives in the jury room. Rather, it is the underlying testimony of the witness that you heard and the exhibits cited in the demonstratives that are the evidence in this case.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. You should not be influenced by a lawyer's objection or by my ruling on that objection. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers

wanted you to see. And, sometimes I may have ordered you to disregard things that you saw or heard, or that I struck from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way. Make your decision based only on the evidence, as I have defined it here, and nothing else.

**1.4. Direct and Circumstantial Evidence**

During the preliminary instructions, I told you about "direct evidence" and "circumstantial evidence." I will now remind you what each means. Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is proof of a fact or facts from which you may infer or conclude that other facts do or do not exist. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**1.5. Consideration of Evidence**

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### 1.6. Evidence With Redacted Material

You will note that there are black or white markings or redactions on certain exhibits. Irrelevant information has been removed from those documents. You are not to speculate about what that irrelevant information is. Do not consider it in any way. The Court has removed irrelevant material to ensure the evidence is presented in a fair manner.

You are not to engage in any guesswork or speculation about what has been excluded from your view. You are to decide the facts only from evidence which is before you.

**1.7. Statements of Counsel**

A further word about statements of counsel and arguments of counsel. The attorneys' statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented.

If you remember the evidence differently from the way it was described by the attorneys, you should rely on your own recollection.

**1.8. Credibility of Witnesses**

You are the sole judges of each witness's credibility. You may believe everything a witness says, or part of it, or none of it. In deciding what to believe, you may consider a number of factors, including each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's motives, biases, prejudices, or interests; the witnesses' manner or demeanor on the witness stand; and any other factors that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at the trial in person or by deposition testimony played by video or read to you. You have the right to distrust such witness's testimony and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference. Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

**1.9. Expert Witnesses**

When knowledge of subject matter requiring special skill or knowledge in some science, profession, or business that is not common to the average person might be helpful to the jury, a person who has special training or experience in that field — he or she is called an expert witness — is permitted to state his or her opinion on those matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon his or her testimony.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

### 1.10. Prior Testimony

During the trial, certain testimony was presented to you by the playing of video excerpts or read into evidence from a deposition or other proceeding. The prior testimony may have been edited or cut to exclude irrelevant testimony as the parties have only a limited amount of time to present you with evidence. You should not attribute any significance to the fact that the testimony may appear to have been edited.

Prior testimony that is given under oath is entitled to the same consideration you would give it had the witnesses personally appeared in court.

**1.11. Use of Notes**

You may use notes taken during the trial to assist your memory. Remember that your notes are for your personal use. They may not be given or read to anyone else. Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors. Your notes are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights of the trial. Some testimony that is considered unimportant at the time presented and, thus, not written down, may take on greater importance later in the trial considering all the evidence presented. Your notes are valuable only to refresh your memory. Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.

### 1.12. Burdens of Proof

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence." I told you about these two standards of proof during my preliminary instructions to you and I will now remind you what they mean.

Plaintiff Apple asserts that Defendant Masimo and Sound United infringe certain United States patents. Plaintiff Apple also asserts that Masimo's and Sound United's infringement is willful. Plaintiff Apple has the burden of proving infringement and willfulness by a "preponderance of the evidence." That means Plaintiff Apple has to prove to you, in light of all the evidence, that what it claims is more likely true than not. To say it differently, if you were to put the evidence of Plaintiff Apple and the evidence of Defendants Masimo and Sound United on opposite sides of a scale, the evidence supporting Plaintiff Apple's claims would have to make the scales tip somewhat on its side in each instance. If the scale should remain equal or tip somewhat in favor of Defendants Masimo and Sound United, you must find in favor of Masimo and Sound United.

Defendants Masimo and Sound United deny Apple's allegations and further contend that certain asserted claims of Apple's patents are invalid. A party challenging the validity of a patent – in this instance, Defendants Masimo and Sound United – has the burden to prove that certain asserted claims are invalid by "clear and convincing evidence." Clear and convincing evidence means evidence that it is highly probable that a fact is true. Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

You may have heard of the "beyond a reasonable doubt" burden of proof from criminal cases. That requirement is the highest burden of proof. It does not apply to civil cases like this one and, therefore, you should put it out of your mind.

## 2. The Parties and Their Contentions

### 2.1. The Parties

I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict.

As I have previously told you, the plaintiff in this case is Apple Inc. We have referred to the plaintiff as Apple. The defendants in this case are Masimo Corporation and Sound United, LLC. We may refer to the defendants as Masimo and Sound United, for short.

In this case, Plaintiff Apple alleges infringement of six United States patents. There are two different types of patents in this case: design patents and utility patents. I explained the difference between these two types of patents in my preliminary instructions, and I will remind you later in these instructions.

Plaintiff Apple alleges that Defendants Masimo and Sound United have infringed the following design patent claims:

- The claim of U.S. Patent No. D883,279 (the "D'279 Patent");
- The claim of U.S. Patent No. D947,842 (the "D'842 Patent"); and
- The claim of U.S. Patent No. D735,131 (the "D'131 Patent").

You may have heard these patents referred to as the "Asserted Design Patents."

Plaintiff Apple alleges that Defendants Masimo and Sound United have infringed the following utility patent claims:

- Claim 16 of U.S. Patent No. 10,627,783 (the "'783 Patent");
- Claim 1 of U.S. Patent No. 10,987,054 (the "'054 Patent"); and
- Claim 13 of U.S. Patent No. 11,474,483 (the "'483 Patent").

You may have heard these patents referred to as the "Asserted Utility Patents." And you may have heard these claims of the Asserted Design and Utility Patents referred to as the "Asserted Claims."

Plaintiff Apple also contends Defendants Masimo's and Sound United's infringement was willful. Defendants Masimo and Sound United deny that they have infringed the Asserted Claims of these patents and contend that certain asserted claims are invalid.

### 2.2. Summary of the Issues

You must decide the issues in this case according to the instructions that I give you:

1. Whether Plaintiff Apple has proven by a preponderance of the evidence that Defendants infringe one or more of the Asserted Claims;
2. Whether Defendants have proven by clear and convincing evidence that one or more of the Asserted Claims are invalid;
3. If you find that Masimo has infringed any claim of the Asserted Patents, and you find the claim is not invalid, you must consider whether to award a remedy to Apple; and
4. If you decide that any of the Asserted Claims are infringed and not invalid, you will then need to decide whether Apple has proven by a preponderance of the evidence that Masimo's infringement is willful.

## 3. The Patent Laws

### 3.1. The Patent Laws

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instructions about the patent laws that specifically relate to this case. If you would like to review my instructions at any time during your deliberations, you will have your copy available to you in the jury room.

### 3.2. Design and Utility Patents

This case involves disputes relating to United States utility and design patents. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain again what patents are and how they are obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called the "Patent Office" or "PTO"). There are two basic types of patents in the United States: utility patents and design patents. In general terms, a "utility patent" protects the way a thing is used and works. It also protects a method or process of making or doing something. On the other hand a "design patent" protects the way a thing looks. A design patent is directed to the ornamental design for an article of manufacture. "Ornamental design" means the shape of the design, and/or the surface decoration on the design.

A valid United States patent, whether design or utility, gives the patent owner the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States or from importing it into the United States without the patent holder's permission, starting on the date the patent issues and lasting until the patent expires. A violation of the patent owner's rights is called "infringement."

A patent includes what is called a "specification." For a utility patent, the specification is a written description of the invention telling what the invention is, how it works, how to make it, and how to use it so others skilled in the field will know how to make or use it. In a utility patent, the specification concludes with one or more written "claims." The claims are numbered sentences at the end of the utility patent that define the boundaries of the utility patent's protection and give notice to the public of those boundaries.

For a design patent, the specification contains one or more drawings of the design as well as a description of the drawings. The "claim" for design patents generally refers to the drawings and how they are described.

In addition, with respect to design patents, the Patent Office allows the filing of high-resolution drawings.

### 3.3. Design Patent Claims

#### 3.3.1. Design Patent Claims Generally

Before you decide whether Apple's Asserted Design Patents are infringed or invalid, you will have to understand the design patent claims.

It is my job as a judge to interpret for you what is claimed by the patents. You must accept my interpretations as correct. My interpretations should not be taken as an indication that I have an opinion one way or another regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

Unlike utility patents, a design patent can only have one claim. That claim covers all the figures in the patent. It is permissible to illustrate more than one embodiment of a design in a single design patent application. Each design patent contains multiple drawings to illustrate the claimed design. The scope of the claim encompasses the design's visual appearance as a whole. It does not cover a general design concept, and is not limited to isolated features of the drawings. A design patent claim may cover the design of an entire thing, or "article"; or it may cover the design of a portion of an article.

### 3.3.2. Design Patent Claim Constructions

In this case, I have interpreted the claims of the Asserted Design Patents as follows:

| Patent | Claim Construction |
|---|---|
| D'279 | The ornamental design for an electronic device, as shown in Figures 1–9 of the D'279 patent.<br><br>The broken lines in the figures show portions of the electronic device and environment that form no part of the claimed design. The oblique line shading shows a transparent, translucent and highly polished or reflective surface.<br><br>The scope of a design patent is limited to the ornamental aspects of the design. While a claimed design may have functional features, you may consider those functional features to the extent that they contribute to the overall ornamentation of the design. |
| D'842 | The ornamental design for an electronic device, as shown in Figures 1–9 of the D'842 patent.<br><br>The broken lines in the figures show portions of the electronic device and environment that form no part of the claimed design.<br><br>The scope of a design patent is limited to the ornamental aspects of the design. While a claimed design may have functional features, you may consider those functional features to the extent that they contribute to the overall ornamentation of the design. |
| D'131 | The ornamental design for a charger, as shown in Figures 1–11 of the D'131 patent.<br><br>The broken lines in the figures show portions of the charger and environment that form no part of the claimed design. The shade lines in the figures show contour and not surface ornamentation.<br><br>The scope of a design patent is limited to the ornamental aspects of the design. While a claimed design may have functional features, you may consider those functional features to the extent that they contribute to the overall ornamentation of the design. |

You must accept my description of the drawings as being correct. It is your job to take these descriptions and apply them to the issues that you are deciding, including the issues of infringement and validity.

### 3.4. Utility Patent Claims

In order to understand the utility patent issues in this case, I will now explain the role of utility patent claims.

A utility patent may have more than one claim. The claims of a utility patent are the numbered sentences at the end of the patent. The claims are important because it is the words of the claims that define what a utility patent covers. The figures and text in the rest of the utility patent provide a description and examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the utility patent's coverage. Therefore, what a utility patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each utility claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the utility patent claim.

A utility claim sets forth, in words, a set of requirements. Each utility claim sets forth its requirements in a single sentence. A utility claim may be narrower or broader than another utility claim by setting forth more or fewer requirements. The requirements of a utility claim are often referred to as "claim elements" or "claim limitations." The coverage of a utility patent is assessed claim-by-claim.

Generally, when a thing (such as a product) meets all of the requirements recited in a utility claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a utility patent claim covers a product where each of the claim elements or limitations is present in that product. If a product is missing even one limitation or element of a claim, the product is not covered by that utility claim.

This case involves two types of utility patent claims: independent claims and dependent claims. An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. For example, claim 10 of the '483 patent is an independent claim.

In contrast, claim 13 of the '483 Patent is a "dependent claim." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers. A product that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

It is my job as the judge, through the "claim construction" process, to define the terms of claims of the utility patents and, if necessary, to instruct you on the meaning. If I have supplied a description or "construction" to a utility patent claim, it is your role to apply that definition as part of considering the scope of the claim.

In this case, I have interpreted the claims of the Asserted Utility Patents as follows:

| **Term** | **Claim Construction** |
|---|---|
| "biosensor module"<br><br>('783 patent, claim 16 (which depends from claim 15); '483 patent, claim 13 (which depends from claim 10)) | Module that includes one or more components that detects and/or measures a physiological condition or property |

| **Term** | **Claim Construction** |
|---|---|
| "transparent"<br><br>('054 patent, claim 1; '483 patent, claim 13 (which depends from claim 10)) | Plain and ordinary meaning |
| "formed from a transparent [material/substrate]"<br><br>('054 patent, claim 1) | Plain and ordinary meaning |
| "carrier member"<br><br>('054 patent, claim 1) | Structure on which electrodes are positioned |

You must accept my definition of these words as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

For any words in any claim for which I have not provided you with a definition, you should apply their plain and ordinary meaning as understood by a person with ordinary skill in the relevant field of technology at the time of the invention claimed by that patent. The meanings of the words of the patent claims must be the same when deciding both the issues of infringement and validity.

You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

The beginning portion of a claim, also known as the preamble, often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed.

This is true even if the accused product contains additional elements, in other words more than what the claim requires.

## 4. Infringement

### 4.1. Infringement Generally

I will now instruct you as to the rules you must follow when deciding whether Plaintiff Apple has proven that Masimo and Sound United have infringed the Asserted Patents.

Any person or business entity who makes, uses, sells, offers for sale, or imports something covered by a patent without the patent owner's permission, in the United States and during the term of the patent, infringes the patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another.

Apple asserts that Masimo and Sound United infringe the Asserted Claims by making, using, selling, offering for sale, and/or importing the following products:

1. Masimo W1 – (a) Original Design and (b) Wave Design
2. Masimo Freedom – (a) Original Design and (b) Wave Design
3. Masimo Health Module – (a) Original Design and (b) Wave Design
4. Masimo – Original Charger

You may have heard these products referred to as the "Accused Products." To prove infringement, Apple must prove the requirements of infringement are met by a preponderance of the evidence.

Having one's own patent is not a defense to infringement of another's patent. Accordingly, whether Defendants Masimo and Sound United have patents and whether any of these patents cover the Accused Products should not be considered in your determination of whether the Accused Products infringe Apple's patents.

**4.2. Infringement – Design Patents**

I will now instruct you on the rules for deciding whether Plaintiff Apple has proven infringement of its Asserted Design Patents.

The test for infringement of a design patent is whether an ordinary observer familiar with the prior art and giving the attention a purchaser usually gives would find the claimed design and the accused products to be substantially the same.

The ordinary observer is the actual purchaser of the products embodying the patented and accused designs.

Two designs are substantially the same if the resemblance between the two designs is such as to deceive an observer, inducing him to purchase one supposing it to be the other. You do not need, however, to find that any purchasers actually were deceived or confused by the appearance of the accused products. The correct comparison for the accused products is to the overall ornamental appearance of the claimed design, rather than to individual "elements" in isolation. The claimed design must be viewed as a whole, not as a "checklist" of "elements." You should consider any perceived similarities or differences between the patented and accused designs. A design patent covers the claimed design, as well as colorable imitations of the claimed design. Minor differences should not prevent a finding of infringement.

This determination of whether a claimed design and an accused product are substantially the same will benefit from comparing the design of each one with prior art. Prior art refers to designs that existed before the patented designs. You must familiarize yourself with the prior art admitted at trial in making your determination of whether there has been direct infringement. You may find the following guidelines helpful to your analysis:

1. If the accused design includes a feature of the claimed design that departs conspicuously from the prior art, you may find that feature important in analyzing whether the overall ornamental appearance of the accused and claimed designs are substantially the same to the ordinary observer.
2. When the claimed design is visually close to prior art designs, small differences between the accused design and the claimed design may be important in analyzing whether the overall ornamental appearances of the accused and claimed designs are substantially the same to the ordinary observer.
3. If the accused design is visually closer to the claimed design than it is to the closest prior art, you may find this comparison important in analyzing whether the overall ornamental appearances of the accused and claimed designs are substantially the same to the ordinary observer.
4. The placement and ornamentation of a logo may alter the overall design. However, the use of a mark or logo to identify the source of an otherwise infringing design will not avoid infringement.
5. You should not consider the size of the accused products if the asserted design patent does not specify the size of the design.

Whether the Defendants Masimo and Sound United knew the products infringed or even knew of Apple's design patents does not matter in determining infringement.

In addition, you have heard evidence about certain Apple products, namely Apple Watch. If you determine that any of Apple's products are substantially the same as an Apple patent design, and that a particular Apple Watch has no significant distinctions with a claimed design, then it is permissible to also compare the claimed aspects of that Apple product to the accused products.

This may facilitate your determination of whether the accused products infringe the Apple patent design. However, your infringement determination must not rely on any similarities or differences between the accused product and aspects of the patent owner's commercial product that are not claimed in the design patent. Your decision must ultimately be based on a comparison between the claimed design and the accused design. If you determine that a particular Apple Watch does not embody a patented design, you may not compare that particular Apple Watch to the accused devices.

### 4.3. Infringement – Utility Patents Generally

I will now instruct you on the rules for deciding whether Plaintiff Apple has proven infringement of its Asserted Utility Patents.

In this case, Apple asserts that Masimo and Sound United have infringed each Asserted Utility Patent. Defendants Masimo and Sound United would be liable for infringing a utility patent if you find that Apple has proven that it is more likely than not that Defendants Masimo and Sound United have made, used, offered to sell, or sold a product or device covered by a claim in the patent.

You have heard evidence about both Apple's commercial products and Masimo's and Sound United's accused products. However, in deciding the issue of infringement of a utility patent, you may not compare Masimo's and Sound United's accused products to Apple's commercial products. Rather, in making your decision regarding infringement of a utility patent, you must compare each of Masimo's and Sound United's accused products to each asserted utility patent claim.

You may also have seen comparisons between Masimo's and Sound United's accused products and figures of the Asserted Utility Patents during trial. However, infringement of a utility patent must be determined by comparing the asserted claim language to the accused product, not by comparing the accused product to the figures of the utility patent.

You must determine, separately for each asserted claim, whether there is infringement. However, if you find that an independent claim is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product meets additional requirements of any claims that depend from the independent claim,

and thus, whether those claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

There are two types of utility patent infringements at issue: one is called "literal infringement" and the other is called infringement under the "Doctrine of Equivalents." I will now instruct you on the rules for each, beginning with literal infringement.

### 4.4. Infringement – Literal Infringement of Utility Patents

To determine literal infringement of a utility patent, you must compare each of Defendants Masimo's and Sound United's accused products with each claim that Apple asserts is infringed, using my instructions as to the meaning of the patent claims, to determine whether that product satisfies each and every element or limitation of the claim. A utility patent claim is literally infringed only if a particular accused product meets each of the limitations of the asserted claim. If no product meets the elements recited in a claim, Defendants Masimo and Sound United do not literally infringe that claim. The relevant comparison for infringement of a utility claim is between Defendants Masimo's and Sound United's products and Apple's patent claims.

**4.5. Infringement – Doctrine of Equivalents for Utility Patents**

I will now explain utility patent infringement under the Doctrine of Equivalents. If any elements in an Asserted Claim are not "literally" present in the Accused Product according to my previous instruction, there may still be infringement if the Accused Product has an equivalent for each of the missing claim elements. This is called infringement under the Doctrine of Equivalents.

One way of showing that something is an equivalent of an element of a patent claim is to demonstrate that it is only insubstantially different from the claimed element. Another way of showing that something is an equivalent of an element of a patent claim is to demonstrate that it performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed element.

Plaintiff Apple has the burden of proof, on all issues of infringement, by a "preponderance of the evidence."

**4.6. Willfulness**

If you find that it is more likely than not that Masimo or Sound United infringed a valid claim of any of Apple's patents, either literally or under the doctrine of equivalents, then you must also determine whether or not Masimo's or Sound United's infringement was willful.

To show that Masimo's or Sound United's infringement was willful, Apple must prove by a preponderance of the evidence that Masimo or Sound United knew of Apple's patent and intentionally infringed at least one asserted claim of the patent. You may consider whether Masimo's or Sound United's behavior was deliberate or intentional. However, you may not find that Masimo's or Sound United's infringement was willful merely because Masimo or Sound United knew about the patent, without deliberate or intentional infringement. In determining whether Apple has proven that Masimo's or Sound United's infringement was willful, you must consider all of the circumstances and assess Masimo's or Sound United's knowledge at the time the challenged conduct occurred.

## 5. Invalidity

### 5.1. Invalidity Generally

I will now instruct you on the rules you must follow in deciding whether or not Defendants Masimo and Sound United have proven that certain Asserted Claims are invalid.

Patent invalidity is a defense to patent infringement. The issuance of a patent by the Patent Office provides a presumption that the patent is valid. A party challenging the validity of a patent—in this instance, Defendants Masimo and Sound United —has the burden to prove that the asserted claims are invalid by clear and convincing evidence. Clear and convincing evidence means evidence that it is highly probable that a fact is true. Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

Defendants Masimo's and Sound United's contentions include:

- That the Asserted Claims of the '783, '483, and '054 Utility Patents are invalid because they are obvious in view of prior art.
- That the D'279 and D'842 Design Patents are invalid because the claimed designs are not ornamental.

In this case, you have the ultimate responsibility for deciding whether the claims of the patent are valid or invalid. In making your determination, you must consider the claims individually, as you did when you considered whether each claim was infringed or not. If clear and convincing evidence demonstrates that an Asserted Claim fails to meet any requirement of the patent laws, then that claim is invalid.

**5.2. Invalidity – Person of Ordinary Skill In The Art**

The question of invalidity of a patent claim is determined from the perspective of a person who has ordinary skill in the field of the invention at the time of the invention. You must determine the level of ordinary skill in the field of the invention.

For a utility patent, this hypothetical person is called a "Person of Ordinary Skill in the Art." In deciding what the level of ordinary skill is, you should consider all the evidence introduced at trial, including but not limited to:

1. The levels of education and experience of the inventors and other persons actively working in the field;
2. The types of problems encountered in the field;
3. Prior art solutions to those problems;
4. Rapidity with which innovations are made; and
5. The sophistication of the technology.

### 5.3. Prior Art

Under the patent laws, a person is granted a patent only if the invention claimed in the patent is new and not obvious in light of what came before. Prior art is the legal term used to describe what others had done in the field before the invention was made. It is not necessary that the prior art has been available to every member of the public, but it must have been available, without restriction, to that segment of the public most likely to avail itself of the prior art's contents.

Prior art includes any of the following items received into evidence during trial:

1. anything that was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public anywhere in the world before the effective filing date of the Asserted Claims of the patent; and
2. anything that was described in a patent, or in an application for patent published or deemed published, in which the patent or application names another inventor and was filed before the effective filing date of the Asserted Claims of the patent.

When used as prior art, a patent or published patent application is entitled to the filing date of a provisional application to which it claims priority if (1) the disclosure of the provisional application provides support for claims in the prior art patent or published patent application and (2) the provisional application describes the subject matter relied upon to show obviousness.

### 5.3.1. Prior Art Not Considered by The Patent Office

Where Masimo and Sound United are relying on prior art that was not considered by the Patent Office during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the Patent Office did consider. If you decide it is different and more relevant, you may consider that when determining whether the challenger has carried its clear-and-convincing burden of proving invalidity.

**5.4. Invalidity – Obviousness Generally**

I will now explain the basic rules for determining obviousness of utility patents.

As I explained previously, under the patent laws a person is granted a patent only if the invention claimed in the patent is both new and not obvious in light of what came before. Even though an invention has not been identically disclosed or described before it was made by an inventor, to be patentable, the invention must also not have been obvious to a person of ordinary skill in the art at the time the invention was made. Obviousness may be proven by considering more than one item of prior art. In this case, Masimo and Sound United contend that all the asserted claims of the Asserted Utility Patents are obvious over specific combinations of the prior art and the knowledge of a person of skill in the art.

Masimo and Sound United must prove by clear and convincing evidence that the asserted claims of the Asserted Utility Patents would have been obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the asserted claims would have been obvious to you as a layperson, to me as the judge, or to a genius in the relevant field, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.

In determining whether an asserted claim would have been obvious, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the asserted patents. You should not use the asserted patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill in the art at the time the invention was made.

In determining whether an asserted claim would have been obvious, you must consider:

(1) the scope and content of the prior art;

(2) the level of ordinary skill in the art as of the time of the invention;

(3) the differences, if any, between the claimed invention and the prior art; and

(4) additional objective considerations, if any, that indicated that the invention was obvious or not obvious.

**5.5. Invalidity – Obviousness (Utility Patents)**

Masimo and Sound United contend that each of Apple's Asserted Utility Patents is obvious in view of the prior art. For Masimo and Sound United to prevail on this defense, Masimo and Sound United are required to persuade you by clear and convincing evidence.

The person of ordinary skill in the art is presumed to be aware of all prior art. I have already instructed you on how you are to determine the level of ordinary skill in the art. Once you have made that determination, you are to apply it in your determination of whether the Asserted Utility Claims would have been obvious.

The next factor that you must consider is the differences between the prior art and the asserted claims. Importantly, a claim is not proved obvious merely by demonstrating that each of the claim requirements was independently known in the prior art. Most, if not all, inventions rely on building blocks of prior art, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art to combine the known elements in the way the asserted claims do. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of any problem or need to be addressed, market demand, or common sense. If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, and there would have been a reasonable expectation of success for doing so, this evidence would make it more likely that the claimed invention was obvious.

In arriving at your decision on the issue of whether the asserted claims would have been obvious to a person of ordinary skill in the art, you may consider such factors as:

1. Whether the asserted claims were merely the predictable result of using prior art elements according to their known functions;
2. Whether the asserted claims provide an obvious solution to a known problem in the relevant field;
3. Whether the prior art teaches or suggests the desirability of combining elements in the asserted claims;
4. Whether the prior art teaches away from combining elements in the asserted claims; and
5. Whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

The final factors you must consider are the "objective indicia of nonobviousness."

**5.6. Invalidity – Objective Indicia of Non-Obviousness**

In arriving at your decision on the issue of whether any asserted claims would have been obvious to a person of ordinary skill in the art, you must consider any "objective indicia of nonobviousness" that may have existed at the time of the invention and afterwards that suggest that the asserted claims were not obvious. Such objective indicia may include:

1. the commercial success of the claimed invention;
2. industry praise for the claimed invention; and
3. copying by others

These factors should be considered along with all the other evidence in the case in determining whether the asserted claims would have been obvious. These factors are relevant only if there is a connection, or nexus, between the factor and the invention covered by the patent claim.

**5.7. Invalidity – Lack of Ornamentality (Design Patents)**

Masimo and Sound United contend that the D'279 and D'842 Design Patents are invalid because they lack ornamentality.

Design patents protect the ornamental appearance of a utilitarian article of manufacture. But if a particular design is essential to the use of an article, it cannot be the subject of a design patent. If Masimo and Sound United prove by clear and convincing evidence that the overall appearance of the patented design is dictated by the use or purpose of the article, the patent is invalid because the design is not "ornamental." The ultimate question is not the functional or decorative aspect of each separate feature, but the overall appearance of the article.

It should be kept in mind that all design patents must be for articles of manufacture, which by definition, are things that have inherent functional characteristics. It is normal and expected that an article embodying a claimed design performs some sort of function – that does not disqualify the article's design for design patent protection. The existence of alternate designs that perform substantially the same function may be strong evidence that the design at issue is not dictated solely by function.

In determining whether a claimed design lacks ornamentality, the function of the article itself must not be confused with functionality of the design of the article. When there are several other designs that achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose. However, this may not be true if the other designs adversely affect the utility of the article.

When considering whether the designs claimed in the Asserted Design Patents are primarily dictated by function, you should also consider:

(1) Whether the protected design represents the best design;

(2) Whether alternative designs would adversely affect the utility of the specified article;

(3) Whether there are any utility patents relating to the same article of manufacture;

(4) Whether advertising touts particular features of the design as having specific utility; and

(5) Whether there are any elements in the design or an overall ornamental appearance clearly not dictated by function.

Additionally, it should also be kept in mind that the claimed design need not be aesthetically pleasing to be valid. In other words, an absence of artistic merit does not mean that the design is not patentable.

**6. Remedy**

If you find that Masimo has infringed any claim of the Asserted Patents, and you find the claim is not invalid, you must consider whether to award a remedy to Apple. By instructing you on remedy, I am not suggesting which party should win this case, on any issue.

In this trial, Apple is seeking a remedy for past infringement only. If you find infringement by Masimo of any of Apple's Design Patents, you should award Apple $250, the minimum amount set by statute for infringing a design patent.

If you find infringement by Masimo of any of Apple's Utility Patents, you may, but are not required to, award Apple $250 in damages if you find Apple proved those damages by a preponderance of the evidence.

## 7. Deliberation and Verdict

### 7.1. Concluding Remarks

I have completed my instructions on the law. All the instructions I gave you previously about the rules for deliberations still apply, and you will have a copy of them with you.

I will remind you that, once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, have your foreperson sign and date the note, and then give it to the jury officer. The officer will give it to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson.

One more thing about messages. Do not ever write down or tell anyone outside of the jury how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

### 7.2. Unanimous Verdict

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment. Each of you must decide the case for yourself but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A verdict form has been prepared for you. The verdict form asks you a series of questions about the parties' contentions. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. You will then return to the courtroom and your foreperson will give your verdict. Unless you are directed otherwise in the verdict form, you must answer all the questions posed, and you all must agree on each answer.

**7.3. Duty to Deliberate**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case with each other in the jury room. In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right, and your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So, you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

### 7.4. Social Media

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, iPad, blackberry, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, social media, or website such as Facebook, LinkedIn, YouTube, Instagram, WeChat, WhatsApp, SnapChat, TikTok, or X (formerly known as Twitter) to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

Of course, you may examine the various devices entered into evidence in this case—just as you may examine other evidence from this case. But you should not use those devices to perform Internet research about this case or to communicate with anyone outside the jury room.

**7.5. Court Has No Opinion**

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented. You may now retire and begin your deliberations.